ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., a Delaware Corporation, | : : : | |
| Plaintiff, | : : | C.A. No. 06-55 GMS |
| v. | : : | |
| DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a/k/a CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation, | : : : : : | |
| Defendants. | : : | |

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR
THEFT OF TRADE SECRETS, BREACH OF CONTRACT, CONVERSION,
<u>TORTIOUS INTERFERENCE, AND CONSPIRACY</u>

CONFIDENTIAL-FILED UNDER SEAL

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
WERB & SULLIVAN
300 Delaware Ave., 13th Floor
Wilmington, DE 19801
(302) 652-1100

Date: January 27, 2006

pursuant to 10 Del. C. § 3104. Waldmann's last known residence is located at 6 Robin Road, Malvern, PA 19355. Waldmann is an employee of Tesla Industries, and has been under administrative suspension for the acts complained of in this Verified Complaint.

    3.    Lyndol W. Hollingsworth ("Hollingsworth") is an adult individual residing in the State of Texas and may be served by effecting service upon the Secretary of the State of Delaware pursuant to 10 Del. C. § 3104. Hollingsworth last know residence is 923 Timber Trail, Cedar Park, Texas 78613-3437. Hollingsworth is a business associate of Waldman.

    4.    Charles Minnick, a/k/a Chuck Minnick ("Minnick") is an adult individual residing in the State of Oregon and may be served by effecting service upon the Secretary of the State of Delaware pursuant to 10 Del. C. § 3104. Minnick's last known residence is 8420 SW 89th Ave., Portland, OR 97223. Minnick is a business associate of Hollingsworth and Waldmann.

    5.    New Millennium Tools, Inc. ("New Millennium Tools") is an Oregon corporation with a registered office and principal place of business at 8420 SW 89th Avenue, Portland, Oregon, 97223. Hollingsworth and Minnick are principals of New Millennium Tools and at relevant times Waldmann acted as an agent of New Millennium Tools. Millennium Tools may be served by effecting service upon the Secretary of the State of Delaware pursuant to 10 Del. C. § 3104.

## JURISDICTION AND VENUE

    6.    This Court has subject matter jurisdiction, inter alia, pursuant to 28 U.S.C. 1332(a). Plaintiff Tesla Industries is a citizen of Delaware, and no Defendant is a citizen of Delaware. Defendant Waldmann is a citizen of Pennsylvania, Defendants Hollingsworth and DC Power Tools are citizens of Texas, and Defendants Minnick and New Millenium Tools are citizens of Oregon. The amount in controversy exceeds $75,000.00. The Defendants each are

subject to the jurisdiction of this Court by virtue of their intentional, tortious, and otherwise wrongful conduct in the State of Delaware giving rise to the claims stated herein and causing injury and damage to Tesla Industries.

7. Venue is proper in the District of Delaware pursuant to 28 U.S.C. Section 1391(a)(2) because the acts giving rise to the Plaintiff's claim occurred in this district.

## TESLA INDUSTRIES' BUSINESS

8. Tesla Industries is in the business of designing, manufacturing, and selling portable ground power units ("GPU's"), hookups, and other electronic equipment, for military and commercial applications. Tesla Industries markets its products extensively and is extremely well-known in the defense contracting and aviation industries as a quality manufacturer and provider. Its largest customer is the United States Department of Defense ("DOD"), which purchases through the Defense Logistics Agency. Very generally, its products provide electrical power to start and power personnel carriers, tanks, helicopters, airplanes and other vehicles in remote and battlefield locations. As a Department of Defense approved military contractor, it is assigned a CAGE Code (0VWE2), which indicates Tesla Industries and its marketed products are registered with the Defense Logistics Agency ("DLA") and assigned a National Stock Number ("NSN"). The DLA has assigned the highest "Triple 9" (999 out of 1000) priority rating to certain of Tesla Industries' products, including the NATO Plug. The prototype for the NATO Receptacle (which is the counterpart to the NATO Plug and which is as yet to be marketed) is among the products Tesla Industries alleges was stolen by Defendant Waldmann and distributed to other Defendants. Tesla Industries also has the highest security clearance for the shipment of its products to sensitive military sites, including those supplying military action in Iraq. See generally and paragraphs 10 and 14 of the Affidavit of David J. Masilotti, President of Tesla Industries, attached hereto as Exhibit "A".

