

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware  :
Corporation,                        :
                                    :
              Plaintiff,            :     C.A. No.06-55
                                    :
     v.                             :
                                    :
DAVID C. WALDMANN,                  :
LYNDOL W. HOLLINGSWORTH,            :
CHARLES MINNICK a/k/a CHUCK MINNICK, and :
NEW MILLENNIUM TOOLS, INC., an Oregon :
Corporation,                        :
                                    :
              Defendants.           :     JURY TRIAL DEMANDED
                                    :

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
OF DEFENDANT DAVID C. WALDMANN

CONFIDENTIAL-FILED UNDER SEAL

John D. Demmy (#2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

-and-

John A. Adams, Esquire
Susanin, Widman & Brennan, PC
455 South Gulph Rd., Ste 240
King of Prussia, PA 19406

Attorneys for David C. Waldmann

Date: March 27, 2006

DKT. NO. 26
DT. FILED 3/27/06

ORIGINAL

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
## OF DEFENDANT DAVID C. WALDMANN

Defendant David C. Waldmann ("Waldmann"), by his attorneys, hereby answers the averments in Plaintiff's Complaint in accordance with the numbered paragraphs thereof, asserts Affirmative Defenses in the above-captioned matter, and asserts Counterclaims against Plaintiff as set forth below:

1.      Waldmann is without information or knowledge sufficient to form a belief regarding the corporate status of New Millennium Tools ("NMT") and therefore, that averment is denied. Waldmann admits that Tesla Industries, Inc. ("Tesla") has brought the claims against the Defendants as alleged in paragraph 1, but denies that he has done anything wrong, that he is liable to Plaintiff, and that Plaintiff is entitled to any relief or damages.

1.      Waldmann is without information or knowledge sufficient to form a belief regarding the averments in paragraph 1 of the Complaint and therefore, the averments are denied.[1]

2.      The averments about service of process are conclusions of law to which no responsive pleading is required. To the extent that a responsive pleading is required, the averments are denied. Waldmann is without information or knowledge sufficient to form a belief regarding the averments about the reason for the administrative suspension and therefore, that averment is denied. Waldmann admits that he was an employee of Plaintiff at the time the Complaint was filed but denies that he is currently an employee of Plaintiff. The remaining averments are admitted.

---

[1]      The complaint contains two (2) paragraphs which are numbered 1.

2

3.      The averments about service of process constitute conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, the averment is denied.  Waldmann admits that he has a relationship with Hollingsworth which is business in nature but denies the Plaintiff's characterization of said relationship.  Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in paragraph 3 of the Complaint and therefore, those averments are denied.

4.      The averments about service of process constitute conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, the averments are denied.  Waldmann admits that he has a relationship with Minnick which is business in nature but denies the Plaintiff's characterization of said relationship.  Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in paragraph 4 of the Complaint and therefore, those averments are denied.

5.      The averments about service of process constitute conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, the averments are denied. Waldmann denies that he had an agency relationship with NMT while he was in the employ of Tesla.   Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in paragraph 5 of the Complaint and therefore, those averments are denied.

6.      Waldmann admits that he is a citizen of the Commonwealth of Pennsylvania.  The averments about subject matter jurisdiction constitute conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, those averments are

3

denied. Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in paragraph 5 of the Complaint and therefore, those averments are denied.

7.    The averments of this paragraph constitute conclusions of law to which no responsive pleading is required. To the extent that a responsive pleading is required, the averments are denied.

8.    Waldmann admits that there is an Exhibit A attached to the Complaint, but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. Waldmann also admits that Tesla Industries is in the business of designing, manufacturing, and selling portable ground power units ("GPU's"), cables, connectors and other electronic equipment for military and commercial applications; that some of Tesla's products provide electrical power to start personnel carriers, tanks, helicopters, airplanes and other vehicles; that the foregoing can be done in remote and battlefield locations; that Tesla is a Department of Defense approved military contractor; that Tesla has been assigned a CAGE Code of "0VWE2"; that some of Tesla's products are registered with the Defense Logistics Agency ("DLA") and assigned a National Stock Number ("NSN"); that some of Tesla's products, including the NATO Plug, can be shipped priority on a Triple 9 priority shipment code if the product is immediately needed; and that the NATO Receptacle is the counterpart to the NATO Plug. Waldmann is without information or knowledge sufficient to form a belief regarding the averments in the second and third sentences of paragraph 8 of the Complaint and therefore, those averments are denied. The remaining averments are denied.

4

9.      Waldmann admits that Tesla's GPU's are suited for military use; that tanks and personnel carriers may encounter problems in shipping in that their batteries may become completely discharged; that shipping and transporting of the foregoing may be to Iraq and other international locations; that the tanks and personnel carriers may be tightly packed on ships where space is limited; that Tesla's GPU's can provide the electrical starting power to allow the vehicles to become mobile; and that some of Tesla's products are also used for helicopters, unmanned aviation vehicles, on-board manned aircraft application and computers.    The remaining averments are denied.

10.     Waldmann admits that there is an Exhibit A attached to the Complaint, but denies Plaintiff's characterization of the contents of the Exhibit.   By way of further response, the Exhibit speaks for itself.   Waldmann denies that Tesla has a security clearance; that neither cellular telephones nor cameras may not be brought into Tesla's facilities; that no Tesla product, product design or written or computerized information may be removed from Tesla's facilities without the express consent of Tesla's management; and that any security measures that Tesla has at its facilities, if any, are imposed by the U.S. government or the U.S. military.   Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in the second and third sentences of paragraph 10 of the Complaint and therefore, those averments are denied.   The remaining averments are denied.

