27

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

           Plaintiff,

     v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

           Defendants.

**C.A. No. 06-55-GMS**

LYNDOL W. HOLLINGSWORTH, CHARLES
MINNICK a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

           Counterclaim-Plaintiffs,

     v.

TESLA INDUSTRIES, INC. a Delaware
Corporation,

           Counterclaim-Defendant.

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK A/K/ACHUCK MINNICK AND NEW
MILLENNIUM TOOLS, INC. AND DEMAND FOR JURY TRIAL**

Defendants Lyndol W. Hollingsworth ("Hollingsworth"), Charles Minnick a/k/a Chuck

Minnick ("Minnick") and New Millennium Tools, Inc. ("NMT") (hereinafter collectively

referred to as the "NMT Parties"), by undersigned counsel, respectfully submit the following

Answer, Affirmative Defenses and Counterclaims to the Verified Complaint of Plaintiff Tesla Industries, Inc. ("Tesla Industries").

## THE PARTIES

1.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint and, therefore, deny each and every such allegation.

2.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny each and every such allegation.

3.    The NMT Parties admit that Defendant Hollingsworth is an adult individual residing in the State of Texas.  The NMT Parties further admit that Defendant Hollingsworth resides at 923 Timber Trail, Cedar Park, Texas 78613-3437.  The NMT Parties deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.    The NMT Parties admit that Defendant Minnick is an adult individual residing in the State of Oregon.  The NMT Parties further admit that Defendant Minnick resides at 8420 SW 89th Ave., Portland, OR 97223.  The NMT Parties deny the remaining allegations contained in Paragraph 4 of the Complaint.

5.    The NMT Parties admit that Defendant New Millennium Tools, Inc., is an Oregon corporation.  The NMT Parties deny the remaining allegations contained in Paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint and, therefore, deny each and every such allegation.

7.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and, therefore, deny each and every such allegation.

## "TESLA INDUSTRIES' BUSINESS"

8.     The NMT Parties admit that a document purporting to be the Affidavit of David J. Masilotti ("Masilotti Affidavit") is attached to the Complaint as Exhibit A.  The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint or the allegations contained in the Masilotti Affidavit and, therefore, deny each and every such allegation.

9.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and, therefore, deny each and every such allegation.

## "TESLA INDUSTRIES' EFFORTS TO PROTECT ITS INFORMATION"

10.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, therefore, deny each and every such allegation.

11.     The NMT Parties admit that a document entitled "Access to Tesla Industries Technology Resources" is attached as Exhibit B to the Complaint.  The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in

Paragraph 11 of the Complaint or Exhibit B thereto and, therefore, deny each and every such allegation.

12.      The NMT Parties admit that a document entitled "Agreement of Non-Disclosure" is attached as Exhibit C to the Complaint. The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint or Exhibit C thereto and, therefore, deny each and every such allegation.

13.      The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and, therefore, deny each and every such allegation.

## "WALDMANN'S THEFTS FROM TESLA INDUSTRIES"

14.      The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and, therefore, deny each and every such allegation.

        (A)    Denied.

        (B)    Denied.

        (C)    Denied.

        (D)    Denied.

        (E)    Denied.

## "THE DEFENDANTS' FRAUDULENT SCHEME"

15.      The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and, therefore, deny each and every such allegation.

16.      Denied.

17.    Denied.

18.    Denied.

19.    Admitted, except the NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in the second sentence in Paragraph 19 of the Complaint, and therefore deny such allegations.

20.    Admitted.

21.    Denied.

22.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and, therefore, deny each and every such allegation.

23.    Denied.

24.    Denied.

25.    Denied.

26.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint and, therefore, deny each and every such allegation.

27.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint and, therefore, deny each and every such allegation.

28.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint and, therefore, deny each and every such allegation.

29.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint and, therefore, deny each and every such allegation.

30.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint and, therefore, deny each and every such allegation.

31.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint and, therefore, deny each and every such allegation.

## COUNT I

### VIOLATION OF UNIFORM TRADE SECRETS ACT – WALDMANN

32.    The NMT Parties repeat and reallege the responses to Paragraphs 1 through 31 of the Complaint as though fully set forth herein.

