## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-055-GMS |
| v. | ) | |
| | ) | |
| DAVID C. WALDMANN, | ) | |
| LYNDOL W. HOLLINGSWORTH, | ) | |
| CHARLES MINNICK a/k/a CHUCK MINNICK, | ) | |
| and NEW MILLENNIUM TOOLS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## THE NMT DEFENDANTS' COMBINED ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:    (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W. Hollingsworth, Charles Minnick and New Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300

Dated: December 21, 2006
176277.1

## TABLE OF CONTENTS

                                                                          **Page**

A.    NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

B.    SUMMARY OF THE ARGUMENT ...................................................................1

C.    ARGUMENT..................................................................................................2

    1.    Tesla's Motion To Amend Is Addressed
        To The Wrong Legal Standard ......................................................2

        (a) Tesla Cannot Demonstrate Excusable Neglect ......................................3

        (b) Tesla Cannot Show Good Cause To Amend Its Reply.........................4

        (c) Tesla Should Not Be Rewarded For Ignoring Its Obligation
            To Follow This Court's Rules................................................................6

    2.    Tesla Is Bound By It's Counsel's Admissions ............................................8

    3.    Tesla's Proposed Amendment Will Prejudice The NMT Defendants.........9

D.    CONCLUSION................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderberg v. Masonite Corp.,*
    176 F.ER.D. 682 (N.D. Ga. 1997) ........................................................10

*Bradford v. DANA Corp., Inc.,*
    249 F.3d 807 (8th Cir. 2001) ............................................................4

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,*
    602 F.2d 1062 (2d Cir. 1979)...........................................................8

*Dimensional Comm'ns, Inc. v. OZ Optics, Ltd.,*
    148 Fed. Appx. 82 (3d Cir. 2005) .....................................................4

*Eastern Minerals & Chemicals. Co. v. Mahan,*
    225 F.3d 330 (3d Cir. 2000).............................................................4

*Gen. Signal Corp. v. MCI Telecommunications Corp.,*
    66 F.3d 1500 (9th Cir. 1995) .........................................................10

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,*
    398 F. Supp. 2d 305 (D. Del. 2005) ...................................................8

*Inge v. Rock Fin. Corp.,*
    281 F.3d 613 (6th Cir. 2002) ...........................................................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
    430 F.3d 1377, 1385-86 (Fed. Cir. 2005) ............................................3

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir.1992) ............................................................4

*Link v. Wabash Railroad Co.,*
    370 U.S. 626 (1962)........................................................................9

*Martinez v. Cornell Corr. of Texas, Inc.,*
    229 F.R.D. 236 (D.N.M. 2005).........................................................9

*Maurizio v. Goldsmith,*
    84 F. Supp. 2d 455 (S.D.N.Y. 2000)..................................................9

*O'Connell v. Hyatt Hotels of Puerto Rico,*
    357 F.3d 152 (1st Cir. 2004) ...........................................................4

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**CASES**

*Parker v. Columbia Pictures Indus.,*
    204 F.3d 326 (2d Cir. 2000)...............................................................4

*Rosario-Diaz v. Gonzalez,*
    140 F.3d 312 (1st Cir. 1998).............................................................8

*S&W Enters., L.L.C. v. Southtrust Bank of Alabama, NA,*
    315 F.3d 533 (5th Cir. 2003) ........................................................4, 5

*Smith v. District of Columbia,*
    430 F.3d 450 (D.C. Cir. 2005) ..........................................................3

*United States v. 7108 West Grand Avenue, Chicago Illinois,*
    15 F.3d 632 (7th Cir. 1994) ..............................................................8

*Wolf Designs, Inc. v. DHR & Co.,*
    231 F.R.D. 430 (N.D. Ga. 2005).......................................................5


**FEDERAL STATUTES**

Fed. R. Civ. P. 15(a) ................................................................................1

Fed. R. Civ. P. 16(b) .............................................................................1, 4

Fed. R. Civ. P. 6(b)(2)..............................................................................1

A.    **NATURE AND STAGE OF THE PROCEEDINGS**

Pursuant to the Scheduling Order entered in this case (D.I. 36), the pretrial conference is scheduled for May 21, 2007 and trial is scheduled to begin a few weeks later, on June 4, 2007. The deadline for amendment of pleadings passed on August 15, 2006, and discovery closed on November 30, 2006.

