# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC.,                )
                                       )    **PUBLIC VERSION**
    Plaintiff,     )
                                       )    C.A. No. 06-55-GMS
    v.             )
                                       )
DAVID C. WALDMANN, LYNDOL W.           )
HOLLINGSWORTH, CHARLES MINNICK         )
a.k.a. CHUCK MINNICK, and NEW          )
MILLENNIUM TOOLS, INC.,                )
                                       )
    Defendants.    )

## NMT DEFENDANTS' MOTION *IN LIMINE* NO. 2:
### TO PRECLUDE TESLA'S LEAD COUNSEL,
### <u>BRIAN A. SULLIVAN, ESQUIRE FROM TESTIFYING AT TRIAL</u>

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W.
Hollingsworth, Charles Minnick and New
Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300

Dated: April 5, 2007
179479.1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   FACTS .................................................................................................. 1

III.  ARGUMENT AND AUTHORITIES ..................................................... 3

IV.   CONCLUSION ..................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*Comcoa, Inc. v. NEC Tel., Inc.*, 931 F.2d 655 (10th Cir.1991) ...................... 4

*Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269 (3d Cir. 1995)................... 4

*Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D.Del.1977) ..................... 5

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000)...................... 4

*Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487 (D. Del. 2005) ............... 5

**Other Authorities**

D. Del. LR 7.1.3 ....................................................................................... 1

Delaware Rule Professional Conduct 3.7 ....................................... 1, 4

**Rules**

Fed. R. Civ. P. 26(a)(1)(A) ................................................................... 3

Fed. R. Civ. P. 37(c)(1)..................................................................... 1, 3

Fed. R. Evid. 403 ................................................................................... 1

Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. (collectively the "NMT Defendants"), by counsel and pursuant to Fed. R. Civ. P. 37(c)(1), Delaware Rule Professional Conduct 3.7 and D. Del. LR 7.1.3, respectfully submit this Motion *in Limine* to Preclude Tesla's lead counsel, Brian A. Sullivan, Esquire, from Testifying at Trial.

## I.    INTRODUCTION

As clearly set forth in their Answer and Counterclaims (D.I. 27), the NMT Defendants believe that Plaintiff Tesla Industries, Inc. ("Tesla") and its counsel improperly coerced the NMT Defendants into signing the Stipulated Restraining Order ("TRO"). D.I. 22. Specifically, Messrs. Hollingsworth and Minnick testified that they agreed to the TRO because Mr. Sullivan represented that they would be dismissed from the case if they signed the TRO. That representation was made before the NMT Defendants retained counsel, and forms some of the basis for the NMT Defendants' Second Counterclaim of Abuse of Process. In light of Mr. Sullivan's obvious involvement in key disputed issues, the NMT Defendants requested that Tesla inform them immediately if it planned to call Mr. Sullivan to testify at trial in response to the NMT Defendants' averments and, if so, to make Mr. Sullivan available for deposition. Tesla's response, however, failed to respond to the NMT Defendants' request. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Evid. 403, the NMT Defendants request an order precluding Mr. Sullivan from testifying at trial.

## II.    FACTS

Tesla filed its Verified Complaint alleging, *inter alia*, misappropriation of trade secrets and Motion for TRO on January 27, 2006. D.I. 2 and 5, respectively. Between January 27, 2006, and February 17, 2006, Tesla's lead counsel, Mr. Sullivan, and employees at his firm, had

multiple conversations and communications with the NMT Defendants. During these communications, Mr. Sullivan knew that the NMT Defendants were not represented by counsel.

Messrs. Minnick and Hollingsworth testified at deposition that Mr. Sullivan represented to them that, if they signed the TRO, Tesla would dismiss the claims against them and NMT. *See* Exhibit 1, Minnick 11/18/06 dep. at 189:5-191:22; *See* Exhibit 2, Hollingsworth 11/17/06 dep at 288:5-290:5. Based on Mr. Sullivan's representation that signing the TRO was "a get out of jail free card," Mr. Minnick signed the TRO on behalf of himself and NMT and informed the Court that they had consented to the TRO. *See* Exhibit 1, Minnick dep. at 189:4-22. Likewise, Mr. Hollingsworth signed the TRO based on Mr. Sullivan's representations. *See* Exhibit 2, Hollingsworth dep. at 288:5-290:5.

At Tesla's urging, on February 3, 2006, this Court held a hearing regarding, *inter alia*, Tesla's request for a TRO. Messrs. Hollingsworth and Minnick attended the hearing by telephone and were not represented by counsel. *See* Exhibit 3, February 3, 2006, Hearing Transcript at 3:17-22. When the Court inquired about why they were not represented by counsel, Mr. Sullivan responded that "we believe we have reached a proposed stipulated order," which Messrs. Minnick and Hollingsworth believed to be consistent with Mr. Sullivan's previous representation that Tesla would dismiss its claims against them if they consented to the TRO. *Id.* at 3:23-4:6. However, approximately two weeks after the NMT Defendants signed, and Tesla filed the TRO with the Court, Mr. Sullivan wrote the NMT Defendants to explain (a) that they would not be released from the lawsuit, (b) that Messrs. Minnick and Hollingsworth may obtain counsel, if they chose to do so, and (c) that they were subject to the TRO. *See* Exhibit 4 at P Supp 1087. The NMT Defendants retained counsel shortly after this communication from Mr. Sullivan.

2

On March 27, 2006, the NMT Defendants filed their Answer and Counterclaims, which averred, *inter alia*,

> 17.    Immediately after this baseless Complaint was filed, but before the NMT Parties could obtain counsel, Tesla Industries, by and through its agents, with ulterior motives, improperly coerced the NMT Parties to agree to a temporary restraining order.

D.I. 27 at ¶ 17.  This allegation forms some of the basis for the NMT Defendants' Abuse of Process Counterclaim. *Id.* at ¶¶ 26-30.

On December 18, 2006, in responding to a letter from Mr. Sullivan, counsel for the NMT Defendants queried whether Mr. Sullivan "will be providing any form of testimony contradicting [Messrs. Minnick's and Hollingsworth's] recitation of Mr. Sullivan's communications with them." *See* Exhibit 5.  In the event that Mr. Sullivan intended to testify as a witness, NMT requested that Mr. Sullivan "withdraw from the case pursuant to Delaware Rule of Professional Conduct 3.7" and that he make himself available for deposition so that NMT may explore the substance of Mr. Sullivan's expected testimony. *Id.*  Nearly four weeks later, Tesla responded to NMT's letter, but failed to represent whether Mr. Sullivan would be called as a rebuttal witness. *See* Exhibit 6.

## III.   **ARGUMENT AND AUTHORITIES**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A), a party must, without awaiting a discovery request, provide the name of each individual likely to have discoverable information and identify "the subjects of the information." *Id.*  Moreover, Fed. R. Civ. P. 37(c)(1) provides that any "party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness...not so disclosed. " Fed. R. Civ. P. 37(c)(1)

Tesla has known for more than a year that Mr. Sullivan's representations to the NMT Defendants, before they obtained counsel, and the NMT Defendants' reliance thereon, are contested issues of fact relating to, at least, the NMT Defendants' Abuse of Process Counterclaim. D.I. 27. Notwithstanding its knowledge of the NMT Defendants' Counterclaims, Tesla has not identified Mr. Sullivan in any of its amendments to its Rule 26(a) Initial Disclosure and has not identified Mr. Sullivan as a witness in response to the NMT Defendants' Interrogatories. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000) ("When plaintiffs, however, seek to rebut defense theories which they knew about or reasonably could have anticipated, the district court is within its discretion in disallowing rebuttal testimony."); *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1287 (3d Cir. 1995) (district court acted within its discretion when it precluded testimony from plaintiff's rebuttal witness not previously identified, where "from the outset of this action [plaintiff] knew the [defendant's] contentions and the necessity for ... rebuttal testimony could reasonably have been anticipated.") (internal citations omitted); *Comcoa, Inc. v. NEC Tel., Inc.*, 931 F.2d 655, 664 (10th Cir. 1991) ("Because plaintiffs were warned that rebuttal evidence would be restricted and because they reasonably could have anticipated defendants' evidence ... [i]t was within the district court's discretion to disallow plaintiffs' rebuttal evidence.")

