IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-55-GMS |
| v. | ) | |
| | ) | |
| DAVID C. WALDMANN, LYNDOL W. | ) | |
| HOLLINGSWORTH, CHARLES MINNICK | ) | |
| a.k.a. CHUCK MINNICK, and NEW | ) | |
| MILLENNIUM TOOLS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NMT DEFENDANTS' MOTION *IN LIMINE* NO. 5:
## TO EXCLUDE UNVERIFIABLE FINANCIAL DOCUMENTS

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W.*
*Hollingsworth, Charles Minnick and New*
*Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300

Dated: April 5, 2007
179495.1

# TABLE OF CONTENTS

I.    FACTS ................................................................................................................. 1

II.   ARGUMENT AND AUTHORITIES ................................................................. 2

      A.    Tesla's Sales Summaries Should be Excluded ...................................... 2

      B.    Tesla's Incomplete Tax Returns Should be Excluded ........................... 4

III.  CONCLUSION ..................................................................................................... 5

# **TABLE OF AUTHORITIES**

## <u>Cases</u>

*Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1 (1st Cir. 1996) .................... 3

*Beene v. Terrebonne Wireline Services, Inc.*, No. 90-409,
    1992 WL 193501 (E.D. La. Aug. 4, 1992) ............................................................... 5

*Conoco, Inc. v. Dept. of Energy*, 99 F.3d 387 (Fed. Cir. 1996)..................................... 3

*United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992)............................................ 2, 3

*United States v. Taylor*, 210 F.3d 311 (5th Cir. 2000)................................................ 3

## <u>Rules</u>

Fed. R. Evid. 1006 ............................................................................ 2, 3, 5

Fed. R. Evid. 102 .................................................................................... 5

Fed. R. Evid. 103 .................................................................................... 5

Fed. R. Evid. 106 .................................................................................... 5

Fed. R. Evid. 402 .................................................................................... 5

Fed. R. Evid. 403 .................................................................................... 5

Fed. R. Evid. 801 .................................................................................... 5

Fed. R. Evid. 802 .................................................................................... 5

Fed. R. Evid. 901 .................................................................................... 5

Fed. R. Evid. 902 .................................................................................... 5

Tesla claims that it has suffered damages as a result of an act or omission of NMT. In support of its damages allegations, Tesla and its expert will use charts and summaries of its alleged sales since 1995 and unsigned, incomplete and/or redacted tax returns for the same time period.[1] Tesla, however, has refused each request by NMT to review the underlying documents used to generate the summary charts and tax returns. Additionally, Tesla blocked a Subpoena *Duces Tecum* served on Tesla's accountant that prepared each return, Ridgeway Accounting ("Ridgeway"), for, *inter alia*, the underlying documents.

## I.    FACTS

On the final day of fact discovery, Tesla produced a list purporting to summarize the total sales of its products by month and calendar year. *See* Exhibit 1. After fact discovery closed, Tesla produced a virtually unreadable sales chart that allegedly lists the invoice number and amount of Tesla's sales from June 1995 through December 2006, but did not produce any of the underlying documentation. *See* Exhibit 2 (page numbering added for ease of reference). Pursuant to Court Order, on January 23, 24 and 25, 2007, Tesla produced incomplete, unsigned and/or redacted copies of its tax returns and an "Accountant's Compilation Report," prepared by Ridgeway. *See* Exhibits 3-12. Using these documents, Tesla's expert witness opined a theory for its lost profits damages claim. *See* Exhibits 13 and 22.

NMT requested relief from the Court twice in the form of an order compelling Tesla to produce all documents and information relating to Tesla's claim for damages, including the underlying documents allegedly supporting Tesla's sales. *See* Exhibit 14, October 20, 2006,

---

[1] Inasmuch as Tesla has not provided defendants with a copy of its intended exhibits or a list thereof, it is not possible to identify the trial exhibit numbers to which this Motion applies. This was due March 30, 2007, under the Court's standing Pretrial Order procedure. NMT, therefore, respectfully reserves the right to supplement the exhibits subject to this Motion if and when Tesla submits its exhibit list.

Hearing, at 2:12-4:10 and Exhibit 15, January 18, 2007, Hearing, at 5:3-25. Tesla, however, has refused to produce or make available for inspection any of the underlying documents used to generate its sales summaries and tax returns, *e.g.*, purchase orders and/or invoices. *See* Exhibits 1-13 and 22.

After Tesla finally disclosed the identity of its accountant, NMT issued a Subpoena *Duces Tecum* to Ridgeway requesting the underlying documentation used to generate Tesla's tax returns and "Compilation Report," as well as signed, unredacted copies of Tesla's tax returns. *See* Exhibit 16. Tesla and its counsel, however, blocked NMT's subpoena seeking to obtain such information from Ridgeway.[2]

## II.     ARGUMENT AND AUTHORITIES

### A.     Tesla's Sales Summaries Should be Excluded

Although Tesla has yet to identify its sales lists as summaries or charts, it is evident on the face of each document that they are charts purporting to summarize Tesla's alleged sales. *See* Exhibits 1-3. The admission of these summary exhibits into evidence, is controlled by Fed. R. Evid. 1006, which states:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. "It is well established that summary evidence is admissible under Rule 1006 only if the underlying materials upon which the summary is based are admissible." *United States v. Pelullo*, 964 F.2d 193, 204 (3d Cir. 1992) (citations omitted). Furthermore, "[a] necessary

---

[2]     *See* Exhibits 17-21; Exhibit 20 ("Therefore, Tesla Industries stands by its positions regarding the subpoena duces tecum and document requests and will not withdraw them.").

precondition to the admission of summary charts is that they accurately reflect the underlying

records or testimony ..." *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000) (reversing

trial court due to admission of inaccurate chart).

The First Circuit addressed the "made available" requirement of Rule 1006 in *Air Safety,*

*Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1 (1st Cir. 1996). There, plaintiff claimed

that it met the requirements of Rule 1006 because the summaries were produced during

discovery and the underlying documents were at plaintiff's business and would have been made

available for inspection during discovery, if requested. *Id.* at 7. In rejecting this contention, the

First Circuit noted

> Rule 1006 operates independently of the discovery rules ... and the failure
> to request or obtain the documents during discovery does not negate a
> party's "absolute right to subsequent production of material under Rule
> 1006, should that material become incorporated in a chart, summary, or
> calculation." ... Common sense dictates that this guaranteed access,
> designed to give the opponent the ability to check the summary's accuracy
> and prepare for cross-examination, ... must include unequivocal notice of
> the other party's intent to invoke Rule 1006

*Id.* at 8-9 (internal citations omitted). Here, unlike in *Air Safety*, NMT has sought the documents

underlying Tesla's sales summaries during and after the close of discovery, but Tesla has

stonewalled every such request. *See* Exhibits 17-21.

Additionally, the summaries should be excluded because Tesla cannot show that the

underlying documents are admissible. Where, as here, Tesla refuses to make the underlying

documents available, it cannot show that the underlying documents are authentic or lay the

necessary foundation for the admission of such documents. *See Conoco, Inc. v. Dept. of Energy*,

99 F.3d 387 (Fed. Cir. 1997) (summary exhibits improperly admitted because no foundation for

underlying documents was laid and underlying documents were not made available); *Pelullo*,

964 F.2d at 204 (summary exhibit inadmissible because underlying materials consisted of bank

documents and interviews that were inadmissible hearsay).

Moreover, Tesla's sales summaries should be excluded because they are inconsistent and unreliable. For example, Tesla's "List of Annual Sales" represents that Tesla's gross sales in 2000 was REDACTED   *See* Exhibit 1 at P Supp 1753. However, Tesla's "Sales Chart" represents that Tesla's sales for the same period was REDACTED  *See* Exhibit 2 at 24. Tesla's representations regarding its 2001 sales are equally inconsistent. REDACTED (Exhibit 1 at P Supp 1753) compared to REDACTED (Exhibit 2 at 29). Additionally, Tesla submitted inconsistent sales summaries for calendar year 2005 and 2006, and its alleged sales for the months of April 2001; May, July and October 2005; and February, July, August and October 2006. *Compare* Exhibit 1 *with* Exhibit 2.

Similarly, Tesla's sales summaries are inconsistent with its purported tax returns. For example, Tesla's "Sales Chart" represents that Tesla's sales during fiscal year 2001 to 2002 were REDACTED (Exhibit 2 at 31), however, Tesla's alleged tax return for the same fiscal year claims its gross sales were REDACTED (Exhibit 9 at P Supp 1940), *i.e.*, nearly REDACTED less. Similarly, Tesla's "Sales Chart" represents that Tesla's gross sales in fiscal year 2004 to 2005 were REDACTED (Exhibit 2 at 52), but its incomplete tax return represents that its sales were only REDACTED (Exhibit 12 at P Supp 1960).

**B.     <u>Tesla's Incomplete Tax Returns Should be Excluded</u>**

Pursuant to the Court's January 18, 2007, Order, Tesla eventually produced alleged tax returns for fiscal years 1996 through 2005. These returns, however, are incomplete, unreliable and lack any foundation. For example, Tesla's alleged tax returns for fiscal years 1996/1997, 1997/1998, 1998/1999, 1999/2000, 2000/2001 and 2004/2005 are not signed by either an officer of Tesla or the preparer of the return (*i.e.*, Ridgeway) or both. *See* Exhibits 4-8 and 12. While Tesla's president, Mr. Masilotti, signed the alleged returns for 2001, 2002, and 2003, each return

is undated and incomplete. *See* Exhibits 9-11. Moreover, each alleged return for 1996 through 2005 contains several improper redactions, including redactions relating to, *inter alia*, Tesla's claimed depreciation, total assets, building and other depreciable assets and officers' salaries. *See* Exhibits 4-12.[3]

As the alleged tax returns are unsigned, undated, redacted, incomplete, inconsistent with other documents and/or all of the above, they are (1) inadmissible hearsay (Fed. R. Evid. 801 and 802), (2) not authentic (Fed. R. Evid. 901 and 902), (3) incomplete (Fed. R. Evid. 106) and (4) inadmissible (Fed. R. Evid. 402). Accordingly, Tesla's alleged tax returns (Exhibits 4-12) should be excluded from trial and any reliance on the information contained in such documents should be precluded.[4]

## III.    CONCLUSION

Accordingly, pursuant to Fed. R. Evid. 102, 103, 106, 402, 403, 802, 901 and 1006, NMT respectfully requests an order *in limine* precluding Tesla and its experts from using and/or relying on unverifiable financial documents, including, at least, Exhibits 1-12 and 22.

---

[3] As stated above, there is a significant discrepancy of at least **REDACTED** between Tesla's alleged gross sales and receipts for fiscal year 2001/2002 (*i.e*, **REDACTED**) and its alleged sales summary for that same fiscal period    **REDACTED** *Compare* Ex. 2 at 31 *with* Exhibit 12 at P Supp 1960.

[4] *See Beene v. Terrebonne Wireline Serv., Inc.*, No. 90-409, 1992 WL 193501, at *6 (E.D. La. Aug. 4, 1992) (ruling tax returns inadmissible for purposes of proofing lost earnings, as the returns "were unsigned and not authenticated and there [was] no evidence, such as books and records or canceled checks, to support the unsigned documents. The returns were purportedly prepared by a tax preparer who did not testify and there is no evidence of the source of the information used by the tax preparer.")

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W.
Hollingsworth, Charles Minnick and New
Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006

Dated: April 5, 2007
179495.1

# EXHIBITS 1-13

# REDACTED IN THEIR ENTIRETY

# EXHIBIT 14

1

1               IN THE UNITED STATES DISTRICT COURT

2               IN AND FOR THE DISTRICT OF DELAWARE

3                      -  -  -

4  TESLA INDUSTRIES, INC.,     :     Civil Action
   a Delaware Corporation,     :

5                     :

6          Plaintiff,     :

7       v.              :

                        :

8  DAVID C. WALDMANN,        :
   LYNDOL W. HOLLINGSWORTH,    :

9  CHARLES MINNICK a/k/a      :
   CHUCK MINNICK, and        :

10  NEW MILLENNIUM TOOL, INC.,   :
   an Oregon Corporation,     :

11         Defendants.    :   No. 06-55-GMS

12

13                    -  -  -

14            Wilmington, Delaware
           Friday, October 20, 2006

15              9:00 a.m.
          Telephone Conference

16                    -  -  -

17

18  BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

19  APPEARANCES:

20       ROBERT D. WILCOX, ESQ.
        Werb & Sullivan

21           -AND-
       PAUL CRAWFORD, ESQ.

22       Connolly Bove Lodge & Hutz LLP

23               Counsel for Plaintiff

24

25

EXHIBIT 14

1

2      APPEARANCES CONTINUED:

3              DAVID F. NICKEL, ESQ.

4

5                          Counsel for Defendant Waldmann

6              (Reporter's Note:  Others on call not identified

7      in Appearances.)

8

9                          - - -

10

11              (Call in progress as court reporter joins.)

12              ... expert testimony.  We also would say, Your

13     Honor, we are looking for documents from the defendant that

14     will, that are in some senses necessary to allow us to

15     calculate our damages because to the extent that these

16     particular defendants had failed, they were, we believe, to

17     a large part at the expense of our client.  We have not

18     received those, Your Honor.

19              THE COURT:  So they are cross-complaints about a

20     failure with regard to damages discovery.  Is that what I am

21     hearing?

22              UNIDENTIFIED SPEAKER:  Yes.

23              THE COURT:  Have you gentlemen discussed this

24     before you got on the phone with me?

25              UNIDENTIFIED SPEAKER:  We have for several

1   months.

2              THE COURT:  What seems to be the problem?  With

3   counsel and professional lawyers who have ethical

4   obligations to the client and to the Court, what seems to be

5   the problem in resolving what seem to be fundamental and

6   basic issues?

