**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TESLA INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 06-055-(GMS) |
| v. | ) |
| | ) |
| DAVID C. WALDMANN, | ) |
| LYNDOL W. HOLLINGSWORTH, | ) |
| CHARLES MINNICK a/k/a CHUCK MINNICK, and | ) |
| NEW MILLENNIUM TOOLS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF TESLA INDUSTRIES, INC.'S RESPONSE TO NMT DEFENDANTS'
MOTION *IN LIMINE* NO.2: TO PRECLUDE TESLA'S LEAD COUNSEL, BRIAN A.
SULLIVAN, ESQUIRE FROM TESTIFYING AT TRIAL**

Brian A. Sullivan  (DE No. 2098)
Robert D. Wilcox  (DE No. 4321)
Amy D. Brown      (DE No. 4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P. O.  Box 25046
Wilmington,  DE  19899
Telephone:  (302) 652-1100
Facsimile:   (302) 652-1111

and

Paul E. Crawford (I.D. # 493)
CONNOLLY BOVE LODGE & HUTZ LLP
1107 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
302.658.9141
pcrawford@cblh.com

Dated:  April 19, 2007          Attorneys for Tesla Industries, Inc.

# TABLE OF AUTHORITIES

**Cases**

*Muldrow v. Brooks*,
    2002 U.S. App. LEXIS 885 (3d. Cir. 2002) ...................................................... 5

*Crowley v. Chait*,
    2004 U.S. Dist. LEXIS 27235 (D. N.J. 2004) ................................................... 5

*Cardoni v. Power International, et al.*,

    Del.Super., C.A.No. 88C-MY-141 (Del. Super. 1990)………………………..……    6

**Rules**

Federal Rule of Civil Procedure 26………… ..…………………………………………..5

Federal Rule of Civil Procedure 37(c)(1)………………………………………….......5

Delaware Rules of Professional Conduct 3.7(b)……………………………………… 5,6

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………  4

STATEMENTFACTS…………………………………………………  4

ARGUMENT……………………………………………………………  5

CONCLUSION……………………………………………………  7

Plaintiff ,Tesla Industries, Inc.( Tesla) , responds as follows to Defendants Hollingsworth, Minnick, and New Millennium Tools, Inc.'s (collectively the "NMT Defendants")   Motion *In Limine* No.2: To Preclude Tesla's Lead Counsel, Brian A. Sullivan, Esquire From Testifying At Trial (the " NMT MIL 2"). For the reasons grounded in both fact and law set forth below, Tesla urges that this Court  deny  NMT'S MIL 2 in *toto*.

## INTRODUCTION

The NMT Defendants assert that Tesla and its counsel improperly coerced the NMT Defendants into signing the Stipulated Restraining Order (D.I 20) which forbade certain activities by them.  That asserted coercion was an alleged   commitment by Tesla's counsel not to continue this litigation.  These assertions are categorically denied.

## STATEMENT OF FACTS

The existence and consequences of Defendants  agreement to sign the Stipulated Restraining Order were explored in a February 3, 2006 telephone conference with this Court. (See transcript of Teleconference attached hereto as Exhibit "A".  Defendants  Hollingsworth and Minnick participated in that conference and voluntarily agreed to enter into the Stipulated Restraining Order.  Had there been any representation or side deal (which is vehemently denied), this would have been raised by Defendants while they were   before the Court either by Messrs. Hollingsworth or Minnick .

As an ancillary argument the NMT Defendants somehow blame Tesla's counsel for not advising them of their rights to obtain counsel.  This civil action Miranda warning the NMT Defendants seek to impose on Tesla's counsel is not supported by any legal precedent in NMT

MIL 2.  Moreover,  this Court asked Messrs. Hollingsworth and Minnick why they did not retain

counsel at the Hearing.  Neither of them responded and the matter was dropped and not further

pursued.  ( February 3, 2006 conference transcript, p 3,  Exhibit "A").

If the Court has any lingering  concerns about this matter Mr. Sullivan is willing to

submit to this Court for a in-camera testimony regarding his interaction with the NMT

Defendants before the Stipulated Restraining Order was signed by them.

## **ARGUMENT**

During discovery a party is required to disclose the names of witnesses that may be called

to testify at trial. See. Fed.R.Civ. P. 26.  Failure to do so will preclude the party's  use of those

witnesses, unless such failure is harmless. See Fed.R.Civ.P. 37(c)(1).  Muldrow v. Brooks,  2002

U.S. App. LEXIS 885   (3d. Cir. 2002).  In  Crowley v. Chait, 2004 U.S. Dist. LEXIS 27235 (D.

N.J.), the court denied Defendant's Motion in Limine to preclude Plaintiff's rebuttal witnesses

from testifying because Plaintiff had not listed such witnesses until filing its Final Pretrial Order.

Id.  The Court found that allowing undisclosed rebuttal witnesses to testify did not pose a

substantial risk of unfair prejudice, confusion of the jury, or waste of time. Id

Plaintiff fully intends to cross examine the NMT Defendants who have testified that Mr.

Sullivan somehow coerced them into signing the Temporary Restraining Order entered in this

case.  Plaintiff also plans to rely on the transcript of the February 3, 2006 Transcript of the Initial

Teleconference before Judge Sleet, where both NMT Defendants participated and had ample

opportunity to state their alleged understanding of the purported agreement they had with Mr.

Sullivan,  (Exhibit "A").  They made no such statements.  Further, Mr. Sullivan, in writing,

reiterated to Defendant Hollingsworth  that he "did not say or promise that anyone will no longer

be pursued in this case", and that the NMT Defendants were "subject to the Temporary

Restraining Order." See February 17, 2006 E-Mail from Brian A. Sullivan to Defendant Lyndol

Hollingsworth, attached hereto as  Exhibit "B".   Further, if the NMT Defendants felt they were

misled by Mr. Sullivan, why didn't they immediately move to vacate the Stipulated Temporary

Restraining Order once they retained counsel?

　　　While Plaintiff has not previously designated Mr. Sullivan as a possible rebuttal

witnesses to address  the NMT Defendant's unsubstantiated and  ludicrous  allegations of "abuse

of process",  it  should not be precluded from reserving its right to do so or from adding Mr.

Sullivan as a possible rebuttal witness.  Any testimony by Mr. Sullivan would be limited in scope

and go solely to the allegations made by the NMT Defendants with regard to his discussions with

them (which discussions were primarily initiated by Messrs. Hollingsworth and Minnick) prior

to entering into the Stipulated Temporary Restraining Order. Therefore,  allowing Mr. Sullivan

to testify will not result in harm or "unfair prejudice" to the NMT Defendants, nor will it cause

"confusion to the jury" or a "waste" of this Court's time. While Mr. Sullivan would prefer not to

testify in this matter, he should not be barred from doing so if necessary.

　　　The NMT Defendants also argue that allowing Mr. Sullivan to act as a rebuttal witness

violates his ethical duties under Delaware Rules of Professional Conduct 3.7. This argument is

also unsound.   Rule 3.7(b) clearly states that "a lawyer may act as advocate in a trial in which

another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from

doing so by Rule 1.7 or Rule 1.9."   The main concern behind Rule 3.7(a) is that a lawyer who

attempts to double as a witness will perhaps interject unsworn testimony into his cross-

examination or summation, end up arguing his own credibility to the jury, or be tempted to

distort the truth for the benefit of his client." *Cardoni v. Power International, et al.,* Del.Super.,

C.A.No. 88C-MY-141, at 2 Bifferato, J. (March 27, 1990).

