## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-55-GMS |
| | ) | |
| DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a/k/a CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF, TESLA INDUSTRIES INC.'S, REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE TRIAL OF UNPLEADED ISSUES

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: 302-652-1100
bsullivan@werbsullivan.com

Paul E. Crawford (#493)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: 302-888-6262
pcrawford@cblh.com

Dated: April 26, 2007

Attorneys for Plaintiff
Tesla Industries Inc.

# TABLE OF CONTENTS

I.     Counterstatement of Facts……………………………………………..     1

II.    Argument…………………………………………………………….     2

# TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Fujisawa Pharm. Co., Ltd. v. Kapoor*, No. 92 C 5508, 1999 WL 543166,
at \*17 (N.D. Ill., July 21, 1999)……………………………………………     3

*C.R. Bard, Inc., v. M3 Systems,* No. 93 C 4788, 1994 WL 270252,
N.D. Ill., June 16, 1994) …...............................................................................     3

<u>RULES</u>

FEDERAL RULES OF EVIDENCE RULE 608 ………………………………     1,3

FEDERAL RULES OF EVIDENCE RULE 403 ………………………………. 3

This is Plaintiff, Tesla Industries, Inc.'s, Reply in Support of Its Motion in Limine to Preclude Trial on Unpleaded [Tax Evasion] Issues (DI 147).  This replies to the scurrilous accusations in NMT Defendants' Memorandum in Opposition to that Motion in Limine (DI 158) "Defendants' Memo").[1]  NMT seeks to introduce evidence that Tesla's President and CEO (1) filed false and incomplete tax returns, (2) failed to file tax returns, and/or (3) knowingly testified falsely in an Affidavit to this Court.  (See NMT Op. Brief p.1-2, 3.)  Such evidence is clearly barred by F.R.E 608(b).  This Court should also use its discretion to bar the evidence under Rule 403 due to its unfair prejudicial effect.  For the following reasons, Tesla respectfully requests this Court to grant its *motion in limine* to preclude the introduction of evidence related to purportedly false, incomplete, or nonexistent tax returns.

## I.  COUNTERSTATEMENT OF FACTS

Contrary to Defendants' Memo, page 2, Tesla did not underreport 2001/2002 taxes.  The simple response to Defendants' scandalous claims is that Tesla's accountant is human and susceptible to human error.  In simple terms he goofed!  His assistant mistakenly used the same revenue data for both 2001 and 2002 tax years.  (See Affidavit of  Dee Ridgeway,  Exhibit "A" hereto).  The obvious error belies any intent to defraud the IRS.

Next, Defendants' Memo, (page 2) cites tax liens against Tesla as a sure sign that its president, David Masilotti, belongs in leg irons.  Once again there is a simple, non-criminal, answer for this.  These liens were the subject of a lengthy meeting between another Tesla Accountant, Cordua & Assoc., and the IRS,  as explained in the attached Affidavit of Mr. Cordua (Exhibit "B" hereto).  This Affidavit details a meeting with an IRS agent in August, 2005 to explain that all wage withholdings had been made by Tesla despite IRS inability to find those

---

[1]  The other Defendant, David Waldmann, belatedly joined in opposing Plaintiff's Motion in Limine by filing a one sentence embrace of Defendants' Memo (See DI 158).  This was filed after the deadline for opposing Plaintiff's Motion and should be disregarded.

payment in its archaic database.[2]  Everyone – including the IRS agent – left the meeting agreeing

that there were no deficiencies or delinquencies in Tesla's tax payments.  However, it appears

that the IRS did not lift the tax liens they had filed.

## II.  ARGUMENT

Defendants have lodged over twenty counterclaims (See DI 26-27) to distract attention

from their theft of Tesla's trade secrets and confidential information, and now seek to add tax

evasion to their shotgun defenses hoping that something will stick or distract the jury from

Defendants' misdeeds.  Defendants' Memo (page 3) tries to  bootstrap its relevancy arguments

with an alleged discrepancy between the amount of expenses deducted by Tesla for research and

design, selling and marketing versus the assertions in Mr. Masilotti's Affidavit that millions were

spent on these items.  Ignoring for a moment that this alleged underreporting of expenses is a

testament to Mr. Masilotti's candor in dealing with the IRS[3], it is symptomatic of a larger

problem if Defendants' have their way on this ersatz tax evasion issue.  It opens up a battle of

experts over this unpleaded issue.  If Defendants are allowed to proceed with this tack Tesla will

be left with no option but to present its reasons for every deduction covered by five or more

years of tax returns.[4]

1. A Purported Violation of the Internal Revenue Code is Irrelevant to NMT's Damages

Evidence is relevant if it has any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence.  F.R.E. 401.  Whether or not Tesla has been investigated or prosecuted by

---

[2]  In fact, the IRS has been  unable to account for an approximate $78,000 payment made by Tesla's president to an IRS withdrawal. See Exhibit "B".
[3]  Underreporting of expenses necessarily increases taxes.
[4]  Tesla has only recently started up, but does not yet operate, software that would better enable it to allocate its labor costs to R&D associated with its product developments.  Prior to this several persons, particularly operators of Tesla's multi-million dollar contracted machining mills spend considerable – if not all – of their time on product development.  These are highly skilled personnel making high five figure salaries.  But allocation of their time between development and production is not possible until the new software is implemented.

the Internal Revenue Service is completely irrelevant to the issue of the quantum of damages. Such evidence can be gleaned from other financial documents, e.g., invoices, quarterly sales reports, income statements.

The party to the litigation is Tesla, not Mr. Masilotti.  His character is not at issue to be tried.  Thus his character cannot be challenged merely because he is an officer of a corporate entity against which the IRS has mistakenly filed tax liens.  The cases cited in Defendants' Memo (pp 4-5) relate to use of tax issues to challenge the character of a **party** and are thus inapposite here where tax issues are proposed as fodder for cross-examination of Mr. Masilotti, a **non-party.**

*Fujisawa Pharm. Co., Ltd. v. Kapoor*, No. 92 C 5508, 1999 WL 543166, at *17 (N.D. Ill., July 21, 1999) (attached hereto as Exhibit "C") was a RICO action.  Plaintiff filed a motion *in limine* to preclude defendant from introducing evidence of plaintiff's guilty plea to a prior price-fixing conspiracy charge and also an industrial espionage investigation in which several of plaintiff's employees were arrested.  Id. at *17.  Defendant argued that Rule 608(b) allowed such evidence for purposes of impeaching the credibility of plaintiff's witnesses who would testify as the representatives of the corporation.  *Id.*  The court disagreed, stating:

> The difficulty with such an assertion is that Rule 608(b) refers to 'the conduct of a witness,' [and i]n the instant case, it is undisputed that none of [plaintiff's] trial witnesses was implicated in the industrial espionage incident and that none has been convicted of any crime. Further, [plaintiff] asserts that [plaintiff] itself, as a corporation, is not a witness [and defendant has not offered evidence that the witnesses are the corporation's alter egos].

See also,  *C.R. Bard, Inc., v. M3 Systems,* No. 93 C 4788, 1994 WL 270252, N.D. Ill., June 16, 1994) (Attached hereto as  Exhibit "D").

 For the foregoing reasons, this Court should grant Plaintiff's Motion in Limnie to Preclude Trial of Unpleaded Issues.

April 26, 2007

/s/ Brian A. Sullivan
Brian A. Sullivan  (DE No. 2098)
Robert D. Wilcox  (DE No. 4321)
Amy D. Brown     (DE No. 4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P. O.  Box 25046
Wilmington,  DE  19899
Telephone:  (302) 652-1100
Facsimile:  (302) 652-1111

and


Paul E. Crawford (I.D. # 493)
CONNOLLY BOVE LODGE & HUTZ LLP
1107 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
302.658.9141
pcrawford@cblh.com


Attorneys for Tesla Industries, Inc.

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware
Corporation,

        Plaintiff,    :  C.A. No.06-55 (GMS)

v.

DAVID C. WALDMANN,
LYNDOL W. HOLLINGSWORTH,
CHARLES MINNICK a/k/a CHUCK MINNICK, and
NEW MILLENNIUM TOOLS, INC., an Oregon
Corporation,

        Defendants.  :

## AFFIDAVIT OF DEE RIDGEWAY

STATE OF DELAWARE  )
           )  to wit:
COUNTY OF NEW CASTLE )

DEE RIDGEWAY, being first duly sworn on oath, deposes and says as follows:

1. I am an adult competent to testify to the matters stated herein.

2. I have personal knowledge of the matters stated herein.

3. I am a licensed public accountant and have prepared tax returns for Tesla Industries
   for at least the past 8 years. It has recently been brought to my attention that there is
   an alleged discrepancy in the corporate tax return for Tesla Industries which I
   prepared and filed for tax year 2002.

4. My review indicates that the mistake was caused by one of my assistants. While
   assisting me in preparing Tesla's tax return for the fiscal year ending June, 2002, one
   of my employees inadvertently listed the previous year's sales as the tax return

amount.   This mistake occurred because in reviewing returns and sales data for several years, my assistant inadvertently used the monthly sales report for tax year 2001 instead of for the 2002 return.  In fact, the exact entries from year 2001 were mistakenly entered on this 2002 return.

5.   The recent realization of this mistake will cause me to prepare an amended 2002 tax return in order to correct the error.

6.   Upon my preliminary review and assessment, I am optimistic that this correction will not result in increased tax liability for Tesla Industries because this business has been legitimately taking advantage of tax loss carry forwards during the tax year affected .

7.   I am familiar with the tax returns for Tesla Industries, Inc. that were produced by Tesla in response to discovery requests in this case.  These copies are stamped "THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL" (or "Copy" or "Customer Copy") by my office and are in fact true and correct copies of the actual returns filed by our office.

8.   The Accountant Compilation Report,  dated January 5, 2007, designated as PSup 1896 through 1900, attached as Exhibit 3 to the NMT Defendants' MIL 5 is a true and accurate copy of my Report.

I hereby declare and affirm under the penalties of perjury that the matters and facts set forth or alleged herein are true and correct to the best of my knowledge, information and belief.

DEE RIDGEWAY :

SUBSCRIBED and SWORN TO before me this _____ day of _____, 2007.

_____
NOTARY PUBLIC

My Commission Expires:

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware  :
Corporation,  :
   :
             Plaintiff,  :   C.A. No.06-55 (GMS)
   :
v.  :
   :
DAVID C. WALDMANN,  :
LYNDOL W. HOLLINGSWORTH,  :
CHARLES MINNICK a/k/a CHUCK MINNICK, and  :
NEW MILLENNIUM TOOLS, INC., an Oregon  :
Corporation,  :
   :
             Defendants.  :

## AFFIDAVIT OF PETER J. CORDUA

I, PETER J. CORDUA, do hereby depose and state as follows:

1.    I have been a certified public accountant for more than 20 years.

2.    I am the principal owner of the accounting firm known as Cordua & Company.

3.    I have occasionally provided limited accounting services and advice to Tesla Industries, Inc.

4.    I was requested by Tesla Industries to assist in its response to the IRS Notice of Levy with regard to alleged payroll tax deficiencies.

5.    My review of Tesla' records, including date stamped tax returns and date of cancelled remittances were inconsistent with the IRS' calculations and position regarding claimed payroll tax deficiencies.

6.    On or about October 2005, I met with the IRS Representative concerning the alleged deficiencies. At the meeting, we were instructed as to what additional information was needed in order to justify all of Tesla's payments. See my letter of October 17, 2005, attached as Exhibit A. This information was subsequently provided by Accountant, Dee Ridgeway, who prepares and files Tesla's payroll taxes.

7.    At the meeting I also requested of the IRS agent to account for a payment by Tesla Industries in the approximate amount of $78,000 which was not accounted for in the IRS transcript. While there was some limited additional correspondence after that meeting, the IRS did not contact me further regarding any alleged deficiencies. Further, I believe that we had demonstrated to the IRS representative Tesla was current on all of its payroll taxes.

