UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., a Delaware Corporation, | : : : | |
| Plaintiff, | : : | C.A. No.06-55-GMS |
| v. | : : : | |
| DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a/k/a CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation, | : : : : : : | |
| Defendants. | : : : | JURY TRIAL DEMANDED |

**TRIAL BRIEF OF DEFENDANT DAVID C. WALDMANN**

                                                                                                                John D. Demmy (#2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

John A. Adams, Esquire
Adam C. Gerber, Esquire (#4653)
Susanin, Widman & Brennan, PC
455 South Gulph Rd., Ste 240
King of Prussia, PA 19406

Attorneys for David C. Waldmann

Date: May 2, 2007

**TRIAL BRIEF OF DEFENDANT DAVID C. WALDMANN**

Defendant David C. Waldmann ("Waldmann"), by his attorneys, hereby submits the following trial brief as Supplement "I" to the Pretrial Order:

**I.    NATURE OF THE CASE**

Waldmann incorporates by reference as set forth in its entirety, the Nature of the Case in NMT Defendants' Trial Brief. In addition thereto, Waldmann adds the follow:

This is a simple employment case which has spiraled out of control into a frivolous Trade Secrets claim by Waldmann's former employer, Tesla, in retaliation for Waldmann's complaints about not being paid his wages and commissions. In October 2005, Waldmann requested commissions for the Third Quarter of 2005. Instead of paying said commissions and in an effort to avoid is obligations to do so, Waldmann was falsely accused by Tesla of wrongdoing. Apparently, thereafter, Tesla began an intensive investigation to find something that Waldmann had done wrong in order to avoid having to pay Waldmann his commissions. As part of that investigation, Tesla, without Waldmann's permission or knowledge, accessed one of Waldmann's private e-mail accounts in violation of state and federal laws. The password and user name for the private e-mail account was in an e-mail that was on Tesla's server.

On November 28, 2005, Tesla suspended Waldmann with pay – presumably to ensure his cooperation in their ongoing investigation. Notwithstanding the undisputed fact that he was suspended with pay, Tesla failed to pay him his wages. Waldmann complained to Tesla and eventually Waldmann received his pay for December 2005. At that time, in accordance Delaware law, Waldmann requested access to his personnel file.

On January 23, 2007, Waldmann complained to the Delaware Department of Labor that Tesla had not paid him wages for January, that he had not been paid his Third or Fourth Quarter 2005 Commissions, and that Tesla had not provided him access to his personnel file. It is undisputed that on January 23, 2007, an agent from the Department of labor called Tesla's President concerning the foregoing. In response thereto, Waldmann received a copy of part of his personnel file, via federal express on January 24, 2007. In retaliation for Waldmann's complaint to the Department of Labor, Tesla filed the instant action on January 27, 2007.

## II.  CONTESTED FACTS THAT DEFENDANT WALDMANN EXPECTS TO ESTABLISH AT TRIAL

The contested facts are set forth in an attachment to the Final Pretrial Order, in accordance with the standing orders.

## III.  THEORY OF LIABILITY OR DEFENSE

Waldmann incorporates by reference as set forth in its entirety, Sections 3A and 3B from NMT Defendants' Trial Brief, substituting "Waldmann" for "NMT". In addition thereto, Waldmann adds the following.

### A.  Tesla's Claim of Breach of Contract

While Waldmann admits that he signed a Non-Disclosure Agreement and a Policy on Access to Tesla's Technical Resources,[1] Tesla claims that Waldmann violated these agreements by the same conduct alleged in Tesla's Count I. Accordingly, this claim is preempted by the Delaware Trade Secrets Act. *See* 6 Del. C. § 2007(a). Moreover, even if it is not preempted, the evidence will show that Waldmann did not breach the agreements as set forth in NMT's Brief regarding the misappropriation of trade secrets. Furthermore, the agreements were drafted

---

[1] Waldmann disputes whether this Policy forms a contract.

by Tesla, Tesla had superior bargaining power, and they were given to Waldmann without negotiations. In addition, the terms were not explained to Waldmann, the terms were not specific as well as ambiguous and confusing, and Tesla failed to train Waldmann on its expectations. Notwithstanding any terms of the agreements, by its acts, Tesla also modified the agreements and/or interfered with Waldmann's ability to comply with the agreements. Finally, Tesla has not been damaged by any alleged breach of the agreements by Waldmann.

