# SCHEDULE B-3

UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware Corporation,

    Plaintiff,

v.

DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a.k.a. CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation,

    Defendants.

C.A. No. 06-55-GMS

**SCHEDULE B-3**

**WALDMANN'S STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

Waldmann's Statement of Contested Issues of Fact and Law as of April 29, 2007. To date, Tesla has not provided the Defendants with its iteration of contested issues of fact and law and, accordingly, Waldmann reserve the right to submit revisions to this Statement after Tesla receiving Tesla's Statement, if such is ever provided.

Except where indicated otherwise, the following issues are submitted as issues for the jury. To the extent that any issues of law may be considered as issues of fact, Waldmann incorporate by reference such issues.

**I.      ALLEGED MISAPPROPRIATION OF TRADE SECRETS**

    1.      Whether Tesla's NATO Plug, NATO Receptacle, Dual Output Connector, Dual Output Power Supply, AC and DC Power/Inverter Systems and Custom Tool

1

System, UAV Power Unit Assembly, Global Hawk Power System, Interface Box for UAV Unit, FEMA Power Unit, Cylindrical Connector or Customer, Vendor and/or parts lists is a trade secret.

2. Whether Tesla derives economic benefit from the foregoing.

3. Whether Tesla failed to make reasonable efforts to protect the secrecy of the foregoing.

4. Whether Tesla's claim for misappropriation of trade secrets is barred, in whole or in part, by the doctrines of waiver, estoppel and/or acquiescence.

5. Whether Tesla is barred from recovery due to unclean hands.

6. Whether Waldmann misappropriated any of Tesla's trade secrets.

7. Whether Tesla has been damages by any alleged disclosure.

8. Whether Waldmann illegally disclosed and/or illegally used Tesla's Customer, Vendor and/or parts lists, or any information related thereto.

9. Whether Tesla's Customer, Vendor and/or parts lists, whether such lists are a trade secret.

## II.   TESLA'S BREACH OF CONTRACT CLAIM

1. Whether the Delaware Trade Secrets Act preempts Tesla's claim.

2. Whether Waldmann breach any agreement with Tesla.

3. Whether Tesla suffered any damages from any alleged breach.

## III.  TESLA'S TORTIOUS INTERFERENCE CLAIM

1. Whether the Delaware Trade Secrets Act preempts Tesla's claim.

2. What was the prospective contractual relationship to which Waldman allegedly interfered.

2

    3. Whether Waldmann tortuous interfered with a Tesla's prospective contractual relationship.

    4. Whether Tesla suffered any damages from any alleged interference.

## II. TESLA'S ALLEGED CONVERSION CLAIM

    1. Whether the Delaware Trade Secrets Act preempts Tesla's Conversion Claim.

    2. Whether Waldmann, Mr. Minnick, Mr. Hollingsworth and/or NMT improperly converted any property of Tesla.

    3. Whether Waldmann, Mr. Minnick, Mr. Hollingsworth and/or NMT wrongfully deprived Tesla of ownership over its property.

    4. Whether Tesla suffered any damages from the alleged conversion.

## III. ALLEGED CIVIL CONSPIRACY AMONG DEFENDANTS

    1. Whether the Delaware Trade Secrets Act preempts Tesla's Civil Conspiracy Claim.

    2. Whether Defendants had an agreement to participate in an unlawful act.

    3. Whether Tesla was injured and suffered damages as a result of Defendants unlawful act.

    4. Whether Defendants performed an unlawful overt act in furtherance of the agreement.

## IV. TESLA'S ABUSE OF PROCESS

    1. Whether Tesla caused legal process to issue against Defendants.

    2. Whether Tesla commenced this legal process to accomplish a purpose for which the system is not designed.

    3.    Whether Tesla commenced this legal process to harass, vex and/or intimidate Defendants.

    4.    Whether Defendants suffered damage from the alleged abuse of process.

## V.   WAGE PAYMENT LAW

    1.    Whether Tesla could lawfully withhold wages from Waldmann?

    2.    Whether Tesla retaliated absent Waldmann because Waldmann reported Tesla's failure to pay wages to the Department of Labor.

    2.    The amount of damages, if any, to which Waldmann is entitled for the foregoing.

    3.    Whether the Delaware Trade Secrets Act preempts Tesla's claim.

    4.    Whether Waldmann breached any agreement with Tesla.

## VI.   ACCESS TO PERSONNEL FILE

    1.    Whether Tesla failed or refused to allow Waldmann access to his personnel file.

    2.    Whether Tesla failed or refused to allow Waldmann to put one or more comments in his personnel.

    3.    Whether Tesla retaliated absent Waldmann because Waldmann reported Tesla's alleged failures to the Department of Labor.

    3.    The amount of damages, if any, to which Waldmann is entitled for the foregoing.

## VII.   ELECTRONIC COMMUNICATIONS LAWS

    1.    Whether Tesla, without permission from Waldmann, accessed his e-mail account and/or mobile telephone account.

2. The amount of damages, if any, to which Waldmann is entitled for the foregoing.

## VIII. PRIVACY

1. Whether Tesla invaded Waldmann's privacy by accessing his e-mail account and/or mobile telephone account.

2. The amount of damages, if any, to which Waldmann is entitled for the foregoing.

## IX. ERISA[1]

1. Whether Waldmann, as an employee of Tesla, was covered by a Group Health Plan and/or Dental Plan.

2. Whether Waldmann was terminated for gross misconduct.

3. The amount of damages, if any, to which Waldmann is entitled for the foregoing.

---

[1] It is Waldmann's position that this claim is to be decided by the Court.