# SCHEDULE I-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESLA INDUSTRIES, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a/k/a CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-55-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SCHEDULE I-1

## PLAINTIFF, TESLA INDUSTRIES INC.'S, PRETRIAL BRIEF

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: 302-652-1100
bsullivan@werbsullivan.com

Paul E. Crawford (#493)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: 302-888-6262
pcrawford@cblh.com

Attorneys for Plaintiff
Tesla Industries Inc.

**TABLE OF CONTENTS**

I. NATURE OF THE CASE .................................................................................................... 1
   1. The Parties ..................................................................................................................... 1
      a) Plaintiff, Tesla Industries, Inc. ................................................................................ 1
      b) Defendant, David C. Waldmann ............................................................................. 1
      c) Defendant, Lyndol W. Hollingsworth ..................................................................... 3
      d) Defendant, Charles Minnick a/k/a Chuck Minnick ................................................ 3
      e) Defendant, New Millennium Tools, Inc. ................................................................. 3
   2. The Pleadings ................................................................................................................. 3
      a) The Verified Complaint .......................................................................................... 3
      b) Waldmann's Answer, Affirmative Defenses and Counterclaims (DI 26) .............. 5
      c) Answer and Counterclaims of NMT Defendants (DI 27) ....................................... 6
II. THE CONTESTED FACTS PLAINTIFF EXPECTS THE EVIDENCE WILL ESTABLISH ...................................................................................................................... 6
   1. Defendants Misappropriation of Tesla's Confidential Information ............................... 6
   2. Defendants' Violations of Restraining Orders Entered by the Court ............................ 8
III. PLAINTIFFS THEORIES OF LIABILITY OR DEFENSE BASED ON THE ABOVE FACTS ................................................................................................................. 9
   1. Plaintiff's Liability Theories .......................................................................................... 9
      a) Misappropriation of Trade Secrets .......................................................................... 9
      b) Waldmann's Breach of Contract ............................................................................. 9
      c) Defendants Conversion of Tesla Property ............................................................ 10
      d) Defendants Conspiracy ......................................................................................... 10
   2. Defenses to Waldmann's Counterclaims ..................................................................... 10
      a) Wage Payment Law Claims (Count I of Waldmann Counterclaim) .................... 10
      b) Breach of Contract (Count II of Waldmann Counterclaim) ................................. 11
      c) Unlawful Discharge (Count III) ............................................................................ 12
      d) Erisa Claim in Count IV ....................................................................................... 12
      e) Plaintiff's Access to Waldmann Emails and Other Information (Count V-VI) .... 12
      f) Conversion (Count VIII) ...................................................................................... 12
      g) Alleged Violation of 19 Del. C. § 732 (Count IX) ............................................... 12
      h) Retaliation Claims (Counts X-XI) ........................................................................ 13
   3. Defenses to NMT Defendants Counterclaim .............................................................. 13
IV. PLAINTIFFS THEORIES OF DAMAGES AND OTHER RELIEF ................................. 13
   1. Damages ....................................................................................................................... 13
   2. Attorneys Fees ............................................................................................................. 14
   3. Punitive Damages and Permanent Injuction ............................................................... 14
V. POSSIBLE MOTIONS FOR DIRECTED VERDICT ....................................................... 15

I.  **NATURE OF THE CASE**

1.  The Parties

    a)  Plaintiff, Tesla Industries, Inc.

Tesla Industries, Inc., ("Tesla"), is a corporation having its principal and only place of business in New Castle, Delaware. It employs approximately 60 persons in a 120,000 square foot facility near the New Castle County Airport. Tesla is a developer and manufacturer of improved products, primarily for the United States Armed Forces. Tesla's commercial product line includes (1) electrical connectors, (2) cabling, (3) battery packs and (4) Ground Power Units (GPUs). Tesla also develops specialty products for the military which are classified as "Confidential" or "Secret" by the Armed Forces pursuant to government regulations. Prior to June, 2005, Tesla had initiated development of a power supply for "off-the-shelf" power tool for sale to the Armed Forces and for civilian use.

    b)  Defendant, David C. Waldmann

David C. Waldmann, ("Waldmann"), was hired by Tesla in December, 2002 as an at-will employee. His assigned duties as a Tesla employee were to promote and sell Tesla Products, and only Tesla Products, to the Armed Forces of the United States. When hired, Waldmann signed an "Agreement of Non-Disclosure" as a condition of his employment. This Agreement alerted Waldmann that he would receive Tesla information, including "certain identity of customers, products, and technical and manufacturing information" that was "Secret and Confidential business information" of Tesla, and further stated that this information, if not kept secret and confidential "may cause damage to Tesla".

