# SCHEDULE I-2

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

        Plaintiff,

      v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

        Defendants.

Civil Action No. 06-55-GMS

## SCHEDULE I-2

## THE NMT DEFENDANTS' TRIAL BRIEF

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:  (302) 654-1888
Facsimile:   (302) 654-2067

Louis S. Mastriani (admitted *pro hac vice*)
Rodney R. Sweetland, III (admitted *pro hac vice*)
David F. Nickel (admitted *pro hac vice*)
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:   (202) 466-2006

*Attorneys for Defendants Lyndol W. Hollingsworth,
Charles Minnick and New Millennium Tools, Inc.*

## **TABLE OF CONTENTS**

I.      NATURE OF THE CASE ................................................................................ 1

II.     CONTESTED FACTS ................................................................................ 3

III.    THEORY OF DEFENSES AND  LIABILITY FOR COUNTERCLAIMS ...................... 3

        A.      Substantive Defenses ................................................................................ 3

                1.      Tesla's Trade Secrets Claims Must Fail ...................................... 3

                        a)      Publicly Available Information on Standardized,
                                Commercially Available Products Cannot
                                Constitute a Trade Secret ................................................ 4

                        b)      Government Contracts and Contracting Sources
                                Cannot Constitute a Trade Secret .................................... 5

                        c)      Tesla Authorized Defendant Waldmann's
                                Interaction with the NMT Defendants and Nothing
                                the NMT Defendants Received Was Identified as
                                Confidential.................................................................... 7

                        d)      The NMT Defendants Have a Constitutionally
                                Protected Right to Compete for U.S. Government
                                Business That Cannot Be Enjoined by Tesla.................... 8

                2.      Conversion Is Preempted by the Trade Secrets Act.................... 8

                3.      Civil Conspiracy Liability Is  Unavailable, Procedurally
                        and Substantively ...................................................................... 9

        B.      Affirmative Defenses ................................................................................ 9

        C.      Counterclaims ................................................................................ 10

                1.      Declaratory Judgment of No Trade Secrets ............................... 10

                2.      Abuse of Process........................................................................ 10

                3.      Unfair Trade Practices ............................................................... 11

                4.      Antitrust .................................................................................... 11

IV.     THEORY OF DAMAGES ............................................................................ 12

        A.      Defense Against Tesla's Claims................................................................ 12

B.    In Support of Counterclaims .................................................................. 14

V.    ANTICIPATED MOTION FOR JUDGMENT AS A MATTER OF LAW
      AND TO VACATE STIPULATED RESTRAINING ORDER ....................................... 15

## TABLE OF AUTHORITIES

### Cases

*Am. Hearing Aid Assoc., Inc. v. GN ReSound North Am.*
   309 F. Supp. 2d 694 (E.D. Pa. 2004) ............................................................... 6

*Bradbury Co., Inc. v. Teissier-duCros*, 413 F. Supp. 2d 1209 (D. Kan. 2006) ............... 6

*Callaway Golf Co. v. Dunlop Slazenger Group Am., Inc.*, 318 F. Supp. 2d 216 (D. Del. 2004) ... 9

*Chemipal Ltd. v. Slim-Fast Nutritional Foods, Int'l, Inc.*, 350 F. Supp. 2d 582 (D. Del. 2004) .. 13

*CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456, 459 (4th Cir. 2000)................................. 8

*Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at 18 (Del. Ch. Oct. 23, 2002).............. 6

*Deville Court Apartments, L.P. v. Fed. Home Loan Mortgage Corp.*,
   39 F. Supp. 2d 428 (D. Del. 1999).................................................................. 13

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
   2006 WL 2724882, at 6 (D. Del. Sept. 22, 2006) ............................................. 12

*Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431 (D. Del 2006)....................... 9

*EDIX Media Group, Inc. v. Mahani*, 2006 WL 3742595, at 11 (Del. Ch. Dec. 12, 2006).......... 11

*Fox Sports Net N. v. Minn. Twins P'ship*, 319 F.3d 329 (8th Cir. 2003) ....................... 6

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297 (3d Cir. 2003) ........... 11

*Giannone v. U. S. Steel Corp.*, 238 F.2d 544 (3d Cir. 1956) ...................................... 12

*Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003)................................ 6

*Heck v. Humphrey*, 512 U.S. 477 (1994)............................................................... 10

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., Inc.*,
   343 F. Supp. 2d 272 (D. Del. 2004)................................................................. 9

*Ikon Office Solutions, Inc. v. Am. Office Prod., Inc.*, 178 F. Supp. 2d 1154 (D. Or. 2001) ........... 6

