# SCHEDULE J-1 (PART 1 OF 2)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 06-55 |
| DAVID C. WALDMANN, LYNDOL W. HOLLINGSWORTH, CHARLES MINNICK a/k/a CHUCK MINNICK, and NEW MILLENNIUM TOOLS, INC., an Oregon Corporation, | ) ) ) ) ) | |
| Defendants. | | |

## SCHEDULE J-1 TO PRETRIAL ORDER

## JOINT PROPOSED JURY INSTRUCTIONS

Dated:

**Table of Contents**

**1. Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial.**

    1.1  Introduction; Role of Jury

    1.2  Description of Case; Summary of Applicable Law

    1.3  Conduct of Jury

    1.4  Bench Conferences

    1.5  Evidence

    1.6  Direct and Circumstantial Evidence

    1.7  Credibility of Witnesses

    1.8  Jury Questions for Witnesses

    1.9  Note-Taking By Jurors

    1.10  Preponderance of the Evidence

    1.11  Clear and Convincing Evidence

    1.12  Description of Trial Proceedings

**2. General Instructions For Use During Trial**

    2.1  Impeachment of Witness's Character for Truthfulness

    2.2  Judicial Notice

    2.3  Stipulation of Testimony

    2.4  Stipulation of Fact

    2.5  Use of Deposition

    2.6  Use of Interrogatories

2.7    Charts and Summaries in Evidence

2.8    Charts and Summaries Not Admitted in Evidence

2.9    Striking Evidence

2.10   Evidence Admitted for a Limited Purpose

2.11   Opinion Testimony

2.12   Foreign Language Testimony or Tape-Recording

2.13   Transcript of Tape Recorded Conversation

2.14   Recess Admonition

## 3.  General Instructions For Use At End of Trial

3.1     Deliberations

3.2     Number of Witnesses

3.3     Violations of Uniform Trade Secrets Act

3.4     "Trade Secret" Definition

3.5     "Misappropriation" Definition

3.6     Breach of Contract

3.7     Conversion

3.8     Tortious Interference with Prospective Contractual Relations

3.9     Conspiracy

3.10    Read-Backs of Testimony

3.11    Deadlock

## 1.1  INTRODUCTION AND DUTIES OF THE JURY

## INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

## DUTIES OF THE JURY

So, let me begin with these general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.[1]

---

[1] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.2  DESCRIPTION OF CASE

### THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each party contends.

The parties in this case are the Plaintiff, Tesla Industries, Inc., and the Defendants, Mr. David Waldmann, Mr. Lyndol Hollingsworth, Mr. Charles Minnick and New Millennium Tools, Inc.

In this case, Plaintiff Tesla Industries, Inc. alleges that its former employee, Defendant David Waldmann, stole trade secrets and provided those trade secrets to Defendants Charles Minnick, Lyndol Hollingsworth, and a company that Mr. Minnick founded, New Millennium Tools, Inc. All of the defendants deny these allegations. Defendants Charles Minnick, Lyndol Hollingsworth and New Millennium Tools, Inc. allege that Tesla's lawsuit represents an abuse of process, unfair trade practice and antitrust violations, and have brought counterclaims against Tesla. Defendant Waldmann alleges that Tesla violated the Delaware Wage Payment Statutes, the Employee Retirement Income Security Act, the Federal Electronic Communications Privacy Act, the Delaware Electronic Surveillance and Interception of Communications Act, and Delaware personnel file inspection statutes, as well as claims for breach of contract, intrusion of privacy, conversion, abuse of process, and unlawful discharge. Tesla denies the allegations in the counterclaims by the Defendants.

If appropriate, you will be asked to determine the amount of money damages necessary to compensate the plaintiff on its claims or defendants on their counterclaims for all of their injuries.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.3    **CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your

memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.[*]

---

[*] *Source*:  The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.4  **BENCH CONFERENCES**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is  to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. [While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.]

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 1.4

## 1.5    **EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court --you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

10

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.6   DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.[*]

---

[*]   *Source*:   Third Circuit Model Civil Jury Instructions 1.6

12

## 1.7    CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness' credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests: the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.[*]

---

[*] *Source*:  The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.8   <u>JURY QUESTIONS FOR WITNESSES</u>

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.[*]

---

[*] *Source*:   Third Circuit Model Civil Jury Instructions 1.8

## 1.9   NOTE-TAKING BY JURORS

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.      Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.      Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3.      Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow

juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Noted are not to be used in place of the evidence.

