**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TESLA INDUSTRIES, INC., a Delaware )
Corporation, )
                                 )
                  Plaintiff, )
                                 )
                                 )
v. )                   Civil Action No. 06-55
                                 )
                                 )
DAVID C. WALDMANN, LYNDOL W. )
HOLLINGSWORTH, CHARLES )
MINNICK a/k/a CHUCK MINNICK, and )
NEW MILLENNIUM TOOLS, INC., an )
Oregon Corporation, )
                                 )

                  Defendants.

**JOINT PROPOSED JURY INSTRUCTIONS**

**PART I OF II**

Dated: May 2, 2007

1

**Table of Contents**

**1. Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial.**

    1.1   Introduction; Role of Jury

    1.2   Description of Case; Summary of Applicable Law

    1.3   Conduct of Jury

    1.4   Bench Conferences

    1.5   Evidence

    1.6   Direct and Circumstantial Evidence

    1.7   Credibility of Witnesses

    1.8   Jury Questions for Witnesses

    1.9   Note-Taking By Jurors

    1.10   Preponderance of the Evidence

    1.11   Clear and Convincing Evidence

    1.12   Description of Trial Proceedings

**2. General Instructions For Use During Trial**

    2.1   Impeachment of Witness's Character for Truthfulness

    2.2   Judicial Notice

    2.3   Stipulation of Testimony

    2.4   Stipulation of Fact

    2.5   Use of Deposition

    2.6   Use of Interrogatories

2.7    Charts and Summaries in Evidence

2.8    Charts and Summaries Not Admitted in Evidence

2.9    Striking Evidence

2.10   Evidence Admitted for a Limited Purpose

2.11   Opinion Testimony

2.12   Foreign Language Testimony or Tape-Recording

2.13   Transcript of Tape Recorded Conversation

2.14   Recess Admonition

**3.  General Instructions For Use At End of Trial**

3.1    Deliberations

3.2    Number of Witnesses

3.3    Violations of Uniform Trade Secrets Act

3.4    "Trade Secret" Definition

3.5    "Misappropriation" Definition

3.6    Breach of Contract

3.7    Conversion

3.8    Tortious Interference with Prospective Contractual Relations

3.9    Conspiracy

3.10   Read-Backs of Testimony

3.11   Deadlock

## 1.1  INTRODUCTION AND DUTIES OF THE JURY

## INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

## DUTIES OF THE JURY

So, let me begin with these general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.[1]

---

[1] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.2  DESCRIPTION OF CASE

### THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each party contends.

The parties in this case are the Plaintiff, Tesla Industries, Inc., and the Defendants, Mr. David Waldmann, Mr. Lyndol Hollingsworth, Mr. Charles Minnick and New Millennium Tools, Inc.

In this case, Plaintiff Tesla Industries, Inc. alleges that its former employee, Defendant David Waldmann, stole trade secrets and provided those trade secrets to Defendants Charles Minnick, Lyndol Hollingsworth, and a company that Mr. Minnick founded, New Millennium Tools, Inc. All of the defendants deny these allegations. Defendants Charles Minnick, Lyndol Hollingsworth and New Millennium Tools, Inc. allege that Tesla's lawsuit represents an abuse of process, unfair trade practice and antitrust violations, and have brought counterclaims against Tesla. Defendant Waldmann alleges that Tesla violated the Delaware Wage Payment Statutes, the Employee Retirement Income Security Act, the Federal Electronic Communications Privacy Act, the Delaware Electronic Surveillance and Interception of Communications Act, and Delaware personnel file inspection statutes, as well as claims for breach of contract, intrusion of privacy, conversion, abuse of process, and unlawful discharge. Tesla denies the allegations in the counterclaims by the Defendants.

5

If appropriate, you will be asked to determine the amount of money damages necessary to compensate the plaintiff on its claims or defendants on their counterclaims for all of their injuries.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.3    **CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your

memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.4   <u>BENCH CONFERENCES</u>

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is  to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. [While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.]

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[*]

---

[*]   *Source*:   Third Circuit Model Civil Jury Instructions 1.4

## 1.5    **EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court --you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.6   DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.[*]

---

[*]   *Source*:   Third Circuit Model Civil Jury Instructions 1.6

## 1.7    CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness' credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests: the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.8  JURY QUESTIONS FOR WITNESSES

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 1.8

## 1.9   NOTE-TAKING BY JURORS

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.    Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.    Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3.    Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow

juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Noted are not to be used in place of the evidence.

4.     Do not take your notes away from court. I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."][*]

---

[*]   *Source*: Third Circuit Model Civil Jury Instructions 1.9

## 1.10    PREPONDERANCE OF THE EVIDENCE

This is a civil case. Tesla Industries is the party that brought this lawsuit. Defendants David Waldmann, Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools, Inc., are the parties against which the lawsuit was filed. Tesla Industries has the burden of proving its case by what is called the preponderance of the evidence. That means Tesla Industries has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Tesla Industries and the evidence favorable to the defendants on opposite sides of the scales, Tesla Industries would have to make the scales tip somewhat on its side. If Tesla Industries fails to meet this burden on any particular claim, the verdict on that claim must be for the defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, the defendants have the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that the defendants have succeeded in proving that the required facts are more likely so than not so.

17

The defendants have also brought claims for relief against Tesla Industries, called counterclaims. On these claims, the defendants have the same burden of proof as has Tesla Industries on its claims.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases only. It does not apply in civil cases such as this. So you should put it out of your mind.[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 1.10

**1.11    COURSE OF THE TRIAL**

This trial, like most jury trials, comes in seven stages or phases.  We have already been
through the first phase, which was to select you as jurors.  The remaining stages are:

(2)     These preliminary instructions to you;

(3)     Opening statements which are intended to explain to you what each side intends
to prove and are offered to help you follow the evidence.  The lawyers are not
required to make opening statements at this time or they may defer this opening
until it is their turn to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also
include previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make
your determination; and, finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among
yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the
evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.[*]

---

[*] *Source*:  The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.12    WHAT IS NOT EVIDENCE

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.44 (5th ed.)

## 1.13    JUDGE'S QUESTIONS TO WITNESSES

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.30 (5th ed.)

## 1.14  JUDGE'S COMMENTS TO LAWYER

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

**1.15   ADMISSIONS IN PLEADINGS** (NMT)

Before the trial began, the parties filed written statements with the court describing their claims and defenses. These statements are known as pleadings. In their pleadings, the parties have admitted certain facts, which you will take as true for purposes of this case. The admitted facts that you will take as true include the following facts:

1.      In many instances, Tesla has no competitors. Tesla is the sole source supplier for many of its products that it sells to the United States armed forces. (D.I. 154 at 2.)

2.      Through its anticompetitive practices, Tesla Industries is attempting intentionally to monopolize the relevant product and geographical markets. (Tesla's Answer to Counterclaims at ¶ 36.)

3.      Rather than competing by designing, producing and selling a superior product, Tesla Industries has instead attempted to monopolize the market by improper and unlawful actions. For example, by filing this sham lawsuit, Tesla Industries threaten improperly to destroy competition in the relevant market from which the United States military, including those members serving in combat, benefit through better products and support. (Tesla's Answer to Counterclaims at ¶ 37.)

4.      The acts of Tesla Industries represent an attempt to monopolize the trade in violation of the Sherman Act, 15 U.S.C. § 2. (Tesla's Answer to Counterclaims at ¶ 38.)

5.      As a direct and proximate result of Tesla Industries' attempt at monopolization, the NMT Parties suffered and continue to suffer injuries and damages to its business and property as set forth in the Clayton Act, 15 U.S.C. § 15(a). (Tesla's Answer to Counterclaims at ¶ 39.)

6.      As a direct and proximate result of Tesla Industries' conduct as described herein, the NMT Parties has or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, lost capital infusion, expenses related to defending against this litigation including, *inter alia*, attorneys fees and costs. (Tesla's Answer to Counterclaims at ¶ 40.)

You will take these admitted facts to be true for purposes of this case.[*]

**Tesla Objection:**    Purported admissions were not made.  Argumentative.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 101.46 (5th ed.)

*Authority: Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau*, 61 Fed. Appx. 816, 819 (3d Cir. 2003); *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547-48 (3d Cir. 1956); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882 * 6 (D. Del.) (Sleet, J.).

## 1.16    STIPULATIONS AT PRETRIAL CONFERENCE

Before the trial of this case, the court held a conference with the lawyers for all the parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof.

The stipulated facts are as follows:

*[Read stipulations.]*

Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 101.47 (5th ed.)

## 1.17    TRIAL SCHEDULE

Though you have heard me say this during the *voir dire*, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take ____ days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 p.m. We will post a copy of this schedule for the your convenience in the jury deliberation room.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 2.1    <u>JUDICIAL NOTICE</u>

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact. You must accept this fact as true for purposes of this case.[*]

---

[*]    *Source*:   Third Circuit Model Civil Jury Instructions 2.2

## 2.2    <u>STIPULATION OF TESTIMONY</u>

The parties have agreed that if [witness's name] were called as a witness, [he/she] would testify that [state the stipulated testimony]. This testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if [name of witness] had been present to testify. You must accept the fact that [name of witness] would have given that testimony. However, it is for you to determine the effect or weight to be given to that testimony.[*]

---

[*] *Source*:   Third Circuit Model Civil Jury Instructions 2.3

28

## 2.3    DEPOSITION AS SUBSTANTIVE EVIDENCE

Testimony will now be presented through a deposition. A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial. A witness' testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness' deposition testimony.    Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read/shown to you today.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.23 (5th ed.)

## 2.4     <u>USE OF INTERROGATORIES AT TRIAL</u>

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.24 (5th ed.)

