IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-055-GMS |
| v. | ) | |
| | ) | |
| DAVID C. WALDMANN, | ) | |
| LYNDOL W. HOLLINGSWORTH, | ) | |
| CHARLES MINNICK a/k/a CHUCK MINNICK, and | ) | |
| NEW MILLENNIUM TOOLS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**NMT DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT*
MOTION TO EXCLUDE PLAINTIFF'S PROPOSED EXPERT WITNESSES**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:   (302) 654-1888
Facsimile:   (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W. Hollingsworth,
Charles Minnick and New Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Michael G. McManus
Rodney R. Sweetland, III
David F. Nickel
Ian A. Taronji
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006

Dated:  May 17, 2007

# TABLE OF CONTENTS

I.    LEGAL STANDARD ........................................................................................ 1

      A.    Plaintiff Retains the Burden of Proving Admissibility of Expert Testimony ......... 1

      B.    A *Daubert* Hearing Is Warranted Prior to Permitting the Proposed Experts to Appear in Front of the Jury ......................................................................... 1

II.   ARGUMENT .................................................................................................. 2

      A.    Clyde T. Carter ...................................................................................... 2

            1.    The Readily Ascertainable Features of a Publicly Available Product Combinations Cannot Be a Trade Secret ...................... 2

            2.    Mr. Carter Does Not Demonstrate Sufficient Education or Experience in the Fields of Electrical Engineering, Metallurgy or Materials Science ...................................................... 3

            3.    An Expert's Education or Experience Alone, Without Appropriate Methodology, Is an Insufficient Basis for Testimony ............................................................................. 5

      B.    Roger Guillemette .................................................................................. 7

            1.    The Army's Restrictions on Mr. Guillemette's Proposed Testimony Render the Testimony Inadmissable as Opinion Testimony .............................................................................. 7

            2.    The Army's Restrictions on Mr. Guillemette's Proposed Testimony Render The Testimony Irrelevant ................................ 8

            3.    Mr. Guillemette Was Not Seasonably Identified as a Fact Witness ................................................................................... 8

      C.    Donald T. Stewart .................................................................................. 9

            1.    Whether Or Not A Witness Was Duped Does Not Make Him An Expert And Is Confusing .............................................. 9

            2.    The Limits Of Mr. Stewart's Experience And Mistaken Assumptions Render His Prospective Testimony Unhelpful And Confusing .................................................................... 9

      D.    John P. Sullivan .................................................................................. 11

**TABLE OF CONTENTS (continued)**

1.    Mr. Sullivan Lacks Any Experience or Education in the Fields of Electrical Component Manufacture or Government Contracting.................................................... 11

2.    Mr. Sullivan Lacks Reliable Data................................................. 12

3.    Tesla Fails to Adduce Anything Other Than Expert *Ipse Dixit* to Support Reliance Upon the Compound Annual Growth Rate Damages Calculation........................................ 14

E.    David Masilotti ...................................................................................... 15

III.    CONCLUSION........................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Advanced Medical Optics, Inc. v. Alcon, Inc.*,
No. Civ. A. 03-1095-KAJ, 2005 WL 782809 *3 (D. Del. Apr. 7, 2005) ............................... 12

*Ancho v. Pentek Corp.*,
157 F.3d 512 (7th Cir. 1998) ....................................................................................... 5

*Asplundh Mfg. Div. v. Benton Harbor Eng'g*,
57 F.3d 1190 (3d Cir. 1995)......................................................................................... 17

*Brooks v. Outboard Marine Corp.*,
234 F.3d 89 (2d Cir. 2000)........................................................................................... 1

*Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*,
107 F.R.D. 288 (D. Del. 1985) ..................................................................................... 2

*Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*,
110 F.R.D. 363 (D. Del. 1986) ..................................................................................... 3

*Daubert v. Merrell Dow Pharms., Inc.* (on remand),
43 F.3d 1311 (9th Cir.1995) ........................................................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..................................................................................................... 8

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000)..................................................................... 1, 2, 12, 14

*Hardin v. Ski Venture, Inc.*,
50 F.3d 1291 (4th Cir. 1995) ....................................................................................... 5

*ID Sec. Sys. of Canada, Inc. v. Checkpoint Sys., Inc.*,
198 F. Supp. 2d 598 (E.D. Pa. 2002) .......................................................................... 1

