## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

## PRETRIAL ORDER

This matter having come before the Court at a Pretrial Conference held February

26, 2008, pursuant to Fed. R. Civ. P. 16, and Louis J. Rizzo, Reger Rizzo & Darnall LLP,

Suite 202, 1001 N. Jefferson Street, Wilmington, DE 19801, having appeared as counsel

for Plaintiff, and John D. Demmy, Stevens & Lee, 1105 N. Market Street, 7th Floor,

Wilmington, DE 19801 and John A. Adams, Susanin, Widman & Brennan, P.C., Suite

240, Executive Terrace, 455 South Gulph Road, King of Prussia, PA 19406, having

appeared as counsel for Defendant, the following actions were taken:

1.       This is an action for misappropriation of Plaintiff Tesla Industries, Inc.'s

("Tesla") trade secrets and confidential information by Defendant David C. Waldmann.

Tesla also alleges Breach of Contract, Conversion, Tortious Interference with Prospective

Business Opportunity and Conspiracy.

Defendant Waldmann has brought counterclaims against Tesla alleging violations

of the Wage Payment Law, ERISA, Federal Electronic Communications Privacy Act,

Delaware Electronic Surveillance and Interception of Communications Act, Intrusion

Upon Seclusion, Conversion, and Delaware Personnel File Inspection Law, as well as Breach of Contract and Abuse of Process.

Diversity jurisdiction (28 U.S.C. § 1332(a)) is alleged and not disputed. Neither are personal jurisdiction nor venue. Jurisdiction of this matter is conferred on this Court by 28 U.S.C. § 1332(a)(1) and (c)(1) and this matter involves claims for amounts in excess of $75,000.

      2.     The following stipulations and statements were submitted and are attached to and made a part of this Order:

      (a)     a comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case and which may be read to the jury by the Court or any party, attached as Schedule A;

      (b)     an agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to, attached as Schedule B;

      (c)     except for rebuttal exhibits, a list of (1) all exhibits (marked for identification before trial), including documents, summaries, charts or other items expected to be offered in evidence, and (2) any demonstrative evidence and experiments to be offered during trial, attached as Schedule C;

      (d)     a list of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list, attached as Schedule D;

(e)    stipulations or statements setting forth the qualifications of each

expert witness or witnesses in such form that the statements can be read to the jury at the

time the expert witness takes the stand, attached as <u>Schedule E</u>;

(f)    a list of all depositions, or portions thereof, to be read into

evidence and statements of any objections thereto, attached as <u>Schedule F</u>;

(g)    an itemized statement of special damages, attached as <u>Schedule G</u>;

(h)    waivers of any claims of defenses that have been abandoned by

any party, if applicable, attached as <u>Schedule H</u>;

(i)    trial briefs of the parties are attached as <u>Schedule I</u>;

(j)    proposed jury instructions and verdict forms are attached as

<u>Schedule J</u>;

(k)    a list of the questions each party requests the court to ask

prospective jurors, submitted, and filed in accordance with Fed.R.Civ.P. 47(a) and D.Del.

LR 47.1(a), are attached as <u>Schedule K</u>;

(l)    a statement summarizing the history and status of settlement

negotiations indicating whether further negotiations are ongoing and likely to be

productive, attached as <u>Schedule L</u>; and

(m)    the status of discovery and additional discovery sought by the

parties is attached as <u>Schedule M</u>.

3.    Motions in limine not already decided by the Court will be fully briefed

and will be submitted shortly.

4.    This matter is scheduled for a four (4) day jury trial beginning at 9:00 a.m.

on June 17, 2008.

5.     The parties recommend that eight (8) jurors be selected at the commencement of this trial.

6.     This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by Order of this Court to prevent manifest injustice.

7.     The possibility of settlement of this case was considered by the parties, however, the parties are at an impasse.

Done this _____ day of _____, 2008.

_____
Honorable Gregory M. Sleet
United States District Court

*/s/ Louis J. Rizzo*
Louis J. Rizzo (DE Bar No. 3374)
Thomas K. Schindler
Jason S. Garber
Reger Rizzo & Darnall LLP
Suite 202
1001 N. Jefferson Street
Wilmington, DE 19801
(302) 652-3611
(302) 652-3620 (fax)

Attorneys for Plaintiff Tesla Industries, Inc.


*/s/ John D. Demmy*
John D. Demmy (DE Bar No. 2802)
Stevens & Lee
1105 N. Market Street, 7th Floor
Wilmington, DE 19801
(302) 654-5180
(302) 654-5181 (fax)

John A. Adams, Esquire
Susanin, Widman & Brennan, P.C.
Suite 240
Executive Terrace
455 South Gulph Road
King of Prussia, PA 19406

Attorneys for Defendant David C. Waldmann

# SCHEDULE A

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

        Plaintiff,

   v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

        Defendants.

Civil Action No. C.A. No.:  06-55-GMS

## SCHEDULE A

## STATEMENT OF UNCONTESTED FACTS

**I.**    **THE PARTIES**

    **A. Plaintiff Tesla Industries, Inc.**

    1.    Tesla Industries, Inc ("Tesla") is a corporation having its principal and only place of business in New Castle, Delaware.

    2.    Tesla commercial product line includes ground power units, electrical connectors, cabling and battery packs.

    3.    Tesla is in the business of designing, manufacturing, and selling portable ground power units ("GPU's"), cables, connectors and other electronic equipment for military and commercial applications.

4.      Tesla's products provide electrical power to start personnel carriers, tanks, helicopters, airplanes and other vehicles; that the foregoing can be done in remote and battlefield locations; that Tesla is a Department of Defense approved military contractor; that Tesla has been assigned a CAGE Code of "0VWE2".

5.      Some of Tesla's products are registered with the Defense Logistics Agency ("DLA") and assigned a National Stock Number ("NSN").

6.      Some of Tesla's products, including the NATO Plug, can be shipped priority on a Triple 9 priority shipment code if the product is immediately needed.

7.      Tesla's GPU's are suited for military use and tanks and personnel carriers which may encounter problems in shipping in that their batteries may become completely discharged and tanks and personnel carriers may be tightly packed on ships where space is limited so that Tesla's GPU's can provide the electrical starting power to allow the vehicles to become mobile.

**B. Defendant Waldmann**

8.      Defendant Waldmann ("Waldmann") is an individual residing in the State of Pennsylvania.

9.      Mr. Waldmann was an employee and military sales representative for Tesla from December 2002 until January 2006.

10.     Waldmann was employed by Tesla from December 16, 2002, was placed on administrative leave on November 29, 2005.

11.     At the beginning of his employment with Tesla, Waldmann signed a Non-Disclosure Agreement and a policy on Access to Tesla Industries Technology Resources.

### C. Former Defendant Hollingsworth

12.     Lyndol Hollingsworth ("Hollingsworth") is an individual residing in the State of Texas.

### D. Former Defendant Minnick

13.     Mr. Minnick is an individual residing in Oregon.  He is the President and CEO of former defendant New Millennium Tools, Inc.

### E. Former Defendant New Millennium Tools, Inc.

14.     New Millennium Tools, Inc. is a corporation of the State of Oregon which was incorporated by Mr. Minnick in late October, 2005.

### F.     Other Facts

15.     In early 2005, Waldmann presented a 2004 year review and memorandum to Frank Mooney and sought increases in his salary and commissions

16.     Waldmann's bi-weekly gross salary was $ 3,076.92.

17.     On November 29, 2005, Waldmann was suspended from his position with Tesla with pay.

18.     Tesla is the Plan Administrator of its group health and dental plans for its employees.

19.     On January 28, 2006, Waldmann was notified by Tesla that, effective January 1, 2006, Tesla had terminated Waldmann's coverage under the group health insurance policy and the group dental insurance policy.

20.     On or about December 28, 2005 and again on December 30, 2005, via e-mail, Waldmann requested from Tesla that he be allowed to inspect his personnel files.

21.     On January 23, 2006, Waldmann went to the Delaware Department of Labor to file a claim against Tesla alleging that Tesla failed to pay him wages due and owing to him and failed to allow him to inspect his personnel file.

22.     In connection with Waldmann's claims, Ms. Lori Greentree, from the Department of Labor, contacted Tesla and informed Mr. Dave Masilotti of Waldmann's claims.

23.     On January 24, 2006, by overnight mail, Waldmann received a copy of certain documents from his personnel file.

24.     Waldmann    obtained    a    military    e-mail    account, dave.waldmann@us.army.mil., from Army Knowledge Online ("AKO") which is located in Virginia.

25.     Waldmann's has a mobile telephone account with Nextel, which is located in Virginia, telephone number 610-496-9749.

26.     While still employed by Tesla, Waldmann demonstrated a DC impact wrench to two soldiers of the Delaware National Guard in New Castle, to an instructor Army unit in Aberdeen Proving Ground and to a couple of mechanics at Fort Knox.

27.     Waldmann provided Hollingsworth with information on how to contact Frank Furrie and informed Hollingsworth that Mr. Furrie might be interested in a DC impact wrench.

28.     Tesla initiated this action by filing a complaint against Waldmann, NMT, Hollingsworth and Minnick.

29.     The Complaint alleged that all defendants violated the Uniform Trade Secrets Act, conversion and conspiracy.

30.    All defendants counterclaimed against Tesla.

31.    Tesla settled its claims against NMT, Hollingsworth and Minnick.

# SCHEDULE B-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

---

### SCHEDULE B-1

### PLAINTIFF TESLA INDUSTRIES, INC'S
### STATEMENT OF CONTESTED FACTS

## I.    PARTIES

A.    Plaintiff Tesla Industries, Inc.

1.    Tesla is a developer and manufacturer of improved products primarily for the United States Armed Forces.  Its primary product offering to the military are Ground Power Units (GPU's) which are portable power supplies used by the military to power its military vehicles and aircraft.  Tesla also sells GPU's to various governmental and private parties for use when portable high electrical power is required.

2.    Tesla also develops specialty products for the military.

B.    Defendant David C. Waldmann

1.    Waldmann's duties as a Tesla employee were to promote and sell Tesla products, and only Tesla products, to the Armed Forces.

2.    When hired, Waldmann signed an "Agreement of Non-Disclsoure" as a condition of his employment.

3.     That Agreement explained to Waldmann that he would receive Tesla information including "certain identity of customers, products and technical and manufacturing information" that was "Secret and Confidential business information" of Tesla.

4.     The Agreement of Non-Disclosure signed by Waldmann further stated that this information, if not kept secret and confidential, "may cause damage to Tesla."

5.     The Agreement further alerted Waldmann that "[b]y signing this Agreement David C. Waldmann recognizes that the information to be disclosed to him/her by Tesla is secret and confidential ..."

6.     The Agreement of Non-Disclosure specifically prohibited Waldmann from providing to other individuals, groups or business entities information specific to Tesla products, competing with Tesla in the power products marketplace or to "any way assist, support, or provide information to others," and removing from Tesla any information about Tesla's products, customers or business without written permission from the President of Tesla Industries.

7.     The Agreement of Non-Disclosure also alerted Waldmann that is he breached any of these contractual obligations, he would be liable for all damages arising from that breach, "plus reasonable attorney fees and costs incurred in the litigation arising from the breach of this Agreement."

8.     When hired, Waldmann agreed to the Interoffice Memorandum regarding "Access to Tesla Industries Technology Resources," and executed it accordingly on December 16, 2002.

9.    The Interoffice Memorandum alerted Waldmann that "**AT NO TIME** are any documents, floppy disks, CAD drawings, e-mails, electronic parts or any TESLA properties to be REMOVED from the TESLA building's without the approval of the President of TESLA Industries (**if not sure, ask??**)."  (emphasis in original).

10.    When hired, Waldmann also agreed to and signed an "Employee Awareness Agreement" stating that "any object used in or for development or manufacture of Tesla products," including, but not limited to, "customer data," "customer information," "documentation," and "sales information" was "considered proprietary and at no time shall be removed from Tesla Industries, Inc. without written permission from only the President of Tesla."

11.    The Employee Awareness Agreement cautioned that "removal of such items shall be considered theft of proprietary information."

12.    At the time of hiring, Waldmann also authorized and consented to background inquiries concerning prior employment references, credential verification "and other reports."

13.    Prior to employment with Tesla, Waldmann had no experience as a salesman.  Waldmann had no experience selling products to the United States Armed Forces.

14.    Waldmann had not developed any contacts with potential purchasers of military equipment prior to being hired by Tesla.

15.    Waldmann accepted employment with Tesla indicating he was "very thankful for being put into a position where I can provide for and take good care of my family."

16.    In the last full year of employment at Tesla (2004), Waldmann earned over $100,000 in salary and commission. For 2005, Waldmann demanded more and when not promised by Tesla, Waldmann started to lay the foundation for other employment.

17.    Waldmann was suspended from employment on November 29, 2005 based on an internal (to Tesla) investigation showing that he may have disclosed or diverted Tesla documents and information to others in violation of his employment agreements he signed at the outset of his employment.

18.    He was formally terminated as an at-will employee effective January 1, 2006.

**II.    WALDMANN'S MISAPPROPRIATION OF TESLA'S CONFIDENTIAL INFORMATION**

1.    When Waldmann joined Tesla at the end of 2002, he had little, or no, knowledge of selling products to the military. Waldmann also had few, if any, customer contacts.

2.    Throughout his employment at Tesla, Waldmann was provided a defined sales territory and lists of military customers within his assigned territory. These customer lists were generated at considerable time, effort and cost to Tesla.

3.    Waldmann generated additional customer contacts and lists using the good will and financial resources of Tesla.

4.    Details of potential military customers' identification are necessary to effectively sell to the military or civilian personnel having purchasing responsibility or interest in a product offered to the Armed Services is not generally known outside the military, particularly since 9/11.

5.      Waldmann was fully aware that Tesla's customer information was confidential, which was acknowledged in writing when he was hired.

6.      Waldmann used confidential information about Tesla customers to promote defendants' products. This was done without Tesla's approval and in direct violation of his written employment agreements forbidding, *inter alia*, his providing or use of Tesla information for the benefit of others.

7.      Waldmann sent detailed customer lists to his computer on several occasions in 2005. These lists are not generally available to others than military contractors and military personnel.

8.      Waldmann used or intended to use the customer lists and other information about Tesla's customers to promote Hollingsworth's DC Impact Wrench during the second half of 2005 and into 2006. Waldmann's promotion of Hollingsworth's DC Impact Wrench in 2005 occurred while Waldmann was supposed to be promoting and selling Tesla products.

9.      These contacts within the military made by Waldmann on behalf of Hollingsworth, Minnick and NMT were Tesla customers whose identity and contact information Waldmann acquired from his work at Tesla.

10.     In September 2005, Waldmann obtained the contact information of a prospective Tesla customer, Frank Furrie, who was interested in supplying Tesla equipment for the post-Katrina relief effort.

11.     Waldmann contacted Furrie to promote the DC Impact Wrench for use in the post-Katrina relief effort. Waldmann also informed Furrie about a highly secret battery pack, called the UAV battery, Tesla was developing for the Navy.

12.    Waldmann had a Tesla employee forward pictures of his battery pack to him.  Ultimately, these pictures were sent to Hollingsworth.

13.    By the Fall 2005, Waldmann decided to leave Tesla.  From that point forward, he devoted substantial time to the promotion of Hollingsworth, Minnick, and NMT's products and very little to the promotion or sale of Tesla products.

14.    By early September, Waldmann was aware that Dave Masilotti did not want to work with or partner with Hollingsworth, Minnick, and NMT.

15.    Despite this awareness, Waldmann continued his efforts to promote actual and potential products of Hollingsworth, Minnick, and NMT during times where Waldmann was supposed to be promoting and selling Tesla products.

16.    By no later than mid-November 2005, Waldmann had accepted a formal offer to work at NMT.  However, following his acceptance of the offer, Waldmann e-mailed to his home computer another Tesla customer list.

17.    Waldmann sent a prototype NATO connector to Hollingsworth to incorporate into Hollingsworth's military version of his DC Impact Wrench.  This prototype was not on sale and contained several distinct proprietary features that assured high performance in the field.

18.    Waldmann, Hollingsworth and Minnick misrepresented to military personnel that the DC Impact Wrench was associated with Tesla.  A Flyer depicting the DC Impact Wrench and a Tesla GPU was created listing Waldmann as the contact for the items.

19.    Waldmann misappropriated other confidential information, including drawings, photographs, prototypes, and client contacts.  For example, Waldmann

provided information regarding MOSFETS, which was used by Hollingsworth to improve the torque of one of the models of his DC Impact Wrench. Soon thereafter, Minnick filed a provisional patent application on that feature listing him as the creator.

20.    Tesla used reasonable measure to protect its Confidential Information from disclosure. These measures included: protecting against access to Tesla's facility with a security door having an electronic combination lock and armed security guards; forbidding cellular telephones or cameras to be brought in the facility, and requiring the express consent of management before Tesla products, designs, or information could be removed. Tesla compartmentalized its sensitive and confidential information among its employees and further required each new employee to acknowledge the confidential nature of the products, designs and information. Tesla only permits each employee to have access to that narrow bit of information necessary to do his or her job for the company. Tesla also requires each employee to sign various employment agreements, including the Agreement of Non-Disclosure, as part of the contract of employment. Tesla uses a sophisticated security system for its company computers to protect itself from unauthorized access to, or distribution of, company information. In addition, Tesla manufactures and fabricates many of its own components for its products. Tesla protects the confidentiality of it components and its products by removing any identifying marks or part numbers and uses in-house part numbers to identify parts to protect this information on all parts purchased from its vendors.

### III.    BREACH OF CONTRACT

1.    Waldmann signed the employment agreements, including but limited to the Agreement of Non-Disclosure and Confidentiality Agreement, prior to and as a condition of his employment at Tesla.

2.    Waldmann repeatedly breached in material ways his employment agreements with Tesla by , *inter alia*: (1)  failing to devote his full-time business efforts to Tesla; (2) misappropriating Tesla's proprietary and confidential information concerning Tesla's products, including the UAV battery, NATO receptacle, and customer lists; (3) removing Tesla property from Tesla premises; (4) sending Tesla's customer lists to his home computer; (5) using Tesla's customer lists to promote or attempt to sell non-Tesla products to existing and prospective Tesla customers; (6) establishing an e-mail address outside of Tesla to divulge and transmit Tesla's proprietary and confidential information; (7) failing to properly and exclusively sell Tesla products; (8) converting Tesla's prototypes, information and business opportunities for his own purposes; (9) interfering with potential business opportunities for Tesla by redirecting the opportunities to individuals or companies other than Tesla; and (10) failing to service his existing Tesla accounts and territories.

### IV.    CONVERSION OF TESLA PROPERTY

1.    Waldmann was given access to Tesla proprietary and confidential information for the sole purpose of using that information in the promotion and sale of Tesla products.

2.    Waldmann improperly converted Tesla property for his own benefit namely, promoting and attempting to sell products other than ones from Tesla, and

assisting Hollingsworth and Minnick individually and collectively with their business interests, including the formation and marketing of NMT and its potential and actual products.

## V.    CONSPIRACY

1.    Waldmann conspired with Hollingsworth, Minnick, and NMT to deprive Tesla of the normal fruits of Plaintiff's technological and business property and to advance the interests of Waldmann, Hollingsworth, Minnick, and NMT.

2.    Waldmann converted Tesla's proprietary and confidential information in furtherance of this conspiracy.

3.    Waldmann, Hollingsworth, Minnick, and NMT used Tesla's good will to establish contacts with prospective customers for Waldmann pursuits outside of Tesla, as well as those of Hollingsworth, Minnick and NMT.

4.    Waldmann diverted Tesla customers to Hollingsworth, Minnick and NMT to advance their business interests at the expense of Tesla.

## VI.    DAMAGES

1.    Waldmann's actions and inactions resulting in the active and passive diversion of business from Tesla caused a serious downturn in Tesla's business, culminating in a loss of over $1 million in projected earnings.

2.    Tesla has lost the value of prototypes, drawings, technical data, and supplies at least in the estimated amount of $250,000.  In addition, Tesla has suffered lost employee and officer time and productivity in the amount of at least $500,000.

3.    Tesla is entitled to punitive damages.

## PLAINTIFF'S STATEMENT OF CONTESTED ISSUES OF LAW

1.      Whether Waldmann misappropriated trade secrets pursuant to Delaware

UTSA (6 Del. C. 2003(a) and 2001(4)).  Waldmann disclosed and removed Tesla's

proprietary and confidential information to further his efforts on his interests outside of

Tesla, as well as those of Hollingsworth, Minnick and NMT.  Misappropriation is defined

in 6 Del. C. 2001 as , *inter alia*, "acquisition of a trade secret of another by a person who

knows or has reason to know that the trade secret was acquired by improper means."

2.      Whether Waldmann breached his employment agreements with Tesla by,

*inter alia*:  (1)  failing to devote his full-time business efforts to Tesla; (2)

misappropriating Tesla's proprietary and confidential information concerning Tesla's

products, including the UAV battery, NATO receptacle, and customer lists; (3) removing

Tesla property from Tesla premises; (4) sending Tesla's customer lists to his home

computer; (5) using Tesla's customer lists to promote or attempt to sell non-Tesla

products to existing and prospective Tesla customers; (6) establishing an e-mail address

outside of Tesla to divulge and transmit Tesla's proprietary and confidential information;

(7) failing to properly and exclusively sell Tesla products; (8) converting Tesla's

prototypes, information and business opportunities for his own purposes; (9) interfering

with potential business opportunities for Tesla by redirecting the opportunities to

individuals or companies other than Tesla; and (10) failing to service his existing Tesla

accounts and territories.

3.      Whether Waldmann converted Tesla property for his own use.  Waldmann

was given access to Tesla's property and confidential information so that Waldmann

could promote and sell Tesla products.  Waldmann disclosed and removed Tesla property

and information to further his interests outside of Tesla, including those of
Hollingsworth, Minnick, and NMT.

     4.     Whether Waldmann conspired with Hollingsworth, Minnick, and NMT to
deprive Tesla of the normal fruits of its technological and business property.  Waldmann
used Tesla's good will to establish contacts with prospective customers for the potential
and actual products of Hollingsworth, Minnick, and NMT.  Waldmann also converted
Tesla's property in furtherance of this conspiracy.  In addition, Waldmann redirected
Tesla's potential customers to potential and actual products of Hollingsworth, Minnick,
and NMT.

     5.     Whether Tesla is entitled to damages provided by the UTSA and the
provisions of the Agreement of Non-Disclosure signed by Waldmann.  Waldmann's
actions and inactions were willful and malicious.

     6.     Whether Tesla is entitled to attorneys fees under the UTSA or the
employment agreements signed by Waldmann.  Waldmann's actions and inactions were
willful and malicious.

     7.     Whether Waldmann should be permanently enjoined from the use or
disclosure of Tesla's proprietary and confidential information, including, without
limitation, contact with any Tesla customer whom Waldmann had contact with during his
employment with Tesla.

     8.     Whether discretionary bonuses constitute wages under Delaware's Wage
Payment and Collection Act ("WPCA" --- 19 Del Code Section 1101, et seq.).

     9.     Whether Tesla had reasonable grounds to dispute any amounts alleged to
have been owed by Tesla to Waldmann.

10.    Whether the anti-retaliation penalties provision (19 De. Code Section 1112(d)) of the WPCA permits a private cause of action for the recovery of penalties set forth therein, or any other damages for alleged retaliation.

11.    Whether the penalty provisions of the "Right to Inspect Personnel Files Act" (19 Del. Code Section 735) permits a private cause of action for recovery of the "penalties" set forth therein or any other damages for alleged denial of access to personnel files.

12.    Whether 10 U.S.C. 2409 permits a private cause of action for alleged retaliation.

13.    Whether the claims of Waldmann of alleged improper access to his e-mails are barred by his acceptance of the Stipulated Restraining Order providing for Court-sanctioned access to his e-mails.

14.    Whether Waldmann's actions and inactions constituted gross misconduct thereby excusing Tesla from offering COBRA benefits to Waldmann following his termination.

15.    Whether Tesla's e-mail and privacy policies and procedures or Waldmann's use of his e-mails bar or defeat his federal and state Electronics Communications Laws claims and/or his invasion of privacy claims.

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

       Plaintiff,

      v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

       Defendants.

Civil Action No. C.A. No.:  06-55-GMS

## WALDMANN'S STATEMENT OF
## CONTESTED ISSUES OF FACT AND LAW

Waldmann's Statement of Contested Issues of Fact and Law as of May 9, 2008.
To date, Tesla has not provided the Defendants with its iteration of contested issues of
fact and law and, accordingly, Waldmann reserve the right to submit revisions to this
Statement after Tesla receiving Tesla's Statement, if such is ever provided.

Except where indicated otherwise, the following issues are submitted as issues for
the jury.  To the extent that any issues of law may be considered as issues of fact,
Waldmann incorporate by reference such issues.

## I.    TESLA's CLAIMS

### A.    MISAPPROPRIATION OF TRADE SECRETS

1

1. Whether Tesla's NATO Plug, NATO Receptacle, Dual Output Connector, Dual Output Power Supply, AC and DC Power/Inverter Systems and Custom Tool System, UAV Power Unit Assembly, Global Hawk Power System, Interface Box for UAV Unit, FEMA Power Unit, Cylindrical Connector or Customer, Vendor and/or parts lists is a trade secret.

2. Whether Tesla derives economic benefit from the foregoing.

3. Whether Tesla failed to make reasonable efforts to protect the secrecy of the foregoing.

4. Whether Tesla's claim for misappropriation of trade secrets is barred, in whole or in part, by the doctrines of waiver, estoppel and/or acquiescence.

5. Whether Tesla is barred from recovery due to unclean hands.

6. Whether Waldmann misappropriated any of Tesla's trade secrets.

7. Whether Tesla has been damages by any alleged disclosure.

8. Whether Waldmann illegally disclosed and/or illegally used Tesla's Customer, Vendor and/or parts lists, or any information related thereto.

9. Whether Tesla's Customer, Vendor and/or parts lists, whether such lists are a trade secret.

## B. BREACH OF CONTRACT CLAIM

1. Whether the Delaware Trade Secrets Act preempts Tesla's claim.

2. Whether Waldmann breach any agreement with Tesla.

3. Whether Tesla suffered any damages from any alleged breach.

## C. TESLA'S TORTIOUS INTERFERENCE CLAIM

1. Whether the Delaware Trade Secrets Act preempts Tesla's claim.

2.      What was the prospective contractual relationship to which Waldman allegedly interfered.

3.      Whether Waldmann tortuous interfered with a Tesla's prospective contractual relationship.

4.      Whether Tesla suffered any damages from any alleged interference.

### D.    TESLA'S ALLEGED CONVERSION CLAIM

1.      Whether the Delaware Trade Secrets Act preempts Tesla's Conversion Claim.

2.      Whether Waldmann, Mr. Minnick, Mr. Hollingsworth and/or NMT improperly converted any property of Tesla.

3.      Whether Waldmann, Mr. Minnick, Mr. Hollingsworth and/or NMT wrongfully deprived Tesla of ownership over its property.

4.      Whether Tesla suffered any damages from the alleged conversion.

### E.    TESLA's CIVIL CONSPIRACY AMONG DEFENDANTS

1.      Whether the Delaware Trade Secrets Act preempts Tesla's Civil Conspiracy Claim.

2.      Whether Defendants had an agreement to participate in an unlawful act.

3.      Whether Tesla was injured and suffered damages as a result of Defendants unlawful act.

4.      Whether Defendants performed an unlawful overt act in furtherance of the agreement.

## II.    WALDMANN's CLAIMS

### A.    TESLA'S ABUSE OF PROCESS

3

1.    Whether Tesla caused legal process to issue against Defendants.

2.    Whether Tesla commenced this legal process to accomplish a purpose for which the system is not designed.

3.    Whether Tesla commenced this legal process to harass, vex and/or intimidate Defendants.

4.    Whether Defendants suffered damage from the alleged abuse of process.

**B.    WAGE PAYMENT LAW**

1.    Whether Tesla could lawfully withhold wages from Waldmann?

2.    Whether Tesla retaliated absent Waldmann because Waldmann reported Tesla's failure to pay wages to the Department of Labor.

2.    The amount of damages, if any, to which Waldmann is entitled for the foregoing.

3.    Whether the Delaware Trade Secrets Act preempts Tesla's claim.

4.    Whether Waldmann breached any agreement with Tesla.

**C.    ACCESS TO PERSONNEL FILE**

1.    Whether Tesla failed or refused to allow Waldmann access to his personnel file.

2.    Whether Tesla failed or refused to allow Waldmann to put one or more comments in his personnel.

3.    Whether Tesla retaliated absent Waldmann because Waldmann reported Tesla's alleged failures to the Department of Labor.

3.    The amount of damages, if any, to which Waldmann is entitled for the foregoing.

4

### D.   **ELECTRONIC COMMUNICATIONS LAWS**

1.   Whether Tesla, without permission from Waldmann, accessed his e-mail account and/or mobile telephone account.

2.   The amount of damages, if any, to which Waldmann is entitled for the foregoing.

### E.   **PRIVACY**

1.   Whether Tesla invaded Waldmann's privacy by accessing his e-mail account and/or mobile telephone account.

2.   The amount of damages, if any, to which Waldmann is entitled for the foregoing.

### F.   **ERISA**[1]

1.   Whether Waldmann, as an employee of Tesla, was covered by a Group Health Plan and/or Dental Plan.

2.   Whether Waldmann was terminated for gross misconduct.

3.   The amount of damages, if any, to which Waldmann is entitled for the foregoing.

## III.   **SETTLEMENT**

A.   Whether Tesla's settlement with the former defendants bars Tesla from recovery damages against Waldmann.

B.   Whether Tesla's settlement with the former defendants reduces any judgment by Tesla and if yes, how much.

---

[1] It is Waldmann's position that this claim is to be decided by the Court.

