1            IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                        -   -   -

4    TESLA INDUSTRIES, INC.,           :    Civil Action
     a Delaware corporation,           :
5                                       :
                    Plaintiff,          :
6                                       :
          v.                            :
7                                       :
     DAVID C. WALDMANN,                 :
8                                       :
                    Defendant.          :    No. 06-55-GMS
9
                             -   -   -

10
                        Wilmington, Delaware
11                      Tuesday, May 27, 2008
                          10:30 a.m.
12                        CONFERENCE

13                       -   -   -

14   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

15   APPEARANCES:

16          LOUIS J. RIZZO, JR., ESQ., and
            JASON S. GARBER, ESQ.  (Baltimore, MD)
17          Reger Rizzo & Darnall LLP

18                          Counsel for Plaintiff

19          JOHN D. DEMMY, ESQ.
            Stevens & Lee
20                   -and-
            JOHN A. ADAMS, ESQ.
21          Susanin, Widman & Brennan, P.C.
            (King of Prussia, PA)

22
                            Counsel for Defendant
23                          Waldmann

24

25

1          THE COURT:  Good morning.

2     Gentlemen, why are here again?  What is it that causes this

3     action to seem to not want to die?

4     Let's start with introductions.  Who is plaintiff?

5          MR. RIZZO:  Good morning, Your Honor.  Louis

6     Rizzo.  I represent Tesla.  This is my partner, Jason

7     Garber, who has been admitted pro hac vice in the case.

8          MR. ADAMS:  John Adams from Susanin Widman &

9     Brennan.  We represent Mr. Waldmann.

10          MR. DEMMY:  John Demmy from Stevens & Lee, also

11     for Mr. Waldmann.

12          THE COURT:  I could be getting cases confused.

13     We have enough of them that that would be understandable.

14     Did I not make a personal effort to settle this case?

15          MR. ADAMS:  No, sir.

16          THE COURT:  If it was that one, I was going to

17     be real annoyed with you guys.

18          MR. ADAMS:  This is the case that got assigned

19     to the Magistrate -- I can't recall her name right now --

20     then all of a sudden some shifting of cases went around and

21     she was unable to do it, and it never went to mediation.

22          THE COURT:  Was there ever a settlement in

23     principle in this case?

24          MR. GARBER:  Among several of the parties, Your

25     Honor, original parties, defendants, there was a settlement

1    reached between the plaintiff and those three defendants.

2    And they have been removed from the case.  That's subject to

3    an order.

4         Settlement discussions did continue with the

5    remaining defendant Waldmann, but unsuccessfully.  It was

6    around that time that we stepped in as replacement counsel

7    for the plaintiff.

8              THE COURT:  Who was in?

9              MR. RIZZO:  Werb & Sullivan.

10             MR. ADAMS:  Paul Crawford.

11             MR. DEMMY:  Connolly Bove.

12             MR. GARBER:  As plaintiff, we picked up sort of

13   where they left off, in terms of trying to see whether

14   settlement could happen.  We spent some time trying to do

15   that, as well as getting the file itself sort of

16   transferred.  We ultimately reported to the Court that we

17   could not get it settled, then the dates were set.

18             THE COURT:  How wide is the gulf?  You don't

19   have to give me numbers.  Is it the Grand Canyon?

20             MR. GARBER:  A lot of the components there, a

21   lot of non-monetary components seem to have been hashed out

22   and worked out.  It was the monetary component that has been

23   the sticking point.  It's the difference between zero and a

24   number.

25             THE COURT:  If you don't mind -- we can do this

1    off the record.

2                    (Discussion off the record.)

3                    THE COURT:  These are more -- I put them in the

4    category of administrative or housekeeping -- do's and

5    don'ts for me.  I would certainly be willing to entertain

6    any questions that you might have.

7                    I take it, to the extent there were any motions

8    in limine filed, we disposed of those motions.

9                    MR. GARBER:  There were a few that decision was

10   reserved until the time of trial.

11                   THE COURT:  Do you happen to recall -- we can

12   check the docket.  This is the time of trial, you said?

13                   MR. GARBER:  I believe so.

14                   THE COURT:  We will check the docket and see

15   what's been reserved.

16                   Did we, do you recall, counsel, whether you

17   submitted voir dire, proposed voir dire?

18                   MR. GARBER:  You ruled on those.

19                   MR. ADAMS:  I believe our voir dire was mutual,

20   Your Honor.

21                   THE COURT:  We will pull out the old, Ms.

22   McDavid -- I didn't see it in this.

23                   MR. RIZZO:  It is, Your Honor.  I think it's

24   Exhibit K.

25                   MR. ADAMS:  I believe it was substantially the

1    same as the last time.

2                    MR. RIZZO:  I believe that to be the case.

3                    MR. GARBER:  Part 2 of the second bound volume.

4                    MR. RIZZO:  It appears you only have one of the

5    bound volumes.  There is a Part 1 and 2.

6                    THE COURT:  Ms. McDavid, I only have the

7    document that appears at 225.

8                    MS. McDAVID:  That is the supplemental pretrial

9    order.

10                   THE COURT:  I need the volumes.  Do you have the

11   docket numbers?

