IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESLA INDUSTRIES, INC., ) <br> a Delaware Corporation, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> DAVID C. WALDMANN ) <br> ) <br> Defendant. ) | Civil Action No. 06-55 (GMS) |

## VOIR DIRE

.      Good morning, ladies and gentlemen, I am about to ask you a series of questions that we call *voir dire*. The purpose of the *voir dire* examination is:

(a)    to enable the court to determine whether or not any prospective juror should be excused for cause;

(b)    to enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges -- that is, challenges for which counsel need not give a reason.

- **Staff introduced.**

- **Panel sworn.**

If any of you would answer "yes" to any of these questions, I would ask you to stand up and, upon being recognized by me, to state your number. At the end of the questions, I will ask those who have responded "yes" to any of the questions to come to sidebar (that is, up to the bench next to me) with counsel for the parties to discuss your answers.

This case is expected to take 4 days to try. The schedule that I expect to maintain over those 4 days will be as follows:

We will normally begin the day at 9:00 a.m promptly. We will go until 1:00 p.m. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 p.m. There will be a fifteen minute break at 11:00 a.m. and another fifteen minute break at 3:15 p.m. One exception to this schedule may occur when the case is submitted to those of you who are selected to serve as jurors for your deliberation. On that day, the proceedings might last beyond

        4:30 p.m.  We will post a copy of this schedule for the jury's convenience in the jury deliberation room.

1. Does the length of this trial or the schedule contemplated by the court present a special problem to any member of the panel?

        **DESCRIPTION OF THE CASE**

        Tesla Industries, Inc. is the Plaintiff in this matter. Tesla's primary line of business is selling electronic equipment, more specifically, portable ground power units ("GPU's"), cables, connectors and other such equipment to the United States military. Within its facility, Tesla has separate and distinct units that respectively design, engineer, manufacture, assemble, and sell its products. In this case, Tesla alleges that Defendant David Waldmann, a salesman employed by Tesla, stole trade secrets and provided those trade secrets to Charles Minnick, Lyndol Hollingsworth, and a company that they founded, New Millennium Tools, Inc. New Millenium Tools, Inc.'s primary line of business concerned power tools, more specifically, an impact wrench. In addition to the claims for theft of trade secrets, Tesla also asserts claims against Defendant Waldmann for breach of contract, conversion, tortious interference with prospective contractual relations, and conspiracy against Defendant Waldmann.

        Defendant Waldmann denies Tesla's allegations. Defendant Waldmann asserts counterclaims alleging Tesla violated the Delaware Wage Payment Statutes, the Employee Retirement Income Security Act, the Federal Electronic Communications Privacy Act, the Delaware Electronic Surveillance and Interception of Communications Act, and Delaware personnel file inspection statutes, as well as counterclaims for breach of contract, intrusion of privacy, conversion, abuse of process, and unlawful discharge. Tesla denies the allegations in the counterclaims by Defendant Waldmann.

2. Has any member of the panel heard or read anything about this case?

3. Have you or any member of your immediate family (spouse, child, parent or sibling) ever been employed by the parties – the, plaintiffs, Tesla Industries, Inc. or New Millenium Tools, Inc.?

4. Have you or any member of your immediate family ever owned stock or had any financial interest in either of these companies?

5. Have you or any member of your immediate family ever had a business relationship of any kind with any of these companies?

6. Have you or any member of your immediate family had any negative or positive experience with the products of either of these companies?

7. Do you or, as far as you know, does any member of your immediate family know Charles Minnick or Lyndol Hollingsworth?

- **Counsel will be asked to introduce themselves, their firms, etc.**

8. Does any member of the panel, or your immediate family, know any of the attorneys involved in the case or have you or any of your immediate family had any business dealings with or been employed by any of these attorneys or their respective law firms?

- **Counsel will be asked to read names of potential witnesses.**

9. Does any member of the panel know or is any member of the panel familiar with any of the prospective witnesses?

10. Have you ever served as a juror in a criminal or a civil case or as a member of a grand jury in either a federal or state court?

11. Have you or has anyone in your immediate family ever participated in a lawsuit as a party or in any other capacity (such as a plaintiff, defendant, or witness)?

12. If you are selected to sit on this case, would you have any difficulty rendering a verdict solely on the evidence presented at the trial and in the context of the law as I will give it to you in my instructions, disregarding any other ideas, notions, or beliefs about the law you may have or that you may have encountered in reaching your verdict?

13. Is there any member of the panel who has any special disability or problem that would make serving as a member of the jury difficult or impossible?

14. Having heard the questions put to you by the court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?