employee only has access to that narrow bit of information necessary to do his or her job for the company. That policy is reflected in the Tesla Industries Interoffice Memo entitled "Access to Tesla Industries Technology Resources" (hereinafter referred to as "Confidentiality Memo"), attached as Exhibit "B" and required to be agreed to by every new Tesla Industries employee. It states at especially relevant part "*Generally, employees are given access to Tesla Industries' various technologies based on their job functions…**AT NO TIME** are any documents, floppy disks CAD drawings, emails, electronic parts or any TESLA INDUSTRIES properties; to be REMOVED from the TESLA INDUSTRIES' building's* (sic) *without the approval of the President of TESLA Industries…*" (emphasis in original). Waldmann agreed to that policy by signing that Confidentiality Memo on December 16, 2002, his first day as a Tesla Industries employee.

12.   Tesla Industries also requires each employee to sign an "Agreement of Non-Disclosure" ("Non-Disclosure Agreement") as part of the contract of employment. Waldmann's signed Agreement of Non-Disclosure is dated December 16, 2002 and attached as Exhibit "C". It states in relevant part "… **David C. Waldmann agrees that any information pertaining to Tesla Industries's products such as drawings, manufacturing materials, processes, components, devices, prototypes or any other object used in or for the development or manufacture of Tesla Industries products, purchasing information, vendor names, customer data, personnel files, and any accounting or internal business information is PROPRIETARY and shall not be removed from Tesla Industries' possession without written permission from the President of Tesla Industries** " and that "….**Waldmann recognizes that the information to be disclosed to him/her by Tesla Industries is secret and confidential and agrees to keep in confidence all such information disclosed to him/her. David C. Waldmann also agrees not to provide other individuals, groups, or business entities information specific to Tesla Industries products, …or**

6

*to any way assist, support or provide information to others, whether directly or indirectly by or through subsidiaries, affiliates, employees or acquaintances. …*". Exhibit C, paragraphs 5 and 3, respectively. The Non-Disclosure Agreement provides for specific remedies in the event it is breached, including the recovery of reasonable attorney fees. Id., paragraph 4.

13. Additionally, Tesla Industries uses a sophisticated security system for its company computers to protect itself from unauthorized access to, or distribution of, company information. In July, 2005, Tesla Industries installed an upgraded firewall security system, and as described in more detail below. See Exhibit A., Masilotti Affidavit, Section 7, it that was that system that led to the discovery of Waldmann's unauthorized e-mails containing proprietary information to, from and among Waldmann, Hollingsworth, Minnick, and New Millennium Tools.

### WALDMANN'S THEFTS FROM TESLA INDUSTRIES

14. After conducting an internal investigation and retaining a security consultant in anticipation of this litigation, Tesla Industries discovered and asserts herein that Waldmann engaged in wide-ranging efforts to misappropriate and steal product prototypes, confidential information, and trade secrets from Tesla Industries. Acting in concert with all Defendants and as a part of a fraudulent scheme, Waldmann has stolen the following information and items from Tesla Industries:

> (A) <u>NATO Receptacle</u>: At substantial costs in research and development, Tesla Industries developed a prototype of a high-performance NATO Receptacle designed to facilitate the connection of Tesla Industries' GPU's to military equipment. Tesla Industries' NATO Receptacle was only recently developed and provides significantly higher performance than previous receptacles, and its existence is a closely guarded secret. Only two such prototype NATO Receptacles are in existence. It is not