11.     Waldmann admits that there is an Exhibit B attached to the Complaint, but denies Plaintiff's characterization of the contents of the Exhibit.   By way of further response, the Exhibit speaks for itself.   Waldmann also admits that he was a sales representative.   Waldmann denies he did not have authorized access to information in Tesla's Engineering Department and

that each Tesla employee only had access to a narrow bit of information to do his/her job. Waldmann is without information or knowledge sufficient to form a belief regarding the averments in the second and third sentences of paragraph 11 of the Complaint and therefore, those averments are denied. The remaining averments are denied.

12.    Waldmann admits that he signed a Non-Disclosure Agreement and that a copy of such is attached to the Complaint as Exhibit C, but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in this paragraph of the Complaint and therefore, the remaining averments are denied.

13.    Waldmann admits there is an Exhibit A attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in this paragraph of the Complaint and therefore, the remaining averments are denied.

14.    Waldmann is without information or knowledge sufficient to form a belief regarding the averments about the internal investigation and security clearance consultant in this paragraph of the Complaint and therefore, those averments are denied. Waldmann admits that Tesla asserts in its Complaint that Waldmann has engaged in efforts to misappropriate and steal Tesla's product prototypes, confidential information and trade secrets, but denies the validity of said assertions and denies that he has done anything wrong or illegal. The remaining averments are denied.

a.    Waldmann admits that he shipped a NATO Receptacle belonging to Plaintiff to Hollingsworth, but denies he did anything wrong or illegal in doing so. Waldmann further admits that there are Exhibits A, D, E, F & G attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibits. By way of further response, the Exhibits speak for themselves. Waldmann is without information or knowledge sufficient to form a belief regarding the averments in the first two (2) sentences of this subparagraph of the Complaint and therefore, those averments are denied. The remaining averments are denied.

b.    Waldmann admits that there are Exhibits H & I attached to the Complaint but denies Plaintiff's characterization of the contents of these Exhibits. By way of further response, the Exhibits speak for themselves. The averments about what constitutes confidential information are conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, the averments are denied. The remaining averments are denied.

c.    The averments about what constitutes confidential information are conclusions of law to which no responsive pleading is required. To the extent responsive pleadings are required, the averments are denied.    Waldmann admits that on or about July 28, 2005, he told Hollingsworth, via e-mail, that Plaintiff was out of a particular product but that the product could be obtained from Allied Electronic and Digikey. The remaining averments are denied.

d.    Waldmann admits there is an Exhibit J attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. The averments about what constitute proprietary information and/or products are conclusions of law to which no responsive pleading is required. To the extent a

responsive pleading is required, those averments are denied.    Waldmann is without information or knowledge sufficient to form a belief regarding the averments about the intended purpose of the Battery, Plaintiff's development of the Battery, and the areas in which UAV's fly and, therefore, those averments are denied.    Waldmann admits that a Tesla employee provided Waldmann with photographs of the Battery and that the photographs were sent to his Tesla e-mail account but denies he did anything wrong or illegal in the foregoing.    The remaining averments are denied.

        e.    Waldmann admits there is an Exhibit E attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit.  By way of further response, the Exhibit speaks for itself.  Waldmann admits that a Tesla employee provided Waldmann with photographs of the 5400 Global Hawk Assembly and that the photographs were sent to his Tesla e-mail account but denies he did anything wrong or illegal in the foregoing.  Waldmann is without information or knowledge sufficient to form a belief regarding the remaining averments in this subparagraph and therefore, the remaining averments are denied.

        15.    Waldmann admits that in early 2005, he presented a 2004 year review and memorandum to Frank Mooney; that he sought increases in his salary and commissions; that he was already receiving salary, commissions and benefits to include the use of a company car; that the request for an increase was denied; that he was disappointed in not getting said increase; and that he continued to work for Plaintiff thereafter until January 27, 2006.    The remaining averments are denied.

        16.    Waldmann admits that he had communication with Hollingsworth in June 2005 and thereafter.  The remaining averments are denied.

17.     Waldmann is without information or knowledge sufficient to form a belief regarding the averments in paragraph 17 of the Complaint and therefore, the averments are denied.

18.     Waldmann admits that he was an employee of the Plaintiff in June 2005 and that he had a relationship with Hollingsworth which was business in nature.  The remaining averments are denied.

19.     Waldmann admits that he assisted Hollingsworth and Minnick in their efforts to form NMT; that it was Hollingsworth's and Minnick's stated plan for NMT to develop and sell power tools; that one of the products NMT plans to develop is a DC impact wrench; and that, prior to this lawsuit, NMT planned to use Tesla's products purchased from Tesla, through Waldmann, in at least one of NMT's products. The remaining averments are denied.

20.     Waldmann denies that NMT's DC impact wrench is self powered.  The remaining averments of this paragraph are admitted.

21.     Waldmann admits there is an Exhibit A attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit.  By way of further response, the Exhibit speaks for itself.  The remaining averments are denied.

22.     Waldmann admits there is an Exhibit A attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit.  By way of further response, the Exhibit speaks for itself.  Waldmann also admits that he demonstrated a DC impact wrench to a unit of the Delaware National Guard in New Castle, to an Army unit in Aberdeen Proving Ground and to an Army unit in Fort Knox, but denies that it was NMT's DC impact wrench and denies that he did anything wrong or illegal in doing said demonstration.  Waldmann further

admits that he was in the employ of Plaintiff during the period of time that he demonstrated the DC impact wrench. The remaining averments are denied.

23.    Denied.

24.    Waldmann admits that he used interstate wire communications facilities in some communications with Minnick and Hollingsworth. The remaining averments are denied.

25.    Denied.

26.    Waldmann admits there is an Exhibit A attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. The remaining averments are denied.