33.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint and, therefore, deny each and every such allegation.

34.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint and, therefore, deny each and every such allegation.

35.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and, therefore, deny each and every such allegation.

36.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and, therefore, deny each and every such allegation.

37.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint and, therefore, deny each and every such allegation.

38.    The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and, therefore, deny each and every such allegation.

## COUNT II

### VIOLATION OF UNIFORM TRADE SECRETS ACT – HOLLINGSWORTH, <u>MINNICK AND NEW MILLENNIUM TOOLS, INC.</u>

39.    The NMT Parties repeat and reallege the responses to Paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

## COUNT III

### <u>BREACH OF CONTRACT – WALDMANN</u>

45.    The NMT Parties repeat and reallege the responses to Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint and, therefore, deny each and every such allegation.

47.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint and, therefore, deny each and every such allegation.

48.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint and, therefore, deny each and every such allegation.

**COUNT IV**

**CONVERSION BY ALL DEFENDANTS**

49.     The NMT Parties repeat and reallege the responses to Paragraphs 1 through 48 of the Complaint as though fully set forth herein.

50.     Denied.

51.     Denied.

**COUNT V**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE
CONTRACTUAL RELATIONS BY WALDMANN**

52.     The NMT Parties repeat and reallege the responses to Paragraphs 1 through 51 of the Complaint as though fully set forth herein.

53.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint and, therefore, deny each and every such allegation.

54.     The NMT Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and, therefore, deny each and every such allegation.

## COUNT VI

## CONSPIRACY BY WALDMANN, HOLLINGSWORTH, MINNICK AND NEW MILLENNIUM TOOLS

55.     The NMT Parties repeat and reallege the responses to Paragraphs 1 through 54 of the Complaint as though fully set forth herein.

56.     Denied.

      A.     Denied.

      B.     Denied.

      C.     Denied.

## AFFIRMATIVE DEFENSES

The NMT Parties allege the following Affirmative Defenses and reserve the right to modify and supplement these defenses as discovery proceeds in this litigation.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to identify any trade secret information.  Plaintiff's alleged trade secrets and confidential information are not secret because:  (a) they are publicly available; (b) Plaintiff has failed to undertake reasonable efforts to maintain the secrecy of their alleged trade secrets; and (c) they are publicly known.

## THIRD AFFIRMATIVE DEFENSE

The NMT Parties were authorized by Plaintiff to engage in the alleged activities.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the NMT Parties are barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the NMT Parties are barred, in whole or in part, by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the NMT Parties are barred, in whole or in part, by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the NMT Parties are barred, in whole or in part, by the doctrine of acquiescence.

WHEREFORE, the NMT Parties request that this Honorable Court dismiss this Complaint with prejudice and enter judgment in their favor as to each and every Count alleged against them in the Complaint and award to the NMT Parties their fees and costs in defending this matter (*see* 6 Del. C. § 2004) along with such other relief as the Court deems just.

## COUNTERCLAIMS

## (DECLARATORY JUDGMENT OF LACK OF TRADE SECRETS; ABUSE OF PROCESS; ANTITRUST; TORTIOUS INTERFERENCE WITH CONTRACT; TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND UNFAIR COMPETITION)

Defendants/Counterclaimants Lyndol W. Hollingsworth ("Hollingsworth"), Charles Minnick a/k/a Chuck Minnick ("Minnick") and New Millennium Tools, Inc. ("NMT")

(hereinafter collectively referred to as the "NMT Parties") for their Counterclaims against Tesla Industries state as follows:

1.      The NMT Parties repeat and reallege the responses to Paragraphs 1 though 56 of the Complaint as though fully set forth herein.

## THE PARTIES

2.      Lyndol C. Hollingsworth is an adult individual residing in the State of Texas.  Mr. Hollingsworth resides at 923 Timber Trail, Cedar Park, Texas 78613-3437.

3.      Charles Minnick is an adult individual residing in the State of Oregon.  Mr. Minnick resides at 8420 SW 89th Ave., Portland, Oregon 97223.

4.      New Millennium Tools, Inc., is an Oregon corporation, with its principal place of business located at 1160A Allen Blvd., Beaverton, Oregon 97005.