On December 1, 2006, defendants New Millennium Tools, Inc., Lyndol W. Hollingsworth and Charles Minnick ("the NMT Defendants") moved for partial summary judgment on their antitrust counterclaim (D.I. 106) because plaintiff Tesla Industries, Inc. ("Tesla") had admitted in its reply to the antitrust counterclaim that: (1) it had engaged in anticompetitive practices in an attempt to monopolize the market for ground power units; (2) its attempts to monopolize trade violated the Sherman Act, 15 U.S.C. § 2; and (3) its attempt at monopolization proximately caused harm to the NMT Parties under 15 U.S.C. § 15(a). In response, Tesla has filed a motion seeking to amend its reply to the NMT Defendants' antitrust counterclaim to withdraw its admissions on the grounds that they were inadvertent (D.I. 109). This is the NMT Defendants' combined answering brief in opposition to Tesla's motion to amend and reply brief in support of their motion for partial summary judgment.

B.    **SUMMARY OF THE ARGUMENT**

1.    Tesla's motion to amend its reply to the NMT Defendants' antitrust counterclaim is defective because it is addressed to the wrong legal standard. Fed. R. Civ. P. 15(a) does not apply in the circumstances presented here, and Tesla cannot show excusable neglect sufficient to satisfy Fed. R. Civ. P. 6(b)(2), or satisfy the good cause standard set forth in Fed. R. Civ. P. 16(b). Indeed, Tesla's approach to its motion to

amend is simply the latest in a series of actions demonstrating that Tesla does not take this Court or its rules seriously.

2.      The law is clear that Tesla is bound by it counsel's admissions.

3.      Even if the more liberal standard of Rule 15(a) were to apply (and, as stated above, it does not), Tesla's motion to amend its reply to the NMT Defendant's antitrust counterclaim still should be denied because it would unduly prejudice the NMT Defendants at this late stage of the litigation.

4.      In the event the Court does grant Tesla leave to amend, such leave should only be granted on the condition that Tesla cooperate in additional discovery and reimburse the NMT Defendants for all costs and attorneys' fees incurred in connection with the additional discovery that will be required concerning the antitrust counterclaim.

## C.      ARGUMENT

### 1.      Tesla's Motion To Amend Is Addressed To The Wrong Legal Standard.

Tesla has moved under Rule 15(a) to amend its reply to the NMT Defendants' antitrust counterclaims to correct what it characterizes as "simple," "obvious" and "inadvertent" transcription errors.  Here, however, because the Court entered a Scheduling Order that set a deadline to amend pleadings, and that deadline passed over four months ago, the liberal standard set forth in Rule 15(a) does not apply.  Tesla must instead satisfy the more rigorous standards set forth in Rule 6(b)(2) and Rule 16(b).

Rule 6(b)(2) provides in pertinent part that: "When … an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion … (2) upon motion made after the expiration of the specified period permit the act to be done when the failure to act was the result of excusable neglect."

Indeed, a formal request for an excusable neglect extension is required and a district court abuses its discretion in granting such relief in the absence of a motion by the affected litigant. *Smith v. District of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005*); IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1385-86 (Fed. Cir. 2005).

Similarly, Rule 16(b), which empowers the Court to issue scheduling orders, states that once a scheduling order has issued in a case, it "shall not be modified except upon a showing of good cause and by leave of the district judge."

Here, Tesla has not even bothered to address the Rule 6(b)(2) standard for excusable neglect, or attempted to make a showing of good cause under Rule 16(b). And, as demonstrated below, Tesla cannot satisfy these standards.