Additionally, the NMT Defendants specifically asked Tesla whether it intended to call Mr. Sullivan to rebut the NMT Defendants' recitation of the substance of the late January to mid-February 2006 communications. *See* Exhibit 5.    If Tesla intended to call Mr. Sullivan as a rebuttal witness, the NMT Defendants requested that he be made available for deposition and that Mr. Sullivan withdraw from representing Tesla in this matter, pursuant to Delaware Rule of

Profession Conduct 3.7.[1]    *Id.*    Tesla never responded to the NMT Defendant's request for a deposition and, thus, should be precluded from calling Mr. Sullivan as a witness, either in its case-in-chief or in rebuttal.[2]

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the NMT Defendants respectfully request an order precluding Tesla from calling its counsel, Mr. Brian Sullivan, to testify at trial.

---

[1]    Delaware Rule of Professional Conduct 3.7 states:

**Lawyer as witness**:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

[2] Nor can Tesla rely on attorney/client privilege to shield Mr. Sullivan from discovery in the event it intends to rely upon him as a witness.  "The attorney client privilege should not be used as both a sword and a shield."  *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005).  As courts in this district have explained, it is unfair to allow a party to "disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position ...." *Id.* (*citing Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977)

ASHBY & GEDDES

/s/ John G. Day

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W.
Hollingsworth, Charles Minnick and New
Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006

Dated: April 5, 2007
179479.1

# EXHIBIT 1

Capital Reporting Company

Page 1

1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF DELAWARE
2
     -----------------------------------:
3    TESLA INDUSTRIES, a Delaware Corp., :
                                         :
4                    Plaintiffs,         :
                                         :
5           vs.                          : C.A. No.:
                                         : 06-55
6    DAVID C. WALDMANN, et al.,          :
                                         :
7                    Defendants.         :
     -----------------------------------:
8
                                         Washington, D.C.
9
                               Friday, November 17, 2006
10
     Deposition of:
11
12          NMT 30(b)(6) - CHARLES MINNICK
13   called for oral examination by counsel for
14   Plaintiff, pursuant to notice, at Connolly Bove
15   Lodge & Hutz, L.L.P., 1990 M Street, Northwest, 13th
16   Floor, Washington, D.C., before Shari R. Broussard,
17   of Capital Reporting Company, a Notary Public in and
18   for the District of Columbia, beginning at 9:12
19   a.m., when were present on behalf of the respective
20   parties:
21
22

EXHIBIT
1

Page 2

```
 1   On behalf of Plaintiff:
 2        ROBERT D. WILCOX, ESQUIRE
          Werb & Sullivan
 3        P.O. Box 25046
          Wilmington, Delaware 19899-5046
 4        (904) 998-9994
 5            - and -
 6        PAUL E. CRAWFORD, ESQUIRE
          Connolly Bove Lodge & Hutz, L.L.P.
 7        1007 North Orange Street
          P.O. Box 2207
 8        Wilmington, Delaware 19899-2207
          (302) 888-6262
 9
10   On behalf of Defendants HOLLINGSWORTH, MINNICK and
          NEW MILLENNIUM TOOLS, INC.:
11
          DAVID F. NICKEL, ESQUIRE
12        Adduci, Mastriani & Schaumberg, L.L.P.
          1200 Seventeenth Street, Northwest
13        Washington, D.C. 20036
          (202) 467-6300
14
15
16
17
18
19
20
21
22
```

Page 3

```
 1              C O N T E N T S
 2   EXAMINATION BY:                    PAGE
 3      Counsel for Plaintiff            4
 4
 5   DEPOSITION EXHIBITS:    *          PAGE
 6   58 Notice of Deposition            4
 7   59 Restraining Order              136
 8   60 Counterclaim                   171
 9   61 e-mails, Bates 77 and 78       181
10
11
     DOCUMENTS REQUESTED:
12
     - All Communication between Keane Advisors
13
        and NMT, et al., Page 95, Lines 19 to 21
14
     - Reports, Page 97, Lines 19 to 22
15
     - Proposal, Page 108, Lines 12 to 13
16
     - Documentation on Waldmann Sales Contacts,
17
        Page 115, Line 19 to 22
18
     - Reports of Potential Sales, Page 117,
19
        Line 19 to 21
20
21
22   (* Exhibits retained by counsel for Plaintiff.)
```

Page 4

1    WHEREUPON,

2              NMT 30(b)(6) - CHARLES MINNICK

3    called as a witness, and having been first duly

4    sworn, was examined and testified as follows:

5              (Deposition Exhibit Number 58

6              was marked for identification.)

7              EXAMINATION BY COUNSEL FOR PLAINTIFF

8    BY MR. WILCOX:

9        Q    We're here for the deposition today of

10   New Millennium Tools, Inc.  I'd ask the witness to

11   identify himself.

12       A    I'm the founder and incorporator of New

13   Millennium Tools, Inc.  My name is Charles Minnick.

14       Q    Mr. Minnick, my name is Robert Wilcox.  I

15   know you gave your deposition the other day.

16            Are you under any disability that would

17   affect your testimony today?

18       A    No.

19            MR. NICKEL:  Can I have a copy of the

20   notice?

21            MR. WILCOX:  Yeah.  I had several copies

22   of it.  I'm not going to ask him about it.

Page 5

1          MR. NICKEL:  That's fine.  I'll look over

2    his shoulder.  Thank you.

3    BY MR. WILCOX:

4        Q    When was the first point at which you had

5    the idea for the company that eventually has become

6    New Millennium Tools?

7        A    You mean to form a corporation?  I'm

8    sorry.

9        Q    Is New Millennium Tools, Inc. or NMT a

10   corporation?

11       A    Yes, it is.

12       Q    At some point prior to forming that

13   corporation you had the idea to form a company,

14   correct?

15       A    Correct.

16       Q    And that company that you had the idea

17   for eventually became NMT?

18       A    Correct.

19       Q    At what point did you have the idea to

20   form the company that eventually became NMT?

21       A    I understand.  This was like at some

22   point in August.  August or September as I recall.

Page 189

1    hat if you were both working under DC Power?

2         MR. NICKEL:  Same objection.

3         THE WITNESS:  I don't know.

4    BY MR. WILCOX:

5         Q    Let's go to Exhibit 60, page 13,

6    paragraph 17.

7         A    I have it.

8         Q    Do you have any facts to support the

9    allegations of this paragraph as they relate to

10   that final phrase that says "improperly coerced the

11   NMT parties to agree to a temporary restraining

12   order"?

13        A    That arose from a conversation that I had

14   with Brian Sullivan with your firm.  I -- he

15   returned the call that I had made to Mr. Masilotti

16   to try and straighten this mess out to find out

17   what it was all about and what we could do to

18   eliminate ourselves from the litigation because I

19   had no knowledge of what Mr. Waldmann may or may

20   not have done.  Myself and Mr. Hollingsworth had

21   been working for DC Power Equipment.  I didn't see,

22   other than that one receptacle, where there was any

1    connection to he and myself and the new company.

2              Mr. Sullivan led me to believe that if we

3    signed these papers, that then we could get out of

4    litigation and we would not be a party to this --

5    all the stuff that we're going through at this

6    point in time.

7        Q    Do you know the date on which the lawsuit

8    was filed, approximately?

9        A    It was in late January.

10       Q    I'm going to show you what's been marked

11   as Exhibit 59 and ask you to take a look at the

12   date on the final two pages of the document.

13             Do you see that there are essentially two

14   signature pages?  Would you agree?

15       A    I haven't gotten there yet.  That's

16   correct.

17       Q    And what's that date?

18       A    February 22nd, 2006.

19       Q    Now, that's the date the judge signed it;

20   is that correct?

21             MR. NICKEL:  Objection.  Foundation.

22             THE WITNESS:  I guess so.

Page 191

1    BY MR. WILCOX:

2        Q    Do you know when you signed it?

3        A    There's only a date blank there.

4        Q    Do you remember on behalf of NMT being on

5    the telephone with the judge in February 2006?

6        A    Yes.

7        Q    Do you remember him asking you whether

8    NMT, or do you remember him asking anybody whether

9    they had in fact consented to the order that he had

10   in front of him?

11       A    Yes.

12       Q    And what was your answer?

13       A    Yes.

14       Q    Had --

15       A    Can I --

16       Q    Sure.

17       A    That was based on my understanding of

18   what this document represented.

19       Q    What was your understanding of what this

20   document represented?