7              MR. SWEETLAND:  Our fundamental issue is we

8   can't defend for claims of millions of dollars in documents

9   when not a single document has been produced.

10             THE COURT:  I agree with you.  Hold on.  I agree

11  with that general premise.  If what you say is true, you

12  shouldn't be expected to defend under the circumstances.

13  The question is, is what you say correct?  Plaintiff seems

14  to disagree.  Why do you disagree with that?

15             UNIDENTIFIED SPEAKER:  Your Honor, as I said, we

16  have provided information as to the categories of damages.

17  We are willing to provide additional information by November

18  1st.  And we are --

19             THE COURT:  Why November 1st?  Why is it going

20  to take them until November 1st?

21             UNIDENTIFIED SPEAKER:  Excuse me?

22             THE COURT:  Why is it going to take them until

23  November 1st?

24             UNIDENTIFIED SPEAKER:  That is essentially a

25  week and a half away.

4

1          THE COURT:  It would appear that these requests

2    should have been fulfilled some time ago.

3          UNIDENTIFIED SPEAKER:  We understand our

4    obligations in this regard, Your Honor.  We will deal with

5    it.  We are willing to have further --

6          THE COURT:  You have five days, counsel, to

7    comply with those requests.

8          UNIDENTIFIED SPEAKER:  Your Honor --

9          THE COURT:  To produce the information you just

10   said you were willing to produce.

11         UNIDENTIFIED SPEAKER:  Your Honor, we would ask

12   that in that regard we obtain sales information from the

13   defendants as we have previously requested and as part of

14   the calculation of our damages.

15         THE COURT:  Fair enough.

16         UNIDENTIFIED SPEAKER:  There is no sales

17   information.  We haven't sold anything.  So there is nothing

18   we can provide them.  We will reiterate that, it is very

19   clear from our discovery.  I will send an additional letter

20   that says there have been no sales.  So there is no

21   additional information from which they can derive damages

22   information.

23         THE COURT:  Have you made that statement,

24   counsel?  Have you already told your opponent that, what you

25   just said to me?

1          UNIDENTIFIED SPEAKER:  We produced the documents

2    that we believed demonstrated that there were no sales.  We

3    thought it was clear.  If it wasn't clear, I will make it

4    clear.

5          THE COURT:  Counsel for plaintiff, is this the

6    first you are hearing of this?

7          MR. SWEETLAND:  This is the first I have heard

8    of it.  My colleague, who is dealing with it, this is the

9    first time we have heard this issue.

10         MR. WILCOX:  Your Honor, that was Mr. Sweetland.

11   I believe your question was directed to me.

12         THE COURT:  It was directed to you.

13         MR. WILCOX:  Your Honor, we believe the

14   documents -- that wasn't our interpretation of what the

15   documents showed.  I don't believe there has ever been an

16   affirmative statement that they have had zero sales.  If

17   that is the case, we are willing to accept the

18   representation and enter into a stipulation, evidentiary

19   stipulation accordingly.

20         THE COURT:  Great.  Counsel, you shouldn't make

21   your opponent dig through documents to answer questions that

22   are straightforward and capable of being easily resolved by

23   a straightforward answer.

24         Let's move to the next issue.

25         MR. SWEETLAND:  Your Honor, the next issue is

1    documents that relate to the nature of the trade secrets at

2    issue.  There were four identified categories of trade

3    secrets in the verified complaint.  And among those were

4    certain specific products of (inaudible).  We have no

5    information.  These are publicly available products that are

6    advertised on the Internet.  Typically in these sorts of

7    cases, in trade secret cases, there has to be some sort of

8    internal documents which demonstrate what was done to create

9    these trade secrets.

10         I am not aware that publicly available knowledge

11   can be a trade secret.  They have refused to provide any

12   documents related to their invention, which is something

13   that is unique.  The language of the statute is something

14   that is generally known.

15         THE COURT:  Counsel, you need to slow down a

16   little bit.  Let's sum up, for me, please.

17         UNIDENTIFIED SPEAKER:  There has been no

18   documents produced that demonstrates any item of Tesla's

19   that is not generally known, widely known or readily

20   ascertainable.  So there is no lab note, no internal design

21   documentation, nothing to show that the publicly available

22   products are somehow a trade secret, something to show that

23   they are different that is obtainable from Tesla off the

24   Internet.

25         THE COURT:  I got you.  Let's hear a response.

1          UNIDENTIFIED SPEAKER:  Your Honor, first of all,

2    we think this is a (inaudible) trade secret.  It is not a

3    patent case.  I think the issue is whether the culmination

4    of the processes involved and the final products that Tesla

5    sells primarily to the United States military and for which

6    the military pays a substantial premium because of their

7    unusual qualities are different than what can be bought off

8    the shelf, as the defendant says.

9          We strongly, of course, take issue with the

10   position that anyone can buy these over the Internet.  But

11   the request for documents related to the conception of

12   documents is to us of extremely limited if any relevance.

13   The issue is whether the final culmination of the product

14   process contains unique and proprietary information.  We are

15   willing to produce the documents, produce extensive

16   testimony as to that.

17         The request for every design drawing may be

18   relevant in a patent case.  But it's overly broad and

19   burdensome in the context of a trade secret case where the

20   products are available for testing and testimony themselves.

21   The products will speak for themselves.

22         MR. SWEETLAND:  Your Honor, in the affidavit by

23   the president of Tesla appended to the verified complaint,

24   he stated that Tesla Industries has invested millions of

25   dollars in research and development, marketing, selling and

1    services of these products.  We would like to see some

2    evidence of that.

3          It seems to me they have spent a whole lot of

4    money in coming up with these things that are supposedly

5    trade secrets.  That would certainly be probative of whether

6    or not they are a trade secret, if they have something

7    special, that is unique.  We see no evidence of that.

8          THE COURT:  What is the specific claim or

9    defense that is at issue here?

10          UNIDENTIFIED SPEAKER:  The specific product?

11          THE COURT:  No.  You are speaking generally, in

12    general terms, you have described the case as a theft of

13    trade secrets case.  Is that correct?

14          UNIDENTIFIED SPEAKER:  Yes.

15          THE COURT:  So the specific request at issue

16    requests what?  Could you tell me what it requests and what

17    claim or defense the request relates to?

18          MR. WILCOX:  Your Honor, the specific document

19    request says documents referring to or relating to the

20    conception, research, development, testing, decision to

21    develop and all specifications and drawings relating to the

22    product.  Our concern, there is no complaint, as we read the

23    agenda letter, regarding the specifications and drawings of

24    the products in their final configuration.  Our concern

25    relates to the conception, development, testing, decision to

1    develop.  Those are fundamentally internal processes.

2              It seems to me that what we are really talking

3    about here is not how the product was developed, but the

4    product in the state as it existed at the time, whether the

5    product that was sent by Mr. Waldmann, whose counsel is not

6    participating on the phone this morning, whether that

7    product that was obtained internally from Tesla Industries

8    and without question delivered to the --

9              THE COURT:  Counsel, let me get you to hold up

10   talking.  You are talking and it is not to any purpose.

11             The nature of the complaint here, counsel, you

12   are complaining that your client lost some trade secrets to

13   the defendant.  Is that the essence of the complaint here?

14             UNIDENTIFIED SPEAKER:  Your Honor, essentially,

15   what we are saying is that defendant Waldmann, who at the

16   time was an employee of Tesla Industries, delivered trade

17   secrets to the NMT defendants, and as part of a scheme under

18   which Mr. Waldmann would go to work with the NMT defendants,

19   and that he ultimately did go to work with the NMT

20   defendants and works with them today.  That is the

21   fundamental issue.

22             THE COURT:  All right.  Let me just refocus

23   myself.  We are now at that portion of the discovery dispute

24   where you, plaintiff, are complaining that you have not been

25   provided with information that is not otherwise publicly

1    available.  Is that correct?

2              UNIDENTIFIED SPEAKER:  Actually, the defendant

3    is making that claim.

4              THE COURT:  I am sorry.  That is not otherwise

5    publicly available.  Is that correct?

6              UNIDENTIFIED SPEAKER:  Yes, Your Honor.  It goes

7    specifically, the request is Request for Production No. 10

8    that Mr. Wilcox read to Your Honor.  It goes to 6 Delaware

9    Code Section 2014(a).  The nature of the trade secret is

10   something that is not readily ascertainable or generally

11   known.  If it is readily ascertainable, which is something

12   that we can obtain off the Internet or is generally known,

13   it is not a trade secret.  To be a trade secret, the only

14   way it could be a trade secret is if they have some sort of

15   internal formulations that made it different than what it is

16   that people are getting publicly.

17             THE COURT:  I am getting a better picture.  So,

18   plaintiff, what is it that you complain is wrong with that

19   request?

20             UNIDENTIFIED SPEAKER:  First of all, Your Honor,

21   the ultimate issue -- I think, and not to characterize the

22   defendants' position -- is, you know, we think we have

23   licensing products that have unique properties.  I believe

24   the defendants take the position that there is nothing

25   unique, that these are off-the-shelf products.  There may be

1    products with the same name.  They don't perform the same

2    way.  They don't serve the same military purposes.

3              We believe that it's essentially a comparison

4    between a Volkswagen, which is out on the market, and the

5    Tesla products are the Cadillac.  I don't think in that

6    situation that the defendant is entitled to know every way

7    that Tesla Industries got from the Volkswagen to the

8    Cadillac.

9              We are willing to produce the Cadillac for

10   inspection and provide testimony from various parties that

11   it is a Cadillac as compared to the Volkswagen that is

12   available off the shelf.

13             THE COURT:  Counsel, whether the analogy holds

14   up or not, why isn't the production to be made available for

15   the inspection of the relevant products and testimony

16   attendant to that sufficient to meet your needs to establish

17   that there are in fact trade secrets at issue and

18   misappropriated allegedly?

19             UNIDENTIFIED SPEAKER:  Your Honor, by

20   definition, under trade secret law, something that has been

21   sold is not trade secret, in order to be trade a secret at

22   the point in time before which it is interjected in the

23   stream of commerce.  In the final model of the product, us

24   getting that is of no benefit.  The only possibility there

25   is a trade secret is if the plan and internal formulations

1    of that Cadillac demonstrate something different.

2              So the product itself is of no use to us because

3    once having been sold, whether it be to the military or

4    others, it is no longer a trade secret.

5              THE COURT:  The fact that Coca-Cola is sold in

6    the open market does not protect the formula as a trade

7    secret.  Is that what you are telling me?

8              UNIDENTIFIED SPEAKER:  The fact -- one could

9    only determine a trade secret case of Coca-Cola -- if Your

10   Honor is inviting us to reverse-engineer, it would become

11   then publicly known.

12             THE COURT:  So in a case like this, were it

13   Coke, and there was a contention such as the one at issue,

14   there were contentions such as those at issue, you would

15   suggest it would be appropriate for the Court to order

16   production of the formulation?

17             UNIDENTIFIED SPEAKER:  Under seal, as we have

18   here attorneys' eyes only, yes, Your Honor.

19             THE COURT:  And why doesn't that work here,

20   counsel?

21             UNIDENTIFIED SPEAKER:  Well, it isn't so much a

22   question of the disclosure.  I can't imagine that a Court

23   would require the production of the Coca-Cola formulation.

24             THE COURT:  I disagree with you.  I think a

25   Judge has just ordered that.  But go ahead.

1          UNIDENTIFIED SPEAKER:  And I would invite Mr.

2    Crawford to address this issue.  Our position is that the

3    product contained the trade secrets, the products themselves

4    are available for inspection.  We believe that the

5    uniqueness and the proprietary nature of the product is

6    clear and it is reflected in the product itself.  We don't

7    believe that the sale of the product means that every

8    manufacturing and bit of know-how, the choice of materials,

9    and that's a big part of these products, specialized

10   materials, is -- we believe that that can be demonstrated

11   from the product itself.

12          The request for every design, decision, going

13   back for years over the past ten years --

14          THE COURT:  Let me interrupt.  So let's see if

15   we can come to some compromise here.  Counsel, one of the

16   objections is that the request is overly broad.  I am not

17   sure if it is overly broad or not.  It sounds rather broad.

18   Is there a way that you can see to narrow the request to a

19   more relevant range of matter?

20          UNIDENTIFIED SPEAKER:  Certainly, Your Honor.

21   We would be willing to narrow it down to only those products

22   to which the plaintiff actually claimed that my client stole

23   the secrets.  I believe there are two products, Your Honor.

24   If we can narrow it to those two products...

25          MR. CRAWFORD:  Your Honor, this is Paul

1    Crawford.  It seems like I have been invited into the

2    discussion.  I just joined the team for plaintiffs.  I am

3    catching up with this technology.  But it's a very simple

4    question that the request by defendants really goes to the

5    whole documentation and history of the development of the

6    products in question.  This isn't where, like a patent

7    request or request in a patent case, where you have to trace

8    all the gory details of the development.

9          Here we are talking about a product that has

10    been developed through extensive effort, and the product

11    embodies the trade secrets.  But the embodiment is not

12    apparent from the product itself.

13          We have provided to defendants all the details

14    of a final product.  It's really not pertinent in the trade

15    secret case how we could go from Point A to Point B, Point A

16    being the prior product that was sold to the military, Point

17    B, in being our product, which has substantial difference,

18    not only in composition but in methods of manufacture and

19    the like.

20          All that has been explained to them.

21          But to get --

22          THE COURT:  All that information is in their

23    possession.

24          UNIDENTIFIED SPEAKER:  No, it isn't, Your Honor.

25          THE COURT:  Mr. Crawford.

1          MR. CRAWFORD:  Well, the trade secrets have been

2    identified.  And we will supplement the trade secrets

3    listing to give them all the information as to what the

4    final product is, what the features are in that final

5    product, as the (inaudible) what went before.  And we will

6    get that to them ASAP.