Here, Mr. Sullivan will not be the lead counsel trying this case.  Mr. Sullivan, therefore, would not be risking the  "interjecting" of  "unsworn testimony into a cross examination" or "arguing his own credibility to the jury."  As such, he is permitted to testify under Rule 3.7(b).  Further, and as stated above, any testimony by Mr. Sullivan would only be called for if absolutely necessary, and extremely limited in its scope.

## <u>CONCLUSION</u>

 WHEREFORE, Tesla Industries prays that Defendants' Motion in Limine be denied in its entirety.

Dated: April 19, 2007                    Respectfully submitted,


<u>/s/ Brian A. Sullivan</u>
Brian A. Sullivan  (DE No. 2098)
Robert D. Wilcox  (DE No. 4321)
Amy D. Brown     (DE No. 4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P. O.  Box 25046
Wilmington,  DE  19899
Telephone:  (302) 652-1100
Facsimile:   (302) 652-1111

and


Paul E. Crawford (I.D. # 493)
CONNOLLY BOVE LODGE & HUTZ LLP
1107 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
302.658.9141
pcrawford@cblh.com


Attorneys for Tesla Industries, Inc.

7

# Exhibit A

1

1           IN THE UNITED STATES DISTRICT COURT

2           IN AND FOR THE DISTRICT OF DELAWARE

3                        -   -   -

4    TESLA INDUSTRIES, INC,              :        Civil Action
                                         :
5              Plaintiff,                :
                                         :
6                                        :
                                         :
7         v.                             :
                                         :
8    DAVID C. WALDMANN, LYNDOL W.        :
     HOLLINGSWORTH, CHARLES             :
     MINNICK a/k/a CHUCK MINNICK,        :
9    and NEW MILLENNIUM TOOLS, INC.,     :
                                         :
10             Defendants.               :        No. 06-055-GMS

11                       -   -   -

12                  Wilmington, Delaware
                 Thursday, January 18, 2007
13                     9:15 a.m.
                  Telephone Conference

14                       -   -   -

15

16   BEFORE:  HONORABLE GREGORY M. SLEET,

17   APPEARANCES:

18        BRIAN A. SULLIVAN, ESQ.,
          ROBERT D. WILCOX, ESQ., and
19        AMY RAEANN WARNER, ESQ.
          Werb & Sullivan

20                        Counsel for Plaintiff

21        JOHN D. DEMMY, ESQ.
          Stevens & Lee
22                -and-
          JOHN A. ADAMS, ESQ.
23        Susan Widman & Brennan, P.C.
          (King of Prussia, PA)

24                        Counsel for Defendant
25                        Waldmann

EXHIBIT

7

1    APPEARANCES CONTINUED:

2            LAUREN E. MAGUIRE, ESQ.
         Ashby & Geddes
3                -and-
         RODNEY R. SWEETLAND, III, ESQ., and
4        IAN TARONJI, ESQ.
         Adduci, Mastriani & Schaumberg, LLP
5        (Washington, D.C.)

6                          Counsel for Defendants
                         New Millennium Tools, Inc.,
7                        Hollingsworth, and Minnick

8                    -  -  -

9            THE COURT:  Good morning.

10           UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

11           THE COURT:  Who is on the line for plaintiff,

12   counsel?

13           MR. WILCOX:  Robert Wilcox for the plaintiff

14   Tesla Inc.  I am joined by Brian Sullivan and Raeann Warner,

15   both attorneys at Werb & Sullivan.

16           THE COURT:  For defendant.

17           MR. ADAMS:  John Adams for defendant Waldmann.

18           MS. MAGUIRE:  Lauren Maguire in Wilmington for

19   the NMT defendants.

20           MR. SWEETLAND:  This is Rodney Sweetland and Ian

21   Tarongi in Washington, D.C. for the EMT defendants.

22           THE COURT:  Did we get everybody?

23           So this is the second conference for the purpose

24   of taking up discovery disputes.  We have some 12 or 13

25   items here.  It appears the parties are not getting along

3

1   very well.  Is that a correct assumption here?

2              UNIDENTIFIED SPEAKER:  I believe, Your Honor.

3              THE COURT:  Are not getting along or are getting

4   along?

5              UNIDENTIFIED SPEAKER:  Are not.

6              THE COURT:  We are going to take these matters

7   up.  First I want to inquire as to whether any of them have

8   been resolved.

9              MR. SWEETLAND:  I believe that the summary that

10  went to Your Honor, which was a very broad overview, is

11  still extant.  There were subsidiary issues that have been

12  resolved between the parties prior to this call, I

13  understand.

14             THE COURT:  Okay.  I gather everyone concurs in

15  that view?

16             MR. WILCOX:  Your Honor, we did receive some

17  documents late yesterday afternoon.  We don't believe they

18  really address most of our concerns.  But I did want to

19  acknowledge that we received them.

20             THE COURT:  Let's take up NMT's issues.

21             MR. SWEETLAND:  Your Honor, we have eight

22  issues, the first of which is a continuation of an issue

23  that was raised during our initial conference on October

24  20th.

25             THE COURT:  You have eight issues.  I see four

1    bullets.

2            MR. SWEETLAND:  Right.  But within those four,

3    some are interrogatories, some are requests for production.

4    This is by topic.

5            THE COURT:  Counsel, we are not going to stay on

6    the phone all morning on this.  Do you understand?

7            MR. SWEETLAND:  I understand.  I will be --

8            THE COURT:  That --

9            MR. SWEETLAND:  -- very brief.

10           THE COURT:  That is not directed at you --

11   counsel, listen for my voice.  Okay?  When you hear my

12   voice, shut up.  All right?  Is that understood?

13           MR. SWEETLAND:  Yes, Your Honor.

14           MR. SULLIVAN:  Yes, Your Honor.

15           Paul Crawford, one of the attorneys for the

16   plaintiffs, unfortunately, is sick.  And he was going to

17   join the conference this morning.  Given, Your Honor,

18   really, the number of issues, discovery issues that are

19   pending, Mr. Crawford's suggestion would have been that each

20   party ought to take two or three primary ones and really

21   stick to those and bring them before Your Honor.

22           THE COURT:  Thank you, Mr. Sullivan.  We will

23   see.

24           I intended to be just as rude as I just sounded,

25   because I am not happy.

5

1          MR. SULLIVAN:  Understood, Your Honor.

2          THE COURT:  Let's go, counsel.

3          MR. SWEETLAND:  The first issue, Your Honor, is

4   damages during the October 20th conference.  Your Honor

5   ordered Tesla to produce discovery in response to our

6   damages request.  To date, we have yet to receive any

7   documents that support the damages allegations.

8          We received an expert witness report on December

9   29th that alleges over a million dollars in lost sales.  And

10  it references as a base computation such items as tax

11  returns.  We have yet to receive a single tax return.  We

12  have yet to receive any profit-and-loss statements.  We have

13  yet to receive any internal accounts receivable.