8.    While I believe that the IRS may have not technically removed its old liens, it is my understanding from subsequent information provided by the IRS that the claimed incorrect deficiencies have been satisfied, except for proposed penalties by the IRS that the Company is currently challenging through the office of the Taxpayers Advocate.

9.    Further, my review indicates that Tesla Industries and its President, David J. Masilotti, relies totally upon the work of its accounting professional, Dee Ridgeway, in order to prepare and file payroll tax returns and payments on a timely and complete basis.

10.    I have reviewed the allegations contained in the NMT Defendants' Memorandum in Opposition To Tesla Industries Motion in Limine. In my opinion, the allegations contained therein are not based on current information and fact.


Peter J. Cordua


SUBSCRIBED and SWORN TO before me this _26_ day of April, 2007.


NOTARY PUBLIC


My Commission Expires:

*Elizabeth Gaskill*
*Notary Public of New Jersey*
*Commission Expires 06/17/2011*

# Cordua & Company, P.C.

Certified Public Accountants

October 17, 2005

Ms. S. Ebanks
Revenue Officer
Internal Revenue Service
409 Silverside Road, Rm 172
Wilmington, DE 19809

RE: Tesla Industries, Inc.
EIN 51-0346493

Dear Ms. Ebanks:

Thank you for the meeting on Friday, October 14, 2005. Everyone present appreciated your courtesy and professionalism.

As per our conversation, you will be provided with the payroll data to reconcile the 2002 payroll to the Forms 941 and then to the W-3 and W-2s. You will be provided this information this week.

Thanks again.

Sincerely,

Peter J. Cordua, C.P.A.
President

cc: David Masilotti
Brian A. Sullivan, Esq.

1650 Suckle Highway
Office Complex, Suite 3
Pennsauken, NJ 08110
(856) 486-2299 • Fax (856) 486-2038
email: CorduaAndCo@pjc-cpa.com

300 Delaware Avenue, Suite 1300
Wilmington, DE 19801
Mailing Address:
P.O. Box 25046
Wilmington, DE 19899-5046

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Fujisawa Pharmaceutical Co., Ltd. v. Kapoor
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
FUJISAWA PHARMACEUTICAL CO., LTD. and
Fujisawa USA, Inc., Plaintiffs,
v.
John N. KAPOOR, Defendant.
No. 92 C 5508.

July 21, 1999.

*MEMORANDUM OPINION AND ORDER*
BUCKLO, J.
*1 The plaintiffs, Fujisawa Pharmaceutical Co., Ltd.
("Fujisawa"), and Fujisawa USA, Inc. ("FUSA"),
sued the defendant, John N. Kapoor, under the
Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. § 1961 *et seq.*, and on various state law
grounds. Before me are the motions in limine of both
sides plus four additional, related motions by Dr.
Kapoor. For the reasons set forth below, the motions
are granted in part and denied in part.

*Motions in Limine*

*Defendant Dr. Kapoor's Motions*

1. Defendant's Motion in Limine to Bar Evidence of
Alleged ANDA Discrepancies Not Identified as
Material in Plaintiffs' Expert Report.

Dr. Kapoor moves to bar evidence of alleged ANDA
discrepancies that Fujisawa's expert, C. Greg Guyer,
did not consider material to the approvability of 35
ANDAs that were withdrawn by Fujisawa. He argues
that evidence of such nonmaterial discrepancies is
irrelevant and would result in undue delay and waste
of time, and would confuse and mislead the jury. He
also contends any probative value of those alleged
discrepancies is substantially outweighed by the
danger of undue prejudice because of his expert's
reasonable reliance on the alleged discrepancies that
Dr. Guyer considered material.

The evidence at issue here is relevant to Fujisawa's
reasons for withdrawing the ANDAs, as well as its
attempt to establish Dr. Kapoor's *scienter*. Under
Fed.R.Evid. 403, relevant evidence "should only be
excluded if its probative value is *substantially*
outweighed by any of the listed concerns in Rule
403." *United States v. Kramer,* 955 F.2d 479, 490
(7th Cir.1992) (citations omitted). In this instance,
the probative value of this evidence is not
substantially outweighed by concerns such as danger
of unfair prejudice, [FN1] confusion of the issues, or
waste of time. On the contrary, the probative value of
the evidence clearly outweighs those other concerns.
There is no indication the evidence "will induce the
jury to decide the case on an improper basis." *United
States v. Curry,* 79 F.3d 1489, 1496 (7th Cir.1996).
The motion is denied.

FN1. Dr. Kapoor's argument that he would
be prejudiced because his expert, Joel Davis,
limited his written report to Dr. Guyer's
report, (Def.'s Mem. in Supp. of Mot. in
Limine at 5), is undercut by Mr. Davis'
assertion that "if Fujisawa attempts ... to
raise reasons for the withdrawal of ANDA's
[sic] other than those noted in Dr. Guyer's
report, I will be prepared to address them as
well," (Def.'s Mem. in Supp. of Mot. in
Limine Ex. C at 11 n. 1).

2. Motion in Limine Relating to FDA "Findings."

Dr. Kapoor moves to bar evidence the FDA found
fraud, or false or misleading information in the
Lyphomed ANDAs at issue in this case. Dr. Kapoor
focuses on two documents: a Form 483 issued by the
FDA on November 7, 1991, stating that there were
discrepancies between certain raw data and the data
submitted in various Lyphomed ANDAs, and that
documentation needed to support data in some
applications was unavailable or incomplete; a
February 28, 1992, letter in which the FDA advised
FUSA that it was "preparing to initiate proceedings
to withdraw approval" of several drug applications
held by FUSA because of "serious questions about
the reliability of the data ... submitted to support ...
the applications"; a March 12, 1992, letter notifying
FUSA that the Center for Drug Evaluation and
Research found that "Lyphomed has submitted false
or misleading information in applications filed with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

[FDA]"; and a letter to FUSA dated February 16, 1994, stating that the FDA "has determined that potential serious problems exist with respect to certain drug products "because the applications for those products contain false or misleading statements."

**\*2** Dr. Kapoor contends the Form 483 is barred by Fed.R.Evid. 1002 ("Best Evidence Rule"). He also argues the Form 483 and the three FDA letters are hearsay not subject to any exception, and that they should be excluded under Fed.R.Evid. 403.

The Form 483, though hearsay, is subject to the Rule 803(8)(B) public records and reports exception. It is a report by a public agency of "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed.R.Evid. 803(8)(B). Dr. Kapoor contends the Form 483 is inadmissible under Rule 803(8)(B) because it is based on a "fragmented documentary record," (Reply in Supp. of Mot. in Limine at 3), and not on the FDA investigators' personal knowledge, see *Wetherill v. University of Chicago,* 518 F.Supp. 1387, 1390 (N.D.Ill.1981) (Shadur, J.). Nevertheless, the Form 483 was based on a nine-month investigation of FUSA's Lyphomed R & D facility, and I find that such an on-site investigation satisfies Rule 803(8)(B)'s "personal knowledge" requirement in this instance. In addition, Dr. Kapoor has failed to meet his burden of showing the Form 483 is untrustworthy. *See United States v. Loyola-Dominguez,* 125 F.3d 1315, 1318 (9th Cir.1997) (documents that fall under public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence' "). Despite his criticisms as to the timeliness of the investigation, the alleged bias of one of the investigators, and that same investigator's alleged lack of special skill or expertise, Dr. Kapoor falls far short of showing the Form 483 in this instance is untrustworthy.[FN2] Neither is the Form 483 inadmissible under Fed.R.Evid. 403. Its probative value is not substantially outweighed by the concerns listed in Rule 403. Accordingly, the motion is denied as to the Form 483.[FN3]

FN2. Dr. Kapoor also argues no hearing was conducted prior to issuance of the Form 483, but he concedes that a formal evidentiary hearing is not required in every instance. (Reply in Supp. of Mot. in Limine at 8.) In this instance it is not.

FN3. Dr. Kapoor also contends the Form

483, if admitted, would be used to prove the content of Lyphomed's ANDAs and supporting data, and thus would run afoul of Fed.R.Evid. 1002. That argument is without merit. The purpose of introducing the Form 483 would be to show discrepancies between the ANDAs and underlying data, and though the content of those documents undoubtedly would come into play, proving that content is not the primary aim. An "over-technical and strained application of the best evidence rule" is to be avoided. *United States v. Manton,* 107 F.2d 834, 845 (2nd Cir.1939); *see* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 1002[02], at 1002-8 (1990).

The three letters are admissible under Fed.R.Evid. 803(8)(C). They present "factual findings resulting from an investigation made pursuant to authority granted by law." Fed.R.Evid. 803(8)(C). Dr. Kapoor contends the letters lack trustworthiness,[FN4] but his arguments are similar to those made as to the Form 483 and are also rejected. Dr. Kapoor also argues the letters contain inadmissible conclusions. However, "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988); *United States v. Romo,* 914 F .2d 889, 896 (7th Cir.1990). The letters also are not inadmissible under Fed.R.Evid. 403. Their probative value is not substantially outweighed by the Rule 403 concerns, even though two of the letters state findings or determinations that the applications contain "false or misleading" information. (Def.'s Mem. in Supp. of Mot. in Limine Ex. C, Ex. D.) Such statements do not predetermine the issue or tell the jury how to decide the case, *see Tulloss v. Near North Montessori School, Inc.,* 776 F.2d 150, 154 (7th Cir.1985), which depends not solely on whether the applications were false or misleading but also on Dr. Kapoor's knowledge of their alleged falsity or misleading nature. To state that the applications contained false or misleading information is not to conclude the applications were fraudulent. The motion is denied as to the three letters as well.

FN4. Dr. Kapoor points to *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261 (7th Cir.1988), which upheld the exclusion of a Forestry Service bulletin and the redaction of a statement from a Forestry Service pilot's report, both on trustworthiness grounds. 847

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

F.2d at 1271-74. However, the bulletin was excluded because no information was provided about the author, and the redaction was done because the pilot testified he was not the author of the disputed statement. That is not the case here.

3. Defendant's Motion in Limine to Bar Evidence that Dr. Kapoor Eliminated Certain Stability Testing on Research and Development Samples after Three Months of Room Temperature Testing While Purportedly Directing that Lyphomed Represent to the FDA that Such Testing Continued.

**\*3** Dr. Kapoor moves to bar evidence that he eliminated certain stability testing on R & D samples after three months of room temperature testing while allegedly directing that Lyphomed represent to the FDA that such testing continued. Dr. Kapoor contends such evidence is irrelevant to any of the issues in this case and that its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Therefore, Dr. Kapoor argues, it should be barred under Fed.R.Evid. 403. Nevertheless, such evidence is relevant to Fujisawa's attempt to establish Dr. Kapoor's *scienter*. In addition, its probative value is not substantially outweighed by the Rule 403 factors, particularly considering the relative strength of the material presented in support of it (notwithstanding Dr. Kapoor's claims that it is weak). (Kasubick Dep. at 38-49; Opp'n to Mot. in Limine Ex. C.) The motion is denied.

4. Defendant's Motion in Limine to Bar Plaintiffs from Introducing Evidence and Damage Calculations Relating to the Ten ANDAs which Fujisawa Has Conceded Had Non-Material ANDA Discrepancies.

Dr. Kapoor moves to bar introduction (for purposes of liability) of evidence as to the 10 ANDAs that Fujisawa defended to the FDA stating discrepancies were immaterial to approvability. He also moves to bar introduction (for purposes of damages) of calculations showing losses stemming from withdrawal of products covered by those ANDAs. Dr. Kapoor argues that because Fujisawa in 1992 believed those ANDAs did not contain material discrepancies, Dr. Kapoor could not have misled Fujisawa as to those products. He also contends he is thus not responsible for damages allegedly stemming from withdrawal of those ANDAs.