### B. Tesla's Claim of Conversion

Tesla claims that Waldmann converted a small piece of scrap nylon cord which Waldmann give to one of Tesla's military clients. Tesla also claims that Waldmann converted Tesla trade secrets based on the same conduct set forth in Count I. Accordingly, this claim is preempted by the Delaware Trade Secrets Act. *See* 6 Del. C. § 2007(a). Moreover, even if it is not preempted, the evidence will show that Waldmann did not convert any property belonging to Tesla for his own personal benefit. See NMT's Brief regarding the misappropriation of trade secrets.

### C. Tesla's Claim of Tortious Interference with Prospective Contractual Relations

Tesla claims that Waldmann interfered with a prospective contractual relationship. During the aftermath of hurricane Katrina, an agent from FEMA contacted Tesla about immediately supplying tiny batteries. Tesla sent an e-mail to one of the NMT Defendants providing them with contact information with regard to the agent to see if NMT Defendants could supply the batteries to FEMA. Waldmann told the NMT Defendant that FEMA might be interested in the DC Impact wrench. It is undisputed that Tesla does not make the tiny battery,

the DC Impact Wrench, or any similar product. The NMT Defendant never sold the tiny battery or the Impact Wrench to FEMA. Accordingly, this claim is without merit.

### D. Waldmann's Claims of Violation of the Delaware Wage Payment Law

Waldmann claims that Tesla failed to pay him his wages and commission as required by the Delaware Wage Payment Law. It is undisputed that Waldmann was earning a salary of $3,076.92 bi-weekly, that in addition to his salary he was to be paid commissions, that he was not paid Third and Fourth Quarter 2005 Commissions, and that he was not paid his salary from January 1 to January 28, 2006. It is also undisputed that on November 29, 2005, Waldmann was suspended from his position with Tesla with pay and that he was terminated on January 28, 2006 (retroactive to January 1, 2006) after making a complaint to the Delaware Department of Labor about Tesla's failure to pay him his wages and commissions. The Delaware Department of Labor notified Tesla of Waldmann's complaint on January 23, 2006.

19 Del.C. § 1102 requires "[e]very employer shall pay all wages due within 7 days from the close of the pay period in which the wages were earned."[2] Pursuant to 19 Del.C. §1103, if an employer "fails to pay an employee wages, as required under this chapter, the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and Legal Holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller." Waldmann may bring a civil action to recover the unpaid wages and liquidated damages in any court of competent jurisdiction and the award shall include an

---

[2] "Wages" "means compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, **commission** or other basis of calculation". 19 Del.C. § 1101

award for the costs of the action, the necessary costs of prosecution and reasonable attorney's fees, all to be paid by the defendant pursuant to 19 Del.C. §1113.

Tesla claims that they do not have to pay his wages and commissions because of the damages that Waldmann caused Tesla as set forth in Tesla's Complaint. Notwithstanding Tesla's position, 19 Del.C. §1107 states that "no employer may withhold or divert any portion of an employee's wages unless: (1) It is required or empowered to do so by state or federal law; (2) The deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employers' books; or (3) The employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee."

In Count III, Mr. Waldmann claims that Tesla terminated his employment because he filed a claim for unpaid commissions and salary with the Delaware Department of Labor as set forth above. Delaware's wage payment law also prohibits an employer from retaliating against an employee for filing a complaint with the Department of Labor. Retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor. On January 28, 2006, Tesla, in retaliation for Waldmann's complaint to the Department of Labor, terminated Waldmann's employment retroactive to January 1, 2006..

### E.  ERISA

As an employee of Tesla, Waldmann had group health and dental medical coverage. At the time of Waldmann's termination of employment on January 28, 2006, Waldmann was covered by Tesla's group health insurance policy. Waldmann claims, and Tesla does not

dispute, that Tesla did not allow him to elect medical and dental continuation coverage under COBRA.

Tesla claims that it did not have to provide continuation coverage because Waldmann was terminated for "gross misconduct". The issue of whether Waldmann was terminated for "gross misconduct" is to be decided by the Judge.