The Agreement Non-Disclosure specifically prohibited Waldmann from: providing such information to others, competing with Tesla in the power products market place

1

or any way "assist, support or provide information to others...", and removing any information about Tesla's products, customers or Tesla's business "without written permission from the President of Tesla Industries". The Agreement of Non-Disclosure also alerted Waldmann that if he breached any of these contractual obligations, he would be liable for all damages arising from that breach, "**plus reasonable attorney fees** and cost incurred in litigation arising from the breach of this Agreement" (emphasis added).

At the time he was hired by Tesla, he also signed an "Employee Awareness Agreement" stating that "any object used in or for development or manufacture of Tesla products", including but not limited to, "customer data", "customer information", "documentation", "sales information" was "considered proprietary and at no time shall be removed from Tesla Industries, Inc. without written permission from only the President of Tesla (Mr. David M. Masilotti)". When hired, Waldmann signed this Agreement thereby agreeing that "removal of such items shall be considered theft of proprietary information".

At the time of his hiring, Waldmann also acknowledged receipt and understanding of the following policy and procedure of Tesla regarding access to Tesla's technologies (emphasis in original):

> "At no time are any documents, floppy disks, CAD drawings, e-mails, electronic parts or any Tesla properties; to be REMOVED from the TESLA building without the approval of the President of TESLA **(if not sure, ask?)**" (emphasis in original).

In 2005 Waldmann started providing Defendants with Tesla information useable by them in a new business venture. He was formally terminated as an at-will employee effective as of December 31, 2005. When his activity inimical to Tesla's interests was discovered he was

suspended. He was formally terminated as an at-will employee effective as of December 31. 2005.

    c)    Defendant, Lyndol W. Hollingsworth

Lyndol W. Hollingsworth, ("Hollingsworth"), is an individual residing in the State of Texas. He is currently an officer of defendant, New Millennium Tools, Inc. ("NMT"). Prior to joining NMT in 2006, he co-founded with Kent Huffman, a company called D.C. Power Equipment LLC (D.C. Power Equipment) to promote a direct current (DC) impact wrench which he had patented ("D.C. Impact Wrench"). In mid-2005 Hollingsworth joined the two other individual defendants, Waldmann and Chuck Minnick in a conspiracy to raid Tesla proprietary information.

    d)    Defendant, Charles Minnick a/k/a Chuck Minnick

Charles Minnick, ("Minnick"), is an individual residing in Oregon. He is the President and CEO of defendant, NMT.

    e)    Defendant, New Millennium Tools, Inc.

New Millennium Tools, Inc., ("NMT"), is a corporation of the State of Oregon which was incorporated by Minnick in October 2005. It's only known product line is a military version of the Impact Wrench. Minnick, Hollingsworth and NMT are collectively referred to as the "NMT Defendants".

2.    <u>The Pleadings</u>

    a)    The Verified Complaint

The Verified Complaint (DI 2) contains six (6) counts. Count I alleges Waldmann's violation of the Uniform Trade Secrets Act ("UTSA") as set forth at 6 Del. C. § 2001(4) (Complaint ¶¶ 32-33). The aforementioned non-disclosure agreement contains express

3

terms alerting Waldmann that Tesla's business and technical information was to be kept secret and not disclosed. As explained in more detail below (Section II) Waldmann utilized Tesla's Confidential Information, including customer lists, product information, and prototypes for his benefit and that of the NMT Defendants. Throughout the period of Waldmann's employment (December, 2002 – November 29, 2005) Tesla maintained information concerning its products (actual and under development) in strict confidence. It took reasonable measures to maintain the information in confidence (Complaint ¶¶10-13).

Count II of the Verified Complaint alleges violation of the UTSA by the NMT Defendants. More specifically, they misappropriated such secrets through Waldmann who they knew to be a person that had improperly acquired them. See 6 Del. C. § 2001(2).