*Inflight Newspapers, Inc. v. Magazine In-Flight, LLC*, 990 F. Supp. 119 (E.D.N.Y. 1997).......... 6

*Innovative Networks, Inc. v. Young*, 978 F. Supp. 167 (S.D.N.Y. 1997) ...................... 7

*Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987) ............................................. 13

*Kronenberg v. Katz*, 872 A.2d 568 (Del Ch. 2004) ................................................ 13

*Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397 (9th Cir. 1993) ............................ 8

*Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004)........................ 4

*Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587 (7th Cir. 2001)......................... 4

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 750 (2d Cir. 1998)............... 4

*Panther Sys. III, Ltd. v. Panther Computer Sys., Inc.*,
   783 F. Supp. 53 (E.D.N.Y. 1991) ................................................................... 6

*Permagrain Prod., Inc. v. U.S. Mat & Rubber Co., Inc.*, 489 F. Supp. 108 (E.D. Pa. 1980)......... 4

*Phila. Reinsurance Corp. v. Employers Ins. of Wausau*,
   61 Fed. Appx. 816 (3d Cir. 2003) .................................................................... 12

*PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663, 673 (Cal. App. 2000) ............................... 7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997)............................ 12

*Re v. Gannett Co., Inc.*, 480 A.2d 662 (Del. Super. Ct. 1984) ..................................... 14

*Roberts v. Am. Warranty Corp.*, 514 A.2d 1132 (Del. Super. Ct. 1986) ...................................... 15

*Rushton v. Shea*, 419 F. Supp. 1349 (D. Del. 1976) ......................................................... 10

*Sanirab Corp. v. Sunroc Corp.*, 2002 WL 1288732, at 4 (Del. Super. Apr. 29, 2002) .................. 8

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del. 2002)........................................................... 9

*SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985)..................................... 7

*Stevens v. Indep. Newspapers, Inc.*, 1986 WL 13086 (Del. Super. Ct. Nov. 13, 1986) ............... 15

*Store Tech. Corp. v. Custom Hardware Eng'g. & Consulting, Inc.*,
   421 F.3d 1307 (Fed. Cir. 2005)........................................................................... 5

*Tao of Sys. Integration, Inc. v. Analytical Serv. &*
   *Materials, Inc.*, 330 F. Supp. 2d 668 (E.D. Va. 2004)................................................ 6

*Taussig v. Wellington Fund, Inc.*, 187 F. Supp. 179 (D. Del. 1960) ............................................ 15

*Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894 (10th Cir. 1975).......................................... 13

*Thurston v. Liberty Mut. Ins. Co.*, 16 F. Supp. 2d 441 (D. Del. 1998) ........................................... 13

*Trifax Corp. v. D.C.*, 314 F.3d 641 (D.C. Cir. 2003).................................................................. 8

*Weirs v. Barnes*, 925 F. Supp. 1079 (D. Del. 1996) ...................................................... 10

**Statutes**

15 U.S.C. § 15(a) ................................................................................................ 14, 15

28 U.S.C. § 2201-02 .................................................................................................. 10

6 Del. C. § 2001(2)(b)(2) ........................................................................................... 7

6 Del. C. § 2004 ....................................................................................................... 14

6 Del. C. § 2007 ........................................................................................................ 9

6 Del. C. § 2007(a)................................................................................................... 8

6 Del. C. § 2532(12) .................................................................................................. 11

6 Del. C. § 2532(8) .................................................................................................... 11

6 Del. C. § 2533(b) ................................................................................................... 14

6 Del. C. § 2533(c)..................................................................................................... 15

6 Del. C. § 6501 ........................................................................................................ 10

## Other Authorities

Del P.J.I. Civ. § 22.12(3) (2000).................................................................................. 14

Del. P.J.I. Civ. § 22.12(2) (2000)................................................................................. 14

Del. P.J.I. Civ. § 22.12(5) (2000)................................................................................. 14

Restatement (Third) of Unfair Competition § 39
(Definition of Trade Secret) Cmt. f (1995)............................................................... 4

Restatement (Third) of Unfair Competition § 40
(Appropriation of Trade Secrets), Cmt. d (1995) ..................................................... 7

## Rules

Fed. R. Civ. P. 54(d)(2)............................................................................................... 14

## I.    NATURE OF THE CASE

This is a case about a vitriolic employment dispute between Defendant Waldmann and Plaintiff Tesla Industries, Inc. ("Tesla") that mushroomed into allegations by Tesla against Waldmann of theft of trade secrets.  Tesla then dragged Defendants Charles Minnick, Lyndol Hollingsworth and the small company Minnick started in October 2005, New Millennium Tools, Inc. (collectively the "NMT Defendants") into the dispute by suing them at the same time it sued Waldmann.  The NMT Defendants, thus, are bystanders caught in the crossfire.