4.     Do not take your notes away from court. I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."]*

---

* *Source*: Third Circuit Model Civil Jury Instructions 1.9

## 1.10    PREPONDERANCE OF THE EVIDENCE

This is a civil case. Tesla Industries is the party that brought this lawsuit. Defendants David Waldmann, Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools, Inc., are the parties against which the lawsuit was filed. Tesla Industries has the burden of proving its case by what is called the preponderance of the evidence. That means Tesla Industries has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Tesla Industries and the evidence favorable to the defendants on opposite sides of the scales, Tesla Industries would have to make the scales tip somewhat on its side. If Tesla Industries fails to meet this burden on any particular claim, the verdict on that claim must be for the defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, the defendants have the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that the defendants have succeeded in proving that the required facts are more likely so than not so.

The defendants have also brought claims for relief against Tesla Industries, called counterclaims. On these claims, the defendants have the same burden of proof as has Tesla Industries on its claims.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases only. It does not apply in civil cases such as this. So you should put it out of your mind.[*]

---

[*]  *Source*:   Third Circuit Model Civil Jury Instructions 1.10

## 1.11    COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases.  We have already been through the first phase, which was to select you as jurors.  The remaining stages are:

(2)    These preliminary instructions to you;

(3)    Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)    The presentation of the evidence which wilt include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)    My final instructions on the law to you;

(6)    The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)    Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.[*]

---

[*] *Source*:  The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.12    WHAT IS NOT EVIDENCE

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.44 (5th ed.)

20

## 1.13    <u>JUDGE'S QUESTIONS TO WITNESSES</u>

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.30 (5th ed.)

21

**1.14**     **JUDGE'S COMMENTS TO LAWYER**

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

22

### 1.15  ADMISSIONS IN PLEADINGS (NMT)

Before the trial began, the parties filed written statements with the court describing their claims and defenses. These statements are known as pleadings. In their pleadings, the parties have admitted certain facts, which you will take as true for purposes of this case.  The admitted facts that you will take as true include the following facts:

1.      In many instances, Tesla has no competitors.  Tesla is the sole source supplier for many of its products that it sells to the United States armed forces.  (D.I. 154 at 2.)

2.      Through its anticompetitive practices, Tesla Industries is attempting intentionally to monopolize the relevant product and geographical markets.  (Tesla's Answer to Counterclaims at ¶ 36.)

3.      Rather than competing by designing, producing and selling a superior product, Tesla Industries has instead attempted to monopolize the market by improper and unlawful actions.  For example, by filing this sham lawsuit, Tesla Industries threaten improperly to destroy competition in the relevant market from which the United States military, including those members serving in combat, benefit through better products and support.  (Tesla's Answer to Counterclaims at ¶ 37.)

4.      The acts of Tesla Industries represent an attempt to monopolize the trade in violation of the Sherman Act, 15 U.S.C. § 2.  (Tesla's Answer to Counterclaims at ¶ 38.)

5.      As a direct and proximate result of Tesla Industries' attempt at monopolization, the NMT Parties suffered and continue to suffer injuries and damages to its business and property as set forth in the Clayton Act, 15 U.S.C. § 15(a).  (Tesla's Answer to Counterclaims at ¶ 39.)

6.    As a direct and proximate result of Tesla Industries' conduct as described herein, the NMT Parties has or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, lost capital infusion, expenses related to defending against this litigation including, *inter alia*, attorneys fees and costs.  (Tesla's Answer to Counterclaims at ¶ 40.)

You will take these admitted facts to be true for purposes of this case.[*]

**Tesla Objection**:    Purported admissions were not made.  Argumentative.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 101.46 (5th ed.)

*Authority*: *Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau*, 61 Fed. Appx. 816, 819 (3d Cir. 2003); *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547-48 (3d Cir. 1956); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882 * 6 (D. Del.) (Sleet, J.).

## 1.16    STIPULATIONS AT PRETRIAL CONFERENCE

Before the trial of this case, the court held a conference with the lawyers for all the parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof.