## 2.5  CHARTS AND SUMMARIES IN EVIDENCE

[Name of party] has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instruction 2.7

## 2.6    CHARTS AND SUMMARIES NOT ADMITTED IN EVIDENCE

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. [Describe the charts and summaries that have not been admitted.] These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.*

---

\* *Source*:  Third Circuit Model Civil Jury Instructions 2.8

## 2.7  **STRIKING EVIDENCE**

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony].    That means that when you are deciding the case, you must not consider that information [testimony] in any way.[*]

---

[*]  *Source*:   Third Circuit Model Civil Jury Instructions 2.9

## 2.8  EVIDENCE ADMITTED FOR A LIMITED PURPOSE

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].[*]

---

[*] *Source*:  Third Circuit Model Civil Jury Instructions 2.10

## 2.9  OPINION TESTIMONY

You have heard [will hear] testimony containing opinions from [name of witness]. In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness]  testifies regularly and makes a large portion of [his/her] income from testifying in court].[*]

---

[*]  *Source*:  Third Circuit Model Civil Jury Instructions 2.11

35

## 2.10 JUDGE'S COMMENTS TO LAWYER

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

## 2.11    OBJECTIONS AND RULINGS

Testimony and exhibits can be admitted into evidence during a trial only if it meets certain criteria or standards. It is the duty of the lawyer on each side of a case to object when the other side offers testimony or an exhibit that the lawyer believes is not properly admissible under the rules of law. Only by offering an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence being offered by the other side. You should not be influenced against any lawyer or the lawyer's client because the lawyer has made objections.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.71 (5th ed.)

## 2.12    JUDGE'S QUESTIONS TO WITNESSES

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions. I may ask a question simply to clarify a matter, not to help one side of the case or hurt another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.[*]

---

[*] *Source*:  3 Fed. Jury Prac. & Instr. § 102.72 (5th ed.)

**2.13    JUDGE'S COMMENTS ON CERTAIN EVIDENCE**

The law permits a federal judge to comment to the jury on the evidence in a case. Such comments are only expressions of my opinion as to the facts and you may disregard them entirely. You are the sole judges of the facts in this case. It is your recollection and evaluation of the evidence that is important to the verdict in this case.

Although you must follow my instructions about the law applicable to this case, you are totally free to accept or reject my observations concerning the evidence received in this case.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 102.73 (5th ed.)

## 2.14  RECESS ADMONITION

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet]. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.]*

---

* *Source*:  Third Circuit Model Civil Jury Instructions 2.14

## 3.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in this jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants or the plaintiff are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accepts them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (Modified to state "the defendants [or the plaintiff] are liable.").

42

## 3.2    NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.*

---

*Source: 3 Fed. Jury Prac. & Instr. § 104.54 (5th ed.); see also, Model Civ. Jury Instr. 3rd Cir. § 3.2 (2006), The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

43

### 3.3    VIOLATION OF UNIFORM TRADE SECRETS ACT (Tesla)

Tesla alleges that the defendants violated the Uniform Trade Secrets Act by misappropriating certain trade secrets.  For Tesla to prevail on its trade secret claims, it must prove by a preponderance of the evidence: (1) that the information Tesla contends defendants misappropriated was in fact a trade secret owned by Tesla; (2) that defendants knew or had reason to know that the trade secret was acquired through improper means, or through Tesla's disclosure through a confidential relationship, or under other circumstances in which defendants owed a duty not to use or disclose the trade secret; (3) that defendants used and/or disclosed the trade secret without Tesla's express or implied consent; and (4) that Tesla suffered harm as a direct and proximate result of defendants' use or disclosure of the trade secret or any defendant was unjust enriched by such use or disclosure.

If you find that Tesla has established each and all of the foregoing propositions by a preponderance of the evidence as to any of the defendants, then your verdict will be for the plaintiff and against that defendant.

I will first instruct you on what a trade secret is and on what constitutes misappropriation.[*]

**NMT Defendants' Objections:**

Unsupported by cited authority.  Incomplete.  Argumentative.  Confusing.  Not supported by Delaware Law.

---

[*]    *Sources*:  3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions §127.10 (5th ed. 2000) (modified); 6 *Del.C.* § 2001; *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869 at *6 (Del. Super.); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*, 1987 WL 8459, at *3-4 (Del. Ch.); *Miles Inc. v. Cookson America Inc.*, 1994 WL 676761 (Del. Ch.).

Waldmann joins the foregoing objection.

## 3.3   MISAPPROPRIATION OF TRADE SECRETS ESSENTIAL ELEMENTS OF CLAIM (NMT)(Waldmann)

You are to determine whether any trade secrets have been misappropriated by Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. In order to establish a trade secret violation, Plaintiff Tesla has the burden of proving by a preponderance of the evidence that

One: trade secrets existed;

Two: Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. acquired those secrets as a result of a confidential relationship;

Three: Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. used the secret information without authorization of the plaintiff; and

Four: plaintiff Tesla suffered harm as a direct and proximate result of the Defendants Waldmann's, Hollingsworth's, Minnick's and/or New Millennium Tools, Inc.'s use or disclosure of the plaintiff Tesla's trade secret or Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. gained from such use or disclosure.

Only wrongful use of secret information disclosed in confidence gives rise to liability. To find any or each of the Defendants liable for misappropriation of trade secrets, you must find by the preponderance of the evidence that plaintiff Tesla had specific, identifiable trade secrets that were acquired by Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. as a result of a confidential relationship and that Defendants Waldmann,

Hollingsworth, Minnick and/or New Millennium Tools, Inc. used these secrets in developing or making its product.[*]

**Tesla Objections**:   Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. §  127.10 (5th ed.) (Modified)

### 3.4  "TRADE SECRET" DEFINITION (Tesla)

The starting point for your inquiry is whether plaintiff Tesla's alleged trade secrets qualify in fact as trade secrets.  You are instructed that you must make this determination for each item of information the Tesla Industries contends to be its trade secret

A trade secret is information, including a formula, pattern, compilation, program, device, method, technique or process, that:

    a.    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    b.    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A trade secret is still a trade secret even when the employee or person who acquired it had not been specifically told or notified that it was a trade secret.  It must be reasonable under the circumstances for the employee to know or have reason to know the owner expected the secret to be kept.[*]

**NMT Defendants' Objections:**

Inapposite to this action, as cited support is from different jurisdiction.  Argumentative.  Includes elements unsupported by Delaware law.

Waldmann joins the foregoing objection.

---

[*] *Sources*:  6 *Del.C.* § 2001(4); 4 Minn. Prac., Jury Instr. Guides – Civil CIVJIG 40.20 (5th ed.).

## 3.4  "TRADE SECRETS"—DEFINED (NMT)(Waldmann)

A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business. Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to the public.

In determining whether plaintiff Tesla has proven by a preponderance of the evidence that it possessed specific, identifiable trade secrets, you may consider the following factors:

(1)    The extent to which the information was known outside of plaintiff Tesla's business;

(2)    The extent to which it was known by employees and others involved in plaintiff Tesla's business;

(3)    The extent of measures taken by Tesla to guard the secrecy of the information;

(4)    The value of the information to Tesla and its competitors;

(5)    The amount of effort or money expended in developing the information;

(6)    The ease or difficulty with which the information could be properly acquired or duplicated by others.[*]

**Tesla Objections**: Argumentative; Includes elements unsupported by Delaware law

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.11 (5th ed.);

*Authority*: *Delaware Express Shuttle* at *69-70; *Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88 at *29-30, (Del. Ch. 1995); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*, 1987 Del. Ch. LEXIS 409 at *8-9 (Del. Ch. 1987); RESTATEMENT OF TORTS § 757, Comment b (1939).

49

## 3.5    "MISAPPROPRIATION" DEFINITION

"Misappropriation" means:

a.    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b.    Disclosure or use of a trade secret of another without express or implied consent by a person who:

   1.    Used improper means to acquire knowledge of the trade secret; or

   2.    At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

      A.    Derived from or through a person who had utilized improper means to acquire it;

      B.    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

      C.    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

   3.    Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[*]

---

[*]    *Source*:  6 *Del.C.* §2001(2).

## 3.6    FACTORS TO DETERMINE WHETHER CONDUCT WAS IMPROPER (NMT)(Waldmann)

You must determine whether or not the accused party's conduct was improper. In doing so, you may consider the following factors:

1. The nature of the accused party's conduct;

2. The accused party's motive;

3. The expectations of the parties involved;

4. The relations between the parties involved;

5. The interest that accused party sought to advance;

6. Whether the accused party's conduct was undertaken for the purpose of causing the interference, or whether the interference was merely incidental to another purpose;

7. The proximity or remoteness of the accused party's conduct to the interference; and

8. The societal interests in protecting the freedom of action of the accused party, and the contractual interest of the other.[*]

**Tesla Objection:** Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*] *Authority*: RESTATEMENT (SECOND) OF TORTS § 767 (1979); RESTATEMENT OF TORTS § 767 (1939).

**3.7**    **BURDEN OF PROOF**

The burden is on Tesla on this claim to prove by a preponderance of evidence:

1.  That it owns a protectable trade secret;

2.  That Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium
    Tools, Inc. misappropriated that trade secret; and

3.  That Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium
    Tools, Inc. have used or disclosed or will use or disclose that trade secret to the
    detriment of Tesla.[*]

---

[*] *Authority*: 12A BUSINESS ORGANIZATIONS, MILGRIM ON TRADE SECRETES, § 7.07[1] (1984).

**3.8**    **DERIVES ECONOMIC BENEFIT FROM NOT BEING GENERALLY KNOWN**

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal persons who can obtain economic benefit from information are aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.[*]

---

[*] *Authority*: UNIFORM TRADE SECRETS ACT, comment to § 1.

## 3.9    EFFORTS THAT ARE REASONABLE UNDER THE CIRCUMSTANCES TO PROTECT ITS SECRECY (NMT)(Waldmann)

A trade secret must be kept secret. If a matter is commonly known in an industry, Tesla may not claim it as a trade secret. If a matter could be learned by legitimate or proper methods, such as by reading publicly available literature, by discovery by independent invention, by discovery by reverse engineering, by discovery under a license from the owner of the trade secret, by examining publicly available products, or by taking a guided tour of a manufacturing plant, Tesla may not claim it as a trade secret.

On the other hand, the fact that others may know of the information does not necessarily negate secrecy. Tesla may have communicated the information to its employees, and to certain outsiders, such customers and suppliers, without losing its rights, if such disclosure was confidential and necessary to run its business. Tesla, however, must have taken reasonable measures under the circumstances to maintain secrecy.[*]

**Tesla Objection:** No basis in Delaware law.

---

[*] *Authority: Kewanee Oil Co.*, 416 U.S. at 475; *Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953); *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173 (D. Ariz. 1973); UNIFORM TRADE SECRETS ACT, comment to § 1.)