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)................................................................................... 13, 16

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999).......................................................................................... 13

*In re TMI Litig.*,
199 F.3d 158 (3d Cir. 2000).......................................................................................... 2

*Julie Research Labs, Inc. v. Select Photographic Eng.'g, Inc.*,
810 F. Supp. 513 (S.D.N.Y. 1992) .............................................................................. 3

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..................................................................................................... 7

*Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*,
179 F.R.D. 450 (D.N.J. 1998)...................................................................................... 15

<u>TABLE OF AUTHORITIES (continued)</u>

*McMahon v. Bunn-O-Matic, Corp.*,
  150 F.3d 651 (7th Cir. 1998) ................................................................. 7

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000).................................................................. 2

*Padillas v. Stork-Gamco, Inc.*,
  186 F.3d 412 (3d Cir. 1999).................................................................. 1

*Pell v. E.I. Du Pont De Nemours & Co.*,
  231 F.R.D. 186 (D. Del. 2005) ............................................................. 9

*People Who Care v. Rockford Bd. of Educ.*,
  111 F.3d 528 (7th Cir. 1997) ............................................................. 16

*Sowell v. Butcher & Singer, Inc.*,
  926 F.2d 289 (3d Cir. 1991)............................................................... 17

*Surace v. Caterpillar, Inc.*,
  111 F.3d 1039 (3d Cir. 1997).............................................................. 4

*Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*,
  958 F.2d 1169 (1st Cir. 1992) ............................................................. 5

*United States v. Edelman*,
  873 F.2d 791 (5th Cir. 1989) ............................................................ 10

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) .......................................................... 6

*Xerox Corp. v. Int'l Bus. Mach. Corp.*,
  64 F.R.D. 367 (S.D.N.Y. 1974) .......................................................... 4

**Other Authorities**

Anne M. Patterson, *Assessing Expert Methodology: Daubert in the Third Circuit and the District of New Jersey*, 226-Feb N.J. Law. 45, 47 (2004) ........................................................ 2

Tait Graves & Alexander Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 Santa Clara Computer & High Tech. L.J. 261, 265 (2004) .................................. 3

**Rules**

Fed. R. Civ. P. 10(c) ..................................................................................... 9

Fed. R. Civ. P. 26(a)(2)(B) ................................................................... 8, 9

Fed. R. Evid. 104(a) ...................................................................................... 2

Fed. R. Evid. 403 ............................................................................... 10, 17

Fed. R. Evid. 701 ........................................................................................ 17

Fed. R. Evid. 702 ............................................................................ 6, 8, 17

## TABLE OF AUTHORITIES (continued)

**Treatises**

Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence* pgs.
  702-22 (9th ed. 2006) .......................................................................................................... 16

**Regulations**

32 C.F.R. § 516.49(b) .............................................................................................................. 8

I.    **LEGAL STANDARD**

A.    **Plaintiff Retains the Burden of Proving Admissibility of Expert Testimony**

Tesla implores the Court to disregard the NMT Defendant's *Daubert* Motion because the Motion "attempts to overcome Defendants [sic] inability to find any experts to testify on their behalf by lobbing a fusillade of challenges against Tesla's four expert witnesses." *See* Opposition (D.I. 184) at 1. Tesla, thus, is apparently operating under a misapprehension of the respective burdens in the admissibility of expert testimony.

A party does not require expert testimony to challenge the reliability of the other party's experts. *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000). The party offering expert testimony has the burden of establishing, by a preponderance of the evidence, the qualifications of the proposed expert and the fit and reliability of his/her testimony. *See ID Sec. Sys. of Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 602 (E.D. Pa. 2002) (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) and *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)).

B.    **A *Daubert* Hearing Is Warranted Prior to Permitting the Proposed Experts to Appear in Front of the Jury**

In the event that the Court does not exclude the testimony of Tesla's proposed experts based upon their depositions and reports,[1] the NMT Defendants respectfully suggest that a voir dire of these witnesses outside the presence of the jury is warranted, based upon the representations by Tesla in its Opposition of the nature and basis of the testimony of the experts that it proposes. Where, as here, there are significant questions concerning the qualifications, fit and reliability of the proposed expert testimony, a hearing is warranted. *See Elcock*, 233 F.3d at

---

[1] *See Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) (affirming exclusion of experts without holding hearing where exclusion was based upon depositions and affidavits).