# SCHEDULE C-1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  06-CV-055 GMS |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID C. WALDMANN | ) | |
| | ) | |
| Defendant. | ) | |

**SCHEDULE C-1**

**PLAINTIFF'S LIST OF EXHIBITS**

| TX No. | Deposition Ex/Doc No. | Date | Description | Objection | Admitted Yes (Date Admitted) | No |
|--------|----------------------|------|-------------|-----------|------------------------------|-----|
| 1 | PSupp 1361-88 | | Tesla Product Description | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Undated; Improper Confidential Designation, as it is publicly available on Tesla's website. | | |
| 2 | W045 | 12/16/02 | Waldman Employee Acknowledgement Form | Waldman has not been provided a document bearing Bates range W045 and, therefore, reserves their right to lodge objections when such document is produced. | | |
| 3 | DX136 | 12/16/02 | Waldman Agreement of Non-Disclosure | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 4 | W052 | 12/16/02 | Waldman Employee Agreement | Waldmann has not been provided a document bearing Bates range W052 and, therefore, reserves their right to lodge objections when such document is produced. | | |
| 5 | W057 | 12/16/02 | Waldman Background Check Consent Form | | | |
| 6 | W056 | 12/16/02 | Waldman Agreement not to remove information from Tesla | | | |

2 of 45

| | | | facility | |
|---|---|---|---|---|
| 7 | W069 | 11/29/02 | Waldman to Tesla letter accepting employment | |
| 8 | W092 | 01/28/05 | Summary of Waldman's 2004/2005 Compensation | |
| 9 | W098-W103 | 01/27/05 | Waldman to Masilotti/Memo "2004 Year-End Review" | |
| 10 | DX135 | 11/29/05 | Letter to Waldman re Suspension of Employment | |
| 11 | W113 | 01/27/06 | Tesla to Waldman Termination Notice | |
| 12 | DX34 | 02/12/91 | Hollingsworth U.S. Patent No. 4,991,472 titled "D.C. Direct Drive Impact Wrench" | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 13 | DX35 | 06/08/05 | Waldman to Hollingsworth email forwarding pictures of Tesla NATO connector, NATO plug and associated parts. | FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 14 | DX150 | 12/28/06 | Expert Report of Donald Stewart | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802; (See Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry, Co., 172 F.3d 44 *4 (4th Cir. 1999) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. |

| | | | | 1979); FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 15 | P478 | 09/07/05 | Waldman to Furrie email re UAV battery system | |
| 16 | P188 | 09/07/05 | Waldman to Hollingsworth memo re Furrie's interest in battery power and DC Impact Wrench | |
| 17 | DX113 | 09/08/05 | Talbot to Waldman email with pictures of UAV battery system (Exhibit J to Complaint) | FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 18 | DX124 | 07/01/05 | Waldman email from Tesla computer to home computer with Tesla customer list (Exhibit H to Complaint) | |
| 19 | DX117 | 09/04/05 | Email from Army personnel to Waldman acknowledging information sent by Waldman about Lug Master | FRE 401-402; FRE 601; FRE 801-802; Lack of sponsoring witness/lack of foundation. |
| 20 | DX118 | 09/06/06 | Hollingsworth to Waldman's contact with Navy | FRE 401-403; FRE 601; FRE 801-802; Lack of sponsoring witness/lack of foundation. |
| 21 | DX119 | 09/07/06 | Waldman email to Army personnel at TACOM | |
| 22 | DX120 | 09/08/06 | Waldman contact with Ft. Bragg personnel | |
| 23 | DX121 | 09/14/06 | Waldman to TACOM forwarding information about Impact Wrench | |
| 24 | DX123 | 09/19/06 | Email from Army personnel to Waldman re latter visit to Ft. Bragg | |

| | | | | |
|---|---|---|---|---|
| 25 | DX125 | 2005 | List of Tesla customers handled by Waldman | FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Incorrect date. |
| 26 | DX126 | 03/01/04 | List of Tesla customer handled by Waldman | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 27 | DX127 | 09/22/06 | Waldman to Army email re demo of Lug Wrench | |
| 28 | DX128 | 09/28/06 | Waldman to Minnick email re sell to Army | |
| 29 | DX42 | 08/15/05 | Facts from Hollingsworth to Waldman re NDA | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 30 | DX53 | 10/06/05 | Waldman to Hollingsworth/Minnick email re contacts at Ft. Bragg | |
| 31 | DX55 | 11/29/05 | Hollingsworth to Minnick email re suspension of Waldman | |
| 32 | DX38 | 08/30/05 | Waldman to Army personnel promoting DC Impact Wrench | |
| 33 | DX13 | 06/20/05 | Hollingsworth to Minnick email re DC Impact Wrench brochure referencing Tesla | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 34 | DX157 | 12/28/06 | Guillmette Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802; (See Tokio Marine & Fire Ins. Co. v. Norfolk & Western |

| | | | | |
|---|---|---|---|---|
| | | | | Ry, Co., 172 F.3d 44 *4 (4th Cir. 1999) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979); FRE 901; Lack of sponsoring witness/lack of foundation. |
| 35 | DX187 | 01/18/07 | Carter Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802; (See Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry, Co., 172 F.3d 44 *4 (4th Cir. 1999) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979); FRE 901; Lack of sponsoring witness/lack of foundation; Incorrect description. |
| 36 | DX | 12/2005 | Sullivan Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802; (See Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry, Co., 172 F.3d 44 *4 (4th Cir. 1999) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. |

| | | | | |
|---|---|---|---|---|
| | | | | 1979); FRE 901; Lack of sponsoring witness/lack of foundation. |
| 37 | DX137 | | Details of Tesla technology | FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Incorrect description. |
| 38 | DX116 | 02/07/06 | Restraining Order between Plaintiff and Defendant Waldman | |
| 39 | DX57 | 02/23/06 | Restraining Order between Tesla and Defendants Hollingsworth, Minnick and NMT | |
| 40 | DX25 | 08/2006 | NMT business plan | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 41 | DX45 | | Photos of UAV battery | FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Incorrect description. |
| 42 | | | Grand Jury Subpoena | FRE 401-402; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Subject to Motion in Limine (D.I. 135). |
| 43 | | 11/01/06 | Plaintiff's Supplemental Response to Defendants' | FRE 106; FRE 401-402; FRE 601; |

| | | | | |
|---|---|---|---|---|
| | | | Interrogatory 9 | FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; subject to Waldman's Motion in Limine (D.I. 139). |
| 44 | W056 | 12/16/02 | Tesla "Access to Tesla Industries Technology Resources" Employee Guide | |
| 45 | NMT – MIN 002230 | 02/01/06 | Hollingsworth to Minnick email | FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Incorrect description. |
| 46-55 | | | Reserved for exhibits identified in Sullivan deposition | FRE 106; FRE 401-402; FRE 801-802; FRE 901; FRE 1006; FRCP26(a)(3)-no description; Subject to Motion in Limine (D.I. 137). |
| 56-100 | | | Reserved for doc re information uncovered from Defendant's hard drives | FRCP 26(a)(3)-no description or notice; FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901 |
| 101-110 | | | Reserved for physical exhibits | FRCP 26(a)(3)-no description or notice; FRE 106; FRE 401-402; FRE 601; FRE 801-802; FRE 901 |
| 111-120 | | | Reserved for demonstrative exhibits | FRCP 26(a)(3)-no description or notice; FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; FRE |

| | | | | |
|---|---|---|---|---|
| | | | | 1006; Subjct to Motion in Limine (D.I. 137). |
| 121 | Depo 6 | 10/15/06 | WHOIS Record for DC Power Tools | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 122 | 7 | 00/00/00 | Marketing Information re: DC Impact and the new DC Lug Wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 123 | 8 | 04/05/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Message/Explanation for Brian Woller | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 124 | 9 | 09/01/05 | Sales and Marketing Agreement between DC Power Equipment, LLC and Chuck Minnick & Associates | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 125 | 10 | 09/01/05 | Sales and Marketing Agreement between DC Power Equipment, LLC and Chuck Minnick & Associates | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 126 | 12 | 05/02/05 | Email message from Lyndol W. Hollingsworth to Steve re: DC Impact wrench project | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 127 | 13 | 06/20/05 | Email message from | FRE 106; FRE |

| | | | Lyndol W. Hollingsworth to Chuck Minnick re: 24-volt DC Impact-Tesla Industries | 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 128 | 14 | 08/01/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Check out Goodall Mfgr. Co. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 129 | 15 | 09/15/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Update | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 130 | 16 | 09/21/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Licensing Agreement | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 131 | 18 | 09/20/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Update | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 132 | 20 | 06/10/05 | Mutual Nondisslosure and Limited Use Agreement by and between DC Power Equipment, LLC and Tesla Industries, Inc. | |
| 133 | 21 | 04/28/05 | Email message from Kent Huffman to Chuck Minnick re: Snap-On pricing | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of |

| | | | | |
|---|---|---|---|---|
| | | | | foundation. |
| 134 | 24 | 09/22/06 | Defendant Charles Minnick's Objections and Answers to Plaintiff Tesla Industries' First Set of Interrogatories | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 135 | | | AAI Drawings | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 136 | 26 | 09/08/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: FEMA | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 137 | 27 | 09/22/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Maybe you should consult an attorney | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 138 | 28 | 09/22/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Very Important Update | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 139 | 29 | 09/29/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Open | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of |

| | | | Mouth Insert Foot | sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 140 | 30 | 00/00/00 | Provisional Application for Patent Cover Sheet filed by Charles Minnick | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 141 | 31 | 12/12/05 | U.S. Patent and Trademark Office Filing Receipt sent to Chalres F. Minnick re: Application No. US60/748,959 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 142 | 32 | 11/15/05 | U.S. Patent and Trademark Office Filing Receipt sent to Charles F. Minnick re: Application No. US60/730,324 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 143 | 34 | 02/12/91 | U.S. Patent No. 4,991,472 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 144 | 35 | 06/08/05 | Email message from Dave Waldman to L. Hollingsworth re: Thank you. | |
| 145 | 36 | 06/09/05 | Email message from Lyndol W. Hollingsworth to Chuck Minnick re: Tesla Industries | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |

| 146 | 37 | 08/30/05 | Email message from Dave Waldman to Lyndol W. Hollingsworth re: UPS tracking number | |
|-----|----|----------|------------------------------------------------------|-----|
| 147 | 38 | 08/30/05 | Email message from Dave Waldman to William Studivant re: DC Impact (3/4 Drive Military Model) | |
| 148 | 39 | 07/11/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: Interface Box | |
| 149 | 40 | 07/28/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: Box Information | |
| 150 | 41 | 08/02/05 | Email message from Lyndol Hollingsworth to Dave Waldman re: Power Point Presentation (DC Lug Wrench) | |
| 151 | 42 | 08/18/05 | Fax from Lyndol Hollingsworth to Dave Waldman re: NDA | |
| 152 | 43 | 08/19/05 | Confidential Inforamtion prepared by Lyndol W. Hollingsworth form Tesla Industries, Inc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 153 | 44 | 10/31/05 | Provisional Application for Patent Cover Sheet filed by Lyndol W. Hollingsworth | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 154 | 45 | 00/00/00 | Photographs | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring |

| | | | | witness/lack of foundation. |
|---|---|---|---|---|
| 155 | 46 | 08/30/05 | Email message from Dave Waldman to Lyndol W. Hollingsworth re: DOLA battery | |
| 156 | 47 | 09/07/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: Update | |
| 157 | 48 | 09/07/05 | Email message from Dan Roscioli to Dave Waldman re: Contact | |
| 158 | 49 | 09/20/05 | Email Message from Lyndol Hollingsworth to Chuck Minnick re: Tesla and NMT, Inc. | |
| 159 | 50 | 09/20/05 | Email message from Lyndol Hollingsworth to Chuck Minnick re; NATO femal receptacle | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 160 | 51 | 09/24/05 | Email message from Lyndol Hollingsworth to Chuck Minnick re; Tesla and NMT, Inc. | |
| 161 | 52 | 09/25/05 | Email message from Lyndo Hollingsworth to Chuck Minnick re: Do I Stay… or Do I Go | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 162 | 53 | 10/06/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: A workable plan | |
| 163 | 54 | 10/28/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: NMT, Inc. update | |
| 164 | 55 | 11/29/05 | Email message from Lyndol Hollingsworth to | FRE 106; FRE 401-403; FRE 601; |

| | | | | |
|---|---|---|---|---|
| | | | Chuck Minnick re: Dave Waldman called me this evening | FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 165 | 56 | 11/30/05 | Email message from Lyndol Hollingsworth to Chuck Minnick re: Signed NDA I have from Tesla | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 166 | 57 | 02/03/06 | Stipulated Restraining Order Between Plaintiff and Defedant Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools, Inc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 167 | 59 | 02/03/06 | Stipulated Restraining Order Between Plaintiff and Defedant Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools, Inc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 168 | 60 | 03/27/06 | Answer and Counterclaims of Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc. and Demand for Jury Trial | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 169 | 61 | 08/31/05 | Email message from Dave Waldman to Lyndol Hollingsworth re: Call Me | |
| 170 | 62 | 11/10/06 | Notice of Deposition of Frank | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |

| | | | | |
|---|---|---|---|---|
| 171 | 63 | 01/27/06 | Verified Complaint for Injunctive Relief and Damages for Theft of Trade Secrets, Breach of Contract, Converstion, Tortious Interference, and Conspiracy | |
| 172 | 64 | 06/08/05 | Call Report | |
| 173 | 65 | 06/10/05 | Call Report | |
| 174 | 66 | 06/15/05 | Call Report | |
| 175 | 67 | 06/15/05 | Call Report | |
| 176 | 68 | 08/19/05 | Call Report Dave Waldman August 15-19, 2005 | |
| 177 | 69 | 08/17/05 | Call Report | |
| 178 | 70 | 08/28/05 | Call Report Dave Waldman August 22-28 | |
| 179 | 71 | 09/02/05 | Call Report Dave Waldman August 29 – September 2, 2005 | |
| 180 | 72 | 08/28/05 | Call Report | |
| 181 | 73 | 10/28/05 | Call Report Dave Waldman September 26 – October 28, 2005 | |
| 182 | 74 | 10/10/06 9 | Call Report | |
| 183 | 75 | 09/23/05 | Call Report Dave Waldman September 19-23, 2005 | |
| 184 | 76 | 09/01/05 | Call Report | |
| 185 | 77 | 06/20/05 | Sales Representative Weekly Itinerary Dave Waldman | |
| 186 | 78 | 09/12/05 | Sales Representative Weekly Itinerary Dave Waldman | |
| 187 | 81 | | Tesla 2004 Product Catalog | |
| 188 | 82 | | DVD | |
| 189 | 83 | | DC Impact Wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |

| 190 | 85 | 09/00/95 | Questionnaire for National Scurity Positions | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 191 | 89 | 04/03/06 | Letter from Louis S. Matriani to Brian A. Sullivan re: Tesla Industries v. David Waldman, et al. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 192 | 92 | 10/00/04 | Department of Defense Security Agreement Form | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 193 | 93 | 10/00/04 | Appendage to Department of Defense Security Agreement Form | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 194 | 94 | 02/28/06 | National Industrial Security Program Operating Manual issues by Department of Defense | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 195 | 95 | 12/00/99 | Department of Defense Contract Security Classification Specification Form | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 196 | 97 | 03/09/06 | Tesla Industries Contacts List | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of |

| | | | | sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 197 | 98 | 05/09/06 | Tesla Industries Contacts List | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 198 | 99 | 05/09/06 | Tesla Industries Webpage | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 199 | 103 | 00/00/00 | Photographs | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 200 | 111 | 00/00/00 | Handwritten Notes | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 201 | 112 | 09/07/05 | 2005 Standard Diary | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 202 | 113 | 09/08/05 | Exhibit J – Email from Joseph Talbot to Dave Waldman re: Wrapped Battery | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 203 | 114 | 11/22/05 | Email from Maryann | FRE 106; FRE |

| | | | Hobbs to Dave Waldman re: What's Up | 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 204 | 115 | 01/27/05 | Memo from Dave Waldman to Dave Masilotti and Frank re: 2004 Year in Review | |
| 205 | 116 | 02/07/06 | Stipulated Restraining Order Between Plaintiff and Defendant David C. Waldman | |
| 206 | 117 | 09/04/06 | Email from Courtney Taylor to Dave Waldman re: LugMaster Information | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 207 | 118 | 09/06/06 | Email from Lyndol Hollingsworth to Dave Waldman re: Navy | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 208 | 119 | 09/07/06 | Email from Scott Rew to Dave Waldman re: LugMaster Feedback | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 209 | DX128 | 09/28/06 | Waldman to Minnick email re: sell to Army | |
| 210 | DX42 | 08/15/05 | Facts from Hollingsworth to Waldman re: NDA | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 211 | DX53 | 10/06/05 | Waldman to Hollingsworth/Minnick | |

| | | | email re: Contacts at Ft. Gragg | |
|---|---|---|---|---|
| 212 | DX55 | 11/29/05 | Hollingsworth to Minnick email re: suspension of Waldman | |
| 213 | DX38 | 08/30/05 | Waldman to Army personnel promoting DC Impact Wrench | |
| 214 | DX13 | 06/20/05 | Hollingsworth to Minnick email re: DC Impact Wrench brochure referencing Tesla | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 215 | DX157 | 12/28/06 | Guillmette Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802 (See Tokio Marine & Fir Ins. Co. v. Norfolk & Western Ry. Co., 172 F. 3d 44 *4 (4th Cir. 199) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979); FRE 901; Lack of sponsoring witness/lack of foundation. |
| 216 | DX187 | 01/18/07 | Carter Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802 (See Tokio Marine & Fir Ins. Co. v. Norfolk & Western Ry. Co., 172 F. 3d 44 *4 (4th Cir. 199) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979); FRE 901; |

| | | | | |
|---|---|---|---|---|
| | | | | Lack of sponsoring witness/lack of foundation. |
| 217 | DX | 12/2005 | Sullivan Expert Report | FRE 401-402; FRE 601; FRE 701-702; FRE 801-802 (See Tokio Marine & Fir Ins. Co. v. Norfolk & Western Ry. Co., 172 F. 3d 44 *4 (4th Cir. 199) (Table) citing Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979); FRE 901; Lack of sponsoring witness/lack of foundation. |
| 218 | DX137 | | Details of Tesla technology | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 219 | DX116 | 02/07/06 | Restraining Order between Plaintiff and Defendant Waldman | |
| 220 | DX57 | 02/23/06 | Restraining Order between Tesla and Defendants Hollingsworth, Minnick and NMT | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 222 | DX45 | | Photos of UAV battery | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 223 | | 11/25/05 | DSCR Letter | FRE 106; FRE 401-403; FRE 601; |

| | | | | |
|---|---|---|---|---|
| | | | | FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 224 | | 11/01/06 | Plaintiff's Supplemental Response to Defendants' Interrogatory 9 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 225 | W056 | 12/16/02 | Tesla "Access to Tesla Industries Technology Resources" Employee Guide | |
| 226 | NMT 21-22 | 11/30/05 | Hollingsworth to Minnick Email message | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 227 | | 10/27/05 | Waldman email message to D. Piepoli | Did not produce during discovery). |
| 228 | | 04/26/07 | Army Letter re Guillemette | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 229 | | 05/03/06 | DC Power DOD Contract | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. |

| | | | | |
|---|---|---|---|---|
| | | | | Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 230 | | 05/03/06 | DC Power DOD Contract (2) | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 231 | | | Photos 160th SOAR RPR 1649 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 232 | | | AAI Drawings | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 233 | TI001 | 08/03/05 | Cassitty to Waldman email re: Impact wrench | |

| 234 | TI002-7 | 08/04/05 | Cassitty-Waldman email exchanging re: Promision of acetal nylon | |
| 235 | TI009-12 | 08/03/05 | Cassitty-Waldman email exchange re: use of Tesla acetal nylon | |
| 236 | TI027-31 | 03/28/05 | Talbot to Waldman email forwarding pix of Tesla equipment | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 237 | TI036-8 | 03/16/05 | Talbot to Waldman email forwarding pix of Tesla NATO "reciver" | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 238 | TI039-47 | 03/21/05 | Talbot to Waldman email forwarding pix of Tesla equipment | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 239 | TI048-49 | 08/26/05 | Waldman to Army (Roth) promoting DC impact wrench | |
| 240 | TI050-51 | 08/30/05 | Waldman to Hollingsworth email re: promotion of impact wrench at Aberdeen Proving Grounds | |
| 241 | TI065 | 07/28/05 | Waldman to Hollingsworth email re: info on Tesla boxes | |
| 242 | TI067 | 06/08/05 | Waldman to Hollingsworth forwarding pix of Tesla connectors and plugs | |
| 243 | TI075 | 07/25/05 | Hollingsworth to Waldman re: reliance on Waldman to get NSN | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE |

| | | | | |
|---|---|---|---|---|
| | | | for DC Power | 901; Lack of sponsoring witness/lack of foundation. |
| 244 | TI077-78 | 08/31/05 | Waldman to Hollingsworth e-mail exchange re "Asian" version of impact wrench | |
| 245 | TI079 | 08/02/05 | Hollingsworth to Waldman e-mail re: Waldman's help in promoting DC Lug Wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 246 | TI080 | 08/18/05 | Hollingsworth to Waldman memo re: receipt of NATO receptacle | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 247 | TI086-87 | 08/30/05 | Waldman to Hollingsworth exchange re: DOLA battery | |
| 248 | TI089 | 09/15/05 | Hollingsworth to Waldman email re: creation of NMT to promote power tool | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 249 | TI091 | 11/04/05 | Waldman to Mrs. Norman asking her to extract e-mail from Army personnel for home computer | |
| 250 | TI094 | 11/18/05 | Waldman to Hollingsworth e-mail on AKO offering to seek forms from Army for NMJ | |
| 251 | TI095-98 | 11/20/05 | Waldman to Cassidy e-mail exchange with Waldman stating that | |

| | | | | |
|---|---|---|---|---|
| 252 | TI124 | 09/15/05 | Tesla does not answer my complete involvement with this Hollingsworth to Waldman email re formation of NMT | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 253 | TI125-26 | 11/16/05 | Email from Chinese battery manufacturer | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 254 | TI159 | 11/18/05 | Waldman to Hollingsworth email re Army funding for NMT | |
| 255 | TI164 | 11/19/05 | Waldman to Cassidy re possible job for Cassidy at NMT | |
| 256 | TI165-7 | 11/14/05 | Cassidy to Waldman exchange | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 257 | TI168-9 | 10/31/05 | Stiglich to Waldman re tracking sales by NSN maker | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 258 | TI171-174 | 10/28/05 | Hollingsworth to Waldman email exchange re MOSFETS | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 259 | TI175 | 09/29/05 | Hollingsworth to Waldman exchange re | FRE 106; FRE 401-403; FRE 601; |

| | | | contact with TACOM | FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 260 | TI176-7 | 09/29/05 | Emails re contact with D. Stewart | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 261 | TI178-80 | 10/06/05 | Emails re contact with Stewart | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 262 | TI181 | 09/19/05 | Contact with Stewart | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 263 | TI182-4 | 09/20/05 | Contact with Stewart | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 264 | TI185 | 09/08/05 | Contact with Chief Acevedo | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 265 | TI186-8 | 09/09/05 | Contact with Acevedo | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of |

| | | | | |
|---|---|---|---|---|
| | | | | foundation. |
| 266 | TI189-194 | 08/30/05 | Contact with Arthur Dohl | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 267 | TI195-96 | 09/01/05 | Email re Tesla product from website | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 268 | TI197-202 | 08/30/05 | Contact with Dohl | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 269 | TI203 | 08/30/05 | Contact with Ostman | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 270 | TI204-5 | 08/30/05 | Email re discussion of Battery Sentry System and DOLA | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 271 | TI206-16 | 08/30/05 | Contact with Chief Sturteveant | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 272 | TI221-9 | 08/04/05 | Provision of acetal nylon to Cassity | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE |

| | | | | |
|---|---|---|---|---|
| | | | | 901; Lack of sponsoring witness/lack of foundation. |
| 273 | TI246 | 08/03/05 | Waldman wholesale mailing to Army personnel re impact wrench | |
| 274 | TI254 | 07/11/05 | Email re interface box dimension | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 275 | TI255-6 | 06/17/05 | Email forwarding DC Impact-Tesla Brochure | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 276 | TI259-64 | 01/23/05 | 2004 Annual Review with list of Customers | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 277 | TI287-99 | 02/11/05 | Talbot memo to ebay | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 278 | TI289-315 | 12/25/05 | AKO mail of Waldman | |
| 279 | TI317 | 2005 | Waldman sales contracts | |
| 280 | TI318 | 12/02/05 | Receipt for Waldman's return property | |
| 281 | TI323-4 | 08/26/05 | Contact with Rotti | |
| 282 | TI325-51 | | Tesla employee handbook | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring |

| | | | | |
|---|---|---|---|---|
| | | | | witness/lack of foundation. |
| 283 | TI355 | 07/12/05 | Request for info on box insert by Tesla | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 284 | TI356-358 | | Dodac Lists | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 285 | TI359-363 | | Customer Lists | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 286 | TI400 | | Dodac Lists | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Incorrect title. |
| 287 | TI401 | | Sales Reports | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 288 | TI405 | 07/28/05 | Contacts | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |

| 289 | TI406-423 | | Canada National Defense TI 3000 GPY Start Trial and Final Report | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 290 | TI424-429 See #466 for better copy | 04/93 | Lear jet test results | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 300 | TI430 | 05/04/93 | Lear jet Bench Testing of Telsa accept Battery | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 301 | TI431-434 | 03/28/05 | Talbot EM to Waldman T3000 profile.jpg | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 302 | TI435-463 See also #547 | 03/28/05 | Talbot to Waldman 35 UAW Cable.jpg:TI3000-UNV0029.jpg, etc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 303 | TI464 | 03/28/05 | Defense Contract Awarded to TI $5.622 M | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 304 | TI465 | | TI Schematic Receptacle for NATO Plug Interface Box | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of |

| | | | | |
|---|---|---|---|---|
| | | | | sponsoring witness/lack of foundation. |
| 305 | TI472-475 [quote in copy 479] | | Waldman to Waldman Surface Maintenance Managers | |
| 306 | TI476 | 07/15/05 | Waldman to Hollingsworth Box Dimensions | |
| 307 | TI477 | 07/28/05 | Waldman to Hollingsworth Box Information | |
| 308 | TI478 | 09/07/05 | Tesla Information | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Inaccurate description. |
| 309 | TI484-527 | | More Dodac Lists | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Incorrect description. |
| 310 | TI529-531 | | | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; No description given. |
| 311 | TI535-543 | 03/21/05 | Talbot to Waldman TI5676_0001.jpg; TI5676 etc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of |

| 312 | TI544-546 | 03/16/05 | NATO Receiver 01.jpg; NATO etc. | foundation. FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 313 | TI547 | 03/28/05 | Talbot to Waldman | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Inaccurate description. |
| 314 | TI552 | 03/30/05 | Talbot to Waldman UAV Battery 002.jpg | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 315 | TI558 | | More Customer List/Dodac Lists | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Inaccurate description. |
| 316 | PS 1110 | 02/02/06 | Chasmin to Sullivan Tesla Sample NATO Connector return connector | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; vague description. |
| 317 | PS 1071 | | Hollingsworth to Sullivan Regarding | FRE 106; FRE 401-403; FRE 601; |

| | | | Non-Disclosure Agreement | FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 318 | PS 1107 | | Hollingsworth to Sullivan 30 Day Extension | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 319 | PS 1360 | 11/29/05 | Tesla letter of Suspension to Waldman | |
| 320 | PS 1389 | 12/28/05 | Mooney to Waldman Memo re Waldman illegal activity | |
| 321 | PS 1392 | | Adams to Sullivan Passcode to Hotmail account | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 322 | PS 1393 | 12/26/03 | Waldman to Mooney year in review | |
| 323 | PS 1414 | 10/07/05 | Mooney to Waldman re Dodac teach orders | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 324 | PS 1415 | 10/04/05 | Mooney to Waldman Parts Tracker | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 325 | PS 1459 | 02/15/05 | Ryan to Mooney Parts Tracker | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of |

| 326 | PS 1461 | | Ryan to Mooney Parts Tracker | foundation. FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 327 | PS 1493-1509 | | Call Reports | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Duplicative exhibit. |
| 328 | PS 1511-12 | | Weekly Itinerary | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Duplicative exhibit. |
| 329 | PS1720 | 10/25/05 | Waldman to Piepoli Contact info | |
| 330 | PS 1721 | 10/25/05 | Piepoli to Waldman Contact info | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 331 | PS 1722 | 10/27/05 | Piepoli to Waldman IGS file | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 332 | PS 1723 | 10/27/05 | Piepoli to Waldman IGS file | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of |

| | | | | sponsoring witness/lack of foundation. |
|---|---|---|---|---|
| 333 | PS 1724 | 10/27/05 | Piepoli to Waldman IGS file | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 334 | PS 1725 | 11/15/05 | Piepoli to Waldman AAI Contact | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 335 | PS 1743 | | NTTI Inc. to do list | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 336 | PS 1744-45 | | Waldman Diary | |
| 337 | PS 1746-1752 | | Tesla Plan/Schematics DeWalt/MOSFET Technology | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 338 | PS 1813-1844 | | Tesla Payments to Waldman | |
| 339 | | | Physical – Tesla Connectors | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce |

| | | |
|---|---|---|
| | | during discovery). |
| 440 | Physical – NATO female receptacle prototype | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 441 | Physical – DC impact wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 442 | Physical – Returned to Tesla female receptacle prototype | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |
| 443 | Physical – Tesla NATO plug | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 444 | Physical – Example of other NATO plug | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring |

| | | |
|---|---|---|
| | | witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 445 | Physical – TI 1000 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 446 | Physical – Tesla titanium battery plates, cases, and email references | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 447 | Physical – Tesla Motor Tork Controller Prototype | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce |

| | | | |
|---|---|---|---|
| 448 | | Physical – UAV assembly prototypes | during discovery). FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 449 | | Physical – Numerous large color photographs, including Navy Global Hawk, Army Pioneer, Tesla products in use and other such photographs | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; Fed. R. Civ. P 26(a)(3); Fed. R. Civ. P. 37(c)(sanction for refusing to produce during discovery). |
| 450 | | Physical – CD (Waldman exit interview) | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; not produced in discovery; not produced to date. |
| 451 | 11/25/05 | Waldman Exit Interview | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation; Untimely; not |

| | | | | produced in discovery; not produced to date. | | |
|---|---|---|---|---|---|---|
| 452 | | 08/03/05 | Cassity to Waldman re firearms | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 453 | | | Permanent Injunction with Hollingsworth, Minnick, and NMT | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 454 | 192-194 | 9/01/05 | Dahl to Waldmann re: Thank you-DC Impact Wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 455 | | 9/20/05 | Waldmann to Stewart re: Rock Island Visit | | | |
| 456 | | 9/22/05 | Waldmann to Acevedo re: Thank You -- SATS Question | | | |
| 457 | 195-196 | 9/01/05 | Waldmann to Hollingsworth re: Chuck's web site | | | |
| 458 | | 8/26/05 | Hollingsworth to Waldmann re: Light Duty ¾ Drive DC Impact photos | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation | | |
| 459 | | 6/17/05 | Waldmann to Hollingsworth re: DC Impact + GPU Flyer | | | |
| 460 | PSupp 1713-1714 | 7/27/05 | Waldmann to Hollingsworth re: Box Drawings | | | |
| 461 | | 7/11/05 | Waldmann to | | | |

| | | | Hollingsworth re: US Commercial Service Int'l Trade Information | | | |
|---|---|---|---|---|---|---|
| 462 | | 8/09/05 | Cassity to Waldmann re: TESLA | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 463 | PSupp 2421-2424 | 11/09/05 | Hollingsworth to Waldmann re: Job Offer – NMT, Inc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 464 | 88 | 9/01/05 | Hollingsworth to Waldmann re: DCIM-1 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 465 | PSupp 1131 | 9/16/05 | Waldmann (Hotmail) to Waldmann (Tesla) re: FW: New developments | Not produced during discovery. | | |
| 466 | | 9/01/05 | Hollingsworth to Waldmann re Chuck's web site | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 467 | 92 | 11/14/05 | Hollingsworth to Waldmann re: DCIM-1 Impact Wrench Update | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 468 | NMT-MIN 000018 | 9/26/05 | Hollingsworth to Minnick re: Sorry about all the e-mails | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | 901; Lack of sponsoring witness/lack of foundation. | | |
| 469 | NMT-MIN 002352 | 9/20/05 | Hollingsworth to Minnick re: Here's an idea | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation | | |
| 470 | NMT-MIN 000019-20 | 9/29/05 | Hollingsworth to Minnick re: Open Mouth Insert Foot | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 471 | NMT-MIN 00071 | 5/02/05 | Hollingsworth to Steve M. and Minnick re: DC Impact Wrench Project | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 472 | | 6/08/05 | Hollingsworth to Waldmann re: Thank you | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 473 | NMT-MIN 000006 | 6/9/05 | Hollingsworth to Minnick re: Tesla Industries | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 474 | | 7/29/05 | Hollingsworth to Waldmann re: The DC Lug Wrench | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring | | |

| | | | | witness/lack of foundation. Not produced during discovery. | | |
|---|---|---|---|---|---|---|
| 475 | | 9/09/05 | Hollingsworth to Waldmann re: small hydraulic pump units | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 476 | PSupp 2425-2426 | 11/16/05 | Minnick to Waldmann re: Revised BP/PwrPt | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 477 | | | Waldmann Projected Sales 3rd Quarter 2005 - 4th Quarter 2005 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 478 | | | Waldmann Projected Sales 3rd & 4th Quarter 2005 | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 479 | PSupp 1692 | | Tesla House Accounts List | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of | | |

| | | | | foundation. Not produced during discovery. | | |
|---|---|---|---|---|---|---|
| 480 | NMT-MIN 000450 | 3/22/06 | NMT Inc. to Ms. Graham Bradley, DRS-RADIAN, Inc. | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 481 | | | Application for DoD Common Access Card | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 482 | | | Application for DoD Common Access Card | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. Not produced during discovery. | | |
| 483 | | 8/22/01 | Tesla Technology Use and Privacy Policy | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. | | |
| 484 | | | Business Card Dave Waldmann, Vice President Sales & Marketing NMT | | | |
| 485 | | | Chart of 4th Quarter 2005 Commissions | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation | | |

| 486 |  |  | Registration form for Waldmann e-mail account | Not produced in discovery. |  |  |
|-----|--|--|------------------------------------------------|------------------------------|--|--|
| 487 | NMT-MIN 0037-0040 | 12/05/05 | Hollingsworth to Minnick re: E-mails between me and Don S. at TACOM Rock Island | FRE 106; FRE 401-403; FRE 601; FRE 801-802; FRE 901; Lack of sponsoring witness/lack of foundation. |  |  |

# SCHEDULE C-2

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

        Plaintiff,

    v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

        Defendants.