12                   Let's work from this.

13                   MR. RIZZO:  It is reflected on the docket

14   entries.

15                   THE COURT:  You know what?  It's part of all of

16   the same docket, probably, 225, but I don't have Part 1 and

17   Part 2.

18                   MR. ADAMS:  You just have Part 1.

19                   THE COURT:  I just have the pretrial order.

20   While you are getting it, I will work from counsel's copy.

21                   I am going to look through real quick.  Let's

22   look at No. 12.  "Do you hold any opinions about the

23   military?"  Let me ask you this:  Why do you think that's

24   important to query the panel?

25                   MR. GARBER:  There are several reasons.  First

1    of all, most of the client contact that's at issue in the

2    case involves the military.  Several of the witnesses are

3    actually military personnel.

4              THE COURT:  How about any opinions, words to

5    this effect, "that would make it difficult for you or

6    impossible for you to be a fair and impartial juror"?

7              MR. ADAMS:  That is fine, Your Honor.

8              THE COURT:  I gather they are going to hear

9    military witnesses on both sides of the case.  Or is it just

10   one?

11             MR. ADAMS:  It could be both sides, Your Honor.

12             THE COURT:  Basically, what we are trying to get

13   at is, is there any opinion held by any putative juror about

14   the military or military service, any aspect of the

15   military, that would make their service problematic from the

16   standpoint of both sides.  Okay.

17             13 -- let me just give you my general philosophy

18   about jury selection.  I don't permit unduly intrusive

19   questioning.  The idea is to empanel an impartial jury, not

20   a jury that is shaped to one party's or the other's view.

21   With that in mind, 13, why do you need to know whether any

22   juror or immediate family member has had a security

23   clearance?

24             MR. GARBER:  Part of the issues in the case

25   involves contact with and discussion about military design

1    information, the sensitive nature of the information that's

2    been exchanged between my client and the military.  Some of

3    the witnesses will speak to that.

4              THE COURT:  What does it matter whether a juror

5    has a clearance?

6              MR. GARBER:  Well, I don't know if -- this may

7    be one that actually defendant may have pushed for.

8              MR. ADAMS:  We didn't push it.

9              MR. GARBER:  I think one of the concerns is, are

10   they going to bring their own experience or knowledge to

11   bear about what may be sensitive or secret or classified

12   information and the disclosure of that by the defendant.

13             THE COURT:  I will ask the question.  I don't

14   see it as terribly potentially revealing.  I will go ahead

15   and ask the question.

16             MR. ADAMS:  I don't care.

17             The individual juror's background as an

18   electrician or engineer?

19             MR. GARBER:  There are a lot of electrical

20   components here that we are dealing with, that primarily

21   assembles mobile power devices and the connecting components

22   to those.  Much of the discussion, particularly in terms of

23   establishing it as a trade secret, we will talk about the

24   components, specific components to that and what makes it a

25   trade secret.

1          THE COURT:  All right.

2          MR. GARBER:  Once again, it's sort of along the

3    same lines, whether they are bringing their own information

4    to bear or can they sort of fairly listen to the testimony

5    of the witnesses and experts about those electrical

6    components and the trade secret nature of them.

7          THE COURT:  I generally don't permit questions

8    of this type.  I can tell you, we get a lot of this because

9    of the patent work we do.  I just don't see it as really

10   necessary to the job of picking a jury that's impartial.  If

11   you do...

12         MR. GARBER:  I guess I would say this, Your

13   Honor:  If we are going to have a sort of general statement

14   of the nature of the case that can in part talk about the

15   electrical components, you know, that are at issue here, in

16   other words, this is a claim for trade secrets that involves

17   mobile ground power units sold primarily to the military and

18   their electrical components, then I would think any juror

19   who had a potential concern about their own background would

20   bring that to our attention and we wouldn't need that

21   specific question.

22         THE COURT:  There is a description.

23         MR. GARBER:  Judge, we just took a couple

24   minutes to chat.  And one suggestion that we thought we

25   might propose is, if we put a little bit more detail in the

 1  description of the case about the products at issue, then I

 2  think Questions 13 through 20 can be done away with, because

 3  I think, then, if it raised flags in anyone's minds, we

 4  would hear from them and it would accomplish the same

 5  result.

 6             THE COURT:  That is fine.

 7             When do you think you can have those to me,

 8  those revisions to proposed voir dire?

 9             MR. RIZZO:  By the end of the week.

10             THE COURT:  That is fine.

11             Now, are there still patent issues involved in

12  this case?

13             MR. GARBER:  Well, to the extent that -- that is

14  a piece of the case in that one of the things that was done

15  with the information that was sent out was, it was used by

16  the NMT principals to file a provisional patent.  We wanted

17  them, need to demonstrate that as part of this trade secret

18  appropriation and the intent of the parties.

19             THE COURT:  Okay.  So you want me to inquire,

20  then, 21 asks do you or a member of your immediate family

21  own any patent or copyright or trade secret.

22             MR. GARBER:  I think so, Your Honor.

23             THE COURT:  The defendant has no problem with

24  that?

25             MR. ADAMS:  No, Your Honor.

1              THE COURT:  22 asks whether you have ever been

2      involved in a patent, copyright, or trademark dispute.  And

3      23, have you ever been involved as a party or witness in

4      patent or copyright litigation.