7

listed for sale on Tesla Industries' website, and has not received a security rating or NSN from the DLA. On August 18, 2005, Waldmann wrongfully removed a prototype NATO Receptacle from Tesla Industries' New Castle facility and shipped it to Hollingsworth. Affidavit of David J. Masilotti, paragraph 14(a). Copies of the electronic mail transmissions between Hollingsworth and Waldmann confirming Hollingsworth's request for delivery of the prototype and his subsequent receipt of it are attached as Exhibits "D" and "E". New Millennium Tools, acting under the direction of Hollingsworth and Minnick, then incorporated Tesla Industries' proprietary NATO Receptacle into a product New Millennium Tools offered for sale. Copies of the New Millennium Tools product catalogue incorporating the NATO Receptacle are attached as Exhibit "F".

Upon information and belief, Hollingsworth sent the NATO Receptacle Prototypes to Minnick. Minnick subsequently sent the prototype to China in order to determine if they could be reduced. See Affidavit of Kent F. Huffman, attached hereto as Exhibit "G".

(B)   Tesla Industries' Pending Sales and Customer Lists: Like most businesses, Tesla Industries' lists of customers are company assets and confidential information. Unlike most businesses, Tesla Industries' list of pending sales is Department of Defense Classified. On July 1, 2005, and again on October 5, 2005 and in concert with the other Defendants, Waldmann sent a Tesla Industries customer list and a list of pending military sales from his work computer to his home computer in direct violation of his Non-Disclosure Agreement with Tesla Industries and the Confidential Memo. Copies of those July 1, 2005 and October 5, 2005 electronic mail transmissions are attached as Exhibit "H". In further violation of his Non-Disclosure Agreement and his employment contract, and in concert with the other Defendants, Waldmann at various times after June in 2005

8

marketed New Millennium Tools products to existing Tesla Industries customers. Waldmann demonstrated and attempted to sell those products while ostensibly on business trips for Tesla Industries. A composite of the many e-mails from Waldmann confirming those marketing efforts to the other Defendants and Tesla Industries' customer contacts is attached as Exhibit "I".

(C)   Tesla Industries' Vendor Information: Because of its role in the defense industry and because the material it purchases is incorporated into proprietary products, Tesla Industries' list of vendors is confidential. As a sales representative, Waldmann had no reason to remove that vendor list from Tesla Industries and had no authorization to do so. Waldmann was also without authorization to provide that vendor list to any third party. On July 28, 2005, Waldmann transmitted electronically Tesla Industries' vendor information to Hollingsworth concerning the manufacturer of Tesla Industries UAV casings/powder coated steel boxes. Further, Plaintiff believes that Waldmann provided information to Hollingsworth concerning one of Tesla Industries' key manufacturers of highly specialized dry cell components.

(D)   Unmanned Aviation Vehicle Battery Assembly: This proprietary Battery System is intended to provide power for the U.S Military's Unmanned Aviation Vehicle ("UAV") surveillance planes. The UAV BATTERY Assembly carries the DLA highest priority security rating of "Triple 9". It was developed by Tesla Industries at substantial cost specifically for use in UAV surveillance planes, which fly in areas where the risks of a piloted plane are unacceptably high. Waldmann did not properly have access to that information. As set forth in more detail below, on September 8, 2005, Waldmann used his position at Tesla Industries to wrongly convince through trickery a Tesla Industries engineering employee to provide Waldmann with detailed close up photographs of the

UAV Battery Assembly. Without authorization, Waldmann transmitted the photographs by electronic mail to his personal e-mail account. Copies of those photographs and the transmitting e-mail message to Waldmann are attached as Exhibit "J".