27.    Waldmann admits there is an Exhibit K attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. The averments about what constitute confidential information and/or trade secrets are conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, those averments are denied. Waldmann admits that he requested Joseph Talbot, a Tesla employee, to transmit certain information to him but denies that he did anything wrong or illegal in doing the foregoing. The remaining averments are denied.

28.    Waldmann is without information or knowledge sufficient to form a belief regarding the averments in the first two (2) sentences of paragraph 28 of the Complaint and therefore, those averments are denied. Waldmann admits that he provided Hollingsworth with information on how to contact Frank Furrie and informed Hollingsworth that Mr. Furrie might be interested in a DC impact wrench but denies that he did anything wrong or illegal in doing the foregoing. The remaining averments are denied.

29.     The averments about what constitute confidential information and/or trade secrets are conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, those averments are denied. Waldmann admits that he transferred certain Tesla information to his laptop computer but denies he did anything wrong or illegal in doing the foregoing. The remaining averments are denied.

30.     Waldmann admits there is an Exhibit A attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. Waldmann admits that he obtained a military e-mail account, dave.waldmann@us.army.mil, but denies that he did anything wrong or illegal in the foregoing. The remaining averments are denied.

31.     Waldmann admits there is an Exhibit L attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit. By way of further response, the Exhibit speaks for itself. Waldmann further admits that on or about November 19, 2005, he sent an e-mail to a CW3 Cassity, that CW3 Cassity is in the 101st Airborne Division of the US Army, and that the 101st Airborne Division is a customer of the Plaintiff. The remaining averments are denied.

**COUNT I**
**UNIFORM TRADE SECRETS ACT**
**DEFENDANT WALDMANN**

32.     The answers to the averments in paragraphs 1 through 31 are incorporated by reference as if set forth in their entirety herein.

33.    The averments in this paragraph constitute conclusions of law to which no responsive pleading is required.    To the extent that a responsive pleading is required, the averments are denied.

34.    Denied as stated.  The Non-Disclosure Agreement speaks for itself.

35.    Waldmann is without information or knowledge sufficient to form a belief regarding the averments in paragraph 35 of the Complaint and therefore, those averments are denied.

36.    Denied.

37.    Denied.

38.    Denied.

**WHEREFORE**, Waldmann prays that this Court will enter judgment against Plaintiff and in favor of the Defendant, deny Plaintiff the relief requested in the Complaint, and award Defendant damages, costs and attorney fees and any other appropriate relief.

## COUNT II
## UNIFORM TRADE SECRETS ACT
## OTHER DEFENDANTS

39-44. Defendant Waldmann is not a defendant in Count II and therefore, no responsive pleading is required from Defendant Waldmann to the averments in paragraphs 39-44.  To the extent a responsive pleading is required, the averments in paragraphs 39-44 are denied.

## COUNT III
## BREACH OF CONTRACT
## DEFENDANT WALDMANN

45.    The answers to the averments in paragraphs 1 through 44 are incorporated by reference as if set forth in their entirety herein.

46.    Waldmann admits that he was employed by Plaintiff, that he has an employment agreement with Tesla, that he signed a Non-Disclosure Agreement, and that he was required to keep certain information confidential.  The remaining averments are denied.

47.    Denied.

48.    Denied.

**WHEREFORE**, Waldmann prays that this Court will enter judgment against Plaintiff and in favor of the Defendant, deny Plaintiff the relief requested in the Complaint, and award Defendant damages, costs and attorney fees and any other appropriate relief.

## COUNT IV
## CONVERSION

49.    The answers to the averments in paragraphs 1 through 48 are incorporated by reference as if set forth in their entirety herein.

50.    Denied.

51.    Denied.

**WHEREFORE**, Waldmann prays that this Court will enter judgment against Plaintiff and in favor of the Defendant, deny Plaintiff the relief requested in the Complaint, and award Defendant damages, costs and attorney fees and any other appropriate relief.

13

## COUNT V
## TORTIOUS INTERFERENCE
## DEFENDANT WALDMANN

52.    The answers to the averments in paragraphs 1 through 51 are incorporated by reference as if set forth in their entirety herein.

53.    Waldmann admits there is an Exhibit M attached to the Complaint but denies Plaintiff's characterization of the contents of the Exhibit.   By way of further response, the Exhibit speaks for itself.   Waldmann also admits that on or about September 7, 2005 he provided Hollingsworth with information on how to contact Frank Furrie and informed Hollingsworth that Mr. Furrie might be interested in a DC impact wrench but denies that he did anything wrong or illegal in doing the foregoing.   The remaining averments are denied.

54.    Denied.

**WHEREFORE**, Waldmann prays that this Court will enter judgment against Plaintiff and in favor of the Defendant, deny Plaintiff the relief requested in the Complaint, and award Defendant damages, costs and attorney fees and any other appropriate relief.

## COUNT VI
## CONSPIRACY

55.    The answers to the averments in paragraphs 1 through 54 are incorporated by reference as if set forth in their entirety herein.

56.    Denied.

**WHEREFORE**, Waldmann prays that this Court will enter judgment against Plaintiff and in favor of the Defendant, deny Plaintiff the relief requested in the Complaint, and award Defendant damages, costs and attorney fees and any other appropriate relief.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the doctrine of waiver.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint and/or relief sought are barred, in whole or in part, by the doctrine of unclean hands or any other equitable doctrine precluding the foregoing.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate damages.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or estopped, in whole or in part because of Plaintiff's own actions and/or conduct.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by applicable statute of limitations.

### COUNTERCLAIM

Defendant, David C. Waldmann ("Waldmann") asserts the following Counterclaims against Plaintiff, Tesla Industries, Inc. ("Tesla"), and in support thereof, avers as follows:

15

1.      The answers to the averments in paragraphs 1 through 56 of the Complaint are incorporated by reference as if set forth in their entirety herein.