5.      Counterclaim-Defendant Tesla Industries, Inc. ("Tesla Industries") is a Delaware corporation with its principal place of business located at 109 Centerpoint Blvd., New Castle, Delaware 19720.

6.      David C. Waldmann is an adult individual residing in the State of Pennsylvania. Upon information and belief, Mr. Waldmann resides at 6 Robin Road, Malvern, Pennsylvania 19355.   At all times relevant herein, Mr. Waldmann was an employee and military sales representative for Tesla Industries.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over these counterclaims, *inter alia*, pursuant to 28 U.S.C.   §   1332(a).    Counterclaim-Defendant Tesla Industries is a citizen of Delaware. Counterclaim-Plaintiff Hollingsworth is a citizen of Texas and Counterclaim-Plaintiffs Minnick

and NMT are citizens of Oregon. The amount in controversy exceeds $75,000. Venue over these counterclaims is proper to the extent it is proper over Plaintiff's claims.

## BACKGROUND OF THE INSTANT MATTER

8.     Mr. Hollingsworth is a developer of electrical equipment and power tools. Prior to the instant action, Mr. Hollingsworth had a contractual relationship with DC Power Equipment, L.L.C., which is located in Austin, Texas, to develop and license power equipment.

9.     NMT is a newly formed corporation by Messrs. Hollingsworth and Minnick to supply power equipment to the United States military. In order to obtain the necessary government contracts to meet this goal, it is important that NMT source many of the components of its equipment from corporations that manufacture and sell their parts in the United States. *See* 41 U.S.C. § 10(a) (2005).

10.     Tesla Industries, which is located in the United States, manufactures and sells standard portable ground power units and electrical equipment for military and commercial applications.

11.     In mid-2005, Mr. Hollingsworth, on behalf of NMT, contacted Tesla Industries with the intent to purchase parts that would be incorporated into a product supplied by NMT to the United States military.

12.     Upon stating his intent to purchase certain parts from Tesla Industries, Mr. Hollingsworth was directed to Tesla Industries' Sales Representative, Mr. Waldmann. Upon information and belief, Mr. Waldmann was an authorized agent of Tesla Industries and had complete authority to negotiate the sale of Tesla Industries' products.

13.     For several months, Mr. Hollingsworth communicated with Tesla Industries' Sales Representative, Mr. Waldmann, regarding the purchase of certain commodity items marketed

and sold by Tesla Industries that could be incorporated into power equipment for the United States military, including but not limited to the NATO receptacle that is commercially advertised on Tesla Industries website (www.teslaind.com).

14.    On or about January 27, 2006, in bad faith, without probable cause and with a malicious intent, Tesla Industries filed the present action against the NMT Parties for theft of trade secrets, tortious interference, conversion and conspiracy, and requested a temporary restraining order and preliminary injunction against the NMT Parties.

15.    Upon information and belief, at the time Tesla Industries filed the unfounded complaint, it knew or reasonably should have known of the contractual relationship between Mr. Hollingsworth and DC Power Equipment, L.L.C.

16.    As the direct and proximate result of Tesla Industries' frivolous and baseless action, the contractual relationship between Mr. Hollingsworth and DC Power Equipment, L.L.C. was terminated.

17.    Immediately after the baseless Complaint was filed, but before the NMT Parties could obtain counsel, Tesla Industries, by and through its agents, with ulterior motives, improperly coerced the NMT Parties to agree to a temporary restraining order.

18.    As the direct and proximate result of this litigation and the temporary restraining order, the NMT Parties have lost business, capital infusion and business opportunities and have incurred attorneys fees and expenses.

## COUNTERCLAIM I

## DECLARATORY JUDGMENT THAT TESLA'S PURPORTEDLY CONFIDENTIAL INFORMATION ARE NOT TRADE SECRETS
### (28 U.S.C. § 2201-2 AND 10 Del. C. § 6501, *et seq.*)

19.     The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

20.     The Delaware Trade Secrets Act (6 Del. C. § 2001 *et seq.*) prohibits the misappropriation of trade secrets.

21.     Tesla Industries claims to have trade secrets, and further claims that the NMT Parties have misappropriated trade secrets belonging to Tesla Industries in violation of the Delaware Trade Secrets Act.