**(a)     Tesla Cannot Demonstrate Excusable Neglect**

The only excuse that Tesla offers to explain the inadvertent admissions in its reply to the NMT Defendants' antitrust counterclaims is that its lead counsel was out of the office on vacation when Tesla's reply was prepared. *See* Affidavit of Brian Sullivan (D.I. 109, Exhibit A) at ¶¶ 7 and 10. Remarkably, Tesla does not even attempt to explain how or why the attorney who actually signed and filed its reply failed to notice its inadvertent admissions. Tesla also does not attempt to explain why none of the other attorneys at the two law firms it has retained (and who are active) in this litigation failed to notice its inadvertent admissions until after the NMT Defendants' motion for partial summary judgment was filed. Indeed, if one takes Tesla's statement that "few rational persons reading these admissions would see them as other than what they are—clearly a mistake" (Tesla Motion at 5) at face value, one is left with only one conclusion; that *none* of Tesla's attorneys bothered to read its reply to the counterclaims until the NMT

Defendants filed their motion for partial summary judgment. This shocking lack of attention to Tesla's own pleadings can hardly be considered excusable neglect.

### (b)    Tesla Cannot Show Good Cause To Amend Its Reply

Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause...." The advisory committee notes on the Rule explain that there is good cause "if [the schedule] cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) advisory committee's notes (1983 amendments).

Several circuit courts of appeal have held that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the [modification].... If that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992); *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Bradford v. DANA Corp., Inc.*, 249 F.3d 807, 809 (8th Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). The Third Circuit adopted the good cause standard in connection with Rule 16(b) in *Eastern Minerals & Chemicals. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). *See Dimensional Comm'ns, Inc. v. OZ Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005) (affirming denial of motion to amend where party sought to amend after passage of deadline for amendment in the scheduling order).

The lack of diligence demonstrated by Tesla here provides more than a sufficient basis to deny its motion to amend. *See, e.g., S&W Enters., L.L.C. v. Southtrust Bank of*

*Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Wolf Designs, Inc. v. DHR & Co.*, 231 F.R.D. 430, 436 (N.D. Ga. 2005).

First, as demonstrated above, no one on behalf of Tesla in this litigation apparently even read the admissions at issue. Second, no one on behalf of Tesla apparently paid any attention to actions of counsel for the NMT Defendants that should have clearly signaled that the admissions had been made. For example, counsel for the NMT Defendants chose not to seek any discovery to support their antitrust claim as a result of the admissions. Had Tesla focused on that fact, it surely would have discovered that the admissions had been made. Similarly, during the deposition of Tesla's President, David J. Masilotti, counsel for the NMT Defendants marked the NMT Defendants' answer and counterclaims as an exhibit, questioned him about whether he had seen the document before, and asked whether he was aware of the counterclaims. (*See* Exhibit 1 at pp. 63-67) Counsel for the NMT Defendants then marked a copy of Tesla's reply to the counterclaims as an exhibit and provided it to Mr. Masilotti and his counsel. *Id*. After Mr. Masilotti and his counsel had reviewed the reply, Mr. Masilotti was asked if the reply to counterclaims was authorized, and he agreed. *Id*.[1] Again, had anyone from Tesla bothered to focused on the possible reason for the NMT Defendants' inquiry, they surely would have discovered the admissions that Tesla had made. Unfortunately, however, it took the filing of the NMT Defendants' motion for partial summary judgment to finally focus Tesla's attention on its admissions.

Such a cavalier approach to this litigation, and lackadaisical attention to detail, surely do not support a finding of good cause under Rule 16(b). Indeed, in this Court's

---

[1] The deposition was videotaped and will soon be available, should the Court wish to watch for itself Mr. Masilotti's and his counsel's review of the pleadings in question during his deposition.

words, Tesla's response was at best "a day late and a dollar short." *In re Elonex Phase II Power Management Litigation* (D. Del. 2003) (Sleet, J.) (denying motion for relief from default judgment and sanctioning counsel under 28 U.S.C. § 1927 for filing it).

### (c)    Tesla Should Not Be Rewarded For Ignoring Its Obligation To Follow This Court's Rules

In filing its motion for leave to amend, Tesla did not advise the Court that the deadline for amendments had passed last August, and did not cite the rules that govern its request. Unfortunately, this is not the first time in this case that Tesla has neglected to follow this Court's rules and practices.

For example, as set forth in the NMT Defendants' Motion For Protective Order (D.I. 86), during the deposition of defendant Waldmann, Mr. Masilotti—appearing as Tesla's corporate representative—repeatedly called Mr. Waldmann "retarded" on the record. In response to the motion, Tesla represented to the Court that "[e]ven if comments were made by Tesla's representatives at the deposition, that is no cause for prohibiting attendance of the individuals at future depositions, especially since Plaintiff's counsel has given assurances that they will not audibly verbalize their feelings about Defendants." *See* D.I. 89 at unnumbered page 2. Despite that representation, however, when Mr. Masilotti appeared for his own deposition, he again accosted Mr. Waldmann, this time threatening him on the record with criminal prosecution. *See* excerpt of deposition of David J. Masilotti, Exhibit 2.