21       A    This was a get out of jail free card per

22   Mr. Sullivan.

# EXHIBIT 2

Page 1

```
1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
2
   ------------------------------------:
3  TESLA INDUSTRIES, a Delaware Corp., :
                                       :
4             Plaintiffs,              :
                                       :
5       vs.                            : C.A. No.:
                                       : 06-55
6  DAVID C. WALDMANN, et al.,          :
                                       :
7             Defendants.              :
   ------------------------------------:
8

9                             Washington, D.C.
                     Thursday, November 16, 2006
10 Deposition of:

11

12            LYNDOL HOLLINGSWORTH

13 called for oral examination by counsel for

14 Plaintiff, pursuant to notice, at Connolly Bove

15 Lodge & Hutz, L.L.P., 1990 M Street, Northwest, 13th

16 Floor, Washington, D.C., before Shari R. Broussard,

17 of Capital Reporting Company, a Notary Public in and

18 for the District of Columbia, beginning at 8:59

19 a.m., when were present on behalf of the respective

20 parties:

21

22
```

EXHIBIT
2

1                 A P P E A R A N C E S

2    On behalf of Plaintiff:

3        ROBERT D. WILCOX, ESQUIRE

4        Werb & Sullivan

5        P.O. Box 25046

6        Wilmington, Delaware 19899-5046

7        (904) 998-9994

8            - and -

9        PAUL E. CRAWFORD, ESQUIRE

10       Connolly Bove Lodge & Hutz, L.L.P.

11       1007 North Orange Street

12       P.O. Box 2207

13       Wilmington, Delaware 19899-2207

14       (302) 888-6262

15   On behalf of Defendants HOLLINGSWORTH, MINNICK and

16       NEW MILLENNIUM TOOLS, INC.:

17       DAVID F. NICKEL, ESQUIRE

18       Adduci, Mastriani & Schaumberg, L.L.P.

19       1200 Seventeenth Street, Northwest

20       Washington, D.C. 20036

21       (202) 467-6300

22   ALSO PRESENT: Charles Minnick

Page 3

1                    C O N T E N T S

2    EXAMINATION BY:                              PAGE

3       Counsel for Plaintiff                       5

4    DEPOSITION EXHIBITS:    *                    PAGE

5    33 Notice of Deposition                      5

6    34 U.S. Patent No. 4,991,472                12

7    35 Document, Bates TI 067 to 4              87

8    36 e-mail, 6/9/05, Bates NMT-MIN 06         92

9    37 e-mails, Bates TI 50 to 51              115

10   38 e-mails, Bates 206 to 216               123

11   39 e-mail, 7/11/05, Bates 254              132

12   40 e-mail, 7/28/05, Bates TI 65            135

13   41 e-mail, 8/2/05                          138

14   42 Fax from Hollingsworth to Waldmann, 8/18/05  147

15   43 Memo from Hollingsworth to Tesla, 8/19/05    153

16   44 Provisional Application, Bates LWH 37 to 46  163

17   45 Xerox of Photographs                    166

18   46 e-mails, 8/30/05                        177

19   47 e-mail, 9/7/05, Bates 188               184

20   48 e-mails                                 191

21   49 e-mail, 9/20/05, Bates NMT-MIN 11       204

22

Page 4

```
 1    DEPOSITION EXHIBITS:    *                    PAGE

 2    50 e-mail, 9/20/05 Bates NMT-MIN 12          208

 3    51 e-mail, 9/24/05, Bates NMT-MIN 17         219

 4    52 e-mail, 9/25/05, Bates NMT-MIN 01         222

 5    53 e-mails, Bates 124 to 126                 239

 6    54 e-mails, Bates 171 to 174                 244

 7    55 e-mail, 11/29/05, Bates NMT-MIN 21        252

 8    56 e-mail, 11/30/05, Bates NMT-MIN 22        259

 9    57 Restraining Order                         265

10

11

12

13    DOCUMENTS REQUESTED:

14    - e-mail re: Notice of Termination,

15       Page 24, Line 8

16    - Hard Drive, Page 52, Lines 5 and 6

17

18

19

20

21

22    (*Exhibits retained by counsel for plaintiff.)
```

Page 5

1              P R O C E E D I N G S

2          (Deposition Exhibit Number 33

3              was marked for identification.)

4    WHEREUPON,

5              LNYDOL HOLLINGSWORTH

6    called as a witness, and having been first duly

7    sworn, was examined and testified as follows:

8              EXAMINATION BY COUNSEL FOR PLAINTIFF

9    BY MR. CRAWFORD:

10       Q    We have premarked Exhibit 33, which is

11   the deposition notice of Mr. Hollingsworth, and for

12   the record we'll note that the deposition notice

13   calls for the deposition on Friday, November 17th.

14   By agreement of counsel, willing to accommodate

15   Mr. Hollingsworth's schedule, this has been moved

16   forward to today's date, which is Thursday,

17   November 16th.

18              Is that in accord with your

19   understanding, Mr. Nickel?

20              MR. NICKEL:  Yes, sir, Mr. Crawford.

21   BY MR. CRAWFORD:

22       Q    Mr. Hollingsworth, could you just give us

Capital Reporting Company

Page 287

1    earlier today, about the end of the relationship

2    and looked at a document concerning that.

3         Do you remember testifying that the

4    relationship was actually terminated by you rather

5    than DC Power Equipment?

6         A    It was first by me and then shortly

7    thereafter by DC Power Equipment.

8         Q    So you initiated the termination of the

9    relationship?

10        A    Yes.

11        Q    Paragraph 17 refers to coercion to agree

12   to a temporary restraining order.  Were you

13   represented by counsel at any time in conjunction

14   with the wording or execution of the temporary

15   restraining order?

16        A    No.

17        Q    Were you in a court of law before a

18   judge, Constitutional Article III Judge, and given

19   the opportunity to explain any reservations you had

20   about signing the restraining order before you

21   signed it?

22        A    No.

13de4caa-a9aa-47f2-ba0b-68f9a4ecb3be

Capital Reporting Company

Page 288

1          MR. NICKEL:  Objection.  Form and

2    foundation.

3          THE WITNESS:  No, I -- no.

4    BY MR. CRAWFORD:

5      Q    Do you recall appearing before a Judge

6    Gregory Sleet in the United States District Court

7    of the District of Delaware at or about the time

8    you signed the restraining order?

9          MR. NICKEL:  And objection as vague.  I

10   believe we can help this out a little bit.  He's

11   misunderstanding your "appearing" language.

12   BY MR. CRAWFORD:

13     Q    Well, did you appear in a court of law at

14   which time the -- oh, I'm sorry.  By phone.

15         MR. NICKEL:  Thank you.

16   BY MR. CRAWFORD:

17     Q    Did you appear by phone or did you

18   participate by phone in a discussion with a judge

19   concerning the restraining order?

20     A    Yes.

21     Q    And did he make it clear to you that you

22   had the right to not sign the agreement if you

13de4caa-a9aa-47f2-ba0b-68f9a4ecb3be

Capital Reporting Company

Page 289

1    chose to do so?

2        A    I don't recall whether I was given an

3    opportunity to not sign it.  I remember at that

4    time that all I was trying to do was do whatever

5    it, you know, took to, you know -- there was some

6    kind of misunderstanding on my -- that I thought.

7    Maybe this was a way of getting to a -- I guess

8    making things go away.  I mean that's -- they

9    indicated to us, Mr. Brian Sullivan I believe was

10   the one, that if we -- me actually, we, me, Chuck

11   Minnick, if we signed this, that -- that we would

12   be dropped from this legal action.  That was my

13   interpretation of it.  That's what I was led to

14   believe.

15       Q    Well, did Mr. Sullivan actually ever say

16   you sign this and you're out of here?

17       A    Almost in those words or something very

18   similar to it because I certainly didn't make it

19   up.

20       Q    Well, had you consulted counsel prior to

21   signing this?

22       A    No.

13de4caa-a9aa-47f2-ba0b-68f9a4ecb3be

Capital Reporting Company

1          MR. NICKEL:  I'm sorry.  Can you repeat

2     the question?

3          (The reporter read the record as

4          requested.)

5          THE WITNESS:  No.

6     BY MR. CRAWFORD:

7          Q    Now, paragraph 18 of the counterclaim

8     says, "As a direct and proximate result of this

9     litigation and the temporary restraining order, the

10    NMT parties have lost business, capital infusion

11    and business opportunities and have incurred

12    attorneys' fees and expenses."

13          You're one of the NMT parties mentioned.

14    What business had you lost?

15          MR. NICKEL:  And objection as to

16    foundation.