7          UNIDENTIFIED SPEAKER:  This is the first time,

8    Your Honor.

9          THE COURT:  Will that satisfy your needs,

10   counsel?

11         UNIDENTIFIED SPEAKER:  It does.  It is the first

12   time --

13         THE COURT:  That is the first time.  Well, Mr.

14   Crawford, when are you going to get that done?

15         MR. CRAWFORD:  I would like to get November 1st,

16   if I could.

17         THE COURT:  I will give you November 1 on that.

18         MR. CRAWFORD:  Thank you very much.

19         THE COURT:  What is the next issue?

20         MR. NICKEL:  Your Honor, the next is inadequate

21   privilege log.

22         THE COURT:  What do you mean by that?

23         MR. NICKEL:  They finally gave us the privilege

24   log, after several months of promising it to us, on Tuesday.

25   A simple look at the privilege log tells you it is

1    inadequate on its face.

2              THE COURT:  Be more specific.  I don't have the

3    log in front of me.  Would you be more specific?

4              MR. NICKEL:  Yes, Your Honor.  With respect to

5    purpose, it merely says litigation issues or client

6    consultation.  It doesn't describe the general subject

7    matter of the discussion, such as to whether it is a

8    confidence or communication between an attorney, what the

9    needs of the discussion is.  We believe that is on its face

10   sufficient.  It doesn't provide Bates ranges, Your Honor.

11             THE COURT:  I got you, counsel.

12             Would you respond, please?

13             UNIDENTIFIED SPEAKER:  Yes, Your Honor.

14             THE COURT:  I am getting a really bad echo here.

15   I don't know whether anybody else is having that problem or

16   not.

17             UNIDENTIFIED SPEAKER:  We produced a privilege

18   log that identifies the date of the communications, the

19   sender, the recipient.

20             THE COURT:  So you provided the log that

21   provided what information again?

22             UNIDENTIFIED SPEAKER:  The date of the

23   communication, the sender, the recipient, all parties copied

24   on the communication, the purpose of the communication, the

25   type of communication, e-mail or memo, the number of pages,

1    the type of privilege produced.

2              I guess we are willing to work with them a

3    little bit on the question of the purpose of the

4    communication.  But I would point out to the Court that 90

5    percent of the communications identified in the log are

6    post-filing.  In other words, they occurred after the filing

7    of this litigation.  We don't believe -- you know, is there

8    really a serious question that a communication with a client

9    relating to litigation strategy is describe in a privileged

10   log is not privileged?

11             THE COURT:  Okay.  How about a response to that,

12   counsel?

13             MR. NICKEL:  Your Honor, we don't dispute that a

14   fair number of them are dated after the date of the

15   complaint.  Your Honor, we are willing to stipulate that

16   those are probably privileged documents if they are between

17   attorney and client.  What we are really looking at, to give

18   you a certain example, in the privilege log there may have

19   been approximately ten documents from defendant Waldmann to

20   Attorney Brian Sullivan's office.  Mr. Waldmann's

21   conversations with Mr. Sullivan during his deposition, at

22   which time he said that they were, Mr. Waldmann contacting

23   Mr. Sullivan about our client and the nondisclosure

24   agreement, our clients wanted Tesla (inaudible).

25             Referring to communications with Mr. Wilcox,

1    (inaudible) specific documents and we were told we wouldn't

2    receive them.  On Tuesday, when we received a privilege log

3    (inaudible) these documents and we are not going to get

4    them.

5              MR. WILCOX:  Your Honor, if I may.  The question

6    here before the Court today is the adequacy of the privilege

7    log.  The information, as Mr. Nickel just described, he

8    clearly has enough information, if he wants to challenge the

9    privilege asserted, he certainly is entitled to do that.

10              UNIDENTIFIED SPEAKER:  Your Honor, we request

11    the opportunity to do that, as well as with respect to two

12    other documents.

13              UNIDENTIFIED SPEAKER:  You have that.

14              UNIDENTIFIED SPEAKER:  Your Honor --

15              THE COURT:  I am here.

16              It sounds like that would be the thing for him

17    to do.  Don't file a motion.  If you want another

18    teleconference after you and counsel talk again, I am

19    willing to get back on the phone with you.  If you have

20    specific documents that are pertinent to your needs and

21    there is an assertion that you contend is improper, we can

22    discuss it.

23              UNIDENTIFIED SPEAKER:  Your Honor, I just wanted

24    to point out again, we already discussed these Waldmann

25    documents.

1          THE COURT:  I am not going to discuss it with

2    you today, counsel.  I have other matters that I need to

3    attend.  If you want to raise this again after you have

4    tried again to resolve it, I am willing to do that.

5          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

6          One final issue?

7          THE COURT:  Yes.

8          UNIDENTIFIED SPEAKER:  E-mail communications

9    within the Tesla organization relating to certain Tesla

10   employees or officials.

11         We feel that their production with respect to

12   these individuals is grossly deficient.

13         THE COURT:  Why do you say that?

14         UNIDENTIFIED SPEAKER:  Today we have only

15   received a handful of communications relating to one of

16   their, I believe it is the president, or the leader of their

17   sales, Mr. Mooney.  Otherwise, we received few if any from

18   Mr. Masilotti.  And we have received none with respect to

19   Messrs. Roscioli, Talbot, Gresk or Gabriel.

20         Our belief is that each individual at Tesla knew

21   about the relationship between NMT and Tesla, alleged

22   misappropriation of the trade secrets, and that e-mail

23   communications as well as other documents will prove this.

24         They have not provided it to us.

25         THE COURT:  Okay.  Let's hear a response.

1                    UNIDENTIFIED SPEAKER:  Your Honor, I have to

2    object most heartedly to the representation we only produced

3    a handful of e-mails.  We produced very early on in the

4    case, without a discovery request, extensive e-mails between

5    Mr. Waldmann and the NMT defendants, again, Mr. Waldmann as

6    an employee of Tesla Industries and NMT.

7                  The point is that Mr. Waldmann was the only

8    party at Tesla Industries that any of these defendants ever

9    communicated with, ever communicated with.  We produced

10   every e-mail of which we were aware that relates to those

11   communications.

12                  Our client is not an e-mail-based company.  We

13   are willing to certify to the existence of other people's.

14   A lot of the e-mails were deleted by Mr. Waldmann before he

15   left the company.

16                 UNIDENTIFIED SPEAKER:  Your Honor, I apologize

17   if I wasn't clear.  I wasn't claiming they haven't produced

18   e-mails with respect to Mr. Waldmann.  I was claiming with

19   respect to Messrs. Masilotti, Roscioli, Talbot, Gresk and

20   Gabriel.  We answered for Mr. Mooney, and any from Mr.

21   Masilotti, there certainly is very view.

22                 UNIDENTIFIED SPEAKER:  Your Honor, we believe we

23   produced what is required, what is responsive to the

24   document request.  We are willing to go back and check

25   again.  To characterize the production of the Mooney e-mails

1    as a handful, it seems to me, is really surprising.

2            But it seems to me this is an issue we should be

3    able to work out and we are willing to do that.  It may be

4    that -- I don't know what else to tell the Court.

5            THE COURT:  Take your crack at it, counsel.

6            UNIDENTIFIED SPEAKER:  We are willing to go back

7    and check again.  We are not trying to hide anything.

8            THE COURT:  That's fine.  The Court accepts your

9    offer.  Obviously, your opponent will go back, revisit the

10   issue.  Take another look at your records.  Discuss and

11   narrow the focus, if that needs to be done, of the field of

12   request, and see what you can work out.  If you can't work

13   it out, let us know.

14           UNIDENTIFIED SPEAKER:  Okay, Your Honor.  I

15   would just like to try to resolve this issue as quickly as

16   possible.

17           THE COURT:  I have just given the solution to

18   it.  You got to talk.

19           UNIDENTIFIED SPEAKER:  We understand what the

20   Court's direction is in that regard.

21           THE COURT:  Thank you, counsel.

22           (Teleconference concluded at 9:50 a.m.)

23

24                    -   -   -

25   Reporter:  Kevin Maurer

# EXHIBIT 15

1

1    IN THE UNITED STATES DISTRICT COURT

2    IN AND FOR THE DISTRICT OF DELAWARE

3                    - - -

4    TESLA INDUSTRIES, INC,              :      Civil Action

5              Plaintiff,                :
                                         :
6                                        :
                                         :
7          v.                            :
                                         :
8    DAVID C. WALDMANN, LYNDOL W.        :
     HOLLINGSWORTH, CHARLES              :
9    MINNICK a/k/a CHUCK MINNICK,        :
     and NEW MILLENNIUM TOOLS, INC.,     :
                                         :
10            Defendants.                :      No. 06-055-GMS

11                    - - -

12             Wilmington, Delaware
             Thursday, January 18, 2007
13                   9:15 a.m.
             Telephone Conference

14                    - - -

15
     BEFORE:   HONORABLE GREGORY M. SLEET,
16
     APPEARANCES:
17
             BRIAN A. SULLIVAN, ESQ.,
18           ROBERT D. WILCOX, ESQ., and
             AMY RAEANN WARNER, ESQ.
19           Werb & Sullivan

20                         Counsel for Plaintiff

21           JOHN D. DEMMY, ESQ.
             Stevens & Lee
22                    -and-
             JOHN A. ADAMS, ESQ.
23           Susan Widman & Brennan, P.C.
             (King of Prussia, PA)

24

25                         Counsel for Defendant
                           Waldmann

EXHIBIT 15

2

APPEARANCES CONTINUED:

       LAUREN E. MAGUIRE, ESQ.
       Ashby & Geddes
             -and-
       RODNEY R. SWEETLAND, III, ESQ., and
       IAN TARONJI, ESQ.
       Adduci, Mastriani & Schaumberg, LLP
       (Washington, D.C.)

                    Counsel for Defendants
                    New Millennium Tools, Inc.,
                    Hollingsworth, and Minnick

             -   -   -

       THE COURT:  Good morning.

       UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

       THE COURT:  Who is on the line for plaintiff,
counsel?

       MR. WILCOX:  Robert Wilcox for the plaintiff
Tesla Inc.  I am joined by Brian Sullivan and Rasann Warner,
both attorneys at Werb & Sullivan.

       THE COURT:  For defendant.

       MR. ADAMS:  John Adams for defendant Waldmann.

       MS. MAGUIRE:  Lauren Maguire in Wilmington for
the NMT defendants.

       MR. SWEETLAND:  This is Rodney Sweetland and Ian
Tarongi in Washington, D.C. for the EMT defendants.

       THE COURT:  Did we get everybody?

       So this is the second conference for the purpose
of taking up discovery disputes.  We have some 12 or 13
items here.  It appears the parties are not getting along

3

1    very well.  Is that a correct assumption here?

2                UNIDENTIFIED SPEAKER:  I believe, Your Honor.

3                THE COURT:  Are not getting along or are getting

4    along?

5                UNIDENTIFIED SPEAKER:  Are not.

6                THE COURT:  We are going to take these matters

7    up.  First I want to inquire as to whether any of them have

8    been resolved.

9                MR. SWEETLAND:  I believe that the summary that

10   went to Your Honor, which was a very broad overview, is

11   still extant.  There were subsidiary issues that have been

12   resolved between the parties prior to this call, I

13   understand.

14               THE COURT:  Okay.  I gather everyone concurs in

15   that view?

16               MR. WILCOX:  Your Honor, we did receive some

17   documents late yesterday afternoon.  We don't believe they

18   really address most of our concerns.  But I did want to

19   acknowledge that we received them.

20               THE COURT:  Let's take up NMT's issues.

21               MR. SWEETLAND:  Your Honor, we have eight

22   issues, the first of which is a continuation of an issue

23   that was raised during our initial conference on October

24   20th.

25               THE COURT:  You have eight issues.  I see four

4

1    bullets.

2            MR. SWEETLAND:  Right.  But within those four,

3    some are interrogatories, some are requests for production.

4    This is by topic.

5            THE COURT:  Counsel, we are not going to stay on

6    the phone all morning on this.  Do you understand?

7            MR. SWEETLAND:  I understand.  I will be --

8            THE COURT:  That --

9            MR. SWEETLAND:  -- very brief.

10           THE COURT:  That is not directed at you --

11   counsel, listen for my voice.  Okay?  When you hear my

12   voice, shut up.  All right?  Is that understood?

13           MR. SWEETLAND:  Yes, Your Honor.

14           MR. SULLIVAN:  Yes, Your Honor.

15           Paul Crawford, one of the attorneys for the

16   plaintiffs, unfortunately, is sick.  And he was going to

17   join the conference this morning.  Given, Your Honor,

18   really, the number of issues, discovery issues that are

19   pending, Mr. Crawford's suggestion would have been that each

20   party ought to take two or three primary ones and really

21   stick to those and bring them before Your Honor.

22           THE COURT:  Thank you, Mr. Sullivan.  We will

23   see.

24           I intended to be just as rude as I just sounded,

25   because I am not happy.

5

1        MR. SULLIVAN:  Understood, Your Honor.

2        THE COURT:  Let's go, counsel.

3        MR. SWEETLAND:  The first issue, Your Honor, is

4   damages during the October 20th conference.  Your Honor

5   ordered Tesla to produce discovery in response to our

6   damages request.  To date, we have yet to receive any

7   documents that support the damages allegations.

8             We received an expert witness report on December

9   29th that alleges over a million dollars in lost sales.  And

10  it references as a base computation such items as tax

11  returns.  We have yet to receive a single tax return.  We

12  have yet to receive any profit-and-loss statements.  We have

13  yet to receive any internal accounts receivable.