14         THE COURT:  I got your point, counsel.  Let's

15  get a response.

16         MR. ADAMS:  Defendant Waldmann joins in that

17  request.

18         THE COURT:  Let's get a response.  Who will

19  respond?

20         MR. WILCOX:  Your Honor, we certainly are

21  willing to provide everything that was provided to the

22  expert.  We recognize they are entitled to the documents

23  that, every document that the expert reviewed.  I will make

24  sure that gets done in the next three or four days.

25         As far as the tax returns, the same is true.  We

1    will produce them.

2              We think to the extent there is personal

3    information, it should be redacted.  We would expect we can

4    resolve that with counsel.  I am not sure we have an issue

5    here.

6              MR. SWEETLAND:  Your Honor, if we get all tax

7    returns, including ones -- recent ones -- for whatever

8    reason, the expert didn't rely on the four most recent years

9    of tax returns -- we believe that we need those as well.

10   Those are the years in which Tesla has made an allegation

11   there has been lost sales.  If we get the tax returns and

12   the underlying data for the tax returns, then there is no

13   issue.

14             THE COURT:  Any difficulty with that, Mr.

15   Wilcox?

16             MR. WILCOX:  No, Your Honor.  The question, of

17   course, becomes as to what are underlying documents.

18   Theoretically, every financial document, every invoice,

19   every sale becomes part of the underlying documents.  I

20   would hope we could resolve that issue.

21             We will give the tax returns and the stuff --

22   the documents that were given to the expert.

23             THE COURT:  Is that sufficient for your needs,

24   Mr. Sweetland?

25             MR. SWEETLAND:  It is, Your Honor.

7

1          THE COURT:  Okay.  Next issue.

2          MR. SWEETLAND:  The second item is an

3     interrogatory answer, it is No. 22.  It is information

4     relating to allegations that Tesla has made in the

5     marketplace concerning any misconduct by my clients.  This

6     is in support of our Lanham Act allegation.  During Mr.

7     Masilotti's, the principal of Tesla, deposition, he

8     indicated he was unable to recall all the people that he had

9     talked to about what our client, my clients have allegedly

10    done.

11         Last week we received in discovery a document

12    that was apparently sent out via e-mail to some unidentified

13    number of Tesla contacts in the government contracting

14    industry.  We just want to know -- we need to know who that

15    went to, because it makes allegations of misconduct in the

16    marketplace by our clients, which goes to the Lanham Act

17    claim.  We believe the only way to answer that, because

18    during the deposition Mr. Masilotti was unable to recall the

19    full extent of it, is in the context of an interrogatory

20    response.

21         MR. ADAMS:  Mr. Waldmann joins in that request,

22    Your Honor.

23         THE COURT:  Can I assume that Waldmann joins in

24    each of the EMT requests?

25         MR. ADAMS:  I believe, Your Honor.

1          THE COURT:  You don't have to chirp up each

2    time, counsel.

3          MR. WILCOX:  Your Honor, we will certainly

4    identify the one communication in question.  We just don't

5    think there are a lot of communications of the type that the

6    defendants are looking for.  But obviously, I wasn't aware

7    that the information they got did not include the name of

8    the recipient.  We will get that to them.

9          THE COURT:  Within the same three-day time frame

10   that the other information is going to be provided.

11         MR. WILCOX:  Absolutely, Your Honor.

12         THE COURT:  Mr. Sweetland.

13         MR. SWEETLAND:  That is fine, if we have that

14   proffer, Your Honor.

15         THE COURT:  Next item.

16         MR. SWEETLAND:  The third item, Your Honor,

17   relates to, in the complaint, there is referenced a private

18   investigation that occurred at the inception or prior to the

19   litigation.  In the affidavit of Mr. Masilotti attached to

20   the complaint, in support of their request for preliminary

21   injunction, there were 14 items that were identified as

22   having been obtained as a result of the investigation.  We

23   also know that included in that investigation was a

24   tape-recorded conversation with David Waldmann.

25         We are requesting that the private

1    investigator's report include the tape-recorded statement,

2    not the transcript but the tape-recorded statement itself

3    with our co-defendant be provided.  Our basis for that is,

4    of course, under Rule 26 any statement of a party is

5    discoverable, and based upon the revelation of the result of

6    the private investigator's investigation, we believe that

7    there has been a subject matter and issue waiver of all that

8    material.

9          MR. ADAMS:  Your Honor, Waldmann would add to

10   that my client was terminated due to the investigation,

11   which we think therefore we are entitled to it.  That was

12   the basis of the termination.

13         Number two, that there has been allegations that

14   my client destroyed e-mails that was made in the deposition

15   at the end of the discovery period.  We believe this issue

16   will show that e-mails were not destroyed by my clients.  He

17   was gone by the time the e-mails were destroyed.  They were

18   in fact destroyed by Mr. Masilotti.

19         THE COURT:  Counsel, your name?

20         MR. ADAMS:  John Adams for defendant Waldmann,

21   Your Honor.

22         MR. WILCOX:  Your Honor, I think there are a

23   couple of different issues there.  I think we are kind of

24   getting off the primary issue.

25         As far as the allegation as far as the

1    disruption of e-mails, I mean, that's a question of -- you

2    know, an issue of fact. We are at this point undertaking an

3    extensive and very expensive review of the hard drive of Mr.

4    Waldmann's computer. We expect to be producing documents

5    that we believe will strongly support our suggestion that

6    those documents, there was a tremendous amount of material

7    deleted. I don't know where the allegation comes from, that

8    my client was deleting information from the defendants'

9    computer. That's to me just a bald allegation.

10          As far as the investigation report, we think

11    it's protected under Rule 26. It's an investigation done at

12    the direction of attorneys, and, you know, it was prepared

13    in anticipation of litigation.

14          Now, the answer may be different with regard to

15    the witness statement, the recorded statement of the

16    witness. And we are willing to take, obviously, the Court's

17    guidance on that.

18          The real issue here, if we are talking about

19    documents on a hard drive, one of the defendants in this

20    case has acknowledged that his hard drive, he removed it

21    from his computer and put it in a place he referred to as

22    very difficult to find. We think we are entitled to get all

23    the documents off that hard drive and find out what's going

24    on with that.

25          That's the kind of issue we have been dealing

1  with, Your Honor.

2          MR. SWEETLAND:  Your Honor, I thought I would

3  respond to that when it was -- I can address that now.

4          THE COURT:  You can address that later, when we

5  come to it.

6          MR. ADAMS:  Your Honor, I would like to add,

7  when he was terminated, they had an e-mail in his possession

8  that came from an account.  It was not a Tesla e-mail

9  account.  It was one of his (inaudible) account.  We believe

10  there is an allegation --

11          THE COURT:  Counsel, I have no idea what you are

12  talking about.  Let me be real frank:  As I understand it,

13  when we started, this portion of the discussion has to do

14  with the results of a private investigation that was

15  commissioned.  Is that correct?

16          MR. ADAMS:  Yes, Your Honor, that is correct.

17          THE COURT:  And there is a desire on behalf of

18  the NMT defendants to have produced to them the report

19  concerning a particular witness who was the subject of this

20  investigation.  Is that correct?