Fujisawa asserts statements included in its defenses

of those ANDAs were arguments or positions "advanced in an effort to salvage some of the company's most commercially important products." (Opp'n to Mot. in Limine ¶ ¶ 10-11.) Moreover, those defenses were rejected by the FDA, which recommended voluntary withdrawal of the ANDAs because it had determined they contained "false or misleading statements." *Id.* Ex. C.

Even though Fujisawa may have believed the discrepancies in those ANDAs were immaterial, they were material to FDA approval. I decline to bar Fujisawa from arguing liability and damages stemming from those discrepancies simply because Fujisawa presented an unsuccessful defense that the discrepancies were immaterial. *See Ezekiel v. Michel, 66 F.3d 894, 904 (7th Cir.1995)* (litigant "not forever bound to a losing argument"). The motion is denied.

5. Motion in Limine to Exclude Certain Speculative Testimony from Melissa Wilson.

Dr. Kapoor moves to exclude testimony of Melissa Wilson, a chemist at Lyphomed from 1983 to 1986, about an alleged Lyphomed policy of not reporting out-of-specification data to the FDA. Dr. Kapoor argues that because Ms. Wilson's deposition testimony on that subject makes no mention of him and is somewhat inconclusive, (Wilson Dep. at 55, 57-58, 120-21), her live testimony at trial on that topic should be barred on grounds it is irrelevant, lacks foundation and is speculative. Nevertheless, some parts of Ms. Wilson's deposition testimony on the reporting of data to the FDA are clearer than others. (Wilson Dep. at 37-39.) Further, it is not clear at this point that her trial testimony on that subject would be inadmissible. Therefore, the motion is denied. *See United States v. Rusin, 889 F.Supp. 1036, 1038 (N.D.Ill.)*

6. Defendant's Motion in Limine to Bar the Testimony of Richard Cooper.

**\*4** Dr. Kapoor moves to bar the testimony at trial of Richard Cooper, a former FDA General Counsel retained by Fujisawa in 1991 shortly after it received the Form 483 from the FDA. Dr. Kapoor argues that because Mr. Cooper was brought in only after the Form 483 was received he has no firsthand knowledge of the events in dispute, including events underlying the alleged discrepancies in Lyphomed's ANDAs. However, Fujisawa points to deposition testimony showing Mr. Cooper did have direct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

involvement in several aspects of Fujisawa's response to the FDA. He reviewed audit reports, (Cooper Dep. at 57-61, 89, 113-14, 188-89); he met with the FDA to discuss the drugs identified in the Form 483 and the issues raised as to those drugs, *id.* at 44-51; and he evaluated the company's defenses of its ANDAs, looking at the logic and strength of the arguments in an effort to advise Fujisawa as to the likelihood the defenses would be successful, *id.* at 263-65. Fujisawa asserts Mr. Cooper's testimony "will be based on his *own* participation in Fujisawa's 1991 investigation and his advice given to Fujisawa during the time the company operated under the AIP," not on what occurred in the 1980s. (Pls.' Opp'n to Mot. in Limine at 6, 8.)

Dr. Kapoor's contention that Mr. Cooper lacks personal knowledge of any matter to which he would testify is therefore denied (obviously without prejudice to objections to specific questions at trial). I also reject Dr. Kapoor's argument that, as a matter of law, I should decide that Mr. Cooper's testimony would concern matters as to which Dr. Kapoor was unable to elicit deposition testimony due to the assertion of the attorney client privilege. The motion is denied.

### 7. Motion in Limine to Exclude Certain Testimony from Anne O'Connor.

Dr. Kapoor moves to bar deposition testimony from former Lyphomed chemist Anne O'Connor that Lyphomed generally did not report out-of-specification data to the FDA. Dr. Kapoor contends Ms. O'Connor lacks personal knowledge to make such a statement. He points to portions of Ms. O'Connor's deposition in which she acknowledged there was never a meeting in R & D to announce a change in standard deviation analysis (O'Connor Dep. at 183) and in which she conceded that, as to her belief that Lyphomed did not report out-of-specification data, she did not know "what every other scientist was doing," *id.* at 233.

Nevertheless, Ms. O'Connor also testified she talked to other people in R & D about how they handled out-of-specification data, (O'Connor Dep. at 184), and that she "had access to other people's data through finished product specs" and so "had an idea what other people were doing," *id.* at 183-84. Even though Ms. O'Connor may not have known what *every* other scientist was doing, and even though there was no stated policy of not reporting out-of-specification data, *id.* at 112, Ms. O'Connor could

have been in a position to conclude that such data generally were not being reported. Given the content of other portions of Ms. O'Connor's deposition, (O'Connor Dep. at 54-55, 56-61, 111-12, 146-48, 197-98), such a conclusion could have been "rationally based" on her perceptions and would be "helpful to the development of the evidence at trial." *United States v. Giovannetti,* 919 F.2d 1223, 1226 (7th Cir.1990) (discussing Fed.R.Evid. 602 and 701). The motion is denied.

### 8. Defendant's Motion in Limine to Bar Dr. Hayes' Expert Report and Testimony.

**\*5** Dr. Kapoor moves to exclude the testimony and report of Fujisawa expert Dr. Arthur Hayes on grounds that Dr. Hayes is not qualified to render an expert opinion in this case and that his testimony thus would provide no assistance of substance to the trier of fact. Under Fed.R.Evid. 702, expert testimony must "assist the trier of fact in understanding the evidence or determining a fact in issue," and the expert witness must be "properly qualified to give the testimony sought." *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir.1996) (citation omitted).

Dr. Hayes conceded in his deposition that he did not know what type of testing the FDA required for ANDAs for generic drugs, (Hayes Dep. at 108), nor did he know if there were particular requirements in the 1980s for parenteral (injectable) drugs, *id.* at 108-09. In addition, Dr. Hayes's deposition testimony showed he was unclear as to what standards or guidelines the FDA had for retesting of products, a subject he conceded is "serious." *Id.* at 249-50. Moreover, Dr. Hayes indicated he had no specific knowledge of the FDA's recordkeeping requirements for drug manufacturers in the 1980s, *id.* at 78, nor is he expert in the subject of Good Manufacturing Practices, *id.* at 341-42.

Fujisawa contends Dr. Hayes would not testify as to any of those areas but instead would focus on his "principal opinion," which is "that FDA reviewing scientists rely on the truth and completeness of all the information submitted in support of a new drug application." (Fujisawa's Resp. to Mot. in Limine at 2.) As to this opinion at least, and the underlying reasons why this is so, Dr. Hayes appears qualified to testify. Thus, the motion to exclude is denied.

### 9. Motion in Limine to Exclude Any Theory of Liability or Exposure of Dr. Kapoor Other Than

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Those Pled.

Dr. Kapoor moves to exclude any evidence that he has liability, responsibility or exposure under any theory not arising from the claims stated in Fujisawa's second amended complaint. In the deposition of William Weaver (one of Dr. Kapoor's experts), Fujisawa questioned Mr. Weaver about a Food, Drug, and Cosmetic Act ("FDCA") requirement that drug company executives "seek out and remedy violations" of the FDCA. *United States v. Park,* 421 U.S. 658, 672 (1975); (Weaver Dep. at 112-17.) Dr. Kapoor contends liability under such a "positive duty" goes beyond the counts stated in Fujisawa's complaint and thus evidence of such liability should be excluded. Fujisawa concedes it has not asserted claims under such a strict liability theory and asserts it will not seek to impose such liability. However, Fujisawa asserts it should not be precluded from cross-examination of Dr. Kapoor and his experts regarding the duty discussed in *Park,* depending on how they testify at trial. Whether such questioning would be appropriate will depend on the context in which the questions arise at trial. As set forth in Fujisawa's responsive memorandum, however, the questioning would appear appropriate. The motion therefore is denied.

10. Defendant's Motion in Limine to Bar Any and All Evidence That the Drug Products at Issue in This Case Were Unsafe or Ineffective.

**\*6** Dr. Kapoor moves to exclude any evidence or argument by Fujisawa that the pharmaceutical products at issue in this case were unsafe or ineffective. At a 1995 hearing before Magistrate Judge Martin Ashman on Dr. Kapoor's motion to compel compliance with Fed.R.Civ.P. 30(b)(6), Fujisawa's counsel unequivocally stated that the products at issue were safe, (Hr'g Tr. at 7, 12), and that Fujisawa would not claim, try to prove, or offer any evidence that the products were ineffective, *id.* at 18-19. When Judge Ashman construed the Fujisawa's position to mean it would "not take any exception to any objection to any evidence on the grounds that the evidence is brought for the purpose of showing it is the ineffectiveness of the product" and that it agreed that such evidence "is not relevant," Fujisawa's counsel stated: "I agree with that." *Id.* at 19-20.

Those statements are a judicial admission that the products are safe and that plaintiffs will not offer evidence at trial that they are ineffective because such evidence is irrelevant in this case. Fujisawa asserts

correctly that it did not state at the April 6, 1995 hearing that the products *were* effective; it merely stated it would not prove they were ineffective or offer any evidence to that effect. However, in this instance that is a distinction without a difference, and it does not render Fujisawa's statements ineffective as a judicial admission. "Judicial admissions are formal concessions in the pleadings, or *stipulations by a party or its counsel,* that are binding on the party making them." *Keller v. United States,* 58 F.3d 1194, 1198 n. 8 (7th Cir.1995) (emphasis added). Judicial admissions also are " 'any "deliberate, clear and unequivocal" statement, either written or oral, made in the course of judicial proceedings." ' *Medcom Holding Co. v. Baxter Travenol Lab., Inc.,* 106 F.3d 1388, 1404 (7th Cir.1997) (quoting *In re Lefkas Gen. Partners,* 153 B.R. 804, 807 (N.D.Ill.1993)). Fujisawa's statements as to safety and evidence of ineffectiveness are formal stipulations made in the course of a judicial proceeding, and as such they "may not be controverted at trial or on appeal." *Keller,* 58 F.3d at 1198 n. 8. Further, because Fujisawa conceded the irrelevance of evidence as to safety or ineffectiveness, that evidence also is barred by Fed.R.Evid. 402.

The motion is granted as to any and all evidence offered by Fujisawa that the products at issue were unsafe or ineffective, including any evidence to that effect in Fujisawa's expert testimony and reports.

11. Defendant's Motion in Limine to Bar Evidence Offered, Expressly or Impliedly, Pursuant to a Theory of Secondary or Vicarious Liability.

Dr. Kapoor moves to exclude evidence of indirect, secondary or vicarious liability for regulatory and securities fraud. Dr. Kapoor points to two of my prior rulings in this case as support for his motion. In one, I denied Fujisawa's motion for leave to amend its complaint to add a Section 20(a) "controlling person" liability claim. *Fujisawa Pharm. Co. v. Kapoor,* 165 F.R.D. 79 (N.D.Ill.1996) [hereinafter *Fujisawa I* ]. In the other, I found that the so-called "Kapoor Policies" were not "persuasive to show Dr. Kapoor should have been aware ANDA fraud was occurring at Lyphomed." *Fujisawa Pharm. Co. v. Kapoor,* 16 F.Supp.2d 941, 950 (N.D.Ill.1998) [hereinafter *Fujisawa II* ]. Despite Dr. Kapoor's contentions, neither of those rulings precludes admission at trial of circumstantial evidence that might go to prove Dr. Kapoor's *scienter,* one of the elements of the alleged Rule 10b-5 violations that form the predicate of Fujisawa's civil RICO claim. *See Fujisawa II,* 16

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

F.Supp.2d at 945. The motion is denied.[FN5]

> FN5. Dr. Kapoor also argues that "recklessness, although sufficient to satisfy Rule 10b-5's intent element if [the Rule 10b-5 claim were] brought as a separate cause of action, is insufficient when violation of Rule 10b-5 is litigated [as here] solely as predicate racketeering activity in a RICO claim." (Def.'s Reply Mem. in Supp. of Mot. in Limine ¶ 8.) However, I already held in *Fujisawa II* that, for purposes of Fujisawa's RICO claim, *scienter* could be established with evidence of recklessness. 16 F.Supp.2d at 945; *see also United States v. Biasucci,* 786 F.2d 504, 512 (2nd Cir.1986) ("RICO imposes no additional *mens rea* requirement beyond that found in the predicate crimes").