### F.   Waldmann's Personnel File Claim

In Count IX, Mr. Waldmann claims that Tesla refused to allow him to see his personnel file and refused to allow him to put an explanatory comment in his personnel file as required by 19 Del. C. §§ 730 et seq. In addition, Waldmann alleges that Tesla retaliated against him because he reported Tesla's violation of Delaware law, 19 Del. C. §§ 730 et seq, to the Delaware Department of Labor. In December 2005, Waldmann repeatedly requested in writing to review his personnel file and to be allowed make a comment therein, if he deemed it was needed.

On January 23, 2007, Waldmann complained to the Delaware Department of Labor that Tesla had not provided him access to his personnel file. It is undisputed that on January 23, 2007, an agent from the Department of labor called Tesla's President on the foregoing. In response thereto, Waldmann received a copy of part of his personnel file, via federal express on January 24, 2007. In retaliation, Tesla filed the instant action on January 27, 2006. On January 28, 2006, Tesla, in retaliation, terminated Waldmann's employment retroactive to January 1, 2006.

G.  **Waldmann's Claims under Federal & State Wire Communications Laws**

Waldmann alleges in Count V and VI that Tesla violated the Federal Electronic Communications Privacy Act, 18 U.S.C. §2510, *et. seq*, as well as Delaware's Electronic Surveillance and Interception of Communications Act, 11 Del. C. §2401, *et. seq*. These Acts makes it illegal to use wire communications to intercept or access electronically stored or electronically transmitted information that is not readily accessible to the general public. For purposes of Waldmann's claims, the only difference between the acts is the penalties and the fact that the federal statute requires the crossing of state lines. Waldmann alleges that Tesla Industries, through the acts of its agents, violated the Electronic Communications Privacy Act by using Mr. Waldmann's passwords to access Mr. Waldmann's private email account and mobile telephone account and other electronically stored or transmitted accounts without Mr. Waldmann's permission.

H.  **Invasion of Privacy/Intrusion Upon Seclusion**

Mr. Waldmann alleges in Count VII that Tesla invaded his privacy. Specifically, Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, has intruded on Mr. Waldmann's private affairs by accessing his private email account and mobile telephone account as set forth in the previous section.

I.  **Waldmann's Abuse of Process Claim**

Waldmann claims that Tesla abused the legal process in order to threaten, retaliate, intimidate, discredit, silence and/or vex him. Waldmann incorporates by reference this section from NMT's Trial Brief. In addition, Waldmann adds that Tesla instituted legal process including, but not limited to, Summons and a Preliminary Injunction, because he had complained

to the Department of Labor about the non-payment of wages and about access to his personnel file. Tesla also wanted to prevent Waldmann from talking to Tesla's customers and/or discredit Waldmann to Tesla's customers because Waldmann was aware of and told one or more customers about a defect in one of Tesla's products.

### IV.  DEFENDANT WALDMANN'S THEORY OF DAMAGES AND OTHER RELIEF IN THE EVENT LIABILITY IS ESTABLISHED

#### A.  Violation of the Delaware Wage Payment Law

Waldmann alleges that Tesla's failure to timely pay him his salary violated Delaware's Wage Payment and Collection Act and entitles him to liquidated damages from Tesla at the rate of approximately $307.69 for each and every day, excluding Saturdays, Sundays and Legal Holidays, in which the salary was unpaid after the respective regular paydays.

Waldmann asserts that he is entitled to liquidated damages for unpaid wages from Tesla under the Wage Payment and Collections Act at the rate of approximately $307.69 per day, excluding Saturdays, Sundays and Legal Holidays, for each and every day in which his salary is unpaid after the respective regular paydays.

Waldmann further alleges that Tesla's failure to pay him commissions for the third and fourth quarters of 2005 entitles him to liquidated damages from Tesla for the unpaid commissions at the rate of approximately $1,480 per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, from on or about middle October 2005 to on or about middle January 2006, and liquidated damages at the rate of approximately $3,000 per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, until Tesla pays said commissions to Waldmann.

The amount of commissions due Waldmann for the third quarter will be determined after Tesla provides documents requested by Waldmann regarding his third quarter sales. Commissions for the fourth quarter will be determined after Waldmann is permitted to review documents for the fourth quarter which are currently marked "Attorney's Eyes Only."