Count III of the Verified Complaint alleges that Waldmann breached his employment agreements which contained explicit prohibitions on the use of Tesla information; removal of Tesla property from Tesla premises and competing with Tesla.

Count IV of the Verified Complaint alleges conversion of Tesla's property by all Defendants. This count alleges that Waldmann violated his employment agreements by disclosing prototype products under development by Tesla and other Tesla confidential information to the NMT Defendants.

Count V of the Verified Complaint alleges tortuous interference by Waldmann with prospective contractual relations. As detailed in the Complaint (¶¶53-54) Waldmann, *inter alia*, intercepted a phone call from a prospective Tesla customer regarding possible purchase of Tesla equipment (battery packs) for use in the Hurricane Katrina relief effort. Instead of directing that potential purchaser to Tesla, Waldmann diverted the customer to the NMT Defendants.

Count VI of the Complaint alleges conspiracy by all the Defendants to deprive Tesla of its confidential information and proprietary products, divert Tesla customers to NMT and otherwise convert Tesla information to all Defendants' benefit.

The Complaint seeks damages and injunctive relief against all Defendants prohibiting them from utilizing Tesla's confidential information. It also seeks an award of attorneys' fees as provided by the UTSA and the provisions of the Agreement of Non-Disclosure signed by Waldmann.

        b)    Waldmann's Answer, Affirmative Defenses and Counterclaims (DI 26)

Waldmann's Answer (¶11) admits that he signed the aforementioned employment agreements with their prohibitions on his use or disclosure of Tesla information and competition with Tesla and its contractual obligations on Waldmann to pay "reasonable attorneys' fees" and costs incurred in the litigation arising from the breach of this agreement (Exhibit C to Complaint).

Waldmann's Answer further admits to having "shipped a NATO receptacle belonging to Plaintiff [Tesla] to Hollingsworth". The NATO receptacle is one of several pieces of Tesla equipment removed by Waldmann from the Tesla facility and sent to the NMT Defendants in direct contravention of his employment agreements.

Waldmann's affirmative defenses are seven (7) in number and include the usual litany of: failure to state a claim, waiver, estoppel, laches, unclean hands, statute of limitations, failure to mitigate damages, etc. (DI 26, page 15). Waldmann's counterclaim contains eleven (11) counts ranging from Wage Payment Law Claims (19 Del.C. § 1102 et seq.) to abuse of process and unlawful discharge ("whistleblower" claims), most of which are discussed in Section III, *infra*.

c)    Answer and Counterclaims of NMT Defendants (DI 27)

The NMT Defendants' Answer contains general denials of the allegations in the Complaint, adds the usual defenses of waiver, estoppel, etc. and raises eight (8) counterclaims[1]. These counterclaims are discussed in Section III, *infra*.

## II.    THE CONTESTED FACTS PLAINTIFF EXPECTS THE EVIDENCE WILL ESTABLISH

1.    <u>Defendants Misappropriation of Tesla's Confidential Information</u>

When Waldmann joined Tesla at the end of 2002, he had little, or no, knowledge of selling products to the military. He had few, if any customer contacts. Throughout his 3 years of employment, Tesla gave Waldmann lists of military customers generated at considerable cost to Tesla. Waldmann also generated additional customer contacts using the good will and financial resources of Tesla. Details of potential military customers' identification needed to effectively sell to the military are not generally known outside the military. This is particularly true since 9/11. Waldmann was fully aware that Tesla's customer information was confidential. He acknowledged this in writing when he was hired. Waldmann nevertheless used confidential information about Tesla customers to promote NMT Defendants' products.

Waldmann also sent detailed Tesla customer lists to his home computer on at least two occasions in 2005 in direct violation of his employment agreements. These lists are not generally available to other than military contractors and military personnel. Waldmann used this and other information about Tesla's customers to promote the NMT Defendants' products,

---

[1] One of those counterclaims (III) for violation of the Sherman and Clayton Acts is currently the subject of cross motions by the parties. The NMT Defendants have moved for partial judgment on the pleadings based on inadvertent admissions to NMT defendants' antitrust allegations in counterclaim III (DI 106). Plaintiff Tesla's response to this motion and its counter motion for leave to file an amended response to this counterclaim (DI 109) notes that the admissions to the NMT Defendants antitrust counterclaims were a clear typographical error and sought correction of that error with its motion for leave to file an amended answer (DI 109). These cross motions are currently pending. Other than this last minute Motion of the NMT Defendants, the NMT Defendants have not developed or otherwise pursued these claims during discovery in this case.