Hollingsworth initially contacted Tesla in the Summer of 2005 to purchase Tesla products for use with a power tool that he and Minnick were attempting to develop for military applications.  At that time, Minnick and Hollingsworth were consultants with a Texas company, D.C. Power Equipment.  Defendant New Millennium Tools, Inc. did not yet exist.  The power tool that Defendants Minnick and Hollingsworth were developing for D.C. Power Equipment was a direct current (DC) impact wrench.  A DC impact wrench is an electrically powered version of the pneumatic wrenches that are used in garages to remove lug nuts from tires.  Tesla has never designed, manufactured or sold an impact wrench.

The products that Minnick and Hollingsworth sought to buy from Tesla were standardized female NATO receptacles, a power-coupling device manufactured to NATO specifications.  These receptacles are used in every United States, NATO and allied military vehicle to permit any electric device to interphase with any other vehicle or power supply.

When Hollingsworth initially contacted Tesla, Hollingsworth was put into contact with Defendant Waldmann, who was then a salesman with Tesla.  Mr. Waldmann, with the express knowledge and approval of Tesla management, proceeded to assist Hollingsworth, Minnick and D.C. Power Equipment with the development of D.C. Power Equipment's impact wrench so that they would purchase Tesla products as an accessory to that tool.  A non-disclosure agreement

was signed by D.C. Power Equipment's President, Kent Huffman, and Defendant Waldmann, so that Defendants Minnick and Hollingsworth could send the prototype of the D.C. Power Equipment impact wrench to Tesla.

Waldmann reported all of his contacts with Minnick and Hollingsworth to his superiors at Tesla. He logged his contacts in written "call reports" and "travel itineraries." In the ordinary course of his duties, he showed D.C. Power Equipment's impact wrench to his co-workers and superiors, he engaged in a least one videotaped conversation with Tesla President, David Masilotti, regarding collaborating on the impact wrench project and he stored the D.C. Power Equipment prototype wrench in plain sight at Tesla for two months.

The tool development project among Minnick, Hollingsworth and D.C. Power Equipment did not progress as well as everyone had hoped, and the project was shelved by D.C. Power Equipment. As a consequence of the lack of progress, Defendants Minnick and Hollingsworth decided to form a company (New Millennium Tools, Inc.) to manufacture their own impact wrench, and continued to communicate with Waldmann to purchase Tesla products for use with New Millennium Tool's version of an impact wrench. They continued their consulting work with D.C. Power Equipment, however.

At some point in the Fall of 2005, Waldmann had an employment dispute with Masilotti. As a result of that dispute, Masilotti accused Waldmann of improper conduct, including alleged theft of trade secrets. These accusations became the nucleus of the suit against all Defendants.

D.C. Power Equipment terminated Minnick when Tesla sued. Hollingsworth quit.

Prior to the time they retained the undersigned counsel, the NMT Defendants, *pro se*, were in direct communication with Tesla counsel, Brian A. Sullivan, regarding the case. They cooperated with Mr. Sullivan's requests, returning a Tesla receptacle upon his demand and

2

providing him with substantive information regarding their communications with Waldmann. Mr. Sullivan, however, deceived the NMT Defendants into signing the Stipulated Restraining Order (D.I. 22) under the false promise of dismissing them from the case if they signed it. It was only after the Court's February 3, 2003, hearing on the Stipulated Restraining Order, after they had transmitted signed copies of the Order to Mr. Sullivan and after Tesla had filed the Order for the Court's signature that, on February 17, 2006, Mr. Sullivan finally advised the NMT Defendants that they would not be dismissed from the case and that they should retain counsel.

Since the underlying events, Minnick has operated New Millennium Tools with Hollingsworth acting as a technical consultant. In the Fall of 2006, approximately ten months after Tesla brought suit, they engaged Waldmann to help market their impact wrench, called the LUGMASTER™.

## II.     CONTESTED FACTS

The contested facts are set forth in attachment 2(b) to the Final Pretrial Order, in accordance with the standing Final Pretrial Order procedures (3/29/2007 revision).