The stipulated facts are as follows:

*[Read stipulations.]*

Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.47 (5th ed.)

25

## 1.17    <u>TRIAL SCHEDULE</u>

Though you have heard me say this during the *voir dire*, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take ___ days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 p.m. We will post a copy of this schedule for the your convenience in the jury deliberation room.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 2.1  <u>JUDICIAL NOTICE</u>

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact. You must accept this fact as true for purposes of this case.[*]

---

[*]  *Source*:   Third Circuit Model Civil Jury Instructions 2.2

## 2.2    <u>STIPULATION OF TESTIMONY</u>

The parties have agreed that if [witness's name] were called as a witness, [he/she] would testify that [state the stipulated testimony]. This testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if [name of witness] had been present to testify. You must accept the fact that [name of witness] would have given that testimony. However, it is for you to determine the effect or weight to be given to that testimony.[*]

---

[*] *Source*:   Third Circuit Model Civil Jury Instructions 2.3

28

## 2.3    DEPOSITION AS SUBSTANTIVE EVIDENCE

Testimony will now be presented through a deposition. A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial. A witness' testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness' deposition testimony.   Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read/shown to you today.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.[*]

---

[*]   *Source*:  3 Fed. Jury Prac. & Instr. § 102.23 (5th ed.)

29

## 2.4    USE OF INTERROGATORIES AT TRIAL

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.24 (5th ed.)

## 2.5  <u>CHARTS AND SUMMARIES IN EVIDENCE</u>

[Name of party] has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instruction 2.7

## 2.6    CHARTS AND SUMMARIES NOT ADMITTED IN EVIDENCE

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. [Describe the charts and summaries that have not been admitted.] These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.[*]

---

[*]    *Source*:   Third Circuit Model Civil Jury Instructions 2.8

## 2.7  <u>STRIKING EVIDENCE</u>

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony].   That means that when you are deciding the case, you must not consider that information [testimony] in any way.[*]

---

[*]  *Source*:   Third Circuit Model Civil Jury Instructions 2.9

## 2.8  EVIDENCE ADMITTED FOR A LIMITED PURPOSE

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 2.10

## 2.9  OPINION TESTIMONY

You have heard [will hear] testimony containing opinions from [name of witness].  In weighing this opinion testimony, you may consider  [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness]  testifies regularly and makes a large portion of [his/her] income from testifying in court].[*]

---

[*]  *Source*:   Third Circuit Model Civil Jury Instructions 2.11

35

## 2.10    <u>JUDGE'S COMMENTS TO LAWYER</u>

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

## 2.11    <u>OBJECTIONS AND RULINGS</u>

Testimony and exhibits can be admitted into evidence during a trial only if it meets certain criteria or standards. It is the duty of the lawyer on each side of a case to object when the other side offers testimony or an exhibit that the lawyer believes is not properly admissible under the rules of law. Only by offering an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence being offered by the other side. You should not be influenced against any lawyer or the lawyer's client because the lawyer has made objections.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.71 (5th ed.)

## 2.12    <u>JUDGE'S QUESTIONS TO WITNESSES</u>

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions. I may ask a question simply to clarify a matter, not to help one side of the case or hurt another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.72 (5th ed.)

38

## 2.13    JUDGE'S COMMENTS ON CERTAIN EVIDENCE

The law permits a federal judge to comment to the jury on the evidence in a case. Such comments are only expressions of my opinion as to the facts and you may disregard them entirely. You are the sole judges of the facts in this case. It is your recollection and evaluation of the evidence that is important to the verdict in this case.

Although you must follow my instructions about the law applicable to this case, you are totally free to accept or reject my observations concerning the evidence received in this case.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.73 (5th ed.)

## 2.14  <u>RECESS ADMONITION</u>

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet]. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.][*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 2.14

## 3.1    <u>INTRODUCTION</u>

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in this jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants or the plaintiff are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accepts them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (Modified to state "the defendants [or the plaintiff] are liable.").