**3.10    INNOCENT DISCOVERY (NMT)(Waldmann)**

No misappropriation exists where someone accidentally or mistakenly acquires, for valuable consideration, information without notice of its trade secret status. After learning of its trade secret status, however, the innocent acquirer is not free to disclose it to anyone else or to expand his use beyond what it was when he learned of its trade secret status.[*]

**Tesla Objection:**    Not based on Uniform Trade Secrets Act as adopted in Delaware.

---

[*] *Authority*: RESTATEMENT OF TORTS § 758(b), Comments d and e (1939).

**3.11    CONSENT (NMT)(Waldmann)**

If you find that Tesla consented to the Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. acquisition and use of its trade secret, there is not misappropriation. Consent may be express or implied – that is, a trade secret owner may consent by openly granting permission or by acting in manner which a reasonable person could interpret as granting permission.[*]

**Tesla Objection:**   Not based on Uniform Trade Secrets Act as adopted in Delaware.

---

[*] *Authority*: UNIFORM TRADE SECRETS ACT § 1(2)(ii)

**3.12**    **WAIVER** (NMT)(Waldmann)

Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. contend that Tesla waived any claim it had against them. Defendants contend that, through Defendant Waldmann's reports to his superiors, Tesla became aware of the facts surrounding the disclosure of Tesla's trade secrets and that it voluntarily chose not to object to that activity, but rather continue to permit Defendants to possess that trade secret.

Waiver is defined as the intentional or voluntary relinquishment of a known right, or conduct by a person such that it is reasonable to infer that he intended to relinquish – or give up – a known right. Waiver may also be defined in terms of a voluntary surrender of a right which, but for the waiver, the person would have had against another. Waiver may be express or implied because it defends on intent.[*]

**Tesla Objections:** Unsupported by Delaware law. Not pleaded with necessary specificity. Not explained during discovery.

---

[*]    *Source:* Burton, Duane "*Jury Instructions in Intellectual Property Cases* Big Foot Press (2006) (*citing as source: Alderman v. Tandy Corporation,* 222 USPQ 806 (11th Cir. 1983).

*Authority: See Sheets v. Yamaha Motors Corp.,* 849 F.2d 179, 183-84 (5th Cir.1988) ("A disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right of the trade secret."), *FSI Int'l, Inc. v. Shumway,* 2002 WL 334409, *9 (D. Minn. 2002)(because employees had ability to disclose trade secrets on a "need-to-know" basis to third parties not required to sign a confidentiality agreement, Plaintiff had not taken reasonable efforts to maintain secrecy); *Southwest Whey, Inc. v. Nutrition 101, Inc.,* 117 F.Supp.2d 770, 779-80 (C.D.Ill. 2000)(failure to require secrecy of contractors and joint venturer negated trade secrecy, even though each individual contractor was only privy to a small part of the trade secret that was the larger, allegedly secret system); *Motor City Bagels, L.L.C. v. American Bagel Co.,* 50 F.Supp.2d 460, 476, 480 (D.Md. 1999)(disclosure of business plan to potential investors without agreement of secrecy was "inconsistent with recognition of the document as a trade secret")

### 3.13   ESTOPPEL (NMT)(Waldmann)

"Estoppel" is a term which has broad application; it basically means that one who, by his deed or conduct, has induced another to act in a particular manner will not be permitted by law to adopt an inconsistent or contrary position, attitude, or course of conduct and thereby cause loss or injury to the other person.  Through the use of the legal doctrine of estoppel, a person is precluded from denying the truth of a fact which has in the contemplation of law, become settled by the acts of that person.  Estoppel is a doctrine which has been created to prevent injustice, and it is for the protection of those who have been misled by another based on that which, on its face, appeared to be fair.

Here, Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. contend that Tesla, through its actions, led them to believe that they were authorized to possess and use Tesla's alleged trade secrets.  Defendants contend that they believed they had a valid non-disclosure agreement with Tesla authorizing their alleged acts, that Tesla publicly advertised that Defendant Waldmann had authority to act on its behalf, that they twice sent the alleged trade secrets back to Tesla and at no time did Tesla cease the alleged trade secrets and when Defendants finally learned that such products were claimed to be trade secrets, Defendants returned them immediately.[*]   Likewise, Defendant Waldmann contends that Tesla, through its actions, authorized Defendant Waldmann to use, possess and disclose Tesla's alleged trade secrets.

**Tesla Objections**:  Unsupported by Delaware law.  Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*:  Burton, Duane "*Jury Instructions in Intellectual Property Cases* Big Foot Press (2006) (*citing as source: Alderman v. Tandy Corp.*, 222 USPQ 806 (11th Cir. 1983).

**3.14  COMPENSATORY DAMAGES FOR MISAPPROPRIATION**

If you should find by the preponderance of the evidence presented that Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. has misappropriated Tesla's trade secrets, you must then determine the amount of damages, if any, that Tesla is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Tesla is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that Tesla is entitled to recover damages.

Tesla has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.14 (5th ed.) (Modified).

## 3.15    CONTRACT FORMATION

Tesla Industries has asserted a claim of breach of contract against defendant Waldmann. The claim arises from the employment contract between Tesla and Waldmann, which according to Tesla included a memo entitled "Access to Tesla Industries Technology Resources," and a document entitled "Agreement of Non-Disclosure."

A contract is a legally binding agreement between two or more parties. Each party to the contract must perform according to the agreement's terms. A party's failure to perform a contractual duty constitutes breach of contract. If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim damages.

For a legally binding contract to exist, there must be:

1) an offer of a contract by one party;

2) an acceptance of that offer by the other party;

3) consideration for the offer and acceptance; and

4) sufficiently specific terms that determine the obligations of each party.

In this case, Tesla alleges that Waldmann breached a contract by disclosing its Secret and Confidential business information. In this case, the parties have agreed that there was an offer, acceptance and consideration. You must determine from a preponderance of the evidence whether there was sufficiently specific terms that determine the obligations of each party.[*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.1 (2000)

## 3.16    MEETING OF THE MINDS

A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms. Mutual assent is not a subjective or personal understanding of the terms by either party. Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.[*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.20 (2000)

### 3.17    CONSTRUCTION OF AMBIGUOUS TERMS - BREACH OF CONTRACT

There are certain rules to consider in interpreting contractual terms that appear ambiguous or unclear.

First, if the party that drafted the language of the contract can be determined, the language must be construed most strongly against that party.

Second, if the contract's language is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, the first interpretation must be preferred.

Third, to determine the parties' intent when there are ambiguous terms, the jury will look to the construction given to the terms by the parties as shown through their conduct during the period after the contract allegedly became effective and before the institution of this lawsuit. The parties' conduct after a contract is made should be given great weight in determining its meaning. Finally, explanatory circumstances existing when the contract was allegedly made may be considered in order to determine the parties' probable intent.*

---

\*    *Source*: Del. P.J.I. Civ. § 19.16 (2000)

**3.18    CONTRACT MODIFICATION**

Generally, a written contract may be modified by a later oral agreement. An oral

agreement that modifies a written contract must be specific, direct, and clear about the parties'

intention to change their original agreement. [*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.16 (2000)

### 3.19    PERFORMANCE

Performance is the successful completion of a contractual duty and usually results in the performer's release from any past or future liability on the contract. Successful completion of contractual duties simply requires that the terms be satisfied. [*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.17 (2000)

## 3.20    PERFORMANCE PREVENTED BY A PARTY TO THE CONTRACT

A party to a contract may not prevent another party from performing its contractual duties

and then claim that the other party has breached the contract or failed to complete its terms.  For

example, a farmer who contracts with a builder to put up a barn on the farmer's land must make

the land available to the builder so that the work may be done. Likewise, the farmer must not

interfere with the progress of the work.

In this case, you must determine whether Tesla prevented or otherwise interfered with

Waladmann's duty to perform the described terms of the contract. [*]

---

[*]    *Source*: Del. P.J.I. Civ. § 19.19 (2000)

**3.21    BREACH OF CONTRACT DEFINED** (Tesla)

Because Tesla was a party to the contract at issue, Tesla would be entitled to recover damages from Waldmann for any breach of the contract. To establish that Waldmann is liable to Tesla for breach of contract, Tesla must prove that one or more terms of its contract with Waldmann have not been performed or were breached and that it has sustained damages as a result of Waldmann's failure to perform.[*]

WALDMANN'S OBJECTION TO TESLA'S BREACH OF CONTRACT CLAIM

Tesla's breach of contract claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on

misappropriation of trade secrets).  In the event that the claim is not dispensed prior to the close

of trail, Waldmann proposes the following instructions.

---

*    *Source*:  Del. P.J.I. Civ. § 19.20 (2000)

**3.22    ESTOPPEL**

When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position. This is known in the law as estoppel. Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question. *

---

\*    *Source*: Del. P.J.I. Civ. § 19.24 (2000)

**3.23    CONVERSION** (Tesla)

Tesla Industries has asserted claims of conversion against each of the defendants. Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." To establish conversion, Tesla must prove the following elements: (i) that Tesla had a property interest in the converted property, (ii) that Tesla had a right to possession of the converted property, and (iii) that Tesla sustained damages.[*]

**NMT Defendants' Objection:**

Tesla's conversion claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on

---

[*]    *Authority: Rockwell Automation, Inc. v. Kall*, 2004 WL 2965427, at *4 (Del. Ch.)

misappropriation of trade secrets). NMT objects to the extent that this instruction is confusing and does not clearly set out the burden of proof required for such a claim. NMT further objects to the extent that it is incomplete. In the event that this claim is not dispensed prior to closing, NMT proposed the following instruction.

Waldmann joins the foregoing objections.

## 3.23   CONVERSION (NMT)(Waldmann)

Tesla Industries has asserted claims of conversion against each of the defendants. Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." In other words, conversion occurs when a defendant wrongfully deprives an owner of control over his property.

To establish conversion, Tesla Industries must prove by a preponderance of the evidence the following elements: (i) that Tesla Industries had a property interest in the property, (ii) that Tesla Industries had a right to possession of the property, (iii) that Defendants wrongfully deprived Tesla of its property, and (iv) that Tesla Industries sustained damages.

A party cannot maintain a conversion claim for intangible property unless the intangible property relations are merged into a document.[*]

**Tesla Objection:** Misconstrues Delaware law.

---

[*] *Source*: *Jordan v. Bellinger*, 2001 U.S. Dist. LEXIS 9777 at *15 (D. Del. 2001); *Resource Ventures Inc. v. Resources Mgmt, Int'l, Inc.*, 42 F. Supp. 2d 423, 438-39 (D. Del. 1999); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003); *Flannery v. Flannery Bolt Co.* 108 F.2d 531 (3d Cir. 1939) (Modified).