745. (*Daubert* hearing required in light of serious doubts regarding expert's methods); *In re TMI Litig.*, 199 F.3d 158, 159 (3d Cir. 2000) (discussing utility of *in limine Daubert* hearings); Anne M. Patterson, *Assessing Expert Methodology: Daubert in the Third Circuit and the District of New Jersey*, 226-Feb N.J. Law. 45, 47 (2004) ("In almost every case, a *Daubert* challenge will trigger an *in limine* hearing under Federal Rule of Evidence 104(a)....The Third Circuit has confirmed that a Rule 104 hearing is usually, if not always, essential to *Daubert* gatekeeping.").

## II.   ARGUMENT

### A.   Clyde T. Carter

#### 1.   The Readily Ascertainable Features of a Publicly Available Product Combinations Cannot Be a Trade Secret

Tesla cites the Court's decision in *Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*, 107 F.R.D. 288, 289 (D. Del. 1985) in support of the proposition, for the very first time in the case, that its trade secrets are combination trade secrets. *See* Opposition at 3. Invocation of the *Coca-Cola* case is unhelpful to Tesla's position, however, for two reasons.

First, it is distinguishable because the Coca-Cola *recipe*, unlike the standardized NATO connector or its elements at issue herein, is unknown. "A combination trade secret is a set of elements, each by itself in the public domain, whose synthesis can be a legally protected property right even though the elements by themselves are not. An easily understood example is the *formula* for Coca-Cola." Tait Graves & Alexander Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 Santa Clara Computer & High Tech. L.J. 261, 265 (2004) (emphasis added). *See also Julie Research Labs, Inc. v. Select Photographic Eng.'g, Inc.*, 810 F. Supp. 513, 519-20 (S.D.N.Y. 1992), *aff'd*, 998 F.2d 65, 67 (2d Cir. 1993) (electronic photo imaging and retouching system not a combination secret where, among other things, its elements were already known in the industry and, thus, obvious to implement).

2

Second, in the *Coca-Cola* dispute, the refusal by the Coca-Cola Company to divulge its secret recipe during discovery resulted in a preclusion order against the Coca-Cola Company. *See Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*, 110 F.R.D. 363, 369-70 (D. Del. 1986). Here, like in *Coca-Cola*, Tesla has refused to comply with the Court's October 20, 2006, Order to provide the details of its alleged trade secret to Defendants; apparently even to its own experts. Tesla's argument, in essence, is that its trade secret is so secret that it won't divulge them even when it is suing for misappropriation of those secrets, but its experts, the Court, Defendants and the jury can take its word that these really are trade secrets. This position is manifestly unreasonable:

> [A] defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are. Thus, after nearly a year of pre-trial discovery, Xerox should be able to identify in detail the trade secrets and confidential information alleged to have been misappropriated by IBM. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether Xerox can undertake a meaningful discovery program, which includes its attempt to trace the flow of trade secrets and confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated.

*Xerox Corp. v. Int'l Bus. Mach. Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974).

As Tesla has failed to provide the details of its purportedly secret alloy and resin to its own expert or Defendants, it should be precluded from presenting expert testimony from its experts or fact witnesses at trial on that alloy and resin.

### 2. Mr. Carter Does Not Demonstrate Sufficient Education or Experience in the Fields of Electrical Engineering, Metallurgy or Materials Science

The substance of Mr. Carter's proposed expert testimony is that

**REDACTED**

*See* Ex. 1 at 2. While Mr. Carter's Bachelor of Science degree in mechanical

3

engineering would presumably allow him to opine about the manufacturing tolerances of Tesla's standardized NATO connector (had he actually measured those tolerances using any quantifiable measurement standards),

**REDACTED**

. His education and experience in the fields of electrical engineering, metallurgy and materials science are not self-evident from Tesla's description of his credentials.