Civil Action No. C.A. No.: 06-55-GMS

## WALDMANN PROPOSED EXHIBIT LIST

## SCHEDULE C.2

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-1 | 1 | 6/9/05 | Email from Hollingsworth to Minnick re purchasing parts from Tesla | NMT000002 | NMT000002 | | FRE 402 FRE 802 FRE 901 | | |
| D-2 | 2 | 9/8/05 | Email from Hollingsworth to Minnick re incorporating NMT in Delaware to work with Tesla | NMT000004 | NMT000004 | | FRE 402 FRE 802 FRE 901 | | |
| D-3 | 3 | 8/1/05 | Email from Hollingsworth to Minnick re purchasing from Tesla | NMT000009 | NMT000009 | | FRE 402 FRE 802 FRE 901 | | |
| D-4 | 4 | 9/20/05 | Email from Hollingsworth to Minnick re trying to partner with Tesla | NMT000011 | NMT000011 | | FRE 402 FRE 802 FRE 901 | | |
| D-5 | 5 | 9/22/05 | Email from Hollingsworth to Minnick re licensing patent from DCPE | NMT000014 | NMT000014 | | FRE 402 FRE 802 FRE 901 | | |
| D-6 | 6 | 9/24/06 | Email from Hollingsworth to Minnick re forming a joint venture with Tesla | NMT000017 | NMT000017 | | FRE 402 FRE 802 FRE 901 | | |
| D-7 | 7 | 9/26/05 | Email from Hollingsworth to Minnick re working with Tesla to sell product to Department of Defense | NMT000018 | NMT000018 | | FRE 402 FRE 802 FRE 901 | | |
| D-8 | 8 | 11/30/05 | Email from Hollingsworth to Minnick re LWH's summary of events with Tesla | NMT000022 | NMT000022 | | FRE 402 FRE 802 FRE 901 | | |

| Trialx# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-9 | 9 | 12/5/05 | Email from Hollingsworth to Minnick re correspondence with D. Stewart about DCPE | NMT000037 | NMT000040 | | FRE 402 FRE 802 FRE 901 | | |
| D-10 | 10 | 9/21/05 | Email from Hollingsworth to Minnick re license from DCPE | NMT000041 | NMT000041 | | FRE 402 FRE 802 FRE 901 | | |
| D-11 | 11 | | Manufacturer's Sales Representative and Marketing Agreement between Minnick and DCPE | NMT000051 | NMT000053 | | FRE 402 FRE 802 FRE 901 | | |
| D-12 | 12 | 3/18/05 | Email from Huffman to Minnick re Minnick's consulting work for DCPE | NMT000054 | NMT000054 | | FRE 402 FRE 802 FRE 901 | | |
| D-13 | 13 | 3/22/05 | Email from Huffman to Minnick re Minnick work for DCPE | NMT000055 | NMT000055 | | FRE 402 FRE 802 FRE 901 | | |
| D-14 | 14 | 7/6/05 | Email from Li to Minnick re purchase of solenoid relays | NMT000064 | NMT000064 | | FRE 402 FRE 802 FRE 901 | | |
| D-15 | 15 | 6/3/05 | Email from Hollingsworth to Minnick re Ft. Hood's interest in DC Impact wrench | NMT000067 | NMT000067 | | FRE 402 FRE 802 FRE 901 | | |
| D-16 | 16 | 5/2/05 | Email from Hollingsworth to Minnick re sourcing connectors | NMT000070 | NMT000070 | | FRE 402 FRE 802 FRE 901 | | |
| D-17 | 17 | 5/2/05 | Email from Hollingsworth to Minnick and Steve M. re Snap On Tools manufacturing DC Impact wrench | NMT000071 | NMT000073 | | FRE 402 FRE 802 FRE 901 | | |
| D-18 | 18 | 4/19/05 | Email from Hollingsworth to Minnick re creating a 1" tool drive for the military | NMT000076 | NMT000076 | | FRE 402 FRE 802 FRE 901 | | |

2

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-19 | 19 | 4/7/05 | Email from Huffman to Minnick re Minnick's sales agreement | NMT000080 | NMT000080 | | FRE 402 FRE 802 FRE 901 | | |
| D-20 | 20 | 4/5/05 | Email from Hollingsworth to Minnick re developing a DC Impact wrench that uses a female NATO receptacle | NMT000082 | NMT000086 | | FRE 402 FRE 802 FRE 901 | | |
| D-21 | 21 | 4/4/05 | Email from Hollingsworth to Minnick re shipping prototype DC Impact wrench to Snap On Tools for review | NMT000087 | NMT000087 | | FRE 402 FRE 802 FRE 901 | | |
| D-22 | 22 | 3/31/05 | Email from Hollingsworth to Minnick re Koyo Battery Co., Ltd. | NMT000091 | NMT000091 | | FRE 402 FRE 802 FRE 901 | | |
| D-23 | 23 | 3/26/05 | Email from Hollingsworth to Minnick re prototype DC Impact wrenches and photos of same | NMT000095 | NMT000111 | | FRE 402 FRE 802 FRE 901 | | |
| D-24 | 24 | 3/17/05 | Email from Hollingsworth to Minnick re promoting Yeon Hab's quick connectors | NMT000112 | NMT000120 | | FRE 402 FRE 802 FRE 901 | | |
| D-25 | 25 | | Business Cards from potential investors in NMT | NMT000131 | NMT000131 | | FRE 402 FRE 802 FRE 901 | | |
| D-26 | 26 | 5/3/06 | Solicitation/Contract/Order for Commercial Items | NMT000132 | NMT000136 | | FRE 402 FRE 802 FRE 901 | | |
| D-27 | 27 | 7/19/06 | Government Contracts Won in 2005 for the Defense Dept. website pages re: Aircraft Dynamics Corporation | NMT000137 | NMT000140 | | FRE 402 FRE 802 FRE 901 | | |

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-28 | 28 | 7/19/06 | Federal Business Opportunities website pages re: 51-Hand Tools, Power Driven | NMT000141 | NMT000142 | | FRE 402 FRE 802 FRE 901 | | |
| D-29 | 29 | | AB Connectors Limited brochure re P.E.T.S. Portable Electrical Tool System | NMT000143 | NMT000144 | | FRE 402 FRE 802 FRE 901 | | |
| D-30 | 30 | | Intervehicle Part Numbers for Standard NATO receptacles and plugs | NMT000145 | NMT000145 | | FRE 402 FRE 802 FRE 901 | | |
| D-31 | 31 | August 2005 | TT Electronics/AB Connectors Limited brochure on the SB-ORD Intervehicle Slave Start Connectors | NMT000147 | NMT000148 | | FRE 402 FRE 802 FRE 901 | | |
| D-32 | 32 | 3/9/06 | Tesla Customer Service: Inside/Outside Sales & Service/Repairs webpage depicting picture of D. Waldmann | NMT000168 | NMT000168 | | FRE 402 FRE 802 FRE 901 | | |
| D-33 | 33 | 3/9/06 | Contact Tesla Industries webpage identifying D. Waldmann as Sales Representative | NMT000169 | NMT000169 | | FRE 402 FRE 802 FRE 901 | | |
| D-34 | 34 | 4/20/06 | Tesla Industries:  Ground Power Units (3,000 AMPs) gallery pages depicting D. Waldmann | NMT000170 | NMT000172 | | FRE 402 FRE 802 FRE 901 | | |
| D-35 | 35 | 3/10/06 | Yahoo Search of Tesla Industries Sales depicting pictures of D. Waldmann | NMT000175 | NMT000176 | | FRE 402 FRE 802 FRE 901 | | |
| D-36 | 36 | 3/9/06 | Photographs of Tesla Industries Ground Power Units (3,000 AMPs) and D. Waldmann | NMT000177 | NMT000178 | | FRE 402 FRE 802 FRE 901 | | |

4

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-37 | 37 | 3/9/06 | Tesla Industries webpage advertising NATO plug | NMT000179 | NMT000179 | | LSW FRE 402 | | |
| D-38 | 38 | 3/9/06 | Tesla 2004 Product Catalog | NMT000180 | NMT000208 | | LSW FRE 402 | | |
| D-39 | 39 | 3/14/06 | Images downloaded from Teslaind.com showing pictures of D. Waldmann | NMT000209 | NMT000211 | | LSW FRE 402 | | |
| D-40 | 40 | 3/14/06 | Website offering Tesla's NATO plug for sale | NMT000212 | NMT000213 | | LSW FRE 402 | | |
| D-41 | 41 | 3/14/06 | Images downloaded from Teslaind.com showing pictures of D. Waldmann | NMT000214 | NMT000216 | | LSW FRE 402 | | |
| D-42 | 42 | 4/20/06 | Image downloaded from Teslaind.com showing picture of D. Waldmann | NMT000217 | NMT000217 | | LSW FRE 402 | | |
| D-43 | 43 | 5/9/06 | Tesla customer service info and images showing pictures and contact info for D. Waldmann | NMT000218 | NMT000218 | | LSW FRE 402 | | |
| D-44 | 44 | 5/9/06 | Tesla customer service info and images showing pictures and contact info for D. Waldmann | NMT000219 | NMT000219 | | LSW FRE 402 | | |
| D-45 | 45 | 5/9/06 | Tesla customer service info and images showing pictures and contact info for D. Waldmann | NMT000220 | NMT000220 | | LSW FRE 402 | | |

5

| Trials# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-46 | 46 | 5/9/06 | Tesla customer service info and images showing pictures and contact info for D. Waldmann | NMT000221 | NMT000221 | | LSW FRE 402 | | |
| D-47 | 47 | 5/9/06 | Tesla customer service info and images showing pictures and contact info for D. Waldmann | NMT000222 | NMT000222 | | LSW FRE 402 | | |
| D-48 | 48 | 5/19/06 | Tesla Unmanned Arial Vehicles pictures on website | NMT000223 | NMT000230 | | LSW FRE 402 | | |
| D-49 | 49 | 5/19/06 | Tesla's NATO plug on Internet | NMT000231 | NMT000231 | | LSW FRE 402 | | |
| D-50 | 50 | 10/25/05 | Registration of Corporation with the Oregon Secretary of State for NMT, Inc. | NMT000265 | NMT000270 | | FRE 901 FRE 1005 | | |
| D-51 | 51 | | Military Battery Systems New Product Page for NATO Connectors | NMT000271 | NMT000271 | | LSW FRE 402 FRE 901 | | |
| D-52 | 52 | | TT Electronics NATO Connectors | NMT000275 | NMT000276 | | LSW FRE 402 FRE 901 | | |
| D-53 | 53 | | Product Rage Overview for TT Electronics NATO Connectors | NMT000277 | NMT000296 | | LSW FRE 402 FRE 901 FRE 802 | | |
| D-54 | 54 | | Tactical Engineering NATO Slave Plug | NMT000297 | NMT000297 | | LSW FRE 402 FRE 901 FRE 802 | | |

6

| | | | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-55 | 55 | | Saturn Surplus NATO Slave Cable/Plug info | NMT000298 | NMT000306 | | LSW FRE 402 FRE 901 FRE 802 | | |
| D-56 | 56 | | Military Battery Systems GPUs and Plugs | NMT000307 | NMT000309 | | LSW FRE 402 FRE 901 FRE 802 | | |
| D-57 | 57 | | Tactical Power NATO cables | NMT000312 | NMT000313 | | LSW FRE 402 FRE 901 FRE 802 | | |

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-58 | 58 | 9/20/06 | Order for Supplies or Services awarding contract to Aircraft Dynamics Corp. | NMT000357 | NMT000360 | | LSW FRE 402 FRE 802 | | |
| D-59 | 59 | | Schematics for AB Connectors NATO receptacle | NMT000361 | NMT000361 | | LSW FRE 402 FRE 802 | | |
| D-60 | 60 | | Info re TT Electronics NATO receptacle | NMT000420 | NMT000420 | | LSW FRE 402 FRE 802 | | |
| D-61 | 61 | | Provisional Application for Patent | NMT000385 | NMT000395 | | LSW FRE 402 FRE 802 | | |
| D-62 | 62 | | Info re Tactical Power's NATO plugs | NMT000423 | NMT000425 | | LSW FRE 402 FRE 802 | | |
| D-63 | 63 | | Info re Graywack's NATO receptacles | NMT000426 | NMT000426 | | LSW FRE 402 FRE 802 | | |
| D-64 | 64 | 9/8/06 | Email from McCarty to Waldmann re LogMaster | NMT000528 | NMT000528 | | LSW FRE 402 FRE 802 | | |

7

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depex h # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-65 | 65 | 9/2/06 | Email from Hollingsworth to Minnick re Viper tool | NMT000553 | NMT000554 | | LSW FRE 402 FRE 802 | | |
| D-66 | 66 | 8/31/06 | Email from Donovan to Waldmann re LugMaster | NMT000558 | NMT000558 | | LSW FRE 402 FRE 802 | | |
| D-67 | 67 | 2/8/06 | Email from Minnick to Huffman re purchasing DCPE | NMT000719 | NMT000719 | | LSW FRE 402 FRE 802 | | |
| D-68 | 68 | 2/14/06 | Email from Minnick to Huffman & Maitland re DCPE rejecting NMT's offer | NMT000722 | NMT000722 | | LSW FRE 402 FRE 802 | | |
| D-69 | 69 | 6/26/06 | Keane letter to Raabe re superiority of LugMaster | NMT000723 | NMT000723 | | LSW FRE 402 FRE 802 | | |
| D-70 | 70 | 4/29/05 | Email from Li to Minnick re solenoid relays | NMT000806 | NMT000807 | | FRE 402 FRE 802 | | |
| D-71 | 71 | 7/18/05 | T-Mobile Statement for Minnick Monthly service from 6/19/05-7/18/05 | NMT001048 | NMT001071 | | FRE 402 FRE 802 FRE 901 | | |
| D-72 | 72 | 2/8/06 | Email from Minnick to Huffman & Maitland re purchasing DCPE | NMT001247 | NMT001247 | | FRE 402 FRE 802 | | |
| D-73 | 73 | 1/30/06 | Email from Minnick to Waldmann re purchasing parts from Tesla | NMT001257 | NMT001257 | | FRE 402 FRE 802 | | |
| D-74 | 74 | 11/10/05 | Email from Minnick to Huffman re testing of DCIM-1 at Tesla | NMT001350 | NMT001350 | | FRE 402 FRE 802 | | |
| D-75 | 75 | 9/14/05 | Email from Minnick to Huffman re purchasing DCPE | NMT001455 | NMT001455 | | FRE 402 FRE 802 | | |

| Trial# | Def x# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-76 | 76 | 3/11/05 | Email from Minnick to Huffman re consulting agreement | NMT001843 | NMT001843 | | FRE 402 FRE 802 | | |
| D-77 | 77 | 10/27/06 | New Millennium Tools, Inc., Purchase Orders shipping to Hollingsworth Enterprises, LLC in Azle, Texas | NMT001965 | NMT001970 | | FRE 402 FRE 802 | | |
| D-78 | 78 | 12/7/06 | Internet Article on Reserve Power Cells Intelligent Dual System | NMT001971 | NMT001971 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-79 | 79 | 9/1/05 | Email from Hollingsworth to Huffman and Minnick re DCIM-1 arriving at Tesla | NMT001988 | NMT001989 | | FRE 402 FRE 802 | | |
| D-80 | 80 | 12/6/06 | Email from Hollingsworth to Sullivan re Tesla dismissing suit against NMT defendants | NMT002186 | NMT002186 | | FRE 402 FRE 802 | | |
| D-81 | 81 | 2/16/06 | Email from Hollingsworth to Adams re Tesla dismissing NMT from case | NMT002187 | NMT002188 | | FRE 402 FRE 802 | | |
| D-82 | 82 | 2/10/06 | Email from Hollingsworth to Sullivan asking Sullivan to stop calling | NMT002196 | NMT002196 | | FRE 402 FRE 802 | | |
| D-83 | 83 | 2/3/06 | Email from Wilcox to Hollingsworth and Minnick forwarding draft TRO | NMT002213 | NMT002213 | | FRE 402 FRE 802 | | |
| D-84 | 84 | 2/2/06 | Email from Hollingsworth to Minnick forwarding Wilcox email re TRO | NMT002214 | NMT002215 | | FRE 402 FRE 802 | | |
| D-85 | 85 | 2/2/06 | Email from Hollingsworth to Minnick re release from lawsuit | NMT002218 | NMT002221 | | FRE 402 FRE 802 | | |

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Deph # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-86 | 86 | 12/5/05 | Email from Hollingsworth to Minnick summarizing DCPE's communicating with D. Stewart | NMT002269 | NMT002272 | | FRE 402 FRE 802 | | |
| D-87 | 87 | 10/3/05 | Email from Hollingsworth to Waldmann re working with Tesla | NMT002304 | NMT002305 | | FRE 402 FRE 802 | | |
| D-88 | 88 | 9/29/05 | Email from Hollingsworth to Minnick re contacting D. Stewart | NMT002316 | NMT002316 | | FRE 402 FRE 802 | | |
| D-89 | 89 | 9/20/05 | Email from Hollingsworth to Minnick re partnering with Tesla | NMT002352 | NMT002352 | | FRE 402 FRE 802 | | |
| D-90 | 90 | 8/11/05 | FAS Intelligence Resource Program article on Unmanned Aerial Vehicles (UAVs) | NMT002359 | NMT002362 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-91 | 91 | 12/12/06 | Global Security.org Classes and Subclasses of Supply | NMT002363 | NMT002364 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-92 | 92 | 7/05 | ThomasNet article on New Harsh Environment Anti-Vibration Cylindrical Connector from Amphenol Industrial Operations Prevents Decoupling | NMT002366 | NMT002367 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-93 | 93 | 12/12/06 | www.gelnair.com Glenair web article on Circular Connectors | NMT002368 | NMT002370 | | LSW FRE 402 FRE 802 FRE 901 | | |

10

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-94 | 94 | 2004 | Glenair's Introduction to Military Standard Cylindrical Connectors *Bridging the Gap* article | NMT002371 | NMT002384 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-95 | 95 | 12/12/06 | http://en.wikipedia.org search results on DC connector | NMT002385 | NMT002392 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-96 | 96 | 12/12/06 | www.interfacebus.com article on Hardware Mechanical Components Manufacturers, Military Connectors | NMT002393 | NMT002395 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-97 | 97 | | Conxall Catalog printed from www.conxall.com | NMT002398 | NMT002433 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-98 | 98 | 12/12/06 | ODU USA Connectors page printed from www.odu-usa.com | NMT002436 | NMT002436 | | LSW FRE 402 FRE 802 FRE 901 | | |

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-99 | 99 | 12/12/06 | Picture of "unmanned arial (sic) vehicles" printed from www.teslaind.com | NMT002437 | NMT002443 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-100 | 100 | 12/12/06 | Pictures of Tesla's manufacturing facility | NMT002444 | NMT002445 | | FRE 402 FRE 902 | | |
| D-101 | 101 | 12/12/06 | Pictures of Tesla's assembly process | NMT002446 | NMT002447 | | FRE 402 FRE 902 | | |
| D-102 | 102 | 12/12/06 | Picture of partially built Tesla GPUs | NMT002448 | NMT002448 | | FRE 402 FRE 902 | | |
| D-103 | 103 | 12/12/06 | Picture of Tesla GPUs | NMT002449 | NMT002449 | | FRE 402 FRE 902 | | |

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|--------|---------|----------|-------------|-----------|-----------|----------|----------|------------|----------|
| D-104 | 104 | 12/12/06 | Picture of Tesla's testing and diagnostics | NMT002450 | NMT002450 | | FRE 402 FRE 902 | | |
| D-105 | 105 | 12/12/06 | Picture of Tesla GPU connected to tank | NMT002455 | NMT002455 | | FRE 402 FRE 902 | | |
| D-106 | 106 | 12/12/06 | Picture of Tesla GPU connected to a Humvee | NMT002461 | NMT002461 | | FRE 402 FRE 902 | | |
| D-107 | 107 | 12/15/06 | Images from Defense-Update website printed from www.defense-update.com | NMT02472 | NMT002474 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-108 | 108 | 12/15/06 | Article re UAV | NMT002475 | NMT002476 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-109 | 109 | 12/22/06 | Industry Team Members printed from www.northropgrumman.com | NMT002477 | NMT002477 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-110 | 110 | | Viper 24 Volt DC Impact Wrench System By New Millennium Tools, Inc. brochure | NMT002478 | NMT002483 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-111 | 111 | 2/06 | Global Hawk News Bulletin Volume 1, Issue 1 | NMT002489 | NMT002490 | | LSW FRE 402 FRE 802 FRE 901 | | |

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|--------|---------|----------|-------------|-----------|-----------|----------|----------|------------|----------|
| D-112 | 112 | 3/06 | Global Hawk News Bulletin Volume 1, Special Edition 1 | NMT002491 | NMT002492 | | FRE 402 FRE 802 FRE 901 | | |

12

| | Def x# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-113 | 113 | 5/06 | Global Hawk News Bulletin Volume 1, Issue 2 | NMT002493 | NMT002494 | | FRE 402 FRE 802 FRE 901 | | |
| D-114 | 114 | 6/06 | Global Hawk News Bulletin Volume 1, Issue 3 | NMT002495 | NMT002496 | | FRE 402 FRE 802 FRE 901 | | |
| D-115 | 115 | 2/15/07 | Images and recon info printed from www.northropgrumman.com | NMT002497 | NMT002545 | | FRE 402 FRE 802 FRE 901 | | |
| D-116 | 116 | | RQ-4A Global Hawk Maritime demonstrations | NMT002548 | NMT002551 | | FRE 402 FRE 802 FRE 901 | | |
| D-117 | 117 | 9/14/06 | Global Hawk Program Update | NMT002552 | NMT002583 | | FRE 402 FRE 802 FRE 901 | | |
| D-118 | 118 | 2/15/07 | News Releases printed from www.irconnect.com re Global Hawk UAV | NMT002592 | NMT002643 | | FRE 402 FRE 802 FRE 901 | | |
| D-119 | 119 | 2/7/07 | Correspondence to Mastriani from Wilms re FOIA request and documents | NMT002644 | NMT002705 | | FRE 402 FRE 802 FRE 901 | | |
| D-120 | 120 | 3/28/07 | Video of UAVs http://www.northropgrumman.com/unmanned/ | NMT002706 | NMT002712 | | FRE 402 FRE 802 FRE 901 | | |
| D-121 | 121 | 1/27/06 | Verified Complaint for Injunctive Relief and Damages for Theft of Trade Secrets, Breach of Contract, Conversion, Tortious Interference, and Conspiracy (Confidential) | | | | | | |

| Trial# | Def x# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-122 | 122 | 3/27/06 | Answer and Counterclaims of Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc. and Demand for Jury Trial | | | | LSW FRE 802 | | |

13

| | | | | | | |
|---|---|---|---|---|---|---|
| D-123 | 123 | 3/27/06 | Answer, Affirmative Defenses and Counterclaims of David C. Waldmann | | LSW<br>FRE 802 | |
| D-124 | 124 | 4/17/06 | Tesla Industries, Inc.'s Answer to the Counterclaims of Defendants Lyndol W. Hollingsworth, Charles Minnick and New Millennium Tools, Inc. | | FRE 802<br>PMA | |
| D-125 | 125 | 4/19/06 | Tesla Industries, Inc.'s Answer to the Counterclaims of David C. Waldmann | | LSW<br>FRE 802 | |
| D-126 | 126 | 6/22/06 | Plaintiff Tesla Industries, Inc.'s Answers and Objections to Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc.'s First Set of Interrogatories to Plaintiff | | LSW<br>FRE 802 | |
| D-127 | 127 | 6/29/06 | Response of Plaintiff Tesla Industries, Inc. to Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc.'s Request for Production of Documents and Things to Plaintiff | | LSW<br>FRE 802 | |

14

| Trialx# | Def x# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-128 | 128 | 9/22/06 | Defendant Charles Minnick's Objections and Answers to Plaintiff Tesla Industries' First Set of Interrogatories | | | | LSW FRE 802 | | |
| D-129 | 129 | 9/22/06 | Lyndol W. Hollingsworth's Objections and Responses to Tesla Industries, Inc.'s First Request for Production of Documents and Tangible Things | | | | LSW FRE 802 | | |
| D-130 | 130 | 9/22/06 | New Millennium Tools, Inc.'s Objections and Responses to Plaintiff Tesla Industries, Inc.'s First Set of Requests for Production of Documents and Tangible Things | | | | LSW FRE 802 | | |
| D-131 | 131 | N/a | Intentionally Left Blank | N/A | N/A | N/A | N/A | N/A | N/A |
| D-132 | 132 | 9/22/06 | Charles Minnick's Objections and Responses to Tesla Industries, Inc.'s First Request for Production of Documents and Tangible Things | | | | LSW FRE 802 | | |
| D-133 | 133 | 10/9/06 | Defendant Waldmann's Response to Plaintiff Tesla Industries, Inc.'s First Set of Interrogatories to Defendant David C. Waldmann | | | | LSW FRE 802 | | |
| D-134 | 134 | 10/9/06 | Defendant Waldmann's Response to Plaintiff Tesla Industries, Inc.'s First Set of Requests for Production of Documents and Tangible Things to David C. Waldmann | | | | LSW FRE 802 | | |

15

| Trialx# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---------|---------|----------|-------------|-----------|-----------|----------|----------|-----------|----------|
| D-135 | 135 | 11/13/0 | Plaintiff Tesla Industries, Inc.'s Responses to Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc.'s First Set of Requests for Admissions | | | | LSW FRE 802 | | |
| D-136 | 136 | 11/16/0 | Plaintiff Tesla Industries, Inc.'s Answer and Objections to Defendants Lyndol W. Hollingsworth, Charles Minnick and New Millennium Tools, Inc.'s Second Set of Interrogatories to Plaintiff Tesla Industries, Inc. 13-23 | | | | LSW FRE 802 | | |
| D-137 | 137 | 11/16/0 | Response of Plaintiff Tesla Industries, Inc. to Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc.'s Second Set of Requests for Production of Documents and Things to Plaintiff | | | | LSW FRE 802 | | |
| D-138 | 138 | 11/27/0 | Answers and Objections of Plaintiff Tesla Industries, Inc. to Defendant Waldmann's First Set of Interrogatories | | | | LSW FRE 802 | | |
| D-139 | 139 | 11/27/0 | Answers and Objections of Plaintiff Tesla Industries, Inc. to Defendant Waldmann's Second Set of Interrogatories | | | | LSW FRE 802 | | |
| D-140 | 140 | 11/27/0 | Response of Plaintiff Tesla Industries, Inc. to Defendant Waldmann's First Requests for Production Directed to Plaintiff | | | | LSW FRE 802 | | |

16

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-141 | 141 | 11/8/06 | Notice of Deposition for DC Power Equipment, LLC Attention: Kent Huffman marked as Plaintiff's Exhibit 2 | | | DCPE Ex. 2 | LSW FRE 802 | | |
| D-142 | 142 | 11/10/06 | Forwarded email from Savrick to Huffman marked as Plaintiff's Exhibit 5 | | | DCPE Ex. 5 | FRE 402 FRE 802 | | |
| D-143 | 143 | 9/15/06 | Signed Sales and Marketing Agreement marked as Plaintiff's Exhibit 10 | | | DCPE Ex. 10 | FRE 402 FRE 802 | | |
| D-144 | 144 | 8/18/05 | Mutual NonDisclosure And Limited Use Agreement marked as Plaintiff's Exhibit 19 | | | DCPE Ex. 19 | FRE 402 FRE 802 | | |
| D-145 | 145 | 6/10/05 | Mutual NonDisclosure And Limited Use Agreement marked as Plaintiff's Exhibit 20 | | | DCPE Ex. 20 | FRE 402 FRE 802 | | |
| D-146 | 146 | 11/14/06 | Correspondence from Huffman to Minnick marked as Plaintiff's Exhibit 22 | D-MIN 000042 | D-MIN 000043 | DCPE Ex. 22 | FRE 402 FRE 802 | | |
| D-147 | 147 | 3/9/06 | Tesla Industries, Inc. Contact webpage marked as Exhibit 97 | D-MIN 000169 | D-MIN 000169 | Ex. 97 | LSW FRE 402 FRE 802 | | |
| D-148 | 148 | 5/9/06 | Tesla Industries, Inc. Contact webpage marked as Exhibit 98 | D-MIN 000219 | D-MIN 000219 | Ex. 98 | LSW FRE 402 FRE 802 | | |
| D-149 | 149 | 5/9/06 | Photo of Waldmann displaying a Tesla GPU from www.teslaind.com/hspeed/site_controls/frame_controls/gallery/gallery-frameset.htm marked as Exhibit 99 | D-MIN 000222 | D-MIN 000222 | Ex. 99 | LSW FRE 402 FRE 802 | | |

| Trials# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-150 | 150 | 11/13/06 | Plaintiff Tesla Industries, Inc.'s Responses to Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc.'s First Set of Requests for Admissions marked as Exhibit 100 | | | Ex. 100 | LSW FRE 802 | | |
| D-151 | 151 | | Call Report marked as Exhibits 64 (P Supp 1497) | | | Ex. 64 | FRE 402 FRE 802 | | |
| D-152 | 152 | | Call Report marked as Exhibits 65 (P Supp 1498) | | | Ex. 65 | FRE 402 FRE 802 | | |
| D-153 | 153 | | Call Report marked as Exhibits 66 (P Supp 1499) | | | Ex. 66 | FRE 402 FRE 802 | | |
| D-154 | 154 | | Call Report marked as Exhibits 67 (P Supp 1499) | | | Ex. 67 | FRE 402 FRE 802 | | |
| D-155 | 155 | | Call Report marked as Exhibits 68 (P Supp 1500) | | | Ex. 68 | FRE 402 FRE 802 | | |
| D-156 | 156 | | Call Report marked as Exhibits 69 (P Supp 1501) | | | Ex. 69 | FRE 402 FRE 802 | | |
| D-157 | 157 | | Call Report marked as Exhibits 70 (P Supp 1502) | | | Ex. 70 | FRE 402 FRE 802 | | |
| D-158 | 158 | | Call Report marked as Exhibits 71 (P Supp 1503) | | | Ex. 71 | FRE 402 FRE 802 | | |

18

| Trial# | Def x# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|--------|--------|----------|-------------|-----------|-----------|----------|----------|------------|----------|
| D-159 | 159 | | Call Report marked as Exhibits 72 (P Supp 1504) | | | Ex. 72 | FRE 402 FRE 802 | | |
| D-160 | 160 | | Call Report marked as Exhibits 73 (P Supp 1506) | | | Ex. 73 | FRE 402 FRE 802 | | |
| D-161 | 161 | | Call Report marked as Exhibits 74 (P Supp 1507) | | | Ex. 74 | FRE 402 FRE 802 | | |
| D-162 | 162 | | Call Report marked as Exhibits 75 (P Supp 1509) | | | Ex. 75 | FRE 402 FRE 802 | | |
| D-163 | 163 | | Call Report marked as Exhibits 76 (P Supp 1527) | | | Ex. 76 | FRE 402 FRE 802 | | |
| D-164 | 164 | | Tesla's Sales Representative Weekly Itinerary of Dave Waldmann marked as Exhibit 77 (P Supp 1511) | | | Ex. 77 | FRE 402 FRE 802 | | |
| D-165 | 165 | | Tesla's Sales Representative Weekly Itinerary of Dave Waldmann marked as Exhibit 78 (P Supp 1512) | | | Ex. 78 | FRE 402 FRE 802 | | |
| D-166 | 166 | 2004 | Tesla 2004 Product Catalog marked as Exhibit 81 | D-MIN 000180 | D-MIN 000208 | Ex. 81 | LSW FRE 402 FRE 802 | | |
| D-167 | 167 | 9/2005 | Blank Questionnaire for National Security Positions marked as Exhibit 85; Standard Form 86 (EG) | | | Ex. 85 | LSW FRE 402 FRE 802 FRE 901 | | |

19

| Trialx# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-168 | 168 | 3/27/06 | Answer and Counterclaims of Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc. and Demand for Jury Trial marked as Exhibit 87 | | | Ex. 87 | LSW FRE 802 | | |
| D-169 | 169 | 4/17/06 | Tesla Industries, Inc.'s Answer to the Counterclaims of Defendants, Lyndol W. Hollingsworth, Charles Minnick and New Millennium Tools, Inc. marked as Exhibit 88 | | | Ex. 88 | LSW FRE 802 | | |
| D-170 | 170 | 4/3/06 | Cover letter from Mastriani to Sullivan attaching the Motion of Defendants Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick and New Millennium Tools, Inc. for Sanctions marked as Exhibit 89 | | | Ex. 89 | FRE 802 | | |
| D-171 | 171 | 11/13/06 | Motion for a Protective Order Against Tesla's Improper Conduct During Deposition marked as Exhibit 90 | | | Ex. 90 | LSW FRE 402 FRE 802 | | |
| D-172 | 172 | 11/14/06 | Plaintiff's Memorandum in Opposition to NMT Defendant's Motion for Protective Order marked as Exhibit 91 | | | Ex. 91 | LSW FRE 402 FRE 802 | | |
| D-173 | 173 | 10/04 | DD From 441 Department of Defense Security Agreement (Blank) marked as Exhibit 92 | | | Ex. 92 | LSW FRE 402 FRE 802 FRE 901 | | |

20

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-174 | 174 | 10/04 | DD Form 441-1 Appendage to Department of Defense Security Agreement (Blank) marked as Exhibit 93 | | | Ex. 93 | LSW FRE 402 FRE 802 FRE 901 | | |
| D-175 | 175 | 2/28/06 | DoD 5220.22-M national Industrial Security Program Operating Manual marked as Exhibit 94 | | | Ex. 94 | LSW FRE 402 FRE 802 FRE 901 | | |
| D-176 | 176 | 12/99 | DD Form 254, Department of Defense Contract Security Classification Specification Form (Blank) marked as Exhibit 95 | | | Ex. 95 | LSW FRE 402 FRE 802 FRE 901 | | |
| D-177 | 177 | 10/7/05 | Email from Mooney to Waldmann re Tesla Ground Power Equipment DODAAC Info marked as Exhibit 155 (P Supp 1414) | | | Ex. 155 | FRE 802 | | |
| D-178 | 178 | 2/13/07 | DODAAC Web Management System website pages marked as Exhibit 156 | | | Ex. 156 | LSW FRE 402 FRE 802 FRE 901 | | |
| D-179 | 179 | 8/18/05 | Fax from Hollingsworth to Waldmann re: Mutual NonDisclosure and Limited Use Agreement | LWH000022 | LWH000025 | | FRE 802 | | |

21

| Trial x# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-180 | 180 | 8/19/05 | Confidential Proposal from Hollingsworth to Tesla | LWH000026 | LWH000036 | | FRE 802 | | |
| D-181 | 181 | | Strategic Plan for NEWCO Tool Company | LWH000109 | LWH000121 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-182 | 182 | | Motor Assembly Procedure Presentation | LWH000129 | LWH000131 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-183 | 183 | | DC Impact Parts and Components Presentation | LWH000132 | LWH000151 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-184 | 184 | 12/04 | Hollingsworth Presentation re: Plan to create New Millennium Tools | LWH000188 | LWH000189 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-185 | 185 | | DC Impact's DC Motor Breakdown Specs | LWH000194 | LWH000206 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-186 | 186 | 3/2/05 | Yeonhab Precision Co., Ltd.'s Offer to DC Power Equipment, LLC; Offer No. YHQ25302DC | LWH000222 | LWH000224 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-187 | 187 | 11/17/04 | Correspondence from Hollingsworth to Marek re: sub-licensing the DC Impact technology | LWH000225 | LWH000227 | | LSW FRE 402 FRE 802 FRE 901 | | |

| Trial# | Def ex# | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-188 | 188 | N/A | Intentionally Left Blank | N/A | N/A | N/A | N/A | N/A | N/A |
| D-189 | 189 | 2/3/03 | Correspondence from Hollingsworth to Hawker re battery | LWH000230 | LWH000230 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-190 | 190 | 2001 | Draft Mutual Nondisclosure and Limited Use Agreement between DC Power Equipment, LLC and Florida Pneumatic Manufacturing Corp. | LWH000240 | LWH000242 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-191 | 191 | 2005 | Draft Mutual Nondisclosure and Limited Use Agreement between DC Power Equipment, LLC and Tesla Industries, Inc. | LWH000243 | LWH000245 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-192 | 192 | | Photo of a NATO plug | LWH000338 | LWH000338 | | LSW FRE 802 FRE 901 | | |
| D-193 | 193 | | Photo of DC Impact Wrench | LWH000339 | LWH000339 | | LSW FRE 802 FRE 901 | | |
| D-194 | 194 | | Photo of DC Impact Wrench and accessories | LWH000360 | LWH000360 | | LSW FRE 802 FRE 901 | | |
| D-195 | 195 | | Photo of Connector | LWH000365 | LWH000365 | | LSW FRE 802 FRE 901 | | |
| D-196 | 196 | | Photo of Connector | LWH000372 | LWH000372 | | LSW FRE 802 FRE 901 | | |
| D-197 | 197 | | Photo of Connector | LWH000407 | LWH000407 | | LSW FRE 802 FRE 901 | | |

| Trial# | Def Ex # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|--------|----------|----------|-------------|-----------|-----------|----------|----------|-----------|----------|
| D-198 | 198 | | Photo of Connector | LWH000421 | LWH000421 | | LSW FRE 802 FRE 901 | | |
| D-199 | 199 | | Photo of Connector | LWH000422 | LWH000422 | | LSW FRE 802 FRE 901 | | |
| D-200 | 200 | | Photo of Connector | LWH000524 | LWH000524 | | LSW FRE 802 FRE 901 | | |
| D-201 | 201 | | Photo of Connector | LWH000689 | LWH000697 | | LSW FRE 802 FRE 901 | | |
| D-202 | 202 | 8/31/05 | Email from Hollingsworth to Waldmann re "Chuck and I are really fired up to be working with you and Tesla...." | 77 | 78 | | FRE 802 | | |
| D-203 | 203 | 8/30/05 | Email from Waldmann to Hollingsworth re Hollingsworth offer to work with Tesla re DOLA | 86 | 87 | | FRE 802 | | |
| D-204 | 204 | 11/14/05 | Email from Hollingsworth to Waldmann re requesting price quote for NATO receptacle | 92 | 92 | | FRE 802 | | |
| D-205 | 205 | 10/31/05 | Email from Francis P. Stiglich, U.S. Army to Waldmann re tracking DLA sales | 299 | 299 | | LSW FRE 402 FRE 802 FRE 901 | | |
| D-206 | 206 | 7/12/05 | Fax to Tesla from Hollingsworth re NATO receptacle | TI024 | TI024 | | FRE 802 | | |
| D-207 | 207 | | Tesla TI1000 GPU-24 Ground Power Unit manual | 580 | 641 | | FRE 802 | | |
| D-208 | 208 | | Cobra Connectors and Replacement Parts | 774 | 774 | | FRE 802 | | |