5              I am going ask a general question that will

6      cover that -- so I will not ask 23 -- that will generally

7      get at whether they have been involved in any kind of

8      litigation, as a witness, juror, defendant, plaintiff.

9              24 I will not ask.  That is:  Have you ever

10     attended law school?

11             25 is good.

12             26 is what I was alluding to earlier.

13             27 an 28 are fine.  Actually, the last paragraph

14     will end up being a numbered question, 29.

15             I will send over to you several days in advance

16     of the 17th, you will get from my chief deputy an e-mail

17     that will set out exactly what the voir is going to look

18     like, give you an opportunity to offer any comment, give you

19     an opportunity to review the comment and see if I am going

20     to accept any of the suggestions that are made, and you will

21     get an e-mail back.

22             Are preliminary jury instructions in here?

23             MR. RIZZO:  Yes.  Letter J.

24             THE COURT:  Are they agreed to?

25             MR. RIZZO:  There are objections to a number of

1  them, though.

2              MR. ADAMS:  Not the preliminary ones.

3              MR. RIZZO:  I am sorry, not to the preliminary.

4              MR. ADAMS:  Most of them we took from you, Your

5  Honor.

6              THE COURT:  You will probably not go wrong

7  there.

8              We will discuss the final at an appropriate

9  time.  I will look through them when I get a chance.

10 Obviously, I haven't had a chance.

11             Am I correct in assuming there are competing

12 verdict forms that have been submitted?

13             MR. RIZZO:  Yes.

14             THE COURT:  What will happen, what I will tell

15 you right now is, because I know that at this stage of the

16 process counsel really haven't focused on final jury

17 instructions and the verdict form the you way you might have

18 otherwise, because you have begun your trial preparations,

19 you need to begin to focus on them, and to begin to

20 negotiate in earnest those differences, as to the finals and

21 the verdict form.  Then and only then will I step in, after

22 I am satisfied that a full effort has been made to resolve

23 your differences and resolve the remaining ones for you.

24             We will look, I will look to see the status of

25 the reserved rulings.

1          Let me go through -- is there anything else in

2     Part 2 that you can think of that we need to talk about,

3     anything you have tabbed or marked in any way?

4          MR. ADAMS:  Nothing in here.  But I do have an

5     issue that needs to be addressed.

6          THE COURT:  Let me go through my issues first.

7          MR. GARBER:  The only item that we have,

8     defendant had talked about there is falsifying documentary

9     exhibit on the part of the plaintiff.  I don't know what

10    that references or refers to.

11         THE COURT:  Let's finds out.  That's made

12    mention in Part 2.

13         MR. GARBER:  It is.  It is referenced, yes, in

14    the trial brief of plaintiff -- I am sorry, under

15    defendant's trial brief, at Page 6 of the trial brief.

16         THE COURT:  Counsel?

17         MR. ADAMS:  Two things in that regard, Your

18    Honor.  Number one, as I assume they are well-aware of this,

19    but there is a videotape where my client tells Mr.

20    Masilotti -- Mr. Masilotti is the president of Tesla -- what

21    he is doing with these guys over at NMT.

22         My client knew of this because he knew the

23    videotape was running at the time.  Mr. Masilotti was

24    actually building something.  He was videoing the building

25    of it so people would see in a factory how to build this.  I

1    think it was a battery, if I remember correctly.

2              When this case started, my client said, look,

3    John, there is a video of this.  So we asked for the

4    videotape.  We got a videotape.  But part was cut off

5    because of this conversation.

6              Tesla denied there was any other videotape.

7    When Mr. Talbot was deposed, Mr. Talbot testified that, oh,

8    yeah, I edited that videotape.  I cut that part out.

9              THE COURT:  That part covered a conversation?

10             MR. ADAMS:  Mr. Waldmann says, look, there are

11   these guys, they are building this piece of equipment, I am

12   helping them out.  I want to get sales out of this.  He is

13   telling Mr. Masilotti what he is doing with these guys.

14             THE COURT:  It bears directly on one or more of

15   the issues, the claims.

16             MR. ADAMS:  Absolutely, Your Honor.  What is

17   important from our perspective, they cut out evidence.  They

18   cut out evidence.  They gave it to us cut out.  Only after

19   we --

20             THE COURT:  This was after the suit was filed?

21             MR. ADAMS:  Yes, Your Honor.  We finally got

22   what they claim now to be an edited version of this tape,

23   which doesn't have the conversation in there.  I have

24   checked the videos, Your Honor.  There is parts in Video 1

25   that are not in Video 2.  There is parts in Video 2 that are

```
 1      not in Video 1.  I still don't have the unedited video.

 2                  THE COURT:  Was the conversation restored,

 3      though?

 4                  MR. ADAMS:  We don't know exactly what is

 5      missing.  At least part of the conversation is there, and at

 6      least enough that we show the jury, we will be able to show

 7      the jury that Tesla was well-aware of what he was doing.

 8      And then we want them to also know about the tampering of

 9      evidence.

10                  Also, Your Honor, we have a number of

11      documents --

12                  THE COURT:  That fall into this same category?

13                  MR. ADAMS:  -- where they whited stuff out of

14      the documents, Your Honor.  We have the documents where they

15      are not whited out.  So we are going to present them at

16      trial.  It's all in the evidence.  You can look through

17      them, spend time looking through it, but it's all there.

18                  MR. GARBER:  First, as to the video, my

19      understanding is what was produced originally was the

20      training video.  In other words, counsel correctly pointed

21      out this was done to prepare a training video to show people

22      how to assemble this battery.  And my client as the inventor

23      was showing them.  What was produced was the training video,

24      which is edited footage from the raw footage.

25                  Then subsequently, the raw footage was produced.
```

1    And that conversation, I know, I have seen it as well, and I

2    know it's been produced.