(E)   5400 Global Hawk Assembly: This proprietary unit was developed by Tesla Industries specifically for use in the Northrop Grumman Global Hawk UAV. It consists of an engineered and wired battery box using Tesla Industries proprietary connectors to provide power to the Global Hawk, which is used for high-altitude reconnaissance and combat missions by the U.S. Air Force. As set forth in more detail below, on August 30, 2005, Waldmann used his position at Tesla Industries to wrongly convince through trickery a Tesla Industries engineering employee to provide Waldmann with detailed close up photographs of the 5400 Global Hawk Assembly. Without authorization, Waldmann emailed the photographs to his personal email account. Those photographs provide the viewer with a detailed view of the wiring and connection systems inside the box and could potentially allow the system to be duplicated. Copies of those photographs and the transmitting e-mail message to Waldmann are attached as Exhibit "E".

## THE DEFENDANTS' FRAUDULENT SCHEME

15.   On January 27, 2005, Waldmann presented his 2004 "Year in Review Memorandum" to Frank Mooney, Tesla Industries' General Sales Manager. In his Memorandum and in a series of meetings and conversations with Mooney, Waldmann sought substantial increases in salary and commissions. Because Waldmann was already receiving a substantial salary, sales commissions, benefits, and use of a company-provided vehicle, neither Mooney nor the President of the Company approved of Waldmann's request. Although he expressed disappointment at the denial of his request, Waldmann subsequently continued during

10

2005, at least to the appearance and understanding of Tesla Industries, to represent it in his capacity as a Military Sales Representative.

16. On or before June 8, 2005, Waldmann began communicating with Defendant Hollingsworth in what was the precursor of the scheme to damage Tesla Industries and steal its products.

17. Hollingsworth is a developer and licensor of electronic cable equipment and power tools for his associate, DC Power Equipment LLC, Austin, Texas.

18. At some point after June 8, 2005, Hollingsworth and Waldmann developed a relationship and an interest in developing new products and a new business, in competition with Tesla Industries. Although at all relevant times Waldmann was a Tesla Industries employee, Hollingsworth and Waldmann agreed to develop a new business and new products in direct competition with Tesla Industries. In order to do so, Hollingsworth needed Tesla Industries' prototypes, parts, part numbers, military contacts, vendor lists, and customer lists.

19. Hollingsworth also had a preexisting business relationship with Chuck Minnick. Through a variety of businesses he controls, Minnick is an importer of products manufactured in Asia to the United States. Plaintiff believes that Hollingsworth, Minnick, and Waldmann conspired about working together on New Millennium Tools, Inc. New Millennium Tools was formed by Hollingsworth and Minnick for the purposes of developing and selling power tools, cables, and other equipment, which require products such as those manufactured by Tesla Industries, including its cables, plugs, and ground power units. New Millennium Tools primary new product was the "DC Impact Wrench".

20. The DC Impact Wrench and its associated kit were being developed for sale as a self-contained and self-powered electric wrench for use in changing tires and tracks on military vehicles in the field. It could also be modified to serve as a "jaws of life" power tool in order to,

for example, shear the doors off of a damaged Humvee vehicle.

21. The correspondence and electronic mail transmissions which Tesla Industries has obtained during its investigation show that each of the Defendants conspired continually between June 2005 and November 2005 to convert Tesla Industries' NATO Receptacle, related designs, prototypes, parts, supplies, customer and vendor lists for the Defendants' improper use, including but not limited to selling the DC Impact Wrench incorporating the NATO Receptacles. See Exhibit "A", Masilotti Affidavit, Section 14(f). Such acts were intentional, fraudulent and were intended by Defendants to injure Tesla Industries.

22. In furtherance of the scheme, Waldmann, while in the employ of Tesla Industries, traveled to numerous military bases in order to demonstrate and market the DC Impact Wrench, including Delaware National Guard; Aberdeen, Maryland; Fort Knox, Kentucky; the 101st Airborne Division at Fort Campbell, Kentucky; the 25th I.D. Schofield Barracks, Hawaii; and the 82nd Airborne at Fort Bragg, North Carolina. See Exhibit "A", Masilotti Affidavit, Section 14(f).