2.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claim alleging violations of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, *et. seq*, and the claims alleging violations of Section 502 of ERISA.  Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over the state law claims in this Counterclaim because the state law claims are so related to the Electronic Communications Privacy Act claims, the ERISA claims and the claims in the Complaint that they form part of the same case or controversy.  In addition, this Court has pendent jurisdiction over the state law claims because the state law claims, Electronic Communications Privacy Act claims, the ERISA claims and the claims in the Complaint arise out of the same events.  This Court also has diversity jurisdiction over the state law claims because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

## COUNT I
## Wage Payment Law Claims

3.      Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 3 of his Counterclaim as if set forth in its entirety herein.

4.      Waldmann was employed by Tesla from December 16, 2002 until he received notice of his termination on January 28, 2006.

5.      During Waldmann's employment with Tesla, Waldmann was to be compensated with a salary of $80,000 per year, paid in bi-weekly installments, plus commissions based upon his sales.

6.      Waldmann's bi-weekly gross salary was $ 3076.92.

16

7.    Up until December 31, 2005, Waldmann had received his bi-weekly salary notwithstanding the fact that the bi-weekly paychecks for the December 2005 pay periods were received by Waldmann more than 7 days after the end of the respective pay periods and after the respective regular paydays.    Up until the third quarter of 2005, Waldmann had received his commissions.

8.    On November 29, 2005, Waldmann was suspended from his position with Tesla with pay.

9.    Tesla paid Mr. Waldmann his salary for the pay periods from November 29, 2005 to December 31, 2005, but the paychecks for said salary for said pay periods were paid to Waldmann more than 7 days after the end of the respective pay periods.

10.    Pursuant to 19 Del.C. § 1102, "[e]very employer shall pay all wages due within 7 days from the close of the pay period in which the wages were earned."

11.    Pursuant to 19 Del.C. §1103, if an employer "fails to pay an employee wages, as required under this chapter, the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and Legal Holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller."

12.    Pursuant to 19 Del.C. §1103, Waldmann is entitled to liquidated damages from Tesla for the untimely payment of wages as alleged in foregoing paragraphs at the rate of approximately $307.69 for each and every day, excluding Saturdays, Sundays and Legal Holidays, in which the salary was unpaid after the respective regular paydays.

13.    Tesla terminated Waldmann's employment on January 28, 2006.

17

14.     Tesla failed to pay Mr. Waldmann his salary for the period January 1, 2006 to January 28, 2006 in violation of 19 Del.C. §§1102 and 1103.  Indeed, as of the date of the filing of this Counterclaim, Tesla has not paid Waldmann his salary for the period January 1, 2006 to January 28, 2006.

15.     Pursuant to 19 Del.C. §1103, Waldmann is entitled to liquidated damages for said unpaid wages from Tesla at the rate of approximately $307.69 per day, excluding Saturdays, Sundays and Legal Holidays, for each and every day in which his salary is unpaid after the respective regular paydays.

16.     The commissions for Waldmann's sales for the third and fourth quarters of 2005 became due and owing to him in October 2005 and January 2006, respectively.  Tesla was to pay Waldmann approximately $14,800 for his third quarter commissions and, upon information and belief, Tesla was to pay Waldmann approximately $15,000 for his 4th quarter commissions.

17.     Pursuant to 19 Del.C. § 1101, the term "wages" "means compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, **commission** or other basis of calculation". (Emphasis added).

18.     Tesla failed to pay Waldmann his commissions due in October 2005 and in January 2006 in violation of 19 Del.C. §§1102 and 1103.  Indeed, as of the date of the filing of this Counterclaim, Tesla has not paid Waldmann his 3rd and 4th quarter 2005 commissions.

19.     Pursuant to 19 Del.C. § 1103, Waldmann is entitled to liquidated damages from Tesla for the unpaid commissions at the rate of approximately $1,480 per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, from on or about middle October 2005 to on or about middle January 2006, and liquidated damages at the rate of approximately $3,000

per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, until Tesla pays said commissions to Waldmann.

20.     Pursuant to 19 Del.C. §1113, Waldmann may bring a civil action to recover the unpaid wages and liquidated damages in any court of competent jurisdiction.

21.     Pursuant to 19 Del. C. §1113, "any judgment entered for a plaintiff in an action brought under this section shall include an award for the costs of the action, the necessary costs of prosecution and reasonable attorney's fees, all to be paid by the defendant."

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff and that he be awarded damages for all unpaid wages and commissions due him, liquidated damages, compensatory damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

**COUNT II**
**Breach of Contract**

22.     Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 21 of his Counterclaim as if set forth in its entirety herein.

23.     Mr. Waldmann had an employment agreement with Tesla where in exchange for his services, Waldmann was to be paid a salary plus commissions.

24.     Waldmann performed his obligations under the employment contract but failed to pay him the salary and commissions due for the employment agreement.

25.     By failing to pay Waldmann his salary and/or commission when they were due, Tesla has breached the employment agreement with Waldmann.

19

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff and that he be awarded damages for all unpaid wages and commissions due him, liquidated damages, compensatory damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

## COUNT III
### Wage Payment Law – Unlawful Discharge

26.     Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 25 of his Counterclaim as if set forth in its entirety herein.

27.     On January 23, 2006, Waldmann filed a claim against Tesla with the Department of Labor alleging, among other things, that Tesla failed to pay him wages due and owing to him.

28.     In connection with the investigation into Waldmann's claims, Ms. Lori Greentree, from the Department of Labor, contacted Tesla and informed Mr. Dave Masilotti of Waldmann's claims.

29.     It is a violation of 19 Del.C. §1112 (b), for any employer to discharge or in any manner discriminate against an employee because that employee has made a complaint or has given information to the Department of Labor.