22.     The NMT Parties wish to continue the business of developing and supplying portable ground power equipment to the United States military without risk of violating any rules prohibiting the misappropriation of trade secrets, but cannot do so unless the Court first determines that Tesla Industries has no trade secrets, determines which of Tesla Industries' alleged trade secrets are valid and the nature and scope of such trade secrets.

WHEREFORE, pursuant to Fed. R. Civ. P. 57, the NMT Parties pray that this Court issue a declaratory judgment in favor of the NMT Parties and against Tesla Industries as follows:

23.     That the items claimed by Tesla Industries in its Complaint to be trade secrets do not qualify for that status and are not trade secrets.

24.     That the NMT Parties, and each of them, have in their possession (with respect to the trade secrets alleged in the instant action) no trade secrets of Tesla Industries that are protected under the Delaware Trade Secrets Act, common law, or otherwise.

25.     If this Court determines that Tesla Industries has one or more trade secrets protectable under the Delaware Trade Secrets Act, the common law, or otherwise, the NMT Parties respectfully request that this Court make a full and final determination on each such claim to trade secrets sufficient to provide a clear and detailed determination of the nature and scope of these trade secrets.

## COUNTERCLAIM II

### ABUSE OF PROCESS

26.     The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

27.     On or about January 27, 2006, Plaintiff Tesla Industries filed the present action for theft of trade secrets, tortious interference, conversion and conspiracy, and requested a temporary restraining order and preliminary injunction against the NMT Parties.  The filing of the action, and the request for a temporary restraining order and preliminary injunction constitute abuse of process in that the action was not filed (and the temporary restraining order not requested) in order to obtain legal redress or because Tesla Industries believed that the NMT Parties had misappropriated alleged trade secrets; nor was the action filed because Tesla Industries believed that it had suffered any monetary loss as a result of the alleged trade secret misappropriation; nor was the action filed for any other proper purpose.  Rather, despite knowing that the materials were not trade secrets, Tesla Industries nevertheless filed this action and obtained a temporary restraining order for improper purposes, with ulterior motives, to accomplish certain ends or goals for which the action was not designed, including but not limited to the following:

(a)    To harass and cause financial hardship to the NMT Parties;

(b)    To obstruct justice;

(c)    To prevent the NMT Parties from contracting with other entities that market and sell the same parts sold by Tesla Industries; and

(d)    To obtain discovery in pursuit of Tesla Industries claims against Mr. Waldman.

28.    As a direct and proximate result of Tesla Industries' abuses of process, the NMT Parties, and each of them, have suffered property damage and economic losses. The NMT Parties, and each of them, have further suffered loss of income, loss of capital infusion, loss of business and loss of prospective business, and also have incurred attorneys fees and court costs as a direct and proximate result of Tesla Industries' abuses of process detailed herein.

29.    Tesla Industries' filing of the present action and procurement of a temporary restraining order for an improper purpose was done willfully, maliciously, oppressively and in conscious disregard of the NMT Parties' rights in property and other rights.

30.    Due to the willful and malicious nature of Tesla Industries' conduct, and of the rights and privileges Tesla Industries has tried to abridge by filing this action and procuring a temporary restraining order, it is necessary to assess punitive and exemplary damages against Tesla Industries to punish and make an example of Tesla Industries and in order to deter it and others from engaging in similar conduct in the future.

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries as follows: (1) that Tesla Industries be required to pay each NMT Party compensatory and special damages in an amount according to proof, and punitive damages; and

16

(2) that Tesla Industries' causes of action be dismissed in their entirety, with prejudice, in favor of the NMT Parties.