Similarly, after NMT's counsel raised concern that a videotape produced by Tesla in discovery had been edited, [2] Tesla made the following representation of fact to the Court:

> NMT Defendant's lead counsel accuses Tesla of editing a video tape produced to Defendants. <u>The simple fact is that no editing occurred</u> and the person that was doing the recording will be available for deposition next week to confirm that fact. It is hoped that this explanation under oath will satisfy Defendants and avoid additional, unnecessary motion practice.

*See* D.I. 89 at unnumbered page 3, n.3 (emphasis added). When the individual who recorded the video at issue was deposed, however, he testified that editing had, in fact, occurred. *See* Exhibit 3. Thereafter, during Mr. Masilotti's deposition, counsel for the NMT Defendants requested that Tesla correct the factual misrepresentation that had been made to the Court. *See* excerpt of deposition of David J. Masilotti, attached hereto as Exhibit 4. In spite of this request and its obligations of candor to this Court, Tesla has failed to withdraw its false statement from the record.

The conduct described above demonstrates that Tesla has repeatedly thumbed its nose at this Court's rules and procedures. The NMT Defendants respectfully suggest that if the Court now grants Tesla's request for relief from this Court's Scheduling Order and the governing rules, it will simply reinforce Tesla's failure to take this Court and its rules seriously.

Tesla's eleventh-hour request to be excused from the legal consequences of its neglect is, in essence, a plea in equity. Equitable relief should be foreclosed to Tesla,

---

[2] Providing a redacted video recording without apprising the other party that it has been redacted is, in and of itself, sanctionable misconduct. *See Food Lion, Inc. v. Capitol Cities/ABC, Inc.*, 165 F.R.D. 454, 457 (M.D.N.C. 1996).

because when a party who sets the judicial machinery in motion to obtain a remedy violates conscience, good faith or any other equitable principal, then the court should refuse its right to a remedy. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 311 (D. Del. 2005).

### 2.    Tesla Is Bound By It's Counsel's Admissions

Tesla also attempts to argue that it should not be bound by its counsel's admissions. *See* Answering Brief in Opposition to Summary Judgment Motion at 4-5 (D.I. 110). As a matter of black letter law, this assertion is entirely without merit.

Clients are principals and an attorney is an agent under the law of agency and a principal is bound by his chosen agent's deeds. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (The acts or omissions of counsel are normally wholly attributable to the client, so a litigant chooses counsel at his peril.). This fundamental principle of attorney-client relations is equally applicable where there has been malfeasance by the attorney. "Attorneys represent clients, and, as a general rule, an attorney's blunder binds her client." *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998). *See also United States v. 7108 West Grand Avenue, Chicago Illinois*, 15 F.3d 632, 633-34 (7th Cir. 1994) ("Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary."). Here, Tesla "voluntarily chose this attorney as [its] representative in the action, and [it] cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice

of which can be charged upon the attorney." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962).

**3.    Tesla's Proposed Amendment Will Prejudice The NMT Defendants**

Even if the standards of Rule 6(b)(2) and Rule 16(b) did not apply, Tesla could not even satisfy the liberal requirements of Rule 15(a) because the proposed amendment would unduly prejudice the NMT Defendants.

Because matters to which there is an admission in an answer require neither proof nor finding, *Martinez v. Cornell Corr. of Texas, Inc.*, 229 F.R.D. 236, 238-38 (D.N.M. 2005), and have the effect of withdrawing a fact from contention, *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 464 (S.D.N.Y. 2000), the NMT Defendants—in reliance upon Tesla's admissions—did not pursue discovery on its antitrust counterclaims.

The discovery required by the NMT Defendants to prove their antitrust counterclaim would consist of additional requests for production, interrogatories and requests for admission; and once responses to these additional written forms of discovery are received, the reopening of the deposition of Tesla's president, David J. Masilotti and/or a Rule 30(b)(6) deposition. It is anticipated that this exercise will require at least 45 days, which would require postponement of the pretrial conference and the trial, and would require a great deal of additional expense.