17          THE WITNESS:  Only just what I was being

18    paid monthly at DC Power Equipment.  I hadn't

19    planned to leave exactly at that time, maybe I

20    would have stayed around another, you know, several

21    months.  I was working -- I was still trying to get

22    things worked out with TACOM, Rock Island at that

13de4caa-a9aa-47f2-ba0b-68f9a4ecb3be

# EXHIBIT 3

RECEIVED BY HAND₁

MAY 1 8 2006

A&G

1

2                    IN THE UNITED STATES DISTRICT COURT

3                    IN AND FOR THE DISTRICT OF DELAWARE

4                            - - -

5     TESLA INDUSTRIES, INC.,        :        Civil Action
      a Delaware Corporation,        :
6                                    :
                    Plaintiff,       :
7                                    :
            v.                       :
8                                    :
      DAVID C. WALDMANN,             :
9     LYNDOL W. HOLLINGSWORTH,       :
      CHARLES MINNICK a/k/a          :
10    CHUCK MINNICK, and             :
      NEW MILLENNIUM TOOL, INC.,     :
11    an Oregon Corporation,         :
                                     :
12                  Defendants.      :        No. 06-55-GMS

13                            - - -

14                        Wilmington, Delaware
15                    Friday, February 3, 2006
                            11:00 a.m.
16                      Telephone Conference

17                            - - -

18

19    BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

20    APPEARANCES:

21            BRIAN A. SULLIVAN, ESQ., and
              ROBERT D. WILCOX, ESQ.
22            Werb & Sullivan

23                          Counsel for Plaintiff

24

25

EXHIBIT

3

**2**

1    APPEARANCES CONTINUED:

2

3    JOHN D. DEMMY, ESQ.
     Stevens & Lee, P.C.
         -and-

4    JOHN A. ADAMS, ESQ.
     Susanin, Widman & Brennan, P.C.

5    (King of Prussia, PA)

6              Counsel for Defendant Waldmann

7    ALSO PRESENT:

8    LYNDOL W. HOLLINGSWORTH

9    CHARLES MINNICK

10

                    - - -

11

12

13             THE COURT: Okay.

14    Counsel, let me see if I can clear up who is who

15   and who is appearing.

16             Mr. Sullivan, are you for plaintiff?

17             MR. SULLIVAN: Yes, Your Honor. Good morning.

18             THE COURT: Mr. Demmy, who are you appearing

19   for?

20             MR. DEMMY: Mr. Waldmann, along with Mr.

21   Adams — I am sorry, counsel on the line, Mr. Adams, is also

22   here for Mr. Waldmann.

23             THE COURT: Okay.

24             MR. SULLIVAN: Your Honor, Mr. Wilcox is with

25   our firm, Rob Wilcox, for the plaintiff, Tesla Industries.

**3**

1              THE COURT: Was there a Bennick?

2              UNIDENTIFIED SPEAKER: Minnick.

3              THE COURT: I am sorry.

4    Mr. Minnick is one of the parties?

5              UNIDENTIFIED SPEAKER: That's correct, Your

6    Honor.

7              THE COURT: Why is Mr. Minnick on the call?

8              UNIDENTIFIED SPEAKER: He is not represented by

9    counsel.

10             THE COURT: And so is Hollingsworth, I see.

11    I am just getting up to speed on this, counsel,

12   you will have to forgive me.

13    Mr. Adams, you are here for?

14             MR. ADAMS: I am here along with Mr. Demmy for

15   Mr. Waldmann.

16             THE COURT: Okay.

17    So we have two parties who are not represented,

18   Messrs. Minnick and Hollingsworth.

19    Gentlemen, are you planning to retain counsel?

20             UNIDENTIFIED SPEAKER: Not at this point in

21   time.

22             UNIDENTIFIED SPEAKER: No, not at this point.

23             THE COURT: Is there a reason for that?

24             MR. SULLIVAN: Your Honor, after I had planned

25   on giving a preliminary explanation on how the parties were

**4**

1    aligned up, I was going to conclude with the fact that we

2    believe we have reached a proposed stipulated order.

3              THE COURT: Why don't you go ahead, Mr.

4    Sullivan.

5              MR. SULLIVAN: Be glad to do it, Your Honor.

6    Thank you.

7    Let me start with thanking you for taking time

8    to hear this out of your busy schedule on an expedited

9    basis.

10    We have gone through the roll call. It is Brian

11   Sullivan and Rob Wilcox representing plaintiff Tesla

12   Industries.

13    Your Honor, last Friday on January 27th, we

14   filed the complaint, the verified complaint in this action

15   for injunctive relief and damages for theft of trade

16   secrets, breach of contract, conversion, tortious

17   interference, and conspiracy.

18    We have also, together with that, Your Honor,

19   filed a motion for a temporary restraining order.

20    In the complaint, Your Honor, we allege, the

21   plaintiff alleges that the defendants conspired and

22   misappropriated Tesla Industries' confidential information

23   and trade secrets, including misappropriation of some of

24   their propose designs and products.

25    In connection with the temporary restraining

**5**

1    order, Your Honor, we have requested expedited treatment.

2    I would like to point out that when the action

3    was filed last Friday, because it involves a temporary

4    restraining order, we had Parcels deliver notice of the

5    complete package of the action to Mr. Waldmann at his home

6    residence. We also e-mailed it and over-nighted it to Mr.

7    Waldmann, and also e-mailed it to his attorney who is on the

8    line with us, Mr. Adams.

9    In addition to that, Your Honor, we e-mailed it

10   and over-nighted it to the other three defendants.

11    With regard to this teleconference today, at

12   your request, Your Honor, we did provide notice of this

13   hearing.

14    We have had communications with all of the

15   defendants and their counsel and believe that they are all

16   here today.

17    I would like to point out that Mr. Waldmann is

18   the former employee of Tesla Industries. He was a military

19   sales representative and is the party who signed the

20   nondisclosure agreement and confidentiality memo. As you

21   heard earlier, he is primarily represented by Mr. Adams and

22   Mr. Demmy here this morning.

23    As I alluded to earlier, Your Honor, the good

24   news is that beginning yesterday morning and yesterday

25   afternoon, we have been negotiating a form of a stipulated

6

1  restraining order. And I am hopeful that my colleague, Mr.
2  Wilcox, who has been instrumental in negotiating the
3  agreement, will be able to explain to the Court that we have
4  reached an agreement. And if you would like, Your Honor, I
5  would turn it over to him so he can explain the salient
6  terms to you.
7          MR. WILCOX:  One procedural point, Your Honor.
8          There are actually four defendants in this case,
9  Mr. Waldmann, Mr. Hollingsworth, Mr. Minnick and an entity
10  called New Millennium Tools, Inc., that in our belief that
11  entity is controlled by Mr. Minnick and/or Mr.
12  Hollingsworth.
13          MR. SULLIVAN:  Correct.
14          MR. WILCOX:  I don't know whether they are
15  appearing on behalf of New Millennium Tools or whether New
16  Millennium Tools is even present on the call.
17          THE COURT:  You don't know whether Messrs.
18  Minnick and Hollingsworth are appearing for New Millennium?
19  They can't appear on behalf of a corporation.
20          MR. WILCOX:  I understand that, Your Honor.
21          Let me then move to the issue of the restraining
22  order.
23          We have now —
24          UNIDENTIFIED SPEAKER:  Hello?
25          THE COURT:  Yes.

7

1          MR. WILCOX:  We have now actually reached two
2  different agreements, Your Honor. Everybody is a party to
3  an agreement or agreement in principle.
4          We have separate agreements at this point with
5  Mr. Minnick, Mr. Hollingsworth and New Millennium.
6          That's one agreement.
7          We have a slightly different agreement with Mr.
8  Waldmann, because, you know, of some factual differences in
9  their situations. And we hope to either conform those or to
10  submit separate orders, separate stipulated orders to the
11  Court either today or at the absolute latest on Monday.
12          Mr. Adams, can you confirm that?
13          MR. ADAMS:  Yes.
14          The only thing I will say is we were still
15  working until 11:30 last night. So Your Honor knows that.
16          UNIDENTIFIED SPEAKER:  Till about 5 of 11 as
17  well.
18          MR. ADAMS:  We have agreed to everything at this
19  point. We are just cleaning some language up.
20          THE COURT:  Okay.
21          MR. WILCOX:  That's all I have on the temporary
22  restraining order.
23          THE COURT:  So you are going to submit that
24  stipulation for the Court's review and signature. Is that
25  my understanding?

8

1          UNIDENTIFIED SPEAKER:  Yes, Your Honor.
2          MR. SULLIVAN:  Your Honor, would it be helpful
3  to explain to the Court any of the terms at this time?
4          THE COURT:  I don't think so.
5          I am more interested in, most interested in what
6  I have heard thus far.
7          What is the position of counsel and the parties
8  going forward? Will this resolve the action?
9          MR. ADAMS:  No, Your Honor, I don't think so.
10          We are going to do some discovery, as I
11  understand it.
12          UNIDENTIFIED SPEAKER:  Your Honor, I don't
13  believe any of the defendants have filed a responsive
14  pleading at this point.
15          UNIDENTIFIED SPEAKER:  We filed a motion for a
16  temporary restraining order in order to essentially control
17  the information, and the defendants have agreed to that.
18          The proposed stipulation — the stipulation with
19  regard to Mr. Waldmann provides a process for the inspection
20  of various e-mail accounts.
21          After that is done, Your Honor — presumably,
22  the defendants will be filing responsive pleadings and will
23  go on with the litigation from there.
24          THE COURT:  In the normal course.
25          UNIDENTIFIED SPEAKER:  Yes.