14       THE COURT:  I got your point, counsel.  Let's

15  get a response.

16       MR. ADAMS:  Defendant Waldmann joins in that

17  request.

18       THE COURT:  Let's get a response.  Who will

19  respond?

20       MR. WILCOX:  Your Honor, we certainly are

21  willing to provide everything that was provided to the

22  expert.  We recognize they are entitled to the documents

23  that, every document that the expert reviewed.  I will make

24  sure that gets done in the next three or four days.

25             As far as the tax returns, the same is true.  We

6

1    will produce them.

2            We think to the extent there is personal

3    information, it should be redacted.  We would expect we can

4    resolve that with counsel.  I am not sure we have an issue

5    here.

6            MR. SWEETLAND:  Your Honor, if we get all tax

7    returns, including ones -- recent ones -- for whatever

8    reason, the expert didn't rely on the four most recent years

9    of tax returns -- we believe that we need those as well.

10   Those are the years in which Tesla has made an allegation

11   there has been lost sales.  If we get the tax returns and

12   the underlying data for the tax returns, then there is no

13   issue.

14           THE COURT:  Any difficulty with that, Mr.

15   Wilcox?

16           MR. WILCOX:  No, Your Honor.  The question, of

17   course, becomes as to what are underlying documents.

18   Theoretically, every financial document, every invoice,

19   every sale becomes part of the underlying documents.  I

20   would hope we could resolve that issue.

21           We will give the tax returns and the stuff --

22   the documents that were given to the expert.

23           THE COURT:  Is that sufficient for your needs,

24   Mr. Sweetland?

25           MR. SWEETLAND:  It is, Your Honor.

7

1          THE COURT:  Okay.  Next issue.

2          MR. SWEETLAND:  The second item is an

3    interrogatory answer, it is No. 22.  It is information

4    relating to allegations that Tesla has made in the

5    marketplace concerning any misconduct by my clients.  This

6    is in support of our Lanham Act allegation.  During Mr.

7    Masilotti's, the principal of Tesla, deposition, he

8    indicated he was unable to recall all the people that he had

9    talked to about what our client, my clients have allegedly

10   done.

11          Last week we received in discovery a document

12   that was apparently sent out via e-mail to some unidentified

13   number of Tesla contacts in the government contracting

14   industry.  We just want to know -- we need to know who that

15   went to, because it makes allegations of misconduct in the

16   marketplace by our clients, which goes to the Lanham Act

17   claim.  We believe the only way to answer that, because

18   during the deposition Mr. Masilotti was unable to recall the

19   full extent of it, is in the context of an interrogatory

20   response.

21          MR. ADAMS:  Mr. Waldmann joins in that request,

22   Your Honor.

23          THE COURT:  Can I assume that Waldmann joins in

24   each of the EMT requests?

25          MR. ADAMS:  I believe, Your Honor.

8

1          THE COURT: You don't have to chirp up each

2      time, counsel.

3          MR. WILCOX: Your Honor, we will certainly

4      identify the one communication in question. We just don't

5      think there are a lot of communications of the type that the

6      defendants are looking for. But obviously, I wasn't aware

7      that the information they got did not include the name of

8      the recipient. We will get that to them.

9          THE COURT: Within the same three-day time frame

10     that the other information is going to be provided.

11         MR. WILCOX: Absolutely, Your Honor.

12         THE COURT: Mr. Sweetland.

13         MR. SWEETLAND: That is fine, if we have that

14     proffer, Your Honor.

15         THE COURT: Next item.

16         MR. SWEETLAND: The third item, Your Honor,

17     relates to, in the complaint, there is referenced a private

18     investigation that occurred at the inception or prior to the

19     litigation. In the affidavit of Mr. Masilotti attached to

20     the complaint, in support of their request for preliminary

21     injunction, there were 14 items that were identified as

22     having been obtained as a result of the investigation. We

23     also know that included in that investigation was a

24     tape-recorded conversation with David Waldmann.

25         We are requesting that the private

9

1    investigator's report include the tape-recorded statement,

2    not the transcript but the tape-recorded statement itself

3    with our co-defendant be provided.  Our basis for that is,

4    of course, under Rule 26 any statement of a party is

5    discoverable, and based upon the revelation of the result of

6    the private investigator's investigation, we believe that

7    there has been a subject matter and issue waiver of all that

8    material.

9         MR. ADAMS:  Your Honor, Waldmann would add to

10   that my client was terminated due to the investigation,

11   which we think therefore we are entitled to it.  That was

12   the basis of the termination.

13        Number two, that there has been allegations that

14   my client destroyed e-mails that was made in the deposition

15   at the end of the discovery period.  We believe this issue

16   will show that e-mails were not destroyed by my clients.  He

17   was gone by the time the e-mails were destroyed.  They were

18   in fact destroyed by Mr. Masilotti.

19        THE COURT:  Counsel, your name?

20        MR. ADAMS:  John Adams for defendant Waldmann,

21   Your Honor.

22        MR. WILCOX:  Your Honor, I think there are a

23   couple of different issues there.  I think we are kind of

24   getting off the primary issue.

25        As far as the allegation as far as the

10

1    disruption of e-mails, I mean, that's a question of -- you

2    know, an issue of fact.  We are at this point undertaking an

3    extensive and very expensive review of the hard drive of Mr.

4    Waldmann's computer.  We expect to be producing documents

5    that we believe will strongly support our suggestion that

6    those documents, there was a tremendous amount of material

7    deleted.  I don't know where the allegation comes from, that

8    my client was deleting information from the defendants'

9    computer.  That's to me just a bald allegation.

10           As far as the investigation report, we think

11    it's protected under Rule 26.  It's an investigation done at

12    the direction of attorneys, and, you know, it was prepared

13    in anticipation of litigation.

14           Now, the answer may be different with regard to

15    the witness statement, the recorded statement of the

16    witness.  And we are willing to take, obviously, the Court's

17    guidance on that.

18           The real issue here, if we are talking about

19    documents on a hard drive, one of the defendants in this

20    case has acknowledged that his hard drive, he removed it

21    from his computer and put it in a place he referred to as

22    very difficult to find.  We think we are entitled to get all

23    the documents off that hard drive and find out what's going

24    on with that.

25           That's the kind of issue we have been dealing

11

1    with, Your Honor.

2              MR. SWEETLAND:  Your Honor, I thought I would

3    respond to that when it was -- I can address that now.

4              THE COURT:  You can address that later, when we

5    come to it.

6              MR. ADAMS:  Your Honor, I would like to add,

7    when he was terminated, they had an e-mail in his possession

8    that came from an account.  It was not a Tesla e-mail

9    account.  It was one of his (inaudible) account.  We believe

10   there is an allegation --

11             THE COURT:  Counsel, I have no idea what you are

12   talking about.  Let me be real frank:  As I understand it,

13   when we started, this portion of the discussion has to do

14   with the results of a private investigation that was

15   commissioned.  Is that correct?

16             MR. ADAMS:  Yes, Your Honor, that is correct.

17             THE COURT:  And there is a desire on behalf of

18   the NMT defendants to have produced to them the report

19   concerning a particular witness who was the subject of this

20   investigation.  Is that correct?

21             MR. ADAMS:  No, Your Honor.  We want the entire

22   report.

23             THE COURT:  It appears that counsel for

24   plaintiff is prepared to provide the report of the witness.

25   That is not at issue.  Is that correct?

12

1          MR. WILCOX:  There is a recorded witness

2   statement, Your Honor.

3          THE COURT:  In whatever form, you indicated, I

4   think, that you were prepared to accept the guidance of the

5   Court on that.

6          MR. WILCOX:  Yes, Your Honor.

7          THE COURT:  What is the basis or would be the

8   basis for withholding the recorded witness statement?

9          MR. WILCOX:  That it was prepared as part of a

10  pre-litigation investigation, Your Honor.

11         THE COURT:  Do you wish to assert that position

12  this morning?  Or are you prepared to provide the other side

13  with the report or the statement, the recorded statement?

14         MR. WILCOX:  That is still our position, Your

15  Honor, with the guidance of the Court.

16         THE COURT:  You have raised the general issue or

17  the general objection to providing the work of the

18  investigator generally.  Is that correct?  You claim that it

19  is work product.

20         MR. WILCOX:  That's correct.

21         THE COURT:  So I don't know why we wouldn't

22  include the witness statement, why you wouldn't include that

23  within your contentions regarding work product.

24         MR. WILCOX:  We are including that, Your Honor.

25         THE COURT:  You essentially contend that an

13

1    investigator was hired.

2              MR. WILCOX:  That's correct.

3              THE COURT:  And that the fruits of that

4    investigators's labors are somehow protected by Rule 26.

5              MR. WILCOX:  That's correct.

6              THE COURT:  Elaborate on that a little bit more

7    for me.

8              MR. WILCOX:  Your Honor, that was done in

9    connection with retention -- you know, the plaintiff was

10   shocked to realize there was a problem, and realized early

11   on that there was likely to be some litigation.  There was a

12   suspension of one of the defendants here.  A law firm was

13   retained, and under the guidance of the law firm an

14   investigator did an internal review of various materials.

15             Now, the witness statement in question, the

16   recorded statement, was taken not by the outside

17   investigator but by an in-house security guy who had been

18   brought on.  I don't want to mislead the Court on that.  It

19   was not recorded by the investigator, the outside

20   investigator.  It was taken by an in-house security

21   consultant.

22             THE COURT:  Okay.

23             MR. SWEETLAND:  Your Honor, if I may, whenever

24   the Court has concluded, address one of these issues.

25             THE COURT:  Yes.

14

1          MR. SWEETLAND:  From our perspective, again,

2     Your Honor is correct there are really two subsidiary issues

3     to this.  There is the issue of a tape-recorded statement of

4     a party defendant, which we believe under black-letter law

5     is discoverable under any circumstances, regardless of who

6     obtained it or why.  He is a party defendant.  That is not,

7     we don't believe, a significant legal issue.

8          The second issue, as to the discoverability of

9     the fruits of the private investigator, we believe that

10    there has been a waiver because at least 14 separate items

11    that were discovered by that private investigator were

12    explicitly referenced in the complaint and the affidavit

13    that was attached in support of it.  Even if the work

14    product privilege did apply, and it may very well have

15    initially, when the plaintiffs chose to include the fruits

16    of the investigator's research in the moving documents that

17    initiated the case, they put that issue in this litigation.

18          THE COURT:  Okay.  So Mr. Sweetland has put a

19    finer point on the discussion.  Mr. Wilcox, why don't you

20    address first the contention that this is, after all, the

21    statement of a party, albeit the product of an in-house

22    investigation, nonetheless, a statement of a party and

23    therefore subject to production.

24          MR. WILCOX:  I don't agree with Mr. Sweetland

25    that it is necessarily black-letter law that it somehow cuts

15

1    through the privilege.  We are all aware that work product

2    is a qualified privilege.

3               Again, I would kind of seek the guidance of the

4    Court on that.  Obviously, I don't feel as strongly about

5    that particular issue, about the tape recording, as I do

6    about the --

7               THE COURT:  Let me interrupt, because this is

8    the kind of thing that judges find time-wasteful.  I think

9    that this is something, this particular, very narrow issue,

10   is something that should have been capable of being worked

11   out by the parties.  Whether it is black-letter law or not,

12   it is a statement of a party.  You might have imagined that

13   I was probably, most judges would probably say, you have got

14   to give that over.  Wouldn't you reasonably anticipate that

15   kind of ruling?

16              MR. WILCOX:  That is fine, Your Honor.  We

17   accept that ruling, and we will turn it over.

18              THE COURT:  What I am asking for is a little

19   better exercise of your discretion as lawyers in the future

20   on these kinds of matters.

21              So let's talk about the waiver.  Why don't you

22   respond to the contentions that you have waived work

23   product.

24              MR. WILCOX:  I don't believe we have waived work

25   product, Your Honor.  There were references to the fact that

16

1    there was an investigation report.  The report clearly

2    itself was not attached to the complaint and has not been

3    disclosed anywhere in there.  The fact that an investigation

4    itself was done doesn't, in my view and under our review of

5    the law, constitute a waiver of the contents of the report

6    itself.

7              MR. ADAMS:  Your Honor, I would say, if they are

8    going to take that position, they can't say at trial that

9    they did an investigation of my client, they terminated him

10   based on the investigation, and they are not going to turn

11   it over.

12             THE COURT:  I agree with you.

13             MR. WILCOX:  We don't need the investigative

14   report at trial to prove the reason --

15             MR. ADAMS:  You are going to have a hard time

16   saying why he was terminated, what is the reason why you let

17   him go.

18             THE COURT:  Counsel, you will address your

19   remarks to the Court and you won't interrupt your opponent

20   like that.

21             Had you finished, counsel?

22             MR. ADAMS:  Yes, Your Honor.

23             THE COURT:  Had you finished, Mr. Wilcox?

24             MR. WILCOX:  Your Honor, I don't believe we

25   intend to introduce the report at trial.  Obviously, if we

17

1    intended to introduce it at trial, we would have already

2    produced it.

3              MR. ADAMS:  Your Honor, as far as referencing,

4    if they want to tell the jury they did an investigation and

5    based on that investigation they didn't pay my client the

6    money he was owed and they terminated employment, they

7    weren't entitled to the investigation.

8              THE COURT:  Is that the intended use of this

9    material?

10             MR. WILCOX:  We are not -- we don't need the

11   investigative report at trial, Your Honor.

12             THE COURT:  Not the report.  He contends that

13   you might desire to reference the report before the jury and

14   that should be precluded as well if you are not going to

15   turn it over and give them a fair opportunity to challenge

16   the report.

17             MR. WILCOX:  That seems to strike me as an issue

18   for a motion in limine, Your Honor.