21          MR. ADAMS:  No, Your Honor.  We want the entire

22  report.

23          THE COURT:  It appears that counsel for

24  plaintiff is prepared to provide the report of the witness.

25  That is not at issue.  Is that correct?

1          MR. WILCOX:  There is a recorded witness

2    statement, Your Honor.

3          THE COURT:  In whatever form, you indicated, I

4    think, that you were prepared to accept the guidance of the

5    Court on that.

6          MR. WILCOX:  Yes, Your Honor.

7          THE COURT:  What is the basis or would be the

8    basis for withholding the recorded witness statement?

9          MR. WILCOX:  That it was prepared as part of a

10   pre-litigation investigation, Your Honor.

11         THE COURT:  Do you wish to assert that position

12   this morning?  Or are you prepared to provide the other side

13   with the report or the statement, the recorded statement?

14         MR. WILCOX:  That is still our position, Your

15   Honor, with the guidance of the Court.

16         THE COURT:  You have raised the general issue or

17   the general objection to providing the work of the

18   investigator generally.  Is that correct?  You claim that it

19   is work product.

20         MR. WILCOX:  That's correct.

21         THE COURT:  So I don't know why we wouldn't

22   include the witness statement, why you wouldn't include that

23   within your contentions regarding work product.

24         MR. WILCOX:  We are including that, Your Honor.

25         THE COURT:  You essentially contend that an

1   investigator was hired.

2              MR. WILCOX:  That's correct.

3              THE COURT:  And that the fruits of that

4   investigators's labors are somehow protected by Rule 26.

5              MR. WILCOX:  That's correct.

6              THE COURT:  Elaborate on that a little bit more

7   for me.

8              MR. WILCOX:  Your Honor, that was done in

9   connection with retention -- you know, the plaintiff was

10  shocked to realize there was a problem, and realized early

11  on that there was likely to be some litigation.  There was a

12  suspension of one of the defendants here.  A law firm was

13  retained, and under the guidance of the law firm an

14  investigator did an internal review of various materials.

15             Now, the witness statement in question, the

16  recorded statement, was taken not by the outside

17  investigator but by an in-house security guy who had been

18  brought on.  I don't want to mislead the Court on that.  It

19  was not recorded by the investigator, the outside

20  investigator.  It was taken by an in-house security

21  consultant.

22             THE COURT:  Okay.

23             MR. SWEETLAND:  Your Honor, if I may, whenever

24  the Court has concluded, address one of these issues.

25             THE COURT:  Yes.

1          MR. SWEETLAND:  From our perspective, again,

2    Your Honor is correct there are really two subsidiary issues

3    to this.  There is the issue of a tape-recorded statement of

4    a party defendant, which we believe under black-letter law

5    is discoverable under any circumstances, regardless of who

6    obtained it or why.  He is a party defendant.  That is not,

7    we don't believe, a significant legal issue.

8          The second issue, as to the discoverability of

9    the fruits of the private investigator, we believe that

10   there has been a waiver because at least 14 separate items

11   that were discovered by that private investigator were

12   explicitly referenced in the complaint and the affidavit

13   that was attached in support of it.  Even if the work

14   product privilege did apply, and it may very well have

15   initially, when the plaintiffs chose to include the fruits

16   of the investigator's research in the moving documents that

17   initiated the case, they put that issue in this litigation.

18          THE COURT:  Okay.  So Mr. Sweetland has put a

19   finer point on the discussion.  Mr. Wilcox, why don't you

20   address first the contention that this is, after all, the

21   statement of a party, albeit the product of an in-house

22   investigation, nonetheless, a statement of a party and

23   therefore subject to production.

24          MR. WILCOX:  I don't agree with Mr. Sweetland

25   that it is necessarily black-letter law that it somehow cuts

1   through the privilege.  We are all aware that work product

2   is a qualified privilege.

3            Again, I would kind of seek the guidance of the

4   Court on that.  Obviously, I don't feel as strongly about

5   that particular issue, about the tape recording, as I do

6   about the --

7            THE COURT:  Let me interrupt, because this is

8   the kind of thing that judges find time-wasteful.  I think

9   that this is something, this particular, very narrow issue,

10  is something that should have been capable of being worked

11  out by the parties.  Whether it is black-letter law or not,

12  it is a statement of a party.  You might have imagined that

13  I was probably, most judges would probably say, you have got

14  to give that over.  Wouldn't you reasonably anticipate that

15  kind of ruling?

16           MR. WILCOX:  That is fine, Your Honor.  We

17  accept that ruling, and we will turn it over.

18           THE COURT:  What I am asking for is a little

19  better exercise of your discretion as lawyers in the future

20  on these kinds of matters.

21           So let's talk about the waiver.  Why don't you

22  respond to the contentions that you have waived work

23  product.

24           MR. WILCOX:  I don't believe we have waived work

25  product, Your Honor.  There were references to the fact that

1    there was an investigation report.  The report clearly

2    itself was not attached to the complaint and has not been

3    disclosed anywhere in there.  The fact that an investigation

4    itself was done doesn't, in my view and under our review of

5    the law, constitute a waiver of the contents of the report

6    itself.

7              MR. ADAMS:  Your Honor, I would say, if they are

8    going to take that position, they can't say at trial that

9    they did an investigation of my client, they terminated him

10   based on the investigation, and they are not going to turn

11   it over.

12             THE COURT:  I agree with you.

13             MR. WILCOX:  We don't need the investigative

14   report at trial to prove the reason --

15             MR. ADAMS:  You are going to have a hard time

16   saying why he was terminated, what is the reason why you let

17   him go.

18             THE COURT:  Counsel, you will address your

19   remarks to the Court and you won't interrupt your opponent

20   like that.

21             Had you finished, counsel?

22             MR. ADAMS:  Yes, Your Honor.

23             THE COURT:  Had you finished, Mr. Wilcox?

24             MR. WILCOX:  Your Honor, I don't believe we

25   intend to introduce the report at trial.  Obviously, if we

1    intended to introduce it at trial, we would have already

2    produced it.

3                    MR. ADAMS:  Your Honor, as far as referencing,

4    if they want to tell the jury they did an investigation and

5    based on that investigation they didn't pay my client the

6    money he was owed and they terminated employment, they

7    weren't entitled to the investigation.

8                    THE COURT:  Is that the intended use of this

9    material?

10                   MR. WILCOX:  We are not -- we don't need the

11   investigative report at trial, Your Honor.

12                   THE COURT:  Not the report.  He contends that

13   you might desire to reference the report before the jury and

14   that should be precluded as well if you are not going to

15   turn it over and give them a fair opportunity to challenge

16   the report.

17                   MR. WILCOX:  That seems to strike me as an issue

18   for a motion in limine, Your Honor.

19                   THE COURT:  Probably right.  But you must

20   understand that he is probably going to have a fairly strong

21   position in limine should you at this point determine that

22   you are not going to turn this over.

23                   MR. WILCOX:  I am aware of that, Your Honor.

24                   THE COURT:  I am not going to order that you

25   turn it over at this point.  But remember the discussion

1    here today.  Of course, we are having it transcribed.