### 12. Motion in Limine to Bar the Testimony and Report of Dr. Guyer.

*7 Dr. Kapoor moves to exclude the testimony and report of Fujisawa's expert Dr. Greg Guyer on grounds that Dr. Guyer is not qualified to provide an expert opinion on the issues at bar, and that his testimony would be unfairly prejudicial under Fed.R.Evid. 403. Under Fed.R.Evid. 702, expert testimony is admissible only if it "could assist the trier of fact in understanding the evidence or determining a fact in issue," and if the expert witness himself "is properly qualified to give the testimony sought." *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir.1996). Dr. Guyer is qualified to give the testimony sought here. He holds a doctorate in analytical chemistry from American University in Washington, D.C., and has ten years experience with the FDA in various roles, including two years in the FDA's Office of Generic Drugs where he led "a group of 27 scientists in evaluating the approvability ... of Abbreviated New Drug Applications (ANDAs) and Abbreviated Antibiotic Drug Applications (AADAs)." (Guyer Report at 1.) In addition, his testimony would assist the jury in understanding how the FDA would have viewed the allegedly false or misleading ANDAs that are a focus of this case. The motion is denied.

### 13. Defendant's Motion in Limine to Bar Evidence that Dr. Kapoor was an Inventor of Certain Patents.

Dr. Kapoor moves to exclude evidence that he was listed as an inventor on three patent applications. The applications, which apparently were filed during the time Dr. Kapoor was at Lyphomed, are for drugs other than those at issue in this case. Dr. Kapoor believes Fujisawa would use this evidence to try to show that Dr. Kapoor was involved in R & D laboratory work at Lyphomed and thus "must have been involved in the generation of data for submission in ANDAs." (Def.'s Mot. in Limine ¶ 1.) Dr. Kapoor contends his listing as a joint inventor on those applications is not necessarily an indication he did laboratory work, and thus it has no probative value or relevance in this case.

Under patent law, conception, which is "the touchstone of inventorship," does not necessarily require laboratory work. *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1227 (Fed.Cir.1994). That is particularly true where, as here, the patent lists joint inventors. *See Lert v. A.C. Nielsen Co.,* No. 92 C 2216, 1993 U.S. Dist. LEXIS 4277, at *13- *14 (N.D.Ill. Mar. 31, 1993) (one who merely "makes suggestions of practical value" may be joint inventor if his contribution is original). Nevertheless, Fujisawa is entitled to attempt to show that Dr. Kapoor's claim that he was involved only in the business side of the company is untrue. The fact that he is an inventor of three drugs during the relevant time period is arguably evidence to the contrary. Thus the evidence will not be excluded.

### 14. Defendant's Motion in Limine to Bar Plaintiff's Damages Expert from Testifying about Damages Apart from Certain Designated Consequential Damages.

*8 Dr. Kapoor moves to bar testimony or evidence about damage calculations other than certain consequential damages, and to bar the introduction of Fujisawa expert Dr. Frederick Dunbar's damages reports except for a certain portion. Dr. Kapoor argues that Dr. Dunbar's method for calculating all damages other than certain consequential damages is "junk science" and that his results therefore are unreliable and do not meet the test for admissibility under Fed.R.Evid. 702 as set forth in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). *Daubert* lists several factors that might "bear on [such an] inquiry," including: (1) whether a theory or technique "can be (and has been) tested"; (2) whether it has been "subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether there is "general acceptance" of the theory or technique within a "relevant scientific community." 509 U.S. at 592-94; *see also*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

*Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1175 (1999). Fujisawa has satisfactorily met its burden of showing its damages evidence meets those criteria. The motion is denied. [FN6]

> FN6. Dr. Kapoor also moves to strike the declaration of Dr. A. Craig MacKinlay that was attached as Exhibit D to Fujisawa's memorandum in opposition to Dr. Kapoor's Dunbar motion. Dr. Kapoor also moves to strike any portions of that memorandum related to the declaration, to bar Dr. MacKinlay from testifying at trial, and to bar Dr. Dunbar from relying on Dr. MacKinlay's declaration. Dr. Kapoor contends the declaration was untimely filed and therefore should be excluded pursuant to Fed.R.Civ.P. 26(a) and 37(c)(1). However, those rules apply (in this context) to persons "who may be used at trial to present evidence," Fed.R.Civ.P. 26(a)(1)(A), and Fujisawa has indicated Dr. MacKinlay "will not be called as a witness by Fujisawa to testify in any capacity at trial," (Fujisawa's Mem. in Opp'n to Def.'s Mot. in Limine at 8 n. 8). The motion to strike is denied.

15. Defendant's Motion in Limine To Bar Evidence of Conspiracy To Defraud, Particularly Hearsay Testimony Offered Pursuant to Federal Rule of Evidence 801(d)(2)(E).

Dr. Kapoor moves to bar evidence that he joined a conspiracy to engage in regulatory fraud, to violate the securities laws or to engage in a pattern of racketeering activity. Dr. Kapoor's motion appears aimed at a statement by former Lyphomed research chemist Bob Brown that Abu Alam told him "John [Kapoor] said" to normalize stability data. (Brown Dep. 428-29; Def.'s Mot. in Limine ¶ 2.) Fujisawa contends that statement is admissible under Fed.R.Evid. 801(d)(2)(E), which provides that a statement is not hearsay if it is made by "a coconspirator of a party during the course and in furtherance of the conspiracy." Dr. Kapoor argues that the 801(d)(2)(E) hearsay exception cannot be used because Fujisawa has not pleaded the existence of a conspiracy to commit regulatory fraud, nor does Fujisawa have corroborating evidence of a conspiracy (in addition to the statement at issue) as required under Fed.R.Evid. 801(d)(2).

Rule 801(d)(2)(E)'s coconspirator exception contains no requirement that conspiracy be alleged in the

complaint. *United States v. Godinez*, 110 F.3d 448, 454 (7th Cir.1997); *United States v. Conn*, 769 F.2d 420, 423 (7th Cir.1985). Further, Fujisawa points to several items of circumstantial evidence, *see United States v. Marquez*, 686 F.Supp. 1354, 1359-60 (N.D.Ill.1988), that it plans to introduce at trial to show that Dr. Alam and Dr. Kapoor were involved in a conspiracy to normalize data and submit fraudulent ANDAs to the FDA. That proffer of evidence is enough to warrant a preliminary determination of admissibility under Rule 801(d)(2)(E). *See id.* at 60. Actual admissibility will depend on sufficient evidence of a conspiracy. The motion is denied.

16. Defendant's Motion in Limine To Bar Evidence of Dr. Kapoor's Invocation of the Fifth Amendment in a Prior Separate Proceeding and Evidence of Non-Parties' Invocations of the Fifth Amendment.

*9 Dr. Kapoor moves to bar evidence of his invocation of the Fifth Amendment to the United States Constitution in his testimony before a congressional subcommittee investigating the generic drug approval process. Dr. Kapoor also moves to exclude evidence that former Lyphomed employees Dulal Chatterji, Diane Komos, and Dilip Shah asserted their Fifth Amendment privileges in their depositions in this case.

In a civil action the Fifth Amendment permits adverse inferences to be drawn against parties "when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The implication is that this rule applies to Fifth Amendment invocations that take place in the proceeding at hand, not in a separate proceeding. *See National Acceptance Co. v. Bathalter*, 705 F.2d 924, 929-30 (7th Cir.1983) (adverse inference would be appropriate if case went to trial and defendant "declined to answer a question and invoked his Fifth Amendment privilege"). However, Dr. Kapoor's invocation of the Fifth Amendment came in March 1991 during a congressional hearing that was prior to and separate from the instant case. Further, the questions put to Dr. Kapoor during that hearing are not "evidence" within the meaning of *Baxter*. *See id.* at 930 (holding that complaint not evidence for purposes of *Baxter* rule). Moreover, Dr. Kapoor was deposed at length by Fujisawa in the instant case. Hence, Fujisawa is not disadvantaged by being "unable to obtain discovery." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 n. 4 (7th Cir.1995). The motion is granted as to Dr. Kapoor's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

invocation of the Fifth Amendment.

As to the Fifth Amendment invocations of former Lyphomed employees in their depositions, adverse inferences may be drawn in such instances even though the persons invoking the privilege are nonparties. *Daniels v. Pipefitters' Ass'n Local Union No. 597, 983 F.2d 800, 802 (7th Cir.1993); FDIC v. Fidelity & Deposit Co., 45 F.3d 969, 977 (5th Cir.1995).* However, the question of whether a nonparty's refusal to testify may be used against a party is determined on a case-by-case basis, and depends on whether such an " 'adverse inference is trustworthy under all of the circumstances and will advance the search for truth." ' *Kontos v. Kontos, 968 F.Supp. 400, 406 (S.D.Ind.1997)* (quoting *LiButti v. United States, 107 F.3d 110, 124 (2nd Cir.1997)).* In this instance, that test is not met. *See Kontos, 968 F.Supp. at 407-08* (identity of interests is important element in trustworthiness of inference). The motion is granted as to the former Lyphomed employees' Fifth Amendment evidence as well.

17. Defendant's Motion in Limine to Bar Plaintiffs' Damages Expert from Testifying about his "Back-of-the-Envelope" Discounted Cash Flow Calculations in the Calculation of Damages for Purposes of Plaintiffs' RICO, Common Law Fraud and Warranty Claims.

Dr. Kapoor moves to bar use of Fujisawa expert Dr. Frederick Dunbar's Discounted Cash Flow ("DCF") calculations as themselves being damage calculations or as yielding damage numbers for Fujisawa's RICO, common law fraud, and breach of warranty claims. Dr. Kapoor also moves to bar related portions of Dr. Dunbar's rebuttal report.

**\*10** Dr. Dunbar used an Event Study Approach ("ESA") to determine Fujisawa's out-of-pocket damages arising from its purchase of Lyphomed stock, and he used a DCF analysis to validate the ESA results. Dr. Kapoor argues that in Dr. Dunbar's original and revised reports and in his deposition testimony, Dr. Dunbar indicated his DCF calculations were merely "back-of-the-envelope" calculations [FN7] and that he would not use a DCF approach to calculate any damages other than "impairment of assets" damages in the breach of fiduciary duty claim. (Def.'s Mot. in Limine ¶ 20.) Dr. Kapoor then argues that in Dr. Dunbar's (June 10, 1996) rebuttal report, he "made a complete turnabout" and "now seeks to introduce the [DCF] calculations" as "damage numbers." *Id.* ¶ 9. Dr. Kapoor points to portions of the rebuttal report indicating the DCF

analysis captures a subset of Fujisawa's total damages and that it establishes a minimum or lower bound for those damages, and he contends it would be prejudicial to admit such an "about-face" as evidence.

> FN7. Dr. Kapoor argues that because Dr. Dunbar refers to his DCF calculations as "back-of-the-envelope" calculations, they are therefore unsound. There is nothing other than such references that so indicate.

Dr. Kapoor's arguments are unpersuasive. The portions of the rebuttal report he finds objectionable give no indication Fujisawa plans to introduce DCF calculations as damages. Further, they are essentially consistent with his earlier position that the DCF analysis did not capture all the effects on the value of Lyphomed and that it was therefore used as a benchmark to validate the ESA results. (Dunbar [January 10, 1996] Report at 18; Dunbar Dep. at 35.) The motion is denied.