Waldmann also alleges that, as a result of his unlawful termination by Tesla he has suffered damages and emotional distress as a result of this retaliatory discharge and demands an award of backpay from January 1, 2006 to the present and compensatory and punitive damages to be determined at trial. Civil penalties, attorney's fees and costs are to be determined by the Judge.

      **B.**    <u>**Violation of the Federal Electronic Communications Privacy Act and Delaware Electronic Surveillance and Interception of Communications Act**</u>

Waldmann alleges that Tesla's violations of the Federal Electronic Communications Privacy Act were outrageous and unconscionable, and done with actual malice and/or accompanied by a wanton and willful disregard for his rights. Accordingly, Waldmann requests actual damages to be determined at trial, statutory damages, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

Waldmann alleges that Tesla's violations of Delaware's Electronic Surveillance and Interception of Communications Act, 11 Del. C. §2401, *et. seq.* were outrageous and unconscionable and done with actual malice and/or accompanied by a wanton and willful disregard for his rights. The federal statute authorizes an award of statutory damages of not less than $100 and not more than $10,000 for each and every violation. The state statute authorizes

an award of statutory damages of not less than $100 and not more than $1,000 plus punitive damages.[3]

### C. Intrusion Upon Seclusion/Privacy

Mr. Waldman contends that Tesla's intrusion upon his solitude and seclusion was outrageous and unconscionable, was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann and would be highly offensive to a reasonable person. Accordingly, Waldmann requests actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this court deems appropriate including but not limited to all reasonable attorneys' fees and costs.

### D. Abuse of the Legal Process

Waldmann contends that Tesla's actions in abusing the legal process were outrageous and unconscionable, and were done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann. Accordingly, Waldmann requests actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

### E. Waldmann's Claim for Access to Personnel File

Pursuant to 19 Del. C. §§ 730 *et seq*, Tesla is liable for damages to Waldmann of not less than $1,000 and not more than $5,000 for each and every violation.[4]

---

[3] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.
[4] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

### F. ERISA

In accordance with 29 U.S.C. §1132(c), as of January 15, 2006, 14 days after coverage was terminated, Tesla is required to pay to Waldmann a penalty of $110 per day for each and every day that Tesla failed to provide Mr. Waldmann with the notification to elect continuation medical insurance coverage as required by COBRA. In addition, Waldmann claims that Tesla is liable for his, and his family's, medical bills (minus the cost of COBRA).

### V. DEFENDANT WALDMANN'S THEORY OF ANY ANTICIPATED MOTION FOR DIRECTED VERDICT.

Waldmann incorporates by reference this section from NMT's Trial Brief. In addition, Waldmann expects Directed Verdicts against Tesla on Tesla's claim for breach of contract, conversion and for interference with prospective contractual relations because Tesla cannot prove the elements.

### VI. OTHER ISSUES

Waldmann also joins Defendants' Objections And Counter-Designations To Plaintiff's Designation Of Depositions To Be Read Or Played At Trial.

Waldmann joins NMT's Schedule E by reference.

Waldmann joins NMT's Objections to Tesla's Exhibit List.

Waldmann joins NMT's Objections to Tesla's Witness List.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 2, 2007 | /s/ Adam C. Gerber<br>Adam C. Gerber, Esq. (#4653)<br>John A. Adams, Esq.<br>Susanin, Widman &Brennan, P.C.<br>South Gulph Road, Suite 240<br>King of Prussia, PA 19406-3119455<br><br>John D. Demmy (#2802)<br>Stevens & Lee, P.C.<br>1105 North Market Street, 7th Floor<br>Wilmington, DE  19801<br><br>Attorneys for David C. Waldmann |

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 2, 2007, I electronically filed Defendant Waldmann's Trial Brief with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Brian A. Sullivan, Esquire
Werb & Sullivan
300 Delaware Avenue, 13th Floor
Wilmington, DE 19801

Steven J. Balick, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

John D. Demmy, Esquire
Stevens & Lee, P.C.
1105 North Market St., 7th Floor
Wilmington, DE 19801


SUSANIN, WIDMAN & BRENNAN, P.C.

BY:   /s/ Adam C. Gerber
       Adam C. Gerber, Esq. (#4653)
       John A. Adams, Esq.
       South Gulph Road, Suite 240
       King of Prussia, PA 19406-3119455
       (610) 337-4510
       acgerber@swbcounsellors.com