6

instead of Tesla's until he was terminated by Tesla. By late September 2005, Waldmann had decided to leave Tesla. From that time forward he devoted most of his time to promotion of NMT Defendants' products and very little to Tesla products.

Defendants Hollingsworth and Minnick, and through them, NMT, were aware of Waldmann's misappropriation of Tesla's confidential information. By early September, Waldmann had informed defendants that he was unable – or unwilling – to convince Tesla to work with defendants. From that time forward NMT Defendants were fully aware that Waldmann's activities on their behalf were done without Tesla's approval. For example, in October 2005, Waldmann bragged to defendants Hollingsworth and Minnick about using his "contacts" in the military to promote defendants Impact Wrench. Defendants were aware by then that Waldmann was working against Tesla's interests by using Tesla customer contacts to promote their products.

By early November 2005, Waldmann was already discussing his employment with Defendants, yet continued use of Tesla confidential information on Defendants' behalf. In November 2005, Hollingsworth expressed his excitement about Waldmann working for Defendants full time because he would "be worth his weight in gold to NMT because he can accompany us to meet the military people we need to see."

Another item of Tesla confidential information misappropriated by Defendants was a NATO connector that Waldmann provided to Defendants. This device was a prototype under development by Tesla and was not then on sale.

Defendants actively deceived the military into accepting their products by misrepresenting it as a Tesla product. This deception included a brochure prepared by Hollingsworth which included Tesla's name in a way that conveyed the message that Tesla had

7

developed or was associated with D.C. Impact Wrench. Thru this deception, and only thru this deception, defendants were able to obtain a National Stock Number (NSN) for their products wrench. A NSN is a prerequisite for sales to the military.

Defendants' misuse of Tesla's confidential information, particularly that developed for military applications, is the subject of a pending grand jury investigation and an investigation by the U.S. Navy.

2. <u>Defendants' Violations of Restraining Orders Entered by the Court</u>

After institution of this suit, Defendant Waldmann entered into a Restraining Order dated February 22, 2006 (DI 20) specifically prohibiting continued violation of his employment agreements. Despite this judicial prohibition, Waldmann continues to contact Tesla's customers and use other information in contravention of his employment agreements and the Restraining Order.

Defendants Hollingsworth, Minnick and NMT also entered into a Stipulated Restraining Order dated February 22, 2006 (DI 22) which prohibits them from using or disclosing Tesla confidential information, including Tesla contact lists with the U.S. Military. Despite this prohibition the NMT Defendants continue to use Tesla customer information supplied by Waldmann in furtherance of the promotion and sale of NMT products.

This Restraining Order (¶2) also prohibits Hollingsworth, Minnick and NMT from deleting, destroying, or transferring any email accounts over which they have control. Despite this prohibition, defendant Hollingsworth voluntarily gave his computer containing potentially incriminating information to a family friend in early 2006. That computer and is incriminating messages is currently unavailable for forensic inspection. His intention to destroy incriminating evidence is reinforced by a February 1, 2006 email to Minnick noting that he had

8

effectively avoided examination of his computer hardware by wrapping his hard drives in plastic and hiding them in a "really hard to find spot".

### III. PLAINTIFFS THEORIES OF LIABILITY OR DEFENSE BASED ON THE ABOVE FACTS

1. <u>Plaintiff's Liability Theories</u>

   a) Misappropriation of Trade Secrets

The Delaware UTSA (6 Del. C. 2003(a)) provides that a "complainant is entitled to recover damages for misappropriation [of trade secrets]". This section of the Delaware Code further provides that "damages can include both the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account when computing actual loss". Misappropriation giving rise to Tesla's claim for damages and other relief is defined in 6 Del. C. § 2001 as, *inter alia*, "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means". As detailed above a clear case of misappropriation has been established. Mr. Waldmann and the NMT Defendants entered into a collaborative effort in mid 2005 to utilize the reputation, customer lists, prototypes, products and other confidential information of Tesla to promote the welfare of themselves and NMT.