## III.    THEORY OF DEFENSES AND LIABILITY FOR COUNTERCLAIMS

### A.     Substantive Defenses

#### 1.     Tesla's Trade Secrets Claims Must Fail

The contours of Tesla's trade secrets claims have been a moving target throughout discovery. To date, the NMT Defendants cannot be certain of the nature or basis for Tesla's claims of trade secrets. There are, however, apparently two product groups and customer lists that are included among Tesla's allegations. Because the product groups and customer lists represent public information and Tesla authorized Defendant Waldmann to assist the NMT Defendants with this information, Tesla's claims must fail.

There is also an overarching Constitutional defect in Tesla's trade secrets claims. Tesla's trade secrets claims embody the implicit proposition that it has the exclusive right to do business with the United States government in connection with any products that it currently sells or may sell in the future; and, hence, the right to exclude potential competitors, such as the NMT Defendants. Tesla's implicit proposition and, thus, its trade secrets claims fail because of the recognized right to bid on government business.

### a)     Publicly Available Information on Standardized, Commercially Available Products Cannot Constitute a Trade Secret

The principal Tesla product group at issue are standardized NATO Connectors, referred to interchangeably by Tesla as a plug or receptacle. These are commercially available products, manufactured to NATO specifications and advertised in detail on the Internet. There are a variety of manufacturers of these standardized connectors and they have been available on the market for decades. Tesla advertises its own version of the receptacle on its Internet site.

Tesla's other claims appear to relate to power storage devices. In addition to the fact that there is no colorable evidence that Defendant Waldmann ever transmitted information concerning these devices to the NMT Defendants (as with the standardized NATO Connectors), these generic devices have been publicly sold by Tesla, and others, for years.

It is a universally recognized principle of trade secrets law that information readily ascertainable from an examination of a product on public sale or display is not a trade secret.[1]

---

[1] *See, e.g.*, Restatement (Third) of Unfair Competition § 39 (Definition of Trade Secret) Cmt. f (1995); *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 604 (7th Cir. 2001) (use of publicly available resin did not implicate trade secrets); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 750 (2d Cir. 1998) (shape of bottles not trade secret because the bottles were readily observable in the marketplace); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004) (stent and blueprint of its design not a trade secrets since the product was already public and on the market*); Permagrain Prod., Inc. v. U.S. Mat & Rubber Co., Inc.*, 489 F. Supp. 108, 112 (E.D. Pa. 1980)
*(continued . . .)*

Here, Tesla is asserting the existence of trade secrets in products it and other companies sold before the alleged misappropriation occurred.

Furthermore, the NATO Connectors are a standardized device, made to military specifications. Information that is in the public domain cannot be appropriated by a party as its proprietary trade secret. *Store Tech. Corp. v. Custom Hardware Eng'g. & Consulting, Inc.*, 421 F.3d 1307, 1319 (Fed. Cir. 2005).

### b) Government Contracts and Contracting Sources Cannot Constitute a Trade Secret

Tesla claims that the NMT Defendants stole its customers' lists. *See, e.g.*, Verified Complaint, p.8-9 ¶ 14(A)-14(B). This allegation is entirely without basis in fact or law.

Tesla is a government contractor to the United States military. Until recently, it posted the military units to which it sold its products on its Internet site. Moreover, as a public government contractor, all of Tesla's sales to the military are public knowledge. The lists of its sales are publicly available on the Internet. Inputting Tesla's publicly available contractor identifier (called a "Cage Code") into the Defense Logistic Agency's Internet site reveals a complete list of Tesla's contracts. *See* https://progate.daps.dla.mil/home/. The Army units to which Tesla's sells are also all listed on the Internet. (*See, e.g.*, http://www.amc.army.mil/amc/rda/rda-ap/aqnnews.html (link for "Army DODAAC/Location Cross Reference.).) Finally, the NMT Defendants have received, and continue to receive, copies of Tesla's government contracts through Freedom of Information Act requests.

---

*(. . . continued)*
(technology employed in manufacturing vinyl-laminated wood floor covering was not a trade secret because, *inter alia*, a sample could be dissected to reveal its component parts).

The party claiming a customer list as a trade secret has the burden of establishing the list's status as a trade secret. *See Bradbury Co., Inc. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1225 (D. Kan. 2006). [A customer list] does not qualify as a protected trade secret . . . [where] it is reproducible from sources already in the public domain. *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *18 (Del. Ch. Oct. 23, 2002). *See also Tao of Sys. Integration, Inc. v. Analytical Serv. & Materials, Inc.*, 330 F. Supp. 2d 668, 678 (E.D. Va. 2004) (information obtainable by Freedom of Information Act requests not a trade secret); *Am. Hearing Aid Assoc., Inc. v. GN ReSound North Am.* 309 F. Supp. 2d 694, 704 (E.D. Pa. 2004) (customer lists reproducible from Internet information not a trade secret); *Panther Sys. III, Ltd. v. Panther Computer Sys., Inc.*, 783 F. Supp. 53, 67-70 (E.D.N.Y. 1991) (identity of public entities that solicit public bids are not trade secrets).