## 3.2    NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  104.54 (5th ed.); *see also*, Model Civ. Jury Instr. 3rd Cir. § 3.2 (2006), The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.3   VIOLATION OF UNIFORM TRADE SECRETS ACT (Tesla)

Tesla alleges that the defendants violated the Uniform Trade Secrets Act by misappropriating certain trade secrets. For Tesla to prevail on its trade secret claims, it must prove by a preponderance of the evidence: (1) that the information Tesla contends defendants misappropriated was in fact a trade secret owned by Tesla; (2) that defendants knew or had reason to know that the trade secret was acquired through improper means, or through Tesla's disclosure through a confidential relationship, or under other circumstances in which defendants owed a duty not to use or disclose the trade secret; (3) that defendants used and/or disclosed the trade secret without Tesla's express or implied consent; and (4) that Tesla suffered harm as a direct and proximate result of defendants' use or disclosure of the trade secret or any defendant was unjust enriched by such use or disclosure.

If you find that Tesla has established each and all of the foregoing propositions by a preponderance of the evidence as to any of the defendants, then your verdict will be for the plaintiff and against that defendant.

I will first instruct you on what a trade secret is and on what constitutes misappropriation.[*]

**NMT Defendants' Objections:**

Unsupported by cited authority. Incomplete. Argumentative. Confusing. Not supported by Delaware Law.

---

[*]   *Sources*: 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions §127.10 (5th ed. 2000) (modified); 6 *Del.C.* § 2001; *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869 at *6 (Del. Super.); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*, 1987 WL 8459, at *3-4 (Del. Ch.); *Miles Inc. v. Cookson America Inc.*, 1994 WL 676761 (Del. Ch.).

Waldmann joins the foregoing objection.

**3.3    MISAPPROPRIATION OF TRADE SECRETS ESSENTIAL ELEMENTS OF CLAIM (NMT)(Waldmann)**

You are to determine whether any trade secrets have been misappropriated by Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. In order to establish a trade secret violation, Plaintiff Tesla has the burden of proving by a preponderance of the evidence that

One: trade secrets existed;

Two: Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. acquired those secrets as a result of a confidential relationship;

Three: Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. used the secret information without authorization of the plaintiff; and

Four: plaintiff Tesla suffered harm as a direct and proximate result of the Defendants Waldmann's, Hollingsworth's, Minnick's and/or New Millennium Tools, Inc.'s use or disclosure of the plaintiff Tesla's trade secret or Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. gained from such use or disclosure.

Only wrongful use of secret information disclosed in confidence gives rise to liability. To find any or each of the Defendants liable for misappropriation of trade secrets, you must find by the preponderance of the evidence that plaintiff Tesla had specific, identifiable trade secrets that were acquired by Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. as a result of a confidential relationship and that Defendants Waldmann,

Hollingsworth, Minnick and/or New Millennium Tools, Inc. used these secrets in developing or making its product.[*]

**Tesla Objections**:   Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. §  127.10 (5th ed.) (Modified)

**3.4  "TRADE SECRET" DEFINITION  (Tesla)**

The starting point for your inquiry is whether plaintiff Tesla's alleged trade secrets qualify in fact as trade secrets.  You are instructed that you must make this determination for each item of information the Tesla Industries contends to be its trade secret

A trade secret is information, including a formula, pattern, compilation, program, device, method, technique or process, that:

a.    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b.    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A trade secret is still a trade secret even when the employee or person who acquired it had not been specifically told or notified that it was a trade secret.  It must be reasonable under the circumstances for the employee to know or have reason to know the owner expected the secret to be kept.[*]

**NMT Defendants' Objections:**

Inapposite to this action, as cited support is from different jurisdiction.  Argumentative.  Includes elements unsupported by Delaware law.

Waldmann joins the foregoing objection.

---

[*]  *Sources*:  6 *Del.C.* § 2001(4); 4 Minn. Prac., Jury Instr. Guides – Civil CIVJIG 40.20 (5th ed.).

### 3.4    "TRADE SECRETS"—DEFINED (NMT)(Waldmann)

A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business. Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to the public.

In determining whether plaintiff Tesla has proven by a preponderance of the evidence that it possessed specific, identifiable trade secrets, you may consider the following factors:

(1)    The extent to which the information was known outside of plaintiff Tesla's business;

(2)    The extent to which it was known by employees and others involved in plaintiff Tesla's business;

(3)    The extent of measures taken by Tesla to guard the secrecy of the information;

(4)    The value of the information to Tesla and its competitors;

(5)    The amount of effort or money expended in developing the information;

(6)    The ease or difficulty with which the information could be properly acquired or duplicated by others.[*]

**Tesla Objections**:  Argumentative; Includes elements unsupported by Delaware law

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.11 (5th ed.);

*Authority*: *Delaware Express Shuttle* at *69-70; *Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88 at *29-30, (Del. Ch. 1995); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*, 1987 Del Ch. LEXIS 409 at *8-9 (Del. Ch. 1987); RESTATEMENT OF TORTS § 757, Comment b (1939).