NMT maintains, however, that this claim is preempted and, therefore, this instruction is not necessary and should not be given. In an abundance of caution, however, NMT submits a proposed instruction on this issue.

### 3.24  TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (Tesla)

Tesla Industries has asserted a claim against defendant Waldmann for tortious interference with prospective contractual relations. One who purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another is responsible to that other party for the loss suffered as a result of the prevention or interference with the contractual relationship. Tesla asserts that Waldmann committed tortious interference with prospective contractual relations by wrongfully intercepting and diverting an inquiry by the Federal Emergency Management Agency and diverting it to defendant Hollingsworth.

You must decide whether or not Waldmann's conduct was improper. In doing so, you may consider the following factors:

(1) the nature of Waldmann's conduct;

(2) Waldmann's motive;

(3) Tesla's interests;

(4) the expectations of the parties involved;

(5) the relations between the parties involved;

(6) the interest that Waldmann sought to advance;

(7) whether Waldmann's act was done for the purpose of causing the interference or whether it was merely incidental to another purpose;

(8) the proximity or remoteness of Waldmann's conduct to the interference; and

(9) society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.[*]

**Waldmann's Objection:**

The foregoing claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

---

[*]  *Source*:  Del. P.J.I. Civ. § 12.7 (2000)

### 3.25    CONSPIRACY (Tesla)

Tesla has asserted claims against each of the defendants for conspiracy. To establish a claim for conspiracy, Tesla must show: (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to Tesla. If Tesla establishes a claim of conspiracy, each of the conspirators is vicariously liable for the acts of his co-conspirators in furtherance of the conspiracy.[*]

**NMT Defendants' Objection:**

Tesla's conspiracy claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004)

---

[*]    *Authority: Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1036 (Del. Ch. 2006).

(concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

Waldmann joins the foregoing objection.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware )
Corporation, )
            )
           Plaintiff, )
            )
            )
v. )         Civil Action No. 06-55
            )
            )
DAVID C. WALDMANN, LYNDOL W. )
HOLLINGSWORTH, CHARLES )
MINNICK a/k/a CHUCK MINNICK, and )
NEW MILLENNIUM TOOLS, INC., an )
Oregon Corporation, )

           Defendants.

# JOINT PROPOSED JURY INSTRUCTIONS

## PART II OF II

Dated:  May 2, 2007

1

**3.26    DAMAGES – MISAPPROPRIATION OF TRADE SECRETS (Tesla)**

If you find that defendants misappropriated Tesla's trade secrets, Tesla is entitled to recover damages for the misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of a reasonable royalty on the sale of the product.[*]

**THE NMT DEFENDANTS' OBJECTIONS:**

Untimely, as Tesla submitted this instruction at 9:00pm on May 1, 2007, *i.e.*, that day after the Pretrial Order was due. Unsupported by Delaware law. The term "*entitle*" incorrectly presupposes that damages are automatic with a finding of misappropriation of trade secrets. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Contradicts instruction 3.14, to which Tesla does not object, and, thus, is overly confusing. Prejudicial.

Waldmann joins the foregoing objections.

---

[*] *Source*: 6 *Del. C.* § 2003.

**3.27    DAMAGES -- BREACH OF CONTRACT (Tesla)**

If you find that Waldmann committed a breach of contract, Tesla is entitled to compensation in an amount that will place Tesla in the same position it would have been if the contract had been properly performed.   The measure of Tesla's damages is the loss actually sustained as a result of the breach of the contract.[*]

**Waldmann's Objections:**

Confusing.  Misleading.  Prejudicial.

### 3.28    DAMAGES – CONVERSION (Tesla)

If you find that Tesla has established its claim for conversion against any of the defendants, Tesla is entitled to recover damages. The measure of damages for conversion is the value of the converted property at the time of the conversion, plus interest.[*]

**THE NMT DEFENDANTS' OBJECTIONS:**

Untimely, as Tesla submitted this instruction at 9:00pm on May 1, 2007, *i.e.*, that day after the Pretrial Order was due. Unsupported by Delaware law. The term *"entitle"* incorrectly presupposes that damages are automatic with a finding of conversion. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Contradicts instruction 3.14, to which Tesla does not object, and, thus, is overly confusing. Prejudicial.

Tesla's conversion claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that

---

[*] *Source:* Del. P.J.I. Civ. § 22.24

[*] *Sources:* *Addalli v. Mazzella*, 1987 WL 8677, at *8 (Del. Super.); *Blake v. Town of Delaware City*, 441 F. Supp. 1189, 1205 (D. Del. 1977).

78

the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets). NMT objects to the extent that this instruction is confusing and does not clearly set out the burden of proof required for such a claim. NMT further objects to the extent that it is incomplete.

Waldmann joins the foregoing objections.

**3.29  DAMAGES – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (Tesla)**

If you find that Waldmann interfered with Tesla's prospective contractual relations, Tesla is entitled to recover damages.  Damages should fairly and adequately compensate Tesla for:

(1) the monetary loss of the contractual benefits suffered by Tesla;

(2) all other losses suffered by Tesla as a direct result of Waldmann's act; and

(3) the emotional distress and harm to the Tesla's reputation suffered as a result of the Waldmann's act.[*]

**Waldmann's Objections:**

Confusing.  Misleading.  Misconstrues Delaware law as it applies to a corporate entity.

---

[*] *Source*:  Del. P.J.I. § 22.18

**3.30    DAMAGES – CONSPIRACY (Tesla)**

If you find that Tesla has established its claim of conspiracy against some or all of the defendants, Tesla is entitled to recover damages. Damages should fairly and adequately compensate Tesla for the harm caused by the misconduct committed in furtherance of the conspiracy.[*]

**THE NMT DEFENDANTS' OBJECTIONS:**

Untimely, as Tesla submitted this instruction at 9:00pm on May 1, 2007, *i.e.*, that day after the Pretrial Order was due. Unsupported by Delaware law. The term *"entitle"* incorrectly presupposes that damages are automatic with a finding of conspiracy. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Prejudicial.

Tesla's conspiracy claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that

---

[*]    *Source*:  *Empire Financial Services, Inc. v. Bank of New York (Delaware)*, 900 A.2d 92, 97 (Del. 2006).

"Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets). NMT objects to the extent that this instruction is confusing and does not clearly set out the burden of proof required for such a claim. NMT further objects to the extent that it is incomplete.

Waldmann joins the foregoing objections.

**3.31    ATTORNEYS FEES FOR MISAPPROPRIATION OF TRADE SECRETS AND BREACH OF CONTRACT (Tesla)**

If you find that any of the defendants misappropriated Tesla's trade secrets in bad faith, you must determine whether or not such misappropriation was willful and malicious. Misappropriation is "willful and malicious" where it is deliberate and done with reckless disregard for the rights of the owner of the trade secret. If you find the misappropriation to be willful and malicious, you should award Tesla additional damages in the amount of its reasonable attorneys' fees.[*]

In addition, you should be aware that Waldmann's contract allows Tesla to recover its reasonable attorneys' fees in cases where the contract has been breached by Waldmann. Therefore, if you find that Waldmann breached his contract with Tesla, you should award Tesla additional damages in the amount of its reasonable attorneys' fees.


**THE NMT DEFENDANTS' OBJECTIONS:**

Untimely, as Tesla submitted this instruction at 9:00pm on May 1, 2007, *i.e.*, that day after the Pretrial Order was due. The term "*should*" presupposes that damages are automatic with a finding of misappropriation of trade secrets. Inconsistent with Delaware law. Unsupported by incomplete cited authority. Fails to set forth any evidentiary burden for proving willful and/or malicious. Incorrectly states the law on damages recovery. Argumentative, especially with regards to the second paragraph. Prejudicial. Attorneys' fees are determined by the Court under Fed. R. Civ. P. 54(d)(2).

Waldmann joins the foregoing objections.

## 3.32  ATTORNEYS FEES FOR CLAIMING MISAPPROPRIATION OF TRADE SECRETS IN BAD FAITH (NMT)

If you find by a preponderance of the evidence that Defendants did not misappropriate Tesla's trade secrets, you are instructed to determine whether Tesla made its claim for misappropriation in bad faith.  If you find that Tesla made its claim of misappropriation of trade secrets in bad faith, you may award Defendants damages in the form of attorneys' fees.[*]

---

[*] *Sources*:  6 *Del. C.* § 2004; *Nucar Consulting, Inc. v. Doyle*,  2005 WL 820706, at *

[*] *Source*: 6 Del. C. § 2004.

## 3.33    USE OF NOTES

You may use the notes taken by you during the trial.  However, the notes should not be substituted for your memory. Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.*

---

* *Source*:  3 Fed. Jury Prac. & Instr. §  103.02 (5th ed.)

**3.34    INSTRUCTIONS APPLY TO EACH PARTY**

Unless I state otherwise, you should consider each instruction given to apply separately and individually to each plaintiff and to each defendant in the case.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  103.10 (5th ed.)

## 3.35    ALL PERSONS EQUAL BEFORE THE LAW—INDIVIDUALS

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons stand equal before the law and are to be treated as equals.*

---

* *Source*:  3 Fed. Jury Prac. & Instr. §  103.11 (5th ed.)

87

### 3.36    ALL PERSONS EQUAL BEFORE THE LAW—ORGANIZATIONS

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A [corporation] [partnership] [unincorporated association] is entitled to the same fair trial as a private individual. All persons, including [corporations], [partnerships], [unincorporated associations], and other organizations stand equal before the law, and are to be treated as equals.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  103.12 (5th ed.)

### 3.37    <u>MULTIPLE DEFENDANTS</u>

Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable. Each defendant is entitled to a fair consideration of the evidence. Neither defendant is to be prejudiced should you find against the other. [Unless otherwise stated,] all instructions I give you govern the case as to each defendant.*

---

\* *Source*: 3 Fed. Jury Prac. & Instr. §  103.14 (5th ed.)

89

**3.38    EVIDENCE**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, either live or by deposition, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on evidence, as I have defined it here, and nothing else.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (modified to state "under oath [, either live or by deposition], the exhibits...").