An expert's opinion must be confined to the field in which he has specialized knowledge or training. *See e.g., Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1055-56 (3d Cir. 1997) (electromechanical engineer not qualified to testify to human factors engineering defect); *Ancho v. Pentek Corp.,* 157 F.3d 512, 519 (7th Cir. 1998) ("Just as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopedic medicine to render an expert opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer . . . lacks qualifications to give expert testimony about plant reconfiguration."); *Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1296 (4th Cir. 1995) (expert on ski accidents was not qualified to testify about the principles of snowmaking); *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.,* 958 F.2d 1169 (1st Cir. 1992) (affirming exclusion of testimony of civil engineer in case involving mechanical defects in a crane because, *inter alia,* he was not a mechanical engineer).

In addition to the panoply of methodological defects in his proposed testimony, Mr. Carter strays into areas clearly outside the field of mechanical engineering. The sparse, one-

page "Data Sheet" (*see* Ex. 32)[2] upon which Tesla relies to support Mr. Carter's "impeccable" credentials "for the Who's Who of technology companies" simply does not establish Mr. Carter's qualifications to opine about :                    **REDACTED**

### 3.    An Expert's Education or Experience Alone, Without Appropriate Methodology, Is an Insufficient Basis for Testimony

Even if Mr. Carter was qualified to express an opinion as to the conductivity, manufacturing tolerances and materials strength of Tesla's standardized NATO connectors, his failure to perform any testing, measurements or analysis of these products renders his proposed testimony completely unreliable. Tesla makes the circular argument that Mr. Carter did not need to do any testing to support his conclusions because he said he did not need to do any testing.[3] *See* Opposition at 4. An *en banc* decision from the Eleventh Circuit squarely addresses Tesla's untenable proposition:

> Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express....
>
> Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis added); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*

---

[2] Although Tesla referenced Mr. Carter's curriculum vitae in its Opposition, the exhibit copies provided to the NMT Defendants did not contain that document. The NMT Defendants, thus, append as Ex. 32 a copy in case the Court's copies lacked that document as well.

[3] Tellingly, Tesla does not dispute the NMT Defendants' argument that the jury is capable of conducting the visual inspection and "drop" test performed by Mr. Carter, thereby rendering his testimony unnecessary. *See* NMT Defendants' Memorandum (D.I. 171) at 6.

(on remand), 43 F.3d 1311, 1316 (9th Cir.1995) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough"). If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.

*United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (*en banc*).

In preparation of his expert report, Mr. Carter specifically requested

**REDACTED**

An expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "No engineer would put such an unsupported assertion in a scholarly

---

[4] Tesla has also failed to produce to Defendants any designs or tests showing the tolerances of Tesla's alleged trade secrets. This refusal is the subject of Defendant Waldmann's Motion *in Limine* to Preclude Tesla from Using Technical Documents, Drawings or Schematics. *See* D.I. 139.

article; . . . Why, then, should courts pay it any heed?" *McMahon v. Bunn-O-Matic, Corp.*, 150 F.3d 651, 658 (7th Cir. 1998).

###### B.    Roger Guillemette

Without elaboration, Tesla contends that the issue of Mr. Guillemette's expert testimony is "moot" because of an Army ruling on the scope of his testimony. *See* Opposition at 5. This contention ignores the new issues raised by the Army's ruling and fails to address the other defects in Mr. Guillemette's report addressed by the NMT Defendants in their moving papers.

###### 1.    The Army's Restrictions on Mr. Guillemette's Proposed Testimony Render The Testimony Inadmissible as Opinion Testimony

The Army has prohibited Mr. Guillemette from rendering any expert testimony in this case on the NATO standardized connector that was the subject matter of his Fed. R. Civ. P. 26(a)(2)(B) report:

> Your request for the expert opinion testimony of Chief Guillemette under 32 C.F.R. § 516.49(b) in the above case is denied . . . Chief Guillemette may testify as to features that your connector possesses that others do not. *That testimony is not based on any technical knowledge that he possesses; in fact, he is unfamiliar with any of the technical specifications of the Tesla connectors.* He may not provide opinion testimony regarding whether those features make the Tesla product superior . . . He cannot, however, give an opinion of the product.

*See* April 26, 2007, letter from Lieutenant Colonel Kevin K. Robitaille to Brian A. Sullivan, Esq. (Exhibit E to Tesla's Opposition) (emphasis added).