24

| | | | Description | Beg Doc # | End Doc # | | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-209 | 209 | | The Cobra NATO Plug: | 778 | 778 | | FRE 802 | | |
| D-210 | 210 | 2003 | Tesla 2003 Product Catalog | 924 | 940 | | FRE 802 | | |
| D-211 | 211 | 2004 | Tesla 2004 Military Aviation Catalog | 941 | 959 | | FRE 802 | | |
| D-212 | 212 | 2004 | Tesla 2004 Product Catalog | 960 | 978 | | FRE 802 | | |
| D-213 | 213 | 2005 | 2005 Product Catalog | 979 | 997 | | FRE 802 | | |
| D-214 | 214 | 2/2/06 | Email from Dougherty obo Sullivan to Hollingsworth re shipping receptacle | P. Supp 1065 | P. Supp 1065 | | FRE 802 | | |
| D-215 | 215 | 2/2/06 | Email from Hollingsworth to Sullivan re receptacle | P Supp 1066 | P Supp 1067 | | FRE 802 | | |
| D-216 | 216 | 6/10/05 | Mutual Nondisclosure and Limited Use Agreement | P Supp 1074 | P Supp 1079 | | FRE 402 FRE 802 | | |
| D-217 | 217 | 2/17/06 | Email from Brown obo Sullivan to Hollingsworth rescinding offer to release NMT defendants from suit | P Supp 1087 | P Supp 1088 | | FRE 802 | | |
| D-218 | 218 | 2/7/06 | Email from Minnick to Sullivan re Fedex Tracking Number | P Supp 1109 | P Supp 1109 | | FRE 802 | | |

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-219 | 219 | 2/2/06 | Email from Minnick to Sullivan, Wilcox, Adams and Widman copying Hollingsworth and Waldmann re Tesla NATO connector … | P Supp 1110 | P Supp 1110 | | FRE 802 | | |
| D-220 | 220 | 10/7/05 | Email from Mooney to Waldmann re DODAAC | P Supp 1414 | P Supp 1414 | | FRE 802 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| D-221 | 221 | 10/4/05 | Email from Mooney to Waldmann re DODAAC | P Supp 1415 | P Supp 1427 | FRE 802 |
| D-222 | 222 | 8/3/05 | Email from Mooney to Waldmann re DODAAC | P Supp 1433 | P Supp 1434 | FRE 802 |
| D-223 | 223 | 2/9/05 | Email from Mooney to Waldmann re DODAAC | P Supp 1460 | P Supp 1460 | FRE 802 |
| D-224 | 224 | 2005 | Call Reports of Waldmann | P Supp 1493 | P Supp 1509 | FRE 402 FRE 802 FRE 901 |
| D-225 | 225 | 6/05 | Waldmann Weekly Itinerary | P Supp 1511 | P Supp 1511 | FRE 402 FRE 802 FRE 901 |
| D-226 | 226 | 9/05 | Waldmann Weekly Itinerary | P Supp 1512 | P Supp 1512 | FRE 402 FRE 802 FRE 901 |
| D-227 | 227 | 2005 | Activity Report | P Supp 1526 | P Supp 1527 | FRE 402 FRE 802 FRE 901 |
| D-228 | 228 | 2/9/05 | Email from Mooney to Waldmann re DODAAC url | P Supp 1571 | P Supp 1571 | FRE 802 |
| D-229 | 229 | 9/8/05 | Email from Waldmann to Roscioli, Mooney and Masilotti re DC Impact wrench | P Supp 1693 | P Supp 1694 | FRE 402 FRE 802 FRE 901 |
| D-230 | 230 | 2/10/06 | Email from Hollingsworth to Sullivan | P Supp 1069 | P Supp 1069 | FRE 402 FRE 802 |

26

| Trial# | Def x # | Doc Date | Description | Beg Doc # | End Doc # | Depexh # | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-231 | 231 | 4/18/07 | "The Pilotless Plane That Only Looks Like Child's Play" written by Charles Duhigg for The New York Times | | | | LSW FRE 402 FRE 802 FRE 901 NPDD | | |
| D-232 | 232 | 9/05 | "Edited" version of taped conversation between Waldmann and Masilotti re DCPE and wrench | | | | LSW FRE 402 FRE 802 FRE 901 NPDD | | |
| D-233 | 233 | 9/05 | Purported "unedited" version of taped conversation between Waldmann and Masilotti re DCPE and wrench | | | | LSW FRE 402 FRE 802 FRE 901 NPDD | | |
| D-234 | 234 | 2/28/07 | Federal Rule of Evidence 902 Declaration of Tameca L. Brooks | | | | LSW FRE 402 FRE 802 FRE 901 NPDD | | |
| D-235 | 235 | 4/30/02 | Certified copy of Federal IRS Tax Liens against Tesla for 2000 and 2001 | | | | LSW FRE 402 FRE 802 FRE 901 NPDD MIL | | |
| D-236 | 236 | 10/20/05 | Certified copy of Federal IRS Tax Liens against Tesla for 2002 and 2005 | | | | LSW FRE 402 FRE 802 FRE 901 NPDD MIL | | |

27

| Trial#\# | Def x\# | Doc Date | Description | Beg Doc \# | End Doc \# | Depexh \# | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| D-237 | 237 | | Certified copy of Civil Judgment Action: Grant S. Eisenhofer, P.A. v. Tesla Industries, Inc. and David J. Masilotti, Civ. Act. No. 00C-12067-1-CV, Superior Court of Delaware (2001) | | | | FRE 106 FRE 402 FRE 802 FRE 901 LSW NPDD | | |
| D-238 | 238 | | Certified copy of Civil Judgment Action: Sanderson, Thompson, Ratledge and Zimny, PA v. Tesla Industries, Inc., Civ. Act. No. 00c-11-263J, Superior Court of Delaware (2001) | | | | FRE 106 FRE 402 FRE 802 FRE 901 LSW NPDD | | |
| D-239 | 239 | | Certified copy of Civil Action: Electronics Exchange Corp. v. Tesla Industries, Inc., Civ. Act. No. 99C-07-222 | | | | FRE 106 FRE 402 FRE 802 FRE 901 LSW NPDD | | |
| D-240 | 240 | | Certified copy of Civil Action: Inverness Limited Partnership v. Tesla Industries, Inc., New Castle County Court of Common Pleas | | | | FRE 106 FRE 402 FRE 802 FRE 901 LSW NPDD | | |
| D-241 | 241 | 2005 | Audio tape of D. Waldmann and Tesla employees | | | | LSW FRE 402 FRE 802 NPDD | | |
| D-242 | 242 | 7/22/99- 11/27/01 | Electronics Exchange Corporation v. Tesla Industries, Inc. - Docket | | | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | | |

28

| | | | | | |
|---|---|---|---|---|---|
| D-243 | 243 | 7/22/99 | Electronics Exchange Corporation v. Tesla Industries, Inc. - Complaint | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |
| D-244 | 244 | 9/2/99 | Electronics Exchange Corporation v. Tesla Industries, Inc. – Defendant's Answer and Affirmative Defenses to the Complaint | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |
| D-245 | 245 | 5/4/01 | Electronics Exchange Corporation v. Tesla Industries, Inc. – Plaintiff's Motion for Partial Summary Judgment | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |
| D-246 | 246 | 6/19/01 | Electronics Exchange Corporation v. Tesla Industries, Inc. – Superior Court Proceedings Sheet Granting the Motion for Partial Summary Judgment #13; Attorney's fees denied | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |
| D-247 | 247 | 11/21/01 | Electronics Exchange Corporation v. Tesla Industries, Inc. – Letter to Judge Slights re settlement of case | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |
| D-248 | 248 | 11/27/01 | Electronics Exchange Corporation v. Tesla Industries, Inc. – Stipulation and Dismissal | | LSW<br>FRE 106<br>FRE 402<br>FRE 802<br>FRE 901<br>NPDD |

29

| | | | | |
|---|---|---|---|---|
| D-249 | 249 | 8/7/96 – 10/14/97 | Tesla Industries, Inc. v. David J. Fantasia - Docket | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |
| D-250 | 250 | 8/7/96 | Tesla Industries, Inc. v. David J. Fantasia – Verified Complaint | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |
| D-251 | 251 | 7/17/97 | Tesla Industries, Inc. v. David J. Fantasia – Amended Complaint | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |
| D-252 | 252 | 8/7/97 | Tesla Industries, Inc. v. David J. Fantasia – Answer to Counterclaim | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |
| D-253 | 253 | 8/28/97 | Tesla Industries, Inc. v. David J. Fantasia – Answer to Counterclaim | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |
| D-254 | 254 | 9/8/98 | Tesla Industries, Inc. v. David J. Fantasia – Stipulation and Dismissal with Prejudice | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD |

30

| | | | | | | |
|---|---|---|---|---|---|---|
| D-255 | 255 | 12/8/00-12/28/01 | Tesla Industries, Inc. v. David J. Masilotti - Docket | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |
| D-256 | 256 | 12/8/00 | Grant & Eisenhofer, PA v. Tesla Industries, Inc. And David J. Masilotti - Complaint | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |
| D-257 | 257 | 3/23/01 | Grant & Eisenhofer, PA v. Tesla Industries, Inc. And David J. Masilotti – Praecipe for the Entry of Default Judgment | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |
| D-258 | 258 | 11/30/00-8/24/01 | Sanderson, Thompson, Ratledge & Zimmy, PA v. Tesla Industries, Inc. - Docket | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |
| D-259 | 259 | 11/29/00 | Sanderson, Thompson, Ratledge & Zimmy, PA v. Tesla Industries, Inc. - Complaint | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |
| D-260 | 260 | 8/24/01 | Sanderson, Thompson, Ratledge & Zimmy, PA v. Tesla Industries, Inc. – Default Judgment | | LSW FRE 106 FRE 402 FRE 802 FRE 901 NPDD | |

# SCHEDULE D-1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

## SCHEDULE D-1

## PLAINTIFF'S WITNESS LIST

I. Witnesses Plaintiff Intends to Call at Trial[1]

| Name and Address | Objections (if any) |
|---|---|
| David Masilotti<br>Tesla Industries, Inc.<br>New Castle, DE | FRE 602; FRE 701-702; Subject to Motion *in Limine* (D.I. 136); Subject to *Daubert* Motion (D.I. 171); lack of foundation. |
| Truee Dorsey<br>Tesla Industries, Inc.<br>New Castle, DE | |
| Frank Mooney<br>Tesla Industries, Inc.<br>New Castle, DE | |
| David Waldmann*<br>Malvern, PA | |
| Lyndol Hollingsworth (if available)*<br>Austin, TX | |
| Charles Minnick (if available)*<br>Portland, OR | |

---

[1]* Plaintiff reserves the right to use the deposition of these witnesses that do not voluntarily appear at trial or are outside the subpoena power of the Court.

| | |
|---|---|
| Donald Stewart<br>2619 14th Avenue<br>Moline, IL | FRE 401-403; FRE 602; FRE 701-702; Subject of *Daubert* Motion (D.I. 171); lack of foundation. |
| John Sullivan<br>1650 Suckle Highway<br>Pennsauken, NJ | FRE 401-403; FRE 602; FRE 701-702; Subject of *Daubert* Motion (D.I. 171); lack of foundation. |
| Roger Guillemette*<br>11 Gull Circle<br>Northeast, MD 21901 | FRE 401-403; FRE 602; FRE 701-702; FRE 802; Subject of *Daubert* Motion (D.I. 171), lack of foundation; FRCP 32(a). |
| Reynaldo G. Batipps<br>47042 Tate Road<br>Toturent River, MD | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); FRE 401-403; FRE 602; FRE 701-702; lack of foundation. |
| Clyde Carter<br>604 Lash Road<br>Shermansville, PA | FRE 401-403; FRE 602; FRE 701-702; Subject of *Daubert* Motion (D.I. 171), lack of foundation. |
| Daniel Rosciolli<br>Tesla Industries, Inc.<br>New Castle, DE | |
| Angel Acevedo<br>2008 Ashkirk Drive<br>Newark, DE 19702 | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); FRE 602; lack of foundation. |

## II. Witnesses Plaintiff May Call at Trial[2]

| Name and Address | Objection (if any) |
|---|---|
| Butch Hyden<br>P.O. Box 7492<br>Newark, DE | FRE 401-403; FRE 602. Mr. Hayden is a private investigator who submitted a report to Tesla on his Investigation of Waldmann. Waldmann further objects to his testimony because, despite numerous requests, Tesla has failed to produce said report. |
| Kent Huffman*<br>Phoenix Lamar Corp.<br>8868 Research Blvd.<br>Austin, TX | |
| David Gresk<br>654 Sunset Avenue<br>Franklinville, NJ | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosed); FRE 401-403; lack of foundation. |
| Robert Morales<br>Tesla Industries, Inc.<br>New Castle, DE | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosed); FRE 401-403; FRE 701-702; FRE 602; lack of foundation. |
| Dennis Barone<br>1540 Cleland Course<br>Wilmington, DE | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); FRE 602; lack of foundation. |
| Dee Ridgeway<br>Ridgeway Accounting<br>New Castle, DE | FRCP 37(c) (sanction for failure to cooperate in discovery by blocking subpoena); Unfair surprise given Tesla blocked a valid subpoena to Ridgeway and now wants to call him/her as a witness; FRCP 26(a)(1) and FRCP 26(e) (Tesla failed to identify witness on initial disclosure or in response to any discovery); FRE 701-702; FRE 401-403; FRE 602; lack of foundation. |

---

[2]* Plaintiff reserves the right to use the deposition of these witnesses if they do not voluntarily appear at trial or are outside the subpoena power of the Court.

| | |
|---|---|
| Peter Cordua<br>Cordua & Company, PC<br>Pensauken, NJ | FRCP 37(c) (sanction for Tesla's counsel's misrepresentation that Tesla would not call Mr. Cordua as a witness and Waldmann's reliance thereon; FRE 701-702; FRE 602; FRE 403; FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); lack of foundation. |
| William Kern<br>9 Farragut Lane<br>New Castle, DE | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); FRE 602; lack of foundation. |
| Francine Staley<br>1 Maple Avenue<br>New Castle, DE 19720 | FRCP 26(a)(1) and FRCP 26(e) (never disclosed); Fed. R. Civ. P. 37(c) (witness not identified in Tesla's response to any discovery request or 26(a) disclosure); FRE 602; FRE 701-702.  Tesla first provided notice of this witness on April 27, 2007, the last full business day before the original Joint Pretrial Order was due, and Tesla has still not advised what the nature of this witness' testimony may be. |
| Walter Lassiter<br>Lakehurst, NJ | Subject to Motion *in Limine* No. 1 (D.I. 133); FRCP 26(a)(1) and FRCP 26(e) (untimely disclosure); FRE 401-403; FRE 602; FRE 701-702; lack of foundation. |

# SCHEDULE D

## SCHEDULE D

### Defendant Waldmann's Witness List and Plaintiff's Objections

I. Witnesses Defendant Waldmann Intends to Call at Trial

| Name and Address | Objections (if any) |
|---|---|
| David Masilotti (as on cross)<br>Tesla Industries, Inc.<br>109 Centerpoint Boulevard<br>New Castle, DE | |
| Truee Dorsey (as on cross)<br>Tesla Industries, Inc.<br>109 Centerpoint Boulevard<br>New Castle, DE | |
| Frank Mooney (as on cross)<br>Tesla Industries, Inc.<br>109 Centerpoint Boulevard<br>New Castle, DE | |
| David Waldmann<br>Malvern, PA | |
| Lyndol Hollingsworth<br>Austin, TX | |
| Charles Minnick<br>Portland, OR | |
| Mrs. David C. Waldmann<br>6 Robin Road<br>Malvern, PA 19355 | |
| Bob Frankenheimer<br>Employee of Frankenheimer Landscaping<br>Address Unknown | Tesla objects to the testimony of Mr. Frankenheimer as his knowledge and experience are unrelated to the issues in this case and therefore his testimony would be irrelevant and a waste of the Court's time. FRE 401, 402, 403, 404, 602, 608, 701; lack of foundation. |
| David Cassity<br>101st Airborne Division<br>United States Army | FRE 401, 402, 403 , 602, 608, 701, 702; lack of foundation. |
| Joseph Talbot (as on cross)<br>Marketing Manager<br>Tesla Industries, Inc.<br>109 Centerpoint Boulevard<br>New Castle, Delaware 19720-4180 | Tesla objects to this witness' testimony to the extent that it might involve the disclosure of Tesla confidential information to those other than Tesla and its authorized representatives. |

| David Gresk<br>654 Sunset Avenue<br>Franklinville, NJ | Tesla objects to this witness' testimony to the extent that it might involve the disclosure of Tesla confidential information to those other than Tesla and its authorized representatives. |
|---|---|

II. Witnesses Plaintiff May Call at Trial

| Name and Address | Objection (if any) |
|---|---|
| Reynaldo G. Batipps<br>47042 Tate Road<br>Toturent River, MD | |
| Daniel Rosciolli (as on cross)<br>Tesla Industries, Inc.<br>New Castle, DE | Tesla objects to this witness' testimony to the extent that it might involve the disclosure of Tesla confidential information to those other than Tesla and its authorized representatives. |
| Dave Holden<br>Former Tesla Employee<br>Address Unknown | Tesla objects to this witness' testimony to the extent that it might involve the disclosure of Tesla confidential information to those other than Tesla and its authorized representatives. FRE 401, 402, 403, 602, 608; lack of foundation. |
| Dana Kelly<br>160th Special Operations Aviation Regiment<br>United States Army | FRE 401, 402, 403, 602, 608, 701, 702; lack of foundation. |
| Dave Brown<br>United States Army Representative<br>Fort Knox | FRE 401, 402, 403, 602, 608, 701, 702; lack of foundation. |
| Tom Adams<br>Former Tesla Employee | Tesla objects to this witness' testimony to the extent that it might involve the disclosure of Tesla confidential information to those other than Tesla and its authorized representatives. FRE 401, 402, 403, 602, 608; lack of foundation. |
| | |
| | |
| | |
| | |
| | |

# SCHEDULE E-1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

---

## SCHEDULE E-1

### PLAINTIFF'S STATEMENT OF ITS EXPERT WITNESS' QUALIFICATIONS AND DEFENDANT'S OBJECTIONS THERETO

1.    Clyde T. Carter (Plaintiff) - Mr. Carter is a mechanical engineer with over forty years of design experience, with a specialty in new product analysis and reduction to practice. Mr. Carter received his Bachelor of Science in Mechanical Engineering from Fairleigh Dickinson University and has completed graduate studies at the General Electric Company.  His career company affiliations include Bell Telephone Laboratories, General Electric Company, Goodyear Atomic Corporation, AMP Incorporation, Mark Products, Sealectro Corporation, Burndy Corporation and Wells Electronics.  Mr. Carter is the holder of numerous patents in the connector and related fields, and has authored several technical papers.  While at Wells Electronics, Mr. Carter served as Director of Research & Development and General Manager of their Product Development Center, specializing in Burn-In connectors including Zero Insertion Force and Pin Grid Array Applications.

2.    Donald T. Stewart (Plaintiff) - Prior to retiring in 2006, Mr. Stewart had a twenty-six year career with the military, the past seven of which he served as Team Leader for Tool sets and management expert for tool optimization. In this capacity, he had been actively involved in military procurement of equipment, providing detailed analysis for the current tool sets, kits and outfits. From 1995-2005 he served as Mobile Shop Set Team Leader and Team Leader of the Chemical Defense Equipment division from 1989-1995, where he was director of support for the Service Response Force, an ad-hoc group of experts from the government and Army trained to respond to any accident or incident worldwide. Mr. Stewart also served in operation Desert Shield and Desert Storm as the Army's chemical liaison officer, and was the only civilian to do so.

3.    John P. Sullivan (Plaintiff) - Mr. Sullivan is currently employed as Valuation Consultant and Audit Director for Cordua & Company, P.C. a certified public accounting firm located in Pennsauken, New Jersey.  Mr. Sullivan received his Bachelor of Science degree from Villanova University in 1998.  Prior to joining Cordua & Company, Mr. Sullivan was a financial auditor for the Campbell Sales Company from 2001 to 2002, and a senior auditor with Ernst & Young, LLP from 1997-2000.

# SCHEDULE F-1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC.,                    :
A Delaware Corporation                     :        Civil Action No. 06-55-GMS
                                           :
               Plaintiff.         :
                                           :
v.                                         :
                                           :
DAVID C. WALDMANN,                         :
                                           :
               Defendant.        :

---

## <u>SCHEDULE F-1</u>

## <u>PLAINTIFF'S DESIGNATION OF DEPOSITIONS TO<br>BE READ OR PLAYED AT TRIAL</u>

| Deponent | Deposition Date | Starting Page: Line | Ending Page: Line | Defendant's Objections |
|---|---|---|---|---|
| J. Waldmann | 5/18/06 | 31:13 | 47:17 | |
| | | 51:1 | 52:20 | |
| | | 56:5 | 56:8 | |
| | | 69:1 | 75:24 | |
| | | 82:18 | 84:22 | |
| | | 88:15 | 111:16 | |
| | | 112:16 | 118:5 | |
| | | 120:9 | 121:23 | |
| | | 130:11 | 131:10 | |
| | | 136:6 | 137:1 | |
| | | 152:13 | 155:19 | |
| | | 183:18 | 186:10 | |
| K. Huffman | 11/13/07 | All | (videotaped) | |
| NMT | 11/17/06 | 12:1 | 12:13 | |
| | | 182:4 | 183:15 | |
| | | 203:9 | 204:8 | |
| | | 209:11 | 209:20 | |
| L. Hollingsworth | 11/16/06 | 23:5 | 26:15 | |
| | | 50:8 | 52:4 | |
| | | 65:8 | 65:15 | |
| | | 70:14 | 71;14 | |
| | | 80:8 | 83:9 | |
| | | 259.1 | 266:19 | |
| Joseph Talbot | 11/21/06 | 14:3 | 15:2 | |
| | | 16.2 | 16.10 | |
| | | 19:20 | 21:5 | |

| Deponent | Deposition Date | Starting Page: Line | Ending Page: Line | Defendant's Objections |
|---|---|---|---|---|
|  |  | 23:7 | 35:2 |  |
|  |  | 35:12 | 54:10 |  |
|  |  | 56:1 | 67:5 |  |
|  |  | 67:16 | 73:4 |  |

# SCHEDULE F

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

          Plaintiff,

    v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES
MINNICK a.k.a. CHUCK MINNICK, and
NEW MILLENNIUM TOOLS, INC., an
Oregon Corporation,

          Defendants.

Civil Action No. C.A. No.: 06-55-GMS

## WALDMANN'S SCHEDULE F
## DESIGNATIONS OF DEPOSITION TESTIMONY OF CERTAIN WITNESSES

**WALDMANN'S SCHEDULE F**

**DESIGNATIONS OF DEPOSITION TESTIMONY OF CERTAIN WITNESSES**

Defendant Waldmann hereby submits his Designations of Deposition Testimony of Certain Witnesses, pursuant to Fed. R. Civ. P. 32(a) and/or Fed. R. Evid. 801(D)(2), 807 and 1007.

Deposition of David Masilotti
November 22, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 11:22 – 25 | | | | |
| 12:7 – 24 | | | | |
| 13:17 – 14:2 | | | | |
| 18:4 – 6; 11 – 18 | | | | |
| 24:16 – 20 | | | | |
| 28:14 – 20 | | | | |
| 32:1 – 5; 9 – 23 | | | | |
| 33:3-12; 33:21-34: 3 | | | | |
| 34:17 – 18; 34:20 - 35:3 | | | | |
| 35:24 – 36:18 | | | | |
| 37:1 – 12 | | | | |
| 51:20 – 52:8 | | | | |
| 67:11 – 24 | Seeks disclosure of attorney-client privileged communication | | | |
| 68:19 | | | | |
| 71:11 – 24 | Argumentative; harassing | | | |
| 72:1; 3 – 18; 72:22 – 73:5 | Record speaks For itself | | | |
| 75:21 – 76:5 | Argumentative; harassing | | | |
| 76:7 – 14; 16 – 21; 76:24 – 77:4 | Lack of foundation | | | |
| 82:22 – 83:15 | | | | |

3

| | | | | |
|---|---|---|---|---|
| 83:19 – 85:17 | | | | |
| 92:3 – 94:19 | | | | |
| 95:1 – 14 | | | | |
| 97:8 – 98:9 | | | | |
| 99:13 – 16 | | | | |

Deposition of David Masilotti (Continued)
November 22, 2007

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 100:10 – 20 | | | | |
| 104:11 – 12; 16 – 18; 104:21 – 105:23 | | | | |
| 106:17 – 20 | Beyond the scope; confusing | | | |
| 107:9 – 25 | Beyond the scope; confusing | | | |
| 113:25 – 114:14; 114:16 – 115:10 | | | | |
| 128:23 – 129:1 | Beyond the scope; Asks for legal conclusion | | | |
| 141:4 – 142:15 | | | | |
| 148:25 – 151:23 | | | | |
| 162:22 – 163:20 | | | | |
| 166:13 – 166:20 | | | | |
| 178:11 – 179:1 | | | | |
| 196:13 – 197:23 | | | | |
| 198:15 – 21 | | | | |

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 199:5 – 200:3 | | | | |
| 202:20 – 203:9; 12 – 16 | | | | |
| 225:10 – 14 | | | | |
| 228:14 – 20 | Seeks disclosure of attorney-client privileged communication | | | |
| 247:22 – 248:20 | | | | |
| 249:23 – 250:21 | Form, vague | | | |
| 280:10 – 282:20 | | | | |
| 291:15 – 21; 291:25 – 292:16 | | | | |
| 292:20 – 293:24 | | | | |
| 294:1 – 6; 8-15 | Beyond the scope; harassing | | | |
| 297:6 – 10; 13; 297:15 – 299:12 | Asked and answered | | | |

Deposition of Frank Mooney
November 20, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 2:21 – 3:1 | | | | |
| 3:7 – 8 | | | | |
| 14:3 – 15:5 | | | | |
| 17:1 – 18:3 | | | | |
| 18:13 – 19:3 | | | | |
| 22:14 – 23:2 | | | | |
| 23:15 – 21 | | | | |
| 24:3 – 25:1 | | | | |
| 25:11 – 16 | | | | |
| 27:22 – 28:6 | | | | |

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 28:9 – 11 | | | | |
| 41:15 – 42:8 | | | | |
| 43:13 – 44:4 | | | | |
| 44:15 – 22 | | | | |
| 46:21 – 47:12 | | | | |
| 49:6 – 17; 49:20 – 50:9 | | | | |
| 50:16 – 22 | | | | |
| 51:20 – 52:11 | | | | |
| 52:14 – 54:9 | | | | |
| 55:19 – 56:4 | | | | |
| 56:11 – 13 | | | | |
| 59:20 – 61:7 | | | | |
| 63:9 – 14 | | | | |
| 64:4 – 65:4 | | | | |

Deposition of Frank Mooney (Continued)
November 20, 2007

6

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 69:4 – 12 | | | | |
| 69:15 – 70:7 | | | | |
| 70:13 – 17 | | | | |
| 71:3 – 7; 71:9 – 16 | | | | |
| 75:1 – 18 | | | | |
| 75:21 – 76:1 | | | | |
| 76:18 – 77:17 | | | | |
| 78:19 – 80:2 | | | | |
| 86:18 – 87:6 | | | | |
| 87:9 – 11 | | | | |
| 87:14 – 15; 87:18 – 20 | | | | |
| 88:1 – 4; 88:17 – 20 | | | | |
| 90:1 – 91:5 | | | | |
| 92:11 – 93:8 | | | | |
| 93:11 – 14 | | | | |
| 93:22 – 94:2 | | | | |
| 94:6 – 21 | | | | |
| 98:9 – 98:19 | | | | |
| 99:21 – 100:1 | | | | |
| 100:5 – 22 | | | | |
| 101:7 – 102:7 | | | | |
| 102:11 – 22 | | | | |

Deposition of Frank Mooney (Continued)
November 20, 2007

7

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 104:22 – 105:17 | | | | |
| 105:21 – 22 | | | | |
| 106:3 – 20 | | | | |
| 107:8 – 19 | | | | |
| 108:2 – 4 | | | | |
| 110:22 – 111:1 | | | | |
| 111:3 – 7 | | | | |
| 111:16 – 112:3 | | | | |
| 112:7 – 22 | | | | |
| 113:4 – 22 | | | | |
| 114:3 – 10 | | | | |
| 114:22 – 115:17 | | | | |
| 120: 12 – 18 | | | | |
| 120:22 – 121:2 | | | | |
| 122:6 – 20 | | | | |
| 133:5 – 10 | | | | |
| 143:1 – 16 | | | | |
| 144:16 – 145:4 | | | | |
| 148:4 – 13 | | | | |
| 149:2 – 6 | | | | |

Deposition of Daniel M. Roscioli
November 21, 2006

8

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2:21 – 3:2 | | | | | | | | | | | | | |
| 3:6 – 10 | | | | | | | | | | | | | |
| 22:15 – 17 | | | | | | | | | | | | | |
| 22:21 – 23:9 | | | | | | | | | | | | | |
| 23:15 – 21 | | | | | | | | | | | | | |
| 34:19 – 36:2 | | | | | | | | | | | | | |
| 37:2 – 39:7 | | | | | | | | | | | | | |
| 40:18 – 41:5 | | | | | | | | | | | | | |
| 41:10 – 13 | | | | | | | | | | | | | |
| 49:14 – 49:22 | | | | | | | | | | | | | |
| 56:15 – 18 | | | | | | | | | | | | | |
| 57:10 – 14 | | | | | | | | | | | | | |
| 58:13 – 59:4 | | | | | | | | | | | | | |
| 61:20 – 62:10 | | | | | | | | | | | | | |
| 66:18 – 69:3 | | | | | | | | | | | | | |
| 71:17 – 21 | | | | | | | | | | | | | |
| 73:12 – 74:7 | | | | | | | | | | | | | |
| 74:12 – 75:1 | | | | | | | | | | | | | |

Deposition of Joseph E. Talbot
November 21, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 2:21 – 3:1 | | | | |
| 13:13 – 15 | | | | |
| 14: 3 – 13 | | | | |
| 14:16 – 15:2 | | | | |
| 19:20 – 22 | | | | |
| 20:12 – 13 | | | | |
| 20:17 – 21:2 | | | | |
| 21:10 – 18 | | | | |
| 22:6 – 17 | | | | |
| 23:2 – 4; 23:7 – 9; 23:13 – 16 | | 23:4-24:19 | | |
| 27:17 – 28:9 | | 28:10-30:5 | | |
| 28:13 – 29:4 | | | | |
| 34:6 – 11 | Lack of foundation | | | |
| 35:7 – 10 | | | | |
| 36:12 –37:2 | | | | |
| 39:18 – 20 | Lack of foundation | | | |
| 40:8 – 41:1 | | | | |
| 41:6 – 17 | | | | |
| 42:4 – 16 | | | | |
| 46:1 – 48:9 | Lack of foundation | | | |
| 48:19 – 49:6 | Lack of foundation | | | |
| 49:9 | Lack of | | | |

|  |  |  |
|---|---|---|
|  | foundation |  |
| 49:11 – 14 | Lack of foundation |  |
| 55:7 – 10; 14 – 16; 19; 21 – 22 | Lack of foundation |  |

Deposition of Joseph E. Talbot (Continued)
November 21, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 57:20 – 22 |  |  |  |  |
| 59:11 – 60:2 |  |  |  |  |
| 62:4 – 8 |  |  |  |  |
| 62:17 – 64:2 |  |  |  |  |
| 64:14 – 65:4 |  |  |  |  |
| 65:19 – 66:14 | Speculative |  |  |  |
| 69:2 – 4; 69:7 – 70:2 |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

11



12

Deposition of Kent Huffman
November 13, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 7:3 – 8 | | | | |
| 14:19 – 15:12 | | | | |
| 16:9 – 12 | | | | |
| 19:5 – 11; 18 – 20 | | | | |
| 21:13 – 16; 23 – 22:6 | | | | |
| 24:9 – 13; 15 – 18; 21 – 25:2 | | | | |
| 25:8 – 16; 24 – 26:7 | | | | |
| 33:1 – 3 | | | | |
| 36:20 – 25 | | | | |
| 37:3 – 10 | | | | |
| 38:13 – 39:5; 10 – 20 | | | | |
| 42:6 – 10 | | | | |
| 43:2 – 17 | | | | |
| 46:25 – 47:5 | | | | |
| 48:12 – 18 | | | | |
| 49:6 – 8; 12 – 21 | | | | |
| 50:1 – 5; 15 – 51:1 | | | | |
| 53:24 – 54:4 | | | | |
| 66:10 – 14 | | | | |
| 67:9 – 19 | | | | |
| 68:7 – 15 | | | | |
| 71:5 – 18 | | | | |
| 72:2 – 13 | | | | |
| 73:19 – 74:6 | | | | |

13

Deposition of Kent Huffman (Continued)
November 13, 2006

| WALDMANN'S DEPOSITION DESIGNATIONS | TESLA'S OBJECTIONS | TESLA'S COUNTER DESIGNATIONS | WALDMANN'S OBJECTIONS TO COUNTERDESIGNATIONS | TESLA'S REPLY DESIGNATIONS |
|---|---|---|---|---|
| 79:15 – 21 | | | | |
| 80:1 – 9 | | | | |
| 85:10 – 86:5 | | | | |
| 89:18 – 25 | | | | |
| 91:10 – 18 | | | | |
| 105:4 – 19 | | | | |
| 106:20 | | | | |
| 107:1 – 21 | | | | |
| 108:4 – 13; 16 – 21 | | | | |
| 109:18 – 23 | | | | |
| 111:18 – 25 | | | | |
| 112:10 – 15 | | | | |
| 113:3 – 16; 22 – 114:7; 9; 17 – 19 | | | | |
| 115:13 – 24 | | | | |
| 116:9 – 12; 19 – 117:7 | | | | |
| 117:20 – 23 | | | | |
| 120:13 – 17 | | | | |
| 122:1 – 8 | | | | |
| 123:22 – 24 | | | | |
| 124:3 – 10; 15 – 19 | | | | |
| 136:17 – 22 | | | | |
| 138:15 – 139:1 | | | | |
| 140:1 – 13 | | | | |

14

# SCHEDULE G-1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC.,                    :
A Delaware Corporation                     :          Civil Action No. 06-55-GMS
                                           :
                    Plaintiff.             :
                                           :
v.                                         :
                                           :
DAVID C. WALDMANN,                         :
                                           :
                    Defendant.             :

---

## SCHEDULE G-1

## PLAINTIFF'S STATEMENT OF SPECIAL DAMAGES

The Plaintiff seeks recovery of the following special damages, in addition to punitive damages and its attorneys' fees and costs:

1.    Tesla Industries has suffered over $1,000,000.00 in damages including, but not limited to, lost sales and profits, lost production, delays in deliveries, and loss of normal growth opportunities.