3              I don't know what to make of the falsifying

4    documentary evidence, especially because this was all

5    produced long before my involvement in the case, both edited

6    and raw.

7              THE COURT:  So this was not the subject of any

8    motion, just mentioned in the trial brief?  Was it the

9    subject of any requests for a jury instruction or spoliation

10    or anything like that?

11              MR. ADAMS:  We will ask for spoliation at the

12    end of the evidence.  We will see how the evidence comes out

13    at the time.

14              THE COURT:  Okay.

15              MR. GARBER:  That is what I am -- then the

16    comment I heard just now as well about documents, that there

17    is white-out, there are definitely redacted documents that

18    we received from the government where they redacted

19    sensitive information.

20              For example, if you request information about

21    contracts that a company has with the military, they will

22    redact certain information about materials and things like

23    that for sensitivity reasons.

24              So, you know, when I hear a comment that there

25    is whited-out portions and go find it in the records, I am

```
 1    not pleased to hear that.  I would like to know what we are

 2    dealing with.  I don't want to deal with trial by ambush.  I

 3    want to know what I am dealing with.

 4              MR. ADAMS:  Your Honor, these are Tesla's

 5    documents, not government documents.  The documents actually

 6    are again pertinent to the case in which they are

 7    exculpatory pieces of things that were whited out.  In fact,

 8    one of them is grossly whited out.  You can look and see one

 9    of the letters before it was whited out.  Again, Your Honor,

10    I don't have to do their work for them.

11              The documents, they have all these documents,

12    they have both versions of them.  And if they want to find

13    them they can, but I can tell you there are.  We will

14    present them at trial.

15              THE COURT:  The purpose of a pretrial conference

16    is to try to eliminate as many evidentiary issues as we can.

17    This is going to be a timed trial.  You are only going to

18    get a limited number of hours in front of the jury.  We have

19    it down for four days.  So each side is going to be afforded

20    an equal amount of time based on a five-and-a-half-hour

21    trial day.  We are pretty secure in that calculation.

22    That's about how it works out in terms of the jury, the time

23    you will get in front of the jury is about five and a half

24    hours of the days.  So your multiplier is five and a half

25    times four divided by two.  This is an aside.
```

1              You will keep your own time.  That is, Tesla

2    will keep Waldmann's, Waldmann will keep Tesla's time.  We

3    will back that up.  But I find that you are your own best

4    timekeepers.

5              So I don't want to spend time at sidebar or on

6    breaks trying to work through evidentiary issues of the type

7    that are being previewed for me right now.  It seems to

8    me -- this was not the subject of a motion of some type by

9    either party?

10             MR. ADAMS:  No, Your Honor.

11             MR. GARBER:  No.

12             THE COURT:  Do you want to say something?

13             MR. DEMMY:  It is on procedure.  Not directly on

14    the substance of this point.  Yes, I would.

15             THE COURT:  So what you need to do is, in

16    advance, you are going to have to have a further

17    meet-and-confer and identify these documents that are

18    referenced in the trial brief, videotapes, whatever the case

19    may be, and discuss these evidentiary issues.

20             So within the next several days you will need to

21    gather together and discuss these.  To the extent that you

22    are not able to work out issues, you will need to notify us,

23    and we will get on the phone together.  That should be

24    sooner rather than later, the notification that there are

25    issues.

```
1              Counsel.
2              MR. DEMMY:  Yes, Your Honor.  In terms of
3    calculating the time, I did quick math.  Eleven hours each
4    side.  If one side uses eight, does the other side get 14?
5              THE COURT:  No.  You got your 11.
6              MR. DEMMY:  It's 11 each no matter whether you
7    use it or not.
8              THE COURT:  That's right.
9              MR. DEMMY:  You are not going to extend the
10   trial.
11             THE COURT:  No.  I am not extending the trial,
12   no.  Quite frankly, I think probably that's more time than
13   you will need.  That's at least as much time as you will
14   have.  And that's it.  There won't be any more beyond those
15   parameters that I have just described for you.
16             So you need to adjust your evidentiary
17   presentations and your closing speeches accordingly.
18             I will not time your closing speeches and your
19   openings and that kind of thing.  That will be left to you
20   to decide how much, because that counts on your time.
21             As to these evidentiary matters, to the extent
22   there are still some looming out there that we haven't
23   addressed at some point in discussion previous or today, you
24   need to tee them up with one another for resolution among
25   yourselves or between yourselves, and if not with me.
```

1              Anything else that you saw, counsel?

2              MR. GARBER:  Some of the issues we raised in our

3    pretrial brief do, I think, involve legal issues in the

4    sense that plaintiff makes a claim, for example, under the

5    whistle-blower statute, trying a sort of private cause of

6    action when the statute provides for administrative

7    remedies, not a private cause of action.