23. Defendants, in an effort to trade upon Tesla Industries reputation and its existing business relationships, and without Tesla Industries' authorization, created an unauthorized and fraudulent Tesla Industries Product Catalog which included the DC Impact Wrench.

24. Defendants used interstate wire communications facilities as an integral part of their wrongful acts and communicated by electronic mail and telephone communication Tesla Industries' confidential information and trade secrets.

25. Defendants conspired about and misappropriated from Tesla Industries, prototypes, parts, drawing, photographs, vendor lists, and customer lists in violation of Tesla Industries' policies and Waldmann's Agreement of Non-Disclosure.

26. Waldmann sent to Hollingsworth without authorization samples of a confidential Tesla Industries supply part known as Nylon Acetate, which is fabricated by Tesla Industries and

used as an electrical separator in its NATO Plug. See Exhibit "A", Masilotti Affidavit, Section 14 (a). Significant amounts of Nylon Acetate are missing from Tesla Industries' inventory.

27. Without authorization, Waldmann ordered Tesla Industries' employee Joseph Talbot to download and transmit to Waldmann many of Tesla Industries' confidential information and trade secrets, including but not limited to, photographs, drawings, and information concerning the NATO Receptacle. See Talbot Affidavit attached hereto as Exhibit "K".

28. On or about September 7, 2005, Frank Furrie, a subcontractor of the Federal Emergency Management Agency ("FEMA") made an inquiry by electronic transmissions to Tesla Industries concerning the purchase by FEMA of GPU's as part of the disaster relief effort in the wake of Hurricane Katrina. Furrie also inquired about the availability of small portable battery packs as a power supply for medical heating blankets. In furtherance of Defendant's conspiracy, Waldmann diverted the FEMA e-mails concerning possible orders for Tesla Industries' products to Hollingstworth, causing financial loss and damages to Tesla Industries.

29. Waldmann, without authorization, transferred Tesla Industries' confidential information and trade secrets to his personal laptop computer, including but not limited to Tesla Industries' customer lists and vendor lists. Plaintiff believes that Waldmann transmitted this information to the Defendants.

30. Without Tesla Industries' authorization, Waldmann used Tesla Industries' status as a military contractor to establish an improper military e-mail account, dwaldmann@us.army.mil, in order to transmit and obtain information concerning Tesla Industries and its military customers. See Exhibit "A", Masilotti Affidavit, Section 14 (c). Waldmann used this e-mail account to pursue sales of New Millennium Tools products that improperly used Tesla Industries' NATO Receptacle.

31. On November 19, 2005, Waldmann sent an electronic message to a Tesla Industries' customer contact with the United States Military, stating as follows:

> I've got an update for you on the DC Tool System we discussed. I can only discuss this with you on this email or my or my home – dcwaldmann@hotmail.com as Tesla does not know my complete involvement with this. . . .

A copy of that electronic transmission is attached as Exhibit "L".

## COUNT I

### VIOLATION OF UNIFORM TRADE SECRETS ACT - WALDMANN

32. Tesla Industries incorporates the allegations of paragraphs 1 through 31 inclusive as though fully set forth herein.

33. The confidential information, including Tesla Industries' prototypes, lists of current customers and prospective customers, vendors, suppliers, drawings, photographs, parts and other confidential information are trade secrets of Tesla Industries as defined by 6 Del. C. § 2001(4);

34. The Non-Disclosure Agreement, at paragraphs 1, 2, and 3, contains express terms that the trade secret customer information and the trade secret product information and any developments thereto was to be kept secret by Waldmann and was not for general public knowledge. The Confidentiality Memo also prohibits the removal or dissemination of that information.

35. The Non-Disclosure Agreement and the Confidentiality Memo were reasonable steps on the part of Tesla Industries to maintain the secrecy of its trade secret information.

36. Waldmann has misappropriated the trade secrets of Tesla Industries for his own benefit, and in doing so has violated the Delaware Uniform Trade Secrets Act.