30.     On January 28, 2006, in retaliation for exercising his rights under Delaware Law, Tesla terminated Waldmann's employment.

31.     Tesla terminated Waldmann's employment in violation of 19 Del.C. §1112.

32.     As a result of Tesla's actions in terminating Waldmann, Waldmann has suffered damages and emotional distress.

33.     Tesla's action in terminating Waldmann's employment was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Tesla and that Waldmann be awarded backpay, front pay, compensatory damages, civil penalties, attorney fees and costs, and such other legal relief as this Court deems appropriate.

## COUNT IV
### ERISA

34.     Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 33 of his Counterclaim as if set forth in its entirety herein.

35.     At the time of Waldmann's termination of employment on January 28, 2006, Waldmann was covered by Tesla's group health insurance policy.

36.     Tesla's group health insurance policy and its group dental insurance policy are each a plan as defined by ERISA, 29 U.S.C. §1002.

37.     Upon information and belief, Tesla is the Plan Administrator of both such plans.

38.     On January 28, 2006, Waldmann was notified by Tesla that, effective January 1, 2006, Tesla had terminated Waldmann's coverage under the group health insurance policy and the group dental insurance policy.

39.     Waldmann's pregnant wife and his two (2) minor children were also on the group health insurance policy and the group dental insurance policy and likewise their medical coverage and dental coverage was also terminated.

40.     Tesla failed to provide Waldmann with notification that he had the option to continue to elect group health insurance continuation coverage as required by COBRA. Tesla

21

failed to provide Waldmann with notification that he had the option to continue to elect group dental insurance continuation coverage as required by COBRA.

41.    In accordance with 29 U.S.C. §1132(c), as of January 15, 2006, 14 days after coverage was terminated, Tesla is required to pay to Waldmann a penalty of $110 per day for each and every day that Tesla failed to provide Mr. Waldmann with the notification to elect continuation medical insurance coverage as required by COBRA.  In accordance with 29 U.S.C. §1132(c), as of January 15, 2006, 14 days after coverage was terminated, Tesla is required to pay to Waldmann a penalty of $110 per day for each and every day that Tesla failed to provide Mr. Waldmann with the notification to elect dental insurance continuation coverage as required by COBRA.

42.    Moreover, because of Tesla's failure to provide Waldmann with continuation coverage, Waldmann had to personally pay for the medical and dental expenses for his pregnant wife and for his minor children.

43.    Pursuant to Section 502 of ERISA, 29 U.S.C. §1132, Waldmann is entitled to restitution and/or damages from Tesla for the benefits to which he is entitled under the terms of group health insurance plan and/or the group dental insurance plan.  In addition, Section 502 of ERISA, 29 U.S.C. §1132, entitles plaintiff to injunctive relief to compel Tesla to provide Waldmann with said group health insurance coverage and/or group dental insurance coverage.

44.    Pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, Waldmann is entitled to the recovery of attorney fees and costs.

**WHEREFORE**, Waldmann requests that judgment be entered in his favor and against Tesla for a $110 per day penalty for each and every day after January 15, 2006 that Tesla failed

to provide continuation coverage notification for each plan, actual and other damages, interest, attorney fees and costs and such other legal relief as this Court deems appropriate.

## COUNT V
### Federal Electronic Communications Privacy Act

45.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 44 of his Counterclaim as if set forth in its entirety herein.

46.    Upon information and belief, sometime prior to December 2, 2005, Tesla, through one or more of its agents, without Waldmann's permission, intentionally accessed and/or trespassed, through interstate wire communications, into an interstate computer electronic storage facility containing Waldmann's army email account, dave.waldmann@us.army.mil, as well as other personal email accounts, bank accounts, telephone accounts, and other accounts held by Mr. Waldmann and retrieved and/or obtained electronically transmitted or stored information. On or before December 2, 2005, Tesla obtained, without Waldmann's permission, one or more e-mails from Waldmann's personal e-mail account(s) including, but not limited to, a November 19, 2005 e-mail from Waldmann to CW3 Cassity which was electronically transmitted and/or stored via dave.waldmann@us.army.mil. In 2003, Mr. Masilotti, in Waldmann's presence, accessed the former computer which was used by Dave Holden when Mr. Holden was an employee of Tesla. Mr. Masilotti, using the electronic information stored in the computer, showed Waldmann that he could obtain the usernames and passwords from Mr. Holden's bank account and other accounts. The foregoing was done shortly after Mr. Holden was terminated from Tesla. Mr. Masilotti bragged to Waldmann that he knew how to get any employee's personal usernames and passwords for their various accounts.

23

47.    Upon information and belief, sometime after December 2, 2005, Tesla, through one or more of its agents, without Waldmann's permission, intentionally accessed and/or trespassed, through interstate wire commutations, into an interstate computer electronic storage facility containing Waldmann's personal email accounts, bank accounts, telephone accounts, and other accounts held by Mr. Waldmann and retrieved and/or obtained electronically transmitted or stored information.

48.    Upon information and belief, Tesla, through one or more of its agents, intentionally, via interstate wire communications or other systems, intercepted Waldmann's interstate wire commutations and/or his electronic communications systems.

49.    At one or more times after Waldmann entered the employ of Tesla, Tesla, without Waldmann's permission,  pretending to be Waldmann by using his personal passwords, obtained access via the internet, without Waldmann's permission, to Waldmann's personal email accounts, bank accounts, telephone accounts, cellular phone accounts and other accounts and obtained information belonging to Waldmann.

50.    At one or more times after Waldmann entered the employ of Tesla, Tesla, without Waldmann's permission, pretending to be Waldmann by using his personal password, accessed via the internet, Waldmann's Nextel account and, among other things, changed the Administrator of the account.