## COUNTERCLAIM III

### ANTITRUST (SHERMAN AND CLAYTON ACTS)

31.    The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

32.    Tesla Industries has filed this lawsuit, which constitutes a "sham" litigation for at least the following reasons:

(a)    The claims that Tesla Industries has asserted in the Complaint are objectively baseless in that no reasonable litigant could realistically expect success on the merits of those claims;

(b)    Tesla Industries made factual or legal allegations in its Complaint and in procuring the temporary restraining order for which it had no good faith or objectively reasonable basis;

(c)    Tesla Industries filed the Complaint and obtained the temporary restraining order despite knowing that the materials-at-issue were not trade secrets; and

(d)    Tesla Industries initiated this lawsuit and obtained the temporary restraining order not for the purpose of seeking and ultimately obtaining any proper remedy due it under the law but for the purposes of directly interfering with the business relationships of a competitor and forcing a legitimate business competitor from the market.

33.    Upon information and belief, Tesla Industries has engaged in such anticompetitive conduct with the specific intent to monopolize the relevant market.

34.     Unless corrected, there is a dangerous probability that Tesla Industries' anticompetitive conduct will result in Tesla Industries achieving monopoly power in the relevant market.

35.     For purposes of this counterclaim, the relevant market is portable ground power units, power sockets and tools that are sold to the United States military.   The relevant geographic market is the United States because Tesla Industries attempts to sell its products through government contracts to the United States military.

36.     Through its anticompetitive practices, Tesla Industries is attempting intentionally to monopolize the relevant product and geographical markets described herein.

37.     Rather than competing by designing, producing and selling a superior product, Tesla Industries has instead attempted to monopolize the market by improper and unlawful actions.  For example, by filing this sham lawsuit, Tesla Industries threaten improperly to destroy competition in the relevant market from which the United States military, including those members serving in combat, benefit through better products and support.

38.     The acts of Tesla Industries complained of herein represent an attempt to monopolize the trade in violation of the Sherman Act, 15 U.S.C. § 2.

39.     As a direct and proximate result of Tesla Industries' attempt at monopolization, the NMT Parties suffered and continue to suffer injuries and damages to their business and property as set forth in the Clayton Act, 15 U.S.C. § 15(a).

40.     As a direct and proximate result of Tesla Industries' conduct as described herein, the NMT Parties suffered or will suffer damages including, but not limited to, lost sales or sales opportunities for their products, lost capital infusion, and expenses related to defending against this litigation including, *inter alia*, attorneys fees and costs.

18

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries for compensatory damages, treble damages, legal fees and other such relief as the Court deems just.

**COUNTERCLAIM IV**

**<u>TORTIOUS INTERFERENCE WITH CONTRACT</u>**

41.    Mr. Hollingsworth realleges, repeats and incorporates by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as his foregoing answer, as if set forth fully herein.

42.    Prior to the filing of the Complaint, Mr. Hollingsworth was in a contractual relationship with non-party DC Power Equipment, L.L.C. to develop and design power equipment tools.

43.    Tesla Industries knew of the contractual relationship between Mr. Hollingsworth and DC Power Equipment.  (*See* Complaint at ¶ 17.)

44.    Upon information and belief, with full knowledge of the contractual relationship between Mr. Hollingsworth and DC Power Equipment and with intent to disrupt that relationship, Tesla Industries and its agents contacted DC Power Equipment regarding this lawsuit and its relationship with Mr. Hollingsworth.

45.    In engaging in the conduct described in this count of the counterclaim, Tesla Industries and its agents acted improperly and without privilege, justification or excuse.

46.    As a result of Tesla Industries' wrongful conduct, Mr. Hollingsworth has lost sales, good will and normal growth opportunities and has suffered pecuniary loss.

WHEREFORE, Mr. Hollingsworth prays judgment on this counterclaim against Tesla Industries for compensatory damages, punitive damages, legal fees and costs and such other relief as the Court deems just.

## COUNTERCLAIM V

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE

47.    The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

48.    Tesla Industries has interfered with the NMT Parties' economic advantages and opportunities.  Tesla Industries knew or should have known that the claimed materials were not trade secrets.  By filing its baseless claims and obtaining a temporary restraining order, Tesla Industries intentionally interfered with the NMT Parties' right to pursue business opportunities available to them.

49.    By engaging in conduct described in this counterclaim, Tesla Industries intentionally interfered with the prospect of, or reasonable expectation of, economic advantage to the NMT Parties arising from development or capital for NMT and the development and ultimate sales of NMT products.  Furthermore, the aforementioned acts of tortious interference were the direct and proximate cause of damages to the NMT Parties including, but not limited to: loss of good will in the market and among actual and potential customers; loss of potential market share; and loss of business opportunities with the United States military.