In the event the Court grants Tesla's Motion to Amend, the prejudice to the NMT Defendants could only be ameliorated by reopening discovery to permit them to obtain information they did not seek in reliance upon Tesla's admissions. Tesla should be ordered by the Court to cooperate in this additional discovery and bear all attorneys' fees and costs related to the additional discovery, as it was the acts and omissions of its

counsel and sole officer that created this situation. It is a well-settled proposition that costs may be imposed as a condition to granting leave to amend. *See, e.g., Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) (citing cases); *Anderberg v. Masonite Corp.*, 176 F.ER.D. 682, 687 (N.D. Ga. 1997). In at least two cases, this Court has conditioned leave to amend on payment of the opposing party's fees and expenses in at least two cases. *See Cemar, Inc. v. Nizzan Motor Corp.*, 678 F. Supp. 1091, 1106 (D. Del 1988); *Outboard Marine Corp. v. Pezetel*, 535 F. Supp. 248, 253 n.8 (D. Del. 1982).

## D.    CONCLUSION

For the reasons set forth herein, the NMT Parties respectfully request that this Court deny Tesla's Motion to Amend. In the alternative, the NMT Parties request that the Court reopen discovery for the limited purpose of permitting them to serve supplemental interrogatories, requests for admission and requests for production related to any amended answer to the Counterclaims filed by Tesla, and reopen the deposition of Tesla's president, David J. Masilotti, upon the receipt of substantive responses to their supplemental discovery requests; with all costs and attorneys' fees incurred by the NMT Parties related to this supplemental discovery to be paid by Tesla.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
Telephone:     (302) 654-1888
Facsimile:     (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W. Hollingsworth,
Charles Minnick and New Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC  20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006

Dated:  December 21, 2006
176277.1

11

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

# REDACTED

# EXHIBIT 3

DEPOSITION OF JOSEPH E. TALBOT, JR.
CONDUCTED ON TUESDAY, NOVEMBER 21, 2006

Page 40

1      Q.    Was it longer than one minute?

2      A.    Yes.

3      Q.    Was it longer than two minutes?

4      A.    I'm not sure.

5      Q.    Do you know for a fact it was longer than

6   one minute?

7      A.    Yes.

8      Q.    Prior to last night, had you made any

9   copies of this video?

10     A.    Yes.

11     Q.    Approximately how many copies of this video

12   had you created prior to last night?

13     A.    I don't remember.

14     Q.    Can you give me a guess?

15     A.    Two.

16     Q.    And who did you give those copies to?

17     A.    David Masilotti.

18     Q.    I've brought and I believe we have set up

19   the video.  I tried to fast-forward it to the part

20   where we believe this conversation took place.  Our

21   tape is not marked, however, with chapters or,

22   actually, a display of minute, time, second.

EXHIBIT

4

Page 41

1      A.    Right.

2      Q.    So I'll ask that you watch, because I had

3   to go to the beginning of a chapter, and it appears

4   the discussion is at the end of that chapter.

5      A.    All right.

6            (Video playback starts.)

7            MR. NICKEL:   That's it.

8            (Video playback stops.)

9   BY MR. NICKEL:

10     Q.    Is that the conversation that you reference

11  in paragraph 10 of your affidavit?

12     A.    Yes, it is.

13     Q.    Does it appear that only portions of that

14  conversation are recorded, or does the recording

15  reflect the complete conversation between

16  Mr. Masilotti and Mr. Waldmann?

17     A.    The recording has been edited.

18     Q.    How has the recording been edited?

19     A.    The recording was edited prior to

20  Mr. Waldmann's suspension, so -- for training

21  purposes.  I can tell that I was not recording

22  extraneous parts of the video where no work was taking

Page 42

1    place, where Mr. Masilotti had walked away from the

2    battery and was doing nothing to it, because it would

3    just waste the viewer's time.

4         Q.    Did the camera pick up the entire

5    conversation?

6         A.    Yes.

7         Q.    Did the video pick up the entire

8    conversation?

9         A.    Yes.

10         Q.    Do you have the original of that video?

11         A.    No.

12         Q.    What happened to the original of that

13    video?