9

1          MR. SULLIVAN:  There is also the provision, Your
2  Honor, I believe the parties have reached agreement, that
3  the deposition of Mr. Waldmann will take place on an
4  expedited basis, I believe, within the next week or so.
5          MR. ADAMS:  I have to change that on there. I
6  am out of town Tuesday —
7          UNIDENTIFIED SPEAKER:  Then I am confident we
8  will be able to work out a date according to your schedule.
9          MR. ADAMS:  I just moved it a week.
10          UNIDENTIFIED SPEAKER:  One thing we wanted to be
11  clear on that, Your Honor, we had filed along with the
12  complaint a motion for immediate limited discovery.
13          We are seeking to take the limited deposition,
14  limited-in-scope deposition of Mr. Waldmann solely for the
15  purpose of discovering the location of any of what we
16  believe is our confidential information.
17          This is not our one bite at the apple in the
18  lawsuit.
19          We are not going to get into, you know, it's not
20  a standard deposition and really is intended to have a
21  prophylactic effect, Your Honor.
22          THE COURT:  Mr. Adams, is the motion
23  unopposed?
24          UNIDENTIFIED SPEAKER:  We will be submitting a
25  stipulated order on that, as well.

10

1    MR. ADAMS: If he —

2    THE COURT: The answer to my question is, yes,

3  the motion is unopposed?

4    MR. ADAMS: Your Honor, the motion as drafted

5  would be opposed. But the agreement we have not.

6    THE COURT: I have a motion on my docket,

7  counsel, that I would like to dispose of one way or the

8  other. Would you give me a little hand with that?

9    MR. ADAMS: We have reached an agreement, with

10  that.

11    THE COURT: Is plaintiff withdrawing its motion

12  for leave to take immediate limited deposition of defendant

13  David Waldmann?

14    MR. SULLIVAN: What I think we will be doing is

15  again submitting a stipulated order to that effect.

16    Am I correct, counsel?

17    MR. ADAMS: That's correct.

18    Does that help Your Honor.

19    THE COURT: I will look at it when it comes

20  across my desk.

21    Okay. All right. Then we will look for those

22  items that you have described, those stipulations.

23    I think they are three in number?

24    UNIDENTIFIED SPEAKER: Yes.

25    That's correct. At this point it's three. It

11

1  may actually be two if we can conform all the stipulations

2  into one form.

3    THE COURT: I should expect them by when?

4    UNIDENTIFIED SPEAKER: Monday, I would think,

5  Your Honor, at the latest. We hoped to get them there today

6  and it's in our interest to do that.

7    THE COURT: It is.

8    We will look for those, review them, sign them,

9  and schedule this matter in the normal course for a Rule 16

10  scheduling conference.

11    UNIDENTIFIED SPEAKER: Okay.

12    MR. SULLIVAN: Your Honor, may I?

13    THE COURT: Yes.

14    MR. SULLIVAN: This is a motion for a temporary

15  restraining order. We have reached a stipulation. And it's

16  captioned Restraining Order, so it's not purely a stipulated

17  order with regard to a TRO at this point. One of the

18  advantages to that is that it will not have a time

19  limitation on it.

20    THE COURT: Understood.

21    MR. SULLIVAN: We will submit it. And

22  obviously, if Your Honor has any questions, I will be glad

23  to answer them promptly. If there is any difficulty in

24  getting them signed, Your Honor, hopefully that is not going

25  to happen, we have worked hard not to have that happen, if

12

1  it does happen, we may be needing to call you to,

2  unfortunately, get the TRO hearing scheduled.

3    But I think we are 99 percent of the way through

4  that.

5    THE COURT: All right.

6    And the loose end as to New Millennium needs to

7  be addressed in some way. Tesla has named them as a party.

8    UNIDENTIFIED SPEAKER: Your Honor, that's

9  correct.

10    THE COURT: Let me ask you this: Are they named

11  in the two agreements that you have discussed this morning?

12    UNIDENTIFIED SPEAKER: They are not a party to

13  the motion regarding discovery.

14    THE COURT: That wasn't my question, counsel.

15  Listen to my question.

16    Were they a part of the stipulated agreements

17  that you have reached with regard to Messrs. Waldmann and

18  the remaining defendants?

19    UNIDENTIFIED SPEAKER: Yes, Your Honor.

20    THE COURT: So they have been named in that

21  stipulation?

22    UNIDENTIFIED SPEAKER: That's correct.

23    It would be my belief that a corporate officer

24  could enter into that agreement on their behalf.

25    THE COURT: I don't have any difficulty with

13

1  that at all. Your belief is probably correct on that.

2  Okay.

3    Then unless we hear otherwise, you will hear

4  from my staff regarding scheduling over here in chambers so

5  we can discuss placing this matter on the Court's docket for

6  resolution.

7    Okay?

8    UNIDENTIFIED SPEAKER: Thank you very much

9  again, Your Honor.

10    THE COURT: Good morning.

11    (Telephone conference concluded at 11:15 a.m.)

12        - - -

13  Reporter: Kevin Maurer

14

15

16

17

18

19

20

21

22

23

24

25

## 0

06-55-gms [1] - 1:12

## 1

11 [1] - 7:16
11:00 [1] - 1:15
11:15 [1] - 13:11
11:30 [1] - 7:15
16 [1] - 11:9

## 2

2006 [1] - 1:15
27th [1] - 4:13

## 3

3 [1] - 1:15

## 5

5 [1] - 7:16

## 9

99 [1] - 12:3

## A

a/k/a [1] - 1:9
able [2] - 6:3, 9:8
absolute [1] - 7:11
according [1] - 9:8
accounts [1] - 8:20
action [4] - 4:14, 5:2, 5:5, 8:8
Action [1] - 1:5
Adams [18] - 2:4, 2:21, 3:13, 3:14, 5:8, 5:21, 7:12, 7:13, 7:18, 8:9, 9:5, 9:9, 9:22, 10:1, 10:4, 10:9, 10:17
addition [1] - 5:9
addressed [1] - 12:7
advantages [1] - 11:18
afternoon [1] - 5:25
agreed [2] - 7:18, 8:17
agreement [11] - 5:20, 8:3, 6:4, 7:3, 7:6, 7:7, 9:2, 10:5, 10:9, 12:24
agreements [4] - 7:2, 7:4, 12:11, 12:16
ahead [1] - 4:3
aligned [1] - 4:1

allege [1] - 4:20
alleges [1] - 4:21
alluded [1] - 5:23
answer [2] - 10:2, 11:23
appear [1] - 6:19
Appearances [2] - 1:20, 2:1
appearing [4] - 2:15, 2:18, 6:15, 6:18
apple [1] - 9:17
attorney [1] - 5:7

## B

basis [2] - 4:9, 9:4
beginning [1] - 5:24
behalf [3] - 6:15, 6:19, 12:24
belief [2] - 6:10, 12:23, 13:1
Bennick [1] - 3:1
bite [1] - 9:17
breach [1] - 4:16
Brennan [1] - 2:4
Brian [2] - 1:21, 4:10
busy [1] - 4:8

## C

captioned [1] - 11:16
case [1] - 6:8
chambers [1] - 13:4
change [1] - 9:5
Charles [2] - 1:9, 2:9
Chuck [1] - 1:10
Civil [1] - 1:5
cleaning [1] - 7:19
clear [2] - 2:14, 9:11
colleague [1] - 6:1
communications [1] - 5:14
complaint [4] - 4:14, 4:20, 9:12
complete [1] - 5:5
conclude [1] - 4:1
concluded [1] - 13:11
Conference [1] - 1:16
conference [2] - 11:10, 13:11
confident [1] - 9:7
confidential [2] - 4:22, 9:16
confidentiality [1] - 5:20
confirm [1] - 7:12
conform [1] - 7:9, 11:1
connection [1] - 4:25

conspiracy [1] - 4:17
conspired [1] - 4:21
Continued [2] - 2:1
contract [1] - 4:16
control [1] - 8:16
controlled [1] - 6:11
conversion [1] - 4:16
corporate [1] - 12:23
Corporation [2] - 1:5, 1:11
corporation [1] - 6:19
correct [7] - 3:5, 10:16, 10:17, 10:25, 12:9, 12:22, 13:1
Correct [1] - 6:13
Counsel [3] - 1:23, 2:6, 2:14
counsel [2] - 2:21, 3:9, 3:11, 3:19, 5:15, 8:7, 10:7, 10:16, 12:14
course [2] - 8:24, 11:9
Court [35] - 1:2, 2:13, 2:18, 2:23, 3:1, 3:3, 3:7, 3:10, 3:16, 3:23, 4:3, 6:3, 6:17, 6:25, 7:11, 7:20, 7:23, 8:3, 8:4, 8:24, 9:22, 10:2, 10:6, 10:11, 10:19, 11:3, 11:7, 11:13, 11:20, 12:5, 12:10, 12:14, 12:20, 12:25, 13:10
Courts [1] - 7:24, 13:5