19             THE COURT:  Probably right.  But you must

20   understand that he is probably going to have a fairly strong

21   position in limine should you at this point determine that

22   you are not going to turn this over.

23             MR. WILCOX:  I am aware of that, Your Honor.

24             THE COURT:  I am not going to order that you

25   turn it over at this point.  But remember the discussion

18

1    here today.  Of course, we are having it transcribed.

2           The next matter.

3           MR. SWEETLAND:  Your Honor, I will wrap up with

4    two more issues.

5           The first is, we believe that e-mails have been

6    withheld in response to numerous interrogatories.

7    Approximately nine Tesla employees identified at the

8    inception of the case who had discoverable information

9    relate to this.  Of those nine, only two have had a

10   substantial number of e-mails supplied.  Three have had no

11   e-mails, and Mr. Masilotti, who describes himself as the

12   chief cook and bottle washer of Tesla, the plaintiff, there

13   is only two e-mails from him.  We find it inexplicable as to

14   the absence of e-mails.

15          THE COURT:  Where are the e-mails?

16          MR. WILCOX:  Your Honor, we have been through

17   this issue multiple times.  There has been much testimony

18   about it at the depositions of any witnesses that the

19   defendants wanted to take.  Everything has been produced

20   that's out there.  The company did not -- I mean, it seems

21   to me that a lot of the issues that are being raised by the

22   defendants, and I think it is especially true with regard to

23   what they regard as insufficient responses to requests for

24   admissions, which has been a huge issue regarding

25   authenticity of various types of documents, they just don't

1    like the answer.  They are somehow asking the Court to

2    direct us to give a particular answer that doesn't square

3    with the facts, as we see them.

4              THE COURT:  So your point is you have produced

5    all the e-mails that ought to be produced.

6              MR. WILCOX:  That's correct.

7              THE COURT:  Counsel, what else would you have

8    him do?

9              MR. SWEETLAND:  If he is willing to represent

10   that to Your Honor, he set that in stone, and I will move

11   along.

12             THE COURT:  He is an officer of the Court.  We

13   will have to accept that recommendation.  I will accept it.

14   I have no reason not to.  I don't think you do, either.

15             There is a desire to extend the time to complete

16   expert discovery.  I don't have an objection to that

17   necessarily.  Does the other side?  Is this a joint request?

18   Whose request is this?

19             MR. SWEETLAND:  This was the NMT defendants,

20   Your Honor.

21             THE COURT:  Is there an objection from Tesla?

22             MR. WILCOX:  To the extent there is a short

23   extension, Your Honor, that would be fine.  But we have

24   asked for cooperation on a number of discovery issues and we

25   haven't gotten any extensions -- well, I won't say we

20

1    haven't gotten any.  But I guess we should have asked the

2    Court for all our extensions.

3                    THE COURT:  The only entity that is empowered to

4    grant an extension or amendment to the schedule is the

5    Court.  I want you all to keep that in mind.

6                    MR. WILCOX:  Yes, Your Honor.  We accept the

7    Court's guidance on this again, of course.  We would consent

8    to a short extension of the time for discovery.  We don't

9    believe it is necessary.  I think the Court is making it

10   very clear it wants us to be cooperative.

11                   THE COURT:  What is the reason for NMT's

12   request?

13                   MR. SWEETLAND:  We are unable to even initiate

14   the deposition of the plaintiff's experts because we haven't

15   received this underlying information.  We, for instance, had

16   discovery requests asking for any documents provided to or

17   received from expert witnesses.  We received none of that.

18   At the beginning of this call --

19                   THE COURT:  Some of the information that we

20   discussed earlier in the call would fall into that category.

21                   MR. SWEETLAND:  Yes, Your Honor.

22                   MR. ADAMS:  Our deadline for producing experts

23   is tomorrow.

24                   THE COURT:  For producing expert reports and/or

25   deposing them as well?

21

1          MR. ADAMS:  To produce reports.  We can't do

2     that because we don't even know all this information.

3          THE COURT:  So you are requesting an extension

4     of the entire expert process, the production of opening

5     reports, rebuttals, then the time to complete expert

6     discovery.  Is that correct?

7          MR. SWEETLAND:  No, Your Honor.  We would only

8     request time to do the defendants' rebuttal reports to the

9     plaintiff's reports.  We do not, the NMT defendants do not

10    anticipate providing affirmative evidence for the

11    counterclaims reports.  We only need the time, some period

12    of time after this production is effected in which to depose

13    their experts and determine whether or not we are going to

14    provide counter-experts.

15         MR. WILCOX:  Your Honor, Mr. Sweetland is

16    correct.  The plaintiff has produced the reports in a timely

17    fashion as directed by the Court previously.  We said we

18    would give them the documents in three days.

19         THE COURT:  How much time do you need, counsel?

20         MR. SWEETLAND:  Twenty days for us to do our

21    rebuttals.

22         THE COURT:  Any difficulty with that, counsel?

23         MR. WILCOX:  No.  That is fine, Your Honor.  But

24    I do want to make it clear why I don't accept that we

25    haven't produced any of the documents.

22

1          THE COURT:  I understand your position.

2          What would that be, Ms. Walker?

3          MS. WALKER:  February 7.

4          THE COURT:  We will grant until February 7 for

5    the purpose of producing the NMT rebuttal reports.  What is

6    the current cutoff for expert discovery?

7          MR. SWEETLAND:  I believe it's the 27th or 28th.

8          THE COURT:  Okay.  I skipped over deficiencies

9    in admissions.  Is this on both, all three parties' -- no,

10   it is not.  It is just on NMT's list of issues.

11         MR. SWEETLAND:  Yes, Your Honor.

12         THE COURT:  What is the problem that you have

13   with the plaintiff's responses to requests for admissions?

14   It was alluded to earlier I think by Mr. Wilcox.  Is that

15   correct?

16         MR. SWEETLAND:  Yes, Your Honor.  Our problem is

17   they have refused to admit the authenticity of documents

18   that were produced by them and that were derived from their

19   website.  They said that they were unable to admit or

20   respond, for instance, that catalogs that we received from

21   their website downloaded were kept in the ordinary course of

22   business.  These were housekeeping requests for admission.

23         THE COURT:  Hold on.

24         Is that correct, counsel?

25         MR. WILCOX:  Your Honor, we went through those

23

1   requests for admissions, I believe it was 236 of them, very

2   carefully.  They asked whether a catalog was available on

3   the Tesla Industries website as of a particular date.  They

4   asked us to admit that documents produced, created by

5   defendant Waldmann at a time when we think he was working

6   for a third party, was scheming to leave the company, and

7   was, for lack of a better word, stealing the trade secrets,

8   were produced in the ordinary course of business.

9           The first issue is an issue of verification, are

10  we prepared to admit for all purposes the particular dates

11  on which information was available on the website?  No.  As

12  to are we prepared to admit the documents created by an

13  employee who we attribute, shall we say, improper motives to

14  were prepared in the ordinary course of business?  No.

15          THE COURT:  I got your point.  Counsel, that

16  does not seem unreasonable.

17          MR. SWEETLAND:  Your Honor, we thought it was a

18  housekeeping matter when we proposed --

19          THE COURT:  Clearly, now you understand this is

20  not just a housekeeping matter.  Wouldn't some further

21  meet-and-confer help further sharpen the focus on these

22  particular issues, that is the admissions?

23          MR. SWEETLAND:  We are happy to talk further

24  about them if we can come back and talk to you later if it

25  doesn't work out.

24

1          THE COURT:  You have one more opportunity -- I

2    suggest to all of you you use it wisely -- to come back

3    before me before I send you to a discovery master.

4          MR. SWEETLAND:  I believe with that, Your Honor,

5    the NMT defendants' issues are completed for this call.

6          THE COURT:  Let's go with Tesla.

7          MR. WILCOX:  Thank you, Your Honor.  For Tesla

8    Industries.

9          I am going to try to narrow down our request

10   here.  We asked for copies of patent applications from the

11   NMT defendants.  We believe that those were based in part

12   upon technology that was improperly obtained from our

13   client.  And, quite frankly, we just haven't gotten those

14   yet.  We just think -- I don't understand why we haven't.  I

15   think they are clearly discoverable and should be produced.

16         THE COURT:  How about that?

17         MR. SWEETLAND:  Your Honor, I am holding the

18   Bates-numbered applications of which he speaks.  I am under

19   the impression -- this is at Bates No. NMT NIM2478 to Bates

20   No. 2488.  I believe that they have been produced.  I will

21   re-scan, have them re-scanned and sent to Mr. Wilcox.

22         THE COURT:  Before you do that, why don't we

23   have Mr. Wilcox check and see again whether he has got them.

24         MR. WILCOX:  Your Honor, what I would suggest --

25   I accept Mr. Sweetland's representation as to whether a

25

1   particular patent application has been produced.  What I

2   would ask is that he agree to produce all the requested

3   patent applications.  If they haven't been produced, then I

4   ask that they be produced.  If they have, I withdraw,

5   obviously, our objection.

6          THE COURT:  Mr. Sweetland, are you making the

7   representation that you have produced all of the requested

8   patent applications?

9          MR. SWEETLAND:  I cannot say that, because I

10  didn't personally make that production.

11         THE COURT:  Then you do need to go back and

12  check with whomever it is that was involved directly in this

13  process.

14         MR. WILCOX:  I will offer to the Court that we

15  will produce any one that remains available.  One of them

16  has been abandoned, (inaudible) original application.  We

17  have the drawings, but we don't have the provisional patent

18  application for the one that was abandoned.  But we will

19  certainly produce all materials that are extant.

20         MR. SWEETLAND:  Your Honor, I am a little

21  concerned about that.  I mean, to the extent -- just because

22  the application was never fully prosecuted doesn't mean that

23  it shouldn't be produced.  It is a matter of -- I cannot say

24  to the Court, Your Honor, that the provisional patent

25  application, it's a lesser process, as Your Honor is aware,

26

1    than a full-blown one that has been professionally

2    prosecuted.

3              There was a layperson, Mr. Hollingsworth, two

4    applications that I believe he did himself.  I know because

5    I am looking at the handwritten cover sheet for one of the

6    applications that exists.  I cannot say that the handwritten

7    application in a completed -- although I have the drawing, I

8    don't have the handwritten application, I don't know what

9    its status is.  If he has it, we will produce it.  If he

10   doesn't have it, I will find out and tell Mr. Wilcox why he

11   doesn't have it, and we will attempt to get it using

12   whatever process is necessary from the PTO, across the river

13   from us.

14              THE COURT:  I am satisfied.

15              MR. SWEETLAND:  I am, too, Your Honor.

16              THE COURT:  Hollingsworth and Minnick responses

17   to interrogatories.

18              MR. WILCOX:  If I may address the production of

19   documents issue.  Sorry to step back.

20              I made reference earlier to concerns and

21   evidence that one of the defendants has, or at least

22   communicated, told another defendant that he has removed his

23   hard drive from his computer and put it in a place that

24   would be very difficult to find it.  That is the kind of --

25   I am sure I don't need to explain to the Court our concerns

27

1   about that.

2              THE COURT:  Sure.

3              MR. WILCOX:  We vehemently believe that we are

4   entitled to documents from that hard drive and to an

5   explanation of how that happened.

6              THE COURT:  All right.

7              MR. SWEETLAND:  Your Honor, the hard drive in

8   question was a D drive, a backup drive to a computer that

9   was in Mr. Hollingsworth's possession, used for work not

10  with the NMT entity but with his prior employer.  At or

11  about the beginning of this case, that computer -- he ceased

12  work for this prior company, D.C. Power.  The C drive was

13  unsalvageable from the computer, and whatever information on

14  there was lost before the commencement of the case.  The D

15  drive was a backup drive containing system files and images.

16  And the overwhelming majority of the issues, upon review,

17  three attorneys from this office, including myself, have

18  reviewed the contents of that, and those documents, those

19  images were captured, with the exception of approximately

20  seven images, which were pictures of Mr. Hollingsworth's

21  wife and daughter's Halloween costumes and three items which

22  I can only characterize as being off-color jokes.  Those

23  documents were produced electronically yesterday, and should

24  arrive by Federal Express this morning at Mr. Sullivan's

25  office.

1          THE COURT:  Counsel?

2          MR. WILCOX:  That really doesn't address -- I

3    don't want to go into the fact as to when Mr. Hollingsworth

4    was working for other people.  We think that is the computer

5    from which crucial communications took place.  And really,

6    the problem is that the removal of that hard drive -- and I

7    don't understand how any defendant or any party can say to

8    another party legitimately after litigation has begun that

9    he has removed a hard drive and put it in a place where it

10   is very difficult to find.  And when we received a copy of

11   that e-mail, that was designated as attorneys' eyes only.

12   And I will address that concern.  That is a tremendous

13   concern we have here.  We think we are entitled to a greater

14   explanation than we have received to date.

15          MR. SWEETLAND:  Your Honor, that D drive is in a

16   safe place.  It is in my firm's office.  It is installed.

17   We had our computer technician install it, because it was a

18   standalone.  We had it installed.  Not one, but three

19   attorneys have gone through it.  Every e-mail that was on

20   that hard drive was produced yesterday.  The only things

21   that weren't produced were a handful of images that deal

22   with, A, Mr. Hollingsworth's wife and daughter, or, B, the

23   sort of images that get bantered around as jokes.

24          We don't know what more we can do.

25          THE COURT:  Mr. Sweetland, what is it you would

29

1   have them do?  Are you asking for the production of the

2   drive itself?

3           MR. WILCOX:  Yes, we are, Your Honor.  We have

4   asked for that repeatedly.