2         The next matter.

3         MR. SWEETLAND:  Your Honor, I will wrap up with

4    two more issues.

5         The first is, we believe that e-mails have been

6    withheld in response to numerous interrogatories.

7    Approximately nine Tesla employees identified at the

8    inception of the case who had discoverable information

9    relate to this.  Of those nine, only two have had a

10   substantial number of e-mails supplied.  Three have had no

11   e-mails, and Mr. Masilotti, who describes himself as the

12   chief cook and bottle washer of Tesla, the plaintiff, there

13   is only two e-mails from him.  We find it inexplicable as to

14   the absence of e-mails.

15        THE COURT:  Where are the e-mails?

16        MR. WILCOX:  Your Honor, we have been through

17   this issue multiple times.  There has been much testimony

18   about it at the depositions of any witnesses that the

19   defendants wanted to take.  Everything has been produced

20   that's out there.  The company did not -- I mean, it seems

21   to me that a lot of the issues that are being raised by the

22   defendants, and I think it is especially true with regard to

23   what they regard as insufficient responses to requests for

24   admissions, which has been a huge issue regarding

25   authenticity of various types of documents, they just don't

1    like the answer.  They are somehow asking the Court to

2    direct us to give a particular answer that doesn't square

3    with the facts, as we see them.

4              THE COURT:  So your point is you have produced

5    all the e-mails that ought to be produced.

6              MR. WILCOX:  That's correct.

7              THE COURT:  Counsel, what else would you have

8    him do?

9              MR. SWEETLAND:  If he is willing to represent

10   that to Your Honor, he set that in stone, and I will move

11   along.

12             THE COURT:  He is an officer of the Court.  We

13   will have to accept that recommendation.  I will accept it.

14   I have no reason not to.  I don't think you do, either.

15             There is a desire to extend the time to complete

16   expert discovery.  I don't have an objection to that

17   necessarily.  Does the other side?  Is this a joint request?

18   Whose request is this?

19             MR. SWEETLAND:  This was the NMT defendants,

20   Your Honor.

21             THE COURT:  Is there an objection from Tesla?

22             MR. WILCOX:  To the extent there is a short

23   extension, Your Honor, that would be fine.  But we have

24   asked for cooperation on a number of discovery issues and we

25   haven't gotten any extensions -- well, I won't say we

1    haven't gotten any.  But I guess we should have asked the

2    Court for all our extensions.

3              THE COURT:  The only entity that is empowered to

4    grant an extension or amendment to the schedule is the

5    Court.  I want you all to keep that in mind.

6              MR. WILCOX:  Yes, Your Honor.  We accept the

7    Court's guidance on this again, of course.  We would consent

8    to a short extension of the time for discovery.  We don't

9    believe it is necessary.  I think the Court is making it

10   very clear it wants us to be cooperative.

11             THE COURT:  What is the reason for NMT's

12   request?

13             MR. SWEETLAND:  We are unable to even initiate

14   the deposition of the plaintiff's experts because we haven't

15   received this underlying information.  We, for instance, had

16   discovery requests asking for any documents provided to or

17   received from expert witnesses.  We received none of that.

18   At the beginning of this call --

19             THE COURT:  Some of the information that we

20   discussed earlier in the call would fall into that category.

21             MR. SWEETLAND:  Yes, Your Honor.

22             MR. ADAMS:  Our deadline for producing experts

23   is tomorrow.

24             THE COURT:  For producing expert reports and/or

25   deposing them as well?

1              MR. ADAMS:  To produce reports.  We can't do

2      that because we don't even know all this information.

3              THE COURT:  So you are requesting an extension

4      of the entire expert process, the production of opening

5      reports, rebuttals, then the time to complete expert

6      discovery.  Is that correct?

7              MR. SWEETLAND:  No, Your Honor.  We would only

8      request time to do the defendants' rebuttal reports to the

9      plaintiff's reports.  We do not, the NMT defendants do not

10     anticipate providing affirmative evidence for the

11     counterclaims reports.  We only need the time, some period

12     of time after this production is effected in which to depose

13     their experts and determine whether or not we are going to

14     provide counter-experts.

15             MR. WILCOX:  Your Honor, Mr. Sweetland is

16     correct.  The plaintiff has produced the reports in a timely

17     fashion as directed by the Court previously.  We said we

18     would give them the documents in three days.

19             THE COURT:  How much time do you need, counsel?

20             MR. SWEETLAND:  Twenty days for us to do our

21     rebuttals.

22             THE COURT:  Any difficulty with that, counsel?

23             MR. WILCOX:  No.  That is fine, Your Honor.  But

24     I do want to make it clear why I don't accept that we

25     haven't produced any of the documents.

1           THE COURT:  I understand your position.

2           What would that be, Ms. Walker?

3           MS. WALKER:  February 7.

4           THE COURT:  We will grant until February 7 for

5     the purpose of producing the NMT rebuttal reports.  What is

6     the current cutoff for expert discovery?

7           MR. SWEETLAND:  I believe it's the 27th or 28th.

8           THE COURT:  Okay.  I skipped over deficiencies

9     in admissions.  Is this on both, all three parties' -- no,

10    it is not.  It is just on NMT's list of issues.

11          MR. SWEETLAND:  Yes, Your Honor.

12          THE COURT:  What is the problem that you have

13    with the plaintiff's responses to requests for admissions?

14    It was alluded to earlier I think by Mr. Wilcox.  Is that

15    correct?

16          MR. SWEETLAND:  Yes, Your Honor.  Our problem is

17    they have refused to admit the authenticity of documents

18    that were produced by them and that were derived from their

19    website.  They said that they were unable to admit or

20    respond, for instance, that catalogs that we received from

21    their website downloaded were kept in the ordinary course of

22    business.  These were housekeeping requests for admission.

23          THE COURT:  Hold on.

24          Is that correct, counsel?

25          MR. WILCOX:  Your Honor, we went through those

1    requests for admissions, I believe it was 236 of them, very

2    carefully.  They asked whether a catalog was available on

3    the Tesla Industries website as of a particular date.  They

4    asked us to admit that documents produced, created by

5    defendant Waldmann at a time when we think he was working

6    for a third party, was scheming to leave the company, and

7    was, for lack of a better word, stealing the trade secrets,

8    were produced in the ordinary course of business.

9            The first issue is an issue of verification, are

10   we prepared to admit for all purposes the particular dates

11   on which information was available on the website?  No.  As

12   to are we prepared to admit the documents created by an

13   employee who we attribute, shall we say, improper motives to

14   were prepared in the ordinary course of business?  No.

15           THE COURT:  I got your point.  Counsel, that

16   does not seem unreasonable.

17           MR. SWEETLAND:  Your Honor, we thought it was a

18   housekeeping matter when we proposed --

19           THE COURT:  Clearly, now you understand this is

20   not just a housekeeping matter.  Wouldn't some further

21   meet-and-confer help further sharpen the focus on these

22   particular issues, that is the admissions?

23           MR. SWEETLAND:  We are happy to talk further

24   about them if we can come back and talk to you later if it

25   doesn't work out.

1          THE COURT:  You have one more opportunity -- I

2    suggest to all of you you use it wisely -- to come back

3    before me before I send you to a discovery master.