18. Defendant's Motion in Limine to Bar Evidence of Alleged "Kapoor Policies" Not Delineated in Fujisawa's Complaint.

Dr. Kapoor moves to exclude evidence pertaining to any purported "Kapoor policies" not specifically mentioned in Fujisawa's complaint, on grounds such evidence would be irrelevant and its probative value would be outweighed by the danger of undue prejudice. Amendment of a complaint to add claims or issues not previously mentioned should not be allowed after the close of discovery. *See Knapp v. Whitaker, 757 F.2d 827, 848-49 (7th Cir.1985).* However, it is questionable whether the addition of new "Kapoor policies" in this case would constitute a new claim or issue. [FN8] Further, granting Dr. Kapoor's request to bar "evidence of any management directive or ... 'Kapoor Policy' " not mentioned in Fujisawa's complaint. (Def.'s Mot. in Limine at 8), could conceivably exclude directives such as the one described in Lyphomed employee David Noll's (April 4, 1986) note, (Fujisawa's Opp'n to Kapoor's Mot. in Limine ¶ ¶ 2-4); *Fujisawa Pharm. Co. v. Kapoor, 16 F.Supp.2d 941, 946 (N.D.Ill.1998).* That note could be relevant to Dr. Kapoor's *scienter.* The motion is denied.

> FN8. Fujisawa has not indicated it plans to introduce evidence pertaining to new

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 9
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

"Kapoor policies." The instant motion is based on Dr. Kapoor's concern that "Fujisawa *may* seek to introduce" such evidence. (Def.'s Mot. in Limine ¶ 2.)

### 19. Defendant's Motion in Limine to Bar Reference to Third Party Shah Indictment.

Dr. Kapoor moves to bar any use of a 1993 indictment of former Lyphomed employee Dilip Shah to suggest Dr. Kapoor's fraudulent *scienter.* A federal grand jury in Maryland indicted Mr. Shah for FDA fraud based (in part) on his alleged normalization of data in 1985 or 1986 while he was at Quad Pharmaceuticals, Inc. ("Quad").[FN9] Another former Lyphomed employee, Dulal Chatterji, was named as an unindicted coconspirator. Mr. Shah and Mr. Chatterji were cofounders of Quad, a Lyphomed rival.

> FN9. There was no conviction of Mr. Shah on the count in which normalization was alleged as an overt act.

*11 "It is hornbook law that indictments cannot be considered as evidence," *United States v. Cox,* 536 F.2d 65, 72 (5th Cir.1976), especially in a civil case, *McGhee v. Joutras,* No. 94 C 7052, 1996 WL 706919, at *7 (N.D.Ill.Dec. 5, 1996) (Shadur, J.), and even more so where the defendant is not the person indicted, *id.*

Fujisawa asserts it does not intend to use the indictment "to establish or prove [Dr.] Kapoor's fraud or even to lay a foundation for his fraud." (Fujisawa's Mem. in Opp'n to Def.'s Mot. in Limine at 1-2.) However, Fujisawa indicates it does plan to use the indictment on cross-examination or in rebuttal to counter any argument Dr. Kapoor might make that normalizing data is acceptable. The motion is granted.

### 20. Defendant's Motion in Limine to Bar Bennett & Co. Reports and Testimony.

Dr. Kapoor moves to exclude the reports and testimony of consultants Bennett & Co. ("Bennett") and its employees, Dean Barlow and Martha Bennett, concerning Lyphomed's drug applications. Following its receipt of the FDA's (November 7, 1991) Form 483, Fujisawa hired Bennett to audit Lyphomed's drug applications. Dr. Kapoor claims the resulting audit reports were prepared in anticipation of

litigation and therefore are not subject to the business records hearsay exception. He also claims any testimony from Ms. Bennett or Mr. Barlow should be excluded because they lack "personal knowledge of the evidence underlying their opinions." (Def.'s Reply in Supp. of Mot. in Limine at 13.)

Although the Bennett reports may have had some usefulness in litigation, they were prepared in response to an FDA requirement that companies placed under the FDA's Applications Integrity Policy ("AIP") conduct a "credible internal review." Fraud, Untrue Statements of Material Facts, Bribery, and Illegal Gratuities, 56 Fed.Reg. 46191, at 46200 (1991). For purposes of Fed.R.Evid. 803(6), the reports were not prepared in anticipation of litigation. *See United States v. Frazier,* 53 F.3d 1105, 1110 (10th Cir.1995). Nevertheless, the Bennett reports do not meet the test for the business records exception under Rule 803(6). They were prepared in response to an abnormal circumstance and thus not in the normal course of Fujisawa's business. *See United States v. Lemire,* 720 F.2d 1327, 1350-51 (D.C.Cir.1983); *Datamatic Services, Inc. v. United States,* 909 F.2d 1029, 1032 (7th Cir.1990). Nor were they prepared in the normal course of Bennett's business. *See Paddack v.. Dave Christensen, Inc.,* 745 F.2d 1254, 1258 (9th Cir.1984); *cf. Frazier,* 53 F.3d at 1109-10 (report prepared by auditor *under contract to U.S. Labor Department* admitted under Rule 803(6) exception). Further, the reports were prepared several years after most of the alleged ANDA discrepancies occurred. *See Datamatic Services,* 909 F.2d at 1032.

Nor are the Bennett reports admissible under Fed.R.Evid. 1006. It is undisputed that the reports contain (at least in part) inadmissible hearsay. Thus they cannot be admitted under Rule 1006. *Paddack,* 745 F.2d at 1260; *Needham v. White Lab., Inc.,* 639 F.2d 394, 403 (7th Cir.1981).

*12 Moreover, neither Ms. Bennett nor Mr. Barlow (who are presented as fact witnesses, not experts) may testify about the audit reports. They lack the requisite personal knowledge and thus cannot meet the requirements of Fed.R.Evid. 602 and 701. *See Visser v. Packer Eng'g Associates, Inc.,* 924 F.2d 655, 659 (7th Cir.1991); *Kaczmarek v. Allied Chem. Corp.,* 836 F.2d 1055, 1060-61 (7th Cir.1987). The motion is granted.

### 21. Defendant's Motion in Limine to Bar Evidence of the FDA's and Fujisawa's Investigation of Regulatory

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Violations and Fujisawa's Conduct Relating to the
FDA's Applications Integrity Policy.

Dr. Kapoor moves to bar evidence of the FDA's
investigation of Fujisawa for regulatory violations,
and of actions taken by Fujisawa from 1991-1994 in
response to being placed under the FDA's
Application Integrity Policy ("AIP"). As a result of
an investigation that began in 1991, the FDA found
that several ANDAs submitted by Lyphomed
(Fujisawa's predecessor) contained false or
misleading information. That investigation led to
Fujisawa's being placed under the FDA's AIP, which
prompted Fujisawa to conduct its own review of
Lyphomed ANDAs. Dr. Kapoor now argues that
evidence of the FDA investigation and Fujisawa's
AIP actions is irrelevant to this case as well as
prejudicial.

The FDA and AIP evidence is relevant to whether
Lyphomed submitted false or misleading data to the
FDA, which is a central issue in this case. Further,
the evidence is not barred by Fed.R.Evid. 403, under
which relevant evidence "may be excluded if its
probative value is *substantially* outweighed by the
danger of *unfair* prejudice." (emphasis added). That
is not the case here. The motion is denied.

22. Defendant's Motion in Limine to Limit Evidence
Relating to Kapoor's Involvement in ANDAs to
Those that are "At Issue."

Dr. Kapoor moves to limit Fujisawa's evidence of Dr.
Kapoor's involvement in fraud to the 35 ANDAs "at
issue" as identified by Fujisawa in its second
amendment complaint. Dr. Kapoor contends such
evidence is irrelevant and lacking in probative value,
and would be unfairly prejudicial in part because Dr.
Kapoor has not had "full discovery" on those other
ANDAs. Dr. Kapoor also claims that such "other
ANDA" evidence is impermissible propensity
evidence that is barred by Fed.R.Evid. 404(b).

Dr. Kapoor's motion sweeps with too broad a brush.
It is conceivable that evidence relating to ANDAs
other than the 35 withdrawn by Fujisawa could go to
establish Dr. Kapoor's *scienter. See Fujisawa Pharm.
Co. v. Kapoor, 16 F.Supp.2d 941, 945 (N.D.Ill.1998)*
("Circumstantial evidence is sufficient to prove
scienter"). Further, Fujisawa asserts that all of the
exhibits it plans to offer in evidence were produced.
In addition, so-called "other crimes" evidence is
admissible under Fed.R.Evid. 404(b) to show intent,
knowledge or common scheme or plan. *See Jannotta*

*v. Subway Sandwich Shops, Inc., 125 F.3d 503, 517
(7th Cir.1997); United States v. Scop, 940 F.2d 1004,
1008-09 (7th Cir.1991).* Moreover, in this case the
probative value of such evidence is not substantially
outweighed by the danger of unfair prejudice. The
motion is denied.

Plaintiff Fujisawa's Motions

1. Fujisawa's Motion in Limine to Preclude Kapoor
from Arguing that Lyphomed's 1987-88 GMP
Problems Put Fujisawa on Notice of its Claims or are
Relevant to Issues of Materiality and Reliance.

**\*13** Fujisawa moves to exclude arguments that
Lyphomed's 1987-88 Good Manufacturing Practices
("GMP") problems put Fujisawa on notice of its
claims or that they are relevant to materiality or
reliance. Fujisawa contends I already noted "the
distinction between Lyphomed's 1987-88
*manufacturing problems* and the later-discovered
*ANDA fraud,"* and ruled that the manufacturing
problems "did not put Fujisawa on notice of its fraud
claims as a matter of law." (Fujisawa's Mot. in
Limine ¶ ¶ 2, 3); *Fujisawa Pharm. Co. v. Kapoor,* 16
F.Supp.2d 941, 944 & n. 6, 950 (N.D.Ill.1998).* That
argument lacks merit. In *Fujisawa,* I held there were
genuine issues of material fact as to notice, reliance
and materiality, and so denied much of Dr. Kapoor's
motion for summary judgment. *Fujisawa,* 16
F.Supp.2d at 945, 950.* Further, in upholding the
granting of summary judgment on Fujisawa's Rule
10b-5 claim, the Seventh Circuit pointed to several of
Lyphomed's 1987-88 problems that it found gave
Fujisawa "reason to believe that Kapoor had
deliberately concealed from it serious problems with
ANDAs." *Fujisawa Pharm. Co. v. Kapoor,* 115 F.3d
1332, 1335-36 (7th Cir.1997).* The evidence Fujisawa
seeks to exclude here might very well be relevant to
(and probative of) notice, materiality and reliance.
The motion is denied.

2. Fujisawa's Motion in Limine to Preclude
Reference to Certain Post-Acquisition Events.

Fujisawa moves to bar evidence of (1) the June 1998
sale of the Fujisawa USA, Inc. ("FUSA") generic
division to American Pharmaceutical Partners, Inc.
("APP"); (2) any expressions of interest or "offers to
purchase" FUSA's generic division prior to the June
1998 sale to APP; and (3) the alleged
mismanagement of FUSA's generic division by

Not Reported in F.Supp.2d                                                    Page 11
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Takashi Aoki following Fujisawa's acquisition of
Lyphomed. Fujisawa argues that such evidence is
irrelevant to damages and is not probative of that or
any other issue in this case.