   b) Waldmann's Breach of Contract

Waldmann repeatedly breached in material ways his employment contract with Tesla. Waldmann (a) failed to devote his full-time business efforts to Tesla; (b) misappropriated Tesla's confidential information; (c) removed Tesla property from Tesla's premises; (d) sent Tesla's customer list to his home computer; (e) used Tesla's customer lists to sell non-Tesla products to existing and prospective Tesla customers; (f) established an e-mail address outside of Tesla that he used to divulge and transmit Tesla's Confidential Information; (g) failed to properly

9

and exclusively sell Tesla products; and (h) converted Tesla Industries' prototypes, information and business opportunities for his own and other defendants purposes. In doing so, Waldmann breached the express and implicit terms of his contracts of employment.

        c)      Defendants Conversion of Tesla Property

Waldmann was given access to Tesla confidential information for the sole purpose of using that information in the promotion and sale of Tesla products. Waldmann improperly converted Tesla property for Defendants' benefit as described above.

        d)      Defendants Conspiracy

Defendants have conspired between and among themselves to deprive Tesla of the normal fruits of its technological and business property. With NMT Defendants encouragement, Waldmann used Tesla's good will to establish contacts with prospective customers for the NMT Defendants' products. He diverted Tesla customers and technology to Defendants and their business. In fact, Waldmann continues to contact Tesla's customers on behalf of NMT, despite all Defendants having entered into a Stipulated Restraining Order which prohibited them from doing so.

    2.      <u>Defenses to Waldmann's Counterclaims</u>

        a)      Wage Payment Law Claims (Count I of Waldmann Counterclaim)

Count I of Waldmann's Counterclaim alleges violation of Delaware's Wage Payment and Collection Act ("WPCA"), 19 Del. Code §§ 1101 et seq. The claims in Count I fall into three categories: (i) Delayed payment of salary for the period from November 29, 2005 through December 31, 2005. (ii) Non-payment of wages for the period January 1, 2006 through January 28, 2006, the latter being the date of his formal termination letter (but 01/01/06 is

termination date stated in that letter). (iii) Non-payment of Waldmann's bonuses on sales for the third and fourth quarters of 2005.

With regard to the first element of Waldmann's wage claim, the delayed payment of wages can be directly attributed to Waldmann's failure to provide his correct mailing address to Tesla's HR department. Regarding the second claim for wages i.e. those for January 2006 pay periods, Waldmann had been terminated as of December 31, 2005 and thus was owed no wages for those periods.

The third component of Waldmann's wage payment claim is for his bonuses on sales during the third and forth quarters of 2005[2]. Payment of such bonuses were reasonably withheld by Tesla because "a WPCA does not apply when a party has reasonable grounds to dispute a claim arising under the employment at issue." See *Delaware Bay v. Swier*, 900 A2d 646, 648 (Del. Supr. 2005). Moreover Tesla only pays bonuses on sales which can be attributed to the effort of the commission claimant. When it was determined that sales within his sales territory in the second half of 2005 commissions were not due to Waldmann's efforts his bonus was denied.

      b)      Breach of Contract (Count II of Waldmann Counterclaim)

These claims are belied by Waldmann's above-mentioned actions and violation of his employment contract. Tesla had more than ample reason to discharge him given his breach of those agreements.

---

[2] A contested issue of law (See Schedule B to Pretrial Order) is whether bonuses are "wages" under the WPCA.

  c)  Unlawful Discharge (Count III)

The "penalties" for unlawful discharge in 19 Del. C. § 1112 are not recoverable by an employee in a civil action.[3]

  d)  Erisa Claim in Count IV

This allegation asserts a failure of Tesla to continue health insurance coverage for Waldmann and his family pursuant to 29 USC § 1122(c). Such coverage however is not required where an employee is discharged for misconduct.

  e)  Plaintiff's Access to Waldmann Emails and Other Information (Count V-VI)