The only purported secret customer list identified consists of military units to which Tesla's sells one of its products. Tesla, thus, is arrogating to itself the role of the sole military contractor with regard to any product that it currently sells or may sell in the future. This is a manifestly unreasonable interpretation of trade secrets laws.

The identities of public employees who purchase products for the military, however, cannot, by nature, represent a trade secret.[2] For example, in *SI Handling Sys., Inc. v. Heisley*,

---

[2] *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467-68 (5th Cir. 2003) (lists of reinsurance market customers were not trade secrets because participants in reinsurance market freely disclosed the identity of their reinsurance broker and the nature of the reinsurance products they regularly purchased); *Fox Sports Net N. v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) (knowledge of industry contact people does not rise to the level of a trade secret because this type of information is readily ascertainable within a trade); *Ikon Office Solutions, Inc. v. Am. Office Prod., Inc.*, 178 F. Supp. 2d 1154 (D. Or. 2001)(knowledge of names of contact persons of customers of former employers was not a trade secret where there were only a few dozen names at issue, and a competitor could obtain those names simply by calling each company and inquiring of the name of the contact person); *Inflight Newspapers, Inc. v. Magazine In-Flight, LLC*, 990 F. Supp. 119, (E.D.N.Y. 1997) (airline magazine distributor's customer lists were not entitled to trade secret protection where identities of magazine publishers and in-flight personnel could be easily ascertained – there were a limited number of key personnel and . . .

*(continued . . .)*

753 F.2d 1244 (3d Cir. 1985), the Third Circuit held that where information sought to be protected related to a single prominent buyer that was presumably well aware of its own needs, and which naturally would choose from among competing sellers, identification of that customer's needs could not be a trade secret. *Id.* at 1259 (knowledge of the needs of General Motors not entitled to protection). Here, Tesla seeks to transform the purchasing needs of the United States military into proprietary information.

**c)** **Tesla Authorized Defendant Waldmann's Interaction with the NMT Defendants and Nothing the NMT Defendants Received Was Identified as Confidential**

The evidence shows that, at all times relevant herein, Tesla management was aware that Defendant Waldmann was working with the NMT Defendants and approved of his activities. Even were Tesla able to establish the existence of trade secrets that were misappropriated by Defendant Waldman, it could not establish the NMT Defendants' liability for that misappropriation.

A defendant who receives trade secret information from someone other than the plaintiff is not liable for misappropriation unless the plaintiff can show that he defendant knew or had reason to know that he information was a trade secret and that the disclosure was unlawful. *See* 6 Del. C. § 2001(2)(b)(2); *PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663, 673-675 (Cal. App. 2000); Restatement (Third) of Unfair Competition § 40 (Appropriation of Trade Secrets), Cmt. d (1995). Here, Defendant Waldmann was cloaked with apparent authority as a salesman by Tesla, the NMT Defendants believed that they were dealing with a Tesla salesman to purchase a product

---

*(. . . continued)*

distributor did not gain the list through extraordinary effort or expensive advertising); *Innovative Networks, Inc. v. Young*, 978 F. Supp. 167, 181-82 (S.D.N.Y. 1997) (customer list not a trade secret where there were only a limited universe of companies that were appropriate customers and the names of those companies were readily obtainable from public sources).

7

complimentary to their own from Tesla and none of the information Waldmann provided to the NMT Defendants was stamped "confidential," "trade secret" or otherwise contained indicia that the information was not available to prospective commercial purchasers of Tesla's products, such as the NMT Defendants.

> **d)**    **The NMT Defendants Have a Constitutionally Protected Right to Compete for U.S. Government Business That Cannot Be Enjoined by Tesla**

Tesla seeks to prevent the NMT Defendants from seeking to sell related products to, *inter alia*, to the United States government.   *See* Exhibit H to Verified Complaint (government generated list of sales by Tesla to the United States government).   Tesla's endeavor to restrain such commerce is anathema to the First and Fifth Amendments.   Individuals and corporations have liberty and property interests under the Due Process Clause of the Fifth Amendment to sell to the federal government. *See Trifax Corp. v. D.C.*, 314 F.3d 641, 643 (D.C. Cir. 2003); *Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397, 1401 (9th Cir. 1993). Injunctions under intellectual property laws cannot be used as a means of preventing the exercise of these protected rights. *See, e.g., CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456, 459-463 (4th Cir. 2000) (vacating injunction under federal trademark law on First Amendment Grounds).