## 3.5    "MISAPPROPRIATION" DEFINITION

"Misappropriation" means:

a.    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b.    Disclosure or use of a trade secret of another without express or implied consent by a person who:

   1.    Used improper means to acquire knowledge of the trade secret; or

   2.    At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

      A.    Derived from or through a person who had utilized improper means to acquire it;

      B.    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

      C.    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

   3.    Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[*]

---

[*]    *Source*:  6 *Del.C.* §2001(2).

## 3.6    FACTORS TO DETERMINE WHETHER CONDUCT WAS IMPROPER (NMT)(Waldmann)

You must determine whether or not the accused party's conduct was improper. In doing so, you may consider the following factors:

1. The nature of the accused party's conduct;

2. The accused party's motive;

3. The expectations of the parties involved;

4. The relations between the parties involved;

5. The interest that accused party sought to advance;

6. Whether the accused party's conduct was undertaken for the purpose of causing the interference, or whether the interference was merely incidental to another purpose;

7. The proximity or remoteness of the accused party's conduct to the interference; and

8. The societal interests in protecting the freedom of action of the accused party, and the contractual interest of the other.[*]

**Tesla Objection:**  Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*]  *Authority*:  RESTATEMENT (SECOND) OF TORTS § 767 (1979); RESTATEMENT OF TORTS § 767 (1939).

**3.7    <u>BURDEN OF PROOF</u>**

The burden is on Tesla on this claim to prove by a preponderance of evidence:

1.  That it owns a protectable trade secret;

2.  That Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. misappropriated that trade secret; and

3.  That Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. have used or disclosed or will use or disclose that trade secret to the detriment of Tesla.[*]

---

[*] *Authority*: 12A BUSINESS ORGANIZATIONS, MILGRIM ON TRADE SECRETES, § 7.07[1] (1984).

## 3.8     DERIVES ECONOMIC BENEFIT FROM NOT BEING GENERALLY KNOWN

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal persons who can obtain economic benefit from information are aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.[*]

---

[*] *Authority:* UNIFORM TRADE SECRETS ACT, comment to § 1.

**3.9    <u>EFFORTS THAT ARE REASONABLE UNDER THE CIRCUMSTANCES TO PROTECT ITS SECRECY</u> (NMT)(Waldmann)**

A trade secret must be kept secret. If a matter is commonly known in an industry, Tesla may not claim it as a trade secret. If a matter could be learned by legitimate or proper methods, such as by reading publicly available literature, by discovery by independent invention, by discovery by reverse engineering, by discovery under a license from the owner of the trade secret, by examining publicly available products, or by taking a guided tour of a manufacturing plant, Tesla may not claim it as a trade secret.

On the other hand, the fact that others may know of the information does not necessarily negate secrecy. Tesla may have communicated the information to its employees, and to certain outsiders, such customers and suppliers, without losing its rights, if such disclosure was confidential and necessary to run its business. Tesla, however, must have taken reasonable measures under the circumstances to maintain secrecy.[*]

**<u>Tesla Objection</u>:** No basis in Delaware law.

---

[*] *Authority*: *Kewanee Oil Co.*, 416 U.S. at 475; *Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953); *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173 (D. Ariz. 1973); UNIFORM TRADE SECRETS ACT, comment to § 1.)

## 3.10    INNOCENT DISCOVERY (NMT)(Waldmann)

No misappropriation exists where someone accidentally or mistakenly acquires, for valuable consideration, information without notice of its trade secret status.  After learning of its trade secret status, however, the innocent acquirer is not free to disclose it to anyone else or to expand his use beyond what it was when he learned of its trade secret status.[*]

**Tesla Objection**:    Not based on Uniform Trade Secrets Act as adopted in Delaware.

---

[*] *Authority*:  RESTATEMENT OF TORTS § 758(b), Comments d and e (1939).