**3.39**    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness, which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

91

**3.40    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.41    CONSIDERATION OF THE EVIDENCE--CORPORATE PARTY'S AGENTS AND EMPLOYEES

A corporation may act only through natural persons as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 103.31 (5th ed.)

93

**3.42    ADMISSIONS IN PLEADINGS (NMT)**

Before the trial began, the parties filed written statements with the court describing their claims and defenses. These statements are known as pleadings. In their pleadings, the parties have admitted certain facts, which you will take as true for purposes of this case.  The admitted facts that you will take as true include the following facts:

1.    In many instances, Tesla has no competitors.  Tesla is the sole source supplier for many of its products that it sells to the United States armed forces.  (D.I. 154 at 2.)

2.    Through its anticompetitive practices, Tesla Industries is attempting intentionally to monopolize the relevant product and geographical markets.  (Tesla's Answer to Counterclaims at ¶ 36.)

3.    Rather than competing by designing, producing and selling a superior product, Tesla Industries has instead attempted to monopolize the market by improper and unlawful actions.  For example, by filing this sham lawsuit, Tesla Industries threaten improperly to destroy competition in the relevant market from which the United States military, including those members serving in combat, benefit through better products and support.  (Tesla's Answer to Counterclaims at ¶ 37.)

4.    The acts of Tesla Industries represent an attempt to monopolize the trade in violation of the Sherman Act, 15 U.S.C. § 2.  (Tesla's Answer to Counterclaims at ¶ 38.)

5.    As a direct and proximate result of Tesla Industries' attempt at monopolization, the NMT Parties suffered and continue to suffer injuries and damages to its business and property as set forth in the Clayton Act, 15 U.S.C. § 15(a). (Tesla's Answer to Counterclaims at

94

¶ 39.)

6.      As a direct and proximate result of Tesla Industries' conduct as described herein, the NMT Parties has or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, lost capital infusion, expenses related to defending against this litigation including, *inter alia*, attorneys fees and costs. (Tesla's Answer to Counterclaims at ¶ 40.)

You will take these admitted facts to be true for purposes of this case.[*]

**Tesla Objections**: Purported admissions were not made.  Argumentative.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 101.46 (5th ed.).

*Authority*: *Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau*, 61 Fed. Appx. 816, 819 (3d Cir. 2003); *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547-48 (3d Cir. 1956); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882 * 6 (D. Del.) (Sleet, J.).

### 3.43    COURT'S COMMENTS NOT EVIDENCE

The law permits me to comment to you on the evidence in the case. These comments are only an expression of my opinion as to the facts. You may disregard my comments entirely, since you as jurors are the sole judges of the facts and are not bound by my comments or opinions.*

---

\* *Source*: 3 Fed. Jury Prac. & Instr. §  103.33 (5th ed.)

### 3.44   STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel.  The attorney's statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorney's, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.*

---

\*  *Source*:  The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

### 3.45    "IF YOU FIND" OR "IF YOU DECIDE"

When I instruct you that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the evidence in the case that the proposition is more probably true than not.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 104.04 (5th ed.)

### 3.46    "INFERENCES" DEFINED

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 104.20 (5th ed.)

## 3.47    FINDING THAT OFFICIAL REPORT MADE (NMT)

Where it is the duty of a lower or subordinate official to report to the official's superior, or where it is the duty of a superior official to report or give information to a lower or subordinate official, you may find that this official duty was regularly performed, in the absence of evidence in the case leading you to a different conclusion.*

**Tesla Objection:**    Irrelevant. Unnecessary.

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 104.22 (5th ed.)

100

### 3.48    NOTICE OR KNOWLEDGE--DUTY OF INQUIRY (NMT)

The means of knowledge are ordinarily the equivalent in law to knowledge. If it appears from the evidence in the case that a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then this person may be found to have had actual knowledge of those facts, the same as if that person had made such inquiry and had actually learned such facts.

That is to say, the law charges a person with notice and knowledge of whatever that person would have learned, on making such inquiry as it would have been reasonable to expect the person to make under the circumstances.

Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time, and that the person had regular opportunities to observe the condition, then you may draw the inference that the person had knowledge of the condition.*

**Tesla Objections:**  Irrelevant. Unnecessary.

---

\* *Source*: 3 Fed. Jury Prac. & Instr. §  104.24 (5th ed.)

3.49    **FAILURE TO CALL AVAILABLE WITNESS** (NMT)

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.*

**Tesla Objections**:  Irrelevant.  Unnecessary.

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  104.25 (5th ed.)

### 3.50   FAILURE TO PRODUCE AVAILABLE EVIDENCE (NMT)

If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.*

**Tesla Objections:**  Irrelevant.  Unnecessary.

---

\* *Source*: 3 Fed. Jury Prac. & Instr. §  104.26 (5th ed.)

**3.51    SUPPRESSION, FABRICATION OR ALTERATION OF EVIDENCE (NMT)**

If you should find that a party willfully altered, suppressed, hid and/or destroyed evidence in order to prevent its being presented in this trial, you may consider such alteration, suppression and/or destruction in determining what inferences to draw from the evidence or facts in the case.*

**Tesla Objections**:   Irrelevant.  Unnecessary.

---

*  *Source*:  3 Fed. Jury Prac. & Instr. §  104.27 (5th ed.)

## 3.52    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.[*]

---

[*]   *Source*:  The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

**3.53    <u>EXPERT TESTIMONY</u>**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all other evidence in this case.[*]

---

[*]   *Source*:  The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.54    STATISTICAL EVIDENCE (NMT)

Statistics are inherently slippery in nature, are not irrefutable, and, like any other kind of evidence, they may be rebutted.*

**Tesla Objections**:  Irrelevant.  Unnecessary.

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 104.43 (5th ed.)

### 3.55    CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 104.50 (5th ed.)

### 3.56    REQUESTS FOR ADMISSION

Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. have introduced into evidence certain "Requests for Admission," identified as "NMT Exhibit 135." Plaintiff Tesla responded to these "Requests for Admission" and admitted certain of the requests. You are to take the facts stated in NMT Exhibit 135, where Plaintiff Tesla admitted certain facts as true for purposes of this case.*

---

\* *Source: See* 3 Fed. Jury Prac. & Instr. § 104.70 (5th ed.) (modified)

## 3.57     ANSWERS TO INTERROGATORIES

Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party. A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, that party does not bind itself to those answers. The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 104.72 (5th ed.)

## 3.58    USE OF DEPOSITIONS AS EVIDENCE

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath, or on a videotape. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.*

---

\* *Source:* 3 Fed. Jury Prac. & Instr. § 105.02 (5th ed.)

### 3.59    IMPEACHMENT--INCONSISTENT STATEMENT OR CONDUCT (FALSUS IN UNO FALSUS IN OMNIBUS)

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 105.04 (5th ed.)

### 3.60   IMPEACHMENT--BAD REPUTATION FOR TRUTH AND VERACITY

A witness may be discredited or impeached by evidence that the character of the witness for truthfulness is bad. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.*

---

*Source*: 3 Fed. Jury Prac. & Instr. §  105.06 (5th ed.)

## 3.61    EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness' interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 105.09 (5th ed.)

## 3.62    EFFECT OF REFUSAL OF WITNESS TO ANSWER

The law requires that every witness answer all proper questions put to him or her at trial, unless I rule the witness is privileged to refuse to answer on Constitutional or other grounds.

The fact that a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.*

---

* *Source*: 3 Fed. Jury Prac. & Instr. § 105.10 (5th ed.)

**3.63    BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  Plaintiff Tesla has the burden of proving his claims and damages, and Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. have the burden of proving their counterclaims and damages by what is called a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not Plaintiff Tesla or Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. have met their burden of proof on various issues.[*]

---

[*] *Source*:  The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (modified to include Defendants' burden of proof).

**3.64    UNCLEAN HANDS: (NMT)(Waldmann)**

Defendants Waldmann, Minnick, Hollingsworth and New Millennium Tools, Inc.'s contend that, even if you determine that Tesla has proved any claim by a preponderance of the evidence, that Tesla is barred from obtaining any relief because it has unclean hands. The doctrine of unclean hands is an equitable defense, which provides that a party must have acted fairly and justly in its dealings with another in order to assert a cause of action against that party. A party is said to possess "unclean hands" if it is guilty of conduct involving fraud or bad faith. If you find that either party acted in a fraudulent, underhanded, unfair or unjust manner then you may conclude that party had "unclean hands." This principle is often expressed through the maxim that "he who comes into equity must come with clean hands."[*]

**Tesla Objections:**    Not pleaded with necessary specificity.  Not explained during discovery. Unsupported by Delaware law.

---

[*] *Authority: Bertoglio v. Texas Intern. Co.*, 488 F.Supp. 630 (D. Del. 1980); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241 (1933); *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806 (1945)

### 3.65   ABUSE OF PROCESS  (NMT)(Waldmann)

One who willfully uses the legal system, whether through a criminal or civil action in the courts or in a regulatory agency, against another primarily to accomplish a purpose for which the system is not designed is responsible to the person against whom the legal process was used for any harm caused by such use. I have determined as a matter of law that Tesla caused legal process to issue against Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. in the nature of a Stipulated Restraining Order, a third-party Subpoena on D.C. Power Equipment in Texas, Requests for Production, Interrogatories and Depositions. Likewise, I have determined as a matter of law that Tesla caused legal process to issue against Defendant Waldmann in the nature of a Civil Summons, Petition for a Preliminary Injunction, and Requests for Production, Interrogatories and Depositions.

The purpose for which a Stipulated Restraining Order, Petition for a Preliminary Injunction and Civil Summons is designed is in this case was to protect actual trade secrets; not to stifle legitimate competition that does not involve actual trade secrets or to vex, harass or intimidate Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc.

The purpose for which a third-party Subpoena, Requests for Production, Interrogatories and Depositions are designed in this case is for legitimate discovery of information in pursuit of Tesla's claims against them; not as a means of harassing Defendants Minnick, Hollingsworth and New Millennium Tools, Inc. or of solely obtaining information for use in its claims against Defendant Waldmann.