The Army's restrictions eliminate the ability of Mr. Guillemette to provide expert opinion testimony. Lieutenant Colonel Robitaille's statement that Mr. Guillemette's testimony would not be based upon technical knowledge and that Mr. Guillemette is unfamiliar with the technical details of Tesla's connectors eliminates the ability of Mr. Guillemette to provide opinion testimony under Fed. R. Evid. 702. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579, 589-90 (1993) (the subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation).

Lieutenant Colonel Robitaille's statement that Mr. Guillemette may provide testimony concerning the features of Tesla's products may be a statement of the permissible scope of testimony from the Army's perspective, but it is not under the Federal Rules of Evidence. Testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder. *Pell v. E.I. Du Pont De Nemours & Co.*, 231 F.R.D. 186, 192 (D. Del. 2005).

### 2. The Army's Restrictions on Mr. Guillemette's Proposed Testimony Render The Testimony Irrelevant

Mr. Guillemette testified that he only has experience with **REDACTED**

See Ex. 19, Guillemette Dep., at 15:5-17:1. Mr. Guillemette has never seen or tested **REDACTED** and, according to Mr. Guillemette, he is not aware of **REDACTED** See Ex. 19 at 16:21-17:1. Accordingly, Mr. Guillemette's testimony regarding **REDACTED** is not relevant to any claim in this action, is irrelevant and would only confuse the jury as to the substance of Mr. Guillemette's testimony (*e.g.*, the jury will likely be confused as to whether he is testifying regarding the plug or receptacle.)

### 3. Mr. Guillemette Was Not Seasonably Identified as a Fact Witness

Tesla is apparently limited to using Mr. Guillemette as a fact witness. Even were his testimony relevant, however, Tesla did not disclose Mr. Guilemette as a fact witness during the fact discovery period. As the NMT Defendants set forth in detail in Motion *in Limine* No. 1: To Preclude Late-Disclosed Witnesses (D.I. 133), the identity of Mr. Guillemette was not disclosed

during the fact discovery period. *Id.* at 2 n.1.[5] The NMT Defendants, thus, never deposed him as a fact witness. Instead, their deposition was limited to the opinions that were the subject matter of his Fed. R. Civ. P. 26(a)(2)(B) report. Mr. Guillemette's proposed fact testimony should be excluded, for the reasons set forth in Motion *in Limine* No. 1, because he was never identified as a fact witness.

### C.    Donald T. Stewart

#### 1.    Whether Or Not A Witness Was Duped Does Not Make Him An Expert And Is Confusing

According to Tesla, "Mr. Stewart is uniquely qualified to opine whether Defendants' deceptive actions mislead him." *See* Opposition at 5. By Tesla's own admission, therefore, Mr. Stewart is a fact witness, not an expert witness. Even if Mr. Stewart's "expert opinion" as to how he was allegedly duped by Defendants was relevant, he should be precluded from offering such "expert" testimony because his testimony is not reliable, overly limited in scope (*i.e.* to one single military installation) and will be more confusing than helpful to the jury. *See, e.g., United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989) (affirming district court's exclusion of expert testimony under Fed. R. Evid. 403 on the grounds that it would confuse the jury).

#### 2.    The Limits Of Mr. Stewart's Experience And Mistaken Assumptions Render His Prospective Testimony Unhelpful And Confusing

Tesla disputes that Mr. Stewart limited his opinion to TACOM Rock Island. *See* Opposition at 6-7. However, the plain language of Mr. Stewart's deposition testimony contradicts Tesla's assertion:

**REDACTED**

---

[5] Repleaded and incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

**REDACTED**

*See* Ex. 10 at 88:11-18 and 89:20-90:18; *Id.* at 46:16-47:5, 79:19-21, 89:20-22, 90:1-92:21, 101:11-102:2, 104:6-8.

**REDACTED**

Due in large part to this litigation and Tesla's false statements to government agencies, including the military and the Federal Bureau of Investigation, the NMT Defendants do not yet

have an NSN for *any* of its products.[6]  The NMT Defendants, therefore, cannot bid on three- to

five- to ten-year contracts with TACOM Rock Island, or any other military or government

agency, until they obtain an NSN.  Instead of bidding on such contracts, NMT intends to sell its

products by IMPAC card, a manner of payment with which Mr. Stewart admitted '

   **REDACTED**                    *See* Ex. 10 at 88:11-18.  Accordingly, Mr.

Stewart's testimony, even if relevant and grounded in any reliable fact, should be precluded

because it is overly limited in scope and will likely cause jury confusion that his testimony

relates to the entire United States Military and Government procurement process.