2.    Additionally, Tesla Industries has lost the value of prototypes, drawings, technical data, and supplies at least in the estimated amount of $250,000.00.

3.    Tesla Industries has suffered lost employee and officer time and productivity in the amount of at least $500,000.00.

4.    Tesla Industries has also incurred substantial attorney fees in its effort to prevent defendants' misuse of its property.

# SCHEDULE G

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

        Plaintiff,

    v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

        Defendants.

Civil Action No. C.A. No.:  06-55-GMS

## SCHEDULE G

## STATEMENT OF SPECIAL DAMAGES

### DEFENDANT WALDMANN

Waldmann seek recovery of the following categories of damages:

1.      Attorneys' fees and costs as compensatory damages under Abuse of Process, Wage Payment Law, ERISA, Federal Electronic Communications Privacy Act, Delaware Electronic Surveillance and Interception of Communications Act and pursuant to 6 Del. C. § 2004 (Attorneys' Fees in Bad Faith Trade Secret Cases) in the amount to be determined as costs after trial.

3.      Compensatory damages for the harm to his reputation.

4.      Compensatory damages for emotional distress.

5.    Punitive damages for Abuse of Process, Delaware Electronic Surveillance and Interception of Communications Act., Intrusion Upon Seclusion and Wage Payment Law.

6.    Statutory damages under ERISA, the Federal Electronic Communications Privacy Act, Delaware Electronic Surveillance and Interception of Communications Act, and the Delaware Access to Personnel File Law.

7.    Civil Penalties of 10% of unpaid wages for each and every day that wages were not paid when due under the Wage Payment Law.

8.    Restitution for unpaid medical expenses under ERISA to be determined at trial.

# SCHEDULE H-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC.,   :
A Delaware Corporation    :  Civil Action No. 06-55-GMS
           :
    Plaintiff.    :
           :
v.           :
           :
DAVID C. WALDMANN,    :
           :
    Defendant.   :

---

## SCHEDULE H-1

## WAIVER OR ABANDONMENT OF CLAIMS OR DEFENSES

Pursuant to the settlement agreement between Plaintiff Tesla Industries, Inc. and

former Defendants Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools,

Inc., there are no claims pending against former Defendants Hollingsworth, Minnick and

NMT.

# SCHEDULE I-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

### SCHEDULE I-1

### PLAINTIFF TESLA INDUSTRIES, INC'S PRETRIAL BRIEF

Louis J. Rizzo (DE Bar No. 3374)
Thomas K. Schindler
Jason S. Garber
Reger Rizzo & Darnall LLP
Suite 202
1001 N. Jefferson Street
Wilmington, DE 19801
(302) 652-3611
(302) 652-3620 (fax)

Attorneys for Plaintiff
Tesla Industries, Inc.

## TABLE OF CONTENTS

PAGE

I.  NATURE OF THE CASE .................................................  1

    1.  The Parties .........................................................  1

        a.  Plaintiff Tesla Industries, Inc. .........................  1

        b.  Defendant David C. Waldmann .....................  1

    2.  The Pleadings ...................................................  3

        a.  The Verified Complaint .............................  3

        b.  Waldmann's Answer, Affirmative Defenses and Counterclaims .  4

II.  CONTESTED FACTS PLAINTIFF EXPECTS THE EVIDENCE TO ESTABLISH ............................................................  5

    1.  Waldmann's Misappropriation of Tesla's Confidential Information ......  5

    2.  Waldmann's Breach of His Contract ......................  6

III.  PLAINTIFFS THEORIES OF LIABILITY OR DEFENSE BASED ON THE ABOVE FACTS ......................................  7

    1.  Plaintiff's Liability Theories ...............................  7

        a.  Misappropriation of Trade Secrets ...............  7

        b.  Breach of Contract ..................................  7

        c.  Conversion ............................................  8

        d.  Conspiracy ............................................  8

    2.  Defenses to Waldmann's Counterclaims ..................  8

        a.  Wage Payment Law Claims .......................  8

        b.  Breach of Contract ..................................  9

        c.  Unlawful Discharge ................................  10

|   |   | d. | ERISA ................................................................ | 10 |
|   |   | e. | Access to Waldmann's E-Mails and Other Information .......... | 10 |
|   |   | f. | Conversion ........................................................... | 10 |
|   |   | g. | Violation of 19 Del.C.§ 732 |   |
|   |   |   | (Right to Inspect Personnel Files Act) ...........................…......... | 11 |
|   |   | h. | Retaliation Claims ...................................…............. | 11 |
| IV. | | | **PLAINITFFS' THEORIES OF DAMAGES AND OTHER RELIEF** ...... | 11 |
|   | 1. | | Damages ..............................................................…..... | 11 |
|   | 2. | | Attorneys Fees ......................................................…... | 11 |
|   | 3. | | Punitive Damages and Permanent Injunction ............................... | 12 |
| V. | | | **POSSIBLE MOTIONS FOR DIRECTED VERDICT** ......................... | 12 |

## I.    NATURE OF THE CASE

1.    <u>The Parties</u>

    a.    Plaintiff Tesla Industries, Inc.

Tesla Industries, Inc. ("Tesla" or "Plaintiff") is a corporation having its principal and only place of business in New Castle, Delaware. Tesla develops and manufactures products for the United States Armed Forces. More specifically, the vast majority of Tesla's commercial product line concerns power equipment for military vehicles, including: (1) electrical connectors; (2) cables; (3) battery packs; and (4) ground power units. Tesla also develops specialty products for the military.

    b.    Defendant David C. Waldmann

David C. Waldmann ("Waldmann" or "Defendant") was hired by Tesla as at-will employee in its sales department in December 2002. As a salesman, Waldmann's duties were to promote and sell Tesla products to the Armed Forces of the United States. In this position, Waldmann had a defined sales territory and a set list of customers. When hired, Waldmann signed an "Agreement of Non-Disclosure" (the "Agreement") as a condition of his employment. The Agreement alerted Waldmann that he would receive and would have access to information vital to Tesla's business, including "certain identity of customers, products, and technical and manufacturing information" that was "Secret and Confidential business information" of Tesla. The Agreement cautioned that such information was "Secret and Confidential business information" of Tesla and that if not kept secret and confidential "may cause damage to Tesla."

The Agreement expressly prohibited Waldmann from providing information to others or competing with Tesla in the power products market place. Under the

Agreement, he was not to "assist, support, or provide information to others, and removing any information about Tesla's products, customers, or Tesla's business "without written permission from the President of Tesla Industries." The Agreement further alerted Waldmann that if he breached any of these contractual obligations, he would be liable for all damages arising from that breach, "plus reasonable attorney fees and cost(s) incurred in litigation arising from the breach of this Agreement."

Also as a condition of and prior to the start of his employment, Waldmann signed an "Employee Awareness Agreement" stating that "any object used in or for development or manufacture of Tesla products," including, but not limited to, "customer data," "customer information," "documentation," and "sales information", was considered "proprietary and at no time shall be removed from Tesla Industries, Inc. without written permission from only the President of Tesla (Mr. David M. Masilotti)". Waldmann signed the Employee Awareness Agreement and therefore acknowledged and agreed that "removal of such items shall be considered theft of proprietary information."

Similarly, in a separate Interoffice Memorandum agreed to and signed by Waldmann prior to the beginning of his employment, Waldmann further acknowledged his receipt and understanding of Tesla's policy and procedure regarding access to Tesla's technologies. The Interoffice Memorandum informed Waldmann that "**AT NO TIME** are any documents, floppy disks, CAD drawings, e-mails, electronic parts or any Tesla properties; to be REMOVED from the Tesla building without the approval of the President of Tesla (**if not sure, ask?**)." (emphasis in original).

In 2005, Waldmann began sending Tesla's proprietary and confidential information to Lyndol Hollingsworth, Charles Minnick, and New Millenium Tools, Inc.

for their collective use in a new business venture. Among the items Waldmann sent to

Hollingsworth, et al., are Tesla prototypes, photographs of machinery and products,

schematics, and CAD drawings. Waldmann also forwarded to his personal e-mail

account various customer contact lists.

When Waldmann's activities were discovered, he was suspended with pay at first,

and finally terminated, effective December 31, 2005.

    2.    The Pleadings

        a.    The Verified Complaint

The Verified Complaint (DI 2) contains six counts. Count I alleges that

Waldmann violated the Uniform Trade Secrets Act ("UTSA"), as set forth in 6 Del. C.

§2001(4) (Complaint ¶¶ 32-33). The afore-mentioned Agreement expressly informed

Waldmann that Tesla's business and technical information was to remain secret and not

disclosed. Waldmann utilized or attempted to utilize Tesla's proprietary and confidential

information, including customer lists, product information, and prototypes for his benefit

and for the benefit of Hollingsworth, Minnick, and NMT. Throughout Waldmann's

employment, Tesla maintained information concerning its products, actual and those

under development, in strict confidence. Tesla took reasonable measures to maintain the

confidentiality of that information (Complaint ¶¶ 10-13).

Count III alleges that Waldmann breached his employment agreements

(referenced above) which explicitly prohibited misuse of Tesla's information, removal of

Tesla property from Tesla's facility, and competing with Tesla. Count IV alleges

conversion of Tesla's property by Waldmann. Waldmann violated his employment

agreements by disclosing prototypes and other information concerning products under development by Tesla, as well as other proprietary and confidential information.

Count V alleges that Waldmann tortiously interfered with prospective contractual relations by usurping an opportunity for Tesla to sell battery packs to a prospective customer by redirecting the prospective customer to Hollingsworth, Minnick and NMT. Count VI alleges that Waldmann conspired with Hollingsworth, Minnick and NMT to deprive Tesla of its proprietary confidential information and products, further divert Tesla customers to Waldmann's new business venture, and otherwise, convert Tesla information to Waldmann's benefit.

The Complaint seeks damages and injunctive relief against Waldmann prohibiting him from utilizing Tesla's confidential information. Tesla also seeks an award of attorney's fees, as contemplated by UTSA and the Agreement between Tesla and Waldmann.

     b.  Waldmann's Answer, Affirmative Defenses and Counterclaims

In his Answer (¶ 11) (DI 26), Waldmann admits that he signed the employment agreements specified above that contained prohibitions on the misuse and disclosure of Tesla information and competition against Tesla and the obligation to pay attorney's fees and costs incurred in the litigation stemming from the breach of these employment agreements. Waldmann further admits to shipping a "NATO receptacle belonging to Plaintiff [Tesla] to Hollingsworth." The NATO receptacle is one of the items removed by Waldmann and sent to Hollingsworth in direct contravention of his employment agreements.

Waldmann asserted seven affirmative defenses, including, failure to state a claim, waiver, estoppel, laches, unclean hands, statute of limitations, and failure to mitigate damages. In addition, Waldmann alleged eleven (11) counterclaims against Tesla, including violations of the Wage Payment Law, ERISA, Federal Electronic Communications Privacy Act, Delaware Electronic Surveillance and Interception of Communications Act, Intrusion Upon Seclusion, Conversion, and Delaware Personnel File Inspection Law, as well as Breach of Contract and Abuse of Process. The counterclaims are discussed below.

## II.    CONTESTED FACTS PLAINTIFF EXPECTS THE EVIDENCE TO ESTABLISH

1.    Waldmann's Misappropriation of Tesla's Confidential Information

By virtue of his employment agreements, Waldmann was well aware that he had access to Tesla's confidential information. Waldmann knew that Tesla's drawings, manufacturing materials, processes, components, devices, prototypes, purchasing information, vendor names, customer data, and other items were confidential and proprietary and that removal of such items constituted theft of proprietary information. Nevertheless, despite having acknowledged in writing the proprietary nature of such items, Waldmann disclosed Tesla's proprietary and confidential information to Hollingsworth, Minnick and NMT.

When Waldmann was hired by Tesla in December 2002, Waldmann had little or no experience or knowledge of selling products to the military. Similarly, Waldmann had little or no customer contacts. Details of potential military customers' identification are not known outside the military, particularly so since 9/11. Throughout his employment, Tesla provided Waldmann with lists of military customers and contacts generated at

considerable time, effort, and cost to Tesla. Waldmann also generated additional customer contacts using the good will and financial resources of Tesla.

Additionally, Waldmann sent detailed customer lists to his home computer on at least two occasions in 2005 in direct violation of his employment agreements. The information at issue on these customer lists would not be available to anyone other than military contractors and personnel. Moreover, some of the customer lists at issue concerned information particular to Tesla and Tesla's products. Waldmann obtained these customer lists and related information solely by virtue of his employment at Tesla. For the latter half of 2005 and until his termination, Waldmann used Tesla's customer contact information and lists to promote products for Waldmann's new business venture rather than Tesla products.

By the time he was suspended, Waldmann had disclosed to Hollingsworth, Minnick and NMT and/or impermissibly removed from Tesla various drawings, prototypes, manufacturing materials, purchasing information, vendor names, and customer lists, including specific contact information. These items are or contain some of Tesla's most sensitive proprietary and confidential information.

2.    Waldmann's Breach of His Contract

Waldmann's actions on behalf of his new business venture, Hollingsworth, Minnick, and NMT breached his contract in several respects. Waldmann breached the express provisions of the Agreement for Non-Disclosure and the Confidentiality Agreement, as is set forth in more detail above. Waldmann also breached his employment agreements by failing to service his existing Tesla accounts and territories while instead focusing on promoting his new business venture, as well as the business

interests of Hollingsworth, Minnick, and NMT.  From June 2005-November 2005,

Waldmann spent significant time promoting and marketing the DC Impact Wrench and

Lug Wrench, and possibly other products not made by Tesla, using Tesla's contacts, good

will, and even trading off Tesla's reputation to do so.  He would even schedule visits to

various locations to exhibit the wrenches while he was supposed to be promoting and

selling Tesla products.  All of the above violated the fiduciary duties Waldmann owed to

Tesla as well.

**III.    PLAINTIFFS THEORIES OF LIABILITY OR DEFENSE BASED ON THE ABOVE FACTS**

      1.    <u>Plaintiff's Liability Theories</u>

          a.    Misappropriation of Trade Secrets

The Delaware UTSA (6 Del.C. § 2003(a)) provides that a "complainant is entitled

to recover damages for misappropriation of [trade secrets]."  Damages can include both

the actual loss caused by the misappropriation and the unjust enrichment caused by

misappropriation that is not taken into account when computing actual loss."  Waldmann

misappropriated numerous Tesla trade secrets by disclosing some or all of them to

Hollingsworth, Minnick and NMT, as well as removing some or all of them from Tesla's

facility.  Waldmann intended for Hollingsworth, Minnick and NMT to benefit, as well as

himself, to Tesla's detriment, from the disclosure and removal of these trade secrets.

          b.    Breach of Contract

Waldmann materially breached his employment agreements numerous times

throughout 2005.  As stated above, Waldmann misappropriated, disclosed and removed

Tesla's proprietary and confidential information.  For the last half of 2005, Waldmann

virtually ignored sales of Tesla products and instead focused on the promotion, exhibition

and sales of products belonging to Hollingsworth, Minnick and NMT, and thus, failed to

devote his full-time business efforts to Tesla.  While focusing on non-Tesla products,

Waldmann misused Tesla's customer lists and contacts in an effort to create potential

opportunities for his new business venture, as well as Hollingsworth and Minnick.

Waldmann removed, converted or attempted to convert Tesla's prototypes, information,

and business opportunities for his own benefit, as well as for Hollingsworth, Minnick and

NMT.  All of Waldmann's acts set forth above breached the express and implied terms of

his employment agreements.

        c.      Conversion

Waldmann had access to certain proprietary and confidential information by

virtue of his employment at Tesla.  Waldmann impermissibly misappropriated, disclosed

and removed Tesla's proprietary and confidential information to advance his interests

over Tesla's.

        d.      Conspiracy

Waldmann conspired with Hollingsworth, Minnick and NMT to use Tesla's good

will, trade secrets and other confidential information to develop contacts with prospective

customers.  Tesla' technology was misappropriated by Waldmann in furtherance of this

conspiracy.

      2.      Defenses to Waldmann's Counterclaims

        a.      Wage Payment Law Claims

Waldmann alleges that Tesla violated the Wage Payment and Collection Act

("WPCA") (19 DelCode §§ 1101, et seq.) by: (1) delaying payment of salary for the

period from November 29, 2005 through December 31, 2005; (2) failing to pay wages

from January 1, 2006 through January 28, 2006; and (3) failure to pay commissions on sales for the third an fourth quarters 2005.

The delay in paying Waldmann's salary from November 29, 2005 through December 31, 2005 can be attributed to Waldmann's failure to provide the correct mailing address to Tesla's HR department. Once that issued was resolved, Plaintiff was paid accordingly. As for Tesla's alleged failure to pay wages from January 1, 2006 through January 28, 2006, Waldmann was terminated on or about January 28, 2006, effective January 1, 2006.

With respect to the failure to pay bonuses on sales for the third and fourth quarters, payment of bonuses were reasonably withheld by Tesla because the WPCA does not apply when a party has reasonable grounds to dispute a claim arising under the employment at issue. See Delaware Bay v. Swier, 900 A.2d 646, 648 (Del Super. 2005). Tesla only pays bonuses on sales which can be attributed to the effort of the commission claimant. It was determined that sales within Waldmann's territory were not due to Waldmann's efforts. Moreover, following a review of Waldmann's commission reports, several commission claims could not be verified and others appeared to be overpayments and therefore, Waldmann was not entitled to those commissions. Finally, Waldmann's breach of the fiduciary duties owed to Tesla, as well as breach of his employment agreements, also substantiate reasonable grounds for dispute.

        b.     Breach of Contract

Waldmann was an at-will employee. Tesla had more than ample reason to discharge Waldmann following his egregious breaches of his employment agreements.

   c. Unlawful Discharge

The penalties under 19 Del.C. § 1112 sought by Waldmann are not recoverable by an employee in a civil action.

   d. ERISA

Waldmann asserts that Tesla failed to continue health insurance coverage and benefits under COBRA for he and his family. However, when an employee is discharged for gross misconduct, an employer has no duty to offer COBRA benefits.

   e. Access to Waldmann's E-Mails and Other Information

Waldmann alleges that Tesla improperly accessed Waldmann's military e-mail account. Only military personnel and vendors can obtain an army.mil account. Waldmann was only able to obtain this account by virtue of his employment at Tesla, thereby giving Tesla the right to access that account based on the employment agreements, the technology use and privacy policy, and employee manual. This Court's Temporary Restraining Order (DI 20) also specifically authorized Tesla's access to Waldmann's e-mail and other accounts.

In any event, there has not been any interception of e-mail. The retrieval of the e-mail messages at issue did not occur contemporaneously with their transmission  The section of the Electronic Communications Privacy Act cited by Waldmann in his Counterclaims do not apply to searches of e-mail in storage.

   f. Conversion

Waldmann alleges Tesla converted certain personal property that Tesla delayed for two weeks in returning to Waldmann. The delay is attributable to Waldmann, not Tesla.

g.    Violation of 19 Del.C.§ 732 (Right to Inspect Personnel Files Act)

There is no private cause of action to recover damages permitted under this statute.

h.    Retaliation Claims

Waldmann's claims that he was terminated because of a claim to the Delaware Department of Labor regarding denial of access to his personnel file does not give rise to a private cause of action. His retaliation claim under 10 U.S.C. § 2409 similarly does not create a private cause of action for damages.

## IV.    PLAINITFFS' THEORIES OF DAMAGES AND OTHER RELIEF

1.    Damages

Waldmann's actions in advancing his own interests, as well as Hollingsworth, Minnick and NMT, and inactions in servicing Tesla's accounts and selling Tesla's products resulted in a loss in excess of $1 million in projected earnings. Such losses are recoverable for breach of contract and theft of trade secrets (6 Del.C. § 2003). Tesla has also lost the value of prototypes, drawings, technical data, and supplies at least in the estimated amount of $250,000. Additionally, Tesla has suffered lost employee and officer time and productivity in the amount of at least $500,000.

2.    Attorneys Fees

Under the UTSA, attorney's fees are recoverable if "willful and malicious misappropriation exists." Waldmann's actions evidence such willful and malicious behavior to warrant such an award. Moreover, the Agreement signed by Waldmann provided that Waldmann would be responsible for all attorneys fees and costs incurred in

the litigation arising from the breach of the Agreement.  For both reasons, Waldmann

should be liable to Tesla for Tesla's attorneys fees and costs.

      3.    <u>Punitive Damages and Permanent Injunction</u>

      Plaintiff seeks an award of punitive damages against Waldmann for his unlawful

and willful actions.  Plaintiff also requests that the Court enter a permanent injunction

against Waldmann from use or disclosure of Tesla's confidential and proprietary

information, including, without limitation, contact with any Tesla customer known to

Waldmann during his employment by Tesla.

## V.    POSSIBLE MOTIONS FOR DIRECTED VERDICT

      Tesla incorporates by reference its Contested Issues of Law set forth in Exhibit B

to the Pretrial Order.   These issues are candidates for directed verdict.

                           */s/ Louis J. Rizzo*
                           Louis J. Rizzo (DE Bar No. 3374)
                           Thomas K. Schindler
                           Jason S. Garber
                           Reger Rizzo & Darnall LLP
                           Suite 202
                           1001 N. Jefferson Street
                           Wilmington, DE 19801
                           (302) 652-3611
                           (302) 652-3620 (fax)

Dated:  May 12, 2008              Attorneys for Plaintiff Tesla Industries, Inc.

# TRIAL BRIEF OF DEFENDANT DAVID C. WALDMANN

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware    :
Corporation,    :
   :
                Plaintiff,    :    C.A. No.06-55-GMS
   :
       v.    :
   :
DAVID C. WALDMANN,    :
LYNDOL W. HOLLINGSWORTH,    :
CHARLES MINNICK a/k/a CHUCK MINNICK, and    :
NEW MILLENNIUM TOOLS, INC., an Oregon    :
Corporation,    :
   :    JURY TRIAL DEMANDED
                Defendants.    :
   :

## TRIAL BRIEF OF DEFENDANT DAVID C. WALDMANN

John D. Demmy, Esquire (#2802)
(DE Bar No. 2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 425-3308
Fax: (610) 371-8515
E-mail: jdd@stevenslee.com

John A. Adams, Esquire
Susanin, Widman & Brennan, PC
455 South Gulph Rd., Ste. 240
King of Prussia, PA 19406

Attorneys for David C. Waldmann

Date: May 12, 2008

## TRIAL BRIEF OF DEFENDANT DAVID C. WALDMANN

Defendant David C. Waldmann ("Waldmann"), by his attorneys, hereby submits the following trial brief as Supplement "I" to the Pretrial Order:

## I.   NATURE OF THE CASE

This case is a simple employment dispute between Defendant Waldmann and Plaintiff Tesla Industries, Inc. ("Tesla") that has mushroomed into allegations by Tesla that Waldmann stole trade secrets. Tesla then dragged Defendants Charles Minnick, Lyndol Hollingsworth and the small company Minnick started in October 2005, New Millennium Tools, Inc. ("NMT") (collectively the "NMT Defendants") into the dispute by suing them along with Waldmann.

Hollingsworth, while employed by D.C. Power Equipment, initially contacted Tesla in the Summer of 2005 to purchase Tesla products for use with a power tool, a (DC) impact wrench that he and Minnick were attempting to develop for military applications. Tesla has never designed, manufactured or sold an impact wrench. The products that Minnick and Hollingsworth sought to buy from Tesla were standardized female NATO receptacles, a power-coupling device manufactured to NATO specifications, which are used in every United States, NATO and allied military vehicle.

When Hollingsworth initially contacted Tesla, Hollingsworth was put into contact with Waldmann, who was, at the time, a salesman for Tesla. Waldmann proceeded to assist Hollingsworth and Minnick with the development of the impact wrench in hopes of generating sales of parts which they would need to make the impact wrench.

Waldmann reported his contacts with Minnick and Hollingsworth to his superiors at Tesla. He logged his contacts in written "call reports" and "travel itineraries." In the ordinary

2

course of his duties, he showed D.C. Power Equipment's impact wrench to his co-workers and superiors, he engaged in a least one videotaped conversation with Tesla President, David Masilotti, regarding collaborating on the impact wrench project and he stored the prototype D.C. Power Equipment prototype in plain sight at Tesla for two months.

When D.C. Power Equipment decided to shelf the development of the impact wrench, Minnick and Hollingsworth decided to form a new company, NMT, to manufacture their own impact wrench and other tools, and continued to communicate with Waldmann to purchase Tesla products for use with said tools.

In October 2005, Waldmann requested commissions for the Third Quarter of 2005, which, to date, have never been paid. Shortly thereafter, Waldmann was accused by Tesla of wrongdoing relating to an e-mail he was sent by a customer which contained drawings. Waldmann showed Tesla that he had forwarded the e-mail to Tesla's President. Apparently, thereafter, Tesla began an investigation into Waldmann's activities and they illegally accessed his non-Tesla e-mail accounts. During said investigation, Tesla discovered that he was considering an offer of employment by NMT.

On November 28, 2005, Tesla suspended Waldmann with pay – presumably to ensure his cooperation in their ongoing investigation. Notwithstanding the undisputed fact that he was suspended with pay, Tesla failed to pay him his wages. Waldmann complained to Tesla and eventually Waldmann received his pay for December 2005. At that time, in accordance Delaware law, Waldmann requested access to his personnel file.

On January 23, 2007, Waldmann complained to the Delaware Department of Labor that Tesla had not paid him wages for January, that he had not been paid his Third or Fourth Quarter

3

2005 Commissions, and that Tesla had not provided him access to his personnel file. It is undisputed that on January 23, 2007, an agent from the Department of Labor called Tesla's President concerning the foregoing. In response thereto, Waldmann received a copy of part of his personnel file, via federal express on January 24, 2007. In retaliation for Waldmann's complaint to the Department of Labor, Tesla filed the instant action on January 27, 2007, fired him retroactively, and refused to pay him his wages and commissions. In the Fall of 2006, approximately ten months after Tesla brought suit, NMT hired Waldmann to help market their impact wrench, called the LUGMASTER™.

## II.     CONTESTED FACTS THAT DEFENDANT WALDMANN EXPECTS TO ESTABLISH AT TRIAL

The contested facts are set forth in an attachment to the Final Pretrial Order, in accordance with the standing orders.

## III.     THEORY OF LIABILITY OR DEFENSE

### A.     Tesla's Trade Secrets Claim

The contours of Tesla's trade secrets claims have been a moving target throughout discovery. To date, Waldmann cannot be certain of the nature or basis for Tesla's claims of trade secrets. There are, however, apparently two product groups and customer lists that are included among Tesla's allegations. Because the product groups and customer lists represent public information, Tesla's claims must fail.

The principal Tesla product group at issue are standardized NATO Connectors, referred to interchangeably by Tesla as a plug or receptacle. NATO Connectors are commercially available products, manufactured to NATO specifications by a variety of manufacturers and advertised in detail on the Internet. There are of these standardized connectors and they have

4

been available on the market for decades.[1]  It is undisputed that Waldmann sent Hollingsworth

and Minnick Tesla's version of the NATO Plug and Receptacles.  It is a universally recognized

principle of trade secrets law that information readily ascertainable from an examination of a

product on public sale or display is not a trade secret.[2]  Here, Tesla is asserting the existence of

trade secrets in products it and other companies sold before the alleged misappropriation

occurred.

    Furthermore, Tesla's other claims appear to relate to power storage devices (battery).

However, there is no colorable evidence that Defendant Waldmann ever transmitted information

concerning these batteries to the NMT Defendants.

    In addition, Tesla claims that Waldmann stole its customers' lists.  This allegation is

entirely without legal basis because Tesla's Customer List is not a trade secret.  Tesla is a

government contractor to the United States military.  Until recently, it posted the military units to

which it sold its products on its Internet site.  Moreover, as a public government contractor, all of

Tesla's sales to the military are public knowledge.  The lists of its sales are publicly available on

the Internet.  Inputting Tesla's publicly available contractor identifier (called a "Cage Code") into

the Defense Logistic Agency's Internet site reveals a complete list of Tesla's contracts.  *See*

https://progate.daps.dla.mil/home/.  The Army units to which Tesla's sells are also all listed on

---

[1] Information that is in the public domain cannot be appropriated by a party as its proprietary trade secret.  *Store Tech. Corp. v. Custom Hardware Eng'g. & Consulting, Inc.*, 421 F.3d 1307, 1319 (Fed. Cir. 2005)

[2] *See, e.g.*, Restatement (Third) of Unfair Competition § 39 (Definition of Trade Secret) Cmt. f (1995); *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 604 (7th Cir. 2001) (use of publicly available resin did not implicate trade secrets); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 750 (2d Cir. 1998) (shape of bottles not trade secret because the bottles were readily observable in the marketplace); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004) (stent and blueprint of its design not a trade secrets since the product was already public and on the market*); Permagrain Prod., Inc. v. U.S. Mat & Rubber Co., Inc.*, 489 F. Supp. 108, 112 (E.D. Pa. 1980) (technology employed in manufacturing vinyl-laminated wood floor covering was not a trade secret because, *inter alia*, a sample could be dissected to reveal its component parts).

5

the Internet. (*See, e.g.*, http://www.amc.army.mil/amc/rda/rda-ap/aqnnews.html (link for "Army

DODAAC/Location Cross Reference.).)  Finally, copies of Tesla's government contracts have

been obtained through Freedom of Information Act requests.  Finally, Waldmann did not take

Tesla's Customer List when he was terminated, but instead, used his general knowledge and

publicly available information to contact potential customers for NMT.[3]

Finally, Tesla's claims must fail because it has unclean hands. *See generally, Honeywell

Int'l, Inc. v. Universal Avionics Sys. Corp., Inc.*, 343 F. Supp. 2d 272, 321 (D. Del. 2004)

(examining elements of this affirmative defense).  There has been a panoply of misconduct by

Tesla's agents in the pursuit of its claims, including, but is not limited to, secret tape recordings

by Tesla employees in violation of Pennsylvania law; unlawful demands for administration of a

lie detector test; and interception of stored electronic mail communications in violation of federal

law, falsifying documentary evidence, and tricking NMT into entering into a Stipulated

Restraining Order.