8              There is similar claims involving the review of

9    the -- a claim for reviewing the personnel file.  He wanted

10   to review his personnel file after his suspension and be

11   permitted to put comments in there.  They are trying to make

12   an affirmative civil claim when that statute doesn't provide

13   a private civil cause of action for that.

14             So --

15             THE COURT:  Was there a motion for summary

16   judgment filed, motion to dismiss or not of any kind?

17             MR. GARBER:  No, Your Honor.  Those deadlines

18   had passed by the time I was involved.

19             THE COURT:  To the extent there is a failure of

20   proof, we will address a JMOL.  But I am not going to get

21   into resolving issues that should have been raised earlier.

22             MR. ADAMS:  Your Honor, two issues.  They both

23   involve the same thing.  It is just a matter of how to deal

24   with them.  One of them is to deal with some things.

25             Almost all the conduct alleged against Waldmann

1    was also alleged against NMT.   NMT has, in fact, settled the

2    case with Tesla.

3            So it would seem to me the best way to handle

4    whether Tesla is getting double-compensated in this case

5    would be after judgment, assuming they got a judgment

6    against Waldmann, we could address that as a matter of

7    remittitur.  That would be the most logical way to do it, it

8    seems to me.  I would like to bring that up.

9            If we are not, then I have to address it at

10   trial.

11           THE COURT:  Any difficulty with that?

12           MR. GARBER:  I don't have a problem with that,

13   Your Honor.

14           MR. ADAMS:  Personally, I don't think they are

15   going to prevail.

16           The second issue has to do with the settlement

17   agreement.  Unfortunately, I don't have a copy of the

18   settlement agreement.  They don't have a copy of the

19   settlement agreement.  I am being led to believe that this

20   settlement agreement prohibits Mr. Hollingsworth and Mr.

21   Minnick, the two people, other people, other two defendants

22   in this case, from appearing at trial.  I sent an e-mail --

23   I had spoken to Jason on Thursday -- to Brian Sullivan,

24   former counsel, I got an e-mail back this morning saying

25   that they would look for it, but it was filed here under

1  seal.  I am told there is no confidentiality provision in

2  the settlement agreement.

3            But, Your Honor, I would like to have you strike

4  any provision that prevents these people from testifying at

5  trial.

6            MR. GARBER:  My understanding is that there is a

7  clause in there where they agree not to assist him in his

8  case, assist the defendant in his case.  But that certainly

9  doesn't relieve them from complying with subpoenas, nor

10  could it.

11            MR. ADAMS:  They are more than a hundred miles,

12  Your Honor.  I think that is a fairly typical clause that we

13  see.

14            THE COURT:  You could certainly go into the

15  district where they are situated.

16            MR. ADAMS:  I can't make them appear.  They are

17  more than a hundred miles away.

18            THE COURT:  You could go to the district where

19  they reside, file a miscellaneous action.

20            MR. ADAMS:  I can make them appear at a

21  deposition within a hundred miles.  I cannot make them

22  appear in this Court.  They are willing to voluntarily come,

23  Your Honor.  They are willing to come.  But they can't come

24  because of the settlement agreement, which says two things,

25  as I am being told.  One, they can't assist him, and two,

1    they can't appear voluntarily.

2                Again, I don't have the agreement.  I wish I

3    did, because then I can tell you exactly what it says.  I

4    don't know exactly what it says because I have never

5    actually read the thing.

6                THE COURT:  It is filed under this civil action

7    number?

8                MR. ADAMS:  That's what the e-mail I got this

9    morning said.  It said it was attached as an exhibit.

10                MR. GARBER:  I think it is attached as Exhibit A

11    to that order.  I have to confess, I don't have it.  I don't

12    have a copy.

13                THE COURT:  Ms. McDavid, do you see a reference

14    to the document?

15                MS. McDAVID:  I do see an exhibit to the joint

16    motion for permanent injunction.  But there is nothing filed

17    under seal.  I can go look at it and see if it's on the

18    record.

19                THE COURT:  Okay.  Thank you.

20                The upshot of your request is to have them

21    appear.  This is Hollingsworth?

22                MR. ADAMS:  One lives in Texas and I think one

23    lives in Oregon.

24                THE COURT:  And they are willing to appear?

25                MR. ADAMS:  They are willing to appear, Your

1    Honor.

2                    THE COURT:  Do you have plans to have them as

3    witnesses?

4                    MR. GARBER:  That is possible, Your Honor.

5                    THE COURT:  If you are going to have them, this

6    may eliminate the issue.

7                    MR. GARBER:  I don't know if they are willing to

8    cooperate with us.  We have deposition transcripts from both

9    of them.  We had at a minimum planned on using deposition

10   transcripts.

11                   THE COURT:  Okay.  Let's see what Ms. McDavid

12   finds.