37. By transmitting some or all such trade secrets to Hollingsworth, Minnick, and New Millennium Power Tools, Waldmann has misappropriated and misused trade secrets of Tesla Industries, and in doing so has violated the Delaware Uniform Trade Secrets Act.

38. As a result of Waldmann's violations of the Delaware Uniform Trade Secrets Act, Tesla Industries has suffered damages, including but not limited to out-of-pocket expenses, the incurrence of attorney fees, lost sales, and lost profits.

### COUNT II

### VIOLATION OF UNIFORM TRADE SECRETS ACT – HOLLINGSWORTH, MINNICK, AND NEW MILLENIUM POWER TOOLS

39. Tesla Industries incorporates the allegations of paragraphs 1 through 38 inclusive as if fully set forth herein.

40. Hollingsworth received Tesla Industries' Confidential Information and Trade Secrets from Waldmann. In doing so, Hollingsworth knew or should have known that some or all of the information he was receiving from Waldmann was a trade secret of Tesla Industries.

41. Minnick received Tesla Industries' Confidential Information and Trade Secrets from Waldmann. In doing so, Minnick knew or should have known that some or all of the information he was receiving from Waldmann was a trade secret of Tesla Industries.

42. New Millennium Tools received Tesla Industries' Tesla Industries' Confidential Information and Trade Secrets from Waldmann. In doing so, New Millennium Tools knew or should have known that some or all of the information it was receiving from Waldmann was a trade secret of Tesla Industries.

43. Hollingsworth, Minnick, and New Millennium Tools have each violated the Delaware Uniform Trade Secrets Act by their actions.

44. As a result of violations of the Delaware Uniform Trade Secrets Act by Hollingsworth, Minnick, and New Millennium Tools, Tesla Industries has suffered damages,

including but not limited to out-of-pocket expenses, the incurrence of attorneys fees, lost sales and lost profits.

## COUNT III

### BREACH OF CONTRACT – WALDMANN

45. Tesla Industries incorporates the allegations of paragraphs 1 through 44 inclusive as though fully set forth herein.

46. Tesla Industries and Waldmann had a contract of employment, under which Tesla Industries employed Waldmann as a military sales representative. The Confidentiality Memo and the Agreement of Non-Disclosure were part of that employment contract, under which Waldmann agreed to devote his full-time business efforts to Tesla Industries and to maintain the confidentiality of its information.

47. Waldmann repeatedly breached in material ways his contract with Tesla Industries. Inter alia, Waldmann (a) failed to devote his full-time business efforts to Tesla Industries, (b) misappropriated Tesla Industries' confidential information concerning Tesla Industries' products, including the UAV NATO Receptacle and customer lists; (c) removed Tesla Industries property from Tesla Industries' premises (d) sent Tesla Industries' customer list to his home computer, (e) used Tesla Industries' customer lists to sell non-Tesla Industries products to existing and prospective Tesla Industries' customers, (f) established an e-mail address outside of Tesla Industries that he used to divulge and transmit Tesla Industries' confidential information, (g) failed to properly and exclusively sell Tesla Industries' products, and (h) converted Tesla Industries' prototypes, information and business opportunities for his own unauthorized purposes use. In doing so, Waldmann breached the express and implicit terms of his contract of employment, the Agreement of Non-Disclosure and the Confidentiality Memo.

48. Waldmann's breaches are the direct and proximate cause of damages to Tesla

Industries, including but not limited to direct losses, out-of-pocket expenses including the expense of its investigation and of bringing this action, lost sales and lost profits

## COUNT IV

### CONVERSION BY ALL DEFENDANTS

49. Tesla Industries incorporates the allegations in paragraph 1 through 48 inclusive as though fully set forth herein.

50. Waldmann, Hollingsworth, Minnick, and New Millennium Tools each converted Tesla Industries' property with the intent to permanently deprive Tesla Industries of that property.

51. As a result of the conversion of its property by Waldmann, Hollingsworth, and New Millennium Tools, Tesla Industries has suffered damages including but not limited to out-of-pocket expenses, lost sales, and lost profits.