51.    In doing all of the foregoing, Tesla, through on or more of its agents, violated the Electronic Communications Privacy Act of 1986, 18 U.S.C. §2510, *et. seq,*

52.    Upon information and belief, Tesla's agents have used, disclosed, and/or endeavored to use and/or disclose to other persons and/or entities information obtained in violation 18 U.S.C. §2511.

53.    Pursuant to 18 U.S.C. § 2520, Waldmann may bring a civil action to recover damages for the foregoing violations.

54.    Pursuant to 18 U.S.C. § 2520, Waldmann is entitled to the recovery of attorney fees, costs, actual damages, statutory damages, compensatory damages, punitive damages and injunctive relief

55.    Tesla's action in doing the foregoing was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, statutory damages, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

## COUNT VI
### Delaware's Electronic Surveillance and Interception of Communications Act

56.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 55 of his Counterclaim as if set forth in its entirety herein.

57.    Tesla's acts as alleged in Count V also violate Delaware's Electronic Surveillance and Interception of Communications Act, 11 Del. C. §2401, *et. seq.*

58.    Pursuant to 11 Del. C. §2427, Waldmann may bring a civil action to recover damages for the foregoing violations.

25

59.    Pursuant to 11 Del. C. §2427 Waldmann is entitled to the recovery of attorneys' fees, costs, actual damages and statutory damages.

60.    Tesla's action in doing the foregoing was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, statutory damages, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

## COUNT VII
### Intrusion Upon Seclusion/Privacy

61.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 60 of his Counterclaim as if set forth in its entirety herein.

62.    Tesla's act of intentionally accessing Mr. Waldmann's personal private email accounts, telephone accounts, bank accounts, cellular phone accounts and other accounts, without permission from Waldmann, intruded upon the solitude and seclusion of Mr. Waldmann in his private affairs and concerns.

63.    Tesla's intrusion into Mr. Waldmann's solitude and seclusion would be highly offensive to a reasonable person.

64.    Tesla's action in doing the foregoing was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

26

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including but not limited to all reasonable attorneys' fees and costs.

## COUNT VIII
### Conversion

65.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 64 of his Counterclaim as if set forth in its entirety herein.

66.    On or about December 2, 2006, Tesla took possession of several items of Mr. Waldmann's property including, but not limited to, a laptop computer, cellular telephone, ipod, "EZ pass" transmitter and car key.

67.    While Waldmann willingly gave the foregoing property to Tesla, he limited Tesla's right to possess said property for five (5) business days.

68.    Despite Mr. Waldmann's repeated demands for the return of said property, and notwithstanding a February 22, 2006 Order from this Court requiring Tesla to return said property to Waldmann on or before February 27, 2006, Tesla did not return the foregoing property to Waldmann until March 14, 2006.

69.    By refusing to return Waldmann's property when requested, Tesla exercised dominion and control over the property which was inconsistent with Waldmann's right to immediate possession of said property.

70.    Tesla's conversion of Waldmann's property was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

27

71.     While in Tesla's possession, Tesla damaged the battery to the laptop computer.

72.     The foregoing caused Waldmann damages to replace the battery and other damages in not having the use and possession of his property.

73.     Waldmann also incurred damages in the form of attorneys' fees and other costs in order to obtain the foregoing property from Tesla.

74.     At one or more times after Waldmann entered the employ of Tesla, Tesla, without Waldmann's permission, pretending to be Waldmann by using his personal passwords, obtained access to Waldmann's personal email accounts, bank accounts, telephone accounts, cellular phone accounts and other accounts and obtained information belonging to Waldmann.

75.     At one or more times after Waldmann entered the employ of Tesla, Tesla, without Waldmann's permission, pretending to be Waldmann by using his personal password, accessed his Nextel account and changed the Administrator of the account, and thereby exercised dominium and control over said Nextel account.

76.     Tesla exercised dominion and control over the foregoing accounts and over the information in the foregoing accounts which was inconsistent with Waldmann's rights over the foregoing accounts and over the information in the foregoing accounts.

77.     Tesla's conversion of Waldmann's property was outrageous and unconscionable, and was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, compensatory damages to be determined at

trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

## COUNT IX
### Delaware Personnel File Inspection Law

77.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 76 of his Counterclaim as if set forth in its entirety herein.

78.    On or about December 28, 2005 and again on December 30, 2005, via e-mail, Waldmann requested from Tesla that he be allowed to inspect his personnel files and documents (electronic and paper) that Tesla has used to determine his qualifications for continued employment, his compensation, and the suspension of his employment and other anticipated disciplinary action including, but not limited to, the following:

a.    all agreements referred to in Truee Dorsey's November 29, 2005 letter to Waldmann (described as "the Agreement of Non-Disclosure and Agreements of the Access of Tesla Industries Technology Resources executed December 15, 2002") as well as any other documents that Tesla contends set forth, contain or describe binding agreements with Waldmann;

b.    any documents that Tesla contends restrict Waldmann's conduct in any way;

c.    any documents that Tesla contends contain promises, covenants or other commitments, restrictions, or reservations that Tesla believes have been violated by Waldmann;

d.    any documents that relate to Waldmann's salary and commission arrangement with Tesla and salary, commissions and benefits to which Waldmann is entitled and/or which Waldmann has received;

29

e.      any documents that relate to or were referred to by Tesla in making its decision to suspend Waldmann's employment;

f.      all documents that describe or relate to evaluations of Waldmann's conduct and/or performance as a Tesla employee; and

g.      all documents that relate to any investigation of Waldmann's conduct as an employee of Tesla including the investigation described in Tesla's (Truee Dorsey's) November 29, 2005 letter to me and Mr. Masolotti's e-mail to me of December 28, 2005. According to said December 28, 2005 e-mail, Tesla has completed its investigation and that Tesla has uncovered information pertaining to alleged illegal and unethical activity on Waldmann's part as an employee of Tesla.