50.    There is a reasonable probability that, but for Tesla Industries' conduct, the NMT Parties would have realized economic advantage in the form of the development of capital and sales of NMT products.

20

51.     In engaging in the conduct described herein, Tesla Industries acted for the purpose of damaging the NMT Parties and, in doing so, acted improperly, maliciously and with ill will. Tesla Industries' conduct was willful, intentionally and unprivileged, and in bad faith.

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries for compensatory damages, punitive damages, legal fees and costs and such other relief as the Court deems just.

## COUNTERCLAIM VI

## UNFAIR COMPETITION – STATE COMMON LAW

52.     The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

53.     With full knowledge that the subject materials were not trade secrets, Tesla Industries acted in bad faith and engaged in willful, intentional and unprivileged conduct that was an abuse of the judicial process by, *inter alia*, its filing of the instant complaint, its procurement of a temporary restraining order and its public contact with customers and potential customers of the NMT Parties, all in order to prevent the NMT Parties from developing and selling portable power equipment to the United States military.

54.     By wrongfully bringing and maintaining this action, procuring a temporary restraining order and its public contact with customers and potential customers of the NMT Parties, Tesla Industries was unfairly competing with the NMT Parties. The willful, intentional and unprivileged conduct by Tesla Industries violated public policy, was unfair, wrongful, and constituted unlawful trade practices under state common law.

55.     The acts by Tesla Industries caused the NMT Parties harm, including, but not limited to: the expenditure of substantial time, effort and resources; unnecessary costs and attorneys' fees; and defending themselves in the trade and financial communities.

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries for compensatory damages, punitive damages, legal fees and costs and such other relief as the Court deems just.

**COUNTERCLAIM VII**

**<u>UNFAIR COMPETITION – STATE STATUTORY LAW</u>**

56.     The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

57.     The acts of Tesla Industries and its agents complained of above constitute unfair competition and unlawful trade practices under applicable state statutory law, including, but not limited to, 6 <u>Del</u>. <u>C</u>. § 2531, *et seq.*

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries for compensatory damages, punitive damages, legal fees and costs and such other relief as the Court deems just.

## COUNTERCLAIM VIII

### UNFAIR COMPETITION – LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))

58.    The NMT Parties reallege, repeat and incorporate by reference herein the allegations set forth in all of the foregoing paragraphs of the counterclaims as well as their foregoing answer, as if set forth fully herein.

59.    The NMT Parties have invested considerable resources to develop goodwill with their customers.

60.    Tesla Industries made false and misleading factual representations in interstate commerce about the NMT Parties' goods.

61.    The false and misleading statements about the NMT Parties' goods made by Tesla Industries actually deceived or were likely to deceive substantial segments of the military's procurement of portable ground power units, power sockets and electrical tools.

62.    The acts of Tesla Industries and its agents described herein constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

63.    Such acts by Tesla Industries have caused and will continue to cause injuries and damages to the NMT Parties as set forth above.

WHEREFORE, the NMT parties, and each of them, pray judgment on this counterclaim against Tesla Industries for compensatory damages, punitive damages, legal fees and costs and such other relief as the Court deems just.

**JURY DEMAND**

The NMT Parties respectfully request a jury trial on all issues, causes of action and counterclaims so triable.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:     (302) 654-1888
Facsimile:     (302) 654-2067

*Attorneys for Defendants Lyndol W.*
*Hollingsworth, Charles Minnick and New*
*Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC  20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006

Dated: March 27, 2006
168013.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2006, the attached **ANSWER AND COUNTERCLAIMS OF DEFENDANTS LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK A/K/ACHUCK MINNICK AND NEW MILLENNIUM TOOLS, INC. AND DEMAND FOR JURY TRIAL** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Brian A. Sullivan, Esquire                                          HAND DELIVERY
Werb & Sullivan
300 Delaware Avenue, 13th Floor
Wilmington, DE  19801

John D. Demmy, Esquire                                          HAND DELIVERY
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE  19801

_____
John G. Day

166961.1