14         A.    I gave it to Mr. Masilotti.

15         Q.    When did you give it to Mr. Masilotti?

16         A.    January 2nd, 2006.

17              MR. NICKEL:  Counsel, we renew our

18    request to have a complete copy of at least that

19    conversation.

20              MR. CRAWFORD:  We'll take your request

21    under advisement.

22    BY MR. NICKEL:

Page 48

1    and I mentioned to the guy, I was like, Listen, I'll,

2    I'll put you in touch with people in the military,

3    where you can get a stock number for your writing

4    and -- you know.  And I told him I'd kind of steer him

5    in the right direction with some things.

6                DAVID MASILOTTI:  Right.

7                (Tape cut.)

8                DAVID MASILOTTI:  ...causing a lot of

9    grief to me.

10               MR. CRAWFORD:  Let it run for a second.

11               DAVID MASILOTTI:  The other thing I

12   wanted to do (inaudible).

13               MR. CRAWFORD:  (Indicating.)

14               MR. NICKEL:  Is that an okay place to

15   stop, Mr. Crawford?

16               MR. CRAWFORD:  Yeah.

17               (Video playback stops.)

18   BY MR. NICKEL:

19        Q.   It's your previous testimony that this has

20   been edited; isn't that correct?

21        A.   Correct.

22        Q.   So the conversation between

Page 49

1    Mr. Waldmann and Mr. Masilotti had certain portions of

2    it cut out; is that correct?

3        A.    That is correct.

4        Q.    The conclusion of this discussion between

5    Mr. Masilotti and Mr. Waldmann's not on the video that

6    I have; is that correct?

7            MR. CRAWFORD:    Objection to foundation

8    and to conclusion.

9            THE WITNESS:    Correct.

10   BY MR. NICKEL:

11       Q.    Okay.  But the original that you gave to

12   Mr. Masilotti has this entire conversation on it;

13   isn't that correct?

14       A.    Correct.

15       Q.    Would it surprise you that your counsel has

16   represented -- strike that.

17            We were informed through a pleading

18   that this was an entire copy of the tape; is that

19   correct?

20       A.    Informed by what?

21       Q.    In a document filed with the Court.

22       A.    I have no knowledge of that.

Page 50

1      Q.   We were told that we would be able to

2   confirm its completeness with you today.  And that is

3   what I'm trying to do.  And just again, for the

4   record, so that it's clear, the video that I presented

5   to you is not complete; is that correct?

6      A.   Correct.

7           MR. NICKEL:  Thank you.

8           We've been going for about an hour and

9   15 minutes.  I'd like to go through some more of my

10  notes.  So if we could take a brief five-minute

11  break --

12          MR. CRAWFORD:  How long?

13          MR. NICKEL:  Five.

14          (Recess from 3:00 to 3:30 p.m.)

15          MR. CRAWFORD:  I just want to make a

16  statement for the record about some of the inferences

17  or accusations that were leveled at, I guess, me

18  personally, before the break.

19          As the witness clearly stated, that

20  tape that you saw has -- was not edited after this

21  dispute arose.  He did indicate that it was edited

22  vis-a-vis the original film.  That original film he

# EXHIBIT 4

**REDACTED**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 3rd day of January, 2007, the attached **REDACTED PUBLIC**

**VERSION OF THE NMT DEFENDANTS' COMBINED ANSWERING BRIEF IN**

**OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND REPLY BRIEF IN**

**SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** was served

upon the below-named counsel of record at the addresses and in the manner indicated:

Brian A. Sullivan, Esquire                                          <u>HAND DELIVERY</u>
Werb & Sullivan
300 Delaware Avenue, 13th Floor
Wilmington, DE  19801

Paul E. Crawford, Esquire                                         <u>HAND DELIVERY</u>
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE  19899

John D. Demmy, Esquire                                            <u>HAND DELIVERY</u>
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE  19801

John A. Adams, Esquire                                            <u>VIA FEDERAL EXPRESS</u>
Susanin, Widman & Brennan, PC
455 South Gulph Road, Suite 240
King of Prussia, PA  19406


*/s/ Lauren E. Maguire*
_____
Lauren E. Maguire

166961.1