## D

damages [1] - 4:15
date [1] - 9:8
David [2] - 1:8, 10:13
defendant [1] - 10:12
Defendant [1] - 2:8
defendants [8] - 4:21, 5:10, 5:15, 6:8, 8:13, 8:17, 8:22, 12:18
Defendants [1] - 1:12
Delaware [1] - 1:3, 1:5, 1:14
deliver [1] - 5:4
Demmy [5] - 2:2, 2:18, 2:20, 3:14, 5:22
deposition [1] - 9:3, 9:13, 9:14, 9:20, 10:12
described [1] - 10:22
designs [1] - 4:24

desk [1] - 10:20
differences [1] - 7:8
different [2] - 7:2, 7:7
difficulty [1] - 11:23, 12:25
discovering [1] - 9:15
discovery [3] - 8:10, 9:12, 12:13
discuss [1] - 13:5
discussed [1] - 12:11
dispose [1] - 10:7
District [2] - 1:2, 1:3
docket [1] - 10:6, 13:5
done [1] - 8:21
drafted [1] - 10:4

## E

e-mail [1] - 8:20
e-mailed [5] - 5:6, 5:7, 5:9
effect [2] - 9:21, 10:15
either [2] - 7:9, 7:11
employee [1] - 5:18
end [1] - 12:6
enter [1] - 12:24
entity [2] - 6:9, 6:11
Esq [4] - 1:21, 1:21, 2:2, 2:4
essentially [1] - 8:16
expect [1] - 11:3
expedited [3] - 4:8, 5:1, 9:4
explain [3] - 6:3, 6:5, 8:3
explanation [1] - 3:25

## F

fact [1] - 4:1
factual [1] - 7:8
far [1] - 8:6
February [1] - 1:15
filed [6] - 4:14, 4:19, 5:3, 8:13, 8:15, 9:11
filing [1] - 8:22
firm [1] - 2:25
forgive [1] - 3:12
form [2] - 5:25, 11:2
former [1] - 5:18
forward [1] - 8:8
four [1] - 6:8
Friday [3] - 1:15, 4:13, 5:3

## G

Gentlemen [1] - 3:19
glad [2] - 4:5, 11:22
Gregory [1] - 1:19

## H

hand [1] - 10:8
hard [1] - 11:25
hear [3] - 4:8, 13:3
heard [2] - 5:21, 8:6
hearing [2] - 5:13, 12:2
Hello [1] - 6:24
help [1] - 10:18
helpful [1] - 8:2
Hollingsworth [8] - 1:9, 2:8, 3:10, 3:18, 6:9, 6:12, 6:18, 7:5
home [1] - 5:5
Honor [34] - 2:17, 2:24, 3:6, 3:24, 4:5, 4:13, 4:18, 4:20, 5:1, 5:9, 5:12, 5:23, 6:4, 6:7, 6:20, 7:2, 7:15, 8:1, 8:2, 8:9, 8:12, 8:21, 9:2, 9:11, 9:21, 10:4, 10:18, 11:5, 11:12, 11:22, 11:24, 12:8, 12:19, 13:9
Honorable [1] - 1:19
hope [1] - 7:9
hoped [1] - 11:5
hopeful [1] - 6:1
hopefully [1] - 11:24

## I

immediate [2] - 9:12, 10:12
Inc [3] - 1:5, 1:10, 6:10
including [1] - 4:23
industries [4] - 1:5, 2:25, 4:12, 5:18
industries' [1] - 4:22
Information [3] - 4:22, 8:17, 9:16
injunctive [1] - 4:15
inspection [1] - 8:19
instrumental [1] - 6:2
intended [1] - 9:20
interest [1] - 11:6
interested [1] - 8:5
interference [1] - 4:17
involves [1] - 5:3
issue [1] - 6:21

items [1] - 10:22

## J

January [1] - 4:13
John [2] - 2:2, 2:4

## K

Kevin [1] - 13:13
King [1] - 2:5
knows [1] - 7:15

## L

language [1] - 7:19
last [4] - 4:13, 5:3, 7:15
latest [2] - 7:11, 11:5
lawsuit [1] - 9:18
leave [1] - 10:12
Leq [1] - 2:3
limitation [1] - 11:19
limited [4] - 9:12, 9:13, 9:14, 10:12
limited-in-scope [1] - 9:14
line [2] - 2:21, 5:8
Listen [1] - 12:15
litigation [1] - 8:23
location [1] - 9:15
look [1] - 10:19, 10:21, 11:8
loose [1] - 12:6
Lyndol [2] - 1:9, 2:8

## M

mail [1] - 8:20
mailed [3] - 5:6, 5:7, 5:9
matter [2] - 11:9, 13:5
Maurer [1] - 13:13
memo [1] - 5:20
Messrs [3] - 3:18, 6:17, 12:17
military [1] - 5:18
Millennium [7] - 1:10, 6:10, 6:15, 6:16, 6:18, 7:5, 12:6
Minnick [11] - 1:9, 1:10, 2:9, 3:2, 3:4, 3:7, 3:18, 6:9, 6:11, 6:18, 7:5
misappropriated [1] - 4:22
misappropriation [1] - 4:23
Monday [1] - 7:11,

11:4
morning [5] - 2:17, 5:22, 5:24, 12:11, 13:10
most [1] - 8:5
motion [10] - 4:19, 8:15, 9:12, 9:22, 10:3, 10:4, 10:6, 10:11, 11:14, 12:13
move [1] - 6:21
moved [1] - 9:9

## N

named [3] - 12:7, 12:10, 12:20
needing [1] - 12:1
needs [1] - 12:6
negotiating [2] - 5:25, 6:2
New [8] - 1:10, 6:10, 6:15, 6:18, 7:5, 12:6
news [1] - 5:24
next [1] - 9:4
night [1] - 7:15
nighted [2] - 5:6, 5:10
nondisclosure [1] - 5:20
normal [2] - 8:24, 11:9
notice [4] - 5:4, 5:12
number [1] - 10:23

## O

obviously [1] - 11:22
officer [1] - 12:23
One [3] - 6:7, 9:10, 11:17
one [5] - 3:4, 7:6, 9:17, 10:7, 11:2
opposed [1] - 10:5
Order [1] - 11:16
order [13] - 4:2, 4:19, 5:1, 5:4, 6:1, 6:22, 7:22, 8:16, 9:25, 10:15, 11:15, 11:17
orders [2] - 7:10
Oregon [1] - 1:11
otherwise [1] - 13:3
over-nighted [2] - 5:6, 5:10

## P

package [1] - 5:5
Parcels [1] - 5:4
part [1] - 12:16
parties [3] - 3:4,

3:17, 3:25, 8:7, 9:2
party [4] - 5:19, 7:2, 12:7, 12:12
Pc [2] - 2:3, 2:4
percent [1] - 12:3
place [1] - 9:3
placing [1] - 13:5
plaintiff [5] - 2:16, 2:25, 4:11, 4:21, 10:11
Plaintiff [2] - 1:6, 1:23
planned [1] - 3:24
planning [1] - 3:19
pleading [1] - 8:14
pleadings [1] - 8:22
point [10] - 3:20, 3:22, 5:2, 5:17, 6:7, 7:4, 7:19, 8:14, 10:25, 11:17
position [1] - 8:7
preliminary [1] - 3:25
present [1] - 6:16
Present [1] - 2:7
presumably [1] - 8:21
primarily [1] - 5:21
principle [1] - 7:3
procedural [1] - 6:7
process [1] - 8:19
products [1] - 4:24
promptly [1] - 11:23
prophylactic [1] - 9:21
propose [1] - 4:24
proposed [2] - 4:2, 8:18
provide [1] - 5:12
provides [1] - 8:19
provision [1] - 9:1
Prussia [1] - 2:5
purely [1] - 11:16
purpose [1] - 9:15