5           THE COURT:  Mr. Sweetland.

6           MR. SWEETLAND:  We believe that is unnecessary.

7   Obviously, if Your Honor orders it, we will do it.  But we

8   have conducted what we believe -- other than the systems

9   files on that drive, the things that make different programs

10  work, we have produced what we believe, upon the review of

11  three attorneys, to be everything that exists on there, with

12  the exception of those handful of personal documents.

13          THE COURT:  Under the circumstances, given the

14  contentions that have been exchanged here today, arguments

15  that have been made and allegations, I am going to order the

16  production of the D drive to the other side for use by

17  designated computer experts in the examination of the

18  contents of that drive.  Obviously, anything that is not

19  pertinent, that is not relevant to a claim or defense or

20  likely to lead to reasonably, reasonably calculated to lead

21  to the discovery of admissible evidence should not become a

22  part of the record in this case.  I am talking about

23  personal information, described here at least in part as

24  possibly off-color in nature.

25          This process is not going to be used to

30

1     embarrass anyone.  Is that clear?

2                 MR. WILCOX:  Your Honor, it is.

3                 The Court had ordered previously, upon the

4     stipulation of parties, that e-mails that were produced from

5     certain computers be turned over to what was called an

6     e-mail account officer who would conduct a relevance review.

7     What we would suggest is that once the forensic analysis is

8     done, that information is sent directly to the third party,

9     who essentially is acting as a magistrate or master, and

10    that he make those determinations.  That protects

11    Hollingsworth, we believe.

12                MR. SWEETLAND:  Your Honor, may I ask for

13    clarification that the physical turnover be given, too, so

14    we have a chain of custody.  I saw the package come in.

15                THE COURT:  Counsel, you can work that out.

16                MR. SWEETLAND:  We will work that out.

17                THE COURT:  Let's talk about NMT's designation

18    of documents.

19                MR. WILCOX:  We entered into a stipulated order

20    with the best of intentions that provided that certain items

21    be deemed confidential, could be stamped confidential, and

22    go to a restricted group.

23                THE COURT:  Is it your contention there has been

24    over-designation?

25                MR. WILCOX:  Yes, Your Honor.

1          THE COURT:  Counsel, you guys can't talk about

2     this?

3          MR. SWEETLAND:  Your Honor, may I just briefly

4     respond?

5          THE COURT:  Yes.

6          MR. SWEETLAND:  We have received no Bates number

7     identification of -- we have just received a blanket request

8     that we, again, we take a second look at our designations.

9     We have done that.  The protective order in this case, the

10    stipulated protective order, provides under Paragraph 4 that

11    if there is a problem with the designation, then the side

12    that has the problem should tell the other side what the

13    documents are.

14         THE COURT:  That hasn't happened?

15         MR. SWEETLAND:  No.

16         THE COURT:  Then this isn't ripe for discussion

17    today.  Do you agree that hasn't happened, counsel?

18         MR. WILCOX:  Your Honor, I don't agree.  But I

19    will remedy any deficiencies.  I think we have made it

20    extremely clear what items we are talking about.  And they

21    have made a redesignation.  The problem with the

22    redesignation is that now the Bates numbers are all messed

23    up and it's hard to tell.

24         This is probably not something the Court needs

25    to be involved with.  I would be satisfied if the Court

32

1   would give a sense that he doesn't expect over-designation

2   of the issues.  I don't understand why we can't work this

3   one out.

4          THE COURT:  Clearly, counsel need to be prudent

5   in your designations of documents as confidential.  There is

6   a process that you have outlined for yourselves in the

7   confidentiality agreement you negotiated that is designed to

8   take care of this and keep the Court out.  So I would ask

9   you to adhere to that process, be reasonable about it, not

10  be overly litigious.

11          That is my guidance to you.

12          MR. SULLIVAN:  Your Honor, may I ask, the

13  problem is, we are talking about hundreds and potentially

14  thousands of documents.  To place the burden on us to go

15  through, really, I would suggest that they designated 75

16  percent of their documents as attorneys' eyes only...

17          THE COURT:  That doesn't sound right.

18          MR. SULLIVAN:  ...for us to have to go through

19  and tell them what the Bates numbers are, number one, we

20  reviewed it once and then it was sent a second time --

21          THE COURT:  I think what you will ask me to do

22  is instruct them to go back and redesignate.

23          MR. SULLIVAN:  Yes, sir.

24          THE COURT:  So ordered.  That's it.  That is the

25  end of that discussion.

33

1          Let's go on to the next matter, Waldmann's

2    production of documents.

3          MR. WILCOX:  Thank you, Your Honor.

4          Our concern here is that we have not received

5    substantial documents from Mr. Waldmann relating to

6    electronic mail messages that we believe were sent.  There

7    is instances in which sequences are missing.  We know that

8    Mr. Waldmann sent a tremendous number of e-mails.  I really

9    think this also covers some of the NMT defendants.  We have

10   situations in which, just in a logical sense, there had to

11   have been a responsive e-mail.  With regard to Mr. Minnick,

12   we were promised those would be produced and have been

13   produced.

14         As to Mr. Waldmann, we just have not received

15   e-mails, copies of e-mails, copies of his communications

16   with other parties.  We think we are entitled to them.  If

17   counsel says they don't exist, I guess they don't exist.

18         MR. ADAMS:  Your Honor, I wrote them a letter

19   and told them we produced everything we have.  I don't know

20   what they want me to do.  I did tell them when I spoke to my

21   client last there were some documents that were created

22   after the last document production, which is sometime in

23   November, which we will supplement because there had been

24   some communications after that.  We will supplement that.

25   We are in the process of doing that right now.

1          THE COURT:  All right.  That is where it will

2   have to stay for now.

3          What about the interrogatories?

4          MR. ADAMS:  The supplementation should be done

5   by tomorrow.  I told them last week I would supplement the

6   interrogatories.

7          MR. WILCOX:  We need the documents relating -- I

8   am sorry.  We need the documents that form the basis for the

9   interrogatory answers as well.

10          MR. ADAMS:  We have produced everything we have.

11   There is some documents newly created.  We will produce

12   those, which I agreed to do by a letter.

13          MR. WILCOX:  As far as documents relating to

14   communications with third parties and former customers of my

15   client, that seems to be a major source of, a major weakness

16   in the discovery request.  I accept Mr. Adams'

17   representations.

18          THE COURT:  All right.  Thank you, counsel.

19          As far as Waldmann's issues are concerned, did

20   we take them up when we were discussing NMT's issues or are

21   there separate issues?

22          MR. ADAMS:  There is a couple left.  Number one,

23   Your Honor, point one, document requests.  Their response is

24   that they will allow me to come and look and review the

25   documents.  They have not done so.

35

1          MR. SULLIVAN:  We are not sure what your issues

2    are there.  We probably need to talk to you about it.  We

3    think we have produced documents --

4          THE COURT:  Address your comments to the Court.

5          MR. SULLIVAN:  I am sorry, Your Honor.  This is

6    Brian Sullivan speaking.

7          We are willing to speak to Mr. Adams about that.

8    We think we have produced everything that he is entitled to

9    see.  We are not quite sure what his complaint is.  We are

10   willing to talk to him about it.  I don't think we are

11   withholding anything we haven't produced.

12         MR. WILCOX:  We are not asking to come to some

13   warehouse somewhere.  There is nothing for him to see that

14   we haven't produced.  In other words, it's not like we have

15   got a box of documents here that we will only produce if he

16   comes to our offices.  That is not what we are doing.

17         MR. ADAMS:  Your Honor, why didn't they say that

18   in the response?

19         THE COURT:  I don't have time to go into that,

20   counsel.

21         Let's talk about deficiencies in plaintiff's

22   response to interrogatories.

23         MR. ADAMS:  Your Honor, the deficiencies I am

24   specifically looking at, Interrogatories No. 125 and 126,

25   which deal with their damages calculations.

36

1            THE COURT:  Have you and your opponent talked

2    about this?

3            MR. ADAMS:  I sent them a letter and they never

4    responded to me.

5            THE COURT:  I asked have you talked about it?

6            MR. ADAMS:  We talked on the phone in general,

7    yes, we have.  And they keep telling us they will get back

8    to it, and he never gives me an answer.

9            MR. WILCOX:  Your Honor, I may.  We told -- I am

10   not sure that this is a different issue than the -- all I

11   can tell the Court is we will provide whatever documents --

12           THE COURT:  It sounds like the same issue we

13   discussed with MMT.

14           MR. WILCOX:  It does, Your Honor.

15           MR. ADAMS:  Your Honor, this is an interrogatory

16   request.  It is not a production of documents.  If they want

17   to supplement the interrogatories by the documents produced

18   to answer that, that is fine with me.

19           THE COURT:  Is that fine with you, counsel, on

20   the other side?

21           UNIDENTIFIED SPEAKER:  Does this have to do with

22   damages?

23           MR. WILCOX:  Yes.

24           MR. SULLIVAN:  We provided an expert report.  We

25   provided the documents that have been provided to the

37

1  expert.

2          MR. ADAMS:  None of the documents have been

3  provided to the expert, number one.  No. 2 --

4          THE COURT:  Counsel, clearly, this is something

5  that you don't disagree about in terms of whether the items

6  should be provided.  You disagree about whether they were in

7  fact provided.  So that you need to work out.  Okay?

8          MR. WILCOX:  Your Honor, I will make the same

9  representation that we made with regard to the other -- to

10 the documents related to the other damages issues.  To the

11 extent that the interrogatory also needs to be supplemented,

12 we will do that as well, after consulting with Mr. Adams,

13 which I would suggest we do.

14         THE COURT:  Acceptable, Mr. Adams?

15         MR. ADAMS:  Yes, sir.

16         THE COURT:  What about this contention about the

17 plaintiff's designation of documents?  What is that all

18 about?

19         MR. ADAMS:  I am not complete with my other

20 items, sir.

21         THE COURT:  Yes, you are, because I got to go.

22         MR. ADAMS:  I got some very important things,

23 Your Honor.

24         THE COURT:  I have a criminal matter where the

25 parties are out in the courtroom right now waiting for my

38

1    arrival.

2              MR. ADAMS:  I am sorry.

3              THE COURT:  Your matter is more important, is

4    that what you are telling me?

5              MR. ADAMS:  No.

6              THE COURT:  There is somebody out there waiting

7    to go to jail.

8              MR. ADAMS:  I used to be a criminal attorney.  I

9    understand.

10             THE COURT:  I don't used to be a judge.  I am a

11   judge today.  You are finished with the other item.  You

12   have a few minutes on this last one.

13             MR. ADAMS:  I ask for the same thing that Tesla

14   asked for, they have over-designated virtually every

15   document in this case.  No document is confidential and no

16   document is attorney-client.

17             THE COURT:  Counsel, you have got to be more

18   professional in the conduct of this matter generally.  That

19   comment goes to all of you.  Cut it out.  You have got one

20   more opportunity with me, and if I have to hear crap like

21   this, and I do mean crap, there is going to be a problem.

22             Counsel, we are done.

23             (Conference concluded at 10:05 a.m.)

24   Reporter:  Kevin Maurer

25

# EXHIBIT 16

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ DELAWARE

Tesla Industries, Inc. a Delaware Corporation

v.

David C. Waldmann, Lyndol W. Hollingsworth,
Charles Minnick, and New Millennium Tools, Inc.

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 06-55-GMS

TO: Custodian of Documents
Ridgeway Accounting
Shoppes of Red Lion Road, 112 Jestan Boulevard
New Castle, Delaware 19720

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE    Ridgeway Accounting    Shoppes of Red Lion Road, 112 Jestan Boulevard, New Castle, Delaware 19720 | DATE AND TIME    1/30/2007 10:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    attorney for defendants | DATE    16 January 07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Rodney R. Sweetland, III, Adduci, Mastriani & Schaumberg, L.L.P.
1200 17th Street, N.W., Washington, DC 20036, 202-467-6300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT
16

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

## DEFINITIONS

1.     "You," or "yourself" means Ridgeway Tax Accounting Services and:  (i) its present and former directors, officers, partners, members, employees, agents, representatives, accountants, investigators, consultants, attorneys and predecessors and successors in interest and any parent, subsidiary and affiliated entities; (ii) any other person or entity acting on its behalf or on whose behalf it acts or has acted; and (iii) any other person or entity otherwise subject to its control, or which controls or controlled it, or with which it is or was under common control.

2.     "Tesla" includes, collectively and individually, Tesla Industries Inc., 109 Centerpoint Boulevard, New Castle, Delaware 19720-4180, its wholly owned subsidiaries, and each predecessor, successor, division, subsidiary, parent or related company thereof, whether or not organized under the laws of any state of the United States.

3.     "Document" includes, without limitation, any kind of written, typewritten, printed, graphic, or recorded material whatsoever, including, but not without limitation to, notes, memoranda, letters, reports, studies, e-mail, telegrams, publications, contracts, manuals, business plans, proposals, licenses, drawings, designs, data sheets, laboratory notebooks, diaries, logs, specifications, brochures, product or service descriptions, periodicals, prior art, schematics, blueprints, recordings, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meeting minutes, databases, electronic files, software, transcriptions of recordings, computer tapes, diskettes, or other magnetic media, bank checks, vouchers, charge slips, invoices, expense account reports, hotel charges, receipts, freight bills, agreements, corporate resolutions, minutes, books, binders, accounts, photographs, and business records, whether or not in your possession or under your control, if at any time under your

possession or your control, referring, relating or pertaining in any way to the subject matter to which the requests for production refer, and includes, without limitation, originals, all file copies, all other non-identical copies, no matter how prepared, and all drafts prepared in connection with such documents, whether used or not.

4.      "Things" means any tangible items, including, without limitation, models, molds, prototypes, software disks, hard disks, floppy disks, CD ROMs, back-up tapes or disks, electronic database files, electronic files, and samples of any device, apparatus or program.