4          MR. SWEETLAND:  I believe with that, Your Honor,

5    the NMT defendants' issues are completed for this call.

6          THE COURT:  Let's go with Tesla.

7          MR. WILCOX:  Thank you, Your Honor.  For Tesla

8    Industries.

9          I am going to try to narrow down our request

10   here.  We asked for copies of patent applications from the

11   NMT defendants.  We believe that those were based in part

12   upon technology that was improperly obtained from our

13   client.  And, quite frankly, we just haven't gotten those

14   yet.  We just think -- I don't understand why we haven't.  I

15   think they are clearly discoverable and should be produced.

16         THE COURT:  How about that?

17         MR. SWEETLAND:  Your Honor, I am holding the

18   Bates-numbered applications of which he speaks.  I am under

19   the impression -- this is at Bates No. NMT NIM2478 to Bates

20   No. 2488.  I believe that they have been produced.  I will

21   re-scan, have them re-scanned and sent to Mr. Wilcox.

22         THE COURT:  Before you do that, why don't we

23   have Mr. Wilcox check and see again whether he has got them.

24         MR. WILCOX:  Your Honor, what I would suggest --

25   I accept Mr. Sweetland's representation as to whether a

1    particular patent application has been produced.  What I

2    would ask is that he agree to produce all the requested

3    patent applications.  If they haven't been produced, then I

4    ask that they be produced.  If they have, I withdraw,

5    obviously, our objection.

6            THE COURT:  Mr. Sweetland, are you making the

7    representation that you have produced all of the requested

8    patent applications?

9            MR. SWEETLAND:  I cannot say that, because I

10   didn't personally make that production.

11           THE COURT:  Then you do need to go back and

12   check with whomever it is that was involved directly in this

13   process.

14           MR. WILCOX:  I will offer to the Court that we

15   will produce any one that remains available.  One of them

16   has been abandoned, (inaudible) original application.  We

17   have the drawings, but we don't have the provisional patent

18   application for the one that was abandoned.  But we will

19   certainly produce all materials that are extant.

20           MR. SWEETLAND:  Your Honor, I am a little

21   concerned about that.  I mean, to the extent -- just because

22   the application was never fully prosecuted doesn't mean that

23   it shouldn't be produced.  It is a matter of -- I cannot say

24   to the Court, Your Honor, that the provisional patent

25   application, it's a lesser process, as Your Honor is aware,

1    than a full-blown one that has been professionally

2    prosecuted.

3              There was a layperson, Mr. Hollingsworth, two

4    applications that I believe he did himself.  I know because

5    I am looking at the handwritten cover sheet for one of the

6    applications that exists.  I cannot say that the handwritten

7    application in a completed -- although I have the drawing, I

8    don't have the handwritten application, I don't know what

9    its status is.  If he has it, we will produce it.  If he

10   doesn't have it, I will find out and tell Mr. Wilcox why he

11   doesn't have it, and we will attempt to get it using

12   whatever process is necessary from the PTO, across the river

13   from us.

14             THE COURT:  I am satisfied.

15             MR. SWEETLAND:  I am, too, Your Honor.

16             THE COURT:  Hollingsworth and Minnick responses

17   to interrogatories.

18             MR. WILCOX:  If I may address the production of

19   documents issue.  Sorry to step back.

20             I made reference earlier to concerns and

21   evidence that one of the defendants has, or at least

22   communicated, told another defendant that he has removed his

23   hard drive from his computer and put it in a place that

24   would be very difficult to find it.  That is the kind of --

25   I am sure I don't need to explain to the Court our concerns

1    about that.

2                    THE COURT:  Sure.

3                    MR. WILCOX:  We vehemently believe that we are

4    entitled to documents from that hard drive and to an

5    explanation of how that happened.

6                    THE COURT:  All right.

7                    MR. SWEETLAND:  Your Honor, the hard drive in

8    question was a D drive, a backup drive to a computer that

9    was in Mr. Hollingsworth's possession, used for work not

10   with the NMT entity but with his prior employer.  At or

11   about the beginning of this case, that computer -- he ceased

12   work for this prior company, D.C. Power.  The C drive was

13   unsalvageable from the computer, and whatever information on

14   there was lost before the commencement of the case.  The D

15   drive was a backup drive containing system files and images.

16   And the overwhelming majority of the issues, upon review,

17   three attorneys from this office, including myself, have

18   reviewed the contents of that, and those documents, those

19   images were captured, with the exception of approximately

20   seven images, which were pictures of Mr. Hollingsworth's

21   wife and daughter's Halloween costumes and three items which

22   I can only characterize as being off-color jokes.  Those

23   documents were produced electronically yesterday, and should

24   arrive by Federal Express this morning at Mr. Sullivan's

25   office.

1              THE COURT:  Counsel?

2              MR. WILCOX:  That really doesn't address -- I

3       don't want to go into the fact as to when Mr. Hollingsworth

4       was working for other people.  We think that is the computer

5       from which crucial communications took place.  And really,

6       the problem is that the removal of that hard drive -- and I

7       don't understand how any defendant or any party can say to

8       another party legitimately after litigation has begun that

9       he has removed a hard drive and put it in a place where it

10      is very difficult to find.  And when we received a copy of

11      that e-mail, that was designated as attorneys' eyes only.

12      And I will address that concern.  That is a tremendous

13      concern we have here.  We think we are entitled to a greater

14      explanation than we have received to date.

15              MR. SWEETLAND:  Your Honor, that D drive is in a

16      safe place.  It is in my firm's office.  It is installed.

17      We had our computer technician install it, because it was a

18      standalone.  We had it installed.  Not one, but three

19      attorneys have gone through it.  Every e-mail that was on

20      that hard drive was produced yesterday.  The only things

21      that weren't produced were a handful of images that deal

22      with, A, Mr. Hollingsworth's wife and daughter, or, B, the

23      sort of images that get bantered around as jokes.

24              We don't know what more we can do.

25              THE COURT:  Mr. Sweetland, what is it you would

1    have them do?  Are you asking for the production of the

2    drive itself?

3              MR. WILCOX:  Yes, we are, Your Honor.  We have

4    asked for that repeatedly.

5              THE COURT:  Mr. Sweetland.

6              MR. SWEETLAND:  We believe that is unnecessary.

7    Obviously, if Your Honor orders it, we will do it.  But we

8    have conducted what we believe -- other than the systems

9    files on that drive, the things that make different programs

10   work, we have produced what we believe, upon the review of

11   three attorneys, to be everything that exists on there, with

12   the exception of those handful of personal documents.

13             THE COURT:  Under the circumstances, given the

14   contentions that have been exchanged here today, arguments

15   that have been made and allegations, I am going to order the

16   production of the D drive to the other side for use by

17   designated computer experts in the examination of the

18   contents of that drive.  Obviously, anything that is not

19   pertinent, that is not relevant to a claim or defense or

20   likely to lead to reasonably, reasonably calculated to lead

21   to the discovery of admissible evidence should not become a

22   part of the record in this case.  I am talking about

23   personal information, described here at least in part as

24   possibly off-color in nature.

25             This process is not going to be used to

1   embarrass anyone.  Is that clear?