In securities fraud cases, damages usually are
measured by "the difference between the price of the
stock and its value on the date of the transaction if the
full truth were known." *Associated Randall Bank v.
Griffin, Kubik, Stephens & Thompson, Inc.,* 3 F.3d
208, 214 (7th Cir.1993); *see also Katz v. Comdisco,
Inc.,* 117 F .R.D. 403, 408 (N.D.Ill.1987) ("out-of-
pocket rule [is] standard measure of damages in
securities fraud litigation"). Further, "[a]ny
fluctuations in price following the transaction do not
affect the calculation of damages." *Katz,* 117 F.R.D.
at 408; *cf. Cant v. A.G. Becker & Co.,* 379 F.Supp.
972, 975 (N.D.Ill.1974) (under "common sense" rule,
plaintiff cannot "avail himself of any further decrease
in the value of the security" after date when fraud
discovered, and "defendant should not be able to
avail itself of any increase in the value of the stock
after that date"). Hence, the 1998 sale of FUSA's
generic division to APP, occurring at least eight years
after Fujisawa's purchase of Lyphomed and long after
the alleged fraud was discovered, has no relevance to
Fujisawa's out-of-pocket damages.[FN10]

> FN10. For the same reason, Magistrate
> Judge Ashman denied Dr. Kapoor's motion
> to compel documents related to Fujisawa's
> sale of its generic drug division. Dr. Kapoor
> has moved to review and set aside that
> ruling. However, Dr. kapoor does not argue
> (nor do I conclude) that Judge Ashman's
> ruling was "clearly erroneous or contrary to
> law." Fed.R.Civ.P. 72(a); 28 U.S.C. §
> 636(b)(1)(A). That motion is denied. *See
> Weeks v. Samsung Heavy Indus. Co.,* 126
> F.3d 926, 943 (7th Cir.1997).

*14 For the same reason, offers to purchase
Fujisawa's generic drug division also are irrelevant to
Fujisawa's damages. That is all the more true because
they are merely offers, which are "indirect evidence"
that "do[es] not tend to show value." *Sharp v. United
States,* 191 U.S. 341, 348-49 (1903).

Evidence of the alleged mismanagement of FUSA's
generic division by Takashi Aoki also is not relevant
to damages, but it might be relevant to other issues.
At this point, it cannot be said that such evidence "is
clearly inadmissible for any purpose." *United States
v. Rusin,* 889 F.Supp. 1036, 1038 (N.D.Ill.1995).

The motion is granted as to the use, for purposes of
showing damages, of the June 1998 sale of FUSA's
generic division and of any expressions of interest or
offers to purchase that division prior to the 1998 sale.
The motion also is granted as to the use of
mismanagement evidence to show damages, but not
for other purposes.[FN11]

> FN11. Dr. Kapoor also raises the issue of
> evidence relating to Gallium Nitrate.
> Fujisawa does not seek to exclude such
> evidence, so that point is moot. Evidence of
> post-acquisition laboratory practices, also
> raised in Dr. Kapoor's response, is dealt with
> in a separate motion in limine.

3. Fujisawa's Motion in Limine to Preclude Kapoor
from Offering Certain "Expert" Testimony at Trial.

Fujisawa moves to bar (1) the testimony of Lowell
Sachnoff and William Weaver; (2) portions of the
testimony of Joel Davis and Dr. Gregg Jarrell; and
(3) any expert testimony of Dr. Raymond Warrell. As
to Dr. Warrell, Fujisawa contends his expert
testimony should be barred because Dr. Kapoor did
not identify him as an expert until October 9, 1998,
more than two years after the deadline. Dr. Kapoor
asserts that Dr. Warrell will testify only as a lay
witness and not as an expert. That portion of
Fujisawa's motion is therefore denied as moot.

Messrs. Sachnoff's and Weaver's opinions, however
disguised, are in reality legal opinions-indeed in
some parts contrary to rulings of this court. They are
excluded. This court will instruct the jury on the
applicable law.

Fujisawa objects to two portions of Mr. Davis'
testimony. Both are well taken. In his expert report,
Mr. Davis concludes: "Fujisawa appears to have
acquiesced in the FDA's initial position on
withdrawal of the ANDAs and asserted no significant
challenge either in the agency or in court." (Davis
Report at 10.) He adds that, "Based on my
experience, had Fujisawa more strongly asserted and
maintained its position, Fujisawa likely would have
prevailed." *Id.* Fujisawa argues correctly that Mr.
Davis has no special skill, experience, training or
education that would qualify him to draw such a
conclusion. Fed.R.Evid. 702; (Davis Dep. at 286-87,
289, 363-65, 370-72, 374-76); *see Benson,* 941 F.2d
at 604 (expert's opinion helpful "only to the extent
the expert draws on some special skill, knowledge or

Not Reported in F.Supp.2d                                                                    Page 12
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

experience").

At another point in his Rule 26 report, Mr. Davis states he has "found no evidence indicating that Dr. Kapoor directed, condoned or was aware of any misrepresentation or discrepancy in any ANDA at issue in this case." (Davis Report at 10.) Fujisawa contends correctly that it will be up to the jury to make this determination based on its evaluation of the evidence following the court's instruction. Mr. Davis' testimony on this part is neither necessary nor likely to be helpful.

**\*15** In Dr. Jarrell's rebuttal report, he criticizes the damages reports of Fujisawa's expert, Dr. Frederick Dunbar, and notes at one point: "The methodological flaws and errors in Dr. Dunbar's Event Study Approach preclude it from meeting the criteria set down by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786 (1993), for purportedly scientific or technical evidence which will assist the trier of fact ." (Jarrell Report at 3.) Admitting such a statement would allow the witness in effect to instruct the jury on a question of law. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir.1994); *Harbor Ins.*, 922 F.2d at 366. The motion is granted.

4. Fujisawa's Motion in Limine to Exclude Evidence of Harman Release.

Fujisawa moves to bar evidence of a release executed by Fujisawa in settlement of a 1988 class action lawsuit ("Harman suit") against Lyphomed and Dr. Kapoor, on the ground that the release is irrelevant. I have previously ruled that the Harman release is irrelevant to this suit. *Fujisawa Pharm. Co. v. Kapoor*, 16 F.Supp.2d 941, 951 (N.D.Ill.1998).

Fujisawa also seeks to bar evidence regarding the Harman litigation itself. I previously denied Dr. Kapoor's motion for summary judgment with respect to the statute of limitations on the RICO claim, concluding that there was an issue of fact as to whether Fujisawa was on notice of the ANDA violations earlier than August, 1988. Dr. Kapoor may still present this evidence at trial. Part of that evidence involves the Harman suit. The motion is therefore denied, except as to the release.

5. Fujisawa's Motion in Limine to Preclude Kapoor from Calling Eleven Character Witnesses at Trial.

Fujisawa moves to bar Dr. Kapoor from calling eleven witnesses that Fujisawa says Dr. Kapoor's counsel indicated are character witnesses. While Dr. Kapoor disputes that they are character witnesses, the description of their testimony indicates their purpose is to show that Dr. Kapoor will not act criminally in the future and whether he generally acts as alleged in the complaint. *E.g. Continental Casualty Co. v. Howard*, 775 F.2d 876 (7th Cir.1985), *cert. denied*, 475 U.S. 1122 (1986). As such, their testimony is not admissible.

6. Fujisawa's Motion in Limine to Preclude Reference to Certain Terms and Proposed Terms of the Merger Agreement.

Fujisawa moves to bar reference to Section 1.01 of the merger agreement (for the purchase of Lyphomed) and a proposed Section 4.15 that was not included in the final agreement. Fujisawa contends that, contrary to Dr. Kapoor's assertions, those sections are not relevant to materiality or reliance and therefore should be barred under Fed.R.Evid. 402 and 403. I have previously agreed. *Fujisawa v. Kapoor*, *supra*, 16 F.Supp.2d at 948-49. The motion is granted.

7. Fujisawa's Motion in Limine to Preclude Argument Regarding Contributory Negligence, Inadequate Due Diligence, Assumption of Risk, or Recklessness.

**\*16** Fujisawa moves to bar argument that it was contributorily negligent, failed to exercise due diligence, assumed the risk or acted recklessly as to Dr. Kapoor's alleged fraud. Fujisawa notes correctly that the defense of the buyer's contributory negligence or failure to exercise due diligence is not available in a securities fraud case. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 527, 528 (7th Cir.1985); *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1040 (7th Cir.1977). However, independent of that rule, where the plaintiff is "chargeable with the omitted information," *Sundstrand*, 553 F.2d at 1048, as where he "close[s] his eyes to a known risk," *Angelos*, 762 F.2d at 530, he cannot claim "he relied on or was deceived by the [seller's] lie," *id.* In order to establish that sort of "gross conduct" on the part of the plaintiff, recklessness must be shown. *Id.* at 529; *Sundstrand*, 553 F.2d at 1048. Therefore, the motion is denied as to recklessness.[FN12] This ruling does not, however, bar evidence related to Dr. Kapoor's statute of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 13

limitations defense.

> FN12. Fujisawa argues that Dr. Kapoor may not offer evidence of recklessness because he did not plead recklessness as an affirmative defense in his answer. However, Dr. Kapoor did plead a "reasonable care" (due diligence) defense, which may be amended to a recklessness defense. *See Elco Indus. v. Hogg,* 713 F.Supp. 1215, 1218 (N.D.Ill.1989) (Grady, J.)

### 8. Fujisawa's Motion in Limine to Preclude Evidence Regarding Post-Acquisition Laboratory Practices.

Fujisawa moves to bar evidence of the laboratory practices employed by Fujisawa USA, Inc. ("FUSA") after the acquisition of Lyphomed, and of FUSA's FDA submissions following that date. I need more information before this motion can be decided because the parties do not agree on the relevant dates and I am unsure what is included in Dr. Kapoor's evidence. By August 10, 1999, Dr. Kapoor shall provide the court with a list of all documents that he seeks to introduce on this issue, list the date of the document, and explain, if it is not self-evident from the date (Fujisawa says any such evidence came about in the year after it took control-before it could change ongoing practice-and the documents attached to the motion papers appear to substantiate that statement), how these documents prove his argument that Fujisawa continued prior practice after sufficient time to change the practice.

### 9. Fujisawa's Motion in Limine to Preclude Kapoor from Arguing that the *Medco* Decision Held Lyphomed's FDA Fraud to be "Reasonably Foreseeable."

Fujisawa moves to preclude argument that the court in *Medco Research, Inc. v. Fujisawa USA, Inc.,* Nos. 93 C 2705, 93 C 2724, 1994 WL 719220 (N.D.Ill.Dec. 21, 1994), held Lyphomed's alleged FDA fraud to be reasonably foreseeable. In that case, Medco Research, Inc. ("Medco") sought to terminate a 1988 contract with Fujisawa (Lyphomed) for joint development of the drug Adenoscan on grounds that Lyphomed failed to disclose information about its FDA regulatory problems. In granting Fujisawa's motion for preliminary injunction, the court in *Medco* held that Fujisawa's (Lyphomed's) "additional regulatory problems with the FDA resulting in delay to the Adenoscan" application were "reasonably

foreseeable." *Medco,* 1994 WL 719220, at *12. However, the *Medco* court did not hold that the specific ANDA fraud in this case was reasonably foreseeable. *Fujisawa Pharm. Co. v. Kapoor,* 16 F.Supp.2d 941, 950 n. 20 (N.D.Ill.1998). The motion is granted.[FN13]

> FN13. Dr. Kapoor also argues that Fujisawa's Rule 36 responses to requests for admission in *Medco* are admissible in this case. That argument is unpersuasive. Rule 36 states that "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding." Fed.R.Civ.P. 36(b).