These counts allege improper access of Tesla to Waldmann's Army email accounts including (Dave.Waldmann@us.army.mil). Such an account, i.e., an "army.mil" account is only available to military personnel and vendors to the military. This account was therefore only properly obtained by virtue of Waldmann's employment at Tesla thereby giving Tesla the right to access that account based on Waldmann's agreement at the time of his employment regulating access to "Tesla's technology resources" (see Exhibit B to Complaint). Moreover, paragraph 6 of this Court's Temporary Restraining Order (DI 20) specifically authorized Tesla's access to Waldmann's email and other accounts.

  f)  Conversion (Count VIII)

This count alleges "conversion" of certain personal property of Waldmann because their return to him was delayed for two weeks. That delay is attributable, however, to Waldmann, not Tesla. Thus, there was no "conversion".

  g)  Alleged Violation of 19 Del. C. § 732 (Count IX)

There is no private cause of action permitted under this statute to recover damages.[4]

---

[3] This is another contested legal issue set forth in Schedule B to the Pretrial Order.

      h)     Retaliation Claims (Counts X-XI)

Waldmann's claim that he was terminated because of a claim to the Delaware Department of Labor regarding denial of access to his personnel file(Count X) does not give rise to a private cause as noted above. His retaliation claim under 10 U.S.C. § 2409 ("Whistleblower Law") likewise does not create a private cause of action for damages.[5]

    3.     <u>Defenses to NMT Defendants Counterclaim</u>[6]

      a)     Counterclaim I seeks a declaration that Tesla has no trade secrets. Waldmann's acknowledgement of such trade secrets belies this counterclaim.

      b)     Counterclaim II alleges that this Court's entry of the Stipulated Restraining Orders (DI 20, 22) is an abuse of process. Defendants consent to those "Stipulated" Orders belies this counterclaim.

      c)     Counterclaim III alleges antitrust claims based on a typographical error (see footnote 1, supra). Their lack of merit is induced by the lack of discovery pursued by Defendants related to these claims.

      d)     Counterclaims VI and VII that the pursuit of this litigation constitutes unfair competition. Protection of ones property from theft and misappropriation is not unfair.

## IV.   PLAINTIFFS THEORIES OF DAMAGES AND OTHER RELIEF

    1.     <u>Damages</u>

Defendants' diversion of business from Plaintiff caused a serious downturn in Plaintiff's business in 2006 resulting in a loss in excess of $1 Million in projected earnings. Such losses are recoverable for breach of contract and theft of trade secrets (6 Del. C. § 2003).

---

[4] See contested issues of law in Schedule B.
[5] This is another contested issue of law set forth in Schedule B to the Pretrial Order.
[6] Defendants recently withdrew Counterclaims IV-V and VIII.

13

Additionally, Tesla has lost the value of prototypes, drawings, technical data, and supplies at least in the estimated amount of $250,000. Also, Tesla has suffered lost employee and officer time and productivity in the amount of at least $500,000.

2. <u>Attorneys Fees</u>

Under the UTSA (6 Del. C. § 2004) attorneys fees are recoverable if "willful and malicious misappropriation exists". The actions of Waldmann and NMT Defendants in using Tesla information to promote their own business interests was willful and malicious. The Agreement of Non-Disclosure signed by Waldmann at the inception of his employment (Exhibit C to Complaint) specifically provides that Waldmann is responsible for all "attorneys fees and costs incurred in the litigation arising from the breach of this Agreement". Waldmann therefore is liable for any attorneys fees awarded in this action.

3. <u>Punitive Damages and Permanent Injunction</u>

Plaintiff also seeks an award of Punitive Damages against Defendants for their unlawful actions. Plaintiff requests that the Court enter a permanent injunction against all of the Defendants prohibiting all use or disclosure of Tesla confidential information, including, without limitation, contact with any Tesla customer known to Waldmann during his employment by Tesla.

## V. POSSIBLE MOTIONS FOR DIRECTED VERDICT

Reference is made to Tesla's Contested Issues of Law set forth in Exhibit B to the Pretrial Order. These issues are candidates for directed verdict.

Dated: May 2, 2007

/s/ *Paul E. Crawford*
Paul E. Crawford (#493)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: 302-888-6262
pcrawford@cblh.com

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: 302-652-1100
bsullivan@werbsullivan.com

Attorneys for Plaintiff
Tesla Industries Inc.