> **2.**    **Conversion Is Preempted by the Trade Secrets Act**

The plain language of the Delaware Trade Secrets Act provides for the preemption of conflicting tort, restitutionary and other laws of the State providing for civil remedies for misappropriation of a trade secret. *See* 6 Del. C. § 2007(a). This preemption applies to the tort of conversion. *See Sanirab Corp. v. Sunroc Corp.*, 2002 WL 1288732, at *4 (Del. Super. Apr. 29, 2002) ("A claim for conversion does not apply when the Trade Secrets Chapter of the Delaware code can be invoked."). *See also Callaway Golf Co. v. Dunlop Slazenger Group Am.*,

8

*Inc.*, 318 F. Supp. 2d 216, 219-20 (D. Del. 2004) (applying California iteration of the Uniform Trade Secrets Act).

### 3.    Civil Conspiracy Liability Is Unavailable, Procedurally and Substantively

Tesla must fail as a matter of law for two reasons.  First, as with conversion, civil conspiracy is preempted by 6 Del. C. § 2007.  *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002).  Second, civil conspiracy is not an independent cause of action in Delaware.  *See Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del 2006).

### B.    Affirmative Defenses

The NMT Defendants Assert seven affirmative defenses:  1) failure to state a claim; 2) failure to identify trade secret information; 3) authorization; 4) unclean hands; 5) waiver; 6) estoppel; and 7) acquiescence.  *See* Answer and Counterclaims (D.I. 27) at 9-10.  The defenses of failure to state a claim, failure to identify trade secret information, authorization, waiver, estoppel and authorization are, in essence, the substantive corollaries to the NMT Defendants' substantive defenses.

The NMT Defendants' unclean hands defense relates to the misconduct they allege by Tesla.  *See generally, Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., Inc.*, 343 F. Supp. 2d 272, 321 (D. Del. 2004) (examining elements of this affirmative defense).  In addition to the improper conduct by counsel for Tesla in deceiving the NMT Defendants into entering into a Stipulated Restraining Order, there has been a panoply of misconduct by Tesla's agents in the pursuit of its claims.  This includes, but is not limited to:  secret tape recordings by Tesla employees in violation of Pennsylvania law; unlawful demands for administration of a lie detector test; and interception of stored electronic mail communications in violation of federal law.

### C.    Counterclaims

#### 1.    Declaratory Judgment of No Trade Secrets

The NMT Defendants seek a declaratory judgment under federal (28 U.S.C. § 2201-02) and Delaware laws (6 Del. C. § 6501, et seq.) that Tesla's products and information do not constitute trade secrets. This claim is a procedural corollary of their first defense. For the reasons set forth above in their examination of the NMT Defendants' defenses, the matters alleged by Tesla simply do not constitute trade secrets as that term is understood under the Uniform Trade Secrets Act.

#### 2.    Abuse of Process

The NMT Defendants allege that the case at bar represents abuse of process. *See* Counterclaim II (D.I. 27 at 15). The gravamen of the tort of abuse of process is not wrongfulness of the prosecution of the case, but some extortionate perversion of lawfully initiated process to illegitimate ends. *Heck v. Humphrey*, 512 U.S. 477, 487 n.5 (1994). The two elements of a claim for abuse of process in Delaware are: 1) an ulterior purpose and 2) a willful act in the use of the process not proper in the regular course of the proceedings. *Weirs v. Barnes*, 925 F. Supp. 1079, 1093 (D. Del. 1996). Applying Pennsylvania law, the Court held that the first element may be proven by circumstantial evidence. *Rushton v. Shea*, 419 F. Supp. 1349, 1368 (D. Del. 1976).

The ulterior motives claimed by the NMT Defendants include inflicting financial hardship on them, preventing them from engaging in their business and obtaining discovery on Tesla's claims against Defendant Waldmann. In furtherance of its ulterior motives, Tesla: filed the entire case secretly (*see* Motion to Seal, D.I. 1), forcing the Defendants to expend additional resources and the Court to intervene, *sua sponte*, to lift the unwarranted veil of secrecy (*see* May 9, 2006, Order unsealing case, D.I. 35); acquired a Stipulated Restraining Order (*see* D.I. 22)

against the NMT Defendants through trickery by its counsel when the NMT Defendants were unrepresented by counsel; had its President, David Masilotti, verbally assault Defendant Waldmann on the record during Defendant Waldmann's deposition, calling him "retarded" (*see* D.I. 86); and have abused the discovery process in their campaign against Defendant Waldmann. *See, e.g.*, Discovery Letters, D.I. 65 and 118. This pattern is a more than sufficient predicate for an abuse of process claim. *See, e.g., Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304-08 (3d Cir. 2003) (scholarly analysis concluding that using legal process primarily to harass and cause direct injury to adversary could constitute perversion of that process under Pennsylvania law).