55

**3.11    CONSENT (NMT)(Waldmann)**

If you find that Tesla consented to the Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. acquisition and use of its trade secret, there is not misappropriation.  Consent may be express or implied – that is, a trade secret owner may consent by openly granting permission or by acting in manner which a reasonable person could interpret as granting permission.[*]

**Tesla Objection:**    Not based on Uniform Trade Secrets Act as adopted in Delaware.

---

[*] *Authority*: UNIFORM TRADE SECRETS ACT § 1(2)(ii)

### 3.12   WAIVER (NMT)(Waldmann)

Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. contend that Tesla waived any claim it had against them. Defendants contend that, through Defendant Waldmann's reports to his superiors, Tesla became aware of the facts surrounding the disclosure of Tesla's trade secrets and that it voluntarily chose not to object to that activity, but rather continue to permit Defendants to possess that trade secret.

Waiver is defined as the intentional or voluntary relinquishment of a known right, or conduct by a person such that it is reasonable to infer that he intended to relinquish – or give up – a known right. Waiver may also be defined in terms of a voluntary surrender of a right which, but for the waiver, the person would have had against another. Waiver may be express or implied because it defends on intent.[*]

**Tesla Objections**:   Unsupported by Delaware law. Not pleaded with necessary specificity. Not explained during discovery.

---

[*]    *Source*:  Burton, Duane "*Jury Instructions in Intellectual Property Cases* Big Foot Press (2006) (*citing as source*: *Alderman v. Tandy Corporation*, 222 USPQ 806 (11th Cir. 1983).

*Authority*: *See Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 183-84 (5th Cir.1988) ("A disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right of the trade secret."), *FSI Int'l, Inc. v. Shumway*, 2002 WL 334409, *9 (D. Minn. 2002)(because employees had ability to disclose trade secrets on a "need-to-know" basis to third parties not required to sign a confidentiality agreement, Plaintiff had not taken reasonable efforts to maintain secrecy); *Southwest Whey, Inc. v. Nutrition 101, Inc.*, 117 F.Supp.2d 770, 779-80 (C.D.Ill. 2000)(failure to require secrecy of contractors and joint venturer negated trade secrecy, even though each individual contractor was only privy to a small part of the trade secret that was the larger, allegedly secret system); *Motor City Bagels, L.L.C. v. American Bagel Co.*, 50 F.Supp.2d 460, 476, 480 (D.Md. 1999)(disclosure of business plan to potential investors without agreement of secrecy was "inconsistent with recognition of the document as a trade secret")

### 3.13    **ESTOPPEL** (NMT)(Waldmann)

"Estoppel" is a term which has broad application; it basically means that one who, by his deed or conduct, has induced another to act in a particular manner will not be permitted by law to adopt an inconsistent or contrary position, attitude, or course of conduct and thereby cause loss or injury to the other person. Through the use of the legal doctrine of estoppel, a person is precluded from denying the truth of a fact which has in the contemplation of law, become settled by the acts of that person. Estoppel is a doctrine which has been created to prevent injustice, and it is for the protection of those who have been misled by another based on that which, on its face, appeared to be fair.

Here, Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. contend that Tesla, through its actions, led them to believe that they were authorized to possess and use Tesla's alleged trade secrets. Defendants contend that they believed they had a valid non-disclosure agreement with Tesla authorizing their alleged acts, that Tesla publicly advertised that Defendant Waldmann had authority to act on its behalf, that they twice sent the alleged trade secrets back to Tesla and at no time did Tesla cease the alleged trade secrets and when Defendants finally learned that such products were claimed to be trade secrets, Defendants returned them immediately.[*]    Likewise, Defendant Waldmann contends that Tesla, through its actions, authorized Defendant Waldmann to use, possess and disclose Tesla's alleged trade secrets.

**Tesla Objections**:    Unsupported by Delaware law. Not pleaded with necessary specificity. Not explained during discovery.

---

[*] *Source*: Burton, Duane "*Jury Instructions in Intellectual Property Cases* Big Foot Press (2006) (*citing as source*: *Alderman v. Tandy Corp.*, 222 USPQ 806 (11th Cir. 1983).