The elements that Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. must prove in their claim for Abuse of Process are:

(1) An improper or wrongful purpose in using the legal process; and

(2) A willful act in the use of the system not proper in the regular conduct of legal proceedings.[*]

**Tesla Objection**: Argumentative.

---

[*] *Source*: DEL. P.J.I. CIV. § 12.6 (2000)

120

### 3.66    DAMAGES - ABUSE OF CIVIL PROCESS (NMT)(Waldmann)

If you find that Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. have proved Tesla is liable for abuse of civil process, then you should consider the amount of damages Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. is entitled to recover. In making an award, you may consider the following factors:

(1) The harm resulting from any disposition or interference with the advantageous use of Defendants Waldmann, Hollingsworth's, Minnick's and New Millennium Tools, Inc.'s property suffered during the course of the proceedings;

(2) The harm to their reputation by any defamatory matter alleged as the basis of the proceedings;

(3) The expense reasonably incurred in defending them against the proceedings;

(4) Any specific monetary loss that resulted from the proceedings; and

(5) Any emotional distress caused by the proceedings.

You may presume that Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. suffered injury to their reputation as well as emotional distress, mental anguish, and humiliation that would normally result from Tesla's conduct. This means you need not have proof that Defendants Waldmann, Hollingsworth, Minnick or New Millennium Tools, Inc. suffered any particular injury to their reputation or that Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. in fact suffered emotional distress, mental anguish, or humiliation in order to award them damages.

In determining the amount of an award, you also may consider the character of Defendants Waldmann, Hollingsworth, Minnick and New Millennium Tools, Inc. and their

general standing and reputation in the community; the publicity surrounding Tesla's act; and the probable effect that Tesla's conduct had on Defendants's trade, business, or profession, and the harm sustained as a result.[*]

**Tesla Objection**: Argumentative.

---

[*]*Source*:  DEL. P.J.I. CIV. § 22.12 (2000)

**3.67    UNFAIR COMPETITION (NMT)**

Now I will explain the law of unfair competition. The law requires that competitors adhere to minimum standards of fairness in the marketplace. As such, a plaintiff cannot, in bad faith, bring and maintain, and obtain a temporary restraining order against another party. Here, Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. allege that Tesla engaged in unfair competition by bringing and maintaining this action, and obtaining a temporary restraining order without a good faith basis for believing its allegations of misappropriation of trade secrets, conversion and civil conspiracy.

In order to succeed on its unfair competition claim, defendants must show by preponderance of the evidence that:

1.    Tesla's allegations that it possesses trade secrets and that Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. improperly misappropriated such trade secrets are objectively baseless; and

2.    That Tesla brought and maintained this action, and obtained a temporary restraining order against the Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. in bad faith.

You may find that Tesla acted in bad faith if they had knowledge that its allegations of misappropriation of trade secrets, conversion and civil conspiracy were incorrect or false, or if it disregarded these matters before filing suit.[*]

**Tesla Objection**: Argumentative.

---

[*] *Authority*:  6 Del. C. §§ 2531 et seq. (2004); *Golan v. Pingel Enterprises, Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002); *Dow Chemical, Corp. v. Exxon Corp.*, 139 F.3d 1470, 1475 (Fed. Cir. 1998); *ISCO Int'l, Inc. v. Conductus, Inc.*, 2003 U.S. Dist. LEXIS 1883, at *3-6 (D. Del. 2003)(J. Sleet) (modified).

### 3.68    <u>DAMAGES FOR UNFAIR COMPETITION</u> (NMT)

If you find that Tesla engaged in unfair competition by bringing this action without a good faith basis for believing their allegations of misappropriation of trade secrets, conversion and civil conspiracy were valid, you may award Defendants Hollingsworth, Minnick and New Millennium Tools, Inc. compensatory damages to make the defendants "whole" for loss suffered as a result of Tesla's unfair competition. The general standards for compensatory damages have been previously discussed.

Further, if you find that Tesla engaged in unfair competition, and did so in an intentional or reckless manner, you may award punitive damages to Defendants Hollingsworth, Minnick and New Millennium Tools, Inc., including attorney's fees. The general standards for punitive damages have been previously discussed.[*]

**Tesla Objection**: Unsupported by Delaware law.

---

[*] *Authority*:   6 Del. C. § 2533 (2004).

**3.69    ANTITRUST: GENERALLY (NMT)**

Section 1 of the Sherman Act (15 U.S.C.A. § 1), dealing with restraints of trade, provides that: Every contract, combination ... or conspiracy, in restraint of trade or commerce ... is ... illegal ....

Section 2 of the Sherman Act (15 U.S.C.A. § 2) provides that: Every person who shall monopolize, or attempt to monopolize, ... or conspire with any other person to ... monopolize any part of the trade or commerce ... shall be ... guilty of a *[violation of the antitrust laws]*.

Section 4 of the Clayton Act (15 U.S.C.A. § 15) provides: Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor.

Here, Defendants Hollingsworth, Minnick and New Millennium Tools contend that Tesla violated Section 2 of the Sherman Antitrust Act and Section 4 of the Clayton Antitrust Act by bringing and maintaining this action and obtaining a Stipulated Restraining Order.[*]

**Tesla Objections:**  Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*: 3A Fed. Jury Prac. & Instr. § 150.10 (5th ed.) (Modified)

**3.70    ANTITRUST: NATURE OF THE CLAIM (NMT)**

Defendants Hollingsworth, Minnick and New Millennium Tools claim that Tesla has violated the Sherman Act by attempting to monopolize military sales and contracts involving power supplies, power connecting devices and power tools.

The purpose of the Sherman Act is:

(1) To preserve and advance our system of free, competitive enterprise;

(2) To encourage, to the fullest extent practicable, free and open competition in the marketplace; and

(3) To prevent the accomplishment of a monopoly in any business or industry all to the end that the consuming public may receive better goods and services at a lower cost.

Any unreasonable interference, by contract, or combination, or conspiracy, with the ordinary, usual, and freely-competitive pricing or distribution system of the open market in interstate trade and commerce, constitutes an unreasonable restraint of interstate trade, and is a violation of the federal antitrust laws.[*]

**Tesla Objections:**    Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*: 3A Fed. Jury Prac. & Instr. § 150.01 (5th ed.)

## 3.71    ANTITRUST:    WILLFUL    AND    INTENTIONAL    ACQUISITION    AND MAINTENANCE OF MONOPOLY (NMT)

The mere possession of monopoly power is not sufficient to support a finding of monopolization, unless it is also determined that the monopoly power was willfully and intentionally acquired and maintained. A person who acquires monopoly power through normal growth and development, as a consequence of having a superior product, or business acumen, or through historical accident, is not guilty of monopolization as defined in this charge.[*]

**Tesla Objections:**   Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*: 3A Fed. Jury Prac. & Instr. § 150.31 (5th ed.)

## 3.72    ANTITRUST: ATTEMPTED MONOPOLIZATION (NMT)

There are five essential elements that Defendants Hollingsworth, Minnick and New Millennium Tools must prove in order to establish that Tesla was liable for attempted monopolization within the meaning of the antitrust laws:

First:  That the relevant market applicable to this claim is what Defendants Hollingsworth, Minnick and New Millennium Tools claims them to be, that is military sales and contracts involving power supplies, power connecting devices and power tools;

Second:     That Tesla had a specific intent to monopolize such relevant market;

Third:  That one or more of the acts claimed by Defendants Hollingsworth, Minnick and New Millennium Tools was done, was wrongful, and was in furtherance of that intent, even though insufficient actually to produce the intended monopoly;

Fourth:     That both elements—the intent and the act—must appear and must together result in a reasonable probability that monopolization will sooner or later occur; and

Fifth:  That if so, the attempted monopolization so established was the proximate cause of damage to the business or property of Defendants Hollingsworth, Minnick and New Millennium Tools, by causing Defendants Hollingsworth, Minnick and New Millennium Tools to lose sales on which Defendants Hollingsworth, Minnick and New Millennium Tools would have made a profit.[*]

**Tesla Objections:**  Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*:  3A Fed. Jury Prac. & Instr. § 150.32 (5th ed.)

### 3.73    ANTITRUST: INTENT

Intent ordinarily may not be proved directly because there is no way of understanding or scrutinizing the operations of the human mind. But you may infer a person's intent from surrounding circumstances. You may consider any statement made or act done or omitted by a party whose intent is in issue, and all other facts and circumstances that indicate the party's state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is for you to decide what facts have been established by the evidence.[*]

**Tesla Objections:**    Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*:  3A Fed. Jury Prac. & Instr. §  150.63 (5th ed.)

129

## 3.74     ANTITRUST: MONOPOLIZE

The term "monopolize," as used in the federal antitrust laws, means the power either to obtain, or to maintain, the power to remove or exclude competitors from the field of competition in a particular business or industry.[*]

**Tesla Objections:**   Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*:  3A Fed. Jury Prac. & Instr. §  150.64 (5th ed.)

130

**3.75    ANTITRUST: RELEVANT MARKET (NMT)**

Before it can be determined whether a person has monopolized a field of competition in a particular line of trade or commerce, it must first be determined what is the "area of effective competition" applicable in this case. In antitrust law, this is known as defining what is called the "relevant market." Charges of monopolization can only be judged in the framework of the relevant market.

The relevant market that Defendants Hollingsworth, Minnick and New Millennium Tools claims applies in this claim is as follows: military sales and contracts involving power supplies, power connecting devices and power tools. Therefore, Defendants Hollingsworth, Minnick and New Millennium Tools must prove by a preponderance of the evidence that the relevant market applicable in this case is military sales and contracts involving power supplies, power connecting devices and power tools.

In determining the relevant market, the "area of effective competition" must be determined by reference to: (1) a product market and, (2) a geographic market.

First, in determining the product market, the basic idea is that the products within it are interchangeable as a practical matter from the buyer's point of view. This does not mean that two products must be identical to be in the same relevant market. It means that they must be, as a matter of practical fact and the actual behavior of consumers, substantially or reasonably interchangeable to fill the same consumer needs or purposes. Two products are within a single market if one item could suit buyers' needs substantially as well as the other. In sum, what you are being asked to do is to decide which products compete with each other.

Second, the relevant geographic market generally consists of the area or areas in which

these parties and their competitors compete for sales in the relevant product. Here, Defendants Hollingsworth, Minnick and New Millennium Tools contend that the relevant geographic market is the Federal government, including sales to the United States military market. In some instances, the geographic market may be national or international, under other circumstances it may be as small as a single metropolitan area. The geographic market selected must both correspond to the commercial realities of the industry and be economically significant.[*]

**Tesla Objections:**  Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*: 3A Fed. Jury Prac. & Instr. § 150.66 (5th ed.)