   **D.**      **John P. Sullivan**

         **1.**      **Mr. Sullivan Lacks Any Experience or Education in the Fields of**
                  **Electrical Component Manufacture or Government Contracting**

   Tesla argues that Mr. Sullivan is not required to be a mechanical engineer to render an

expert opinion on lost profits.  *See* Opposition at 8.  Tesla appears to be misstating for effect the

argument found at p. 17 of the NMT Defendants' Memorandum (D.I. 171).  The NMT

Defendants contend that Mr. Sullivan is unqualified to render a lost sales opinion in a case

involving government contracting or the manufacture of electrical components because he has no

knowledge of those markets.  *Id.*  Mr. Sullivan's deficiency is dispositive.

   In *Advanced Medical Optics, Inc. v. Alcon, Inc.*, 2005 WL 782809 *3 (D. Del. Apr. 7,

2005), for example, the Court excluded testimony of a proposed damages expert because of a

---------------

   **REDACTED**

lack of expertise in the analysis of sales and marketing trends for the product at issue. Here, Mr. Sullivan admittedly has no knowledge of government contracting or the electrical component manufacturing markets (and, indeed, ignored market conditions as a factor of consideration). Where qualifications are a "close call," this factor is relevant to the *Daubert* calculus. *Elcock v. Kmart Corp.,* 233 F.3d 734, 744 (3d Cir. 2000).

### 2. <u>Mr. Sullivan Lacks Reliable Data</u>

The key inquiry under the rule governing bases of expert opinions is reasonable reliance, and that inquiry dictates that the trial judge must conduct an independent evaluation into reasonableness. *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). Where the data underlying an expert opinion are so lacking in probative force and reliability that no reasonable expert could base an expert opinion on them, an opinion which rests entirely upon them must be excluded. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994). Here, Tesla would have the Court accept the proposition that a reasonable CPA/Certified Valuation Analyst could reasonably rely on manifestly erroneous information.

Contrary to the innumerable defects identified by the NMT Defendants in the instant Motion and their Motion *in Limine* No. 5: To Exclude Unverifiable Financial Documents (D.I. 137), Tesla asserts that the information provided to Mr. Sullivan was accurate. *See* Opposition at 7-9. It even goes so far as to characterize                    **REDACTED**

                                                                            *See* Opposition at 9.

Tesla's refusal to abide by its previous judicial admission, thus, requires further explication of the inaccuracies in the information upon which Mr. Sullivan relied.

---

[7] *See* Exhibit D to D.I. 148                    **REDACTED**

**REDACTED**

 

As set forth above, the differences between the data sets upon which Mr. Sullivan relied demonstrate the absence of reliability of that data. Although mathematical exactness is not required, an expert's testimony must be based upon the proper factual foundation. *Elcock,* 233 F.3d at 755-56.

Tesla argues that the right to cross-examine Mr. Sullivan somehow compensates for his reliance upon inaccurate information. *See* Opposition at 10 ("It goes without question that the NMT Defendants will have the right to cross-examine both Mr. Sullivan and Tesla Industries in order to raise and address their concerns."). This argument was explicitly rejected in *Lithuanian*

*Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 458-59 (D.N.J. 1998), where the court vacated a magistrate's adoption of the argument Tesla is attempting to foist upon the Court: "To conclude that evidence is admissible because it is subject to [cross-examination] is, therefore, circular. Consequently, I find that it was error for [the magistrate judge], in exercising his gatekeeping function, to premise his determination of admissibility on [defendant's] ability to rebut the proffered testimony." *Id.*

> 3.  **Tesla Fails to Adduce Anything Other Than Expert *Ipse Dixit* to Support Reliance Upon the Compound Annual Growth Rate Damages Calculation**

The essence of Tesla's argument in support of the use of the compound annual growth rate (without taking into account market forces or customer or product variance) is that their expert, Mr. Sullivan, knows best. *See* Opposition at 10-11 ("As between Certified [sic] Valuation Analyst (Mr. Sullivan) and the NMT Defendants' counsel, it is respectfully submitted that the Court accept the former's opinion as the proper lost profits analysis to be used in this case."). As set forth above, however, it is not the NMT Defendants' burden to disprove the reliability of Tesla's methodology. As the proponent of the compound annual growth rate methodology, Tesla has the burden of establishing its reliability.