### B.    Tesla's Claim of Breach of Contract

While Waldmann admits that he signed a Non-Disclosure Agreement and a Policy on

Access to Tesla's Technical Resources,[4] Tesla claims that Waldmann violated these agreements

by the same conduct alleged in Tesla's Count I.  Accordingly, this claim is preempted by the

Delaware Trade Secrets Act. *See* 6 Del. C. § 2007(a).  Moreover, even if it is not preempted,

---

[3] The party claiming a customer list as a trade secret has the burden of establishing the list's status as a trade secret. *See Bradbury Co., Inc. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1225 (D. Kan. 2006).  [A customer list] does not qualify as a protected trade secret . . . [where] it is reproducible from sources already in the public domain. *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *18 (Del. Ch. Oct. 23, 2002).  *See also Tao of Sys. Integration, Inc. v. Analytical Serv. & Materials, Inc.*, 330 F. Supp. 2d 668, 678 (E.D. Va. 2004) (information obtainable by Freedom of Information Act requests not a trade secret); *American Hearing Aid Associates, Inc. v. GN ReSound North Am.* 309 F. Supp. 2d 694, 704 (E.D. Pa. 2004) (customer lists reproducible from Internet information not a trade secret); *Panther Sys. III, Ltd. v. Panther Computer Sys., Inc.*, 783 F. Supp. 53, 67-70 (E.D.N.Y. 1991) (identity of public entities that solicit public bids are not trade secrets).

the evidence will show that Waldmann did not breach the agreements. Furthermore, the agreements were drafted by Tesla, Tesla had superior bargaining power, and they were given to Waldmann without negotiations. In addition, the terms were not explained to Waldmann, the terms were not specific as well as ambiguous and confusing, and Tesla failed to train Waldmann on its expectations. Notwithstanding any terms of the agreements, by its acts, Tesla also modified the agreements and/or interfered with Waldmann's ability to comply with the agreements. Finally, Tesla has not been damaged by any alleged breach of the agreements by Waldmann.

### C.    Tesla's Claim of Conversion

Tesla claims that Waldmann converted a small piece of scrap nylon cord which Waldmann gave to one of Tesla's military clients. Tesla also claims that Waldmann converted Tesla trade secrets based on the same conduct set forth in Count I. Accordingly, this claim is preempted by the Delaware Trade Secrets Act. *See* 6 Del. C. § 2007(a). Moreover, even if it is not preempted, the evidence will show that Waldmann did not convert any property belonging to Tesla for his own personal benefit.

### D.    Tesla's Claim of Tortious Interference with Prospective Contractual Relations

Tesla claims that Waldmann interfered with a prospective contractual relationship. During the aftermath of hurricane Katrina, an agent from FEMA contacted Tesla about immediately supplying tiny batteries. Tesla sent an e-mail to one of the NMT Defendants providing them with contact information with regard to the agent to see if NMT Defendants could supply the batteries to FEMA. Waldmann told the NMT Defendant that FEMA might be

---

[4] Waldmann disputes whether this Policy forms a contract.

interested in the DC Impact wrench. It is undisputed that Tesla does not make the tiny battery, the DC Impact Wrench, or any similar product. The NMT Defendant never sold the tiny battery or the Impact Wrench to FEMA. Accordingly, this claim is without merit.

### E.    Tesla's Civil Conspiracy Claim

Tesla's claim for civil conspiracy fails because factually there was no conspiracy. Moreover, civil conspiracy is preempted by 6 Del. C. § 2007. *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002). In addition, civil conspiracy is not an independent cause of action in Delaware. *See Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del 2006).

### F.    Waldmann's Claims of Violation of the Delaware Wage Payment Law

Waldmann claims that Tesla failed to pay him his wages and commission as required by the Delaware Wage Payment Law. It is undisputed that Waldmann was earning a salary of $3,076.92 bi-weekly, that in addition to his salary he was to be paid commissions, that he was not paid Third and Fourth Quarter 2005 Commissions, and that he was not paid his salary from January 1 to January 28, 2006. It is also undisputed that on November 29, 2005, Waldmann was suspended from his position with Tesla with pay and that he was terminated on January 28, 2006 (retroactive to January 1, 2006) after making a complaint to the Delaware Department of Labor about Tesla's failure to pay him his wages and commissions. The Delaware Department of Labor notified Tesla of Waldmann's complaint on January 23, 2006.

Tesla initially claims that they do not have to pay his wages and commissions because of the damages that Waldmann caused Tesla as set forth in Tesla's Complaint. Notwithstanding Tesla's position, 19 Del.C. §1107 states that "no employer may withhold or divert any portion of an employee's wages unless: (1) It is required or empowered to do so by state or federal law; (2) The deductions are for medical, surgical or hospital care or service, without financial benefit to

8

the employer, and are openly, clearly and in due course recorded in the employers' books; or (3) The employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee." Tesla now claims that the pay and commissions were not earned.

In Count III, Mr. Waldmann claims that Tesla terminated his employment because he filed a claim for unpaid commissions and salary with the Delaware Department of Labor as set forth above. Delaware's wage payment law also prohibits an employer from retaliating against an employee for filing a complaint with the Department of Labor. Retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor. On January 28, 2006, Tesla, in retaliation for Waldmann's complaint to the Department of Labor, terminated Waldmann's employment retroactive to January 1, 2006.

## G. ERISA

As an employee of Tesla, Waldmann had group health and dental medical coverage. At the time of Waldmann's termination of employment on January 28, 2006, Waldmann was covered by Tesla's group health insurance policy. Waldmann claims, and Tesla does not dispute, that Tesla did not allow him to elect medical and dental continuation coverage under COBRA.

Tesla claims that it did not have to provide continuation coverage because Waldmann was terminated for "gross misconduct". The issue of whether Waldmann was terminated for "gross misconduct" is to be decided by the Judge.

9

### H.    Waldmann's Personnel File Claim

In Count IX, Mr. Waldmann claims that, after repeatedly requesting such, Tesla refused to allow him to see his personnel file and refused to allow him to put an explanatory comment in his personnel file as required by 19 Del. C. §§ 730, *et seq*. In addition, Waldmann alleges that Tesla retaliated against him because he reported Tesla's violation of Delaware law, 19 Del. C. §§ 730, *et seq*, to the Delaware Department of Labor. Waldmann reported Tesla's refusal to the Delaware Department of Labor at the same time he reported Tesla's failure to pay his wages and commissions.

### I.    Waldmann's Federal & State Wire Communications Claims

Waldmann alleges in Count V and VI that Tesla violated the Federal Electronic Communications Privacy Act, 18 U.S.C. §2510, *et. seq*, as well as Delaware's Electronic Surveillance and Interception of Communications Act, 11 Del. C. §2401, *et. seq.* These Acts makes it illegal to use wire communications to intercept or access electronically stored or electronically transmitted information that is not readily accessible to the general public. For purposes of Waldmann's claims, the only difference between the acts is the penalties and the fact that the federal statute requires the crossing of state lines. Waldmann alleges that Tesla Industries, through the acts of its agents, violated the Electronic Communications Privacy Act by using Mr. Waldmann's passwords to access Mr. Waldmann's private email account and mobile telephone account and other electronically stored or transmitted accounts without Mr. Waldmann's permission.

10

### J.    Invasion of Privacy/Intrusion Upon Seclusion

Mr. Waldmann alleges in Count VII that Tesla invaded his privacy. Specifically, Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, has intruded on Mr. Waldmann's private affairs by accessing his private e-mail account and mobile telephone account as set forth in the previous section.

### K.    Waldmann's Abuse of Process Claim

Waldmann claims that Tesla abused the legal process in order to threaten, retaliate, intimidate, discredit, silence and/or vex him. Waldmann incorporates by reference this section from NMT's Trial Brief. In addition, Waldmann adds that Tesla instituted legal process including, but not limited to, Summons and a Preliminary Injunction, because he had complained to the Department of Labor about the non-payment of wages and about access to his personnel file. Tesla also wanted to prevent Waldmann from talking to Tesla's customers and/or discredit Waldmann to Tesla's customers because Waldmann was aware of and told one or more customers about a defect in one of Tesla's products.

### IV.    DEFENDANT WALDMANN'S THEORY OF DAMAGES AND OTHER RELIEF IN THE EVENT LIABILITY IS ESTABLISHED

### A.    Tesla's Claims

Waldmann contests the factual foundation of Tesla's damages claims in addition to their legal availability. Motions in Limine have been filed to exclude certain categories of damages and a *Daubert* motion seeking to exclude the unreliable testimony of Tesla's proposed damages expert and the lay damages testimony of its President, Mr. Masilotti. *See* D.I. 170 and 171.

A plaintiff must prove its damages with a reasonable degree of precision. *Kronenberg v. Katz*, 872 A.2d 568, 609-10 (Del Ch. 2004). Speculative damages are not recoverable.

*Chemipal Ltd. v. Slim-Fast Nutritional Foods, Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004). With no admissible damages documents and no legally competent damages testimony, Tesla's damages claims fail. Furthermore, Waldmann contends that Tesla has not, and cannot, establish proximate causation for its claimed lost sales, lost production, delays in deliveries, and loss of normal growth opportunities. *See Deville Court Apartments, L.P. v. Fed. Home Loan Mortgage Corp.*, 39 F. Supp. 2d 428, 432-33 (D. Del. 1999).

Moreover, Tesla's damages claims include categories of damages that are not even recoverable. For example, Tesla claims damages for the times its President and employees have spent dealing with this litigation and for subsequent security measures after Waldmann was fired. Costs incurred for remedial measures in a trade secrets case involving a departing employee, however, are not available as damages. *See Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894, 932-33 (10th Cir. 1975).

**B.    Waldmann's Claims**

**1.    Violation of the Delaware Wage Payment Law**

Waldmann alleges that Tesla's failure to timely pay him his salary violated Delaware's Wage Payment and Collection Act and entitles him to his pay and liquidated damages from Tesla at the rate of approximately $307.69 for each and every day, excluding Saturdays, Sundays and Legal Holidays, in which the salary was unpaid after the respective regular paydays.

Waldmann further alleges that Tesla's failure to pay him commissions for the third and fourth quarters of 2005 entitles him to said commissions and liquidated damages from Tesla for the unpaid commissions at the rate of approximately $1,480 per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, from on or about middle October 2005 to on

12

or about middle January 2006, and liquidated damages at the rate of approximately $3,000 per day for each and every day, excluding Saturdays, Sundays and Legal Holidays, until Tesla pays said commissions to Waldmann.

### 2.    Waldmann's Federal & State Wire Communications Claims

Waldmann alleges that Tesla's violations of the Federal Electronic Communications Privacy Act were outrageous and unconscionable, and done with actual malice and/or accompanied by a wanton and willful disregard for his rights. Accordingly, Waldmann requests actual damages to be determined at trial, statutory damages, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

Waldmann alleges that Tesla's violations of Delaware's Electronic Surveillance and Interception of Communications Act, 11 Del. C. §2401, *et. seq.* were outrageous and unconscionable and done with actual malice and/or accompanied by a wanton and willful disregard for his rights. The federal statute authorizes an award of statutory damages of not less than $100 and not more than $10,000 for each and every violation. The state statute authorizes an award of statutory damages of not less than $100 and not more than $1,000 plus punitive damages.[5]

### 3.    Intrusion Upon Seclusion/Privacy

Mr. Waldman contends that Tesla's intrusion upon his solitude and seclusion was outrageous and unconscionable, was done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann and would be highly offensive to a reasonable

---

[5] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

13

person.    Accordingly, Waldmann requests actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest, and such other legal relief as this court deems appropriate including but not limited to all reasonable attorneys' fees and costs.

### 4.    Abuse of the Legal Process

Waldmann contends that Tesla's actions in abusing the legal process were outrageous and unconscionable, and were done with actual malice and/or accompanied by a wanton and willful disregard for the rights of Waldmann.  Accordingly, Waldmann requests actual damages to be determined at trial, compensatory damages to be determined at trial, punitive damages, interest and such other legal relief as this Court deems appropriate including, but not limited to, all reasonable attorneys' fees and costs.

### 5.    Waldmann's Claim for Access to Personnel File

Pursuant to 19 Del. C. §§ 730 *et seq*, Tesla is liable for damages to Waldmann of not less than $1,000 and not more than $5,000 for each and every violation.[6]

### 6.    ERISA

In accordance with 29 U.S.C. §1132(c), as of January 15, 2006, 14 days after coverage was terminated, Tesla is required to pay to Waldmann a penalty of $110 per day for each and every day that Tesla failed to provide Mr. Waldmann with the notification to elect continuation medical insurance coverage as required by COBRA.  In addition, Waldmann claims that Tesla is liable for his, and his family's medical bills (minus the cost of COBRA).

---

[6] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

14

## V.    DEFENDANT WALDMANN'S THEORY OF ANY ANTICIPATED MOTION FOR DIRECTED VERDICT

Waldmann anticipates moving for judgment as a matter of law on the following bases: 1) that none of the information claimed as a trade secret by Tesla is a trade secret; 2) that Tesla's conversion and conspiracy claim are subsumed in its trade secrets claim; and 3) that Tesla has not established liability by Waldmann. In the alternative, Waldmann will move for judgment as a matter of law on Tesla's damages claims. Finally, Waldmann will also move to vacate the Stipulated Restraining Order.

## VI.    OTHER ISSUES

Waldmann incorporates by reference each and every Motion in Limine submitted by NMT Defendants as if it were its own Motion, and NMT's Daubert Motion as if it were its own Daubert Motion, and as if it had filed each and every one of the foregoing.

Dated: May 12, 2008

Respectfully submitted,

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 425-3308
Fax: (610) 371-8515
E-mail: jdd@stevenslee.com

John A. Adams, Esq.
Susanin, Widman & Brennan, P.C.
South Gulph Road, Suite 240
King of Prussia, PA 19406-3119455

Attorneys for Defendant, David C. Waldmann

15

# SCHEDULE J-1 TO PRETRIAL ORDER JOINT PROPOSED JURY INSTRUCTIONS (PART 1)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC., a Delaware　　)
Corporation,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　Civil Action No. 06-55
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
DAVID C. WALDMANN, LYNDOL W.　　　　)
HOLLINGSWORTH, CHARLES　　　　　　　)
MINNICK alk/a CHUCK MINNICK, and　　　)
NEW MILLENNIUM TOOLS, INC., an　　　　)
Oregon Corporation,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendants.　　)

## SCHEDULE J-1 TO PRETRIAL ORDER

## JOINT PROPOSED JURY INSTRUCTIONS

Dated:

1

**Table of Contents**

**1.    Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial.**

　　1.1    Introduction; Role of Jury

　　1.2    Description of Case; Summary of Applicable Law

　　1.3    Conduct of Jury

　　1.4    Bench Conferences

　　1.5    Evidence

　　1.6    Direct and Circumstantial Evidence

　　1.7    Credibility of Witnesses

　　1.8    Jury Questions for Witnesses

　　1.9    Note-Taking By Jurors

　　1.10   Preponderance of the Evidence

　　1.11   Clear and Convincing Evidence

　　1.12   Description of Trial Proceedings


**2.    General Instructions For Use During Trial**

　　2.1    Impeachment of Witness's Character for Truthfulness

　　2.2    Judicial Notice

　　2.3    Stipulation of Testimony

　　2.4    Stipulation of Fact

　　2.5    Use of Deposition

　　2.6    Use of Interrogatories

2.7    Charts and Summaries in Evidence

2.8    Charts and Summaries Not Admitted in Evidence

2.9    Striking Evidence

2.10   Evidence Admitted for a Limited Purpose

2.11   Opinion Testimony

2.12   Foreign Language Testimony or Tape-Recording

2.13   Transcript of Tape Recorded Conversation 2.14 Recess Admonition

## 3. General Instructions For Use At End of Trial

3.1    Deliberations

3.2    Number of Witnesses

3.3    Violations of Uniform Trade Secrets Act

3.4    "Trade Secret" Definition

3.5    "Misappropriation" Definition

3.6    Breach of Contract

3.7    Conversion

3.8    Tortious Interference with Prospective Contractual Relations

3.9    Conspiracy

3.10   Read-Backs of Testimony

3.11   Deadlock

## 1.1 INTRODUCTION AND DUTIES OF THE JURY

## <u>INTRODUCTION</u>

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

## <u>DUTIES OF THE JURY</u>

So, let me begin with these general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to fmd from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the parties mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the cause of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

**1.2    DESCRIPTION OF CASE**

**THE PARTIES AND THEIR CONTENTIONS**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each party contends.

The parties in this case are the Plaintiff, Tesla Industries, Inc., and the Defendant Mr. David Waldmann.

In this case, Plaintiff Tesla Industries, Inc. alleges that its former employee, Defendant David Waldmann, stole trade secrets and provided those trade secrets to Charles Minnick, Lyndol Hollingsworth, and a company that Mr. Minnick founded, New Millennium Tools, Inc. The defendant denies these allegations. Defendant Waldmann alleges that Tesla violated the Delaware Wage Payment Statutes, the Employee Retirement Income Security Act, the Federal Electronic Communications Privacy Act, the Delaware Electronic Surveillance and Interception of Communications Act, and Delaware personnel file inspection statutes, as well as claims for breach of contract, intrusion of privacy, conversion, abuse of process, and unlawful discharge. Tesla denies the allegations in the counterclaims by the Defendant.

If appropriate, you will be asked to determine the amount of money damages necessary to compensate the plaintiff on its claims or defendant on his counterclaims for all of their injuries.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.3    **CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own

6

personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

**1.4    BENCH CONFERENCES**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.[While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.]

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[1]

---

[1]  Source: Third Circuit Model Civil Jury Instructions 1.4

8

## 1.5    **EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court --you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from

9

all the evidence in the case, whether direct or circumstantial or a combination of the two.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.6     DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses - something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could fmd another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.[1]

---

[1]  Source: Third Circuit Model Civil Jury Instructions 1.6

11

## 1.7  **CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY**

You are the sole judges of each witness' credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests: the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.8     JURY QUESTIONS FOR WITNESSES

Only the lawyers and I are allowed to ask questions of witnesses. You are not permitted to ask questions of witnesses.[1]

---

[1] Source: Third Circuit Model Civil Jury Instructions 1.8

## 1.9    NOTE-TAKING BY JURORS

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.     Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.     Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3.     Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow

juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4.      Do not take your notes away from court. I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."][1]

---

[1] Source: Third Circuit Model Civil Jury Instructions 1.9

## 1.10    **PREPONDERANCE OF THE EVIDENCE**

This is a civil case. Tesla Industries is the party that brought this lawsuit. Defendant David Waldmann is the party against which the lawsuit was filed. Tesla Industries has the burden of proving its case by what is called the preponderance of the evidence. That means Tesla Industries has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Tesla Industries and the evidence favorable to the defendants on opposite sides of the scales, Tesla Industries would have to make the scales tip somewhat on its side. If Tesla Industries fails to meet this burden on any particular claim, the verdict on that claim must be for the defendant. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, the defendant has the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that the defendant has succeeded in proving that the required facts are more likely so than not so.

The defendant has also brought claims for relief against Tesla Industries, called counterclaims. On these claims, the defendant has the same burden of proof as has Tesla Industries on its claims.

You may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases only. It does not apply in civil cases such as this. So you

16

should put it out of your mind.[1]

---

[1] Source: Third Circuit Model Civil Jury Instructions 1.10

## 1.11   <u>COURSE OF THE TRIAL</u>

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)     These preliminary instructions to you;

(3)     Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.[1]

---

[1]  Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 1.12    **WHAT IS NOT EVIDENCE**

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.[1]

---

[1] Source 3 Fed. Jury Prac. & Instr. § 101.44 (5th ed.)

## 1.13    <u>JUDGE'S QUESTIONS TO WITNESSES</u>

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.[1]

---

[1] Source 3 Fed. Jury Prac. & Instr. § 101.30 (5th ed.)

## 1.14    JUDGE'S COMMENTS TO LAWYER

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

**1.16    STIPULATIONS AT PRETRIAL CONFERENCE**

Before the trial of this case, the court held a conference with the lawyers for all the parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof.

The stipulated facts are as follows:

*[Read stipulations. ]*

Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 101.47 (5th ed.)

## 1.17    **TRIAL SCHEDULE**

Though you have heard me say this during the *voir dire*, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take __4__ days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 p.m. We will post a copy of this schedule for the your convenience in the jury deliberation room.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Preliminary Jury Instructions [Civil Case] (Jan. 18, 2006).

## 2.1    <u>JUDICIAL NOTICE</u>

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact. You must accept this fact as true for purposes of this case.[1]

---

[1] Source: Third Circuit Model Civil Jury Instructions 2.2

## 2.2    <u>STIPULATION OF TESTIMONY</u>

The parties have agreed that if [witness's name] were called as a witness, [he/she] would testify that [state the stipulated testimony]. This testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if [name of witness] had been present to testify. You must accept the fact that [name of witness] would have given that testimony. However, it is for you to determine the effect or weight to be given to that testimony." [1]

---

[1]  Source: Third Circuit Model Civil Jury Instructions 2.3

**2.3    DEPOSITION AS SUBSTANTIVE EVIDENCE**

Testimony will now be presented through a deposition. A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial. A witness' testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness' deposition testimony. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read/shown to you today.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 102.23 (5th ed.)

**2.4**     <u>**USE OF INTERROGATORIES AT TRIAL**</u>

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.[1]

---

[1] Source 3 Fed. Jury Prac. & Instr. § 102.24 (5th ed.)

## 2.5     <u>CHARTS AND SUMMARIES IN EVIDENCE</u>

[Name of party] has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[1]

---

[1]  Source: Third Circuit Model Civil Jury Instruction 2.7

28

## 2.6     <u>CHARTS AND SUMMARIES NOT ADMITTED IN EVIDENCE</u>

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. [Describe the charts and summaries that have not been admitted.] These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.[1]

---

[1] Source: Third Circuit Model Civil Jury Instruction 2.8

29

**2.7    STRIKING EVIDENCE**

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony].  That means that when you are deciding the case, you must not consider that information [testimony] in any way.[1]

---

[1]  Source: Third Circuit Model Civil Jury Instructions 2.9

**2.8     <u>EVIDENCE ADMITTED FOR A LIMTED PURPOSE</u>**

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. For example, you cannot use it as proof that (discuss specific prohibited purpose)].[1]

---

[1] Source: Third Circuit Model Civil Jury Instructions 2.10

**2.9**    **OPINION TESTIMONY**

You have heard [will hear] testimony containing opinions from [name of witness]. In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].[1]

---

[1]  Source: Third Circuit Model Civil Jury Instructions 2.11

## 2.10    <u>JUDGE'S COMMENTS TO LAWYER</u>

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.[1]

---

[1] Source 3 Fed. Jury Prac. & Instr. § 102.70 (5th ed.)

33

## 2.11    <u>OBJECTIONS AND RULINGS</u>

Testimony and exhibits can be admitted into evidence during a trial only if it meets certain criteria or standards. It is the duty of the lawyer on each side of a case to object when the other side offers testimony or an exhibit that the lawyer believes is not properly admissible under the rules of law. Only by offering an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence being offered by the other side. You should not be influenced against any lawyer or the lawyer's client because the lawyer has made objections.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 102.71 (5th ed.)

**2.12**   **JUDGE'S QUESTIONS TO WITNESSES**

  During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions. I may ask a question simply to clarify a matter, not to help one side of the case or hurt another side.

  Remember at all times that you, as jurors, are the sole judges of the facts of the case.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 102.72 (5th ed.)

**2.13    <u>JUDGE'S COMMENTS ON CERTAIN EVIDENCE</u>**

The law permits a federal judge to comment to the jury on the evidence in a case. Such comments are only expressions of my opinion as to the facts and you may disregard them entirely. You are the sole judges of the facts in this case. It is your recollection and evaluation of the evidence that is important to the verdict in this case.

Although you must follow my instructions about the law applicable to this case, you are totally free to accept or reject my observations concerning the evidence received in this case.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 102.73 (5th ed.)

## 2.14    <u>RECESS ADMONITION</u>

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet]. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.][1]

---

[1]    Source: Third Circuit Model Civil Jury Instructions 2.14

37

## 3.1    <u>INTRODUCTION</u>

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in this jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendant or the plaintiff is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (Modified to state "the defendant [or the plaintiff] is liable.").

39

## 3.2    **NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.[1]

---

[1] Source: 3 Fed. Jury Prac. & Instr. 104.54 (5th ed.); see also, Model Civ. Jury Instr. 3rd Cir. SS 3.2 (2006), The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.3    **VIOLATION OF UNIFORM TRADE SECRETS ACT (Tesla)**

Tesla alleges that the defendants violated the Uniform Trade Secrets Act by misappropriating certain trade secrets. For Tesla to prevail on its trade secret claims, it must prove by a preponderance of the evidence: (1) that the information Tesla contends defendants misappropriated was in fact a trade secret owned by Tesla; (2) that defendants knew or had reason to know that the trade secret was acquired through improper means, or through Tesla's disclosure through a confidential relationship, or under other circumstances in which defendants owed a duty not to use or disclose the trade secret; (3) that defendants used and/or disclosed the trade secret without Tesla's express or implied consent; and (4) that Tesla suffered harm as a direct and proximate result of defendants' use or disclosure of the trade secret or any defendant was unjust enriched by such use or disclosure.

If you find that Tesla has established each and all of the foregoing propositions by a preponderance of the evidence as to any of the defendants, then your verdict will be for the plaintiff and against that defendant.

I will first instruct you on what a trade secret is and on what constitutes misappropriation.[*]

**Objections:**

Unsupported by cited authority. Incomplete. Argumentative. Confusing. Not supported by Delaware Law. References defendants – not Defendant. Waldmann has provided his own instruction.

---

[*]    *Sources*: 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions §127.10 (5th ed. 2000) (modified); 6 *Del.C.* § 2001; *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869 at *6 (Del. Super.); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*, 1987 WL 8459, at *3-4 (Del. Ch.); *Miles Inc. v. Cookson America Inc.*, 1994 WL 676761 (Del. Ch.).

**3.3    MISAPPROPRIATION OF TRADE SECRETS ESSENTIAL ELEMENTS OF CLAIM (Waldmann)**

You are to determine whether any trade secrets have been misappropriated by Defendant Waldmann. In order to establish a trade secret violation, Plaintiff Tesla has the burden of proving by a preponderance of the evidence that

One: trade secrets existed;

Two: Defendant Waldmann acquired those secrets as a result of a confidential relationship;

Three: Defendant Waldmann used the secret information without authorization of the plaintiff; and

Four: plaintiff Tesla suffered harm as a direct and proximate result of the Defendant Waldmann's use or disclosure of the plaintiff Tesla's trade secrets.

Only wrongful use of secret information disclosed in confidence gives rise to liability.[*]

**Tesla Objections**:  Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.10 (5th ed.) (Modified)

## 3.4  "TRADE SECRET" DEFINITION  (Tesla)

The starting point for your inquiry is whether plaintiff Tesla's alleged trade secrets qualify in fact as trade secrets.  You are instructed that you must make this determination for each item of information the Tesla Industries contends to be its trade secret

A trade secret is information, including a formula, pattern, compilation, program, device, method, technique or process, that:

     a.     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

     b.     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A trade secret is still a trade secret even when the employee or person who acquired it had not been specifically told or notified that it was a trade secret.  It must be reasonable under the circumstances for the employee to know or have reason to know the owner expected the secret to be kept.[*]

**Objections:**

Inapposite to this action, as cited support is from different jurisdiction.  Argumentative.  Includes elements unsupported by Delaware law.  Waldmann provides his own instruction.

---

[*]    *Sources*:    6 *Del.C.* § 2001(4); 4 Minn. Prac., Jury Instr. Guides – Civil CIVJIG 40.20 (5th ed.).

### 3.4a   "TRADE SECRETS"—DEFINED (Waldmann)

A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business. Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to the public.

In determining whether plaintiff Tesla has proven by a preponderance of the evidence that it possessed specific, identifiable trade secrets, you may consider the following factors:

(1)     The extent to which the information was known outside of plaintiff Tesla's business;

(2)     The extent to which it was known by employees and others involved in plaintiff Tesla's business;

(3)     The extent of measures taken by Tesla to guard the secrecy of the information;

(4)     The value of the information to Tesla and its competitors;

(5)     The amount of effort or money expended in developing the information;

(6)     The ease or difficulty with which the information could be properly acquired or duplicated by others.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.11 (5th ed.);

*Authority*: *Delaware Express Shuttle* at *69-70; *Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88 at *29-30, (Del. Ch. 1995); *Wilmington Trust Co. v. Consistent Asset Mgt. Co.*,

**Tesla Objections**:  Includes elements unsupported by Delaware law.  Argumentative.

---

1987 Del Ch. LEXIS 409 at *8-9 (Del. Ch. 1987); RESTATEMENT OF TORTS § 757, Comment b (1939).

**3.4b    "TRADE SECRETS"—"CUSTOMER LIST" --DEFINED (Waldmann)**

In this matter, Tesla claims that its list of customers is a trade secret. The party claiming a customer list is a trade secret has the burden of establishing the list's status as a trade secret. A customer list is not a trade secret if it is reproducible from sources in the public domain.

> For example, a customer list cannot be trade secret if information can be readily obtained through some independent source other than the trade secret holder such as the Internet, trade journals, ordinary telephone listings, or an employee's general knowledge of who, in an established industry, is a potential customer for a given product.

**Tesla Objections**: Includes elements unsupported by Delaware law and the Uniform Trade Secrets Act. Inapposite as it relies on authorities outside the jurisdiction. Argumentative.

Authority: Bradbury Co., Inc. v. Teissier-duCros, 413 F. Supp. 2d 1209, 1225 (D. Kan. 2006); Prudential Ins. Co. of Am. v. Stella, 994 F.Supp. 318, 323 n. 2 (E.D.Pa.1998); Arthur J. Gallagher & Co. v. Reisinger, 2007 WL 1877895 (W.D.Pa., 2007); Del. Express Shuttle, Inc. v. Older, 2002 WL 31458243, at * 18 (Del. Ch. Oct. 23, 2002); Tao of Sys. Integration, Inc. v. Analytical Serv. & Materials, Inc., 330 F. Supp. 2d 668, 678 (E.D. Va. 2004); Am. Hearing Aid Assoc., Inc. v. GN ReSound North Am. 309 F. Supp. 2d 694, 704 (E.D. Pa. 2004) (customer lists reproducible from Internet information not a trade secret).

## 35    "MISAPPROPRIATION" DEFINITION

"Misappropriation" means:

a.    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b.    Disclosure or use of a trade secret of another without express or implied consent by a person who:

    1.    Used improper means to acquire knowledge of the trade secret; or

    2.    At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

        A.    Derived from or through a person who had utilized improper means to acquire it;

        B.    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        C.    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

    3.    Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[1]

---

[1]  Sources: 6 Del.C. §2001(2)

## 3.6    FACTORS TO DETERMINE WHETHER CONDUCT WAS IMPROPER (Waldmann)

You must determine whether or not the accused party's conduct was improper.  In doing so, you may consider the following factors:

1.    The nature of the accused party's conduct;

2.    The accused party's motive;

3.    The expectations of the parties involved;

4.    The relations between the parties involved;

5.    The interest that accused party sought to advance;

6.    Whether the accused party's conduct was undertaken for the purpose of causing the interference, or whether the interference was merely incidental to another purpose;

7.    The proximity or remoteness of the accused party's conduct to the interference; and

8.    The societal interests in protecting the freedom of action of the accused party, and the contractual interest of the other.[*]

**Tesla Objections**:  Unsupported by Delaware law or Uniform Trade Secrets Act.

---

[*]  *Authority*:  RESTATEMENT (SECOND) OF TORTS § 767 (1979); RESTATEMENT OF TORTS § 767 (1939).

## 3.7   **BURDEN OF PROOF**

The burden is on Tesla on this claim to prove by a preponderance of evidence:

1.   That it owns a protectable trade secret;

2.   That Defendant Waldmann misappropriated that trade secret; and

3.   That Defendant Waldmann has used or disclosed or will use or disclose that trade secret to the detriment of Tesla.[1]

---

[1] Authority: 12A BUSINESS ORGANIZATIONS, MILGRIM ON TRADE SECRETS, § 7.07[1] (1984).

44

**3.8    DERIVES ECONOMIC BENEFIT FROM NOT BEING GENERALLY KNOWN**

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal persons who can obtain economic benefit from information are aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.[1]

---

[1] Authority: UNIFORM TRADE SECRETS ACT, comment to § 1.

45

## 3.9    EFFORTS THAT ARE REASONABLE UNDER THE CIRCUMSTANCES TO PROTECT ITS SECRECY (Waldmann)

A trade secret must be kept secret. If a matter is commonly known in an industry, Tesla may not claim it as a trade secret. If a matter could be learned by legitimate or proper methods, such as by reading publicly available literature, by discovery by independent invention, by discovery by reverse engineering, by discovery under a license from the owner of the trade secret, by examining publicly available products, or by taking a guided tour of a manufacturing plant, Tesla may not claim it as a trade secret.

On the other hand, the fact that others may know of the information does not necessarily negate secrecy. Tesla may have communicated the information to its employees, and to certain outsiders, such customers and suppliers, without losing its rights, if such disclosure was confidential and necessary to run its business. Tesla, however, must have taken reasonable measures under the circumstances to maintain secrecy.[*]

**Tesla Objections**: No basis in Delaware law. Argumentative.

---

[*] *Authority: Kewanee Oil Co.*, 416 U.S. at 475; *Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953); *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173 (D. Ariz. 1973); UNIFORM TRADE SECRETS ACT, comment to § 1.)

## 3.11  **CONSENT** (Waldmann)

If you find that Tesla consented to the Defendant Waldmann's acquisition and use of its trade secret, there is not misappropriation.  Consent may be express or implied – that is, a trade secret owner may consent by openly granting permission or by acting in manner which a reasonable person could interpret as granting permission.[*]

**Tesla Objections**:   Unsupported by Delaware law and Uniform Trade Secrets Act. Argumentative.  Misleading.

---

[*] *Authority*:  UNIFORM TRADE SECRETS ACT § 1(2)(ii)

**3.14**    **COMPENSATORY DAMAGES FOR MISAPPROPRIATION**

If you should find by the preponderance of the evidence presented that Defendant Waldmann has misappropriated Tesla's trade secrets, you must then determine the amount of damages, if any, that Tesla is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Tesla is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that Tesla is entitled to recover damages.