13                   MR. ADAMS:  Those were the two issues.  I wish I

14   had a copy of the settlement agreement, then I could tell

15   you exactly what it says.  I am at a disadvantage.  I don't

16   think they know what it says, either.  I am just being told

17   that they are willing to come appear and testify but they

18   are not allowed to do so.  Since that settlement agreement

19   involves an order, I think you have the authority to say

20   that is a misuse of justice.

21                   THE COURT:  We will look at it.

22                   All right.  Then, let's just do some mundane

23   housekeeping things.

24                   The first day of trial, you should expect the

25   panel to be brought up at roughly 9:30.  Three days in

1    advance of the first day of trial, you can get the jury list

2    from Mr. Trickey.  That list will change.  On the morning of

3    trial, Ms. Walker will have the final list for you.  The

4    reason that is important to know, the change, potential

5    change, is because the numbering will change.

6              Each juror will be assigned a number.

7              They will respond during the general questions

8    by number, not by name.  They will rise and announce their

9    number.  I think we will call roughly 50.  I can't ever

10   remember the number, of veniremen and women.  There will be

11   roughly 50.

12             We use the struck jury method.  I ask the

13   general questions.  Each juror that responds affirmatively

14   to the question, we will make a note of that.  Those jurors,

15   after I complete the questioning, will come to sidebar,

16   where you will join me, on the record, and I will give you a

17   limited opportunity to, after I ask some preliminary

18   questions about their affirmative responses, to ask further

19   questions of the putative juror.

20             The juror will be dismissed.  I will invite

21   challenges for cause at that time.  I may initiate sua

22   sponte a dismissal for cause, child care issue, whatever the

23   issue might be.

24             I will rule on the motion.  The juror will

25   remain in the well of the Court, even though the cause may

1    have been granted or exercised, or ruled upon.

2            We will get through all of the jurors that way.

3    We will spend a few moments after that just to recapitulate

4    to make sure, go back through all of the causes, so that we

5    are sure that I have made no mistakes and that kind of

6    thing.

7            We will go back out.  Ms. Walker will guide you

8    through the exercise of your peremptory challenges by

9    passing a pad between the two parties.

10           We will take a short break after the jury is

11   sworn and come back and do your openings.

12           Counsel, please keep in mind that openings are

13   just that:  they are guides to the evidence as you see it.

14   They are not arguments.  I will not permit argument.  I

15   emphasize that with counsel because I see the line pushed so

16   often.  I want to make it clear.

17           You should object during any speech, whether

18   opening or closing, in realtime.  That is my preference.  I

19   think you risk waiver.  And as a practical matter, I think

20   if you wait till the end of the argument, it can become a

21   problem from the standpoint of curing any damage that might

22   have been done by way of a curative instruction.  More often

23   than not it's my view, let's address the thing at the time

24   that it occurs, the breach or whatever it may be.  It may be

25   that after a sidebar discussion, counsel elects, the

1    aggrieved party says, Judge, we don't want you to call

2    additional attention to it, just leave it go.  But you have

3    got your objection on the record in that way.

4           That is my encouragement to you.

5           MS. McDAVID:  If there is a sealed document, if

6    we do have it, it is downstairs in the sealed vault.  They

7    are searching right now for it.

8           THE COURT:  I won't discuss that with you here

9    today.  I will view that in camera.

10          Objections.  You simply rise, and state the

11   nature of your objection, not the rule number.  I know the

12   rules, as well as the number.  But if you want my attention

13   focused, you have got to get up and say, "Hearsay,

14   relevance," whatever the case may be.  I will rule pretty

15   promptly on the objection.

16          You may not like the ruling.  If you feel that

17   it's important enough for us to get to sidebar, I may be a

18   little irritable on the point, I don't enjoy sidebars mainly

19   because our juries don't, but I do not prohibit sidebars.

20   So you need to get me over to sidebar.

21          We will discuss your -- I will hear argument and

22   discussion at that time.  Not in front of the jury.  Don't

23   argue with me with about an objection in front of the jury.

24          There is a podium in the courtroom.  It moves

25   around.  There is a mike at the podium.  I would suggest you

1    use it.  You do not question from counsel table.  You can

2    and shall use the podium.  But you don't have to stay at the

3    podium.  If you want to move around, some lawyers feel more

4    comfortable moving about the courtroom.  But you must keep a

5    respectful distance from that jury box.  When you are less

6    than a respectful distance, I will let you know.

7           I am pretty formal -- not pretty, I am very

8    formal.  It is a federal courtroom.  I expect it to be

9    treated with the appropriate level of decorum.  And so when

10   you want to move somewhere, you ask for permission.  When

11   you want to approach a witness, you ask me one time for that

12   witness for leave to approach the witness.  You will be

13   given leave automatically to approach that witness on a

14   continuing basis.  The next witness, ask for leave.

15          Juror books, notebooks, exhibit books, whatever

16   you want to call them.  There are two sets of books we

17   typically see over here in civil litigation, one that I more

18   or less insist upon.  Are you going to be using presentation

19   equipment?