## COUNT V

### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS BY WALDMANN

52. Tesla Industries incorporates the allegations of paragraphs 1 through 51 as if fully set forth herein.

53. On or about September 7, 2005, and as described in more detail above, Waldmann intercepted the FEMA inquiry concerning the purchase by FEMA of Tesla Industries products. Waldmann wrongfully intercepted the email message containing FEMA's request and diverted it to Hollingsworth. A copy of the electronic mail message is attached hereto as Exhibit "M".

54. As a result of Waldmann's actions, Tesla Industries was deprived of a substantial prospective contact and suffered damages, including but not limited to out-of-pocket expenses, lost sales, and lost profits.

## COUNT VI

### CONSPIRACY BY WALDMANN, HOLLINGSWORTH, MINNICK, AND NEW MILLENNIUM TOOLS

55. Tesla Industries incorporates the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. At various times Defendants Waldmann, Hollingsworth, and Minnick have tortiously and illegally agreed among themselves to form and operate a conspiracy designed to, inter alia:

    A. fraudulently deprive Tesla Industries of its property, including Tesla Industries' Confidential and Proprietary Information;

    B. fraudulently convince Tesla Industries's existing and prospective customers that New Millennium Tools may legitimately sell products incorporating Tesla Industries' NATO Receptacle; and,

    C. convert Tesla Industries' Confidential and Proprietary Information for their benefits and uses.

Such conspiracy, and the actions Defendants Waldmann, Hollingsworth and Minnick have taken in furtherance with that conspiracy, have caused damages to Tesla Industries including but not limited to out-of-pocket expenses, lost sales and lost profits..

WHEREFORE, Tesla Industries, Inc. respectfully requests that this Honorable Court enter an Order granting the following relief:

Upon Counts I, II, III, IV, V, and VI:

1. Enter a temporary restraining order prohibiting Defendant Waldmann from utilizing confidential and/or proprietary information of Tesla Industries that Waldmann obtained

as a Tesla Industries employee;

2. Enter a temporary restraining order prohibiting Defendants from utilizing confidential and/or proprietary information of Tesla Industries that Waldmann obtained as a Tesla Industries employee;

3. After a hearing, enter preliminary and permanent injunctions awarding same;

4. Award Tesla Industries its compensatory damages caused by Defendants and hold Defendants jointly and severally liable therefore;

5. Award Tesla Industries punitive damages against each Defendant and hold each Defendant jointly and severally liable therefore;

6. Award Tesla Industries its reasonable attorney fees as provided by the Delaware Uniform Trade Secrets Act and other authority;

7. Award prejudgment and post judgment interest as appropriate; and

8. Grant such other relief as the Court deems appropriate.

Dated: 1/27/06

WERB & SULLIVAN

Brian A. Sullivan, Esquire (DSB #2098)
Robert D. Wilcox, Esquire (DSB #4321)
Amy D. Brown, Esquire (DSB #4077)
300 Delaware Avenue, 13th Floor
Wilmington, DE 19899
(302) 652-1100 (telephone)
(302) 652-1111 (facsimile)

Attorneys for Tesla Industries

STATE OF DELAWARE )
) SS:
COUNTY OF NEW CASTLE )

## VERIFICATION

David J. Masilotti, in his capacity as President of Tesla Industries, Inc., the Tesla Industries in this action, being duly sworn, hereby verifies that he has read the foregoing complaint, and that the facts recited therein are true and correct to the best of his knowledge, information and belief.

By: _____
David J. Masilotti

On this, the 27th day of January, 2006, before me, the undersigned officer, personally appeared acknowledged himself to be the President of Tesla Industries, Inc. and that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public

Name Printed: Amy D. Brown, Esq.

My Commission Expires: n/a

AMY D. BROWN
Attorney at Law
Notary Public pursuant to
29 Del.C. § 4323(a)(3)