79.     In addition to inspecting his personnel file, Waldmann requested the right to seek the removal or correction of any information that relates to Tesla's allegations against him or, in the alternative, the right to submit a written statement explaining his position to the foregoing.

80.     Pursuant to 19 Del.C. § 732:

> An employer shall, at a reasonable time, upon request of an employee, permit that employee to inspect that employee's own personnel files used to determine that employee's own qualifications for employment, promotion, additional compensation, termination or disciplinary action.

81.     Pursuant to 19 Del.C. § 731, "Personnel file":

> means, if maintained by the employer, any application for employment, wage or salary information, notices of commendations, warning or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records, performance evaluations and medical records.

30

82.      Pursuant to 19 Del. C. § 734, "[i]f upon inspection of the employee's personnel file, an employee disagrees with any of the information contained in such file or records, removal or correction of such information may be agreed upon by such employee and the employee's employer. If such employee and employer cannot agree upon such removal or correction then such employee may submit a written statement explaining the employee's position."

83.      Pursuant to 19 Del.C. § 735, it is a violation of Delaware law for an employer to refuse to allow an employee to inspect his personnel file or to otherwise violate the provisions of §§ 731-735.

84.      On January 23, 2006, Mr. Waldmann filed a claim against Tesla with the Department of Labor alleging, among other things, that Tesla failed to provide him with his personnel records.

85.      In connection with the investigation into Mr. Waldmann's claims, Ms. Lori Greentree, the Department of Labor administrator taking Mr. Waldmann's claim, contacted Tesla and informed Mr. Dave Masilotti of Waldmann's claim.

86.      On January 24, 2006, by overnight mail, Waldmann received a copy of part of his personnel file.  Notwithstanding the foregoing, Tesla refused to provide Waldmann with all of the personnel file as required by §§ 731-735 including, but not limited to, information on his wages.

87.      By refusing to allow Waldmann to inspect his personnel file, Tesla violated 19 Del.C. §735.

31

88.    It is a violation of 19 Del.C. §735 for any employer to discharge or in any manner discriminate against an employee because that employee has made a complaint regarding personnel records to the Department of Labor.

89.    On January 28, 2006, in retaliation for exercising his rights under Delaware Law, Tesla terminated Waldmann's employment.

90.    Waldmann's employment was terminated in violation of 19 Del.C. §735.

91.    In terminating Waldmann's employment in violation of 19 Del.C. §735, Tesla violated the covenant of good faith and fair dealing contained in Tesla's employment agreement with Waldmann.

92.    As a result of Tesla's actions in terminating Waldmann, Waldmann has suffered damages and emotional distress.

93.    Tesla's actions in terminating Waldmann's employment and/or its actions in refusing to allow Waldmann to inspect his personnel file were outrageous and unconscionable, and were done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, backpay, and frontpay, plus interest, civil penalties and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

32

## Count X
## Abuse of the Legal Process

94.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 93 of his Counterclaim as if set forth in its entirety herein.

95.    In October 2005, Waldmann learned that Tesla had sold thousands of 50 amp TI3000 GPU-24 systems to the military notwithstanding the fact that the TI3000 GPU-24 could only handle 40-42 amps load.  Because of the amperage problem, the military had returned some of the TI3000 GPU-24's because some of the TI3000 GPU-24's failed.  The Army believed that these failed TI3000 GPU-24's were defective.    Notwithstanding the Army's belief, the real problem was a design problem within the TI3000 GPU-24's such that the system was not designed for a 50 amps load.

96.    Following this discovery, Waldmann wanted Tesla to notify DLA of the amperage problem with the TI3000 GPU-24's.  Waldmann was told that Tesla was not going to notify DLA and he was not to notify anyone about the TI3000 GPU-24 amperage problem, but rather Tesla would deal with any products returned to Tesla on a case by case basis.

97.    Waldmann was concerned about the amperage problem with the TI3000 GPU-24's because some of the units were deploying with the TI3000 GPU-24's into hostile territories and if the amperage exceeded 40-42 amps on the TI3000 GPU-24's, the TI3000 GPU-24 system would fail.

98.    In one or more e-mails, Waldmann informed one or more members of the military that there may be a design problem with the TI3000 GPU-24's and requested that he be notified immediately if they encountered any problems.

33

99.     Shortly after sending the foregoing e-mail(s), Waldmann was placed on an administrative suspension pending an investigation.

100.    Within only a couple of days of Waldmann making his January 24, 2006 claim to the Department of Labor regarding being denied access to his personnel file and being denied payment of wages, Plaintiff initiated the Complaint in the above captioned action.

101.    For the purpose of discrediting and silencing Waldmann, for the purpose of avoiding its obligation to pay Waldmann his salary and commissions owed to him, for the purpose of taking retaliatory actions against Waldmann in reprisal for reporting claims to the Department of Labor and for reporting, threatening to inform and/or endeavoring to inform an agent(s) of the Army and/or the U.S. government of the problems with the TI3000 GPU-24's and/or for other non-legitimate purposes, Tesla willfully abused the legal process by initiating and/or maintaining the above captioned matter.  Tesla's filed the above captioned matter in bad faith and not in order to obtain legal redress or for any other legitimate or proper purpose.

102.    Tesla's actions in abusing the legal process were outrageous and unconscionable, and were done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff in the amount for actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest and such other legal relief as this Court deems appropriate including but, not limited to, all reasonable attorneys' fees and costs.