## Q

questions [1] - 11:22

## R

reached [1] - 4:2, 6:4, 7:1, 9:2, 10:9, 11:15, 12:17
really [1] - 9:20
reason [1] - 3:23
regard [1] - 5:11, 8:19, 11:17, 12:17
regarding [2] - 12:13, 13:4

relief [1] - 4:15
remaining [1] - 12:18
Reporter [1] - 13:13
representative [1] - 5:19
represented [3] - 3:8, 3:17, 5:21
representing [1] - 4:11
request [1] - 5:12
requested [1] - 5:1
residence [1] - 5:8
resolution [1] - 13:8
resolve [1] - 8:8
responsive [2] - 8:13, 8:22
restraining [8] - 4:19, 4:25, 5:4, 6:1, 6:21, 7:22, 8:16, 11:15
Restraining [1] - 11:16
retain [1] - 3:19
review [2] - 7:24, 11:8
Rob [2] - 2:25, 4:11
Robert [1] - 1:21
roll [1] - 4:10
Rule [1] - 11:9

## S

sales [1] - 5:19
salient [1] - 6:5
schedule [3] - 4:8, 9:8, 11:9
scheduled [1] - 12:2
scheduling [2] - 11:10, 13:4
scope [1] - 9:14
secrets [2] - 4:16, 4:23
see [2] - 2:14, 3:10
seeking [1] - 9:13
separate [3] - 7:4, 7:10
sign [1] - 11:8
signature [1] - 7:24
signed [2] - 5:19, 11:24
situations [1] - 7:9
Sleet [1] - 1:19
slightly [1] - 7:7
solely [1] - 9:14
sorry [2] - 2:21, 3:3
Speaker [22] - 3:2, 3:5, 3:8, 3:20, 3:22, 6:24, 7:16, 8:1, 8:12, 8:15, 8:25, 9:7, 9:10, 9:24, 10:24, 11:4,

11:11, 12:8, 12:12, 12:19, 12:22, 13:8
speed [1] - 3:11
staff [1] - 13:4
standard [1] - 9:20
start [1] - 4:7
States [1] - 1:2
Stevens [1] - 2:3
still [1] - 7:14
stipulated [7] - 4:2, 5:25, 7:10, 9:25, 10:15, 11:16, 12:16
stipulation [5] - 7:24, 8:18, 11:15, 12:21
stipulations [2] - 10:22, 11:1
submit [2] - 7:10, 7:23, 11:21
submitting [2] - 9:24, 10:15
Sullivan [16] - 1:21, 1:22, 2:16, 2:17, 2:24, 3:24, 4:4, 4:5, 4:11, 6:13, 8:2, 9:1, 10:14, 11:12, 11:14, 11:21
Susan [1] - 2:4

## T

teleconference [1] - 5:11
Telephone [2] - 1:16, 13:11
temporary [4] - 4:19, 4:25, 5:3, 7:21, 8:16, 11:14
terms [2] - 6:6, 8:3
Tesla [9] - 1:5, 2:25, 4:11, 4:22, 5:18, 12:7
thanking [1] - 4:7
theft [1] - 4:15
three [3] - 5:10, 10:23, 10:25
today [1] - 5:11, 5:16, 7:11, 11:5
together [1] - 4:18
Took [1] - 1:10
Tools [3] - 6:10, 6:15, 6:16
tortious [1] - 4:16
town [1] - 9:6
trade [2] - 4:15, 4:23
treatment [1] - 5:1
Tro [2] - 11:17, 12:2
Tuesday [1] - 9:6
turn [1] - 6:5
two [4] - 3:17, 7:1, 11:1, 12:11

## U

Understood [1] - 11:20
unfortunately [1] - 12:2
Unidentified [22] - 3:2, 3:5, 3:8, 3:20, 3:22, 6:24, 7:16, 8:1, 8:12, 8:15, 8:25, 9:7, 9:10, 9:24, 10:24, 11:4, 11:11, 12:8, 12:12, 12:19, 12:22, 13:8
United [1] - 1:2
unless [1] - 13:3
unopposed [2] - 9:23, 10:3
up [4] - 2:14, 3:11, 4:1, 7:19
Usdc[1] - 1:19

## V

various [1] - 8:20
verified [1] - 4:14

## W

Waldmann[15] - 1:8, 2:6, 2:20, 2:22, 3:15, 5:5, 5:7, 5:17, 6:9, 7:8, 8:19, 9:3, 9:14, 10:13, 12:17
week [2] - 9:4, 9:9
Werb[1] - 1:22
Widman[1] - 2:4
Wilcox[10] - 1:21, 2:24, 2:25, 4:11, 6:2, 6:7, 6:14, 6:20, 7:1, 7:21
Wilmington[1] - 1:14
withdrawing [1] - 10:11

## Y

yesterday [2] - 5:24

# EXHIBIT 4

## Daniel Mandon

| | |
|---|---|
| **From:** | Amy D. Brown on behalf of Brian A. Sullivan |
| **Sent:** | Friday, February 17, 2006 4:22 PM |
| **To:** | 'lhollingsworth1@austin.rr.com' |
| **Cc:** | Robert Wilcox; 'chazmin@aol.com' |
| **Subject:** | Tesla vs. Waldmann, et al. |

Lyndol,

I appreciate your message. However I must make some clarifications.
In our conversation the other day, Mr. Minnick asked about the time period for filing an answer to the Complaint and informed me that he was considering retaining an attorney. I said I did not want to interfere in the process of his retaining an attorney should he choose to do so. As you may know, an individual can represent himself, while a corporation can only be represented by an attorney. Whether you or Mr. Minnick should retain counsel at this time is solely up to you.

Mr. Minnick stated that he knew we had granted Mr. Waldmann an extension of time to respond to the Complaint. I confirmed that we had done so and told him that, subject to our client's approval, we would probably be willing to offer to him and to you the same 30 day extension we had agreed upon with Mr. Waldmann's attorney, John Adams. Accordingly, I told Mr. Minnick that we were not considering filing a Motion for Default Judgment (not a Motion for Summary Judgment, which is substantially different) in the meantime.

I did not say or promise that anyone will no longer be pursued in this case. At this point, you are subject to the Temporary Restraining Order and this is an active lawsuit. I believe that Mr. Waldmann, at least, has seriously violated the rights of Tesla Industries, which must be rectified.

Whether we take further action against you or Mr. Minnick will likely depend on what we believe your involvement in this alleged conspiracy was.

You have told me that you are willing to cooperate in our gaining an understanding of the facts. I would be interested in discussing the facts on an informal basis from you. This would not preclude us from obtaining additional information by more formal means in the future, if necessary. If you would rather not speak to me, that is certainly your right.

Thanks for your consideration.

Brian A. Sullivan, Esquire
Werb & Sullivan
300 Delaware Avenue
13th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111


-----Original Message-----
From: Lyndol Hollingsworth [mailto:lhollingsworth1@austin.rr.com]
Sent: Thursday, February 16, 2006 5:41 PM
To: Brian A. Sullivan
Cc: Chuck Minnick
Subject: please accept my apology



Dear Brian,

Chuck Minnick just phoned to tell me that your law firm has no intentions of asking for a summary judgment against me, Chuck and New Millennium Tools. This

1

is such a relief to me. I have never had a law suit filed against me so please
excuse my reactions. I want to formally apologize for my comments in regards to
you "twisting my words" to make me sound guilty of something.

I just hope this whole misunderstanding is cleared up soon for Dave Waldmann and
his family. What I have been through with this is nothing compared to his ordeal.

Chuck says that he has your word that we will not be pursued any longer in this
case. I will take you at your word on this.

I wish you and yours the best,
Lyndol W. Hollingsworth

PS. I have attached a photo of me holding the DC Impact wrench I created for DC Power
Equipment. The tool just got its National Stock Number for the Dept. of Defense. There
are units already being used in Iraq by our soldiers with great success. I hope to be
able to create even better tools with Chuck and New Millennium Tools, Inc.!

2

# EXHIBIT 5

ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

ATTORNEYS AT LAW

V. JAMES ADDUCI II
LOUIS S. MASTRIANI
TOM M. SCHAUMBERG
BARBARA A. MURPHY
HARVEY B. FOX
WILL E. LEONARD
JAMES TAYLOR, JR.
MAUREEN F. BROWNE
MICHAEL G. McMANUS
RODNEY R. SWEETLAND, III
MICHAEL L. DOANE
WILLIAM C. SJOBERG
PAUL G. HEGLAND
DAVID F. NICKEL
SARAH E. HAMBLIN*
MARK R. LEVENTHAL
S. ALEX LASHER
ANDREA B. MILLER*

*ADMITTED TO A BAR OTHER THAN D.C.