5.      The terms "relating to" and "referring to" mean in whole or in part: alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing, constituting, identifying or stating.

6.      The term "including" means including but not limited to.

7.      The singular as used herein shall include the plural and the masculine gender shall include the feminine and the neuter gender.

8.      "And" and "or" as used herein shall be construed both conjunctively and disjunctively and each shall include the other whenever such construction will serve to bring within the scope of these requests for production any document that would otherwise not

## DOCUMENTS TO BE PRODUCED

Any and all documents, correspondence (including electronic mail), and notes regarding any and all contacts between yourself and Tesla from June 1, 1995, to the present, including, but not limited to:  tax returns; financial reports; balance sheets; invoices; profit and loss statements; sales data; inventory data; e-mails; letters; hand-written notes of conversations; contact information; and files.

# EXHIBIT 17

| | |
|---|---|
| **From:** | Rodney Sweetland |
| **Sent:** | Wednesday, January 24, 2007 3:46 PM |
| **To:** | 'Raeann Warner' |
| **Cc:** | Brian A. Sullivan; Paul E. Crawford; Robert Wilcox; David Nickel; SBalick; jaadams@swbcounsellors.com; JDay; lmaguire@ashby-geddes.com |

**Subject:** RE: Tesla v. Waldmann et al

Dear Ms. Warner:

1. Next Tuesday is simply too late to deal with the outstanding discovery issues. It is the position of the NMT Defendants that Tesla is in contempt of two Orders by Judge Sleet and intend to raise this with the Court immediately. I am available today and tomorrow to discuss all outstanding issues. Five attorneys have entered their appearance on behalf of Tesla in this case and you appear to have been providing legal representation for Tesla for several months without having entered your appearance. I find it incredulous that not a single one of the six attorneys for Tesla is available until next Tuesday to discuss compliance with Court orders. Indeed, you have found time to compose three emails to me today, but cannot make time for a call.

Based upon the limited extension of time afforded by Judge Sleet, we cannot permit further dilatory tactics by Tesla. The time for the close of expert discover is rapidly approaching, as is the time to exchange motions in limine for a trial only five months in the future. The documents at issue should have been produced by Tesla months ago. There are now two outstanding discovery Orders from Judge Sleet to produce documents supporting Tesla's damages claims, but Tesla has yet to produce a single tax return, contract or other admissible evidence of lost sales; in spite of the fact that such documents were relied upon by Tesla's experts. Instead, in open defiance of Judge Sleet's express Orders that tax returns and other such documents be produced within three days, Tesla produced incomplete, unsigned partial draft returns for a handful of the years from the time period raised by Tesla's own expert. Those were not, therefore, tax returns as that term is understood under the Internal Revenue Code. Furthermore, documents produced yesterday and the audio CD produced today reveal the existence of even further materials that have been improperly withheld by Tesla.

2. Although I have not seen a transcript of the discovery conference with Judge Sleet, my notes and recollection is that he provided no deadline for a reclassification of the NMT Defendants' documents. Nevertheless, we will endeavor to have them sent out by Friday, which is the very earliest time at which the review of the thousands of pages produced by the NMT Defendants can be completed.

3. In follow up to my email inquiry from yesterday, please state whether or not your firm represents Ridgeway Accounting. Absent such representation, I believe the law is clear that you have no standing to object to the subpoena. *See, e.g., Oliver B. Cannon & Son, Inc. v. Fidelity Casualty Co. of New York,* 519 F. Supp. 688, 680 (D. Del. 1981). I do not believe Judge Sleet's admonition that the parties work together to solve discovery disputes gives Tesla a veto over third party discovery. I requested that you provide me with any legally cognizable reason why discovery should not go forward with Ridgeway and you have refused to provide me any authority in support of that proposition. Tesla has failed to provide documents and has provided demonstrably untruthful statements at deposition and in response to the NMT Defendants' Interrogatories. The NMT Defendants, therefore, will obtain the copies of the documents that Tesla has refused to provide and which further reveal the mendacity of Tesla in this action, pursuant to Rule 45; a rule which is, your characterization to the contrary notwithstanding, a "normal discovery channel."

4. The NMT Defendants do not agree to any alteration of the discovery deadlines, such as the deadline by which Ridgeway Accounting must respond to the subpoena. As he has made abundantly clear, only Judge Sleet may alter the schedule in this case. Absent a substantial additional enlargement of the time in which to complete expert discovery, the NMT Defendants cannot waste any more time in obtaining documents Tesla continues to withhold in violation of two Court Orders.

5. Absent authority which you have been unable to provide, we refuse to compromise our Constitutional and statutory rights to obtain information from the U.S. government, such as United States government contracts and unclassified defense expenditures. For the reasons set forth above, we decline your invitation to alter any FOIA deadlines. FOIA response deadlines are set by state and the Code of Federal Regulations. We expect the Navy to adhere to these deadlines.

Our FOIA request was issued to an agency of the U.S. government by us from within the judicial district of the seat of government of the United States. There are specifically applicable FOIA provisions should Tesla attempt to interject itself in that process within this judicial district. I am quite certain that the Court in the instant action is well aware of these procedures should Tesla inappropriately raise the issue in this case.

**EXHIBIT**
**17**

6.  Please apprise me whether Tesla will consent to reopening the deposition of David J. Masilotti in connection with the deposition of its proposed damages experts.

Very truly yours,

/s/

Rodney R. Sweetland, III, Esq.
Adduci, Mastriani & Schaumberg, L.L.P.
Telephone: (202) 467-6300
sweetland@adduci.com


THIS ELECTRONIC MESSAGE AND ATTACHMENTS, IF ANY, ARE INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY
NAMED ABOVE (OR THOSE PROPERLY ENTITLED TO ACCESS THE INFORMATION) AND MAY CONTAIN INFORMATION
THAT IS PRIVILEGED, CONFIDENTIAL, ATTORNEY-WORK PRODUCT OR OTHERWISE EXEMPT FROM DISCLOSURE
UNDER APPLICABLE LAW.  IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED OR AN AUTHORIZED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY UNAUTHORIZED DISTRIBUTION, DISSEMINATION, OR
COPYING OF THIS TRANSMISSION AND THE ATTACHMENTS, IF ANY, IS PROHIBITED.

IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY COLLECT CALL
(202) 467-6300, BY FACSIMILE (202) 466-2006, OR BY ELECTRONIC MAIL ams@adduci.com.


-----Original Message-----
From: Raeann Warner [mailto:RWarner@werbsullivan.com]
Sent: Wednesday, January 24, 2007 1:39 PM
To: Rodney Sweetland
Cc: Brian A. Sullivan; Paul E. Crawford; Robert Wilcox; David Nickel; SBalick; jaadams@swbcounsellors.com; JDay; lmaguire@ashby-geddes.com
Subject: RE: Tesla v. Waldmann et al

Mr. Sweetland,

Because of Rob Wilcox's involvement in a major court hearing Monday, we suggest Tuesday, January 30, 2007 at noon at for a teleconference regarding the subpoena, the discovery deficiency issues mentioned in the January 24, 2007 letter from Ian Taronji, and the FOIA Request.

Regarding the provision of 2001-2005 tax returns, we are speaking with the accountant and reviewing the documents. We will have them to you by noon tomorrow or earlier if possible along with bate-stamped copies of all tax returns provided to you to follow.  Please advise when the NMT Defendants will submit their re-designated documents as ordered by the Court?

In the meantime we request you please agree to an extension to respond to the subpoena to February 2, 2007, as many of the requested documents in the subpoena originate from Tesla Industries and should be discussed among the parties, as directed by the Court.

Also, we request you agree to an extension of the time the Navy has to respond to your FOIA Request until after we have discussed the issue at the teleconference. As stated in my email of 1/23/07, our request for withdrawing your FOIA request is based on Judge Sleet's comments at the 1/18/07 teleconference that the parties should try to resolve discovery issues among themselves.  Again, the requested information originates from Tesla Industries.

Please let us know if Tuesday, January 30, 2007 at noon at is an acceptable date and time for the teleconference and please respond to the other issues raised by this email before the end of business today which will be appreciated.

Raeann Warner
Werb and Sullivan
300 Delaware Avenue, 13th Floor

P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100
Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com

CONFIDENTIALITY NOTICE

UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]

This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

---

**From:** Rodney Sweetland [mailto:Sweetland@adduci.com]
**Sent:** Tuesday, January 23, 2007 12:16 PM
**To:** Raeann Warner
**Cc:** Brian A. Sullivan; pcrawford@cblh.com; Robert Wilcox; David Nickel; jaadams@swbcounsellors.com; lmaguire@ashby-geddes.com; SBalick; JDay
**Subject:** RE: RE: Tesla v. Waldmann et al

Dear Ms. Warner:

1. I am generally available this week for a telephone conference to discuss any issues related to the subpoena. Please provide me with proposed dates and times.

2. In preparation for the telephone conference, kindly identify the legal basis for any objection to the subpoena and state whether or not your firm represents Ridgeway Accounting. If your firm does not represent Ridgeway Accounting, I believe that any telephone conference regarding a subpoena on that entity should include Ridgeway Accounting's representative; but that is not a precondition to the NMT Defendants' willingness to participate in any conference.

3. The NMT Defendants have yet to receive any of the discovery ordered by Judge Sleet to be produced by Tesla within three days, or agreed by counsel for Tesla to be produced. Please either provide that discovery in its entirety by the close of business today or else be prepared to discuss Tesla's noncompliance at a telephone conference tomorrow morning.

Very truly yours,

/s/

Rodney R. Sweetland, III, Esq.
Adduci, Mastriani & Schaumberg, L.L.P.
Telephone: (202) 467-6300
sweetland@adduci.com

THIS ELECTRONIC MESSAGE AND ATTACHMENTS, IF ANY, ARE INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE (OR THOSE PROPERLY ENTITLED TO ACCESS THE INFORMATION) AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, ATTORNEY-WORK PRODUCT OR OTHERWISE EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED OR AN AUTHORIZED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY UNAUTHORIZED DISTRIBUTION, DISSEMINATION, OR COPYING OF THIS TRANSMISSION AND THE ATTACHMENTS, IF ANY,

IS PROHIBITED.

IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY COLLECT CALL (202) 467-6300, BY FACSIMILE (202) 466-2006, OR BY ELECTRONIC MAIL ams@adduci.com.

-----Original Message-----
**From:** Raeann Warner [mailto:RWarner@werbsullivan.com]
**Sent:** Monday, January 22, 2007 4:57 PM
**To:** Rodney Sweetland
**Cc:** Brian A. Sullivan; pcrawford@cblh.com; Robert Wilcox; David Nickel; jaadams@swbcounsellors.com
**Subject:** RE: Tesla v. Waldmann et al

Mr. Sweetland,

We are aware of the subpoena which you have served on Ridgeway Accounting, who we understand provides some accounting and payroll services to Tesla Industries. You did not mention or otherwise disclose this subpoena during the teleconference before Judge Sleet on January 18, 2007. Please advise us as to whether you are willing to withdraw the subpoena based on Judge Sleet's admonitions that the parties should attempt to agree upon and work out such discovery issues. It is clear from the Judge's comments he expects the parties to proceed through normal discovery channels.

Please be advised that if the Subpoena is not immediately withdrawn, Tesla Industries has no choice but to immediately file a Motion to Quash Subpoena.

We look forward to your response by noon tomorrow which will be appreciated. Thanks for your consideration.


Raeann Warner
Werb and Sullivan
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100
Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com

CONFIDENTIALITY NOTICE

UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]

This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

# EXHIBIT 18

# WERB & SULLIVAN

### ATTORNEYS AT LAW
A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS

**300 DELAWARE AVENUE**
**P.O. BOX 25046**
**WILMINGTON, DELAWARE 19899**

TELEPHONE: (302) 652-1100
TELECOPIER: (302) 652-1111
E-Mail: rwarner@werbsullivan.com

COURIER DELIVERY:
300 DELAWARE AVENUE
THIRTEENTH FLOOR
WILMINGTON, DELAWARE 19801

RAEANN WARNER

January 30, 2007

VIA ELECTRONIC MAIL
Rodney R. Sweetland, III
Adduci, Mastriani & Schaumberg, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, District of Columbia 20036-3006

Dear Mr. Sweetland,

    Ridgeway Accounting ("Ridgeway") has requested the assistance of Werb and Sullivan in lodging its objections to the subpoena dated January 16, 2007 directed to it. Pursuant to Rule 45(c), those objections are as follows:

    1. The subpoena seeks confidential business information of Ridgeway and one of its client's, Tesla Industries, Inc.

    2. It is the policy and practice of Ridgeway and the accounting profession not to disclose its client's confidential information to non-governmental entities.

    3. Ridgeway understands that fact discovery in the underlying action set forth in the caption of the subpoena closed on November 30, 2006, well before the subject subpoena issued.

    4. Collection and recovery of records created over the ten year period requested in the subpoena would be unduly burdensome.

    5. Ridgeway understands that tax information prepared for Tesla that is relevant to issues in the underlying litigation has already been supplied to the attorney who signed the subpoena.

    We assume that the subpoena will be withdrawn in view of these objections.

Sincerely yours,

Raeann Warner

**EXHIBIT**
**18**

cc: Brian A. Sullivan, Esq.
    Paul E. Crawford, Esq.
    Robert Wilcox, Esq.
    David Nickel, Esq.
    John Adams, Esq.