2              MR. WILCOX:  Your Honor, it is.

3              The Court had ordered previously, upon the

4   stipulation of parties, that e-mails that were produced from

5   certain computers be turned over to what was called an

6   e-mail account officer who would conduct a relevance review.

7   What we would suggest is that once the forensic analysis is

8   done, that information is sent directly to the third party,

9   who essentially is acting as a magistrate or master, and

10  that he make those determinations.  That protects

11  Hollingsworth, we believe.

12             MR. SWEETLAND:  Your Honor, may I ask for

13  clarification that the physical turnover be given, too, so

14  we have a chain of custody.  I saw the package come in.

15             THE COURT:  Counsel, you can work that out.

16             MR. SWEETLAND:  We will work that out.

17             THE COURT:  Let's talk about NMT's designation

18  of documents.

19             MR. WILCOX:  We entered into a stipulated order

20  with the best of intentions that provided that certain items

21  be deemed confidential, could be stamped confidential, and

22  go to a restricted group.

23             THE COURT:  Is it your contention there has been

24  over-designation?

25             MR. WILCOX:  Yes, Your Honor.

1              THE COURT:  Counsel, you guys can't talk about

2       this?

3              MR. SWEETLAND:  Your Honor, may I just briefly

4       respond?

5              THE COURT:  Yes.

6              MR. SWEETLAND:  We have received no Bates number

7       identification of -- we have just received a blanket request

8       that we, again, we take a second look at our designations.

9       We have done that.  The protective order in this case, the

10      stipulated protective order, provides under Paragraph 4 that

11      if there is a problem with the designation, then the side

12      that has the problem should tell the other side what the

13      documents are.

14              THE COURT:  That hasn't happened?

15              MR. SWEETLAND:  No.

16              THE COURT:  Then this isn't ripe for discussion

17      today.  Do you agree that hasn't happened, counsel?

18              MR. WILCOX:  Your Honor, I don't agree.  But I

19      will remedy any deficiencies.  I think we have made it

20      extremely clear what items we are talking about.  And they

21      have made a redesignation.  The problem with the

22      redesignation is that now the Bates numbers are all messed

23      up and it's hard to tell.

24              This is probably not something the Court needs

25      to be involved with.  I would be satisfied if the Court

1    would give a sense that he doesn't expect over-designation

2    of the issues.  I don't understand why we can't work this

3    one out.

4                THE COURT:  Clearly, counsel need to be prudent

5    in your designations of documents as confidential.  There is

6    a process that you have outlined for yourselves in the

7    confidentiality agreement you negotiated that is designed to

8    take care of this and keep the Court out.  So I would ask

9    you to adhere to that process, be reasonable about it, not

10   be overly litigious.

11               That is my guidance to you.

12               MR. SULLIVAN:  Your Honor, may I ask, the

13   problem is, we are talking about hundreds and potentially

14   thousands of documents.  To place the burden on us to go

15   through, really, I would suggest that they designated 75

16   percent of their documents as attorneys' eyes only...

17               THE COURT:  That doesn't sound right.

18               MR. SULLIVAN:  ...for us to have to go through

19   and tell them what the Bates numbers are, number one, we

20   reviewed it once and then it was sent a second time --

21               THE COURT:  I think what you will ask me to do

22   is instruct them to go back and redesignate.

23               MR. SULLIVAN:  Yes, sir.

24               THE COURT:  So ordered.  That's it.  That is the

25   end of that discussion.

1            Let's go on to the next matter, Waldmann's

2     production of documents.

3            MR. WILCOX:  Thank you, Your Honor.

4            Our concern here is that we have not received

5     substantial documents from Mr. Waldmann relating to

6     electronic mail messages that we believe were sent.  There

7     is instances in which sequences are missing.  We know that

8     Mr. Waldmann sent a tremendous number of e-mails.  I really

9     think this also covers some of the NMT defendants.  We have

10    situations in which, just in a logical sense, there had to

11    have been a responsive e-mail.  With regard to Mr. Minnick,

12    we were promised those would be produced and have been

13    produced.

14            As to Mr. Waldmann, we just have not received

15    e-mails, copies of e-mails, copies of his communications

16    with other parties.  We think we are entitled to them.  If

17    counsel says they don't exist, I guess they don't exist.

18            MR. ADAMS:  Your Honor, I wrote them a letter

19    and told them we produced everything we have.  I don't know

20    what they want me to do.  I did tell them when I spoke to my

21    client last there were some documents that were created

22    after the last document production, which is sometime in

23    November, which we will supplement because there had been

24    some communications after that.  We will supplement that.

25    We are in the process of doing that right now.

34

```
 1              THE COURT:  All right.  That is where it will

 2    have to stay for now.

 3              What about the interrogatories?

 4              MR. ADAMS:  The supplementation should be done

 5    by tomorrow.  I told them last week I would supplement the

 6    interrogatories.

 7              MR. WILCOX:  We need the documents relating -- I

 8    am sorry.  We need the documents that form the basis for the

 9    interrogatory answers as well.

10              MR. ADAMS:  We have produced everything we have.

11    There is some documents newly created.  We will produce

12    those, which I agreed to do by a letter.

13              MR. WILCOX:  As far as documents relating to

14    communications with third parties and former customers of my

15    client, that seems to be a major source of, a major weakness

16    in the discovery request.  I accept Mr. Adams'

17    representations.

18              THE COURT:  All right.  Thank you, counsel.

19              As far as Waldmann's issues are concerned, did

20    we take them up when we were discussing NMT's issues or are

21    there separate issues?

22              MR. ADAMS:  There is a couple left.  Number one,

23    Your Honor, point one, document requests.  Their response is

24    that they will allow me to come and look and review the

25    documents.  They have not done so.
```

1          MR. SULLIVAN:  We are not sure what your issues

2    are there.  We probably need to talk to you about it.  We

3    think we have produced documents --

4          THE COURT:  Address your comments to the Court.

5          MR. SULLIVAN:  I am sorry, Your Honor.  This is

6    Brian Sullivan speaking.

7          We are willing to speak to Mr. Adams about that.

8    We think we have produced everything that he is entitled to

9    see.  We are not quite sure what his complaint is.  We are

10   willing to talk to him about it.  I don't think we are

11   withholding anything we haven't produced.

12         MR. WILCOX:  We are not asking to come to some

13   warehouse somewhere.  There is nothing for him to see that

14   we haven't produced.  In other words, it's not like we have

15   got a box of documents here that we will only produce if he

16   comes to our offices.  That is not what we are doing.

17         MR. ADAMS:  Your Honor, why didn't they say that

18   in the response?

19         THE COURT:  I don't have time to go into that,

20   counsel.

21         Let's talk about deficiencies in plaintiff's

22   response to interrogatories.

23         MR. ADAMS:  Your Honor, the deficiencies I am

24   specifically looking at, Interrogatories No. 125 and 126,

25   which deal with their damages calculations.

1          THE COURT:  Have you and your opponent talked

2    about this?

3          MR. ADAMS:  I sent them a letter and they never

4    responded to me.

5          THE COURT:  I asked have you talked about it?

6          MR. ADAMS:  We talked on the phone in general,

7    yes, we have.  And they keep telling us they will get back

8    to it, and he never gives me an answer.