### 10. Fujisawa's Motion in Limine to Preclude Reference to Statements Made in Settlement Negotiations.

*17 Fujisawa moves to bar any reference to statements made by Fujisawa representatives during settlement negotiations. Fujisawa's motion is aimed at a 1992 meeting between Dr. Kapoor and Takashi Aoki, then the president and CEO of Fujisawa USA, Inc. ("FUSA"), during which Fujisawa says it requested "a certain payment from [Dr .] Kapoor in settlement of its claims against him." (Fujisawa's Mot. in Limine ¶ 1.) Fujisawa contends evidence of statements made during that meeting are barred by Fed.R.Evid. 408, which excludes evidence of conduct or statements made during "compromise negotiations." Dr. Kapoor claims the meeting was an attempt by Fujisawa to extort $15 million from him in return for not reporting his alleged misconduct to authorities, and that it therefore cannot be termed settlement negotiations. Hence, Dr. Kapoor contends statements made during that meeting are not excluded by Rule 408. The meeting was held before the suit was filed in this case and the fact that Dr. Kapoor did not have counsel with him at the meeting is some indication that there had been no earlier discussion of a settlement of a dispute. The testimony in the record also tends to support Dr. Kapoor's view. Thus, Fujisawa has not made the requisite "substantial showing" that the meeting was part of a settlement attempt. *See Raybestos Products Co. v. Younger,* 54 F.3d 1234, 1241 (7th Cir.1995). However, even if Fujisawa did threaten to expose Dr. Kapoor if he did not make the requested payment to Fujisawa, Dr. Kapoor has not shown that evidence is relevant to any issue in this case. The motion is granted.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

11. Fujisawa's Motion in Limine to Preclude
Reference to Crimes or Bad Acts.

Fujisawa moves to bar evidence of: (1) its 1998
guilty plea in a price-fixing conspiracy involving
sodium gluconate, an organic chemical used as an
industrial cleaning agent; and (2) a 1983 industrial
espionage investigation in which several Fujisawa
employees reportedly were arrested on charges of
illegally obtaining drug development data from
Fujisawa's competitors. Fujisawa contends such
evidence is inadmissible under Fed.R.Evid. 404(b),
which bars evidence of prior bad acts to show a
propensity to engage in wrongdoing. Fujisawa notes
that the 1983 industrial espionage matter involved
conduct and employees unrelated to the instant case,
and that the antitrust plea focused on events that took
place long after Fujisawa acquired Lyphomed, and
involved a product and a division (Chemicals
Division) separate from the instant case. Fujisawa
thus argues that the purpose for introducing such
evidence could only be to show Fujisawa's alleged
propensity to commit wrongdoing. See United States
v. Brooks, 125 F.3d 484, 499-500 (7th Cir.1997).

However, Dr. Kapoor asserts such evidence would be
offered only to impeach the credibility of Fujisawa's
witnesses who testify as Fujisawa's representatives,
and thus would be admissible under Fed.R.Evid.
608(b) and 609(a). The difficulty with such an
assertion is that Rule 608(b) refers to "the conduct of
a witness," and Rule 609(a) applies to "evidence that
a witness other than an accused has been convicted of
a crime." In the instant case, it is undisputed that
none of Fujisawa's trial witnesses was implicated in
the industrial espionage incident and that none has
been convicted of any crime. Further, Fujisawa
asserts that Fujisawa itself, as a corporation, is not a
witness.[FN14] The motion is granted, with questions as
to whether such evidence might be admissible under
Fed.R.Evid. 405(a) to be answered at trial, depending
on whether Fujisawa's witnesses testify as to the
company's good character.

> FN14. Dr. Kapoor argues that high-ranking
> Fujisawa officials such as Takashi Aoki and
> Dr. Tomikochiro Fujisawa are the alter egos
> of the corporation and should therefore be
> subject to impeachment under Rules 608 and
> 609. There is no evidence offered to support
> this assertion.

12. Fujisawa's Motion in Limine to Preclude
Statements Regarding the Availability of Treble
Damages and Attorneys' Fees.

*18 Fujisawa moves to bar any reference to the fact
that treble damages and attorneys' fees are
recoverable in its claim under the Racketeer
Influenced and Corrupt Organizations Act ("RICO"),
18 U.S.C. § 1964(c). RICO's treble damage
provision "is irrelevant to a jury's deliberations and
may confuse or prejudice the jury." Liquid Air Corp.
v. Rogers, 834 F.2d 1297, 1308 n. 7 (7th Cir.1987).
Such evidence therefore is properly excluded from
the jury. [FN15] Id. The motion is granted.[FN16]

> FN15. Dr. Kapoor argues that Fujisawa
> should not be permitted to recover both
> treble damages under RICO and punitive
> damages under its common law fraud claim.
> Dr. Kapoor contends that if he is found
> liable under RICO and if Fujisawa then
> argues for punitive damages, Dr. Kapoor
> should be allowed to inform the jury of
> RICO's treble damages provision. A plaintiff
> may recover both RICO treble damages and
> state law punitive damages for the same
> conduct. Neibel v. Trans World Assurance
> Co., 108 F.3d 1123, 1131 (9th Cir.1997).
> Accordingly, that is not a basis for relaxing
> the rule barring evidence of RICO treble
> damages.

> FN16. Both parties are barred from making
> statements about payment of attorneys' fees.

*Additional Motions*

1. Defendant's Motion to Review and Set Aside the
Magistrate's Ruling on Defendant's Motion to
Compel the Deposition of Plaintiff's Expert Dr.
Frederick Dunbar.

Dr. Kapoor moves to review and set aside Magistrate
Judge Ashman's order denying Dr. Kapoor's motion
to compel the deposition of Fujisawa expert Dr.
Frederick Dunbar. As Dr. Kapoor correctly notes, the
basis for Judge Ashman's denial of the original
motion was that the request was untimely and Dr.
Kapoor therefore waived his right to depose Dr.
Dunbar. Further, the arguments Dr. Kapoor presents
in the instant motion are essentially the same as those
he presented to Judge Ashman. I find nothing to
indicate Judge Ashman's order was "clearly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 15

erroneous or contrary to law." Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). The motion is denied.

### 2. Defendant's Motion to Strike the "Rebuttal Report" of Plaintiffs' Expert Dr. Randolph Steer.

Dr. Kapoor seeks an order striking the rebuttal report of Fujisawa expert Dr. Randolph Steer, or in the alternative permission to take his deposition. Dr. Kapoor argues that Dr. Steer's rebuttal report does not state clearly which of Dr. Kapoor's expert witness opinions it is meant to rebut, and hence fails to satisfy Rule 26, which requires "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed.R.Civ.P. 26(a)(2)(B). However, under Rule 26 there is no requirement that a rebuttal report identify the specific expert meant to be rebutted. Second, Dr. Steer's report focuses on due diligence exercised by acquirers of drug companies in the 1980s. It is not difficult to see that Dr. Steer's report is meant to rebut Dr. Kapoor's experts (William Weaver and Dr. Christopher Rhodes) who opine on that subject. Further, contrary to Dr. Kapoor's contention, Dr. Steer's report does provide a complete statement of the opinions to be expressed "and the basis and reasons therefor." Fed.R.Civ.P. 26(a)(2)(B). Dr. Kapoor emphasizes the brevity of Dr. Steer's report, but conciseness is not necessarily an indication that the report is incomplete.

Dr. Kapoor also contends his August 1998 request to depose Dr. Steer was not untimely, but his arguments are essentially the same as those in his motion to compel the deposition of Fujisawa expert Dr. Frederick Dunbar (and in his motion to reverse the denial of that motion). Both Dr. Dunbar's and Dr. Steer's rebuttal reports were served in June 1996. It is understandable that Dr. Kapoor did not pursue the depositions of either Dr. Dunbar or Dr. Steer following the (July 25, 1996) granting of summary judgment for Dr. Kapoor and the dismissal of Fujisawa's claims. _Fujisawa Pharm. Co. v. Kapoor,_ 936 F.Supp. 455 (N.D.Ill.1996), _rev'd in part,_ 115 F.3d 1332 (7th Cir.1997). However, Fujisawa's RICO and state law claims were reinstated in July 1997, and 13 months elapsed before Dr. Kapoor's request to depose Dr. Steer. The request is untimely. The motion is denied.

### Conclusion

\*19 For the foregoing reasons, the motions in limine and Dr. Kapoor's additional motions are granted in part and denied in part.

N.D.Ill.,1999.
Fujisawa Pharmaceutical Co., Ltd. v. Kapoor
Not Reported in F.Supp.2d, 1999 WL 543166 (N.D.Ill.)

END OF DOCUMENT

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1994 WL 270252 (N.D.Ill.), 32 U.S.P.Q.2d 1535, 40 Fed. R. Evid. Serv. 13
**(Cite as: Not Reported in F.Supp.)**

**H**

C.R. Bard, Inc. v. M3 Systems, Inc.
N.D.Ill.,1994.

United States District Court, N.D. Illinois, Eastern
Division.
C.R. BARD, INC., Plaintiff-Counterdefendant,
v.
M3 SYSTEMS, INC., Defendant-Counterclaimant.
**No. 93 C 4788.**

June 16, 1994.

*MEMORANDUM OPINION AND ORDER*
CONLON, District Judge.
*1 C.R. Bard, Inc. ("Bard") sues M3 Systems, Inc.
("M3 Systems") for patent infringement.    M3
Systems counterclaims for inequitable conduct and
Sherman Act violations.   Bard files three motions *in
limine* to preclude evidence from trial.[FN1]

*DISCUSSION*

1. Motions *In Limine*

The court excludes evidence on a motion *in limine*
only if the evidence clearly is not admissible for any
purpose.    *See Hawthorne Partners v. AT & T
Technologies, Inc., 831 F.Supp. 1398, 1400
(N.D.Ill.1993).* Although the court may bar
evidence before trial, motions *in limine* are
disfavored.     Instead, admissibility questions
generally should be ruled upon as they arise at trial.
*See Scarboro v. Travelers Ins. Co., 91 F.R.D. 21, 22
(E.D.Tenn.1980).* Accordingly, if evidence is not
clearly inadmissible, evidentiary rulings must be
deferred until trial so questions of foundation,
relevancy, and prejudice may be resolved in context.
*See Hawthorne Partners, 831 F.Supp. at 1401.*

Denial of a motion *in limine* does not mean that all
evidence contemplated by the motion will be
admitted at trial.   Rather, denial of the motion means
only that without the context of trial the court is
unable to determine whether the evidence in question
should be excluded.    *See United States v. Connelly,
874 F.2d 412, 416 (7th Cir.1989).*  Thus, Bard must
meet a heavy burden to prevail on its motions *in

*limine.*

2. Prior Inequitable/Criminal Conduct

Bard moves to preclude evidence regarding one of its
patents (unrelated to the patents at issue in the present
case) that was found to be unenforceable due to
inequitable conduct before the United States Patent
Office.    Bard also moves to preclude evidence
concerning its criminal indictment and corporate
guilty plea for selling medical equipment (also
unrelated to this case) without the approval of the
United States Food and Drug Administration
("FDA").   Bard contends that evidence regarding the
unenforceable patent and the indictment and guilty
plea is irrelevant to this suit.

In August 1993, the Federal Circuit ruled that Bard's
patent on a steerable guidewire used by cardiologists
in angioplasty procedures was unenforceable due to
Bard's inequitable conduct before the patent office.
*See C.R. Bard, Inc. v. Advanced Cardiovascular
Systems, Inc., 28 U.S.P.Q.2d 1852 (Fed.Cir.1993).*
The Federal Circuit upheld the district court's
findings that Bard had withheld information from the
patent office and had made false and misleading
statements.   *Id. at 1856.*  The patents at issue in this
suit do not relate to angioplasty procedures.  Rather,
they involve spring-loaded tissue sampling devices
and biopsy needles.   Bard acknowledges its past
inequitable conduct, and argues that evidence of its
prior conduct is irrelevant to this suit.