### 3.    Unfair Trade Practices

The NMT Defendants have brought claims for common law (*see* Counterclaim VI, D.I. 27 at 21) and statutory (*see* Counterclaim VII, *id.* at 22) unfair trade practices by Tesla. The essence of common law unfair competition is an unfair act on the part of the defendant by which the defendant prevents the plaintiff from earning revenue. *EDIX Media Group, Inc. v. Mahani*, 2006 WL 3742595, at *11 (Del. Ch. Dec. 12, 2006). Recovery for Delaware statutory unfair trade practices is available where, as here, a corporation "[d]isparages the goods, services, or business of another by false or misleading representation of fact" (*see* 6 Del. C. § 2532(8)) or "[e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (*Id.* at § 2532(12)).

### 4.    Antitrust

The NMT Defendants also have brought an antitrust claim against Tesla under the Clayton and Sherman Acts for attempted monopolization. *See* Counterclaim III, D.I. 27 at 17. To succeed under the Sherman Act in a claim for attempted monopolization, the plaintiff must prove that the defendant:  1) engaged in predatory or anticompetitive conduct with 2) the specific

intent to monopolize and with 3) a dangerous probability of achieving monopoly power. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997). Tesla has admitted in pleadings that it is a sole source supplier of several products to the U.S. Government that it is attempting to prevent the NMT Defendants from marketing. *See, e.g.,* D.I. 154 at 2. The NMT Defendants, thus, have established Tesla's intent to monopolize and a dangerous probability of success.

The antitrust claim is the subject of a pending Motion for Partial Judgment on the Pleadings, or, in the Alternative, Partial Summary Judgment based upon Tesla's admissions to the factual averments in this Counterclaim. *See* D.I. 106. Tesla's statements in its pleadings are binding admissions. *See, e.g.*, *Phila. Reinsurance Corp. v. Employers Ins. of Wausau*, 61 Fed. Appx. 816, 819 (3d Cir. 2003); *Giannone v. U. S. Steel Corp.*, 238 F.2d 544, 547-48 (3d Cir. 1956); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, at *6 (D. Del. Sept. 22, 2006). Indeed, even were Tesla's untimely Motion to Amend these admissions (*see* D.I. 129) to be granted, the admissions would still represent admissible evidence against Tesla. *See Giannone*, 238 F.2d at 547-48.

## IV.    THEORY OF DAMAGES

### A.    Defense Against Tesla's Claims

The NMT Defendants contest the factual foundation of Tesla's damages claims in addition to their legal availability. The NMT Defendants have filed a Motion in Limine to exclude Tesla's unverifiable financial records (*see* D.I. 137) and Waldmann has filed a Motion in Limine to Exclude certain categories of damages. *See* D.I. 140. The NMT Defendants have filed a *Daubert* motion seeking to exclude the unreliable testimony of Tesla's proposed damages expert and the lay damages testimony of its President, Mr. Masilotti. *See* D.I. 170 and 171.

A plaintiff must prove its damages with a reasonable degree of precision. *Kronenberg v. Katz*, 872 A.2d 568, 609-10 (Del. Ch. 2004). Speculative damages are not recoverable. *Chemipal Ltd. v. Slim-Fast Nutritional Foods, Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004). With no admissible damages documents and no legally competent damages testimony, Tesla's damages claims fail. Furthermore, the NMT Defendants contend that Tesla has not, and cannot, establish proximate causation for its claimed lost sales, lost production, delays in deliveries, and loss of normal growth opportunities. *See Deville Court Apartments, L.P. v. Fed. Home Loan Mortgage Corp.*, 39 F. Supp. 2d 428, 432-33 (D. Del. 1999).

Tesla's damages claims include categories of damages that are not even recoverable. For example, Tesla claims damages for the times its President and employees have spent dealing with this litigation and for subsequent security measures after Waldmann was fired. Costs incurred for remedial measures in a trade secrets case involving a departing employee, however, are not available as damages. *See Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894, 932-33 (10th Cir. 1975).