### 3.14    COMPENSATORY DAMAGES FOR MISAPPROPRIATION

If you should find by the preponderance of the evidence presented that Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. has misappropriated Tesla's trade secrets, you must then determine the amount of damages, if any, that Tesla is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Tesla is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that Tesla is entitled to recover damages.

Tesla has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.14 (5th ed.) (Modified).

59

### 3.15   CONTRACT FORMATION

Tesla Industries has asserted a claim of breach of contract against defendant Waldmann. The claim arises from the employment contract between Tesla and Waldmann, which according to Tesla included a memo entitled "Access to Tesla Industries Technology Resources," and a document entitled "Agreement of Non-Disclosure."

A contract is a legally binding agreement between two or more parties. Each party to the contract must perform according to the agreement's terms. A party's failure to perform a contractual duty constitutes breach of contract. If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim dam ages.

For a legally binding contract to exist, there must be:

1) an offer of a contract by one party;

2) an acceptance of that offer by the other party;

3) consideration for the offer and acceptance; and

4) sufficiently specific terms that determine the obligations of each party.

In this case, Tesla alleges that Waldmann breached a contract by disclosing its Secret and Confidential business information.  In this case, the parties have agreed that there was an offer, acceptance and consideration.  You must determine from a preponderance of the evidence whether there was sufficiently specific terms that determine the obligations of each party.[*]

---

[*]  *Source*: Del. P.J.I. Civ. § 19.1 (2000)

## 3.16    MEETING OF THE MINDS

A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms. Mutual assent is not a subjective or personal understanding of the terms by either party. Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.[*]

---

[*]    *Source*:  Del. P.J.I. Civ. § 19.20 (2000)

### 3.17    CONSTRUCTION OF AMBIGUOUS TERMS - BREACH OF CONTRACT

There are certain rules to consider in interpreting contractual terms that appear ambiguous or unclear.

First, if the party that drafted the language of the contract can be determined, the language must be construed most strongly against that party.

Second, if the contract's language is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, the first interpretation must be preferred.

Third, to determine the parties' intent when there are ambiguous terms, the jury will look to the construction given to the terms by the parties as shown through their conduct during the period after the contract allegedly became effective and before the institution of this lawsuit. The parties' conduct after a contract is made should be given great weight in determining its meaning. Finally, explanatory circumstances existing when the contract was allegedly made may be considered in order to determine the parties' probable intent.[*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.16 (2000)

## 3.18    CONTRACT MODIFICATION

Generally, a written contract may be modified by a later oral agreement. An oral

agreement that modifies a written contract must be specific, direct, and clear about the parties'

intention to change their original agreement. [*]

---

[*]    *Source*:  Del. P.J.I. Civ. § 19.16 (2000)

## 3.19    PERFORMANCE

Performance is the successful completion of a contractual duty and usually results in the performer's release from any past or future liability on the contract. Successful completion of contractual duties simply requires that the terms be satisfied. [*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.17 (2000)

### 3.20    PERFORMANCE PREVENTED BY A PARTY TO THE CONTRACT

A party to a contract may not prevent another party from performing its contractual duties

and then claim that the other party has breached the contract or failed to complete its terms.  For

example, a farmer who contracts with a builder to put up a barn on the farmer's land must make

the land available to the builder so that the work may be done. Likewise, the farmer must not

interfere with the progress of the work.

In this case, you must determine whether Tesla prevented or otherwise interfered with

Waladmann's duty to perform the described terms of the contract. [*]

---

[*]    *Source*:  Del. P.J.I. Civ. § 19.19 (2000)

65

**3.21    BREACH OF CONTRACT DEFINED** (Tesla)

Because Tesla was a party to the contract at issue, Tesla would be entitled to recover damages from Waldmann for any breach of the contract.  To establish that Waldmann is liable to Tesla for breach of contract, Tesla must prove that one or more terms of its contract with Waldmann have not been performed or were breached and that it has sustained damages as a result of Waldmann's failure to perform.[*]

WALDMANN'S OBJECTION TO TESLA'S BREACH OF CONTRACT CLAIM

Tesla's breach of contract claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA.  *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on

66

misappropriation of trade secrets).  In the event that the claim is not dispensed prior to the close of trail, Waldmann proposes the following instructions.