### 3.76    ANTITRUST: COMPENSATORY DAMAGES (NMT)

If you should find from a preponderance of the evidence in the case that Defendants Hollingsworth, Minnick and New Millennium Tools is entitled to a verdict, the law provides that Defendants Hollingsworth, Minnick and New Millennium Tools are to be fairly compensated for all damages, if any, to Defendants Hollingsworth's, Minnick's and New Millennium Tools's business or property that were proximately caused by the conduct of the Tesla.

In arriving at the amount of the award, you should include any damages suffered by Defendants Hollingsworth, Minnick and New Millennium Tools because of lost profits; that is to say, profits that Defendants Hollingsworth, Minnick and New Millennium Tools would have made, but for the unlawful conduct of Tesla.

If you should find from a preponderance of the evidence in the case that damage to Defendants Hollingsworth's, Minnick's and/or New Millennium Tools's business, or property, such as a loss in the profits, was proximately caused by the defendants' illegal conduct complained of, then the circumstances that the precise amount of Defendants Hollingsworth's, Minnick's and/or New Millennium Tools's damages may be difficult to ascertain should not affect Defendants Hollingsworth's, Minnick's and/or New Millennium Tools's recovery, particularly if the defendants' wrongdoings have caused the difficulty in determining the precise amount.

On the other hand, Defendants Hollingsworth, Minnick and/or New Millennium Tools are not to be awarded purely speculative damages. An allowance for lost profits may be included in the damages awarded, only when there is some reasonable basis in the evidence in the case for determining that Defendants Hollingsworth, Minnick and/or New Millennium Tools have in fact

133

suffered a loss of profits, even though the amount of such loss is difficult of ascertainment.

In arriving at the amount of any loss of profits sustained by Defendants Hollingsworth, Minnick and/or New Millennium Tools, you are entitled to consider any past earnings of Defendants Hollingsworth, Minnick and/or New Millennium Tools in the business in question, as well as any other evidence in the case bearing upon the issue.[*]

**Tesla Objections:**   Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*:  3A Fed. Jury Prac. & Instr. § 150.90 (5th ed.)

## 3.77   ANTITRUST: FUTURE PROFITS (NMT)

In considering the element of future profits in determining what damages, if any, were sustained by Defendants Hollingsworth, Minnick and/or New Millennium Tools, if, because of a violation of the antitrust laws, Defendants Hollingsworth, Minnick and/or New Millennium Tools were unable to earn net profits that would have accrued to them but for a violation of the antitrust laws, then Defendants Hollingsworth, Minnick and/or New Millennium Tools were in fact damaged.

Future profits mean net profits. They are determined by subtracting the costs and expenses of a business from its gross revenue. The fact that a defendant's business may have been new or unestablished is not fatal to the element of damages constituting net profits. In determining whether or not any part of Defendants Hollingsworth's, Minnick's and/or New Millennium Tools's damages constitute future net profits, you may consider the uncertainty that makes the success of a new business problematical, the experience of Defendants Hollingsworth's, Minnick's and/or New Millennium Tools's officers in the business, the competition that Defendants Hollingsworth, Minnick and/or New Millennium Tools would have had in the federal government, including sales to the United States military and the general market conditions in such area.[*]

**Tesla Objections:**   Not pleaded with necessary specificity.  Not explained during discovery.

---

[*] *Source*: 3A Fed. Jury Prac. & Instr. § 150.91 (5th ed.)

### 3.78   VIOLATION OF THE DELAWARE WAGE PAYMENT ACT (Waldmann)

In Count I Mr. Waldmann alleges that Tesla industries violated Delaware's Wage Payment and Collection law. The Delaware wage payment law requires that every employer pay all wages due to its employees. It is a violation of the Delaware Wage Payment Law for an employer to fail to pay an employee wages that are due the employee within seven days after the pay period ends.

You are further instructed that Tesla may not withhold or divert any portion of Waldmann's wages unless: (1) Tesla is required or empowered to do so by state or federal law; (2) The deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employers' books; or (3) The employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee.

The Delaware wage payment law also give an employee a legally protected right to file a claim against an employer if the employer fails to pay wages or commission that are due the employee. The term wages means compensation for labor or services rendered by an employee. The term wages also includes commission.

Mr. Waldmann alleges that Tesla Industries has failed to pay him wages, including salary for the period of January 1, 2006 through January 28, 2006 and commissions that were due him for the third and fourth quarter of 2005. If you find that Tesla Industries has failed to pay Mr. Waldmann wages which he is due, you must find in favor of Mr. Waldmann on Count I.

If you find that Tesla, failed to pay Waldmann wages for the period January 1, 2006 to January 28, 2006, you are to award him the wages that he should have been paid for that period

of time. If you find that Tesla failed to pay Waldmann his third or fourth quarter 2005 commissions, you are to award him the commissions he should have received for that those quarters.[2]

Source: 19 Del. C. §§ 1102, 1112.

**Tesla Objection**: Unsupported by Delaware law; argumentative; irrelevant;

---

[2] It is Waldmann's position that penalties, attorney fees, costs and other damages are to be awarded by the court.

**3.78    VIOLATION OF THE DELAWARE WAGE PAYMENT ACT (Tesla)**

Mr. Waldmann alleges in Count I of his Counterclaims that Tesla has failed to pay him earned salary for the period of January 1, 2006, through January 28, 2006. If you find that Tesla owed Mr. Waldmann that salary and failed to pay such amounts within seven days after such amounts were payable, you may find in favor of Mr. Waldmann on Count I.

Tesla alleges that no earned salary was due and payable to Mr. Waldmann during this period because his employment was terminated effective as of December 31, 2005, and because Waldmann had not done any work after that date which would entitle him to an "earned" salary. Therefore, if you find that Tesla properly did not pay Waldmann his wages in January 2006 because he had previously been terminated or he did not earn that salary you may find in favor of Tesla on Count I.

Mr. Waldmann also alleges in Count I that Tesla failed to pay him commissions for the 3rd and 4th calendar quarters of 2005. If you find that Waldmann earned such commissions you may find for him on this claim under Count I.

Tesla alleges that any payments by it above salary were bonuses based on sales which can be attributed to an employee's sales efforts during each quarter, i.e., "earned." It alleges that Mr. Waldmann did not earn any bonuses during the third and fourth quarters of 2005, and thus had reasonable grounds to dispute Mr. Waldmann's claim. If you find that Mr. Waldmann did not earn a commission during these quarters you may find in favor of Tesla on this claim.[*]

Waldmann's Objection:  Fails to state or explain the law; argues Plaintiff's theory instead of explaining the law to the jurors.

---

[*]  *Source: 19 Del. C.* § 1102

### 3.79    WAGE PAYMENT ACT-UNLAWFUL DISCHARGE (Waldmann)

In Count III Mr. Waldmann claims that Tesla terminated his employment because he filed a claim for unpaid commissions and salary with the Delaware Department of Labor. I have already instructed you that an employee has a right to file a claim against his employer under the Delaware wage payment law. Delaware's wage payment law also prohibits an employer from retaliating against an employee for filing a complaint with the Department of labor. Retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor.

Tesla Industries does not dispute that Mr. Waldmann filed a claim against Tesla Industries with the Department of Labor on January 23, 2006. Nor does Tesla Industries dispute that Mr. Waldmann was terminated on January 28, 2006 retroactively to January 1, 2006.

In order to find in favor of Mr. Waldmann on his claim of unlawful discharge, you must find that the fact that Mr. Waldmann filed a complaint with the Department of Labor was a motivating factor in Tesla's decision to terminate Mr. Waldmann on January 28, 2006. Motivating factor means that if Tesla was asked what its reasons were for firing Mr. Waldmann and it gave truthful responses, that one of those reasons would be that Mr. Waldmann filed a claim with the Delaware Department of Labor against Tesla.

Accordingly, if you find that one of the reasons that Tesla terminated Mr. Waldmann was that Mr. Waldmann filed a claim against Tesla with the Department of Labor, you must find in favor of Mr. Waldmann on Count III.[3]

Source:
19 Del. C. §§ 1102, 1112; Robinson v. Morris Moore Chevrolet-Buick, 974 F.Supp. 571 (E.D.Tex. 1997)(citing Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989)).

---

[3] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

**Tesla Objections**:  Unsupported by Delaware law.  The Wage Payment Act does not provide for a private right of action to enforce a penalty provision.

**3.80   DAMAGES FOR WRONGFUL DISCHARGE (Waldmann)**

If you find that Mr. Waldmann was wrongfully discharged from his employment with Tesla Industries, then he is entitled to an award of compensatory damages in the amount of the wages that would have been payable during the remainder of the employment term, less any amount actually earned or that might have been earned by Mr. Waldmann by due and reasonable diligence during the period after the discharge.

In addition, you may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Plaintiff experienced as a consequence of Tesla's allegedly unlawful act. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.[4]

Source:
Ogden-Howard v. Brand, Del. Supr., 108 A. 277, 278 (1919)(measure of damages is salary lost for period entitled to recover less amounts actually earned or might have earned by due and reasonable diligence during such period after discharge); State v. Berenguer, Del. Super., 321A.2d 507, 510-11 (1974)(state employee). See also 29 Del. C. § 5949 (discharge and appeal procedures of state employees); McClelland v. Climax Hosiery Mills, N.Y. Supr., 169 N.E. 605,609 (1930)(prima facie elements of dam ages for wrongful discharge). Third Circuit Model Jury Instructions.

**Tesla Objections**: Unsupported by Delaware law. The Wage Payment Act does not provide for a private right of action to enforce a penalty provision; nor does it provide for the relief requested.

---

[4] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

### 3.81    RIGHT TO INSPECT PERSONNEL FILES (Waldmann)

Under Delaware law, and employee has a right, upon request, and an employer must permit, an employee to inspect the employee's own personnel files.    Personnel file means, if maintained by the employer, any application for employment, wage or salary information, notices of commendations, warning or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records, performance evaluations and medical records.  Delaware law further requires that upon inspection of the employee's personnel file, an employee who disagrees with any of the information contained in such file, the employee may submit a written statement explaining the employee's position.  Finally, it is a violation of Delaware law to retaliate against an employee who has filed or is abut to file a Complaint to the Department of Labor regarding an alleged violation of this law.