> Because the question of reliability is an admissibility requirement governed by Rule 104(a), a proponent must do more than simply make a *prima facie* case on reliability. While the proponent does not have to prove to the judge that the proffered expert testimony is *correct*, he or she must prove to the Judge by a preponderance of the evidence that the testimony is *reliable*.

*See* 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence* pgs. 702-22 (9th ed. 2006) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

Tesla's Opposition fails to cite a single case in which the compound annual growth rate had been accepted as an admissible methodology for a damages calculation. It also fails to cite any treatise or scholarly article supporting Mr. Sullivan's reliance on this methodology, and Mr.

Sullivan's Fed. R. Civ. P. 26(a)(2)(B) report also failed to cite any such support. Most significantly, Tesla's Opposition fails to explain Mr. Sullivan's failure to consider market, customer or product variables in reaching his conclusions. Expert testimony that fails to exclude other obvious alternative causes is unreliable under *Daubert*. *See, e.g., People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537 (7th Cir. 1997) ("A statistical study is not inadmissible merely because it is unable to exclude all possible causal factors other than the one of interest. But a statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court.").

### E.   David Masilotti

Tesla's Opposition concludes that because he is the most knowledgeable person about Tesla's operations, Mr. Masilotti should be permitted to testify about his business. *See* Opposition at 12. His desire to testify about damages, however, is not limited to matters within his personal knowledge or rational inferences from his personal knowledge.

Mr. Masilotti's proposed opinion testimony suffers from the identical foundational and reliability problems as the proposed testimony of Mr. Sullivan. The variations in data necessarily suggests one or more of three possibilities:

**REDACTED**

This is not merely fodder for cross-examination. It goes to core issues of confusion of the jury under Fed. R. Evid. 403 and the reliability prong of Rules 701 and 702.

15

Mr. Masilotti's proposed testimony also suffers from an absence of required rationality. The requirement that lay opinion under Rule 701 be rationally based upon the perception of the witness demands more than the witness perceive something first hand; it requires that the witness' perception provide a truly rational basis for his opinion. *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995). Mr. Masilotti's deposition testimony states that he believes that his company's growth will be

**REDACTED**

and demonstrates that he is either unable or unwilling to set aside the exuberance of an entrepreneur in order to provide realistic estimates in this litigation.

Tesla's reliance on case law and Advisory Committee notes permitting business owners to testify concerning damages (Opposition at 11-12) overlooks the fundamental fact set forth in the NMT Defendants' Memorandum: Mr. Masilotti's deposition testimony demonstrated

**REDACTED**             *See* D.I. 171 at 23 and Exhibit 16 at 208-16. Tesla's argument on business owners being able to testify concerning damages presupposes a degree of personal knowledge that is absent with Mr. Masilotti. In *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289 (3d Cir. 1991), for example, the Third Circuit affirmed the exclusion of opinion testimony under Rule 701 on corporate transfer records where those opinions and inferences were not based solely upon the investor's own perceptions.

## III.    CONCLUSION

For the reasons set forth herein, and in their initial Memorandum, the NMT Defendants respectfully request that this Honorable Court exclude the proposed testimony of Plaintiff's identified experts, as well as any unqualified lay opinion by Mr. Masilotti. In the alternative, the NMT Defendants request the opportunity to voir dire the proposed experts, and Mr. Masilotti, prior to them presenting any testimony under Fed. R. Evid. 701 or 702. Further in the alternative,

the NMT Defendants request that, if Roger Guillemette is permitted to provide testimony, he be prevented from appearing in court in his military uniform and that counsel for Tesla be prohibited from discussing his status as a combat veteran.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:    (302) 654-1888
Facsimile:    (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Lyndol W. Hollingsworth, Charles Minnick and New Millennium Tools, Inc.*

*Of Counsel:*

Louis S. Mastriani
Michael G. McManus
Rodney R. Sweetland, III
David F. Nickel
Ian A. Taronji
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:  (202) 466-2006

Dated:  May 17, 2007
180632.1

17

# EXHIBITS 18 - 32 ARE REDACTED IN THEIR ENTIRETY