Tesla has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented.[1]

---

[1]  Source 3 Fed. Jury Prac. & Instr. § 127.14 (5th ed.) (Modified).

**3.14a COMPENSATORY D AMAGES FOR MISAPPROPRIATION**

If you should find by the preponderance of the evidence presented that Defendants Waldmann, Hollingsworth, Minnick and/or New Millennium Tools, Inc. has misappropriated Tesla's trade secrets, you must then determine the amount of damages, if any, that Tesla is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Tesla is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that Tesla is entitled to recover damages.

Tesla has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented.[*]

---

[*] *Source*: 3 Fed. Jury Prac. & Instr. § 127.14 (5th ed.) (Modified).

**3.14b  COMPENSATORY DAMAGES FOR MISAPPROPRIATION ADDITIONAL INSTRUCTION (WALDMANN)**

A plaintiff must prove its damages with a reasonable degree of precision. Speculative damages are not recoverable. Moreover, claims for damages for the time and efforts a Company or its employees have spent dealing with litigation, for subsequent security measures after the departure of an employee, or other remedial efforts are not recoverable.

**Tesla Objections**: Duplicative and unnecessary.

Authority:  Kronenberg v. Katz, 872 A.2d 568, 609-10 (Del Ch. 2004); Chemipal Ltd. v. Slim-Fast Nutritional Foods, Int'l, Inc., 350 F. Supp. 2d 582, 597 (D. Del. 2004); Telex Corp. v. Int'l Bus. Mach. Corp., 510 F.2d 894, 932-33 (10th Cir. 1975).

## 3.15    CONTRACT FORMATION

Tesla Industries has asserted a claim of breach of contract against defendant Waldmann. The claim arises from the employment contract between Tesla and Waldmann, which according to Tesla included a memo entitled "Access to Tesla Industries Technology Resources," and a document entitled "Agreement of Non-Disclosure."

A contract is a legally binding agreement between two or more parties. Each party to the contract must perform according to the agreement's terms. A party's failure to perform a contractual duty constitutes breach of contract. If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim damages.

For a legally binding contract to exist, there must be:

1) an offer of a contract by one party;

2) an acceptance of that offer by the other party;

3) consideration for the offer and acceptance; and

4) sufficiently specific terms that determine the obligations of each party.

In this case, Tesla alleges that Waldmann breached a contract by disclosing its Secret and Confidential business information.  In this case, the parties have agreed that there was an offer, acceptance and consideration.  You must determine from a preponderance of the evidence whether there was sufficiently specific terms that determine the obligations of each party.[*]


OBJECTION:

Tesla's breach of contract claim is based entirely on the same facts as its misappropriation

---

[*]    *Source*: Del. P.J.I. Civ. § 19.1 (2000)

of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets). In the event that the claim is not dispensed prior to the close of trail, Waldmann proposes the following instructions.

## 3.16    MEETING OF THE MINDS

A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms. Mutual assent is not a subjective or personal understanding of the terms by either party. Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.[1]

---

[1] Source: Del. P.J.I. Civ. § 19.20 (2000)

48

## 3.17    CONSTRUCTION OF AMBIGUOUS TERMS - BREACH OF CONTRACT

There are certain rules to consider in interpreting contractual terms that appear ambiguous or unclear.

First, if the party that drafted the language of the contract can be determined, the language must be construed most strongly against that party.

Second, if the contract's language is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, the first interpretation must be preferred.

Third, to determine the parties' intent when there are ambiguous terms, the jury will look to the construction given to the terms by the parties as shown through their conduct during the period after the contract allegedly became effective and before the institution of this lawsuit. The parties' conduct after a contract is made should be given great weight in determining its meaning. Finally, explanatory circumstances existing when the contract was allegedly made may be considered in order to determine the parties' probable intent.[1]

---

[1]  Source: Del. P.J.I. Civ. § 19.16 (2000)

49

## 3.18    CONTRACT MODIFICATION

Generally, a written contract may be modified by a later oral agreement. An oral

agreement that modifies a written contract must be specific, direct, and clear about the parties'

intention to change their original agreement.[1]

---

[1] Source: Del. P.J.I. Civ. § 19.16 (2000)

## 3.19    PERFORMANCE

Performance is the successful completion of a contractual duty and usually results in the performer's release from any past or future liability on the contract. Successful completion of contractual duties simply requires that the terms be satisfied.[1]

---

[1]  Source: Del. P.J.I. Civ. § 19.17 (2000)

# SCHEDULE J-1 TO PRETRIAL ORDER JOINT PROPOSED JURY INSTRUCTIONS (PART 2)

## 3.20    PERFORMANCE PREVENTED BY A PARTY TO THE CONTRACT

A party to a contract may not prevent another party from performing its contractual duties

and then claim that the other party has breached the contract or failed to complete its terms. For

example, a farmer who contracts with a builder to put up a barn on the farmer's land must make the

land available to the builder so that the work may be done. Likewise, the farmer must not interfere

with the progress of the work.

In this case, you must determine whether Tesla prevented or otherwise interfered with

Waladmann's duty to perform the described terms of the contract.[1]

---

[1] Source: Del. P.J.I. Civ. § 19.19 (2000)

### 3.21    __BREACH OF CONTRACT DEFINED__  (Tesla)

Because Tesla was a party to the contract at issue, Tesla would be entitled to recover damages from Waldmann for any breach of the contract. To establish that Waldmann is liable to Tesla for breach of contract, Tesla must prove that one or more terms of its contract with Waldmann have not been performed or were breached and that it has sustained damages as a result of Waldmann's failure to perform.[*]

OBJECTION:

Not needed and conflicts with Instruction 3.15.

---

[*]    *Source*: Del. P.J.I. Civ. § 19.20 (2000)

### 3.22    ESTOPPEL

When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position. This is known in the law as estoppel. Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question.[1]

---

[1] Source: Del. P.J.I. Civ. § 19.24 (2000)

**3.23   CONVERSION (Tesla)**

Tesla Industries has asserted claims of conversion against the defendant.   Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." To establish conversion, Tesla must prove the following elements: (i) that Tesla had a property interest in the converted property, (ii) that Tesla had a right to possession of the converted property, and (iii) that Tesla sustained damages.[*]

**Objection:**

Waldmann has submitted its own instruction which incorporates Waldmann's claim of conversion against Tesla.

Moreover, Tesla's conversion claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA.  *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway*

---

[*]  *Authority*:  *Rockwell Automation, Inc. v. Kall*, 2004 WL 2965427, at *4 (Del. Ch.)

*Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets). Waldmann objects to the extent that this instruction is confusing and does not clearly set out the burden of proof required for such a claim. Waldmann further objects to the extent that it is incomplete.

### 3.23    CONVERSION (Waldmann)

Tesla Industries has asserted claims of conversion against Mr. Waldmann and Mr. Waldmann has filed a counterclaim asserting that Tesla wrongfully withheld property belonging Wadlmann.  Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." In other words, conversion occurs when a defendant wrongfully deprives an owner of control over his property.

For Tesla to establish conversion, Tesla must prove by a preponderance of the evidence the following elements: (i) that Tesla had a property interest in the property, (ii) that Tesla had a right to possession of the property, (iii) that Mr. Waldmann wrongfully deprived Tesla of its property, and (iv) that Tesla sustained damages.

Likewise, for Mr. Waldmann to establish conversion, Mr. Waldmann must prove by a preponderance of the evidence the following elements: (i) that Mr. Waldmann had a property interest in the property, (ii) that Mr. Waldmann had a right to possession of the property, (iii) that Tesla wrongfully deprived Mr. Waldmann of his property, and (iv) that Mr. Waldmann sustained damages.

A party cannot maintain a conversion claim for intangible property unless the intangible property relations are merged into a document.[*]

**Tesla Objections**:  Misconstrues Delaware law.  The necessary elements of conversion are that the party claiming conversion had a property interest in the property; that the

---

[*] *Source*: *Jordan v. Bellinger*, 2001 U.S. Dist. LEXIS 9777 at *15 (D. Del. 2001); *Resource Ventures Inc. v. Resources Mgmt, Int'l, Inc.*, 42 F. Supp. 2d 423, 438-39 (D. Del. 1999); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003); *Flannery v. Flannery Bolt Co.* 108 F.2d 531 (3d Cir. 1939) (Modified).

To the extent that Tesla's claim is for the conversion of trade secrets, Waldmann maintains that this claim is preempted.

party claiming conversion had a right to possession of the property; and that the party claiming conversion sustained damages. <u>Rockwell Automation, Inc. v. Kall</u>, 2004 Del. Ch. LEXIS 186, at 12-13 (Del. Ch. 2004), referencing, <u>Facciolo Constr. Co. v. Bank of Del.</u>, 514 A.2d 413 (Del. 1986); <u>Goodrich v. E.F. Hutton Group, Inc.</u>, 542 A.2d 1200, 1203 (Del. Ch. 1988).

## 3.24    TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS  (Tesla)

Tesla Industries has asserted a claim against defendant Waldmann for tortious interference with prospective contractual relations. One who purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another is responsible to that other party for the loss suffered as a result of the prevention or interference with the contractual relationship. Tesla asserts that Waldmann committed tortious interference with prospective contractual relations by wrongfully intercepting an inquiry by the Federal Emergency Management Agency and diverting it to Lyndol Hollingsworth, Charles Minnick and New Millenium Tools, Inc.

You must decide whether or not Waldmann's conduct was improper. In doing so, you may consider the following factors:

(1)    the nature of Waldmann's conduct;

(2)    Waldmann's motive;

(3)    Tesla's interests;

(4)    the expectations of the parties involved;

(5)    the relations between the parties involved;

(6)    the interest that Waldmann sought to advance;

(7)    whether Waldmann's act was done for the purpose of causing the interference or whether it was merely incidental to another purpose;

(8)    the proximity or remoteness of Waldmann's conduct to the interference; and

(9)    society's interest in protecting business competition as well as its interest

56

in protecting the individual against interference with the pursuit of gain.[1]

---

[1] Source: Del. P.J.I. Civ. § 12.7 (2000)

## 3.25    CONSPIRACY (Tesla)

Tesla has asserted claims against each of the defendants for conspiracy.  To establish a claim for conspiracy, Tesla must show: (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to Tesla.  If Tesla establishes a claim of conspiracy, each of the conspirators is vicariously liable for the acts of his co-conspirators in furtherance of the conspiracy.[*]

**Objection:**

Tesla's conspiracy claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA.  *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004)

---

[*]    *Authority*:   *Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1036 (Del. Ch. 2006).

(concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

**3.26    DAMAGES – MISAPPROPRIATION OF TRADE SECRETS (Tesla)**

If you find that defendants misappropriated Tesla's trade secrets, Tesla is entitled to recover damages for the misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of a reasonable royalty on the sale of the product.[*]

**OBJECTIONS:**

Unsupported by Delaware law. The term "*entitle*" incorrectly presupposes that damages are automatic with a finding of misappropriation of trade secrets. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Contradicts instruction 3.14, to which Tesla does not object, and, thus, is overly confusing. Prejudicial. The reference to royalties has a measure of damages is unsupported by law.

## 3.27    DAMAGES -- BREACH OF CONTRACT (Tesla)

If you find that Waldmann committed a breach of contract, Tesla is entitled to compensation in an amount that will place Tesla in the same position it would have been if the contract had been properly performed, The measure of Tesla's damages is the loss actually sustained as a result of the breach of the contract.

60

**3.28    DAMAGES – CONVERSION (Tesla)**

If you find that Tesla has established its claim for conversion against any of the defendants, Tesla is entitled to recover damages. The measure of damages for conversion is the value of the converted property at the time of the conversion, plus interest.[*]

**OBJECTIONS:**

Unsupported by Delaware law. The term "*entitle*" incorrectly presupposes that damages are automatic with a finding of conversion. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Contradicts instruction 3.14, to which Tesla does not object, and, thus, is overly confusing. Prejudicial. Prejudgment interest should be handled by the Court.

Tesla's conversion claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for

---

[*] *Source*: 6 *Del. C.* § 2003.
[*] *Sources*: *Addalli v. Mazzella*, 1987 WL 8677, at *8 (Del. Super.); *Blake v. Town of Delaware City*, 441 F. Supp. 1189, 1205 (D. Del. 1977).

misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

**3.29   DAMAGES - TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (Tesla)**

If you find that Waldmann interfered with Tesla's prospective contractual relations, Tesla is entitled to recover damages. Damages should fairly and adequately compensate Tesla for:

(1)    the monetary loss of the contractual benefits suffered by Tesla;

(2)    all other losses suffered by Tesla as a direct result of Waldmann's act; and

(3)    the emotional distress and harm to the Tesla's reputation suffered as a result of the Waldmann's act.[1]

---

[1] *Source: Del. P.J.I. § 22.18*

**3.30    DAMAGES – CONSPIRACY (Tesla)**

If you find that Tesla has established its claim of conspiracy against some or all of the defendants, Tesla is entitled to recover damages. Damages should fairly and adequately compensate Tesla for the harm caused by the misconduct committed in furtherance of the conspiracy.[*]

**OBJECTIONS:**

Unsupported by Delaware law. The term "*entitle*" incorrectly presupposes that damages are automatic with a finding of conspiracy. Argumentative. Fails to set forth any evidentiary burden for proving damages. Incorrectly states the law on damages recovery. Prejudicial.

Tesla's conspiracy claim is based entirely on the same facts as its misappropriation of trade secrets claim and, therefore, is preempted by the DUTSA. *See Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426 (D. Del. 2005); *Savor, Inc. v. FMR Corp.*, 2001 Del. Super. LEXIS 170, 2001 WL 541484, *4 (Del. Super. 2001) (holding the "displacement" of section 2007 applies to claims "grounded in the same facts which purportedly support the misappropriation of trade secrets claim"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635 (D. Del. 1991) (citing 6 Del. C. § 2008, the court noted that the DUTSA was to "make uniform the law with respect to" trade secrets, further noting that "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. C. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation."); *see also Callaway Golf Co. v.*

*Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

---

\* *Source*: *Empire Financial Services, Inc. v. Bank of New York (Delaware)*, 900 A.2d 92, 97 (Del. 2006).

**3.31    ATTORNEYS FEES FOR MISAPPROPRIATION OF TRADE SECRETS AND BREACH OF CONTRACT (Tesla)**

If you find that the defendants misappropriated Tesla's trade secrets in bad faith, you must determine whether or not such misappropriation was willful and malicious. Misappropriation is "willful and malicious" where it is deliberate and done with reckless disregard for the rights of the owner of the trade secret. If you find the misappropriation to be willful and malicious, you should award Tesla additional damages in the amount of its reasonable attorneys' fees.[*]

In addition, you should be aware that Waldmann's contract allows Tesla to recover its reasonable attorneys' fees in cases where the contract has been breached by Waldmann. Therefore, if you find that Waldmann breached his contract with Tesla, you should award Tesla additional damages in the amount of its reasonable attorneys' fees.

**OBJECTIONS:**

The term *"should"* presupposes that damages are automatic with a finding of misappropriation of trade secrets. Inconsistent with Delaware law. Unsupported by incomplete cited authority. Fails to set forth any evidentiary burden for proving willful and/or malicious. Incorrectly states the law on damages recovery. Argumentative, especially with regards to the second paragraph. Prejudicial. Attorneys' fees are determined by the Court under Fed. R. Civ. P. 54(d)(2).

---

[*] *Sources:* 6 *Del. C.* § 2004; *Nucar Consulting, Inc. v. Doyle*, 2005 WL 820706, at *

## 3.33    USE OF NOTES

You may use the notes taken by you during the trial. However, the notes should not be substituted substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 103.02 (5th ed.)*

## 3.34    INSTRUCTIONS APPLY TO EACH PARTY

Unless I state otherwise, you should consider each instruction given to apply separately and individually to plaintiff and to defendant in the case.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 103.10 (5th ed.)*

66

## 3.35   ALL PERSONS EQUAL BEFORE THE LAW-INDIVIDUALS

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons stand equal before the law and are to be treated as equals.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 103.11 (5th ed.)*

## 3.36    ALL PERSONS EQUAL BEFORE THE LAWORGANIZATIONS

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A [corporation] [partnership] [unincorporated association] is entitled to the same fair trial as a private individual. All persons, including [corporations], [partnerships], [unincorporated associations], and other organizations stand equal before the law, and are to be treated as equals.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 103.12 (5ᵗʰ ed.)*

## 3.38   EVIDENCE

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, either live or by deposition, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on evidence, as I have defined it here, and nothing else.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (modified to state "under oath [, either live or by deposition], the exhibits...").

**3.39    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness, which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.40    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.41 CONSIDERATION OF THE EVIDENCE--CORPORATE PARTY'S AGENTS AND EMPLOYEES

A corporation may act only through natural persons as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.[1]

---

[1]    *Source: 3 Fed. Jury Prac. & Instr. § 103.31 (5th ed.)*

72

## 3.43    COURT'S COMMENTS NOT EVIDENCE

The law permits me to comment to you on the evidence in the case. These comments are only an expression of my opinion as to the facts. You may disregard my comments entirely, since you as jurors are the sole judges of the facts and are not bound by my comments or opinions.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 103.33 (5ᵗʰ ed.)*

## 3.44   STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorney's, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.[1]

---

[1]  Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

## 3.45    "IF YOU FIND" OR "IF YOU DECIDE"

When I instruct you that a party has the burden of proof on any proposition, or use the

expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the

evidence in the case that the proposition is more probably true than not.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 104.04 (5th ed.)*

75

**3.46   "INFERENCES" DEFINED**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to raw from facts established by the evidence in the case.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 104.20 (5th ed.)*

**3.47   NOTICE OR KNOWLEDGE--DUTY OF INQUIRY (WALDMANN)**

The means of knowledge are ordinarily the equivalent in law to knowledge. If it appears from the evidence in the case that a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then this person may be found to have had actual knowledge of those facts, the same as if that person had made such inquiry and had actually learned such facts.

That is to say, the law charges a person with notice and knowledge of whatever that person would have learned, on making such inquiry as it would have been reasonable to expect the person to make under the circumstances.

Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time, and that the person had regular opportunities to observe the condition, then you may draw the inference that the person had knowledge of the condition.*

**Tesla Objections**: Unnecessary. Irrelevant.

---

\* *Source*: 3 Fed. Jury Prac. & Instr. §  104.24 (5th ed.)

## 3.48    FAILURE TO CALL AVAILABLE WITNESS (WALDMANN)

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.*

**Tesla Objections**: Unnecessary. Irrelevant.

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  104.25 (5th ed.)

## 3.49    FAILURE TO PRODUCE AVAILABLE EVIDENCE (WALDMANN)

If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.*

**Tesla Objections**:  Unnecessary.  Irrelevant.

---

* *Source*: 3 Fed. Jury Prac. & Instr. §  104.26 (5th ed.)

**3.50    SUPPRESSION, FABRICATION OR ALTERATION OF EVIDENCE (WALDMANN)**

If you should find that a party willfully altered, suppressed, hid and/or destroyed evidence in order to prevent its being presented in this trial, you may consider such alteration, suppression and/or destruction in determining what inferences to draw from the evidence or facts in the case.*

**Tesla Objections**: Unnecessary.  Irrelevant.

---

* *Source*:  3 Fed. Jury Prac. & Instr. §  104.27 (5th ed.)

## 3.52    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail. This instruction applies to all

witnesses.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

**3.53    EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all other evidence in this case.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

3.54    **STATISTICAL EVIDENCE (WALDMANN)**

Statistics are inherently slippery in nature, are not irrefutable, and, like any other kind of evidence, they may be rebutted.*

**Tesla Objections**:  Unnecessary.  Irrelevant.

---

\* *Source*:  3 Fed. Jury Prac. & Instr. §  104.43 (5th ed.)

## 3.55   CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 104.50 (5th ed.)*

## 3.56  REQUESTS FOR ADMISSION (WALDMANN)

Defendant Waldmann has introduced into evidence certain "Requests for Admission". Plaintiff Tesla responded to these "Requests for Admission" and admitted certain of the requests. You are to take the facts admitted as true for purposes of this case.*

---

* *Source*: *See* 3 Fed. Jury Prac. & Instr. § 104.70 (5th ed.) (modified)

## 3.57 ANSWERS TO INTERROGATORIES

Each party has introduced into evidence certain interrogatories-that is, questions together with answers signed and sworn to by the other party. A party is bound by its swam answers.

By introducing an opposing party's answers to interrogatories, that party does not bind itself to those answers. The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 104.72 (5th ed.)*

## 3.58    USE OF DEPOSITIONS AS EVIDENCE

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath, or on a videotape. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 105.02 (5th ed.)*

82

## 3.59   IMPEACHMENT--INCONSISTENT STATEMENT OR CONDUCT (FALSUS IN UNO FALSUS IN OMNIBUS)

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[1]

---

[1]  *Source: 3 Fed. Jury Prac. & Instr. § 105.04 (5th ed.)*

## 3.60    IMPEACHMENT--BAD REPUTATION FOR TRUTH AND VERACITY

A witness may be discredited or impeached by evidence that the character of the witness for truthfulness is bad. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 105.06 (5th ed.)*

## 3.61    EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness' interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 105.09 (5th ed.)*

## 3.62    EFFECT OF REFUSAL OF WITNESS TO ANSWER

The law requires that every witness answer all proper questions put to him or her at trial, unless I rule the witness is privileged to refuse to answer on Constitutional or other grounds.

The fact that a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 105.10 (5th ed.)*

## 3.63    BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE

This is a civil case. Plaintiff Tesla has the burden of proving its claims and damages, and Defendant Waldmann has the burden of proving his counterclaims and damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not Plaintiff Tesla or Defendant Waldmann have met their burden of proof on various issues.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006) (modified to include Defendant's burden of proof)

## 3.64    UNCLEAN HANDS: (Waldmann)

Defendants Waldmann contend that, even if you determine that Tesla has proved any claim by a preponderance of the evidence, that Tesla is barred from obtaining any relief because it has unclean hands. The doctrine of unclean hands is an equitable defense, which provides that a party must have acted fairly and justly in its dealings with another in order to assert a cause of action against that party. A party is said to possess "unclean hands" if it is guilty of conduct involving fraud or bad faith. If you find that either party acted in a fraudulent, underhanded, unfair or unjust manner then you may conclude that party had "unclean hands." This principle is often expressed through the maxim that "he who comes into equity must come with clean hands."*

**Tesla Objections**:    Not pleaded with necessary specificity.    Not explained during discovery. Unsupported by Delaware law.    No facts to warrant such instruction.

---

* *Authority*:  *Bertoglio v. Texas Intern. Co.*, 488 F.Supp. 630 (D. Del. 1980); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241 (1933); *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806 (1945)

## 3.65    ABUSE OF PROCESS (Waldmann)

One who willfully uses the legal system, whether through a criminal or civil action in the courts or in a regulatory agency, against another primarily to accomplish a purpose for which the system is not designed is responsible to the person against whom the legal process was used for any harm caused by such use. I have determined as a matter of law that Tesla caused legal process to issue against Defendant Waldmann in the nature of a Complaint and Civil Summons, Petition for a Preliminary Injunction, Restraining Order, and Requests for Production, Interrogatories and Depositions.

The purpose of the foregoing are designed for legitimate discovery of information in pursuit of Tesla's claims against them and to protect Tesla's trade secrets. It is an improper purpose to use the foregoing for the purposes of harassing or intimidating the Defendant or for obtaining that cannot legitimately be obtained in the litigation process.

The elements that Defendant Waldmann must prove in his claim for Abuse of Process are:

(1) An improper or wrongful purpose in using the legal process; and

(2) A willful act in the use of the system not proper in the regular conduct of legal proceedings.[*]

**Tesla Objections**: Argumentative.

---

[*] *Source*: DEL. P.J.I. CIV. § 12.6 (2000)

## 3.66  <u>DAMAGES - ABUSE OF CIVIL PROCESS</u> (Waldmann)

If you find that Defendant Waldmann has proven that Tesla is liable for abuse of civil process, then you should consider the amount of damages that Defendant Waldmann is entitled to recover. In making an award, you may consider the following factors:

(1) The harm resulting from any disposition or interference with the advantageous use of Defendant Waldmann's property suffered during the course of the proceedings;

(2) The harm to his reputation by any defamatory matter alleged as the basis of the proceedings;

(3) The expense reasonably incurred in defending them against the proceedings;

(4) Any specific monetary loss that resulted from the proceedings; and

(5) Any emotional distress caused by the proceedings.

You may presume that Defendant Waldmann suffered injury to his reputation as well as emotional distress, mental anguish, and humiliation that would normally result from Tesla's conduct. This means you need not have found that Defendant Waldmann suffered any particular injury to his reputation or in fact suffered emotional distress, mental anguish, or humiliation in order to award them damages.

In determining the amount of an award, you also may consider the character of Defendant Waldmann and their general standing and reputation in the community; the publicity surrounding Tesla's act; and the probable effect that Tesla's conduct had on Defendant's trade, business, or profession, and the harm sustained as a result.[*]

**<u>Tesla Objection</u>**: Argumentative.

---

[*]*Source*:  DEL. P.J.I. CIV. § 22.12 (2000)

**3.77**   **VIOLATION OF THE DELAWARE WAGE PAYMENT ACT (Waldmann)**

In Count I, Mr. Waldmann alleges that Tesla industries violated Delaware's Wage Payment and Collection law.   The Delaware wage payment law requires that every employer pay all wages, including commissions, due to its employees.   It is a violation of the Delaware Wage Payment Law for an employer to fail to pay an employee wages that are due the employee within seven days after the pay period ends.

You are further instructed that Tesla may not withhold or divert any portion of Mr. Waldmann's wages unless:  (1) Tesla is required or empowered to do so by state or federal law; (2) The deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employers' books; or  (3) The employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee. Under Delaware law, if there is a reasonable dispute over the amount of wages due to an employee, the employer shall timely pay, without condition, all wages or parts thereof due to the employer which are not in dispute.

The Delaware wage payment law also give an employee a legally protected right to file a claim against an employer if the employer fails to pay wages or commission that are due the employee.   The term wages means compensation for labor or services rendered by an employee. The term wages also includes commission.

Mr. Waldmann alleges that Tesla Industries has failed to pay him wages, including salary for the period of January 1, 2006 through January 28, 2006 and commissions that were due him for the third and fourth quarter of 2005.  If you find that Tesla Industries has failed to pay Mr. Waldmann wages which he is due, you must find in

favor of Mr. Waldmann on Count I.

If you find that Tesla, failed to pay Mr. Waldmann wages for the period January 1, 2006 to January 28, 2006, you are to award him the wages that he should have been paid for that period of time. If you find that Tesla failed to pay Mr. Waldmann his third or fourth quarter 2005 commissions, you are to award him the commissions he should have received for that those quarters.[1]

Source: 19 Del. C. §§ 1102, 1104, 1112.

**Tesla Objections**:    Misleading.    Unsupported by Delaware law.    Argumentative. Irrelevant.  Peirson v. Hollingsworth stated: "an employer would not be precluded from asserting a legal defense as a set-off if it related to the validity of the wage claim itself. Nor does the statute, by any express terms, prevent the assertion by the employer of a defense of set-off of a transaction or claim unrelated to the validity of the claim itself." 251 A.2d 350, 352 (Del. Super. Ct. 1969).   Other disputes not involving wages but arising from the employment are sufficient to justify wage withholding.  Delaware Bay Surgical Serv. v. Swier, 900 A.2d 646, 653 (Del. 2006).

---

[1] It is Waldmann's position that penalties, attorney fees, costs and other damages are to be awarded by the court.

## 3.78    VIOLATION OF THE DELAWARE WAGE PAYMENT ACT (Tesla)

Mr. Waldmann alleges in Count I of his Counterclaims that Tesla has failed to pay him earned salary for the period of January 1, 2006, through January 28, 2006. If you find that Tesla owed Mr. Waldmann that salary and failed to pay such amounts within seven days after such amounts were payable, you may find in favor of Mr. Waldmann on Count I.

Tesla alleges that no earned salary was due and payable to Mr. Waldmann during this period because his employment was terminated effective as of December 31, 2005, and because Waldmann had not done any work after that date which would entitle him to an "earned" salary. Therefore, if you find that Tesla properly did not pay Waldmann his wages in January 2006 because he had previously been terminated or he did not earn that salary you may find in favor of Tesla on Count I.

Mr. Waldmann also alleges in Count I that Tesla failed to pay him commissions for the 3rd and 4th calendar quarters of 2005. If you find that Waldmann earned such commissions you may find for him on this claim under Count I.

Tesla alleges that any payments by it above salary were bonuses based on sales which can be attributed to an employee's sales efforts during each quarter, i.e., "earned." Furthermore, Tesla alleges Waldmann's conduct breached duties owed to Tesla under the employment agreements. It alleges that Mr. Waldmann did not earn any bonuses during the third and fourth quarters of 2005, and thus had reasonable grounds to dispute Mr. Waldmann's claim. If you find that Mr. Waldmann did not earn a commission during these quarters you may find in favor of Tesla on this claim.[1]

---

[1] Source: 19 *Del. C. § 1102*

## 3.79   WAGE PAYMENT ACT-UNLAWFUL DISCHARGE (Waldmann)

In Count III Mr. Waldmann claims that Tesla terminated his employment because he filed a claim for unpaid commissions and salary with the Delaware Department of Labor. I have already instructed you that an employee has a right to file a claim against his employer under the Delaware wage payment law. Delaware's wage payment law also prohibits an employer from retaliating against an employee for filing a complaint with the Department of labor. Retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor.

Tesla Industries does not dispute that Mr. Waldmann filed a claim against Tesla Industries with the Department of Labor on January 23, 2006. Nor does Tesla Industries dispute that Mr. Waldmann was terminated on January 28, 2006 retroactively to January 1, 2006.

In order to find in favor of Mr. Waldmann on his claim of unlawful discharge, you must find that the fact that Mr. Waldmann filed a complaint with the Department of Labor was a motivating factor in Tesla's decision to terminate Mr. Waldmann on January 28, 2006. Motivating factor means that if Tesla was asked what its reasons were for firing Mr. Waldmann and it gave truthful responses, that one of those reasons would be that Mr. Waldmann filed a claim with the Delaware Department of Labor against Tesla.

Accordingly, if you find that one of the reasons that Tesla terminated Mr. Waldmann was that Mr. Waldmann filed a claim against Tesla with the Department of Labor, you must find in favor of Mr. Waldmann on Count III.[2]

Source:

---

[2] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

19 Del. C. §§ 1102, 1112; <u>Robinson v. Morris Moore Chevrolet-Buick</u>, 974 F.Supp. 571 (E.D.Tex. 1997)(citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250 (1989)).

**Tesla Objections**: Misleading. Unsupported by Delaware law. The Wage Payment Act does not provide for a private right of action. Further, in any event, the instruction above misstates Delaware law, as Section 1112 states:

> Any employer who discharges or in any manner discriminates against an employee because that employee has made a complaint or has given information to the Department pursuant to this chapter, or because the employee has caused to be instituted or is about to cause to be instituted any proceedings under this chapter, or has testified or is about to testify in any such proceedings shall be subject to a civil penalty of not less than $ 1,000 nor more than $ 5,000 for each such violation.

19 Del.C. § 1112(b).

### 3.80    <u>RIGHT TO INSPECT PERSONNEL FILES</u> (Waldmann)

Under Delaware law, and employee has a right, upon request, and an employer must permit, an employee to inspect the employee's own personnel files.  Personnel file means, if maintained by the employer, any application for employment, wage or salary information, notices of commendations, warning or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records, performance evaluations and medical records. Delaware law further requires that upon inspection of the employee's personnel file, an employee who disagrees with any of the information contained in such file, the employee may submit a written statement explaining the employee's position.  Finally, it is a violation of Delaware law to retaliate against an employee who has filed or is abut to file a Complaint to the Department of Labor regarding an alleged violation of this law.

In Count IX, Mr. Waldmann claims that Tesla refused to allow him to see his personnel file and refused to allow him to put an explanatory comments in his personnel file.  In addition, Mr. Waldmann alleges that Tesla retaliated against him because he reported Tesla's violation of Delaware law to the Delaware Department of Labor.  As I previously instructed, retaliation means discharging or in any way punishing an employee because that employee has made a complaint or has given information to the Department of Labor.

Tesla Industries does not dispute that Mr. Waldmann filed a claim against Tesla Industries with the Department of Labor on January 23, 2006.  Nor does Tesla Industries dispute that Mr. Waldmann was terminated on January 28, 2006 retroactively to January

1, 2006..

In order to find in favor of Mr. Waldmann on his retaliation claim, you must find that the fact that Mr. Waldmann's filing of a complaint or threatened filing of a complaint, with the Department of Labor was a motivating factor in Tesla's decision to terminate Mr. Waldmann on January 28, 2006.

Accordingly, if you find that Tesla refused to allow Mr. Waldmann access to his personnel file, refused to allow him to put an explanatory note in his personnel file or retaliated against Mr. Waldmann for threatening to, or filing a claim, with the Department of Labor, you must find in favor of Mr. Waldmann on Count IX.

If you find that Tesla has violated the Delaware law as set forth above, you are to award him statutory damages of not less than $1,000 and not more than $5,000 for each and every time that Tesla violated the foregoing law.[3]

Source:
19 Del. C. §§ 730 et seq.; <u>Robinson v. Morris Moore Chevrolet-Buick</u>, 974 F.Supp. 571 (E.D.Tex. 1997)(citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250 (1989)).

<u>**Tesla Objections**</u>: Misleading. Unsupported by Delaware law. The Delaware Right to Inspect Personnel Files law does not provide for a private right of action, or relief via a private right of action. Authority cited is inapposite as it concerns interpretation of the Uniform Services Employment and Reemployment Rights Act and arises out of the Fifth Circuit.