20          MR. ADAMS:  Yes.

21          MR. GARBER:  Yes, Your Honor.

22          THE COURT:  That is good only as far as it goes.

23   If you are flashing exhibits or deposition transcripts or

24   you are playing back video deps, you know, these

25   presentation tools can be great tools.  But sometimes jurors

1    can be left at sea a little bit and like to have a hard

2    document in front of them that they can continuously refer

3    to.

4            Here is what you need to do.  You need to agree

5    in advance on exhibits that will appear in your individual

6    juror notebooks.  You don't want to overwhelm them, but you

7    do want them to have documents that you think are going to

8    come up time and again and you want them to be able to sit

9    with and not have to try to remember from it being flashed

10   on the screen.

11           I think the number is 14 with books, individual

12   books.

13           We will seat eight jurors.  I do not use

14   alternates.  All jurors will deliberate.  Obviously, you

15   know that we can go down to the number of six, and below

16   that with your permission.

17           So the number 14 works out somehow.  A book for

18   each juror, one for me, one for my clerk.  I think the

19   number is 14.  You can check on that.

20           Is that it, Ms. McDavid?

21           MS. McDAVID:  I am not really sure, Judge.  I

22   can check with Ms. Walker.

23           THE COURT:  Ms. Walker, she is not here today,

24   April Walker, my chief deputy, will be your touchstone on

25   these, access to the courtroom issues, that kind of thing.

1   You should call her up.

2          Witness binders.  To the extent that your

3   witnesses, you have a number of documents that you want to

4   work through with your witness, I would suggest you have

5   binders for your witnesses.  I am not going to impose this

6   on you.  This is not Merck and Barr Labs.  I understand

7   that.

8          So to the extent that you feel it prohibitive

9   from an expense point of view and you want to begin to --

10  litigating in federal court is awfully expensive.  I know

11  that.  It really is.  It's incredible.  I appreciate the

12  dilemma that this presents for parties.  But it is what it

13  is.  The rules have reasons.

14         So I will permit you to not use a witness

15  exhibit binder if you feel that you can get by without it

16  because you are going to put it up for the witness.  I

17  assume you will have a computer screen, your IT people will

18  set a computer screen up at the witness station, one on the

19  Bench, and one at each counsel table.  I would suggest that

20  you have the Elmo, that you have an Elmo device in there as

21  well as your projection device.

22         MR. DEMMY:  Your Honor, would it be Ms. Walker

23  to speak to about any preliminary work that needs to be done

24  setting up a V --

25         THE COURT:  That's who you talk to.  Yes.

1    573-6471 is her direct dial.  That's about it, I think.

2              Ms. McDavid?

3              MS. McDAVID:  I can't think of any.

4              THE COURT:  What other issues do you have,

5    counsel, if any?

6              MR. GARBER:  I don't think so.  We are going to

7    try to continue to narrow issues, exhibits and witness

8    objections.  We will be ready to go on the 17th.

9              THE COURT:  Now that I have been delivered my

10   copy of Part 2, let me just take a look at your proposed

11   preliminary instructions.

12             MR. ADAMS:  I don't think there were any

13   objections.

14             MR. RIZZO:  I don't recall any, either.

15             THE COURT:  Good.  I see you picked up one of

16   the Third Circuit instructions.  That's a good instruction,

17   which I have not yesterday made a part of my general

18   preliminary instructions.

19             I am going to take another look.  I am going to

20   take another look at 1.9, note-taking.  I sort of like my

21   instruction.  But there will be a note-taking instruction

22   one way or the other.  Either it will be this one that you

23   proposed based on the Third Circuit's Model Civil or mine,

24   that's also on the website that you have.  And I will take a

25   look again at 1.10, the preponderance of evidence.  I see

1    that is based on the Third Circuit's Model as well 1.12, I

2    will take a look at that, as well as 1.13, 1.4, 1.6, those

3    are all I see based on the Federal Jury Practice

4    Instructions, the Fifth Edition, I will take a look and see

5    what I think about those, as well as 2.2, 2.3, 4, 5, 6, 7,

6    8, 1.01, 1.02 -- I will take a look at all of the proposed

7    preliminary instructions that are based on some form

8    instruction form other than my own.  But they will cover the

9    general subject matter.  I think they will be more than

10   adequate.  I will let you know.

11             Plaintiff carries the laboring oar, pulls the

12   laboring oar on all instructions.  So we will let you know

13   what needs to be changed.

14             MR. GARBER:  Very well.

15             THE COURT:  Counsel, anything else?

16             MR. GARBER:  No, Your Honor.

17             THE COURT:  What, as a practical matter, can you

18   lawyers do to reopen the issue of settlement in this case?

19             (Discussion off the record.)

20             MR. ADAMS:  The part you are reading may be the

21   part that you signed, not the part they signed.

22             THE COURT:  I think it is, yes.

23             Rather than holding you here, because this goes

24   on -- wait a second.

25             The NMT parties were composed of?

1          MR. ADAMS:  Hollingsworth, Minnick, and the

2    company NMT.  Hollingsworth and Minnick.

3          THE COURT:  Who were the subject of your earlier

4    comments.

5          MR. ADAMS:  Yes, Your Honor.

6          THE COURT:  I will report to you that there does

7    seem to be a provision that prohibits the voluntary, quote,

8    provision of testimony by the NMT parties.  But that is

9    voluntary.