## COUNT XI
### Unlawful Discharge

103.    Waldmann incorporates herein by reference the averments contained in paragraphs 1 through 102 of his Counterclaim as if set forth in its entirety herein.

104.    In October 2005, Waldmann learned that Tesla had sold thousands of 50 amp TI3000 GPU-24 systems to the military notwithstanding the fact that the TI3000 GPU-24 could only handle 40-42 amps load.  Because of the amperage problem, the military had returned some of the TI3000 GPU-24's because some of the TI3000 GPU-24's failed.  The Army believed that these failed TI3000 GPU-24's were defective.    Notwithstanding the Army's belief, the real problem was a design problem within the TI3000 GPU-24's such that the system was not designed for a 50 amps load.

105.    Following this discovery, Waldmann wanted Tesla to notify DLA of the amperage problem with the TI3000 GPU-24's.  Waldmann was told that Tesla was not going to notify DLA and that he was not to notify anyone about the TI3000 GPU-24 amperage problem, but rather Tesla would deal with any products returned to Tesla on a case by case basis.

106.    Waldmann was concerned about the amperage problem with the TI3000 GPU-24's because some of the units were deploying with the TI3000 GPU-24's into hostile territories and if the amperage exceeded 40-42 amps on the TI3000 GPU-24's, the TI3000 GPU-24 system would fail.

107.    In one or more e-mails, Waldmann informed one or more members of the military that there may be a design problem with the TI3000 GPU-24's and requested that he be notified immediately if they encountered any problems.

35

108.    Shortly after sending the foregoing e-mail(s), Waldmann was placed on an administrative suspension pending an investigation.

109.    Within only a couple of days of Waldmann making his January 24, 2006 claim to the Department of Labor regarding being denied access to his personnel file and being denied payment of wages, Plaintiff initiated the Complaint in the above captioned action.

110.    It is a violation of 10 U.S.C. §2409, other laws and public policy, for Tesla, a government contractor, to discharge, demote, or otherwise discriminate against Waldmann in reprisal for informing, threatening to inform, or endeavoring to inform an agent of the Army of the problems with the TI3000 GPU-24's, of a design problem with the TI3000 GPU-24's and/or that Tesla had sold to the military a 50 amp system that could only handle a 40-42 amp load.

111.    For the purpose of discrediting and silencing Waldmann, for the purpose of avoiding its obligation to pay Waldmann his salary and commissions, for the purpose of taking retaliatory actions against Waldmann in reprisal for reporting claims to the Department of Labor and/or for reporting, threatening to inform and/or endeavoring to inform an agent(s) of the Army and/or the U.S. government of the problems with the TI3000 GPU-24's and/or for other non-legitimate purposes, Tesla terminated Waldmann's employment.

112.    In terminating Waldmann's employment, initiating an investigation, and placing him on administrative suspension as set forth above, Tesla violated the covenant of good faith and fair dealing contained in Tesla's employment agreement with Waldmann.

113.    Tesla's actions in terminating his employment, initiating an investigation, and placing him on administrative suspension were outrageous and unconscionable, and were done

36

with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.

**WHEREFORE,** Waldmann requests that judgment be entered in his favor and against Plaintiff for actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

## JURY DEMAND

Waldmann respectfully request a jury trial on all issues, causes of action and counterclaims.

Respectfully submitted,

Dated: March 27, 2006

_/s/ John D. Demmy_
John D. Demmy (#2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

-and-

John A. Adams
Susanin, Widman &Brennan, P.C.
South Gulph Road, Suite 240
King of Prussia, PA 19406-3119455

Attorneys for David C. Waldmann

## CERTIFICATE OF SERVICE

John D. Demmy hereby certifies that on March 27, 2006, true and correct copies of the

foregoing *ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT*

*DAVID C. WALDMANN* was served via United States First Class Mail, postage pre-paid, on

counsel of record in this matter, identified below:


Brian A. Sullivan, Esq.
Robert D. Wilcox , Esq.
Amy D. Brown, Esq.
WERB & SULLIVAN
300 Delaware Ave., 13th Floor
Wilmington, DE 19801

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. Maguire, Esq.
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899


　　　　　　　　　　　　　 /s/ John D. Demmy
　　　　　　　　　　　　 John D. Demmy

38



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TESLA INDUSTRIES, INC., a Delaware
Corporation,                                         :
                                                     :
                              Plaintiff,             :      C.A. No.06-55  GMS
                                                     :
               v.                                    :
                                                     :
DAVID C. WALDMANN,                                   :
LYNDOL W. HOLLINGSWORTH,                             :
CHARLES MINNICK a/k/a CHUCK MINNICK, and             :
NEW MILLENNIUM TOOLS, INC., an Oregon                :
Corporation,                                         :
                                                     :
                              Defendants.            :      JURY TRIAL DEMANDED
                                                     :

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
OF DEFENDANT DAVID C. WALDMANN**

**CONFIDENTIAL-FILED UNDER SEAL**

John D. Demmy (#2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE  19801

-and-

John A. Adams, Esquire
Susanin, Widman & Brennan, PC
455 South Gulph Rd., Ste 240
King of Prussia, PA  19406

Attorneys for David C. Waldmann

Date: March 27, 2006

## CERTIFICATE OF SERVICE

John D. Demmy hereby certifies that on March 27, 2006, true and correct copies of the

foregoing *ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT*

*DAVID C. WALDMANN* was served via United States First Class Mail, postage pre-paid, on

counsel of record in this matter, identified below:


Brian A. Sullivan, Esq.
Robert D. Wilcox , Esq.
Amy D. Brown, Esq.
WERB & SULLIVAN
300 Delaware Ave., 13th Floor
Wilmington, DE 19801

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. Maguire, Esq.
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899


_____ /s/ John D. Demmy
John D. Demmy

38