1200 SEVENTEENTH STREET, N.W.
WASHINGTON, D.C. 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006
e-mail: sweetland@adduci.com
www.adduci.com

OF COUNSEL

ROBERT A. WESTERLUND
DAVID G. FOSZ
JAMES E. BARLOW*
GREGORY C. ANTHES
JOHN C. STEINBERGER

AFFILIATE

AM&S TRADE SERVICES, LLC
CARLOS MOORE, PRESIDENT

December 18, 2006

**VIA ELECTRONIC MAIL**

Brian A. Sullivan, Esq.
Werb & Sullivan
300 Delaware Avenue
P.O. Box 25046
Wilmington, Delaware 19899

    Re:   Tesla Industries v. David Waldmann, *et al.*

Dear Mr. Sullivan:

    This letter is in reply to your Jeremiad of Friday, December 15, 2006. That communiqué was transmitted to me at 5:42 p.m., yet you demanded certain actions be taken "by Monday, December 18, 2006." It is, thus, apparent that this was merely a perfunctory attempt at satisfying Local Rule 7.1.1's requirement for consultation prior to filing whatever it is you already intend to file. Nonetheless, I will respond to several of your statements to ensure that the record is clear as you go forward.

    1. You state that "[a]t this point there is little doubt that there has been a complete failure by your clients to properly produce e-mails sent by David Waldmann to the various NMT Defendants." I am bewildered by this statement. According to a cursory review in response to your charge, there have been approximately forty emails of this nature produced. Perhaps you are simply unfamiliar with the discovery in the case.

    This point raises another, to which Mr. Nickel alluded during our December 11, 2006, meet and confer. To date, we have only received approximately three emails from Mr. Masilotti. We find this inexplicable, since Mr. Masilotti characterized himself during his deposition as the only empowered officer at Tesla.

**EXHIBIT**

**5**

Brian A. Sullivan, Esq.
December 18, 2006
Page 2

2.  You state that you "believe that Mr. Waldmann intentionally deleted many of the e-mails he sent to the NMT Defendants." I am unaware of any evidence supporting this extremely serious allegation and your client has supplied no such evidence in its discovery responses.  If any such evidence exists, then it would clearly be responsive to multiple discovery requests by the NMT Defendants.  The fact that your client has been unable to adduce any evidence in support of its allegations in the case, other than the unverified statements of Mr. Masilotti, would seem to us to be probative of the absence of merit to this litigation, rather than misconduct by Mr. Waldmann.

In light of the failure by Tesla to provide any significant quantity of email from Mr. Masilotti and your formal accusation of spoliation against Mr. Waldmann, however, the NMT Defendants hereby request immediate production by Tesla of a mirror of any hard drives or system servers which contain or previously contained any electronic records reflecting electronic mail communications by Mr. Masilotti or Mr. Waldmann, from the beginning of Mr. Waldmann's employment with Tesla to the date of his suspension.  Kindly notify me as soon as possible of Tesla's position on this request.

3.  You "demand an immediate explanation of [my] clients' [sic] conduct." First, the only "conduct" at issue in your missive is that of Mr. Hollingsworth, and that occurred prior to our firm's representation of him.

Second, the email communication referenced in your letter, Bates number NMT-MIN 2230, is dated February 1, 2006.  Any conduct by Mr. Hollingsworth referenced in that email, thus, occurred before the February 22, 2006, Stipulated Protective Order.  I am uncertain how conduct by Mr. Hollingsworth before the entry of the Stipulated Protective Order can be in contempt of that Order, but I am certain I will be enlightened upon your filing of whatever it is that you are intending to file.

Third, Mr. Hollingsworth already explained his understanding of the Stipulated Restraining Order during his deposition.  As Mr. Hollingsworth testified, he understood the case to be finished, and his obligations to be completely concluded, when he signed the Order.  The basis for his understanding was your representations to him before he retained counsel.  As our clients clearly set forth in their Counterclaims (which you may have overlooked), their position in this litigation has always been that the Stipulated Restraining Order was obtained through your improper conduct vis-à-vis unrepresented parties. *See, e.g.*, Answer and Counterclaims, ¶¶17, 27 and 32.

Our clients' position in this litigation is reinforced by your conduct during the February 3, 2006, hearing on the Stipulated Restraining Order.  Judge Sleet inquired of Messrs. Minnick and

Brian A. Sullivan, Esq.
December 18, 2006
Page 3

Hollingsworth "[g]entlemen, are you planning to retain counsel?" to which one of them replied "[n]o, not at this point." When Judge Sleet asked them "[i]s there a reason for that?" you interrupted with your non sequitur explanation that there was a proposed stipulated order. The Court's ability to ascertain our clients' understanding of the proceedings was, thereby, adroitly deflected by your interjection.

4. Since our clients will testify at trial (and in response to any show cause proceeding brought by your client) that they acted in conformance with your representations, I hereby request that you inform us immediately whether or not you will be providing any form of testimony contradicting our clients' recitation of your communications with them. If you do intend to offer any such communication, then we request your withdrawal from the case pursuant to Delaware Rule of Professional Conduct 3.7 and your deposition so we may explore the substance of your prospective testimony.

5. You demand "an immediate explanation…why [Bates No. NMT-MIN 2230] was not produced prior to the depositions of [our] clients." Discovery in the case commenced on May 9, 2006. The NMT Defendants served their initial discovery requests on Tesla on May 9, 2006. Tesla, however, was not as diligent in serving discovery requests on the NMT Defendants.

Tesla did not serve its initial discovery requests on the NMT Defendants until August 4, 2006 and its supplemental requests until October 31, 2006. Documents, thus, were continuing to be produced from the NMT Defendants at the time Tesla noticed the depositions of Mr. Hollingsworth. As Tesla was continuing to produce documents six months after it was served with the NMT Defendants' discovery requests, it is *tu quoque* argumentation at its worst for Tesla to raise this issue. Indeed, as recently as last week, after the close of discovery, Tesla was providing the names of witnesses with information in the case.

Very truly yours,

Rodney R. Sweetland, III

RRS:akh
Cc:    Robert D. Wilcox, Esq.
       Paul Crawford, Esq.
       John A. Adams, Esq.
       Steven J. Balick Esq.
NMT303106

# EXHIBIT 6

# WERB & SULLIVAN

ATTORNEYS AT LAW
A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS

300 DELAWARE AVENUE
P.O. BOX 25046
WILMINGTON, DELAWARE 19899

ROBERT D. WILCOX

TELEPHONE: (302) 652-1100
TELECOPIER: (302) 652-1111
E-Mail: rwilcox @werbsullivan.com

COURIER DELIVERY:
300 DELAWARE AVENUE
THIRTEENTH FLOOR
WILMINGTON, DELAWARE 19801

January 12, 2007

Rodney Sweetland, Esq.
Adduci,Mastriani & Schaumberg, LLP
1200 Seventeenth Street, N.W.
Fifth Floor
Washington, D.C. 20036-3006

<u>VIA E-MAIL</u>

Re:  <u>Tesla v. Waldmann (06-55)</u>

Dear Mr. Sweetland:

Lest any lack of response be construed as acquiescence, your letter of December 18, 2006 attempts to deflect a prior request for discovery (communication between Waldmann and NMT Defendants) with slurs on my partner's professional conduct. I would remind you that this in itself may be a violation of the Rules of Professional Conduct. "Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons" (see Preamble to the Delaware Lawyers' Rules for Professional Conduct §20).

Cutting through the rhetoric of the underlying slurs I would remind you of a simple fact. The record clearly shows that Mr. Hollingsworth (and Minnick) were repeatedly told (1) that they should consult their own counsel (2) our firm would not, and could not, represent them and (3) no promises were made that entry of the Stipulated Restraining Order would end the dispute. See Tesla Document Nos. P Supp 1087-1088.

In the final analysis, will you make Mr. Hollingsworth's hard drive(s) (the hard drive in his computer that was given to his daughter's friend and the hard drive he wrapped in plastic and hid in a "really hard to find spot") available for forensic analysis? If not, the responsibility for making certain and certifying that all responsive documents contained therein have been produced rests with your firm. Please confirm your compliance as soon as possible, which will be appreciated.

Very truly yours,

Robert D. Wilcox/csd

Robert D. Wilcox

Cc: Paul Crawford, Esq.

EXHIBIT
6