# EXHIBIT 19

# WERB & SULLIVAN

### ATTORNEYS AT LAW
A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS

### 300 DELAWARE AVENUE
### P.O. BOX 25046
### WILMINGTON, DELAWARE 19899

RAEANN WARNER

TELEPHONE: (302) 652-1100
TELECOPIER: (302) 652-1111
E-Mail: rwarner@werbsullivan.com

COURIER DELIVERY:
300 DELAWARE AVENUE
THIRTEENTH FLOOR
WILMINGTON, DELAWARE 19801

January 31, 2007

## VIA ELECTRONIC MAIL

David F. Nickel, Esquire
Adduci, Mastriani & Schaumberg, LLP
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036

        RE: Tesla Industries, Inc. v. David C. Waldmann, et al.

Dear Mr. Nickel:

This letter is in response to your letter of January 30, 2007. The following is a more detailed explanation of why the Subpoena Duces Tecum issued on January 16, 2007 is overly burdensome.

A subpoena duces tecum must be relevant and not overly broad in accordance with Rule 26(b)(1) and Rule 34. *Hilkene v. WD-40 Co.*, 2006 U.S. Dist. LEXIS 69438, *5 (D. Kan. 2006); *Phalp v. City of Overland Park, Kan.*, 2002 U.S. Dist. LEXIS 9684, No. 00-2354-JAR, 2002 WL 1162449, *3-4 (D. Kan. 2002).

A subpoena duces tecum may not be "unreasonable or oppressive". *In re Grand Jury Proceedings*, 601 F.2d 162, 168 (5th Cir.1979). This Court has held that discovery requests should be denied where the documents are irrelevant and unnecessary. *Manning Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002). The subpoena duces tecum served on Ridgeway Accounting seeks information that is irrelevant, and it is overly broad, unreasonable, and oppressive.



EXHIBIT
19

The subpoena demands that Ridgeway produce every document (paper or electronic) in its possession related to

- sales information ("invoices", "sales data")

- "inventory data"

- address books ("contact information")

- all correspondence with Tesla without regard to relevancy

- "files"

The sweeping nature of the subpoena's request would include many documents immaterial to the issues in this case, including but not limited to, the communications between Tesla Industries and its accountant regarding Tesla Industries' payroll information on each of Tesla Industries' approximately 75 employees. This information, along with many of the documents the subpoena asks for, has nothing to do with the issues in this litigation. As already noted, those tax documents which Tesla Industries' expert relied upon to support his expert damage theories have been disclosed to Defendants.

It is worthy to note that Ridgeway Accounting is a sole proprietorship with only one accountant, the owner, working there full time. As this is the busiest season of the year for Mr. Ridgeway, it would be extremely and unnecessarily burdensome to force him to search for these overbroad categories of documents, many of which are in storage and very difficult and time-consuming to locate, given the complete irrelevancy of many of them.

Tesla Industries acknowledges that the NMT Defendants are entitled to defend against Tesla Industries' claims for damages, and it has provided all financial documents it is relying upon to prove these damages. The NMT Defendants have no reasonable need for all of the documents Tesla

Industries' accountant has used to prepare its annual tax returns for the last eleven years.  The

subpoena duces tecum served on Ridgeway Accounting includes requests for irrelevant, unnecessary

documents and is overly broad, and therefore should be withdrawn.

Very truly yours,

Raeann Warner

cc: Brian A. Sullivan, Esq.
    Robert Wilcox, Esq.
    Paul E. Crawford, Esq.
    John A. Adams, Esq.

# EXHIBIT 20

| | |
|---|---|
| **From:** | Raeann Warner [RWarner@werbsullivan.com] |
| **Sent:** | Friday, February 02, 2007 11:54 AM |
| **To:** | Ian Taronji |
| **Cc:** | Paul E. Crawford (E-mail); Brian A. Sullivan; John A. Adams Esq (E-mail); Steven Balick (E-mail); John G. Day (E-mail); Lauren Maguire (E-mail); Robert Wilcox; Rodney Sweetland; David Nickel |
| **Subject:** | RE: Tesla v. Waldmann/ 06-55(GMS) |

Mr. Taronji:

This letter is in response to your letter dated January 31, 2007.

Regarding the signed, unredacted copies of Tesla Industries' tax returns, Tesla Industries will fill out IRS Form 4506 if the NMT Parties will agree to pay the $39 for each requested tax return.

Regarding the underlying documents Ridgeway Accounting used to prepare the tax returns, Tesla Industries reminds the NMT Parties that:

In the 1-18-07 teleconference the NMT Parties, Waldmann, and Tesla Industries had with Judge Sleet, Tesla Industries stated to the Court: "We will give the tax returns and...the documents that were given to the expert" ( Transcript at 6:21-22).  The Court then asked if that was sufficient for Mr. Sweetland's needs, and Mr. Sweetland replied that it was  (Transcript at 6:23-25) (relevant portion of Transcript is attached.

The NMT Parties have been provided every document that Tesla Industries' expert John P. Sullivan and Peter J. Cordua were provided.

As Ridgeway Accounting stated in its objections to the subpoena, the subpoena duces tecum is overly burdensome and seeks to turn the discovery process into a tax audit and otherwise use the discovery process to turn Tesla Industries "inside out".

Therefore Tesla Industries stands by its positions regarding the subpoena duces tecum and document requests and will not withdraw them.

Raeann Warner
Werb and Sullivan
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100
Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com
CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)] This message is being sent by Werb & Sullivan, a law firm.  It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

**EXHIBIT**

**20**

P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100
Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com

CONFIDENTIALITY NOTICE

UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]

This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

4/5/2007

# EXHIBIT 21

| From: | Raeann Warner [RWarner@werbsullivan.com] |
|---|---|
| Sent: | Monday, February 05, 2007 4:04 PM |
| To: | Ian Taronji |
| Cc: | David Nickel; Rodney Sweetland; Steven Balick (E-mail); John G. Day (E-mail); Lauren Maguire (E-mail); John A. Adams Esq (E-mail); Robert Wilcox; Paul E. Crawford (E-mail); Brian A. Sullivan |
| Subject: | RE: Tesla v. Waldmann/ attorney client privileged/ attorney work product |

Mr. Taronji:

Tesla Industries will be providing sales journals which constitute the underlying data supporting Tesla Industries' monthly sales data to the NMT Parties no later than Wednesday, February 7, 2007. This information will be redacted in part to protect confidential business information such as customer names and methods of payment; however, each sale, invoice number, and amount of invoice will be clearly indicated.

The NMT Parties' assertion that Tesla Industries has not provided all documents and information that was given to its experts is a clear misrepresentation. Mr. Sweetland mistakenly made this incorrect statement to Judge Sleet in the January 18, 2007 teleconference: "We, for instance, had discovery requests asking for any documents provided to or received from expert witnesses. We received none of that". See Transcript at 20:13-17. Mr. Wilcox attempted to make it clear to the Court that Tesla Industries did not accept the misrepresentation that it had not turned over documents to the experts and received from them. See Transcript at 21:23-25. For example, on December 29, 2007, all expert reports were mailed to Defendants which included lists of what the experts reviewed, most of which had already been provided in discovery (for example, the emails Expert Don Stewart reviewed, Plaintiff's Production nos. 290-316). Further, my letter to Mr. Sweetland on January 5, 2007 clearly indicates that the Brush Wellman materials reviewed by Expert Clyde Carter were provided to the NMT Parties on January 5, 2007.

Attached hereto are two documents which we provided to expert John Sullivan which we mistakenly neglected to include in our latest production of documents. In addition, a draft addendum to John Sullivan's Expert Report which we just received is attached also. (see attached P Supp 2034-2038, designated as "Confidential" under the Stipulated Protective Order.)

Regarding payment for obtaining Tesla Industries' tax returns from the IRS, Tesla Industries will not and should not pay for fees the US Patent & Trademark Office charges for Provisional Patent application nos. 60/730,324 and provisional application No. 60/748,959, if any. Whereas Tesla Industries has already provided customer copies of its tax returns consistent with what accountants are required to keep on file, and has guaranteed that the accountant who prepared these returns will certify that they are identical to those sent to the IRS by Tesla Industries, Inc. (except for the officer's signature), the NMT Parties have not provided the Provisional Patent application numbers referenced in any form. Tesla Industries believes that the request by the NMT Parties to have copies of the tax returns sent to the IRS and the NMT Parties' refusal to accept Ridgeway Accounting's certification are unreasonable, and therefore, the NMT Parties should have to pay the associated costs.

Please further recall that any further approaches to the Honorable Judge Sleet regarding continued discovery disputes is likely to result in the appointment of a special discovery master, which will greatly increase (and unnecessarily) legal expenses to both sides.

Raeann Warner
Werb and Sullivan
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100

4/5/2007



EXHIBIT
21

Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com

CONFIDENTIALITY NOTICE

UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18
U.S.C. 2701(a) and 2702(a)]

This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is
addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or
otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy
or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by
email and delete all copies of this message.

---

**From:** Ian Taronji [mailto:Taronji@adduci.com]
**Sent:** Friday, February 02, 2007 5:20 PM
**To:** Raeann Warner
**Cc:** David Nickel; Rodney Sweetland; Steven Balick (E-mail); John G. Day (E-mail); Lauren Maguire (E-mail); John A. Adams Esq
(E-mail); Robert Wilcox; Paul E. Crawford (E-mail)
**Subject:** RE: Tesla v. Waldmann/ attorney client privileged/ attorney work product

Ms. Warner,

We appreciate your consideration in determining whether to provide underlying data and information which rightfully should have
been produced months ago. Please let us know by Monday at 5:00 pm whether we will receive any additional documentation in
this regard. The close of expert discovery is quickly approaching and we need to know precisely what issues we intend to take
up with Judge Sleet in addition to Ridgeway's failure to comply with a lawful subpoena.

We dispute your prior assertion that you have provided us with all materials given to your experts - Mr. Sullivan and Mr. Cordua in
particular. We need all of this underlying documentation for the damages report in order to depose these witnesses.

With respect to your earlier request that we pay the fee to obtain Tesla's income tax returns from the IRS, I can think of no rule
that supports this request. If you know of one, please enlighten me. That said, we will pay the fee for Tesla to obtain its income
tax returns from the IRS on the condition that Tesla pay whatever fee is required for NMT to obtain documents Mr. Wilcox
requested from the US Patent & Trademark Office. Please also let us know by 5:00 pm on Monday whether this arrangement is
amenable to your client.

Also, obtaining the income tax returns from the IRS does not make our subpoena to Ridgeway a nullity. We are absolutely
entitled to the documents Tesla provided to Ridgeway in order to prepare these returns, and we plan on taking this matter to
Judge Sleet next week.

Regards,

Ian A. Taronji
Adduci, Mastriani & Schaumberg, LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202)467-6300
taronji@adduci.com

-----Original Message-----
**From:** Raeann Warner [mailto:RWarner@werbsullivan.com]
**Sent:** Friday, February 02, 2007 4:15 PM
**To:** Ian Taronji
**Cc:** David Nickel; Rodney Sweetland; Steven Balick (E-mail); John G. Day (E-mail); Lauren Maguire (E-mail); John A.
Adams Esq (E-mail); Robert Wilcox; Paul E. Crawford (E-mail)
**Subject:** RE: Tesla v. Waldmann/ attorney client privileged/ attorney work product

4/5/2007

Mr. Taronji:

Without waiving our position that we do not need to supply any underlying data and information, this is to inform you that we will review whether we can provide some additional underlying data supporting Tesla Industries' monthly sales summary. We will communicate with you further at the beginning of the week concerning this process. Tesla Industries reserves all of its rights. Thank you.

Raeann Warner
Werb and Sullivan
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: 302-652-1100
Telecopier: 302-652-1111
Email: rwarner@werbsullivan.com

CONFIDENTIALITY NOTICE

UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]

This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

# EXHIBIT 22

**REDACTED**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2007, the attached **REDACTED PUBLIC VERSION OF NMT DEFENDANTS' MOTION** *IN LIMINE* **NO. 5: TO EXCLUDE UNVERIFIABLE FINANCIAL DOCUMENTS** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Brian A. Sullivan, Esquire                                          HAND DELIVERY
Werb & Sullivan
300 Delaware Avenue, 13th Floor
Wilmington, DE 19801

Paul E. Crawford, Esquire                                          HAND DELIVERY
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE 19899

John D. Demmy, Esquire                                             HAND DELIVERY
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

John A. Adams, Esquire                                      VIA FEDERAL EXPRESS
Susanin, Widman & Brennan, PC
455 South Gulph Road, Suite 240
King of Prussia, PA 19406


*/s/ Lauren E. Maguire*
_____
Lauren E. Maguire

166961.1

**Other Documents**

1:06-cv-00055-GMS Telsa Industries, Inc. v. David C. Waldmann, et al.

MEDIATION, PaperDocuments

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Maguire, Lauren on 4/13/2007 at 11:58 AM EDT and filed on 4/13/2007

| | |
|---|---|
| **Case Name:** | Telsa Industries, Inc. v. David C. Waldmann, et al. |
| **Case Number:** | 1:06-cv-55 |
| **Filer:** | Lyndol W. Hollingsworth |
| | Charles Minnick |
| | New Millenium Tools |

**Document Number:** 146

**Docket Text:**
REDACTED VERSION of [137] SEALED MOTION in Limine *No. 5 to Exclude Unverifiable Financial Documents* by Lyndol W. Hollingsworth, Charles Minnick, New Millenium Tools. (Maguire, Lauren)


**1:06-cv-55 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

John D. Demmy    jdd@stevenslee.com

Lauren E. Maguire    lmaguire@ashby-geddes.com

Brian A. Sullivan    bsullivan@werbsullivan.com

Robert Drake Wilcox    rwilcox@werbsullivan.com

**1:06-cv-55 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=4/13/2007] [FileNumber=372062-0]
[6de38fe926119f5f56dc88cd001206fd850eeec04c0aad5a09a28d2c3cd11e650ec0
a404e6d9a8da4c3e59c4cd871f1268a7edc228c5a1554d444de6b52caf3a]]