9          MR. WILCOX:  Your Honor, I may.  We told -- I am

10   not sure that this is a different issue than the -- all I

11   can tell the Court is we will provide whatever documents --

12         THE COURT:  It sounds like the same issue we

13   discussed with NMT.

14         MR. WILCOX:  It does, Your Honor.

15         MR. ADAMS:  Your Honor, this is an interrogatory

16   request.  It is not a production of documents.  If they want

17   to supplement the interrogatories by the documents produced

18   to answer that, that is fine with me.

19         THE COURT:  Is that fine with you, counsel, on

20   the other side?

21         UNIDENTIFIED SPEAKER:  Does this have to do with

22   damages?

23         MR. WILCOX:  Yes.

24         MR. SULLIVAN:  We provided an expert report.  We

25   provided the documents that have been provided to the

1    expert.

2              MR. ADAMS:  None of the documents have been

3    provided to the expert, number one.  No. 2 --

4              THE COURT:  Counsel, clearly, this is something

5    that you don't disagree about in terms of whether the items

6    should be provided.  You disagree about whether they were in

7    fact provided.  So that you need to work out.  Okay?

8              MR. WILCOX:  Your Honor, I will make the same

9    representation that we made with regard to the other -- to

10   the documents related to the other damages issues.  To the

11   extent that the interrogatory also needs to be supplemented,

12   we will do that as well, after consulting with Mr. Adams,

13   which I would suggest we do.

14             THE COURT:  Acceptable, Mr. Adams?

15             MR. ADAMS:  Yes, sir.

16             THE COURT:  What about this contention about the

17   plaintiff's designation of documents?  What is that all

18   about?

19             MR. ADAMS:  I am not complete with my other

20   items, sir.

21             THE COURT:  Yes, you are, because I got to go.

22             MR. ADAMS:  I got some very important things,

23   Your Honor.

24             THE COURT:  I have a criminal matter where the

25   parties are out in the courtroom right now waiting for my

38

1    arrival.

2              MR. ADAMS:  I am sorry.

3              THE COURT:  Your matter is more important, is

4    that what you are telling me?

5              MR. ADAMS:  No.

6              THE COURT:  There is somebody out there waiting

7    to go to jail.

8              MR. ADAMS:  I used to be a criminal attorney.  I

9    understand.

10             THE COURT:  I don't used to be a judge.  I am a

11   judge today.  You are finished with the other item.  You

12   have a few minutes on this last one.

13             MR. ADAMS:  I ask for the same thing that Tesla

14   asked for, they have over-designated virtually every

15   document in this case.  No document is confidential and no

16   document is attorney-client.

17             THE COURT:  Counsel, you have got to be more

18   professional in the conduct of this matter generally.  That

19   comment goes to all of you.  Cut it out.  You have got one

20   more opportunity with me, and if I have to hear crap like

21   this, and I do mean crap, there is going to be a problem.

22             Counsel, we are done.

23             (Conference concluded at 10:05 a.m.)

24   Reporter:  Kevin Maurer

25

# Exhibit B

## Daniel Mandon

| | |
|---|---|
| **From:** | Amy D. Brown on behalf of Brian A. Sullivan |
| **Sent:** | Friday, February 17, 2006 4:22 PM |
| **To:** | 'lhollingsworth1@austin.rr.com' |
| **Cc:** | Robert Wilcox; 'chazmin@aol.com' |
| **Subject:** | Tesla vs. Waldmann, et al. |

Lyndol,

I appreciate your message. However I must make some clarifications.
In our conversation the other day, Mr. Minnick asked about the time period for filing an answer to the Complaint and informed me that he was considering retaining an attorney. I said I did not want to interfere in the process of his retaining an attorney should he choose to do so. As you may know, an individual can represent himself, while a corporation can only be represented by an attorney. Whether you or Mr. Minnick should retain counsel at this time is solely up to you.

Mr. Minnick stated that he knew we had granted Mr. Waldmann an extension of time to respond to the Complaint. I confirmed that we had done so and told him that, subject to our client's approval, we would probably be willing to offer to him and to you the same 30 day extension we had agreed upon with Mr. Waldmann's attorney, John Adams.
Accordingly, I told Mr. Minnick that we were not considering filing a Motion for Default Judgment (not a Motion for Summary Judgment, which is substantially different) in the meantime.

I did not say or promise that anyone will no longer be pursued in this case. At this point, you are subject to the Temporary Restraining Order and this is an active lawsuit.
I believe that Mr. Waldmann, at least, has seriously violated the rights of Tesla Industries, which must be rectified.

Whether we take further action against you or Mr. Minnick will likely depend on what we believe your involvement in this alleged conspiracy was.

You have told me that you are willing to cooperate in our gaining an understanding of the facts. I would be interested in discussing the facts on an informal basis from you. This would not preclude us from obtaining additional information by more formal means in the future, if necessary. If you would rather not speak to me, that is certainly your right.

Thanks for your consideration.

Brian A. Sullivan, Esquire
Werb & Sullivan
300 Delaware Avenue
13th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111


-----Original Message-----
From: Lyndol Hollingsworth [mailto:lhollingsworth1@austin.rr.com]
Sent: Thursday, February 16, 2006 5:41 PM
To: Brian A. Sullivan
Cc: Chuck Minnick
Subject: please accept my apology


Dear Brian,

Chuck Minnick just phoned to tell me that your law firm has no intentions of
asking for a summary judgment against me, Chuck and New Millennium Tools.

This
is such a relief to me. I have never had a law suit filed against me so
please
excuse my reactions. I want to formally apologize for my comments in regards
to
you "twisting my words" to make me sound guilty of something.

I just hope this whole misunderstanding is cleared up soon for Dave Waldmann
and
his family. What I have been through with this is nothing compared to his
ordeal.

Chuck says that he has your word that we will not be pursued any longer in
this
case. I will take you at your word on this.

I wish you and yours the best,
Lyndol W. Hollingsworth

PS. I have attached a photo of me holding the DC Impact wrench I created for
DC Power
Equipment. The tool just got its National Stock Number for the Dept. of
Defense. There
are units already being used in Iraq by our soldiers with great success. I
hope to be
able to create even better tools with Chuck and New Millennium Tools, Inc.!


--
No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 269.5.2/766 - Release Date: 4/18/2007 7:39 AM

# CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2006, I caused a copy of the foregoing

document to be served upon the persons listed below in the manner indicated:

**<u>VIA E-MAIL & FIRST CLASS MAIL</u>**

John A. Adams, Esq.
Susanin Widman & Brennan, P.C.
455 S. Gulph Road, Suite 240
King of Prussia,  PA  19406

Louis S. Mastriani, Esq.
Rodney R. Sweetland, III, Esq.
David F. Nickel, Esq.
Adduci,Mastriani & Schaumberg, LLP
1200 Seventeenth Street, N.W.
Fifth Floor
Washington,  DC  20036-3006

**<u>VIA HAND DELIVERY</u>**

John D. Demmy, Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington,   DE  19801

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. Maguire, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington,  DE  19801

/s/ Brian A. Sullivan
Brian A. Sullivan (#2098)