In October 1993, Bard was indicted for selling
angioplasty heart catheters without FDA approval.
In December 1993, Bard pled guilty in its corporate
capacity to a number of charges relating to its
federally unapproved sales. [FN2] The criminal charges
did not involve the patents at issue in this suit.  Bard
contends that the charges stemming from its illegal
activities are irrelevant to its claim of patent
infringement, and to M3 Systems' defenses and
counterclaims.   Bard also claims that the evidence
may not be introduced to impeach its witnesses.

a. Prior bad acts

*2 Bard insists that evidence of its past inequitable
and criminal conduct ("the prior bad acts evidence")

Not Reported in F.Supp.                                                                                           Page 2
Not Reported in F.Supp., 1994 WL 270252 (N.D.Ill.), 32 U.S.P.Q.2d 1535, 40 Fed. R. Evid. Serv. 13
(Cite as: Not Reported in F.Supp.)

is inadmissible because it is proffered for the improper purpose of proving Bard's propensity to commit bad acts. *See* Fed.R.Evid. 404(a). M3 Systems responds that it does not proffer the evidence to prove Bard's character, but instead seeks to introduce the evidence to establish knowledge, intent, and absence of mistake. *See* Fed.R.Evid. 404(b).[FN3] Bard's position is more persuasive.

Under Rules 404(a) and (b), prior bad acts evidence is generally inadmissible to prove a party's character. However, pursuant to Rule 404(b), evidence of past crimes or other bad acts may be admissible for a purpose other than proving conduct in conformity with a bad character trait. [FN4] In particular, evidence may be admitted to show motive, knowledge, intent, or absence of mistake. Although the burden is generally on the movant (Bard) to exclude evidence, the burden is on the proponent of the evidence (M3 Systems) to establish that prior bad acts evidence is admissible.

To establish the admissibility of the evidence, M3 Systems must show that: (1) the evidence is directed at a matter in issue other than Bard's character; (2) the evidence is similar enough and recent enough to be relevant; (3) the evidence is substantial enough that a jury could find "that the act occurred and that [Bard] was the actor"; and (4) the probative value of the evidence is not outweighed by the potential for unfair prejudice to Bard. *See United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984); *Huddleston v. United States,* 485 U.S. 681, 686-89 (1988). Unless M3 Systems meets these standards, the evidence is inadmissible.

### i. Intent/absence of mistake

M3 Systems contends that evidence of Bard's prior bad acts is proffered to prove Bard's intent and lack of mistake-as part of M3 Systems' inequitable conduct defense and antitrust counterclaim. According to M3 Systems, Bard's prior conduct is probative of Bard's intentional conduct in this case. M3 Systems also asserts that evidence of Bard's prior bad acts suggests a lack of mistake in Bard's dealings with the patent office in this case.

M3 Systems purports to proffer the prior bad acts evidence to show intent and lack of mistake. However, the evidence more accurately suggests Bard's bad character. M3 Systems argues that Bard's past conduct before the patent office suggests that it intentionally committed misconduct before the patent

office in this case. In effect, M3 Systems maintains that Bard's prior bad acts imply that it was more likely to act improperly in this case. In addition, M3 Systems' contends that the prior bad acts evidence shows a lack of mistake in Bard's dealings with the patent office in this case. Once again, M3 Systems proffers the prior bad acts evidence to suggest Bard's probable behavior in this case. In each instance, M3 Systems seeks to use the prior bad acts evidence to prove Bard's character (and likely action in conformity therewith). Rule 404(a) bars the use of evidence for this purpose.

### ii. Willfulness

*3 M3 Systems contends that the prior bad acts evidence is relevant and admissible as part of its lack-of-willfulness defense. Bard sues M3 Systems for willful patent infringement. As an affirmative defense, M3 Systems asserts that any purported infringement could not have been willful because M3 Systems relied on the advice of counsel.

M3 Systems maintains that its counsel's opinions were based in part on Bard's prior bad acts. M3 Systems insists that its counsel was aware of Bard's prior bad acts and reasoned that Bard's patents most likely were unenforceable because of its previous indictment and past problems before the patent office. M3 Systems' position is untenable. Reliance on the advice of counsel may be a colorable defense in certain circumstances. However, the reliance-as well as the advice-must be reasonable.

In this case, it may have been reasonable for M3 Systems to rely upon its counsel's opinion. However, it was unreasonable for M3 System's counsel to conclude that Bard's patents were unenforceable simply because one of Bard's other patents was found to be unenforceable and because Bard pled guilty to unrelated criminal conduct. In asserting its lack-of-willfulness defense, M3 Systems may present the other bases for its counsel's opinion, but it may not introduce evidence of Bard's prior bad acts.[FN5]

### b. Impeachment

Bard also moves to exclude evidence of its indictment and its inequitable conduct for the purposes of impeachment. Bard expects to call a number of its employees as witnesses. According to M3 Systems:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1994 WL 270252 (N.D.Ill.), 32 U.S.P.Q.2d 1535, 40 Fed. R. Evid. Serv. 13
**(Cite as: Not Reported in F.Supp.)**

Each of these parties is beholden to BARD, as an employee or agent. As such, they are testifying not only in their personal capacities, but also on behalf of and in the best interests of BARD.

Response-Inequitable at 12. M3 Systems argues that it is "entitled to impeach these witnesses for bias and credibility, including inquiries into the criminal acts of their corporation." Response-Guilty at 11. Bard responds that the witnesses have no connection with or knowledge of Bard's indictment or inequitable conduct. Thus, Bard reasons that the evidence "is in no way probative of the truthfulness of these individual prospective trial witnesses." Motion-Guilty at 8. Bard's position is convincing.

Under Fed.R.Evid. 608 and 609, a witness may be impeached through the use of collateral evidence-including evidence of past criminal conduct. However, such evidence must concern the witness, not the witness' employer; the rules refer to the *witness'* credibility and to the *witness'* conviction of a crime. There is no rational connection between the acts of a corporation and the truthfulness of its employees (other than the employees who were directly involved in the improper activities). Although certain witnesses work for Bard, they are not identical to the corporation itself. Moreover, there is no indication that the witnesses were involved in Bard's prior bad acts-questioning them regarding Bard's prior conduct would be fruitless and prejudicial. M3 Systems may not impeach Bard's witnesses by introducing unrelated evidence regarding Bard's prior conduct.

### 3. Antitrust Damages

*4 Bard moves to exclude evidence relating to M3 Systems' antitrust damages. Bard contends that the damages evidence was not produced during discovery. Discovery closed on April 15, 1994. On March 16, 1994 (precisely 30 days before the close of discovery), Bard served the following request for production of documents upon M3 Systems:
10. All documents concerning [M3 Systems'] alleged damages caused by [Bard's] alleged violations of § 2 of the Sherman Act....

On April 15, 1994 (the final day of discovery), M3 Systems served the following response to Bard's discovery request:All documents have been or will be produced, without waiver of any objections.

No documents were produced in response to the request before the close of discovery.

On May 13, 1994, the parties exchanged drafts of the final pretrial order. At that time, M3 Systems disclosed to Bard the bases for its antitrust damages. M3 Systems disclosed that it would rely upon legal expenses incurred in defending this action, costs of replacing its biopsy needle and other equipment, and past and future lost sales and profits. The documents M3 Systems produced before the close of discovery failed to support all of these claimed damages. Moreover, M3 Systems failed to designate expert witnesses to testify regarding these claimed damages before the close of discovery. Bard claims that it would be severely prejudiced if M3 Systems were permitted to present evidence despite its failure to timely comply with discovery requests.

M3 Systems responds that Bard fails to show prejudice for the untimely disclosures. M3 Systems reasons that because Bard did not request documents regarding antitrust damages until the end of discovery, it could not have pursued additional discovery after receiving the documents. In addition, M3 Systems notes that Bard did not seek a Local Rule 12(k) conference to resolve the discovery dispute nor did it move to compel production. M3 Systems asserts that if Bard had demanded immediate production, it would have produced the requested documents forthwith. Thus, M3 Systems contends that although it produced the documents more than a month after the close of discovery (on May 27, 1994), Bard has not been prejudiced.

M3 systems also insists that its designated experts should be permitted to testify. M3 Systems has designated Manfred Mittermeier, Werner Mittermeier, and Wayne Black, three of its own employees. All three were deposed before Bard sought discovery regarding antitrust damages. M3 Systems contends that it was not required to disclose summaries of its experts' testimony because they were not "retained or specially employed to provide expert testimony in the case, [nor do their duties] regularly involve giving expert testimony." *See* Fed.R.Civ.P. 26(a)(2)(B).

Despite M3 System's untimely production of damages documents, the evidence is not excluded. Given Bard's last minute production request, M3 Systems has shown that its late production is harmless. Although M3 Systems produced damages documents over a month late, it alerted Bard on the final day of discovery that it might produce additional documents in the future.[FN6] In response to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 4
Not Reported in F.Supp., 1994 WL 270252 (N.D.Ill.), 32 U.S.P.Q.2d 1535, 40 Fed. R. Evid. Serv. 13
**(Cite as: Not Reported in F.Supp.)**

M3 Systems' notice, Bard did not object, seek a Rule 12(k) conference, or move to compel. Bard cannot now move to exclude evidence that it did not diligently seek to procure. Moreover, in light of the order dividing the trial into four segments, the parties have been directed to revise the pretrial order. Bard now has in its possession all of the documents necessary for devising its trial strategy.[FN7]

## CONCLUSION

**\*5** For the foregoing reasons, the motions to exclude evidence of prior unenforceable patent and corporate guilty plea are granted. The motion to exclude evidence regarding antitrust damages is denied.

> FN1. The court has determined that the trial will proceed in four distinct stages: (1) M3 Systems' alleged infringement of Bard's patents; (2) the validity of Bard's patents; (3) Bard's alleged antitrust violations; and (4) if necessary, patent infringement or antitrust damages. *See* Memorandum Opinion and Order, No. 93 C 4788 (N.D.Ill. Jun. 7, 1994) at 2 and n. 1.

> FN2. Several of Bard's corporate officers were named in the indictment, but have not pled guilty. None of the officers under indictment is scheduled to testify at this trial.

> FN3. M3 Systems apparently concedes that the evidence is not directly relevant to Bard's conduct regarding the patents at issue in this suit.

> FN4. Rule 404 provides in pertinent part: (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion.... (b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404.

> FN5. In light of the finding that the prior bad acts evidence is not directed toward establishing a matter in issue other than character, it is not necessary to reach the remaining criteria for admissibility under Fed.R.Evid. 404(b). However, it is clear that the probative value of the prior bad acts evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues.

> FN6. On the final day of discovery, M3 Systems responded to Bard's discovery request by stating that "all documents have been *or will be* produced." (Emphasis added.)

> FN7. However, Bard is justified in demanding summaries of M3 Systems' expert testimony. Under the Local Rules, the final pretrial order must contain, *inter alia:*
> stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand.
> *See* N.D.Ill. Standing Rule Establishing Pretrial Procedure 8(e). In addition, M3 Systems may propound the testimony of only one expert on the antitrust damages issue. *Id.* n. 8. M3 Systems' experts may be precluded from testifying if M3 Systems fails to comply with the Local Rule.

N.D.Ill.,1994.
C.R. Bard, Inc. v. M3 Systems, Inc.
Not Reported in F.Supp., 1994 WL 270252 (N.D.Ill.), 32 U.S.P.Q.2d 1535, 40 Fed. R. Evid. Serv. 13

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2007, I caused a copy of the foregoing

document to be served upon the persons listed below in the manner indicated:

<u>**VIA E-MAIL & FIRST CLASS MAIL**</u>    <u>**VIA HAND DELIVERY**</u>

John A. Adams, Esq.
Susanin Widman & Brennan, P.C.
455 S. Gulph Road, Suite 240
King of Prussia,  PA  19406

John D. Demmy, Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington,  DE  19801

Louis S. Mastriani, Esq.
Rodney R. Sweetland, III, Esq.
David F. Nickel, Esq.
Adduci,Mastriani & Schaumberg, LLP
1200 Seventeenth Street, N.W.
Fifth Floor
Washington,  DC  20036-3006

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. Maguire, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington,  DE  19801

<u>/s/ Brian A. Sullivan</u>
Brian A. Sullivan (#2098)