Tesla's claim for punitive damages must fail because Tesla's fails to establish willful or wanton conduct sufficient under Delaware substantive law to justify the imposition of punitive damages. *See Thurston v. Liberty Mut. Ins. Co.*, 16 F. Supp. 2d 441 (D. Del. 1998) (punitive damages will not be available based solely upon a showing that the defendant took a stance that was unreasonable or unjustified or that the conduct was intentional, unless the intentional act is similar in character to an intentional tort); *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 527 (Del. 1987) (absent evidence raising a reasonable inference of conduct meeting the standard justifying punitive damages, the party against whom punitive damages are sought must be awarded a directed verdict or judgment as to punitive damages).

**B.**    **In Support of Counterclaims**

Subject to the "new business rule" limitations on proving lost profits for a business with no earnings history,[3] the NMT Defendants' principal damages claims are attorneys' fees. Attorneys' fees are available as a substantive element of compensatory damages for abuse of process (*see* Del P.J.I. Civ. § 22.12(3) (2000)) and common law unfair trade practices. Attorneys' fees and costs are recoverable by the NMT Defendants under Fed. R. Civ. P. 54(d)(2) (attorneys' fees as post-trial costs), pursuant to 6 Del. C. § 2004 (Attorneys' Fees in Bad Faith Trade Secret Cases), Counterclaims I (Declaratory Judgment of No Trade Secrets), III (Antitrust (Sherman and Clayton Acts)) (*see* 15 U.S.C. § 15(a)), and VII (Unfair Competition – State Statutory Law) (*see* 6 Del. C. § 2533(b)).

The NMT Defendants are claiming compensatory damages under their abuse of process claim damages for the harm to their reputation for Defendants Minnick, Hollingsworth and New Millennium Tools, Inc. of $10,000 each.  (*See* Del. P.J.I. Civ. § 22.12(2) (2000).)  They are also seeking compensatory damages for emotional distress for Defendants Minnick and Hollingsworth each in the amount of $100 per day the case has been pending.  (*See* Del. P.J.I. Civ. § 22.12(5) (2000).)

The NMT Defendants are also seeking compensatory damages under their abuse of process (*see* Del. P.J.I. Civ. § 22.12(3)) and state common law unfair competition claims for their attorneys' fees and costs in this litigation.  At the time of the submission of this Brief, the NMT Defendants' attorneys' fees and costs are approximately $485,000.  This is expected to rise to approximately $675,000 by the close of trial.

---

[3] *See, e.g., Re v. Gannett Co., Inc.*, 480 A.2d 662, 668 (Del. Super. Ct. 1984), *aff'd*, 496 A.2d 553, 558-559 (Del. 1985) (generally, evidence of expected profits from a new business is too speculative, uncertain and remote to be considered where there is no history of prior profits).

There are also enhancements to the compensatory damages available. Both the Delaware unfair trade statute (*see* 15 U.S.C. § 15(a)) and federal antitrust laws (*see* 6 Del. C. § 2533(c)) provide for treble damages.[4]

Finally, the NMT Defendants seek punitive damages under their abuse of process (*see Stevens v. Indep. Newspapers, Inc.*, 1986 WL 13086 (Del. Super. Ct. Nov. 13, 1986)) and common law unfair trade practices claims. *See Taussig v. Wellington Fund, Inc.*, 187 F. Supp. 179, 221 (D. Del. 1960). Based upon Tesla's purported revenues and the nature of the misconduct alleged, the NMT Defendants will collectively seek an even $1,000,000 in punitive damages.

## V.    ANTICIPATED MOTION FOR JUDGMENT AS A MATTER OF LAW AND TO VACATE STIPULATED RESTRAINING ORDER

The NMT Defendants anticipate moving for judgment as a matter of law on the following bases: 1) that none of the information claimed as a trade secret by Tesla is a trade secret; 2) that Tesla's conversion and conspiracy claim are subsumed in its trade secrets claim; and 3) that Tesla has not established that the NMT Defendants knew or had reason to know that the material and information received from Defendant Waldmann constituted a trade secret. In the alternative, The NMT Defendants will move for judgment as a matter of law on Tesla's damages claims.

The NMT Defendants will also move to vacate the Stipulated Restraining Order. *See* D.I. 22. This Order, obtained by Tesla by on false pretenses, fails on its face to comply with Fed. R. Civ. P. 65(d) and, as applied, results in a deprivation of the NMT Defendants' First and Fifth Amendment rights.

---

[4] As the treble damages provision of the Delaware unfair trade statute is, essentially, a punitive provision, punitive damages are not also available under that statute. *See Roberts v. Am. Warranty Corp.*, 514 A.2d 1132, 1134-35 (Del. Super. Ct. 1986).