---

\*     *Source*:  Del. P.J.I. Civ. § 19.20 (2000)

## 3.22   ESTOPPEL

When the conduct of a party to a contract intentionally or unintentionally leads another

party to the contract, in reasonable reliance on that conduct, to change its position to its

detriment, then the original party cannot enforce a contractual right contrary to the second

party's changed position. This is known in the law as estoppel. Reasonable reliance means that

the party that changed its position must have lacked the means of knowing the truth about the

facts in question. [*]

---

[*]   *Source*: Del. P.J.I. Civ. § 19.24 (2000)

### 3.23    CONVERSION (Tesla)

Tesla Industries has asserted claims of conversion against each of the defendants. Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." To establish conversion, Tesla must prove the following elements: (i) that Tesla had a property interest in the converted property, (ii) that Tesla had a right to possession of the converted property, and (iii) that Tesla sustained damages.[*]

### NMT Defendants' Objection:

Tesla's conversion claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on

---

[*]    *Authority*:   *Rockwell Automation, Inc. v. Kall*, 2004 WL 2965427, at *4 (Del. Ch.)

misappropriation of trade secrets). NMT objects to the extent that this instruction is confusing and does not clearly set out the burden of proof required for such a claim. NMT further objects to the extent that it is incomplete. In the event that this claim is not dispensed prior to closing, NMT proposed the following instruction.

Waldmann joins the foregoing objections.

### 3.23    CONVERSION (NMT)(Waldmann)

Tesla Industries has asserted claims of conversion against each of the defendants. Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." In other words, conversion occurs when a defendant wrongfully deprives an owner of control over his property.

To establish conversion, Tesla Industries must prove by a preponderance of the evidence the following elements: (i) that Tesla Industries had a property interest in the property, (ii) that Tesla Industries had a right to possession of the property, (iii) that Defendants wrongfully deprived Tesla of its property, and (iv) that Tesla Industries sustained damages.

A party cannot maintain a conversion claim for intangible property unless the intangible property relations are merged into a document.[*]

**Tesla Objection**:  Misconstrues Delaware law.

---

[*] *Source*:  *Jordan v. Bellinger*, 2001 U.S. Dist. LEXIS 9777 at *15 (D. Del. 2001); *Resource Ventures Inc. v. Resources Mgmt, Int'l, Inc.*, 42 F. Supp. 2d 423, 438-39 (D. Del. 1999); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003); *Flannery v. Flannery Bolt Co.* 108 F.2d 531 (3d Cir. 1939) (Modified).

NMT maintains, however, that this claim is preempted and, therefore, this instruction is not necessary and should not be given.  In an abundance of caution, however, NMT submits a proposed instruction on this issue.

**3.24  TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (Tesla)**

Tesla Industries has asserted a claim against defendant Waldmann for tortious interference with prospective contractual relations. One who purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another is responsible to that other party for the loss suffered as a result of the prevention or interference with the contractual relationship. Tesla asserts that Waldmann committed tortious interference with prospective contractual relations by wrongfully intercepting and diverting an inquiry by the Federal Emergency Management Agency and diverting it to defendant Hollingsworth.

You must decide whether or not Waldmann's conduct was improper. In doing so, you may consider the following factors:

(1) the nature of Waldmann's conduct;

(2) Waldmann's motive;

(3) Tesla's interests;

(4) the expectations of the parties involved;

(5) the relations between the parties involved;

(6) the interest that Waldmann sought to advance;

(7) whether Waldmann's act was done for the purpose of causing the interference or whether it was merely incidental to another purpose;

(8) the proximity or remoteness of Waldmann's conduct to the interference; and

(9) society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.[*]

**Waldmann's Objection:**

The foregoing claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

---

[*]    *Source*:  Del. P.J.I. Civ. § 12.7 (2000)

### 3.25   CONSPIRACY (Tesla)

Tesla has asserted claims against each of the defendants for conspiracy.  To establish a claim for conspiracy, Tesla must show: (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to Tesla.  If Tesla establishes a claim of conspiracy, each of the conspirators is vicariously liable for the acts of his co-conspirators in furtherance of the conspiracy.[*]

**NMT Defendants' Objection:**

Tesla's conspiracy claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA.  *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004)

---

[*]  *Authority*:   *Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1036 (Del. Ch. 2006).

(concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

Waldmann joins the foregoing objection.