In Count IX, Mr. Waldmann claims that Tesla refused to allow him to see his personnel file and refused to allow him to put an explanatory comments in his personnel file.  In addition, Waldmann alleges that Tesla retaliated against him because he reported Tesla's violation of Delaware law to the Delaware Department of Labor.  As I previously instructed, retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor.

Tesla Industries does not dispute that Mr. Waldmann filed a claim against Tesla Industries with the Department of Labor on January 23, 2006.  Nor does Tesla Industries dispute that Mr. Waldmann was terminated on January 28, 2006 retroactively to January 1, 2006..

In order to find in favor of Mr. Waldmann on his retaliation claim, you must find that the fact that Mr. Waldmann's filing of a complaint or threatened filing of a complaint, with the Department of Labor was a motivating factor in Tesla's decision to terminate Mr. Waldmann on January 28, 2006.

Accordingly, if you find that Tesla refused to allow Waldmann access to his personnel file, refused to allow him to put an explanatory note in his personnel file or retaliated against Waldmann for threatening to, or filing a claim, with the Department of Labor, you must find in favor of Mr. Waldmann on Count IX.

If you find that Tesla has violated the Delaware law as set forth above, you are to award him statutory damages of not less than $1,000 and not more than $5,000 for each and every time that Tesla violated the foregoing law.[5]

Source:
19 Del. C. §§ 730 et seq.; Robinson v. Morris Moore Chevrolet-Buick, 974 F.Supp. 571 (E.D.Tex. 1997)(citing Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989)).

**Tesla Objections**: Unsupported by Delaware law. The Wage Payment Act does not provide for a private right of action to enforce a penalty provision; nor does it provide for the relief requested.

---

[5] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

**3.82**   **FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT (Waldmann)**

Mr. Waldmann alleges in Count V that Tesla violated the Federal Electronic Communications Privacy Act. The Electronic Communications Privacy Act makes it illegal to use interstate wire communications to intercept or access electronically stored or electronically transmitted information that is not readily accessible to the general public.

Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, violated the Electronic Communications Privacy Act by using Mr. Waldmann's passwords to access Mr. Waldmann's private email account and mobile telephone account and other electronically stored or transmitted accounts without Mr. Waldmann's permission.

If you find that Tesla used the internet or some other form of wired or wireless telecommunications devise to access or intercept these accounts held by Mr. Waldmann without Mr. Waldmann's permission and that the accounts were not located outside of the State of Delaware, you must find in favor of Mr. Waldmann on Count V. You are further instructed that each and every time that it is a further violation of the act to disseminate information obtained in violation of the act.

If you find that Tesla has violated the federal statute, you are to award him statutory damages of not less than $100 and not more than $10,000 for each and every time that Tesla violated the federal statute.[6]

Source:        18 U.S.C. § 2510, *et. seq.*

**Tesla Objection**: Claim negated by Court's temporary restraining order.

---

[6] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

**3.83   DELAWARE ELECTRONIC SURVEILLANCE AND INTERCEPTION OF COMMUNICATIONS ACT (Waldmann)**

Mr. Waldmann alleges in Count VI that Tesla violated the Delaware Electronic Surveillance and Interception of Communications Act law by accessing Mr. Waldmann's private electronic information accounts.

Similar to the Federal Electronic Communications Privacy Act I described to you in the last instruction, the Delaware Electronic Surveillance Act makes it illegal for any person to intentionally intercept or attempt to intercept an electronic communication or to disclose information that was intercepted or accessed by the use of a wire or electronic communication.

If you find that Tesla used the internet or some other form of wired or wireless telecommunications devise to access or intercept these accounts held by Mr. Waldmann without Mr. Waldmann's permission, you must find in favor of Mr. Waldmann on Count VI. You are further instructed that each and every time that it is a further violation of the act to disseminate information obtained in violation of the act. The difference between the state statute and the federal statute is whether the accounts were located inside or outside of the State of Delaware.

If you find that Tesla has violated the state statute, you are to award him statutory damages of not less than $100 and not more than $1,000 for each and every time that Tesla violated the state statute. Under the state statute, in addition to statutory damages, you may also award Waldmann punitive damages. If you have awarded Waldmann statutory damages under the federal statute, you are not to award him additional statutory damages under the state statute for the same violation. However, you may award punitive damages for the same violation.[7]

---

[7] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

Source:        11 Del. C. § 2401, *et. seq.*

**Tesla Objection:** Claim negated by Court's temporary restraining order.

**3.84    INVASION OF PRIVACY/INTRUSION UPON SECLUSION (Waldmann)**

Mr. Waldmann alleges in Count VII that Tesla invaded his privacy. Specifically, Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, has intruded on Mr. Waldmann's private affairs by accessing his private email account and mobile telephone account.

In order to find in favor of Mr. Waldmann on his claim of invasion of privacy, you must find that Tesla has intruded, physically or otherwise, into Mr. Waldmann's private affairs. You must also find that Tesla's intrusion into Mr. Waldmann's private affairs is of the type that would be highly offensive to a reasonable person. The question is whether a reasonable person in similar circumstances would find the conduct very objectionable or would be expected to take serious offense to it.

If you find that Tesla intruded on Mr. Waldmann's private affairs and that such intrusion would be highly offensive to a reasonable person then you must find in favor of Mr. Waldmann on Count VII.

Source: Delaware Superior Court Civil Model Jury Instructions . . . . . . . . . . . . . § 11.18

147

### 3.85   DAMAGES - INVASION OF PRIVACY (Waldmann)

If you find that Mr. Waldmann has not sustained his burden of proof, the verdict must be for Tesla.   If you do find that Mr. Waldmann is entitled to recover for damages that were proximately caused by the invasion of his privacy by Tesla, you should consider the compensation to which Mr. Waldmann is entitled.

Mr. Waldmann is entitled to be fairly and adequately compensated for the injuries that you believe he suffered as a result of Tesla's invasion of his privacy.

Mr. Waldmann may recover damages for the following injuries:

(1) the harm to his interest in privacy;

(2) the mental distress suffered as a result of the invasion of privacy;

(3) any other injuries suffered as a result of the invasion of privacy; and

(4) punitive damages if there was malicious or intentional desire to injure or hurt Mr. Waldmann.

Your award must be based on the evidence and not on mere speculation. The law does not furnish any fixed standards by which to measure damages for invasion of privacy or for mental suffering, and counsel are not permitted to argue that a specific sum would be reasonable. You must be governed by your own experience and judgment, by the evidence in the case, and by the purpose of a damages award: fair and reasonable compensation for harm wrongfully caused by another.

If you find that Tesla's conduct constituted an invasion of privacy but that Mr. Waldmann did not suffer an injury to justify compensation then Mr. Waldmann may recover nominal damages, usually in the amount of $1.00.

Source:
*Reardon v. News Journal*, Del. Supr., 164 A.2d 263, 266 (1960); *Gutheridge v. Pen-Mod, Inc.*,

Del. Super., 239 A.2d 709, 714-15 (1967). *See also* RESTATEMENT (SECOND) OF TORTS § 652H (1965).

**Tesla Objection: Invasion of privacy covered by Del. P.J.I. Civ. § 11.18.**

### 3.86    PUNITIVE DAMAGES (Waldmann)

If you decide to award compensatory damages to Mr. Waldmann, you must determine whether Tesla is also liable to Mr. Waldmann for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate a party for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages for the purpose of punishing the person doing the wrongful act and to discourage such persons and others from similar wrongful conduct in the future.

You may award punitive damages to punish Tesla for its outrageous conduct and to deter it, and others like it, from engaging in similar conduct in the future if you find by a preponderance of the evidence that Tesla acted intentionally or recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct refers to conscious awareness. Reckless conduct refers to conscious indifference. Each requires that the defendant foresee that its conduct threatens a particular harm to another. Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result.

The law provides no fixed standards for the amount of punitive damages but leaves the amount to your sound discretion, exercised without passion or prejudice. In determining any award of punitive damages, you must consider the following: the reprehensibility or

outrageousness of Tesla's conduct and the amount of punitive damages that will deter it and others like it from similar conduct in the future. You may consider Tesla's financial condition for this purpose only. Tesla's financial condition must not be considered in assessing compensatory damages. Any award of punitive damages must bear a reasonable relation to Mr. Waldmann's compensatory or nominal damages. If you find that Mr. Waldmann is entitled to an award of punitive damages, you must state the amount of punitive damages separately on the verdict form.

Source:
*Devaney v. Nationwide Mut. Auto Ins. Co.*, Del. Supr., 679 A.2d 71, 76-77 (1996); *Tackett v. State Farm Fire and Cas. Ins. Co.*, Del. Supr., 653 A.2d 254, 265-66 (1995)(punitive damages available in bad faith action if breach is particularly egregious); *Jardel Co. v. Hughes*, Del. Supr., 523 A.2d 518, 527-31 (1987); *Saxton v. Harvey & Harvey*, Del. Super., C.A. No. 85C-JL-3, Poppiti, J. (Apr. 14, 1987).

**3.87    EFFECT OF INSTRUCTION AS TO DAMAGES**

The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of the plaintiff from a preponderance of the evidence in the case in accordance with the other instructions.*

---

*Source*: 3 Fed. Jury Prac. & Instr. § 106.02 (5th ed.)

## 3.88    DELIBERATION AND VERDICT

How you conduct your deliberations is up to you. But, however, when you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the fact, not me. Your sole interest is to seek the truth from the evidence in the case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. You verdict must be unanimous.

A form verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally sent to me through the foreperson, who by custom of this court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor or either party. You must decide the case yourselves based on the evidence presented.[*]

---

[*] *Source*: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

### CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, a true and correct copy of the foregoing JOINT

PROPOSED JURY INSTRUCTIONS was caused to be served on the following via CM/ECF

filing:

John D. Demmy
Stevens & Lee
1105 North Market Street
7th Floor
Wilmington, Delaware 19801
jdd@stevenslee.com

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
sbalick@ashby-geddes.com

John A. Adams
Adam C. Gerber
Susanin, Widman & Brennan, P.C.
South Gulph Road, Suite 240
King of Prussia, PA 19406
Jaadams@swbcounsellors.com

Louis S. Mastriani
Rodney R. Sweetland, III
David F. Nickel
Adduci, Mastriani & Schaumberg, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, District of Columbia 20036-3006
Nickel@adduci.com

   */s/ Paul E. Crawford*
Paul E. Crawford, Esquire (#493)
pcrawford@cblh.com