---

[3] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

## 3.81   DAMAGES FOR WRONGFUL DISCHARGE (Waldmann)

If you find that Mr. Waldmann was wrongfully discharged from his employment with Tesla Industries, then he is entitled to an award of compensatory damages in the amount of the wages that would have been payable during the remainder of the employment term, less any amount actually earned or that might have been earned by Mr. Waldmann by due and reasonable diligence during the period after the discharge.

In addition, you may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Plaintiff experienced as a consequence of Tesla's allegedly unlawful act. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.[4]

Source:
Ogden-Howard v. Brand, Del. Supr., 108 A. 277, 278 (1919)(measure of damages is salary lost for period entitled to recover less amounts actually earned or might have earned by due and reasonable diligence during such period after discharge); State v. Berenguer, Del. Super., 321A.2d 507, 510-11 (1974)(state employee). See also 29 Del. C. § 5949 (discharge and appeal procedures of state employees); McClelland v. Climax Hosiery Mills, N.Y. Supr., 169 N.E. 605,609 (1930)(prima facie elements of dam ages for wrongful discharge). Third Circuit Model Jury Instructions.

**Tesla Objections**: Misleading. Unsupported by Delaware law. Neither the Wage Payment Act, nor the Right to Personnel Files Act provide a private right of action or the relief requested.

---

[4] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

## 3.82 FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT (Waldmann)

Mr. Waldmann alleges in Count V that Tesla violated the Federal Electronic Communications Privacy Act. The Electronic Communications Privacy Act makes it illegal to use interstate wire communications to intercept or access electronically stored or electronically transmitted information that is not readily accessible to the general public.

Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, violated the Electronic Communications Privacy Act by using Mr. Waldmann's passwords to access Mr. Waldmann's private email account and mobile telephone account and other electronically stored or transmitted accounts without Mr. Waldmann's permission.

If you find that Tesla used the internet or some other form of wired or wireless telecommunications devise to access or intercept these accounts held by Mr. Waldmann without Mr. Waldmann's permission and that the accounts were not located outside of the State of Delaware, you must find in favor of Mr. Waldmann on Count V. You are further instructed that each and every time that it is a further violation of the act to disseminate information obtained in violation of the act.

If you find that Tesla has violated the federal statute, you are to award him statutory damages of not less than $100 and not more than $10,000 for each and every time that Tesla violated the federal statute.[5]

Source:    18 U.S.C. § 2510, *et. seq.*

---

[5] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

**Tesla Objections**:    Claim negated by Court's temporary restraining order.    This instruction is unnecessary and is not supported by the law as, under the law, an intercept must occur contemporaneously with transmission of the communication. <u>Fraser v. Nationwide Mutual Insurance Co.</u>, 352 F.3d 107 (3rd Cir. 2003); <u>Wesley College v. Pitts</u>, et al., 974 F.Supp. 375 (Del. D.C. 1997), aff'd 172 F.3d 861 (3rd Cir. 1998).  Moreover, there can be no intercept of an e-mail in storage.  <u>Fraser</u>, 352 F.3d at 107.  An employer has the right to search stored e-mails as the need arises if the employer provided the employee with the ability to send and receive electronic communications.  <u>Fraser</u>, at p. 114-115; <u>Freedom Calls Foundation v. Bukstel</u>, 2006 U.S. Dist. Lexis 19685, 87 (E.D.N.Y. 2006).

**3.83   DELAWARE ELECTRONIC SURVEILLANCE AND INTERCEPTION OF COMMUNICATIONS ACT (Waldmann)**

Mr. Waldmann alleges in Count VI that Tesla violated the Delaware Electronic Surveillance and Interception of Communications Act law by accessing Mr. Waldmann's private electronic information accounts.

Similar to the Federal Electronic Communications Privacy Act I described to you in the last instruction, the Delaware Electronic Surveillance Act makes it illegal for any person to intentionally intercept or attempt to intercept an electronic communication or to disclose information that was intercepted or accessed by the use of a wire or electronic communication.

If you find that Tesla used the internet or some other form of wired or wireless telecommunications devise to access or intercept these accounts held by Mr. Waldmann without Mr. Waldmann's permission, you must find in favor of Mr. Waldmann on Count VI. You are further instructed that each and every time that it is a further violation of the act to disseminate information obtained in violation of the act. The difference between the state statute and the federal statute is whether the accounts were located inside or outside of the State of Delaware.

If you find that Tesla has violated the state statute, you are to award him statutory damages of not less than $100 and not more than $1,000 for each and every time that Tesla violated the state statute. Under the state statute, in addition to statutory damages, you may also award Mr. Waldmann punitive damages. If you have awarded Mr. Waldmann statutory damages under the federal statute, you are not to award him additional statutory damages under the state statute for the same violation. However,

you may award punitive damages for the same violation.[6]


Source:        11 Del. C. § 2401, *et. seq.*

**Tesla Objections**:  Claim negated by Court's temporary restraining order.  Also, not supported by Delaware law, as the prohibitions under § 2421(a) do not apply to conduct authorized by the person or entity providing an electronic communications service.  § 2421(c)(1).

---

[6] It is Waldmann's position that attorney fees, costs and other damages are to be awarded by the court.

**3.84    INVASION OF PRIVACY/INTRUSION UPON SECLUSION (Waldmann)**

Mr. Waldmann alleges in Count VII that Tesla invaded his privacy. Specifically, Mr. Waldmann alleges that Tesla Industries, through the acts of its agents, has intruded on Mr. Waldmann's private affairs by accessing his private email account and mobile telephone account.

In order to find in favor of Mr. Waldmann on his claim of invasion of privacy, you must find that Tesla has intruded, physically or otherwise, into Mr. Waldmann's private affairs. You must also find that Tesla's intrusion into Mr. Waldmann's private affairs is of the type that would be highly offensive to a reasonable person. The question is whether a reasonable person in similar circumstances would find the conduct very objectionable or would be expected to take serious offense to it.

If you find that Tesla intruded on Mr. Waldmann's private affairs and that such intrusion would be highly offensive to a reasonable person then you must find in favor of Mr. Waldmann on Count VII.

Source: Delaware Superior Court Civil Model Jury Instructions . . . . . . . . . . . . . . § 11.18

**3.85    DAMAGES - INVASION OF PRIVACY (Waldmann)**

If you find that Mr. Waldmann has not sustained his burden of proof, the verdict must be for Tesla. If you do find that Mr. Waldmann is entitled to recover for damages that were proximately caused by the invasion of his privacy by Tesla, you should consider the compensation to which Mr. Waldmann is entitled.

Mr. Waldmann is entitled to be fairly and adequately compensated for the injuries that you believe he suffered as a result of Tesla's invasion of his privacy.

Mr. Waldmann may recover damages for the following injuries:

(1) the harm to his interest in privacy;

(2) the mental distress suffered as a result of the invasion of privacy;

(3) any other injuries suffered as a result of the invasion of privacy; and

(4) punitive damages if there was malicious or intentional desire to injure or hurt Mr. Waldmann.

Your award must be based on the evidence and not on mere speculation. The law does not furnish any fixed standards by which to measure damages for invasion of privacy or for mental suffering, and counsel are not permitted to argue that a specific sum would be reasonable. You must be governed by your own experience and judgment, by the evidence in the case, and by the purpose of a damages award: fair and reasonable compensation for harm wrongfully caused by another.

If you find that Tesla's conduct constituted an invasion of privacy but that Mr. Waldmann did not suffer an injury to justify compensation then Mr. Waldmann may recover nominal damages, usually in the amount of $1.00.

Source:
*Reardon v. News Journal*, Del. Supr., 164 A.2d 263, 266 (1960); *Gutheridge v. Pen-Mod,*

*Inc.*, Del. Super., 239 A.2d 709, 714-15 (1967). *See also* RESTATEMENT (SECOND) OF TORTS § 652H (1965).

**Tesla Objection**:  Invasion of privacy covered by Del. P.J.I. Civ. § 11.18.

### 3.86    PUNITIVE DAMAGES (Waldmann)

If you found against Tesla on Mr. Waldmann's claims for conversion, abuse of process, invasion of privacy or violation of the Delaware Electronics Communication act or wrongful discharge, you must determine whether Tesla is also liable to Mr. Waldmann for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate a party for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages for the purpose of punishing the person doing the wrongful act and to discourage such persons and others from similar wrongful conduct in the future.

You may award punitive damages to punish Tesla for its outrageous conduct and to deter it, and others like it, from engaging in similar conduct in the future if you find by a preponderance of the evidence that Tesla acted intentionally or recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct refers to conscious awareness. Reckless conduct refers to conscious indifference. Each requires that the defendant foresee that its conduct threatens a particular harm to another. Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result.

The law provides no fixed standards for the amount of punitive damages but leaves the amount to your sound discretion, exercised without passion or prejudice. In

determining any award of punitive damages, you must consider the following: the reprehensibility or outrageousness of Tesla's conduct and the amount of punitive damages that will deter it and others like it from similar conduct in the future. You may consider Tesla's financial condition for this purpose only. Tesla's financial condition must not be considered in assessing compensatory damages. Any award of punitive damages must bear a reasonable relation to Mr. Waldmann's compensatory or nominal damages. If you find that Mr. Waldmann is entitled to an award of punitive damages, you must state the amount of punitive damages separately on the verdict form.

Source:
*Devaney v. Nationwide Mut. Auto Ins. Co.*, Del. Supr., 679 A.2d 71, 76-77 (1996); *Tackett v. State Farm Fire and Cas. Ins. Co.*, Del. Supr., 653 A.2d 254, 265-66 (1995)(punitive damages available in bad faith action if breach is particularly egregious); *Jardel Co. v. Hughes*, Del. Supr., 523 A.2d 518, 527-31 (1987); *Saxton v. Harvey & Harvey*, Del. Super., C.A. No. 85C-JL-3, Poppiti, J. (Apr. 14, 1987).

**Tesla Objection**: Argumentative.

## 3.87    EFFECT OF INSTRUCTION AS TO DAMAGES

The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of the plaintiff from a preponderance of the evidence in the case in accordance with the other instructions.[1]

---

[1] *Source: 3 Fed. Jury Prac. & Instr. § 106.02 (5th ed.)*

## 3.88    DELIBERATION AND VERDICT

How you conduct your deliberations is up to you. But, however, when you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges - judges of the fact, not me. Your sole interest is to seek the truth from the evidence in the case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. You verdict must be unanimous.

A form verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally sent to me through the foreperson, who by custom of this court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor or either party. You must decide the case yourselves based on the evidence presented.[1]

---

[1] Source: The Honorable Gregory M. Sleet, Uniform Jury Instructions in the United States District Court for the District of Delaware (Jan. 18, 2006)

91

# SCHEDULE J-1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  06-CV-055 GMS |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID C. WALDMANN | ) | |
| | ) | |
| Defendant. | ) | |

---

## SCHEDULE J-1

## PLAINTIFF TESLA INDUSTRIES, INC.'S
## SPECIAL VERDICT FORMS

1. (a) Do you find that Defendant Waldmann misappropriated one      Yes_____  No_____

   or more of Tesla's trade secrets?

   (b) If so, do you find that Tesla was damaged by the      Yes_____  No_____

   above-referenced actions(s)?

   (c) If so, how much in damages do you award to Tesla in this regard?

   $_____

2. (a) Do you find that Defendant Waldman misappropriated any of      Yes_____  No_____

   Tesla's confidential information?

   (b) If so, do you find that Tesla was damaged by the above-      Yes_____  No_____

   referenced action(s)?

   (c) If so, how much in damages do you award to Tesla in this regard?

   $_____

3.    (a) Do you find that Defendant Waldman with others conspired    Yes_____  No_____
to misappropriate the confidential information of Tesla Industries?

(b) If so, do you find that Tesla was damaged by the above-    Yes_____  No_____
referenced action(s)?

(c) If so, how much in damages do you award to Tesla in this regard?

      $_____


4.    (a) Do you find that Defendant Waldman and others conspired    Yes_____  No_____
to misappropriate Tesla's trade secrets?

(b) If so, do you find that Tesla was damaged by the above-    Yes_____  No_____
referenced action(s)?

(c) If so, how much in damages do you award to Tesla in this regard?

      $_____


5.    (a) Do you find that Defendant Waldman converted property,    Yes_____  No_____
confidential information, or trade secrets of Tesla for his own
use or benefit?

(b) If so, do you find that Tesla was damaged by the above-    Yes_____  No_____
referenced action(s)?

(c) If so, how much in damages do you award to Tesla in this regard?

      $_____

6.  (a) Do you find that Defendant Waldman conspired to convert    Yes_____ No_____

    Tesla's property, confidential information, or trade secrets of

    Tesla for his own use or benefit?

    (b) If so, do you find that Tesla was damaged by the above-    Yes_____ No_____

    referenced action(s)?

    (c) If so, how much in damages do you award to Tesla in this regard?

        $_____

7.  (a) Do you find that Defendant Waldman breached his    Yes_____ No_____

    Agreement of Non-disclosure with Tesla?

    (b) If so, do you find that Tesla was damaged by the above-    Yes_____ No_____

    referenced action(s)?

    (c) If so, how much in damages do you award to Tesla in this regard?

        $_____

8.  (a) Do you find that Defendant Waldman breached his    Yes_____ No_____

    Confidentiality Agreement with Tesla?

    (b) If so, do you find that Tesla was damaged by the above-    Yes_____ No_____

    referenced action(s)?

    (c) If so, how much in damages do you award to Tesla in this regard?

        $_____

9.   (a) Do you find that Defendant Waldman breached his          Yes_____ No_____
     employment agreement(s) with Tesla by promoting the
     products of other individuals or companies while
     Defendant Waldmann was employed by Tesla?
     (b) If so, do you find that Tesla was damaged by the above-   Yes_____ No_____
     referenced action(s)?

     (c) If so, how much in damages do you award to Tesla in this regard?

          $_____

10.  (a) Do you find that Defendant Waldman wrongfully interfered   Yes_____ No_____
     with the prospective contractual relations of Tesla?
     (b) If so, how much in damages do you award to Tesla in this regard?

          $_____

11.  (a) Do you find that Defendant Waldman conspired with others   Yes_____ No_____
     to wrongfully interfere with the prospective contractual relations
     of Tesla?
     (b) If so, how much in damages do you award to Tesla in this regard?

          $_____

12.  (a) Do you find that punitive damages should be assessed in    Yes_____ No_____
     favor of Tesla Industries against Defendant Waldman?

(b) If so, how much do you award in favor or Tesla?

$_____

13.  Do you find that the willful and malicious misappropriation        Yes_____ No_____

by Defendant Waldman causes Defendant Waldmann to be

liable to Tesla under the Delaware Uniform Trade Secrets Act

for Tesla attorneys fees?

14.  If you answered yes to # 7, 8, and/or 9 and found that             Yes _____ No_____

Defendant Waldmann breached one or more of his employment

agreements, do you find that Waldmann's breach of the employment

agreement(s) with Tesla cause Waldmann to be liable under

the employment agreements for Tesla's attorneys fees?

# PROPOSED SPECIAL VERDICT FORM (WALDMANN)

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

TESLA INDUSTRIES, INC. a Delaware
Corporation,

       Plaintiff,

    v.

DAVID C. WALDMANN, LYNDOL W.
HOLLINGSWORTH, CHARLES MINNICK
a.k.a. CHUCK MINNICK, and NEW
MILLENNIUM TOOLS, INC., an Oregon
Corporation,

       Defendants.

Civil Action No. C.A. No.: 06-55-GMS

## PROPOSED SPECIAL VERDICT FORM
## (WALDMANN)

**I.**    **TESLA's CLAIMS AGAINST WALDMANN**

    **A.**    **MISAPPROPRIATION OF TRADE SECRETS**

    **QUESTION 1:**    Do you find that any of the products or information

identified by Tesla are trade secrets?

                Yes _____    No _____

**If you answered "Yes" to Question 1, then go to Question 3. If you answered "No"
to Question 1, then go to Question 2.**

    **QUESTION 2:**    Do you find that Tesla acted in bad faith by claiming

misappropriation of trade secrets?

                Yes _____    No _____

**Proceed to <u>Section IB: TESLA'S BREACH OF CONTRACT CLAIM</u>.**

**QUESTION 3:**    Identify the products or information identified by Tesla that constitute trade secrets.

_____

_____

**Proceed to Question 4.**

**QUESTION 4:**    Do you find that Tesla's efforts to maintain the secrecy of its alleged trade secrets was reasonable under the circumstances?

Yes _____    No _____

**If you answered "Yes" to Question 4, then go to Question 5. If you answered "No" to Question 4, then go to <u>Section IB: TESLA'S BREACH OF CONTRACT CLAIM</u>**

**QUESTION 5:**    Do you find that Mr. Waldmann unlawfully disclosed to third parties Tesla's Trade Secrets, as you identified them, or unlawfully used Tesla's Trade Secrets, as you identified them?

Yes _____    No _____

**If you answered "Yes" to Question 5, then go to Question 6. If you answered "No" to Question 5, then go to <u>Section IB: TESLA'S BREACH OF CONTRACT CLAIM</u>**

**QUESTION 6:**    Do you find that Tesla's claim for misappropriation of trade secrets is barred by Tesla's unclean hands?

Yes _____    No _____

**If you answered "No" to Question 6, then go to Question 7. If you answered "Yes" to Question 6, then go to <u>Section IB: TESLA'S BREACH OF CONTRACT CLAIM</u>**

2

**QUESTION 7:**    If you found that Mr. Waldmann misappropriated trade secrets of Tesla, has Tesla suffered any damages as a direct and proximate result of Waldmann's actions?

Yes _____    No _____

**If you answered "Yes" to Question 7, then go to Question 8. If you answered "No" to Question 7, then go to Section IB: TESLA'S BREACH OF CONTRACT CLAIM**

**QUESTION 8:**    If you found that Mr. Waldmann misappropriated trade secrets of Tesla, what amount of damages for said misappropriation do you find Tesla to have proven by a preponderance of the evidence?

$ _____

**Proceed to Question 9.**

**QUESTION 9:**    Do you find that Mr. Waldmann acted in bad faith in misappropriating Tesla's trade secrets?

Yes _____ No _____

**Proceed to Question 10.**

**B.    TESLA'S CLAIM OF BREACH OF CONTRACT**

**QUESTION 10:**  Do you find that Mr. Waldmann breached his Agreement of Nondisclosure with Tesla?

Yes_____ No_____

**If you answered "Yes" to Question 10, then go to Question 11. If you answered "No" to Question 10, then go to Section IC: TESLA'S CONVERSION CLAIM.**

**QUESTION 11:**  Do you find that Tesla also violated the Agreement of Nondisclosure?

Yes_____ No_____

3

**If you answered "No" to Question 11, then go to Question 12. If you answered "Yes" to Question 11, then go to Section IC: TESLA'S CONVERSION CLAIM**

**QUESTION 12:** Do you find that Tesla was damaged by Mr. Waldmann's breach of the Agreement?

Yes_____    No_____

**If you answered "Yes" to Question 12, then go to Question 13. If you answered "No" to Question 12, then go to Section IC: TESLA'S CONVERSION CLAIM.**

**QUESTION 13:** Do you find that because of this breach Tesla has incurred additional damages over those which it has already been awarded in this case?

Yes_____    No_____

**If you answered "Yes" to Question 13, then go to Question 14. If you answered "No" to Question 13, then go to Section IC: TESLA'S CONVERSION CLAIM**

**QUESTION 14:** What additional amount of damages do you find that Tesla is to be awarded, if any?

$ _____

**Proceed to Question 15.**

**C.    TESLA's CONVERSION CLAIM**

**QUESTION 15:** Do you find that Mr. Waldmann unlawfully took or unlawfully kept Tesla's property?

Yes_____    No_____

**If you answered "Yes" to Question 15, then go to Question 16. If you answered "No" to Question 15, then go to Section ID: TESLA's CONSPIRACY CLAIM.**

4

**QUESTION 16:**    Identify the products or information which Mr. Waldmann unlawfully took or kept from Tesla.

_____

_____

**Proceed to Question 17.**

**QUESTION 17:** Do you find that Tesla was damaged by Mr. Waldmann's taking or keeping of Tesla's property?

Yes_____ No_____

**If you answered "Yes" to Question 17, then go to Question 18.  If you answered "No" to Question 17, then go to Section ID:  TESLA's CONSPIRACY CLAIM.**

**QUESTION 18:** Do you find that because of Mr. Waldmann's actions in unlawfully taking or keeping Tesla's property, Tesla has incurred additional damages over those which it has already been awarded in this case?

Yes_____ No_____

**If you answered "Yes" to Question 18, then go to Question 19.  If you answered "No" to Question 18, then go to Section ID:  TESLA's CONSPIRACY CLAIM**

**QUESTION 19:** What additional amount of damages do you find that Tesla is to be awarded, if any?

$ _____

**Proceed to Question 20.**

**D.    TESLA's CONSPIRACY CLAIM**

**QUESTION 20:** Do you find that Mr. Waldmann conspired with NMT, Hollingsworth or Minnick to unlawfully take or keep Tesla's property or to misappropriate Tesla's Trade Secrets?

Yes_____ No_____

**If you answered "Yes" to Question 20, then go to Question 21. If you answered "No" to Question 20, then go to <u>Section II: WALDMANN'S CLAIMS AGAINST TESLA.</u>**

**QUESTION 21:** Do you find that Tesla was damaged by said conspiracy?

Yes_____ No_____

**If you answered "Yes" to Question 21, then go to Question 22. If you answered "No" to Question 21, then go to <u>Section II: WALDMANN'S CLAIMS AGAINST TESLA</u>.**

**QUESTION 22:** Do you find that because of said conspiracy, Tesla has incurred additional damages over those which it has already been awarded in this case?

Yes_____ No_____

**If you answered "Yes" to Question 22, then go to Question 23. If you answered "No" to Question 22, then go to <u>Section II: WALDMANN'S CLAIMS AGAINST TESLA</u>.**

**QUESTION 23:** What additional amount of damages do you find that Tesla is to be awarded, if any?

$ _____

**Proceed to Question 24.**

## II.    WALDMANN'S CLAIMS AGAINST TESLA.

### A.    Waldmann's Claim under Delaware Wage Payment Law & Unlawful Discharge

**QUESTION 24:** (a)  Do you find that Tesla failed to pay Mr. Waldmann his salary for the period January 1, 2006 to January 28, 2006?

Yes_____   No_____

(b)  If yes, how much should he have been paid?  $ _____

(c) If yes, was there a reasonable dispute as to how much Mr. Waldmann was owed?

Yes_____   No_____

(d)  If there was a reasonable dispute, how much (if any) was <u>not</u> the subject of a reasonable dispute?  $ _____

**Proceed to Question 25.**

**QUESTION 25:** (a)  Do you find that Tesla failed to pay Mr. Waldmann his commissions for the Third Quarter of 2005?

Yes_____   No_____

(b)  If yes, how much should Mr. Waldmann have been paid?  $ _____

(c)  If yes, was there a reasonable dispute as to how much Mr. Waldmann was owed?

Yes_____   No_____

(d)  If there was a reasonable dispute, how much (if any) was <u>not</u> the subject of a reasonable dispute?  $ _____

**Proceed to Question 26.**


**QUESTION 26:**  (a)  Do you find that Tesla failed to pay Mr. Waldmann his commissions for the Fourth Quarter of 2005?

Yes_____  No_____

(b)  If yes, how much should Mr. Waldmann have been paid?  $ _____

(c)  If yes, was there a reasonable dispute as to how much Mr. Waldmann was owed?

Yes_____  No_____

(d)  If there was a reasonable dispute, how much (if any) was <u>not</u> the subject of a reasonable dispute?  $ _____

**Proceed to Question 27.**


**QUESTION 27:**  (a) Do you find that Tesla retaliated against Mr. Waldmann for reporting to the Delaware Department of Labor Tesla's failure to pay wages or commissions?

Yes_____  No_____

(b) Do you find that Tesla retaliated against Mr. Waldmann for reporting to the Delaware Department of Labor Tesla's failure to allow him access to his personnel file?

Yes_____  No_____

8

If you answered "Yes" to Question 27(a) or (b), then go to Question 28.  If you answered "No" to both Questions 27(a) and (b), then go to Question 30.

**QUESTION 28:**  How much should Mr. Waldmann be awarded in compensatory damages?

$\underline{\hspace{2cm}}$

**Proceed to Question 29.**

**QUESTION 29:**  (a)  Do you find that Tesla's actions in retaliating against Mr. Wadlmann was willful and malicious?

Yes_____    No_____

(b)If yes, how much in punitive damages should Mr. Waldmann be awarded?

$\underline{\hspace{2cm}}$

**Proceed to Question 30.**

**B.    Electronic Communications/Intrusion Upon Seclusion/Privacy**

**QUESTION 30:**  (a) Do you find that Tesla violated the Federal Electronics communications act by accessing through the internet one or more of Mr. Waldmann's accounts?

Yes_____    No_____

(b) Do you find that Tesla violated the Delaware Electronics communications act by accessing through the internet one or more of Mr. Waldmann's accounts?

Yes_____    No_____

(c)    If you answered "yes" to either 30(a) or (b), how much in damages do you award to Mr. Waldmann (not less than $100 and not more than $10,000 for each and every time the federal act was violated and not less than $100 and not more than $1,000

9

for each and every time that Tesla violated the state statute, but do not award damages under both acts)?

$ _____

(c)    If you answered "yes" to 30(b), do you find that Tesla's action in accessing Mr. Waldmann's account(s) was willful and malicious?

Yes\_\_\_\_\_    No\_\_\_\_\_

(d)    If yes to 30(c), how much in punitive damages should Mr. Waldmann be awarded?

$ _____

**QUESTION 31:**  (a)  Do you find that Tesla intruded upon the privacy of Mr. Waldmann by accessing one or more of Waldmann's accounts?

Yes\_\_\_\_\_    No\_\_\_\_\_

(b)    If yes, how much should Mr. Waldmann be awarded?  $ _____

(c)    If you answered "yes", do you find that Tesla's action in intruding open the privacy of Mr. Waldmann was willful and malicious?

Yes\_\_\_\_\_    No\_\_\_\_\_

(d)    If yes to 31(c), how much in punitive damages should Mr. Waldmann be awarded above that already awarded (if any)?

$ _____

C.    **Waldmann's Conversion Claim**

**QUESTION 32:** (a) Do you find that Tesla unlawfully kept, from some period of time until March 14, 2006, certain property belonging to Mr. Waldmann?

Yes_____ No_____

(b)     If yes, how much should Mr. Waldmann be awarded for being temporarily deprived of the use and benefit of his property?  $ _____

(c)     If you answered "yes", do you find that Tesla's actions were willful and malicious?

Yes_____ No_____

(d)     If yes to 32(c), how much in punitive damages should Mr. Waldmann be awarded?

$ _____


**Waldmann's Claim for Abuse of Process**

**QUESTION 33:**  Do you find that Tesla improperly initiated legal process against Defendant Waldmann in the nature of a Summons, Complaint, Preliminary Injunction, Stipulated Restraining Order, a third-party Subpoena on D.C. Power Equipment in Texas, Requests for Production, Interrogatories or Depositions?

Yes _____     No _____

**If you answered "Yes" to Question 33, then go to Question 34.  If you answered "No" to Question 33, then sign the Form.**

**QUESTION 34:**  Do you find by preponderance of the evidence that Tesla's improper use of the legal system was willful and not for a proper purpose?

Yes _____     No _____

11

**If you answered "Yes" to Question 34, then go to Question 35.  If you answered "No" to Question 34, then sign the Form.**

      **QUESTION 35:**  If you find that Tesla is liable for abuse of process, what

amount of damages for the abuse of process is Mr. Waldmann entitled to recover?

$ _____

**Proceed to Question 36.**

      **QUESTION 36:** Do you find that Tesla's action in the foregoing was willful

and malicious?

Yes\_\_\_\_\_ No\_\_\_\_\_

**If you answered "Yes" to Question 36, then go to Question 37.  If you answered "No" to Question 36, then sign the Form.**

      **QUESTION 37:** How much in punitive damages should Mr. Waldmann be

awarded?

$ _____

**PLEASE SIGN THE FORM**

                            _____

                            Signature of Foreman

# SCHEDULE K-1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

---

## <u>SCHEDULE K-1</u>

## <u>JOINT PROPOSED VOIR DIRE</u>

Good morning, ladies and gentlemen, I am about to ask you a series of questions that we call *voir dire*. The purpose of the *voir dire* examination is:

a.  to enable the court to determine whether or not any prospective juror should be excused for cause;

b.  to enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges – that is, challenges for which counsel need not give a reason.

**Staff introduced.**

**Panel sworn.**

If any of you would answer "yes" to any of these questions, I would ask you to stand up and, upon being recognized by me, to state your number. At the end of the questions, I will ask those who have responded "yes" to any of the questions to come to sidebar (that is, up to the bench next to me) with counsel for the parties to discuss your answers.

This case is expected to take five (5) days to try. The schedule that I expect to maintain over those five (5) days will be as follows:

We will normally begin the day at 9:00 a.m. promptly. We will go until 1:00 p.m. and, after a one-hour break for lunch, from 2:00 p.m. to 4:30 p.m. There will be a fifteen-minute break at 11:00 a.m. and another fifteen minute break at 3:15 p.m. One exception to this schedule may occur when the case is submitted to those of you who are selected to serve as jurors for your deliberation. On that day, the proceedings might last beyond 4:30 p.m. We will post a copy of this schedule for the jury's convenience in the jury deliberation room.

1.    Does the length of this trial or the schedule contemplated by the court present a special problem to any member of the panel?

## DESCRIPTION OF THE CASE

This case involves allegations by the Plaintiff, Tesla Industries, Inc., that a former employee, Defendant David Waldmann, stole trade secrets and provided those trade secrets to Charles Minnick, Lyndol Hollingsworth, and a company that they founded, New Millennium Tools, Inc. Tesla also asserts claims of breach of contract, conversion, tortious interference with prospective contractual relations, and conspiracy against defendant Waldmann. Defendant Waldmann denies these allegations. Defendant Waldmann asserts counterclaims alleging Tesla violated the Delaware Wage Payment Statutes, the Employee Retirement Income Security Act, the Federal Electronic Communications Privacy Act, the Delaware Electronic Surveillance and Interception of Communications Act, and Delaware personnel file inspection statutes, as well as counterclaims for breach of contract, intrusion of privacy, conversion, abuse of process, and unlawful discharge. Tesla denies the allegations in the counterclaims by Defendant Waldmann.

2.    Have you heard of the Plaintiff, Tesla Industries, Inc.?

3.    Have you heard of the Defendant, David Waldmann?

2

4.    Have you heard of Charles Minnick, Lyndol Hollingsworth, or New Millennium Tools, Inc.?

5.    Has any member of the panel heard or read anything about this case?

6.    Have you or any member of your immediate family (spouse, child, parent or sibling) ever been employed by Tesla Industries?

7.    Have you or any member of your immediate family ever had a business relationship of any kind with Tesla Industries or New Millennium Tools?

8.    Have you or any member of your immediate family had any negative or positive experience with the products of either or these companies?

**Counsel will be asked to introduce themselves, their firms, etc.**

9.    Does any member of the panel, or your immediate family, know any of the attorneys involved in the case or have you or any of your immediate family had any business dealings with or been employed by any of these attorneys or their respective law firms?

**Counsel will be asked to read names of potential witnesses.**

10.    Does any member of the panel know or is any member of the panel familiar with any of the prospective witnesses?

11.    Have you or any member of your immediate family ever served in the United States military?

12.    Do you hold any opinions about the military?

13.    Have you or any member of your immediate family ever held a security clearance?

14.    Have you or any member of your immediate family ever worked as an electrician, electrical engineer or with power or electricity at their job?

3

15. Have you or any member of your immediate family ever worked as a mechanical engineer or repair person at their job?

16. Have you or any member of your immediate family ever worked with metals at their job?

17. Have you or any member of your immediate family ever worked with plastics or resins at their job?

18. Have you or any member of your immediate family ever worked with power tools at their job?

19. Have you or any member of your immediate family ever worked in the field of government contracting?

20. Have you or any member of your immediate family ever worked in a factory?

21. Do you or any of your immediate family members own a patent, copyright, or trade secret?

22. Have you, or anyone you know, ever been involved in a patent, copyright, or trade secret dispute?

23. Have you, or anyone you know, ever been involved as a party or a witness in patent, copyright, or trade secret litigation?

24. Have you or any member of your immediate family ever attended law school or worked in a law firm or organization with lawyers?

25. Have you ever served as a juror in a criminal or civil case or as a member of a grand jury in either a federal or state court?

4

26.    Have you or has anyone in your immediate family ever participated in a lawsuit as a party (such as suing someone or being sued or being tried for a criminal offense) or in any other capacity (such as a witness)?

27.    If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and the context of the law as I will give it to you in my instructions, disregarding any other ideas, notions or beliefs about the law you may have or that you may have encountered in reaching your verdict?

28.    Is there any member of the panel who has any special disability or problem that would make serving as a member of the jury difficult or impossible, such as difficulty seeing or hearing or discomfort from remaining seated too long?

Having heard the questions put to you by the Court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?

5

# SCHEDULE L-1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

## <u>SCHEDULE L-1</u>

## <u>SUMMARY OF SETTLEMENT NEGOTIATIONS</u>

Plaintiff Tesla Industries, Inc. and former Defendants Lyndol Hollingsworth, Charles Minnick, and New Millennium Tools, Inc. have reached a settlement in this matter.  Tesla and Defendant David Waldmann had engaged in extended settlement discussions but were unable to reach any agreement.  Any additional discussions are not likely to be productive as the parties are at an impasse.

# SCHEDULE M-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | : | |
| A Delaware Corporation | : | Civil Action No. 06-55-GMS |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID C. WALDMANN, | : | |
| | : | |
| Defendant. | : | |

### SCHEDULE M-1

### SUMMARY OF ADDITIONAL DISCOVERY SOUGHT BY PLAINTIFF

Plaintiff Tesla Industries, Inc. is not seeking to conduct any additional discovery.