10          MR. ADAMS:  Yes, Your Honor.  But I cannot

11    subpoena them because they are more than a hundred miles

12    away.

13          THE COURT:  I don't think that means you cannot

14    have a subpoena here.  Look at it again.

15          MR. ADAMS:  I can't make a witness appear within

16    a hundred miles.

17          THE COURT:  Okay.  We won't argue about it.

18          MR. ADAMS:  I think if you ordered they could

19    appear.  That solves my problem.

20          THE COURT:  I will look at it.  Okay.

21          MR. ADAMS:  And I would like a copy of the

22    settlement agreement, too, Your Honor.

23          THE COURT:  I am not going to give you a copy of

24    the settlement agreement at this point.  Not until I look

25    further at it.  There was a reason it was filed under seal.

1          MR. ADAMS:  I believe Exhibit A is the reason

2     it's under seal, which is the trade secrets.  I had a

3     similar version to that agreement which they had sent to me

4     for my client and there was an exhibit to it, which was a

5     list of confidential trade secrets, things like that.  They

6     told me the thing would be filed under seal because of that.

7          THE COURT:  I have to look at the terms of the

8     consent decree and what is provided for by the consent

9     decree before I start willy-nilly providing either side or

10    both sides.

11         MR. ADAMS:  My client doesn't want to have

12    somebody say they breached the settlement agreement.  NMT

13    doesn't want somebody saying they breached the settlement

14    agreement.

15         THE COURT:  I am sure they don't.

16         Bear with me just a second.

17         (Brief recess taken.)

18         THE COURT:  What is Tesla's position on any

19    prohibition?  That is, Tesla is a party to the sealed

20    settlement agreement.  What is Tesla's position with regard

21    to Minnick and Hollingsworth appearing?  Would it be a

22    breach, in your view?

23         MR. GARBER:  We do -- we would seek to uphold

24    all the provisions of the agreement in the consent decree.

25    First of all, it doesn't prohibit the plaintiff from, as you

1    say, issuing a subpoena even in a location where they reside

2    and take a trial deposition.  And second of all, we have

3    ample deposition testimony, a thorough record that can be

4    used as well.

5              MR. ADAMS:  Your Honor, my view would be they

6    cannot use those things because they cannot create the

7    unavailability and claim the witness is unavailable.  They

8    are creating the unavailability by refusing to let the

9    witness appear.  So I don't believe that applies under 804.

10   I don't believe they can create an unavailability and then

11   claim he is unavailable.

12             MR. GARBER:  I don't think that is what the rule

13   supposes.  It is simply by virtue of them being outside of

14   this Court's subpoena power, then unavailability is met.

15   And depositions can be used for any purpose.

16             THE COURT:  I will look at Rule 32, I think it's

17   32.

18             MR. ADAMS:  45?

19             THE COURT:  No.  32.

20             45 deals with subpoenas.  We are talking about

21   the use of depositions.

22             It's usually not a good idea on civil procedure

23   to get into a joust with a federal judge.  It's not real

24   smart.  As knowledgeable as you may be, it's really more

25   annoying than not.

```
 1              MR. ADAMS:  I agree, Your Honor.

 2              THE COURT:  I will come to a decision on this,

 3   as to what I can do within the limits of my authority.

 4   Tesla is free to stand on its rights, as they perceive them.

 5   I will look at Rule 804 and see how that may impact things.

 6   And your contention that they have created the

 7   unavailability, I will look at that issue as well.

 8              Anything else, counsel?

 9              MR. ADAMS:  Your Honor, I know they didn't

10   request it, I would request that they get a copy of the

11   settlement agreement.  At least then we know that somebody

12   has a copy of the actual settlement agreement.

13              THE COURT:  Do you know why you don't have a

14   copy?

15              MR. GARBER:  I have had difficulty, Your Honor,

16   getting materials from my prior counsel.  We have got about

17   75 boxes they have come in over time, the last of which was

18   a week ago.  We don't see a signed copy of that agreement.

19   We have requested it from prior counsel.  And the last

20   communication heard was they would look again.  So we are in

21   an awkward position there.

22              THE COURT:  Well, I take it this was

23   electronically filed?

24              MS. McDAVID:  It was electronically filed.

25   However, the settlement agreement was not.  It was just
```

1    filed as a sealed document.

2              THE COURT:  Ms. McDavid, that's Exhibit 1.

3              Is that what you are talking about?  The mutual

4    general release and settlement agreement?

5              MS. McDAVID:  Yes.

6              THE COURT:  Which seems to be signed in

7    counterparts.  I will provide you with a copy.

8              MR. GARBER:  Thank you, Your Honor.

9              THE COURT:  Ms. McDavid will get that.  They are

10   a party to the agreement.  Just one copy.

11             MR. ADAMS:  I am under the understanding that

12   NMT doesn't have it, either.  I am not completely sure that

13   is exactly accurate.  But that's at least the implication

14   that I have been given, that they don't have it, either.

15   It's very confusing.

16             THE COURT:  Anything else, counsel?

17             (Conference concluded at 11:05 a.m.)

18                           -  -  -

19   Reporter:  Kevin Maurer

20

21

22

23

24

25